Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive, Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALS SCAN, INC., a Maryland corporation,

Plaintiff,

vs.

CLOUDFLARE, INC., a Delaware corporation; TIGER MEDIA, INC., a Saskatchewan provincial corporation; GERARDUS VAN GINNEKEN aka "JUICY JAY," an individual; and DOES 1-10, inclusive,

Defendants.

Case No.: 2:16-cv-5051

**COMPLAINT FOR:**

**1. DIRECT COPYRIGHT INFRINGEMENT;**
**2. CONTRIBUTORY COPYRIGHT INFRINGEMENT;**
**3. VICARIOUS COPYRIGHT INFRINGEMENT;**
**4. TRADEMARK INFRINGEMENT;**
**5. TRADEMARK COUNTERFEITING; AND**
**6. INDUCING TRADEMARK INFRINGEMENT**

Demand for Jury Trial

Plaintiff ALS Scan, Inc. ("ALS") avers:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this action because it arises under the Copyright Act, 28 U.S.C. § 1338(a).

2. Venue is proper in this District, in that the Defendants may be found in this District, 28 U.S.C. § 1400(a).

**Nature of Action**

3. ALS owns a substantial library of copyrighted and trademark works of adult entertainment.

4. This case involves repetitive infringement of ALS's copyrighted works on "pirate" Internet sites, those with no apparent function other than to display infringing adult content. This piracy is supported by third party service providers who continue doing business with such pirate sites, even after they receive repeated actual notice of infringement on the pirate sets. These third parties continue to business with these pirate sites, continuing to profit from the draw of infringement while failing to terminate services to these pirate sites as repeat infringers.

5. Certain websites have engaged in direct infringement of ALS's copyrighted works and trademarks on a massive scale: imgchili.net, namethatpornstar.com, slimpics.com, cumonmy.com, bestofsexpics.com, teenbe.com, mymaturespace.com, spankwiki.net and stooorage.com. These websites are patently aggregations of content stolen from ALS and other copyright owners. Some of these sites ignore notification of infringing content from ALS's agent. Some comply with take down notices from ALS, yet the same infringing content or another set of infringing ALS content goes up on the site, often the next day.

6. On information and belief, these pirate sites monetize traffic drawn through the lure of infringing content through advertisers and traffic "brokers,"

companies that pay to receive traffic from pirate sites and, in the case of brokers, resell such traffic to purchasers. On information and belief, Defendant Tiger Media, Inc. ("Tiger") is a traffic broker that has, in this fashion, profited greatly from infringement of ALS works. As averred below, Tiger has failed to terminate services to these sites after repeated notifications of infringement from ALS.

7. Other service providers also profit from selling services to pirate sites, including web hosting and related Internet services. On information and belief, Defendant CloudFlare, Inc. ("CloudFlare") has provided Internet services to certain of the pirate sites referenced herein.

8. On information and belief, certain of the Defendants named herein have directly infringed upon ALS's copyrights and trademarks. On information and belief, certain of the Defendants named herein have, with actual and/or constructive knowledge of direct infringements of ALS works, materially contributed to or aided in such infringement. On information and belief, certain of the Defendants named herein, with the right and ability to control or supervise such infringing activity, have continued to profit from such activity. For these reasons, the parties named herein should be held liable for direct, contributory and vicarious copyright infringement and direct and contributory trademark infringement.

**Parties**

9. ALS is a Maryland corporation with its principal office in Woodstock, Maryland. ALS is the sole owner of the copyrighted works that are the subject of this action, all of which have been registered with the U.S. Copyright Office.

10. On information and belief, CloudFlare is a Delaware corporation with its principal offices at 101 Townsend, San Francisco, CA 94107. On

information and belief, CloudFlare maintains a significant base of clients in this District.

11. On information and belief, Tiger is a corporation organized as a provincial Saskatchewan corporation with its principal office in Regina, Saskatchewan. On information and belief, Tiger owns and operates the online advertising business known as "Juicy Ads," www.juicyads.com. On information and belief, Tiger maintains a number of clients in this District, who are able to obtain client accounts and conduct commerce with Tiger from this District through the interactive Juicy Ads website.

12. On information and belief, Defendant Gerardus Van Ginneken aka "Juicy Jay" ("Juicy Jay") is an individual who founded and controls Tiger, and who has materially aided in and substantially benefited from the infringing activities averred herein.

13. ALS has no knowledge of the true names and capacities of the parties sued as Doe Defendants 1-10, inclusive, and therefore sues them using fictitious names. ALS will amend this Complaint to identify these Doe Defendants specifically if and when their true names and capacities are ascertained.

14. On information and belief, through their acts or omissions, Does 1-10 are responsible, along with the other specifically-named defendants, for the injuries alleged, and therefore are liable for them. On information and belief, at all times, the specifically-named defendants and Does 1-10 were principals, agents, and representatives of each other, or acting in concert with one another, such that the acts or omissions of any of them can be ascribed to the others.

**ALS Background**

15. ALS was founded in 1996. ALS owns a substantial library of self-produced adult entertainment images and videos. ALS was one of the first companies to provide consumers with access to adult entertainment on secure

websites. ALS charges consumers fees in consideration for a user identification and password which will provide the consumer with access to proprietary content on ALS's secure Internet sites. ALS also sells proprietary ALS content on DVDs. ALS displays its trademark and copyright information on its works.

16. ALS has submitted hundreds of registrations for its copyrighted works to the U.S. Copyright Office, including registrations covering all of the works referenced in the notices of infringement averred herein. A true and correct summary of the hundreds of copyright registrations submitted by ALS is attached hereto as Exhibit 1.

17. ALS is the owner of Trademark Reg. No. 2137225, registered February 17, 1998 for the mark "ALS Scan" in connection with CD Roms featuring adult entertainment. ALS is the owner of Trademark Reg. No. 3062202, registered February 28, 2006 for the mark "ALS Scan" in connection with web sites and multimedia materials featuring adult entertainment. True and correct copies of screen shots reflecting these registrations are attached hereto as Exhibit 2.

18. ALS content display both a copyright notification indicating that the work is copyrighted to ALS and the year of the work's creation, as well as ALS's registered "ALS Scan" trademark.

**<u>The Challenge Posed by Infringement on the Internet</u>**

19. One of the most significant business threats faced by ALS is widespread infringement of its copyrighted works and trademark on the Internet. Beginning around 2000, and continuing to the present, ALS images have been displayed on growing numbers of illicit websites, without the knowledge of or license from ALS. Around this time consumers began to graduate from relatively slow dial-up Internet access to dedicated higher speed Internet connections. The emergence of peer-to-peer file sharing networks and "newsgroups" grew in use and popularity. These networks allowed consumers

to upload and share content with others. Enormous quantities of infringing ALS content have been posted on these file sharing and newsgroup sites. High connection speeds have permitted massive download and upload of libraries of infringing content.

20. The observed growth of infringing content on these networks coincided with noticeable decline in ALS's profits. During this time ALS has continued to produce high quality adult entertainment content, transitioning from shooting with print film to high resolution digital content. Despite these efforts, sales have declined. There are no material factors to explain this decline other than the ubiquitous presence of infringing ALS content on the Internet.

21. The problems faced by ALS are not limited to the growing presence of sites featuring infringing content, or "pirate" sites. A growing number of service providers are helping pirate sites thrive by supporting and engaging in commerce with these sites. Advertising brokers purchase traffic from pirate sites and resell that traffic to other adult entertainment companies. Owners of adult entertainment sites directly purchase traffic from pirate sites. Other companies provide web hosting and related technical services to pirate sites. All of these secondary services help rampant copyright and trademark infringement on the Internet thrive and grow.

22. This case raises the problem of service providers who continue to do commerce with pirate sites even after receipt of actual knowledge of repetitive acts of infringement on such sites. As averred below, these service provides turn a blind eye to actual notice that these sites are repeat infringers and continue to profit from doing business with these sites.

**Cloudflare**

23. CloudFlare, according to www.cloudflare.com, is a "web performance and security company." Cloudflare says it offers: (1) a content

delivery network ("CDN"); (2) web content optimization; (3) website security; (4) DDoS (denial of service) protection; and (5) a managed domain name system (DNS) network.

24. Cloudflare says: "Once your website is a part of the CloudFlare community, its web traffic is routed through our intelligent global network. We automatically optimize the delivery of your web pages so your visitors get the fastest page load times and best performance. We also block threats and limit abusive bots and crawlers from wasting your bandwidth and server resources. The result: CloudFlare-powered websites see a significant improvement in performance and a decrease in spam and other attacks."

25. CloudFlare's Terms of Service provides that it retains the right to investigate its customers, their sites and "the materials comprising the sites" at any time. The Terms further provide that any violation of law will justify termination of CloudFlare's services. "CloudFlare's policy is to investigate violations of these Terms of Service and terminate repeat infringers."

26. The domain registration information for some of the pirate sites referenced herein indicate that the sites reside on or are cached by a Cloudflare server in Phoenix, Arizona.

**Tiger Media – JuicyAds**

27. On information and belief, Tiger owns and operates the "JuicyAds" advertising service. JuicyAds' service is explained on www.juicyads.com. "JuicyAds is the sexy advertising network." "JuicyAds is a marketplace for Publishers to sell ad space and traffic to Advertisers." "We deliver over one Billion impressions daily and always growing." "Serving 158,000+ websites and 83,000+ clients, and more joining daily."

28. According to Tiger's website, JuicyAds conducts business with "Users," either "Publishers" or "Advertisers." "'Publishers' are Users who sell

advertising through the JuicyAds service." "'Advertisers' are Users who buy advertising through the JuicyAds service."

29. JuicyAds caters to adult entertainment businesses. In Juicy Ads' parlance, a "Publisher" is an owner or operator of website(s) with adult content. A Publisher applies for and obtains a User account through the juicyads.com site and informs JuicyAds of the website(s) he will use to deliver Internet traffic. The Publisher receives code he can use to place advertisements served by JuicyAds on the Publisher's website(s). Those ads, when clicked, will resolve for a moment on the juicyads.com server and then an instant later resolve to the site of a JuicyAds' Advertiser. JuicyAds pays the Publisher for Internet traffic from the Publisher's website(s) to Advertisers at agreed rates. Advertisers in turn pay JuicyAds for Internet traffic sent by Publishers.

30. JuicyAds reserves sole discretion and ability to suspend or terminate any Users' account at any time. JuicyAds' Terms of Service forbid Users to engage in infringement of intellectual property. JuicyAds reserves the right to "investigate any aspect of any account at any time without notice and to suspend payments while any investigation is pending."

31. According to the juicyads.com website: "It is JuicyAds' policy to (1) remove or block access to material that it believes in good faith to be copyrighted material that has been illegally copied and distributed by any of our customers, advertisers, publishers, affiliates, members or users; (2) remove or disable access to material that is claimed in good faith to be infringing upon copyrighted material upon notification to our Designated Agent with terms in the notice required by the DMCA; and (3) remove and discontinue service to repeat offenders."

32. According to juicyads.com: "We have one of the best and most easy to use interfaces for purchasing ads in the industry and one of the only with purchasing in seconds and instant approval." On information and belief,

this process works so instantaneously that even a Publisher of a website with red flags of copyright infringement can obtain a JuicyAds account and begin commerce with JuicyAds without any site review or enforcement of JuicyAds' Terms of Service.

**Infringement of ALS's Copyrights and Trademarks**

33. ALS, through its authorized agent Steve Easton, has sent numerous notifications alerting Juicy Ads, Cloudflare and others of the existence and location of works on pirate sites that infringe upon copyrights and trademarks owned by ALS.

34. The following sites have been the subject of numerous notifications to JuicyAds and others of copyright and trademark infringement. In all of these cases, the notifications alerted Juicy Ads to thousands of pages on pirate sites displaying ALS's copyrighted works and the "ALS Scan" trademarks. The pages with infringing ALS content also display ads placed by JuicyAds:

a. Imgchili.net
b. Namethatpornstar.com
c. Slimpics.com
d. Cumonmy.com
e. Bestofsexpics.com
f. Teenbe.com
g. Mymaturespace.com
h. Spankwiki.net
i. Stooorage.com

35. The following sites have been the subject of numerous notifications to Cloudflare and others of copyright and trademark infringement. In all of these cases, the notifications alerted Cloudflare to thousands of pages on pirate sites displaying ALS's copyrighted works and the "ALS Scan"

trademarks. On information and belief, these sites receive Internet services from Cloudflare. Specifically, publicly available domain lookup information reflects that these sites are all hosted by, or reside on a server maintained as part of a Content Delivery Network by, Cloudflare in Phoenix, Arizona.

a. Imgchili.net
b. Slimpics.com
c. Cumonmy.com
d. Bestofsexpics.com
e. Stooorage.com

36. In some of these cases, the direct infringer responded to the notices by taking down the works pinpointed in the notice, but as early as the next day the same set of infringing ALS images or a different set of infringing ALS images is uploaded to the same site. In other cases the direct infringer ignored the notification and continued to display the infringing works.

37. Even though the law requires parties to terminate business with repeat infringers, and even though both Juicy Ads and Cloudflare's own terms state that they will terminate business with repeat infringers, neither Juicy Ads nor Cloudflare has terminated its business accounts with these chronic direct infringers. On information and belief, this is because Juicy Ads and Cloudflare make money by continuing to do commerce with sites that draw traffic through the lure of free infringing content.

38. The infringing ALS works that are the subject of the notifications averred above bear the registered ALS Scan trademarks. The pirate sites listed above have directly infringed ALS's trademarks by using ALS's registered marks without ALS's knowledge or consent in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation or approval of such works. The works being published by the direct infringers are counterfeits bearing the ALS marks without authority. The third party

defendants named herein have induced or contributed to such trademark infringement by continuing to provide services, including services as advertising brokers and Internet services, to the directly infringing sites after actual or constructive knowledge of their acts of infringement.

**First Claim for Relief – Against Does 1-5**

**Direct Copyright Infringement**

39. For its First Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-38 above.

40. Does 1-5, on information and belief the owners or operators of the above-listed pirate sites, have directly infringed on ALS's copyrighted works.

41. As a result of these Defendants' acts of infringement, ALS is entitled to injunctive relief, damages, disgorgement of profits, statutory damages and attorneys' fees.

**Second Claim for Relief – Against Tiger, Juicy Jay, Cloudflare and Does 6-10**

**Contributory Copyright Infringement**

42. For its Second Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-41 above.

43. Tiger, Juicy Jay, Cloudflare and Does 6-10 have, with actual and/or constructive knowledge of direct infringements of ALS's copyrighted works, materially contributed to or aided in such infringement. Tiger, Juicy Jay, Cloudflare and Does 6-10 are thus liable for contributory copyright infringement.

44. As a result of these Defendants' acts of infringement, ALS is entitled to injunctive relief, damages, disgorgement of profits, statutory damages and attorneys' fees.

**Third Claim for Relief – Against Tiger, Juicy Jay, Cloudflare and Does 6-10**

**Vicarious Copyright Infringement**

45. For its Third Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-41 above.

46. Tiger, Juicy Jay, Cloudflare and Does 6-10 have, with the right and ability to control or supervise the direct infringement averred herein, failed to exercise such right and ability and have directly benefited financially from such infringing activity. Tiger, Juicy Jay, Cloudflare and Does 6-10 are thus liable for vicarious copyright infringement.

47. As a result of these Defendants' acts of infringement, ALS is entitled to injunctive relief, damages, disgorgement of profits, statutory damages and attorneys' fees.

**Fourth Claim for Relief – Against Does 1-5**

**Direct Trademark Infringement**

48. For its Fourth Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-41 above.

49. Does 1-5 have directly infringed ALS's trademarks by using in commerce reproductions, counterfeits and copies of ALS's registered marks in a fashion likely to cause confusion, mistake or deception.

50. As a result of these Defendants' acts of infringement, ALS is entitled to injunctive relief, treble damages, disgorgement of profits and attorneys' fees.

**Fifth Claim for Relief – Against Does 1-5**

**Direct Trademark Counterfeiting**

51. For its Fifth Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-41 above.

52. Does 1-5 have used counterfeits of ALS's registered marks in connection with the sale, offering for sale or distribution of goods or services.

53. As a result of these Defendants' acts of counterfeiting, ALS is entitled to injunctive relief, treble damages, disgorgement of profits, statutory damages and attorneys' fees.

**Sixth Claim for Relief – Against Tiger, Juicy Jay, Cloudflare and Does 6-10**

**Contributory Trademark Infringement**

54. For its Sixth Claim for Relief, ALS incorporates by reference the averments of ¶¶ 1-53 above.

55. Tiger, Juicy Jay, Cloudflare and Does 6-10 have continued to provide services to the above sites with actual and constructive knowledge of those sites' infringement of ALS's trademark, and are thus liable for inducing and contributing to direct trademark infringement.

56. As a result of these Defendants' acts of inducing and contributing to trademark infringement and counterfeiting, ALS is entitled to injunctive relief, treble damages, disgorgement of profits, statutory damages and attorneys' fees.

**PRAYER**

ALS prays for entry of judgment including the following relief:

A. Actual damages in a sum to be proven at time of trial, in no event less than $10,000,000;

B. Statutory damages;

C. Disgorgement of Defendants' profits from their infringing activities;

D. Trebling of damages;

E. Costs and attorneys' fees;

F. Preliminary and permanent injunctive relief;

G. Such other and further relief as the Court deems appropriate.

DATED: July 11, 2016

SPILLANE TRIAL GROUP PLC

By: ______________________
Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

**JURY DEMAND**

ALS demands trial by jury.

DATED: July 11, 2016

SPILLANE TRIAL GROUP PLC

By: ______________________
Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.