Gary L. Bostwick (Bar. No. 79000)
gbostwick@B1Law.com
**BOSTWICK LAW**
12400 Wilshire Blvd., Ste. 400
Los Angeles, CA 90025
(310) 979-6059

Corey D. Silverstein (appearing *pro hac vice*)
corey@silversteinlegal.com
Kevin S. Toll (appearing *pro hac vice*)
kevin@silversteinlegal.com
**SILVERSTEIN LEGAL**
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 290-0655

Lawrence G. Walters (appearing *pro hac vice*)
larry@firstamendment.com
**WALTERS LAW GROUP**
195 W. Pine Ave.
Longwood, FL 32750
(407) 975-9150

Attorneys for Defendant Tiger Media Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.,** | Case No. 2:16-cv-05051-GW-AFM |
| *Plaintiff,* | **Memorandum of Points and Authorities in Support of Motion by Defendant Tiger Media Inc. to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim** |
| v. | |
| **CLOUDFLARE, INC.,** et al., | |
| *Defendants.* | Date: October 3, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 10 |

# Table of Contents

Table of Authorities ........................................................................... iii

Introduction ........................................................................................ 1

Background ......................................................................................... 2

Standard of Review ........................................................................... 5

Argument ............................................................................................ 6

I.    ALS fails to state a claim for contributory or vicarious copyright
      infringement that is plausible on its face ...................................... 6

      A.    ALS fails to state a claim for contributory infringement because
            it cannot allege that Tiger has materially contributed to any
            copyright infringement ......................................................... 7

      B.    ALS fails to state a claim for inducement liability as a matter of
            law ................................................................................... 14

      C.    ALS cannot adequately plead a basis for Tiger's vicarious liability
            for copyright infringement ................................................. 15

            1.    ALS fails to adequately allege that Tiger has the requisite
                  right and ability to supervise and control infringing activity
                  by publishers ............................................................... 16

            2.    As a matter of law, Tiger does not have a direct financial
                  interest in the alleged infringement ............................... 19

II.   ALS fails to state a claim for contributory trademark infringement ............ 22

      A.    ALS cannot allege that Tiger intentionally induced any publisher
            to infringe ALS's trademarks ............................................... 22

B.    ALS cannot allege that Tiger had direct control and monitoring of the instrumentality used by a third party to infringe ......................23

III.    ALS fails to state a claim for unfair competition as a matter of law ............ 24

Conclusion ......................................................................................................... 24

1

## Table of Authorities

2

**Cases**

3    *A&M Records, Inc. v. Napster, Inc.*,

4      239 F.3d 1004 (9th Cir. 2001) ...................................................................passim

5    *Adobe Sys. Inc. v. Canus Prods., Inc.*,

6      173 F. Supp. 2d 1044 (C.D. Cal. 2001) ......................................................... 20, 21

7    *Ashcroft v. Iqbal*,

8      556 U.S. 662 (2009) .......................................................................................... 6, 16

9    *Bell Atl. Corp. v. Twombly*,

10      550 U.S. 544 (2007) .............................................................................................. 6

11    *Cleary v. News Corp.*,

12      30 F.3d 1255 (9th Cir. 1994) ............................................................................... 24

13    *Columbia Pictures Indus., Inc. v. Fung*,

14      710 F.3d 1020 (9th Cir. 2013) ........................................................................14, 15

15    *Dunn v. Castro*,

16      621 F.3d 1196 (9th Cir. 2010) ............................................................................... 4

17    *Ellison v. Robertson*,

18      357 F.3d 1072 (9th Cir. 2004) .................................................................... 8, 20, 21

19    *Elsevier Ltd. v. Chitika, Inc.*,

20      826 F. Supp. 2d 398 (D. Mass. 2011) ................................................................. 13

21    *Fonovisa, Inc. v. Cherry Auction, Inc.*,

22      76 F.3d 259 (9th Cir. 1996) ........................................................................passim

23

24

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982) ................................................................ 22, 23

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
    287 F.3d 866 (9th Cir. 2002) ......................................................... 24

*Ko v. Eva Airways Corp.*,
    42 F. Supp. 3d 1296 (C.D. Cal. 2012) ................................................. 5

*Livnat v. Lavi*,
    No. 96-4967, 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)................................ 8, 14

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999) ........................................................ 23

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    658 F.3d 936 (9th Cir. 2011) ...................................................... 9, 23

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
    23 F. Supp. 3d 1113 (C.D. Cal. 2013) ................................................. 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .............................................................. passim

*Miller v. Facebook, Inc.*,
    No. 10-00264, 2010 WL 1292708 (N.D. Cal. Mar. 31, 2010) ....................... 14, 18

*Neitzke v. Williams*,
    490 U.S. 319 (1989) .................................................................. 5

*Newborn v. Yahoo!, Inc.*,
    391 F. Supp. 2d 181 (D.D.C. 2005) ............................................... 14, 22

*Parker v. Google, Inc.*,

  422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).... 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,

  508 F.3d 1146 (9th Cir. 2007) ...................................................................passim

*Perfect 10, Inc. v. CCBill LLC*,

  488 F.3d 1102 (9th Cir. 2007) ............................................................ 24

*Perfect 10, Inc. v. Google, Inc.*,

  No. 04-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010) ................................ 21

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

  494 F.3d 788 (9th Cir. 2007) ...................................................................passim

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

  No. 04-0371, 2004 WL 1773349 (C.D. Cal. Aug. 5, 2004).................................. 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,

  907 F. Supp. 1361 (N.D. Cal. 1995) .................................................... 9

*Routt v. Amazon.com, Inc.*,

  584 F. App'x 713 (9th Cir. 2014) ........................................... 16, 18, 19

*Sarvis v. Polyvore, Inc.*,

  No. 12-12233, 2013 WL 4056208 (D. Mass. Aug. 9, 2013) ................................ 21

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,

  718 F.3d 1006 (9th Cir. 2013)............................................................ 14

**Statutes**

17 U.S.C. § 512 ...................................................................... 4, 7

Cal. Bus. & Prof. Code § 17200.................................................... 24

**Rules**

Fed. R. Civ. P. 8 ............................................................................. 16

Fed. R. Civ. P. 12(b)(6) .............................................................passim

**Treatises**

Ian C. Ballon,

   *E-Commerce and Internet Law* (2015 update) .......................................7

Melville B. Nimmer & David Nimmer,

   *Nimmer on Copyright* (2015) ..................................................................7

## Introduction

ALS Scan, Inc. is a producer of adult content who wants this Court to expand secondary liability for copyright infringement and trademark infringement far beyond the limits set by the Supreme Court and the Ninth Circuit. ALS seeks to impose contributory and vicarious copyright and contributory trademark infringement liability on Tiger Media Inc., an online advertising network known as JuicyAds, because it "serves" ads on sites that allegedly infringe ALS's copyrights and trademarks.

ALS bases its entire First Amended Complaint ("FAC") on the allegation that copies of photographs it owns appeared on several third-party sites without its permission. ALS does not allege its photos appeared on JuicyAds.com (because they never did) or pass over Tiger's ad network (because they don't). Nor does ALS allege that Tiger has the ability to actually disable access to its photos (because it can't). Rather, ALS alleges in a conclusory fashion that Tiger is liable because the sites where ALS's photos appeared were JuicyAds "publishers," some of more than 92,000 businesses and individuals that participate in the JuicyAds ad network. The Ninth Circuit summarily rejected this theory as a matter of law in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007).

As the FAC acknowledges, the relationship between Tiger and the participating publishers is purely contractual. JuicyAds, like countless other ad networks, merely allows third-party publishers to place third-party ads on their sites, and for third-party advertisers to buy the ad space. JuicyAds's Terms of Service ("TOS") states that publishers are "***solely responsible***" for the content of their own sites, including infringement of intellectual-property rights, and that JuicyAds has "***no control***" of

1  publishers' sites or content. In short, the TOS provides Tiger no right or ability to
2  control publishers or the content of their sites.

3    This Court should dismiss ALS's claims against Tiger with prejudice. Taking
4  into account the actual contract terms between Tiger and participating publishers,
5  ALS has not and cannot assert any claims for contributory or vicarious liability, given
6  that Tiger has no more control over publishers' sites than it does over any other
7  third-party sites. ALS has altogether failed to allege any other grounds to support
8  secondary liability here.

9                                    **Background**

10   Tiger is an online advertising broker. *See* FAC ¶ 43. Tiger acts as a middleman
11  between advertisers who purchase ad space, and publishers who operate independ-
12  ent websites. *See id.* Tiger pays publishers for the right to serve third-party ads on
13  their sites, much as a media buyer might pay the owner of a billboard to display ads
14  for its clients. Publishers and advertisers' use their own independent hosting, do-
15  mains, software, and other infrastructure to operate their websites and distribute
16  their content.

17   To do this, Tiger created an online advertising network called JuicyAds, *see id.* at
18  ¶ 11, which is a self-serve platform that automates the delivery of ads to publisher
19  sites. The platform also provides a marketplace displaying ad spots for sale on pub-
20  lisher sites, *see id.* at ¶ 42, just as Zillow.com provides a marketplace displaying real
21  estate for sale. JuicyAds serves over 172,000 websites and over 92,000 clients. *Id.* at
22  ¶ 44. Any business or individual may sign up at JuicyAds.com by completing the reg-
23  istration form and accepting the TOS online. *See id.* at ¶ 48.

24

In the JuicyAds ad network, the publisher's role is limited to signing up with Juicy-Ads, adding websites, adding ad zones, and placing ad code (which calls the ad) provided by JuicyAds on its site. *See id.* at ¶ 48. Publishers can add, move, modify, or completely remove ad spots from their site at any time, without notice to Tiger. The JuicyAds ad delivery code is fully independent of the publisher's site, and even if the code is suspended, the publisher's site continues to operate unaffected by the suspension.[1] Functionality and the site's content (and its distribution) is not affected by the addition or removal of ad space or ad code.

Tiger does not possess any particular knowledge concerning the content of a publisher's site. Tiger does not and cannot control the contents of publishers' sites; publishers maintain full responsibility for a site's content and operation. TOS ¶ XIII, attached as exhibit A. Tiger requires publishers to represent that their sites do not contain any infringing or illegal content. *See id.* at ¶ X(a).

According to the FAC, "ALS owns a substantial library of self-produced adult entertainment images and videos." FAC ¶ 20. ALS provides consumers with access to this content on its websites and on DVDs. *See id.* "ALS displays its trademark and copyright information on its works." *Id.* ALS holds copyright registrations for its works and has registered the "ALS Scan" trademarks. *See id.* at ¶¶ 21–22.

Other than alleging that ALS holds rights in its photos and that they appeared on several publisher sites (but not on the JuicyAds.com site), the FAC contains no factual allegations that Tiger did anything to infringe ALS's rights. Instead, ALS alleges in a conclusory fashion that Tiger "materially contributed to or aided in" "direct

---

[1] Only the publisher can remove the ad code from the publisher's site.

infringement of ALS's copyrighted works" and "with the right and ability to control or supervise the direct infringement averred herein, failed to exercise such right and ability and have directly benefited financially from such infringing activity." *Id.* at ¶¶ 92, 96.[2] The FAC lacks sufficient detail about Tiger's alleged "material contribution" to infringement and "right and ability to control or supervise" infringement.

The FAC acknowledges that these "publishers" are under contract with Tiger, *see id.* at ¶ 46, but does not attach the TOS, which is publicly available on JuicyAds.com (https://www.juicyads.com/terms/) and attached as exhibit A.[3] Under the TOS, Tiger permits "publishers" to place ads on their sites and for "advertisers" to buy the space. FAC ¶ 43 (quoting TOS ¶ I). Tiger prohibits publishers (and advertisers) from violating its or any third party's intellectual-property rights. *See* TOS ¶¶ IV(a)(vii), X(a); *see also* FAC ¶ 46. Each "User takes full responsibility for the selection and use of the JuicyAds' service." TOS ¶ III. And "[a]ll Users agree to use JuicyAds' services for purposes that are lawful within their jurisdiction, and agree not to use JuicyAds to distribute obscene or other unlawful content." *Id.*

JuicyAds users remain "solely responsible for the development, operation and maintenance of their website and all materials that appear on Users' websites used in connection with the JuicyAds service." *Id.* at ¶ XIII. "JuicyAds expressly disclaims any ownership or control of Users' sites or content." *Id.* Each "User

---

[2] The FAC contains various allegations about Tiger's failure to enforce a repeat infringer policy, *see, e.g.*, FAC ¶ 53, which have no bearing on whether a claim has been stated, and only pertain to Tiger's eligibility for DMCA safe harbor. *See* 17 U.S.C. § 512(i)(1).

[3] Because the FAC refers to the TOS, the Court may rely on the TOS when deciding this motion under Rule 12(b)(6) without converting it into one for summary judgment. *See Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

1  acknowledges full responsibility for their websites and their activities in conjunc-

2  tion." *Id.* And each "User shall be responsible for ensuring materials made available

3  through their websites do not violate or infringe upon … the rights of any third

4  party." *Id.* "JuicyAds reserves the right … to terminate its services to any Website

5  at any time, at its sole and exclusive discretion." *Id.* at ¶ IV.

6      In short, the TOS makes publishers "solely responsible" for their sites, including

7  the content of publishers' sites and observing third parties' intellectual-property

8  rights. *See id.* at ¶ XIII. Tiger's only recourse for misbehavior by a publisher is ter-

9  mination of the publisher's account. *See id.* at ¶ IV.

10  **Standard of Review**

11      The Court should dismiss ALS's FAC because it has not alleged facts that would

12  entitle it to relief as a matter of law. Rule 12 provides for dismissal of a complaint for

13  "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

14  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue

15  of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). In considering the motion,

16  "the court is limited to the allegations on the face of the Complaint (including doc-

17  uments attached thereto), matters which are properly judicially noticeable and 'doc-

18  uments whose contents are alleged in a complaint and whose authenticity no party

19  questions, but which are not physically attached to the pleading.'" *Ko v. Eva Airways

20  Corp.*, 42 F. Supp. 3d 1296, 1299 (C.D. Cal. 2012). But "'a court may not look be-

21  yond the complaint to a plaintiff's moving papers, such as a memorandum in oppo-

22  sition to a defendant's motion to dismiss.'" *McRO, Inc. v. Namco Bandai Games Am.,

23  Inc.*, 23 F. Supp. 3d 1113, 1125 (C.D. Cal. 2013).

24

5

Rule 12 exists to weed out implausible complaints before parties engage in expensive discovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citation omitted).

**Argument**

## I. ALS fails to state a claim for contributory or vicarious copyright infringement that is plausible on its face

ALS nowhere attempts to allege that Tiger has directly engaged in any copyright infringement. It instead tries to pursue two forms of secondary liability for copyright infringement recognized in caselaw but not codified in the Copyright Act—contributory liability and vicarious liability infringement. But the FAC fails to allege any facts suggesting that Tiger could be liable for the acts of independent third parties. Any attempt to support this theory would fail as a matter of law.

1    At the outset, Tiger is not asserting a defense under the Digital Millennium Cop-

2    yright Act (DMCA) safe harbor provisions. And "[t]he failure of a service provider's

3    conduct to qualify for limitation of liability under this section shall not bear adversely

4    upon the consideration of a defense by the service provider that the service pro-

5    vider's conduct is not infringing under this title or any other defense." 17 U.S.C.

6    § 512(l). Indeed, DMCA compliance is optional:

> 7    Compliance with the DMCA is optional. If a service provider chooses
>
> 8    not to comply or fails to meet the statute's technical requirements, its
>
> 9    liability will be determined under existing provisions of copyright law,
>
> 10    including the standards for third-party liability[.] … The fact that a
>
> 11    company chooses not to or fails to meet the requirements for any of the
>
> 12    specific limitations created by the Act may not itself be cited as evidence
>
> 13    of infringement.

14    1 Ian C. Ballon, *E-Commerce and Internet Law* § 4.12[1] (2015 update); *accord* 4 Mel-

15    ville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.06[B][1] (2015).

16    Thus, the Court "must consider [Tiger's] potential liability under the Copyright Act

17    without reference to title II of the DMCA."[4] *Perfect 10, Inc. v. Amazon.com, Inc.*, 508

18    F.3d 1146, 1159 n.4 (9th Cir. 2007).

19    **A. ALS fails to state a claim for contributory infringement because it cannot**

20    **allege that Tiger has materially contributed to any copyright infringement**

21    To state a claim for contributory infringement, ALS must allege that Tiger "(1)

22

---

23    [4] While ALS alleges that the "law requires parties to terminate business with repeat

24    infringers," FAC ¶ 83, no such law exists.

7

has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). ALS cannot satisfy the second prong as a matter of law.

ALS's assertion that Tiger provides support and services for publishers that operate allegedly infringing websites falls far short of alleging factual content that allows the Court to draw the reasonable inference that Tiger materially contributes to these publishers' infringing activity. As one court explained:

> Participation sufficient to establish a claim of contributory infringement may not consist of merely providing the "means to accomplish an infringing activity …" In order for liability to be imposed, the alleged *contributory infringer must make more than a "mere quantitative contribution" to the primary infringement*. Participation in the infringement must be "substantial." The authorization or assistance must bear *a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer*.

*Livnat v. Lavi*, No. 96-4967, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (emphasis added) (internal citations omitted); *accord Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-0371, 2004 WL 1773349, at *3 (C.D. Cal. Aug. 5, 2004).

The "material contribution" requirement is rooted in the notion that "one who directly contributes to another's infringement should be held accountable."

1  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Material con-

2  tribution may be found only when the defendant "engages in personal conduct that

3  ***encourages*** or ***assists*** the infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

4  1004, 1019 (9th Cir. 2001) (emphasis added).

5      "Material contribution" is more than passive participation. *See Fonovisa*, 76 F.3d

6  at 264. Material contribution has been found only where the defendant was actively

7  involved in supporting and enabling ***the infringing activity***. It has also been found in

8  limited circumstances where the defendant has provided hosting services that are

9  engaged in distribution of the infringing material. *See Religious Tech. Ctr. v. Netcom*

10  *On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995); *see also Louis*

11  *Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) (finding

12  that providing direct infringers with server space satisfies the material contribution

13  standard). As the court in *Netcom* explained,

14      Where a defendant has knowledge of the primary infringer's infringing
    activities, it will be liable if it "induces, causes or materially contributes

15      to the infringing conduct of" the primary infringer. Such participation
    must be substantial.

16

17  907 F. Supp. at 1375. Thus, "Material contribution turns on whether the activity in

18  question 'substantially assists' direct infringement." *Louis Vuitton*, 658 F.3d at 943.

19      Here, the FAC alleges in a conclusory fashion that "Tiger materially contributed

20  to the infringing conduct of its Publishers." FAC ¶ 62. The FAC lists (and mischar-

21  acterizes) various features of the JuicyAds ad network that have nothing to do with

22  a publisher's alleged infringing activity, let alone substantially assist direct infringe-

23  ment. For example, ALS alleges that "Tiger built and maintained a 'network,' a

24

'marketplace,' a 'community' and a 'platform' of Users, Publishers who sell traffic and Advertisers who buy traffic from Publishers." *Id.* But Tiger's building and maintaining an ad network does not substantially assist a publisher's direct infringement. Nor does "require[ing] potential users to apply for membership in [the JuicyAds ad] network," "provid[ing] customer service and detailed technical support for [Juicy-Ads] Users," "provid[ing] code that permits Publishers to put JuicyAds ads on their sites," "serv[ing] the ads on Publisher sites," "redirect[ing] traffic to purchasing Advertisers when a consumer clicks on the JuicyAds ad," or "charg[ing] Advertisers and pay[ing] Publishers for this traffic" substantially assist a publisher's direct copyright infringement. *Id.* Moreover, while ALS's allegation that "Tiger advertises, and provides valuable search tools and data regarding, each of its Publishers" is inaccurate,[5] *id.*, this does not substantially assist direct copyright infringement either.

ALS alleges that Tiger provides support (by facilitating the sale of ad space) for the businesses it challenges, but it does not allege (and cannot allege) that Tiger substantially participates in the ***infringing activity***. This distinction is critical. Copyright law does not demand a blockade of companies that are alleged to engage in infringing activity by imposing contributory infringement liability on vendors that do business with those companies. Copyright law merely forbids the substantial participation by others in infringing activity. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937–40 (2005) (holding distributors of peer-to-peer, de-centralized file-sharing software contributed to their users' infringement of copyrighted

---

[5] Despite ALS's conclusory allegation that it used the JuicyAds "search tools to locate eight additional Publishers in the JuicyAds network," FAC ¶ 54, JuicyAds "search tools" cannot be used to search for or locate content on publisher sites.

1    works because they knew of infringing conduct, directly marketed their products for

2    that use, and made no effort to filter or remove copyrighted material from the ser-

3    vice); *Napster*, 239 F.3d at 1022 (holding operator of centralized file-sharing service,

4    which affirmatively assisted users in swapping copyrighted music files, liable for con-

5    tributory infringement based on its knowledge that users were sharing copyrighted

6    files, and its failure to block access to those files); *Fonovisa*, 76 F.3d at 264 (holding

7    operators of swap meet where vendors circulated pirated tapes of copyrighted music

8    contributorily infringed by "providing the site and facilities for known infringing ac-

9    tivity").

10       The defendants in *Napster*, *Grokster*, and *Fonovisa* shared a common attribute

11   missing here—the infringing materials at issue were stored, maintained, and availa-

12   ble on systems or facilities ***actually operated by the defendants***. Grokster and Napster

13   made and distributed software that was known and intended to be used to store and

14   share infringing music files. *Fonovisa* involved an analogous but lower-tech opera-

15   tion—a swap meet where the sale of pirated music proliferated. *See Visa*, 494 F.3d

16   at 800 ("The swap meet operator in *Fonovisa* and the administrators of the Napster

17   and Grokster programs increased the level of infringement by providing a centralized

18   place, whether physical or virtual, where infringing works could be collected, sorted,

19   found, and bought, sold, or exchanged."). JuicyAds is not a swap meet, and infring-

20   ing materials are not stored, maintained, or available on Tiger's systems or facilities.

21       Copyright owners like ALS have increasingly sought to expand the scope of con-

22   tributory liability in the online context, hoping to ensnare third parties like Tiger who

23   have had only incidental relationships with the actual infringers but who may have

24

1   deeper pockets. Courts have rejected these efforts. In *Visa*, for example, the owner

2   of the copyrights in images of nude models sought to impose contributory liability on

3   Visa and others for processing credit card payments to the proprietors of numerous

4   websites that had "stolen [Perfect 10's] … images, altered them, and illegally offered

5   them for sale online." *Id.* at 793. Although the defendants' payment systems

6   "ma[d]e it easier for … infringement to be profitable, and … therefore had the effect

7   of increasing such infringement," *id.* at 799, the Ninth Circuit nonetheless affirmed

8   the Rule 12(b)(6) dismissal of the claims against the payment processors. In doing

9   so, it distinguished *Grokster*, *Napster*, and *Fonovisa*:

10          The actual display, location, and distribution of infringing images in this

11          case occurs on websites that organize, display, and transmit information

12          over the wires and wireless instruments that make up the Internet. The

13          *websites* are the "site" of the infringement, not Defendants' payment

14          networks. Defendants do not create, operate, advertise, or otherwise

15          promote these websites. They do not operate the servers on which they

16          reside. … Defendants merely provide a method of payment, not a

17          "site" or "facility" of infringement.

18   *Id.* at 799–800 (emphasis in original).

19          ALS advances the very same theory rejected by the Ninth Circuit in *Visa*. Tiger

20   does not create, operate, advertise, or otherwise promote the alleged infringing sites.

21   Tiger does not provide a "site or facility" of infringement; it simply serves ads on

22   publishers' sites, and its serving of those ads does nothing to assist consumers in

23

24

finding the infringing sites or the allegedly infringing works. *See Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398, 405 (D. Mass. 2011) ("while Chitika's advertising payments might make it easier for Saggi's infringement to be profitable, Chitika did not create, operate, advertise, or promote the infringing website, and its advertisements were not the 'site' of the infringement"). Even without ad content on the sites, the infringing activity could continue, and thus the ad content is not a material contribution. *See Visa*, 494 F.3d at 798 ("because infringement of Perfect 10's copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants … does not constitute a 'material contribution' …").

Thus, like the credit card companies in *Visa*, Tiger "cannot be said to materially contribute to the infringement in this case because [it] ha[s] no direct connection to that infringement." *Id.* at 796. As in *Visa*, ALS's does not (and cannot) "allege[ ] that any infringing material passes over [Tiger's] network or through [its] systems, or that [Tiger's] systems are used to alter or display the infringing images."[6] *See id.* And as in *Visa*, Tiger's system "do[es] not help locate and [is] not used to distribute the infringing images."[7] *See id.* Because ALS cannot allege substantial participation by Tiger in any infringing activity of third parties, the contributory infringement

---

[6] Though ALS alleges the contrary in paragraph 63 of the FAC, the majority of these "allegations" are false or mischaracterizations of JuicyAds. Publishers do not "publish infringing content in a network created and maintained by Tiger." JuicyAds has nothing to do with publishing content. Nor did Tiger ever admit that it can "remove or block access to material." Nor does Tiger "maintain search functions … that can assist or enable Internet users to locate infringing material." And Tiger has not "created a virtual centralized place where infringing works could be collected, sorted and found." ALS took many of these "allegations" from the cases it relies on.

[7] Maintaining a searchable directory of publisher sites does not help locate infringing images; it merely helps advertisers locate publisher sites to buy ads on.

claim must be dismissed. *See id.* (affirming 12(b)(6) dismissal of a claim for contributory infringement where plaintiff failed to allege that "any infringing material passes over Defendants' payment network or through their payment processing systems"); *see also UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1032 (9th Cir. 2013) (finding no contributory infringement against investors in file-sharing company where complaint alleged they helped fund infringement); *Miller v. Facebook, Inc.*, No. 10-00264, 2010 WL 1292708, at *4 (N.D. Cal. Mar. 31, 2010) (finding complaint's allegation that Facebook "induced and encourage infringement" was a "legal conclusion disguised as a factual allegation"); *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 189 (D.D.C. 2005) (dismissing contributory infringement claim against online business due to plaintiff's failure to allege a sufficient relationship between the services provided by the defendant and the infringing activity); *Livnat*, 1998 WL 43221, at *3 (dismissing as a matter of law contributory infringement action against advertisers who merely placed ads in a magazine that published infringing photos).

**B. ALS fails to state a claim for inducement liability as a matter of law**

To establish inducement liability, ALS must allege (1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). "The third, usually dispositive, requirement for inducement liability is that the 'device' or service be distributed 'with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.'" *Id.* at 1034 (quoting *Grokster*, 545 U.S. at 936–37).

1   In the FAC, ALS alleges in a conclusory fashion that "[a]ll named Defendants

2   (other than Dolphin), and Does 6–10, have induced infringement of ALS's copy-

3   rights." FAC ¶ 93. Nowhere in the FAC does ALS allege that Tiger distributes the

4   JuicyAds service "with the object of promoting its use to infringe copyright, as

5   shown by clear expression or other affirmative steps taken to foster infringement."

6   *Grokster*, 545 U.S. at 936–37. Nor does ALS allege that Tiger "provides a service

7   that could be used to infringe copyrights, with the manifested intent that the service

8   actually be used in that matter," *Fung*, 710 F.3d at 1037, let alone that Tiger "acted

9   with a purpose to cause copyright violations by use" of its service. *Grokster*, 545 U.S.

10   at 938. Nor does ALS allege that the JuicyAds service "was used to infringe [ALS's]

11   copyrights." *Fung*, 710 F.3d at 1037. Because ALS has alleged no "affirmative steps

12   taken to foster infringement" and alleged no facts suggesting that Tiger promoted

13   its ad network as a means to infringe, it fails to state a claim on which relief can be

14   granted for inducement liability as a matter of law.

15   **C. ALS cannot adequately plead a basis for Tiger's vicarious liability for**

16   **copyright infringement**

17   Nor does the FAC adequately state a claim for vicarious copyright infringement.

18   Vicarious infringement "is a concept related to, but distinct from, contributory in-

19   fringement." *Visa*, 494 F.3d at 802. "To state a claim for vicarious copyright in-

20   fringement, a plaintiff must allege that the defendant has (1) the right and ability to

21   supervise the infringing conduct and (2) a direct financial interest in the infringing

22   activity." *Id.* Thus, to state a claim for vicarious copyright infringement, ALS must

23   allege *both* control *and* benefit. ALS does not and cannot adequately allege either.

24

15

**1.   ALS fails to adequately allege that Tiger has the requisite right and ability to supervise and control infringing activity by publishers**

Tiger does not have the requisite right and ability to supervise and control the infringing conduct. "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Amazon.com*, 508 F.3d at 1173; *see also Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715 (9th Cir. 2014) ("A defendant has control over a third party's infringing conduct when the defendant can directly put an end to that conduct."). Thus, "For vicarious liability to attach," Tiger "must have the right and ability to *supervise* and *control* the infringement, not just affect it." *Visa*, 494 F.3d at 805. The FAC does not adequately allege that Tiger has the right and ability to supervise and control publishers' infringing activities.

ALS puts forth conclusory allegations that Tiger "ha[s], with the right and ability to control or supervise the direct infringement averred herein, failed to exercise such right and ability and ha[s] directly benefited financially from such infringing activity." FAC ¶ 96. But the Court should not accept these conclusions because "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context," *Iqbal*, 556 U.S. at 686, which is lacking here. As the Supreme Court explained in *Iqbal*, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Here, the FAC does not allege sufficient facts showing that Tiger had the legal right or practical ability to stop or limit publishers' direct infringement, nor could it. The TOS bars publishers from violating third parties' intellectual property rights.

16

1  *See* FAC ¶ 46. By the TOS's express terms, publishers are "solely responsible" for

2  the content of their sites. *See* TOS ¶ XIII ("User is solely responsible for the devel-

3  opment, operation and maintenance of their website and all materials that appear on

4  Users' websites used in connection with the JuicyAds service."). If Tiger discovers

5  a publisher is infringing a third party's rights, ***it can only suspend or terminate the***

6  ***publisher's account***.[8] *See id.* at ¶ IV; *see also* FAC ¶ 46 ("JuicyAds reserves sole dis-

7  cretion and ability to suspend or terminate any Users' account at any time.").

8  ALS appears to have modeled its case on the claims asserted by Perfect 10 against

9  Google, whose AdSense agreements gave it "the right to monitor and terminate part-

10  nerships with entities that violate others' copyrights." *Amazon.com*, 508 F.3d at 1173.

11  But the Ninth Circuit rejected Perfect 10's argument. *See id.* Because "Google's

12  right to terminate an AdSense partnership [did] not give Google the right to stop

13  direct infringement by third-party websites," and Google could not "terminate those

14  third-party websites or block their ability to host and serve infringing [content] on

15  the Internet," Google lacked any ability to supervise and control the infringement,

16  and thus could not be liable for vicarious infringement.[9] *Id.* at 1173–74.

17

18  [8] Tiger's referenced DMCA page does not support ALS (Tiger has since posted a
    new DMCA page). It merely says it is Tiger's "policy" to "remove or block access

19  to material …." *See* FAC ¶ 47 (quoting DMCA page). It does not say Tiger can ac-
    tually remove or block access to publisher sites (which Tiger can't).

20  [9] The Ninth Circuit further distinguished Google from the activities of the vicarious

21  infringers in the *Napster* and *Fonovisa* cases on the ground that, unlike the swap meet
    operated in *Fonovisa*, or the host of the file-sharing service in *Napster*, "Google lacks

22  the practical ability to police the infringing activities of third-party websites." *Ama-*
    *zon.com*, 508 F.3d at 1174. Similarly, ALS does not (and cannot genuinely) allege that

23  Tiger has the practical ability to police publishers, or that its technology has the abil-

24  ity to identify the precise nature of the content that appears on a publisher's site.

1    The Ninth Circuit reached a similar conclusion in *Visa* in rejecting vicarious lia-

2    bility as a matter of law. In *Visa*, Perfect 10 alleged that the defendant credit card

3    companies had the right and ability to control the allegedly infringing acts of websites

4    by not processing payments on those websites. 494 F.3d at 802. But the court found

5    those allegations insufficient to state a claim. The "mere ability to withdraw a finan-

6    cial 'carrot,'" it found, "does not create the 'stick' of 'right and ability to control'

7    that vicarious infringement requires." *Id.* at 803. Thus, Visa's ability to stop pro-

8    cessing payments and thereby reduce profitability of infringement did not amount to

9    an ability to control the infringement because the infringement "does not turn on the

10   payment; it turns on the reproduction … and distribution of the images, which

11   [credit card processors] do not do …." *Id.* at 806; *see also Routt*, 584 F. App'x at 715

12   (affirming dismissal of vicarious liability claim; complaint failed to "adequately al-

13   lege that Amazon exercises any direct control over … Associates' activities"); *Mil-*

14   *ler*, 2010 WL 1292708, at *5 (dismissing vicarious liability claim where complaint

15   failed to allege Facebook had right or ability to supervise infringing conduct).

16       ALS's claims are indistinguishable from the claims asserted and rejected in *Am-*

17   *azon.com* and *Visa*. Both decisions dismissed claims for vicarious liability as a matter

18   of law. As in *Visa*, Tiger "cannot take away the tools the offending websites use to

19   produce, alter, and distribute the infringing images over the Internet." 494 F.3d at

20   804. As in *Amazon.com*, while Tiger can terminate a publisher's account, exercising

21   that right would not stop any direct infringement or terminate the site's ability to

22   host and serve infringing content, and thus Tiger is powerless to stop a publisher

23   from continuing its infringing activity. *See* 508 F.3d at 1173–74. The publisher may

24

18

still copy ALS's photos and post them on its site, without Tiger's aid, approval, or even knowledge. *See id.* at 1174. Thus, Tiger's ability to stop serving ads is not tantamount to the ability to control infringement because (1) Tiger's "ability to exert financial pressure does not give [it] the right or ability to control the actual infringing activity at issue," *Visa*, 494 F.3d at 804, and (2) the infringement does not turn on the ads but on the reproduction and distribution of the infringing works, *see id.* at 806. *Accord Routt*, 584 F. App'x at 715 ("Routt has alleged nothing to suggest that an infringing Associate could not 'continue to reproduce, display, and distribute its infringing copies of [Routt's] images after its participation in the [Amazon Associates] program has ended.' Thus, while Amazon may have had the right and ability to terminate the accounts of the infringing Associates, Routt has not adequately alleged that Amazon exercises any direct control over those Associates' activities.").

Because ALS fails to adequately allege facts showing that Tiger has the right or ability to supervise and control the alleged infringement, the FAC fails to state a claim for vicarious liability against Tiger as a matter of law. *See Amazon.com*, 508 F.3d at 1173–74; *Visa*, 494 F.3d at 804; *see also Routt*, 584 F. App'x at 715–16.

### 2. As a matter of law, Tiger does not have a direct financial interest in the alleged infringement

ALS similarly fails to sufficiently allege facts establishing the requisite direct causal relationship between the alleged infringing activities and Tiger's commission for serving ads on the alleged infringing sites. ALS alleges that Tiger "ha[s] directly benefited financially from such infringing activity." FAC ¶ 96. According to ALS, Tiger "profit[s] from the draw of infringement," *id.* at ¶ 6, and "make[s] money by

1  continuing to do commerce with sites that draw traffic through the lure of free in-

2  fringing content." *Id.* at ¶ 83. ALS's reliance on "ultimate" earnings by Tiger

3  demonstrates its inability to allege a "direct" financial benefit as required by law.

4      To sufficiently allege a direct financial interest, ALS must allege some relation-

5  ship between the infringing activity (here, making and distributing unauthorized cop-

6  ies of photos), and the revenue Tiger receives from advertisers. *See Ellison*, 357 F.3d

7  at 1079 ("Financial benefit exists where the availability of infringing material acts as

8  a 'draw' for customers."). There must be a symbiotic relationship between the di-

9  rect infringers and another third party for the second party to be liable. *Adobe Sys.*

10 *Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1051 (C.D. Cal. 2001). For liability to

11 be imposed on the second party, its relationship with the direct infringer must be

12 "more than a mere financial benefit to the landlord because the very success of the

13 landlord's venture depends on the counterfeiting activity." *Id.* In cases where an ad-

14 equate financial benefit to support liability has been found, the defendant's financial

15 benefit is derived from the fact that its services are used for the purpose of the in-

16 fringing activity. In *Fonovisa*, the landlord provided the physical facilities for distri-

17 bution of counterfeit goods. 76 F.3d at 261. In *Napster*, the defendant provided a cen-

18 tral index of locations of infringing files that was the linchpin of the file-sharing sys-

19 tem. 239 F.3d at 1011.

20     ALS does not (and cannot) allege that Tiger provided a site, method, or tool for

21 infringing activities. ALS's allegations "do not demonstrate that a symbiotic rela-

22 tionship existed between [Tiger] and the infringing [publishers] such that [Tiger's]

23 success (or even existence) came to depend on the" publishers' infringing activities.

24

20

1   *Adobe*, 173 F. Supp. 2d at 1053. Rather, publishers earn ad revenue when consum-

2   ers—who locate publishers' sites without any assistance from Tiger—click on ads

3   that lead them ***away*** from the publishers' sites. Thus, Tiger's serving ads on pub-

4   lishers' sites does not relate to infringement at all, because publishers could earn ad

5   revenue regardless of the content offered on their sites. Indeed, a court in this Dis-

6   trict found that ad revenue cannot be used to demonstrate a causal relationship be-

7   tween the infringing activity and a financial benefit to a defendant. *See Perfect 10, Inc.*

8   *v. Google, Inc.*, No. 04-9484, 2010 WL 9479060, at *9 (C.D. Cal. July 30, 2010) (con-

9   cluding that the plaintiff failed to provide evidence showing ads next to infringing

10  works, and stating that even if the plaintiff produced that evidence, "it is unclear that

11  such evidence would qualify as the direct financial benefit necessary to impose vicar-

12  ious liability").[10]

13      In short, ALS has not alleged—and cannot allege—facts supporting any conclu-

14  sion that Tiger has obtained a direct financial benefit from the infringing activity. *See*

15  *Ellison*, 357 F.3d at 1079 (finding no various infringement where "record lacks evi-

16  dence that AOL attracted or retained subscriptions because of the infringement or

17  lost subscriptions because of AOL's eventual obstruction of the infringement").

18

19  [10] *Accord Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (dismissing

20  claim for vicarious infringement where plaintiff had not alleged any relationship be-
    tween infringing activity and Google's advertising revenue), *aff'd*, 242 F. App'x 833

21  (3d Cir. 2007); *Sarvis v. Polyvore, Inc.*, No. 12-12233, 2013 WL 4056208, at *9–10 (D.
    Mass. Aug. 9, 2013) (finding that plaintiff's assertions made in opposition to motion

22  to dismiss—namely, that the defendant's financial interest is demonstrated by "ad-
    vertising [sic] on the contest page, from fees it charges its advertising underwriter

23  (e.g. Samsung), and because its contest are User base draws"—do not constitute a

24  plausible claim that defendant benefited financially from the infringement).

**II. ALS fails to state a claim for contributory trademark infringement**

ALS's contributory trademark claim fails for the same reasons that its copyright claims fail. Liability for indirect infringers is even narrower under trademark law than under copyright law. *See Visa*, 494 F.3d at 806 ("The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement."). Because ALS has failed to allege facts sufficient to support a claim for contributory copyright infringement, it necessarily has failed to allege facts sufficient to support a claim for contributory trademark infringement. *See id.*; *see also Newborn*, 391 F. Supp. 2d at 190–91 (finding conclusory allegations that defendant allowed a third party to use mark failed to state a claim).

To state a claim for contributory trademark infringement, ALS must allege that Tiger (1) "intentionally induced" another to infringe *or* (2) continued to supply an infringing product to an infringer with knowledge of infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982). When the alleged direct infringer supplies a service rather than a product, there must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Visa*, 494 F.3d at 807. ALS has not alleged facts sufficient to support either potential basis for contributory trademark infringement liability.

**A. ALS cannot allege that Tiger intentionally induced any publisher to infringe ALS's trademarks**

The first basis for liability set out in *Inwood*, intentional inducement to infringe, is inadequately alleged in the FAC. *See* FAC ¶¶ 85, 106 (making conclusory allegations about inducement of trademark infringement). ALS simply has not alleged sufficient

1  facts that would lend support to a claim that Tiger has intentionally induced any pub-

2  lisher to use—much less infringe—any ALS trademark. Thus, the first basis for con-

3  tributory trademark infringement liability cannot apply in this case.

4  **B. ALS cannot allege that Tiger had direct control and monitoring of the**

5  **instrumentality used by a third party to infringe**

6  The second possible basis for potential contributory trademark infringement lia-

7  bility recognized in *Inwood* requires ALS to allege that (1) Tiger "continued to supply

8  its services to one who it knew or had reason to know was engaging in trademark

9  infringement," *Louis Vuitton*, 658 F.3d at 942, and (2) that Tiger "had '[d]irect con-

10  trol and monitoring of the instrumentality used by a third party to infringe'" ALS's

11  marks. *Id.* (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984

12  (9th Cir. 1999)). ALS fails to adequately allege "direct control and monitoring."

13  Here, Tiger has no control over publishers' infringing actions. No Tiger service

14  is allegedly used in or as part of any infringing act, as required by *Inwood* and *Lockheed*

15  *Martin*. The FAC does not (nor can it) allege that Tiger can control the content of

16  any publisher site, or that Tiger provides a service that is necessary for the infringe-

17  ment to take place. And unlike *Louis Vuitton*, where the web hosting businesses "had

18  direct control over the 'master switch' that kept the websites online and available,"

19  958 F.3d at 943, Tiger does not have "direct control," let alone any control, "over

20  the 'master switch' that [keeps] the [publishers'] websites online and available." *Id.*

21  Because the FAC does not allege that Tiger has "induced" the infringement of

22  ALS's trademarks, or that Tiger has any control over the "instrumentality" used by

23  publishers to allegedly infringe ALS's trademarks, the Court must dismiss this claim.

24

III.    **ALS fails to state a claim for unfair competition as a matter of law**

Finally, ALS alleges that the "acts of trademark infringement, direct and secondary, constitute unfair competition under Cal. Bus. & Prof. Code § 17200." FAC ¶ 108. The Ninth Circuit "has consistently held that … actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Because it fails to state a claim against Tiger for contributory trademark infringement under the Lanham Act, ALS's § 17200 unfair competition claim necessarily fails as well. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) ("Japan Telecom's California unfair competition claim fails because its related Lanham Act claims fail.").

## Conclusion

ALS has alleged four claims against Tiger in this action, all of which can be boiled down to a single premise: that it can somehow create a duty on the part of Tiger (or virtually anyone else) to undertake the burden of policing ALS's rights against third-party infringers by the simple expedient of demanding that Tiger do so.[11] No such free-floating "duty by tag" exists under any of the legal doctrines asserted by ALS,

---

[11] Tiger has not received any complaints regarding StolenALSPictures.com from ALS or anyone else. And ALS does not dispute that its employee created that site and uploaded ALS's content. *See* FAC ¶¶ 55–56. Yet ALS faults Tiger because it failed to locate and remove this site because the site claims its content is stolen (even though it is not stolen). *See id.* at ¶ 57. But as the Ninth Circuit explained, "When a website traffics in pictures that are titillating by nature, describing photographs as 'illegal' or 'stolen' may be an attempt to increase their salacious appeal, rather than an admission that the photographs are actually illegal or stolen. We do not place the burden of determining whether photographs are actually illegal on a service provider." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007).

or any other legal theory. This is not a mere failure to allege the right facts, and it is not a failure that can be cured by more artful pleading. Rather, it is a fundamental misunderstanding of the law, which—if accepted by this Court—would erase the line between infringers and the rest of the world. ALS may well have a legitimate claim against some website operators who have misappropriated its property. But that claim is against those third parties, and ALS's remedy is to sue them, not Tiger. ALS cannot appoint Tiger as a more convenient proxy for those alleged infringers.

For these reasons, this Court should reject ALS's misguided attempt to impose secondary liability on Tiger. Tiger's contractual relationship with independent third parties that allegedly infringed ALS's rights does not render Tiger liable for their acts. The law requires much more. And simply because Tiger's name appears on third-party sites does not render it responsible for the contents of those sites. Were that the rule, all advertisers would become guarantors of the content of pages where their ads appear. Such a requirement would severely constrain online advertising, and result in a dangerous expansion of infringement liability on traffic networks. Because ALS's theory fails as a matter of law, and because it has no basis from which to allege a viable claim, the Court should dismiss the claims against Tiger with prejudice.

                    Respectfully submitted,

By:    /s/Kevin S. Toll

       KEVIN S. TOLL (appearing *pro hac vice*)
       SILVERSTEIN LEGAL
       *Attorneys for Defendant Tiger Media Inc.*

Dated: September 5, 2016

25