Gary L. Bostwick (Cal. Bar. No. 79000)
gbostwick@B1Law.com
**BOSTWICK LAW**
12400 Wilshire Blvd., Ste. 400
Los Angeles, CA 90025
(310) 979-6059

Corey D. Silverstein (admitted *pro hac vice*)
corey@silversteinlegal.com
Kevin S. Toll (admitted *pro hac vice*)
kevin@silversteinlegal.com
**SILVERSTEIN LEGAL**
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 290-0655

Lawrence G. Walters (admitted *pro hac vice*)
larry@firstamendment.com
**WALTERS LAW GROUP**
195 W. Pine Ave.
Longwood, FL 32750
(407) 975-9150

Attorneys for Defendant Tiger Media Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.,** | Case No. 2:16-cv-05051-GW-AFM |
| *ALS*, | **Reply in Support of Motion by Defendant Tiger Media Inc. to Dismiss ALS's First Amended Complaint for Failure to State a Claim** |
| v. | |
| **CLOUDFLARE, INC.,** et al., | |
| *Defendants*. | Date: October 3, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 10<br>Judge: Hon. George H. Wu |

# Table of Contents

Table of Authorities ................................................................ ii

Introduction ..................................................................... 1

Argument ....................................................................... 2

I.   The Opposition fails to rebut Tiger's argument that ALS's secondary
     copyright infringement claims fail as a matter of law .................................. 2

     A.    ALS fails to state a claim for contributory infringement .................... 2

     B.    ALS fails to state a claim for inducement infringement .................... 11

     C.    ALS fails to state a claim for vicarious infringement ......................... 14

II.  The Opposition fails to support ALS's claims for secondary trademark
     infringement .................................................................. 17

     A.    ALS fails to state a claim for inducing infringement ......................... 17

     B.    ALS fails to state a claim for contributory infringement ................... 19

III. The Opposition confirms ALS's unfair competition claim fails ................. 20

Conclusion ..................................................................... 21

# Table of Authorities

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...................................................................passim

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................14

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ...................................................................11, 13

*Elsevier Ltd. v. Chitika, Inc.*,
  826 F. Supp. 2d 398 (D. Mass. 2011) ...........................................................7, 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ......................................................................2, 3, 4

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ..............................................................12

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971) .......................................................................2, 8

*Gucci Am., Inc. v. Frontline Processing Corp.*,
  721 F. Supp. 2d 228 (S.D.N.Y. 2010) ...................................................17, 18, 19

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir. 2001)..........................................................................16

*Intamin, Ltd. v. Magnetar Tech. Corp.*,

   623 F. Supp. 2d 1055 (C.D. Cal. 2009) ................................................ 16

*Livnat v. Lavi*,

   No. 96-4967, 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)........................................ 2

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,

   658 F.3d 936 (9th Cir. 2011) .............................................. 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

   545 U.S. 913 (2005) ............................................. 3, 4, 11, 13

*Papasan v. Allain*,

   478 U.S. 265 (1986) ............................................. 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,

   487 F.3d 701 (9th Cir. 2007), *amended by* 508 F.3d 1146 (9th Cir. 2007) ..........3, 4

*Perfect 10, Inc. v. Amazon.com, Inc.*,

   508 F.3d 1146 (9th Cir. 2007) .......................................................passim

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,

   213 F. Supp. 2d 1146 (C.D. Cal. 2002).........................................9, 10, 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

   494 F.3d 788 (9th Cir. 2007) .....................................................passim

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

   No. 04-0371, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ................................. 5[*]

---

[*] In its previous filings (Docs. 36 and 41), Tiger inadvertently identified the district court in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n* as the Central District instead of the Northern District. Tiger apologizes for this error.

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,

   907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................................... 2

*Routt v. Amazon.com, Inc.*,

   584 F. App'x 713 (9th Cir. 2014) ............................................................ 14, 15, 17

*Schneider v. Cal. Dep't of Corrections*,

   151 F.3d 1194 (9th Cir. 1998) ........................................................................... 12

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*,

   256 F. Supp. 399 (S.D.N.Y. 1966)..................................................................... 8, 9

*Sony Corp. of Am. v. Universal City Studios, Inc.*,

   464 U.S. 417 (1984) ........................................................................................... 12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,

   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................. 20

*Stitt v. Citibank, N.A.*,

   942 F. Supp. 2d 944 (N.D. Cal. 2013)............................................................... 6, 7

**Statutes**

17 U.S.C. § 106 ................................................................................................. 5, 9

**Rules**

Fed. R. Civ. P.  8 ................................................................................................... 14

Fed. R. Civ. P. 11 ................................................................................................. 14

Fed. R. Civ. P. 12 ................................................................................................. 12

## Introduction

ALS's Opposition to Tiger's Motion to Dismiss ("Opposition") fails to grasp the importance of the key aspects of Tiger's business—even as described by ALS: (1) Tiger does not promote or otherwise control infringing content on publisher websites; (2) Tiger only brokers the sale of advertisements that lead users away from the allegedly infringing content; and (3) none of the products or services promoted by Tiger's advertisers are claimed to be infringing. As a result, Tiger cannot be held liable for infringement by third parties.

The Opposition further rests on a profound misreading of the caselaw, unpled allegations, and on wishful thinking applied to aggressive, but inadequate, pleading. While ALS has made some conclusory allegations in its First Amended Complaint ("FAC") to try to overcome deficiencies in its original complaint, ALS still cannot state a viable claim on any of its theories.

ALS fails to allege that Tiger actually participates in, supervises, or supports any infringing activity. ALS confuses the difference between infringing activities and ad networks. Tiger, by operating an ad network and serving ads on third-party sites, does not insert itself into or control infringements. ALS's characterization of JuicyAds as providing "valuable services" does not support Tiger's liability for the conduct of third-party sites.

ALS's flawed opposition cannot withstand Tiger's motion, and it furnishes no reason to believe that ALS can ever adequately plead any of the causes of action it has asserted.

**Argument**

**I. The Opposition fails to rebut Tiger's argument that ALS's secondary copyright infringement claims fail as a matter of law**

**A. ALS fails to state a claim for contributory infringement**

ALS misinterprets the law when it argues that Tiger "materially contributes" to third-party publishers' infringement. Contributory liability does not arise here because Tiger does not "directly contribute[ ] to another's infringement," *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); "engage[ ] in personal conduct that encourages or assists the infringer," *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001); "materially contribute[ ] to the infringing conduct," *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); or "act in concert with the direct infringer," *Livnat v. Lavi*, No. 96-4967, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998). By ignoring the *material* contribution *to the infringing conduct* requirement, ALS advocates a standard that would hold anyone contributorily liable who provides a useful service to a known infringer. Such a far-reaching theory of liability should not be countenanced by this Court.

The Opposition ignores the prevailing law on what constitutes a material contribution. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), is squarely on point and cannot be ignored. In *Visa*, Perfect 10 "sued because Defendants continue[d] to process credit card payments to websites that infringe[d] Perfect 10's intellectual property rights after being notified by Perfect 10 of infringement by

2

those websites." *Id.* at 792.

The Ninth Circuit held that "[t]he credit card companies cannot be said to materially contribute to the infringement in this case ***because they have no direct connection to that infringement***." *Id.* at 796 (emphasis added). It explained that "the infringement rests on the reproduction, alteration, display and distribution of Perfect 10's images over the Internet." *Id.* "Perfect 10 has not alleged that any infringing material passes over Defendants' payment networks or through their payment processing systems, or that Defendants' systems are used to alter or display the infringing images." *Id.* The court distinguished *Fonovisa*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), *amended by* 508 F.3d 1146 (9th Cir. 2007), *Napster*, and *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005):

> In *Fonovisa*, the infringing material was physically located in and traded at the defendant's market. Here, it is not. Nor are Defendants' systems used to locate the infringing images. The search engines in *Amazon.com* provided links to specific infringing images, and the services in *Napster* and *Grokster* allowed users to locate and obtain infringing material. Here, in contrast, the services provided by the credit card companies do not help locate and are not used to distribute the infringing images. While Perfect 10 has alleged that Defendants make it easier for websites to profit from this infringing activity, the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would still be infringement.

1    *Visa*, 494 F.3d at 796.

2        *Visa* is dispositive of ALS's contributory infringement claim. Tiger "cannot be

3    said to materially contribute to the infringement in this case because [it] ha[s] no

4    direct connection to that infringement." *Id.* As in *Visa*, "the infringement rests on

5    the reproduction, alteration, display and distribution of [ALS's] images over the In-

6    ternet." *Id.* As in *Visa*, ALS has not alleged that any infringing material passes over

7    [Tiger's ad network] or through [its] … systems, or that [Tiger's] systems are used

8    to alter or display the infringing images." *Id.* Unlike *Fonovisa* and like *Visa*, "the in-

9    fringing material [is not] physically [or virtually] located in and traded [on] [Tiger's

10   ad network]." *Id.* Nor, as in *Visa*, is Tiger's "system[ ] used to locate the infringing

11   images," *id.*, notwithstanding ALS's conclusory "allegations" to the contrary.[1] As

12   the Ninth Circuit explained in *Visa*, "The search engines in *Amazon.com* ***provided***

13   ***links to specific infringing images***, and the services in *Napster* and *Grokster* ***allowed***

14   ***users to locate and obtain infringing material***." *Id.* (emphasis added). In contrast,

15   here, as in *Visa*, "the services provided by [JuicyAds] do[es] not help locate and are

16   not used to distribute the infringing images." *Id.* As in *Visa*, "While [ALS] has al-

17   leged [at least implicitly] that [Tiger] make[s] it easier for [publisher] websites to

18   profit from this infringing activity, the issue here is reproduction, alteration, display

19   and distribution, which can occur without [ad revenue from third-party ads]."

20       The Opposition tries to distinguish *Visa* by emphasizing facts immaterial to its

21

---

22   [1] ALS's factual description of the "search" functions on JuicyAds demonstrates that
the network does not provide the ability to actually locate infringing material, but at

23   most, permits advertisers to filter limited metric data and technical information as-

24   sociated with publisher sites. FAC ¶ 49.

holding. For example, ALS emphasizes that "Visa[2] was three steps removed from merchants with allegedly infringing works." Opp'n 18:3–4. The opinion does not say Visa or any other defendant was "three steps removed from merchants with allegedly infringing works." Moreover, the allegation that "Tiger has direct contractual and business relationships with Publishers and Advertisers," *id.* at 18:13–14, is not a fact distinguishing this case from *Visa* because that does not materially contribute, substantially assist, or have a direct connection to the alleged infringing activities of the publisher websites.[3]

ALS argues that, unlike "Visa," "Tiger maintained a network including Publishers with infringing works, serving as the central hub without which the network would cease to exist." *Id.* at 18:14–16. This assertion is not alleged in the FAC and does not establish that Tiger materially contributes to the alleged ***infringing activities*** of the third-party publishers. All infringing activities occur outside of and independent of the JuicyAds ad network.

Next, ALS alleges that unlike "Visa," "Tiger can 'remove or block access to material that it believes in good faith to be copyrighted material that has been illegally

---

[2] Visa was not the only defendant involved in *Visa*. Besides Visa, First Data Corp. ("FDC"), Cardservice International, Inc. ("CSI"), Humboldt Bank, and Mastercard International, Inc. were also defendants. Indeed, defendants FDC and CSI were Independent Service Organizations, which "can act in lieu of an acquiring bank [which contract with merchants] as an agent for member banks." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-0371, 2004 WL 1773349, at *3 (N.D. Cal. Aug. 5, 2004). Thus, FDC and CSI were not "three steps removed."

[3] Significantly, ALS failed to plead any conduct by Tiger that contributes to a violation of any of the exclusive rights of the copyright holder listed in 17 U.S.C. § 106: Tiger is not alleged to contribute to reproduction of works; preparation of derivative works; distribution of copies to the public by sale or other transfer of ownership, or by rental, lease, or lending; public display; or public performance of ALS's works.

copied and distributed.'" *Id.* at 18:17–18. Even accepting this conclusory and con-
flicting allegation as true (*compare* FAC ¶ 47, *with* FAC ¶ 63), it is not alleged that
Tiger claimed it can remove or block access to third-party material residing on third-
party websites located on systems and servers outside of its control. Tiger can only
logically remove or block access to material that is located on (or passes through) its
system or servers, and the FAC fails to allege that any of the infringing content at
issue is located on (or passes through) Tiger's system or servers. Indeed, ALS admits
"neither Tiger nor Visa served or transmitted infringing works." Opp'n 18:9.

ALS also claims that "Tiger maintains search functions on its website that can
'assist or enable Internet users to locate infringing material.'" *Id.* at 18:19–20 (quot-
ing *Visa*, 494 F.3d at 797). This allegation—which found its way into the FAC (*see*
FAC ¶ 63) from the argument section of ALS's preliminary injunction memorandum
(*see* Pl.'s Mem. Supp. Prelim. Inj. 18:23–24)—is unsupported by ALS's own docu-
mentary evidence as Tiger explains in its opposition to that motion. *See* Tiger's
Mem. Opp'n Prelim. Inj. 10–11 n.5. Regardless, "mere conclusions couched in fac-
tual allegations are not sufficient to state a cause of action." *Stitt v. Citibank, N.A.*,
942 F. Supp. 2d 944, 951 (N.D. Cal. 2013) (citing *Papasan v. Allain*, 478 U.S. 265,
286 (1986)); *see also* n.1, *supra*.

Similarly, ALS draws from *Visa* to claim that "'"'it would be difficult for the [Pub-
lishers'] infringing activity to take place in the massive quantities alleged without the
support services provided by [Tiger]."'" Opp'n 18:21–23 (quoting *Visa*, 494 F.3d at
798). Again, this conclusory allegation (*see* FAC ¶ 63) lacks the factual support re-
quired to plausibly state a claim. ALS fails to identify a single service that materially

contributes, substantially assists, or has a direct connection to the alleged infringing activities of the publisher sites. Serving ads for non-infringing products or services on third-party sites does not directly (or substantially) assist third-party publishers in reproducing, altering, displaying, or distributing ALS's works.

Finally, ALS reproduces language from *Visa* to claim that "Tiger created a 'virtual' 'centralized place ... where infringing works could be collected, sorted [and] found,'" *id.* at 18:24–25 (quoting *Visa*, 494 F.3d at 799), and that "Tiger 'advertise[s] [and] otherwise promote[s]' its Publisher websites," *id.* at 18:26–27 (quoting *Visa*, 494 F.3d at 800). While these bare bones statements appear in the FAC, *see* FAC ¶ 63, "mere conclusions couched in factual allegations are not sufficient to state a cause of action." *Stitt*, 942 F. Supp. 2d at 951. ALS alleges no facts that even hints at an inference that Tiger created any "virtual" "centralized place" "where infringing works could be collected, sorted, [and] found[.]" It is worth repeating: ALS admits that Tiger does not serve or transmit infringing works. *See* Opp'n 18:9. Likewise, ALS fails to allege any facts showing that Tiger advertises or otherwise promotes the infringing content, let alone the infringing websites.

The remaining alleged distinctions between *Visa* and this case—that "Tiger served ads on the Publisher sites," *id.* at 18:27–28; "transported traffic driven to its servers from Publisher sites to purchasing Advertisers," *id.* at 18:28–19:1; "directly paid Publishers," *id.* at 19:1–2; and "directly retained monies paid by Advertisers for traffic from sites drawn through the lure of infringing content," *id.* at 19:2–3—do not change the result. Indeed, the district court in *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398 (D. Mass. 2011), had no trouble extending the reasoning of *Visa* to an

1   online advertising network similar to JuicyAds.[4] *See id.* at 405–06 (stating belief that

2   materiality had not been met, but basing decision on lack of knowledge).

3       ALS relies on *Gershwin* and *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records,*

4   *Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966), for the proposition that "[c]ourts have long

5   held that advertising or promotional services to direct infringers can be a material

6   contribution for purposes of contributory liability." Opp'n 11:27–28. Neither of

7   these decades-old decisions support ALS. In *Gershwin*, the Second Circuit found ma-

8   terial contribution in the defendant's "pervasive participation in the formation and

9   direction of [an] association" that put on concerts at which copyrighted musical

10  compositions were performed. 443 F.2d at 1163. The defendant organized the con-

11  certs, helped select and book artists, prepared budgets and artist contracts, created

12  publicity kits, held one-week membership campaigns, and compiled a report of the

13  proceeds of the concerts. *Id.* at 1160–61. Nothing Tiger does is comparable. Moreo-

14  ver, the promotional activities in *Gershwin* directly related to the infringing musical

15  compositions. Here, Tiger promotes the sale of ad space, not infringing content.

16      In *Screen Gems*, the district court denied summary judgment to an ad agency that

17  placed ads for the sale of infringing records, a radio station which broadcast the ads

---

18  [4] ALS also claims that this case is distinguishable from *Visa* because "Tiger admitted

19  into its network a site that proclaimed it published infringing content," Opp'n 19:4–

20  5; "said it would terminate repeat infringers," *id.* at 19:5; and "ignored its own pol-

      icy," *id.* at 19:6. Tiger does not "admit" sites into its network. Publishers signup for

21  JuicyAds.com and add their websites. ALS admits in the FAC that its employee

      planted the "site that proclaimed it published infringing content." *See* FAC ¶¶ 55–

22  56. As to ALS's claims that "Tiger said it would terminate repeat infringers" and

      that "Tiger ignored its own policy," these conclusory allegations are not only imma-

23  terial to the Ninth Circuit's holding in *Visa*, but the Ninth Circuit explicitly rejected

24  them in the vicarious liability context. *Visa*, 494 F.3d at 804.

1  for the sale of infringing records, and a packaging agent that shipped the infringing

2  records. 256 F. Supp. at 401–02, 404–05. Here, again, JuicyAds did not place ads for

3  the sale of infringing images (or otherwise promote the infringing images), let alone

4  advertise (or otherwise promote) the infringing sites.

5      ALS's argument inaccurately compares the JuicyAds ad network to "the net-

6  works maintained by … Napster, Grokster, Lime Group and Fung."[5] Opp'n 17:18–

7  19. The differences between those "networks" and JuicyAds is stark: in those "net-

8  works," the act of infringement could not have taken place in the manner it did with-

9  out the assistance of those networks; in the JuicyAds ad network," the act of in-

10  fringement takes place without JuicyAds's assistance because the JuicyAds ad net-

11  work has nothing to do with the act of infringement. ALS argues that without

12  "Tiger's assistance," "the JuicyAds network would cease to exist." *Id.* at 17:22–23.

13  Of course that is true, but it does not follow that the infringing activity would cease

14  to exist on the publisher websites or be impacted in any way. ALS cannot allege that

15  Tiger provides a "site and facilities"—either literal or metaphorical—for infringing

16  activity, and it cannot allege that Tiger provides any tools or instruments for viola-

17  tions of the § 106 rights of a copyright owner.

18      An examination of the facts of *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.

19  Supp. 2d 1146 (C.D. Cal. 2002), illustrates that case is inapposite. In *Cybernet*, the

20  court preliminarily ruled that Cybernet, an adult age-verification company that sold

21  memberships to a network of adult sites, "will succeed in establishing Cybernet's

22

---

23  [5] ALS includes a reference to "Cybernet Ventures," but Cybernet's business model
    is factually distinct from the peer-to-peer business models of Napster, Grokster,

24  Lime Group, and Fung.

material contributions to the infringing activity." *Id.* at 1170. The court found that "Cybernet markets the Adult Check brands through advertising, it pays webmasters commissions directly based upon the number of Adult Check users that register through the site, it provides technical and content advice, it reviews sites, and it attempts to control the quality of the 'product' it presents to consumers as a unified brand." *Id.* According to the court, "Cybernet's entire business model is premised on harnessing the competitive pressures between individual webmasters into a cooperative system that benefits the webmasters by increasing the overall value to consumers." *Id.* Thus, the court concluded that "Cybernet's hand in Adult Check, and in particular its steady payments to infringing sites along with its advertising, materially contribute to the growth and proliferation of any infringement." *Id.* at 1171. *Accord Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials.").

Unlike in *Cybernet*, Tiger provides content-neutral services. There is no allegation that Tiger promotes the content of publisher websites to consumers, let alone sends traffic to those websites. Tiger does not have content-specific regulations with which publishers must comply before using JuicyAds's services as Cybernet did. Further, Tiger does not hold out certain publishers as being providers of a particular quality of product. Finally, Tiger does not sell memberships to consumers to view publishers' content as Cybernet did. Instead, Tiger is concerned solely with serving ads and brokering the purchase and sale of ad space.

The Opposition fails to demonstrate how Tiger directly contributed to any publisher's infringement, engaged in personal conduct that encourages or assists any infringer, materially contributed to the infringing conduct, or acted in concert with any direct infringer. Thus, ALS fails to state a claim for contributory infringement.

**B. ALS fails to state a claim for inducement infringement**

In its Opposition, ALS argues that Tiger is liable for inducing infringement of its copyrighted works relying on *Grokster* and *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013). But *Grokster* found inducement liability based on facts not alleged or present here—clear evidence of "culpable intent" and "a patently illegal objective." 545 U.S. at 934–35, 939–41. The *Grokster* defendants operated peer-to-peer services through which users committed "staggering" amounts of copyright infringement, especially of copyrighted music files. *Id.* at 923. Their intent to induce that infringement through their services was "unmistakable." *Id.* at 940. In particular, the defendants operated their businesses to attract the large base of infringing users of the "notorious"—and enjoined—Napster peer-to-peer service. *Id.* at 924. Among other facts demonstrating this intent, "Grokster's" name was derived from Napster; the defendants had created ads appealing to the base of former Napster users (e.g., "'[w]hen the lights went off at Napster … where did the users go?'"), *id.* at 924–25; and each defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement, the market comprising former Napster users." *Id.* at 939. While the Court held that this intentional, culpable conduct could give rise to secondary liability, the Court reaffirmed a holding of a precondition crucially missing here—that simply designing or distributing a device that may be used

11

1    to infringe cannot in and of itself create copyright liability.

2        ALS claims "Tiger induced infringement by maintaining a network with a rein-

3    forcing cycle of encouragement to Publishers to build traffic through the lure of in-

4    fringement." Opp'n 20:1–3. According to ALS, "Tiger induced high speed ac-

5    ceptance of Publishers into its network with no scrutiny whatsoever."[6] *Id.* at 20:3–4.

6    ALS reasons that "Tiger's systems encouraged Publishers to increase traffic to their

7    sites, so as to command their higher payments from Advertisers." *Id.* at 20:4–6. Yet

8    none of this (including lines 7 through 15) is alleged in the FAC; it is a conclusory

9    creation of the Opposition and not allowable. *See Schneider v. Cal. Dep't of Correc-*

10    *tions*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations" in an opposition

11    brief "are irrelevant" to a Rule 12(b)(6) motion; a court may not look beyond the

12    complaint to an opposition brief); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010

13    (N.D. Cal. 2014) (complaint may not be amended by briefs in opposition).

14        Moreover, the FAC does not allege a single fact suggesting that Tiger ever in-

15    tended for anyone to infringe an ALS copyright. The most that ALS can be said to

16    allege is that Tiger deployed an ad network that some publishers with infringing con-

17    tent on their sites may use to earn revenue even though many other publishers with-

18    out infringing content on their sites use it for legitimate and entirely authorized pur-

19    poses. That does not constitute a claim of inducement liability. *See Sony Corp. of Am.*

20    *v. Universal City Studios, Inc.*, 464 U.S. 417, 441 n.21 (1984) (calling it "extraordinary

21    to suggest" that a technology may be subject to liability "simply because [it] may be

22    used to infringe copyrights").

23    ―――――――――――

[6] No support exists in the FAC for the claim that Tiger uses "no scrutiny whatso-

24    ever."

Next, ALS claims in its Opposition—but does not allege in the FAC—that Tiger induced infringement because "Tiger made no effort to use 'filtering tools or other mechanisms' to detect infringing activity by Publishers." Opp'n 20:17–18 (quoting *Fung*, 710 F.3d at 1035). But this claim is insufficient even if it was alleged in the FAC. ALS included this claim to parrot the Supreme Court's holding in *Grokster* and the Ninth Circuit's holding in *Fung* that the *Grokster* and *Fung* defendants' failure "to develop filtering tools" was indicative of their intent to induce. *See Grokster*, 545 U.S. at 939; *Fung*, 710 F.3d at 1036. But ALS ignores the Supreme Court's admonition that "'in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.'" *Fung*, 710 F.3d at 1035 (quoting *Grokster*, 545 U.S. at 939 n.12). Here, there are no allegations of evidence of intent. Thus, ALS's attempt to "plead" inducement based on lack of filtering fails.

ALS also claims—but does not allege in the FAC—that "as in *Grokster* and *Fung*, Tiger '"makes money by selling advertising space"' and thus relies on '"high-volume use."'" Opp'n 20:21–23 (quoting *Fung*, 710 F.3d at 1035). Again, this is a transparent attempt to quote *Grokster*'s conclusion. *See* 545 U.S. at 939–40. But ALS does not allege any facts that show that Tiger developed a business model to profit based on the infringement of ALS's works (or anyone else's works for that matter). Moreover, ALS again ignores the Supreme Court's caution that "[t]his evidence alone would not justify an inference of unlawful intent." *Id.* at 940. Tiger's business is claimed to profit from high-volume use, but unlike *Grokster* and *Fung*, there is not even a plausible contention that those profits depend on high-volume ***infringing***

1  uses. And nothing establishes that "JuicyAds encouraged Publishers to join its net-

2  work in droves," Opp'n 20:24, to commit copyright infringement.

3      Claiming that discovery will show facts ALS has not pled is contrary to federal

4  pleading standards requiring a plaintiff to have a factual basis for its complaint ***before***

5  filing it. *See* Fed. R. Civ. P. 11(b). If a court can only infer a "mere possibility of mis-

6  conduct," the complaint fails to state a plausible claim for relief on its face and must

7  be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*,

8  550 U.S. 544, 561 (2007) (the "prospect of unearthing direct evidence" in the future

9  is not sufficient to state a claim). This is because while "Rule 8 marks a notable and

10  generous departure from the hypertechnical, code-pleading regime of a prior era,"

11  "it does not unlock the doors of discovery for a plaintiff armed with nothing more

12  than conclusions." *Iqbal*, 556 U.S. at 678–79; *see also Twombly*, 550 U.S. at 559.

13  **C. ALS fails to state a claim for vicarious infringement**

14      ALS has not alleged that Tiger exercises the control over third-party publishers

15  necessary to establish vicarious copyright liability under binding Ninth Circuit prec-

16  edent. ALS admits such claims require that a defendant have "'the right and ability

17  to supervise the infringing activity and also ha[ve] a direct financial interest in such

18  activities.'" Opp'n 21:21–23 (quoting *Napster*, 239 F.3d at 1022). More specifically,

19  Tiger must have "both a legal right to stop or limit the directly infringing conduct,

20  as well as the practical ability to do so." *Amazon.com*, 508 F.3d at 1173; *see also Routt*

21  *v. Amazon.com, Inc.*, 584 F. App'x 713, 715 (9th Cir. 2014) ("A defendant has control

22  over a third party's infringing conduct when the defendant can directly put an end

23  to that conduct."). ALS has not made any such allegation because the facts are to

24

1   the contrary.[7]

2      Instead, ALS claims that Tiger can remove or block access to material that it be-

3   lieves to be copyrighted material illegally copied and distributed. Even if Tiger could

4   do what ALS claims, the FAC does not allege that Tiger has the "legal right" and

5   the "practical ability" to "remove or block access to material" on third-party sites.

6   If ALS knew facts showing that, it could easily have alleged them; it did not.

7      The express language of the TOS demonstrates that Tiger does not have the "le-

8   gal right" and the "practical ability" to "remove or block access to material" on

9   third-party websites. Under the TOS, the "[u]ser is solely responsible for the devel-

10  opment, operation and maintenance of their website and all materials that appear on

11  [u]sers' websites used in connection with the JuicyAds service." TOS ¶ XIII. Noth-

12  ing in the TOS grants Tiger the right to remove or block access to content on pub-

13  lisher websites.

14     Failing that, ALS has to argue that Tiger's power of termination of services and

15  ejection of a publisher is sufficient to show the "right and ability to supervise" ele-

16  ment of vicarious liability. Opp'n 22:3–5. But two published Ninth Circuit cases and

17  one unpublished Ninth Circuit case have squarely rejected this argument—*Ama-*

18  *zon.com*, 508 F.3d at 1173–75; *Visa*, 494 F.3d at 803–06; and *Routt*, 584 F. App'x at

19  715–16—as a "radical step we do not take." *Visa*, 494 F.3d at 803.

20     In support of its claim that Tiger's power to terminate services and eject a pub-

21  lisher from the JuicyAds network satisfies the right and ability to supervise element,

22

23  [7] ALS offers nothing but its speculative claims that Tiger generally sought to increase
    its business and revenues to support the financial benefit element of this test, but the

24  Court can and should grant the motion without reaching this issue. Opp'n 23:2–16.

1   ALS relies on a decision from this District issued years before the Ninth Circuit's

2   decisions squarely rejecting this theory—*Cybernet*. But this Court is bound by the

3   Ninth Circuit decisions directly on point not *Cybernet*. *Hart v. Massanari*, 266 F.3d

4   1155, 1175 (9th Cir. 2001) ("district court bound by circuit authority … has no choice

5   but to follow it"); *Intamin, Ltd. v. Magnetar Tech. Corp.*, 623 F. Supp. 2d 1055, 1075

6   (C.D. Cal. 2009) ("district court decisions are not binding precedent and need not

7   be followed, particularly where circuit authority holds otherwise").

8        The only other case ALS relies on is *Napster*. ALS argues that "even though Nap-

9   ster could not reach into user's [sic] computers to delete infringing files, Napster

10  acted as the essential connection without which users could not connect to exchange

11  infringing files." Opp'n 22:10–13. According to ALS, "If Napster terminated users

12  from its system, those users would be deprived of Napster's connections." *Id.* at

13  22:13–14. Thus, ALS theorizes that Tiger is "akin" to Napster. ALS is wrong.

14       This case is vastly different from *Napster* as the Ninth Circuit explained in *Ama-*

15  *zon.com*, 508 F.3d at 1174 and *Visa*, 494 F.3d at 803–04. In *Napster*, the Ninth Circuit

16  found that Napster could control its users' transmission of pirated music because it

17  had the ability to block access to its software, thus ending the users' ability to trans-

18  mit the infringing files. *Id.* at 1023–24. This stands in stark contrast to this case,

19  where "Tiger's ability to eject Publishers from its network" does not end those pub-

20  lishers' ability to copy, reproduce, distribute, or display infringing content. ALS does

21  not (nor could it) allege the contrary. Instead, it argues that "eject[ed] users … will

22  not have Tiger's network with which to trade traffic drawn through the lure of in-

23  fringement." Opp'n 22:19–21. But the issue is "the right and ability to stop or limit

24

1    the infringing activities of third party websites," *Amazon.com*, 508 F.3d at 1173, not

2    the right or ability to stop or limit "trad[ing] [non-infringing] traffic drawn through

3    the lure of infringement." As in *Amazon.com*, Tiger "cannot stop any of the third-

4    party websites from reproducing, displaying, and distributing unauthorized copies of

5    [ALS's] images because that infringing conduct takes place on third-party websites.

6    [Tiger] cannot terminate those third-party websites or block their ability to 'host and

7    serve infringing full-size images' on the Internet." *Id.* at 1174. *Accord Routt*, 584 F.

8    App'x at 715–16.

9    **II. The Opposition fails to support ALS's claims for secondary trademark**

10       **infringement**

11       **A. ALS fails to state a claim for inducing infringement**

12       In the Opposition, ALS ignores Tiger's argument that ALS "has not alleged suf-

13   ficient facts that would lend support to a claim that Tiger has intentionally induced

14   any publisher to use—much less infringe—any ALS trademark." Tiger's Mem.

15   Supp. 22:23–23:2. Instead, ALS argues that inaction by Tiger was in its interests be-

16   cause it expanded membership in the JuicyAds network and Tiger's commissions.

17   Opp'n 24:10–15. These conclusory "averments" are not alleged in the FAC and are

18   insufficient to state a claim that Tiger intentionally induced any publisher to infringe

19   ALS's trademarks.

20       *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010),

21   does not support ALS here. There, Durango—whose "business is predicated on as-

22   sisting merchants in setting up credit card processing services with institutions that

23   provide credit card merchant accounts," *id.* at 237—"reache[d] out" via its website

24

1   "to 'high risk merchant accounts,' including those who sell 'replica products.' " *Id.*

2   at 248. Durango's website "boast[ed] that 95% of merchant accounts are approved

3   and that Durango 'specialize[s] in hard to acquire accounts.' " *Id.* As the court rea-

4   soned, because the "complaint suggests that Durango bills itself as a company that

5   sets up a certain quality of business with credit card processing services that accepts

6   these 'high risk' clients," the "allegations can fairly be construed as Durango's at-

7   tempt to induce less savory businesses, like those who sell counterfeit 'replicas' of

8   luxury goods." *Id.* Gucci further alleged that "Durango's sales representative …

9   specifically discussed Laurette's [the direct infringer] difficulty in finding a credit

10  card processor because they were 'replica' merchants, which Gucci argue[d] was

11  synonymous on the internet for a counterfeiter." *Id.* The court found that "Durango

12  'communicated an inducing message to [its] … users,' and while there [was] of yet

13  no evidence that they expressly sought out counterfeiters, Gucci has pled sufficient

14  facts to infer that Durango crafted 'advertisement[s] or solicitation[s] that broad-

15  cast[ ] a message designed to stimulate others to commit violations.' " *Id.* at 248–49

16  (quoting *Visa*, 494 F.3d at 801).

17      Significantly, the court in *Gucci* found that Gucci "failed to plausibly support a

18  claim that either Woodforest [a bank that provides credit card processing services]

19  or Frontline [a nationwide provider of credit card processing and electronic payment

20  services] intentionally induced Laurette to sell counterfeit products." *Id.* As the

21  court explained, "Durango, not Woodforest or Frontline, helped set up the Laurette

22  Counterfeiters with credit card processing services." *Id.* According to the court,

23  "Though both companies allegedly advertised for high risk merchants, they did not

24

18

1    bring Laurette to the table the way Durango allegedly did." *Id.* In reaching this con-

2    clusion, the court did not find significant Gucci's claims "that [Woodforest and

3    Frontline] both charged higher fees for processing high risk merchants, and that

4    Frontline reviewed the language of the aforementioned acknowledgement of receipt

5    of a replica product" because "[t]hese claims … are not enough to suggest that ei-

6    ther Woodforest or Frontline took the affirmative steps necessary to foster infringe-

7    ment." *Id.* (citing *Visa*, 494 F.3d at 801).

8        The FAC does not allege facts suggesting that Tiger intentionally induced any

9    publisher to engage in trademark infringement. Unlike Durango, Tiger's website

10   does not reach out to publishers who infringe trademarks. The FAC does not allege

11   that Tiger's ad network specializes in "high risk" publishers. The TOS states that

12   publishers, not Tiger, are "solely responsible for the development, operation and

13   maintenance of their website and all materials that appear on [u]sers' websites used

14   in connection with the JuicyAds service." TOS ¶ XIII. ALS has failed to plead suf-

15   ficient facts to infer that Tiger "crafted 'advertisement[s] or solicitation[s] that

16   broadcast[ ] a message designed to stimulate others to commit violations,'" *Gucci*,

17   249 F. Supp. 2d at 249, let alone suggesting "affirmative steps taken to foster in-

18   fringement" or "that [Tiger] promoted [its] [ad] network as a means to infringe."

19   *Visa*, 494 F.3d at 800–01. Thus, ALS's inducing trademark infringement claim fails.

20   **B. ALS fails to state a claim for contributory infringement**

21       ALS's position on its contributory trademark infringement claim is also flawed.

22   In Tiger's opening brief, Tiger argues that "ALS fails to adequately allege 'direct

23   control and monitoring.'" Tiger's Mem. Supp. 23:12. In the Opposition, ALS does

24

1   not substantively respond to this point, and thus ALS should be found to have waived

2   this argument. A party that fails to raise an argument in opposition to a motion waives

3   the argument. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d

4   1125, 1132 (C.D. Cal. 2011). Instead of responding, ALS claims that "ALS has more

5   than adequately plead [sic] that Tiger, with actual and constructive knowledge of

6   ongoing trademark infringement by Publishers, refused to terminate such Publishers

7   from its network and continued to provide such Publishers with payment, support

8   and services." Opp'n 25:1–4. Even if true, this is insufficient state a claim for con-

9   tributory infringement as a matter of law because ALS must allege facts showing

10  "that Tiger 'had "[d]irect control and monitoring of the instrumentality used by a

11  third party to infringe"' ALS's marks." Tiger's Mem. Supp. 23:9–11 (quoting *Louis*

12  *Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942 (9th Cir. 2011)). No-

13  where does ALS allege in the FAC that Tiger had direct control and monitoring of

14  the instrumentality used by any third-party publisher to infringe ALS's trademarks.

15  Indeed, ALS fails to allege that Tiger's ad network was used to infringe on ALS's

16  trademarks. Any infringement apparently occurred on publisher websites. Thus,

17  ALS fails to state a claim for contributory trademark liability as a matter of law.

18  **III.    The Opposition confirms ALS's unfair competition claim fails**

19      ALS concedes that if its trademark infringement claims fail, the Court must also

20  dismiss its unfair competition claim as well. *See* Opp'n 25:7–9. Because ALS's sec-

21  ondary trademark infringement claims fail for the reasons stated above, this Court

22  must also dismiss ALS's unfair competition claim.

23

24

1

**Conclusion**

2      For these reasons, Tiger's Motion to Dismiss should be granted and the FAC

3  dismissed with prejudice.

4

Dated: September 19, 2016                          Respectfully submitted,

5
                                          By:    /s/Kevin S. Toll
6                                                _____
                                                 KEVIN S. TOLL (admitted *pro hac vice*)
7                                                SILVERSTEIN LEGAL
                                                 *Attorneys for Defendant Tiger Media Inc.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24