QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
  Carolyn M. Homer (Bar No. 286441)
  carolynhomer@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendant CloudFlare, Inc.*

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **CLOUDFLARE, INC.**, et. al, <br><br> Defendants. | Case No. 2:16-cv-05051-GW-AFM <br><br> **CLOUDFLARE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** <br><br> Hearing Date:     October 24, 2016 <br> Hearing Time:     8:30 AM <br> Place:  Courtroom 10 <br> Judge:  Hon. George H. Wu |

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND..................................................................... 2

LEGAL STANDARD ............................................................................... 4

ARGUMENT.............................................................................................. 5

I.   ALS'S SECONDARY COPYRIGHT INFRINGEMENT CLAIMS
     AGAINST CLOUDFLARE FAIL ON MULTIPLE GROUNDS ................ 5

     A.   ALS Fails To State A Claim For Contributory Copyright
          Infringement Under Either Of Its Theories............................... 5

          1.   ALS's material contribution theory fails because as an
               intermediary provider of optimizing web services there are
               no steps CloudFlare could take to stop the alleged
               infringements ............................................................... 6

          2.   ALS's inducement theory fails because it lacks any factual
               allegations that CloudFlare's services somehow induced
               the alleged infringement .............................................. 8

     B.   ALS Fails To State A Claim For Vicarious Copyright
          Infringement Because It Has Not Alleged Any Facts Supporting
          The Bare Elements, Nor Could It Do So .................................. 9

     C.   ALS Fails To State A Claim For Any Form Of Secondary
          Copyright Infringement Against CloudFlare, For Failure To
          Properly Plead Any Underlying Direct Infringements ........................ 11

II.  ALS FAILS TO STATE A CLAIM FOR CONTRIBUTORY
     TRADEMARK INFRINGEMENT................................................ 13

     A.   ALS Cannot Manufacture A Separate Trademark Claim Out Of
          Its Copyright Claim Given The Indivisibility Of The Underlying
          Conduct ..................................................................... 13

     B.   ALS Fails To Properly Plead The Elements Of Either An
          Inducement Theory Or A Direct Control Theory Of Contributory
          Trademark Infringement .................................................... 15

          1.   ALS does not allege that CloudFlare intentionally induced
               trademark infringement ............................................... 16

          2.   ALS does not allege that CloudFlare controls the
               instrumentalities of others' trademark infringement ................ 16

     C.   ALS Also Fails To Properly Plead An Underlying Direct
          Trademark Infringement On Which To Base Its Contributory
          Trademark Claim Against CloudFlare................................. 18

i

III.    ALS SCAN'S UNFAIR COMPETITION CLAIM IS BARRED ON
        MULTIPLE GROUNDS ....................................................................... 19

CONCLUSION ................................................................................................ 22

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

*Adobe Sys. Inc. v. Christenson*,
  809 F.3d 1071 (9th Cir. 2015) ......................................................... 18, 19

5

6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................ 5, 9, 10, 11, 18

7

*Beachbody, LLC v. Universal Nutrients, LLC*,
  No. 16-CV-02015, 2016 WL 3912014 (C.D. Cal. July 18, 2016) ...................... 18

8

9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................. 7, 8, 12

10

*Cobbler Nevada, LLC v. Gonzales*,
  No. 3:15-CV-00866, 2016 WL 3392368 (D. Or. June 8, 2016) ......................... 6

11

12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) .......................................................... 13, 14, 21

13

*Designer Skin, LLC v. S & L Vitamins, Inc.*,
  560 F. Supp. 2d 811 (D. Ariz. 2008) .................................................. 19

14

15

*E. W. Sounds, Inc. v. Phoenix*,
  2012 WL 4003047 (C.D. Cal. Sept. 10, 2012) ...................................... 12

16

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ..................................................... 9, 11

17

18

*Gibson Guitar Corp. v. Viacom Int'l Inc.*,
  No. 12-CV-10870, 2013 WL 2155309 (C.D. Cal. May 17, 2013),
  *aff'd*, 640 F. App'x 677 (9th Cir. 2016) ............................................... 17

19

20

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ......................................................... 5

21

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ........................................................ 21

22

23

*Ledesma v. Corral*,
  No. 2:15-CV-04266, 2016 WL 827743 (C.D. Cal. Mar. 2, 2016) ...................... 12

24

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ........................................................... 5

25

26

*Leonard v. Stemtech Int'l Inc.*,
  No. 15-3198, 2016 WL 4446560 (3d Cir. Aug. 24, 2016) ............................... 8

27

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
  No. 15-CV-05024, 2016 WL 1027998 (C.D. Cal. Mar. 14, 2016) .............. 15, 21

28

*Local TV, LLC v. Superior Court*,
 No. B271883, 2016 WL 4578645 (Cal. Ct. App. Sept. 2, 2016) ......................... 20

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 194 F.3d 980 (9th Cir. 1999) .......................................................................... 16, 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) .............................................................................................. 8, 9

*Newborn v. Yahoo!, Inc.*,
 391 F. Supp. 2d 181 (D.D.C. 2005) ...................................................................... 16

*Palmer Kane LLC v. Scholastic Corp.*,
 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ......................................................... 11

*Pellerin v. Honeywell Int'l, Inc.*,
 877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................... 20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007) ................................................................... 6, 7, 9, 11

*Perfect 10 v. CCBill LLC*,
 340 F. Supp. 2d 1077 (C.D. Cal. 2004) ................................................................ 20

*Perfect 10, Inc. v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007) ......................................................................... 20, 21

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
 494 F.3d 788 (9th Cir. 2007) ......................................................... 8, 15, 16, 17

*Phoenix Entm't Partners v. Rumsey*,
 No. 15-2844, 2016 WL 3924347 (7th Cir. July 21, 2016) .................................. 14

*In re Rigel Pharm., Inc. Sec. Litig.*,
 697 F.3d 869 (9th Cir. 2012) .................................................................................... 5

*Routt v. Amazon.com, Inc.*,
 584 F. App'x 713 (9th Cir. 2014) ........................................................................... 10

*Ryan v. Editions Ltd. W., Inc.*,
 417 F. App'x 699 (9th Cir. 2011) ........................................................................... 21

*Slep-Tone Entm't Corp. v. Canton Phoenix Inc.*,
 No. 3:14-CV-00764, 2014 WL 5817903 (D. Or. Nov. 7, 2014) .......................... 15

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984) ................................................................................................... 9

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
 919 F. Supp. 2d 1112 (D. Nev. 2013) .................................................................... 19

*Sybersound Records, Inc. v. UAV Corp.*,
 517 F.3d 1137 (9th Cir. 2008) ................................................................................ 21

## **Statutes**

17 U.S.C. § 106 .................................................................................... 13

47 U.S.C. § 230(c)(1) ....................................................................... 2, 20

Cal. Bus. & Prof. Code § 17200 .................................................. 4, 20, 21

Digital Millennium Copyright Act, 17 U.S.C. § 512 *et seq* ..................... 13

Fed. R. Civ. P. 12(b)(6) ......................................................................... 4

## **Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 25:17 (4th ed.).................... 18

S. Rep. No. 105-190 (1998)................................................................. 13

CLOUDFLARE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

## **PRELIMINARY STATEMENT**

CloudFlare provides internet security and website optimization services with the goal of "building a better internet."  CloudFlare offers protection against malicious attacks to the operators of over 4 million websites in virtually every industry, with customers as varied as Cisco, the FBI, the Library of Congress, NASDAQ, eHarmony, the rock band Metallica, and various state governments. CloudFlare has been honored with many industry awards and accolades, including the Wall Street Journal Technology Innovation Award in 2011 and 2012, and the TechCrunch 2015 award for Best Enterprise Startup.  A cyber-security innovator,[1] CloudFlare's services add value to its customers, who already have complete existing websites including hosting facilities, Internet connectivity, and all the technical applications needed to run the websites.  *See generally* CloudFlare, *Overview*, https://www.cloudflare.com/overview/.

In this case, adult publisher, pay site operator and content owner ALS Scan ("ALS") tries to lump CloudFlare in as a co-defendant to a copyright dispute between itself and certain allegedly infringing adult website operators.  ALS insists that CloudFlare's optimization and cyber-security services are somehow "enticing and inducing" the adult websites to infringe ALS's copyrighted works, as well as its registered trademarks embedded as watermarks in those works.  ALS's implausible claims are fatally defective and subject to dismissal for several reasons.

First, ALS's First Amended Complaint merely parrots the legal elements of its claims but lacks any specific factual allegations to sustain them.  This alone warrants dismissal under the governing pleading standards.

---

[1]  *See also* Lily Hay Newman, *CloudFlare Launches a Three-Pronged Attack to Encrypt the Entire Web*, Wired (Sep. 20, 2016), https://www.wired.com/2016/09/cloudflare-launches-three-pronged-attack-encrypt-web/.

Second, ALS fails to plead how CloudFlare's provision of generally applicable services used by a vast array of customers specifically encourages or induces infringing activity by the small handful of alleged infringers in this case. Similarly, ALS fails to allege how CloudFlare purportedly has a material impact on the infringing activity. Nor could ALS fairly plead such materiality, given the nature of the technology involved. While CloudFlare's services help the internet work quickly, securely, and consistently for all users, turning off CloudFlare's service would only make transmission a bit slower and more susceptible to being hacked; it would not stop or otherwise deter the allegedly infringing websites.

Third, the few facts ALS has pleaded make clear that its complaint is one for copyright infringement, and courts agree that a party may not manufacture trademark and unfair competition claims out of a copyright injury, as ALS attempts to do here. Specifically, ALS's trademark theory relies on the fact that the ALS trademark is embedded in copyright protected works, and necessarily is duplicated every time the works are copied. Courts have refused to recognize this indivisible act as multiple separate claims. Likewise, ALS's state law unfair competition claim is based upon the exact same alleged conduct – the unauthorized reproduction of images and videos – and thus is preempted by the Copyright Act. And even were the unfair competition claim properly grounded in a cognizable underlying trademark claim, it nevertheless is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which grants service providers immunity from state law claims arising from user-generated internet content. This Court should reject ALS's attempts to multiply its claims, and dismiss its facially invalid First Amended Complaint in full.

## FACTUAL BACKGROUND

Plaintiff ALS is an adult entertainment company that claims to own "a substantial library of self-produced adult entertainment images and videos." FAC ¶ 20. In this lawsuit ALS has sued eight different companies, including

1  defendant CloudFlare, a web performance and security company.  FAC ¶ 29.  The

2  gravamen of ALS's claims is that 19 specific adult websites have displayed

3  infringing copies of ALS's copyrighted works, which works also bear watermarks of

4  the "ALS Scan" registered trademark.  FAC ¶¶ 23, 81.  ALS further claims that it

5  has been harmed by this infringement, because ALS's "sales have declined . . . [and]

6  [t]here are no material factors to explain this decline other than the ubiquitous

7  presence of infringing ALS content on the Internet."  FAC ¶ 25.

8        ALS does **not** contend that defendant CloudFlare owns or operates any of

9  these 19 alleged infringing sites.  Instead, ALS alleges that "CloudFlare provides a

10  variety of Internet services" to 11 of the 19 alleged infringing sites, "including

11  provision of a 'content delivery network' that delivers services to hosts of pirate

12  sites."  FAC ¶¶ 10, 81.  A content delivery network, or "CDN," is a system of data

13  centers that "speed[s] a consumer's access to the website[s]" by routing the

14  websites' traffic "through a series of data centers maintained by Cloudflare."

15  FAC ¶ 32.  These CDN services speed "load times" for websites and "decrease []

16  spam and other attacks" on the origin server hosting the websites.  FAC ¶ 30.  ALS

17  cites extensively to CloudFlare's public facing website (FAC ¶¶ 30-32), which also

18  makes clear that CloudFlare is an add-on service for existing websites:

19        CloudFlare can be used by anyone with a website and their own domain,

20        regardless of your choice in platform.  From start to finish, setup takes

21        most website owners less than 5 minutes.  Adding your website requires

22        only a simple change to your domain's DNS settings.  There is no

23        hardware or software to install or maintain and you do not need to

24        change any of your site's existing code.  If you are ever unhappy you can

25        turn CloudFlare off as easily as you turned it on.  Join CloudFlare today

26        and be part of the community that is creating a better web.

27  *See* CloudFlare, *Overview*,  https://www.cloudflare.com/overview/.  Even when

28  viewed in the light most favorable to plaintiff, the crux of ALS's factual claims is

-3-

that CloudFlare provides automated internet security and website optimization services that have been used by 11 adult websites that allegedly display infringing ALS content.  ALS provides no factual allegations as to whether or how these CloudFlare services encourage, entice, or even relate to the alleged infringing activity.

ALS represents that it is "the sole owner of the copyrighted works that are the subject of this action, all of which have been registered with the U.S. Copyright Office." FAC ¶ 9.  Elsewhere, ALS alleges that it "has submitted hundreds of registrations for its copyrighted works to the U.S. Copyright Office," FAC ¶ 21, and attaches a comprehensive list of those works as Exhibit 1 to the First Amended Complaint.  But nowhere does ALS specify *which* of those works are at issue in this lawsuit.  Nor does ALS specify which of its works were directly infringed by which defendant, nor which of those alleged direct infringements form the basis for ALS's secondary copyright infringement claims against CloudFlare.

ALS further alleges that its copyrighted images and videos bear a watermark denoting the "ALS Scan" registered trademark.  FAC ¶ 23.  When its copyrighted content is reproduced without authorization, ALS claims, by necessity, so is the embedded trademark.  FAC ¶ 85.  As with its secondary copyright infringement claims, ALS does not identify which specific underlying direct infringements form the basis for ALS's secondary trademark infringement claims against CloudFlare.

In addition to its copyright and trademark claims, ALS pleads that the "acts of trademark infringement . . . constitute unfair competition under Cal. Bus. & Prof. Code § 17200." FAC ¶ 108.

## **LEGAL STANDARD**

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' [such as where] the plaintiff pleads factual

-4-

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007)).  Under this plausibility standard, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  Rather, the facts pleaded must show "more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, it should be dismissed.  *Id.* at 679.

In making this determination, the court may consider not only the contents of the complaint, but also any "materials incorporated into the complaint by reference, and matters of judicial notice."  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The materials incorporated by reference need not be physically attached to the complaint, nor is the rule limited to "paper" documents – it applies equally to digital or electronic "materials" such as websites.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (affirming dismissal of defamation claim under Rule 12(b)(6) and taking judicial notice of web pages on ESPN website containing allegedly defamatory content because "[t]he rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material").

## ARGUMENT

### I.   ALS'S SECONDARY COPYRIGHT INFRINGEMENT CLAIMS AGAINST CLOUDFLARE FAIL ON MULTIPLE GROUNDS

#### A.   ALS Fails To State A Claim For Contributory Copyright Infringement Under Either Of Its Theories

Plaintiff's claim of contributory copyright infringement fails under either of its two theories – material contribution or inducement.  FAC ¶¶ 92, 93.

-5-

1.   **ALS's material contribution theory fails because as an intermediary provider of optimizing web services there are no steps CloudFlare could take to stop the alleged infringements**

In the seminal case of *Perfect 10 v. Amazon*, the Ninth Circuit held that an online service provider could be held liable for contributory copyright infringement under the "material contribution" theory only if "it had knowledge that infringing [works] were available using its [system], could take simple measures to prevent further damage to [the] copyrighted works, and failed to take such steps." 508 F.3d 1146, 1172 (9th Cir. 2007).

Here, given the nature of CloudFlare's services, as described by Plaintiffs in their own complaint, ALS cannot satisfy this standard. CloudFlare is not the operator of the allegedly infringing sites but is merely one of the many intermediaries across the internet that provide automated CDN services, which result in the websites in question loading a bit faster than they would if they did not utilize CDN services. FAC ¶¶ 29, 30, 32 (CloudFlare speeds access to the websites in question and allows them to load faster). If CloudFlare's services were completely unavailable to the allegedly infringing websites, those websites would still exist, and the infringements would continue unabated; the sites would merely load a bit slower and be more susceptible to hacking. *See* FAC ¶¶ 29, 30, 32; *see also* CloudFlare, *Overview*, https://www.cloudflare.com/overview/ ("CloudFlare can be used by anyone with a website and their own domain, regardless of your choice in platform . . . If you are ever unhappy you can turn CloudFlare off as easily as you turned it on."). This is neither a "contribution" to any infringement, nor is it "material."

First, it is not a contribution because, accepting the allegations as true, CloudFlare's provision of web security and optimization services in no way encourages the acts of infringement by the adult websites or their users. *See, e.g.*, *Cobbler Nevada, LLC v. Gonzales*, No. 3:15-CV-00866, 2016 WL 3392368, at *2-3

(D. Or. June 8, 2016) (owner of internet connection used to distribute copyrighted material did not substantially contribute to underlying infringement by "fail[ing] to secure, police, and protect" internet connection after receiving copyright notices, because he had not "promoted, encouraged, enticed, persuaded, or induced another to infringe").  Nor has ALS pleaded any other conduct by CloudFlare that could be said to persuade or entice third parties to infringe ALS's copyrights.

Second, ALS's own allegations confirm that any such "contribution" by CloudFlare is not material, because under the Ninth Circuit's governing *Amazon* standard, there are no "simple measures" CloudFlare could take "to prevent further damage to [the] copyrighted works." *Amazon*, 508 F.3d at 1172.  Indeed, there are no measures of ***any*** kind that CloudFlare could take to prevent this alleged infringement, because the termination of CloudFlare's CDN services would have no impact on the existence and ability of these allegedly infringing websites to continue to operate. *See* FAC ¶ 30 (CDN services speed "load times" for a given website and "decrease [] spam and other attacks" on the origin server hosting the website in question).[2]  Stated another way, as a practical matter, terminating CloudFlare's services does not alter the content of these websites nor remove them from the web.

Nor does ALS's bare recitation of the elements of contributory infringement suffice to support a material contribution theory. *See* FAC ¶ 8 ("certain of the Defendants named herein have, with actual and/or constructive knowledge of the direct infringements of ALS works, materially contributed to or aided such infringement"); FAC ¶ 92 ("All named Defendants . . . have, with actual and/or constructive knowledge of direct infringements of ALS's copyrighted works, materially contributed to or aided in such infringement.").  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

---

[2]  This is no surprise, given the ancillary nature of CloudFlare's services, and how far removed those services are from the infringements themselves.

Under this plausibility standard, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Plaintiff's material contribution theory fails.

        **2.**      **ALS's inducement theory fails because it lacks any factual allegations that CloudFlare's services somehow induced the alleged infringement**

Plaintiff also purports to state a claims for contributory copyright infringement under the "inducement" theory, which requires proof that a defendant "intentionally induc[ed] or encourage[ed] direct infringement" by a third party.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 936-37 (2005) ("The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.").  In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  *Grokster*, 545 U.S. at 919; *see also Leonard v. Stemtech Int'l Inc.*, No. 15-3198, 2016 WL 4446560, at *5 (3d Cir. Aug. 24, 2016) (affirming inducement finding where defendant *required* its distributors to use infringing materials).  Inducement "is a legal determination, and dismissal may not be avoided by characterizing a legal determination as a factual one."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

Here, ALS has pleaded no facts regarding such a theory.  Instead, ALS makes only conclusory allegations using the term inducement (*see* FAC ¶¶ 39, 93), devoid of any factual support.  For instance, ALS Scan does not plead (as it must) facts sufficient to allege that CloudFlare solicited, advertised, promoted or rewarded acts of direct infringement by others, or that CloudFlare was created for the purpose of facilitating mass copyright infringement.  *Contrast Grokster, Ltd.*, 545 U.S. at 939 (Grokster intentionally targeted former Napster customers, advertised availability of copyrighted materials, and actively supported users in finding specific files).

-8-

Nowhere does ALS allege (nor could it) that CloudFlare provides its services "with the object of promoting its use to infringe copyright," *see Grokster*, 545 U.S. at 919, or that CloudFlare's services are not "capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 456 (1984). To the contrary, ALS's allegations tacitly acknowledge (*see* FAC ¶¶ 29, 30, 32) that CloudFlare's services are "widely used for legitimate, unobjectionable purposes." *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 456 (1984) (Betamax device which allowed users to record copyrighted television programs was capable of substantial non-infringing uses, and thus sales of the devise did not constitute contributory copyright infringement). ALS's bare recitation of the term "inducement" is insufficient to state a claim under *Iqbal*.

**B.    ALS Fails To State A Claim For Vicarious Copyright Infringement Because It Has Not Alleged Any Facts Supporting The Bare Elements, Nor Could It Do So**

ALS's vicarious copyright infringement cause of action similarly fails because it alleges no facts supporting either element of this claim under *Iqbal*, nor could it make such allegations based on the nature of CloudFlare's services. To properly plead a vicarious copyright infringement claim, a plaintiff must allege facts establishing that the defendant (1) has a right and ability to supervise or control the direct infringer, and (2) derives a direct financial benefit from the infringement. *Amazon*, 508 F.3d at 1173. The necessary level of control requires that the defendant have "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Id*. A "direct" financial benefit means, for instance, that a defendant draws or gains subscribers specifically due to the availability of infringing material. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (rejecting vicarious liability claim where plaintiff failed to show that defendant "attracted or retained subscriptions because of the infringement or lost subscriptions because of [defendant's] eventual obstruction of the infringement").

Here, ALS pleads only the bare elements of vicarious liability – that "[a]ll named Defendants . . . have, with the right and ability to control or supervise the direct infringement averred herein, failed to exercise such right and ability and have directly benefited financially from such infringing activity." FAC ¶ 96; *see also* FAC ¶ 83 (Defendants "make money by continuing to do commerce with sites that draw traffic through the lure of free infringing content."). Once again, a complaint may not survive dismissal by merely parroting the elements, with no factual meat supporting the claim. *Iqbal*, 556 U.S. at 678-79.

Moreover, the facts ALS pleads elsewhere demonstrate that this defect is not curable by amendment. Specifically, ALS alleges that CloudFlare provides automated CDN services to the allegedly infringing websites, which CDN services speed "load times" for a given website and "decrease [] spam and other attacks" on the origin server hosting the website in question. FAC ¶ 30. But "control" sufficient to impose vicarious liability means "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Amazon*, 508 F.3d at 1173. The facts pleaded confirm that CloudFlare neither has the right and ability, nor could it exercise such control, given the (indisputable) technical manner in which caching services operate. By providing its services to websites, CloudFlare does not supervise these websites' choice of content, and could do nothing to end this alleged infringement. *See Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 714-15 (9th Cir. 2014) (affirming dismissal of complaint on grounds that Amazon had no right or ability to control infringement undertaken by participants in Amazon's affiliate-marketing program). Stated another way, even if CloudFlare's services were terminated, the 11 allegedly infringing sites could still display whatever content they wish (infringing or otherwise) to a worldwide audience on the web. That is the very nature of a temporary cache – removing it has no impact on the origin copy, which continues to exist. *See* FAC ¶ 32 (CloudFlare "cache[s] mirror copies of" the sites in question). Nor does CloudFlare's provision of web security

-10-

services to protect websites from malicious attacks exert any "legal right to stop or limit the directly infringing conduct, [nor] the practical ability to do so." *Amazon*, 508 F.3d at 1173.  Absent CloudFlare's security services the sites would be more prone to hacking, but their very existence and contents would remain unaffected. FAC ¶ 30 ("CloudFlare-powered websites see . . . a decrease in spam and other attacks.")

Likewise, the facts pleaded show that ALS could not demonstrate that CloudFlare receives a direct financial benefit from the infringement.  As the Court held in *Ellison*: "the central question of the 'direct financial benefit' inquiry in this case is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Ellison*, 357 F.3d at 1079.  Here, ALS nowhere alleges that the underlying infringing activity by the adult websites in question somehow constitutes a draw for CloudFlare to obtain more subscribers to its web security and optimization services.  *See Ellison*, 357 F.3d at 1079 (vicarious liability claim failed where defendant did not "attract[] or retain[] subscriptions because of the infringement").  ALS pleads no such facts here, nor could it, given the nature of CloudFlare's services as alleged in ALS's own complaint.

**C.    ALS Fails To State A Claim For Any Form Of Secondary Copyright Infringement Against CloudFlare, For Failure To Properly Plead Any Underlying Direct Infringements**

It is axiomatic that a secondary infringement claim requires an underlying claim of direct infringement.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1169 ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (internal citation omitted).  As with all claims, underlying direct infringement must be properly pleaded under the governing plausibility standards articulated by the Supreme Court.[3]  *See Palmer Kane LLC v.*

---

[3]   *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

1   *Scholastic Corp.*, 2013 WL 709276, at *4 (S.D.N.Y. Feb. 27, 2013) (granting

2   dismissal under *Iqbal* and *Twombly* because plaintiff "fails to sufficiently plead the

3   works at issue, the infringing acts, and the relevant time period in which the

4   infringing acts occurred").

5          Here, ALS's conclusory allegations fail to plead (1) any particular direct

6   infringement of (2) any particular ALS image or video by (3) any particular person

7   or entity at (4) any particular time within the statute of limitations period that (5)

8   could plausibly serve as a basis for holding CloudFlare secondarily liable.  It is

9   insufficient to attach to the complaint a list of every copyright registration a plaintiff

10  may own, as ALS has done here (*see* FAC ¶ 21 & Ex. 1); rather, the particular

11  copyrights allegedly infringed must be pleaded.  *E. W. Sounds, Inc. v. Phoenix*, 2012

12  WL 4003047, at *3 (C.D. Cal. Sept. 10, 2012) ("To withstand a motion to dismiss, a

13  complaint based on copyright infringement must allege . . . which original works are

14  the subject of the copyright claim.") (quotation omitted).  Without a validly pleaded

15  underlying direct infringement, ALS's contributory and vicarious copyright

16  infringement claims against CloudFlare cannot survive this motion.  *Ledesma v.*

17  *Corral*, No. 2:15-CV-04266, 2016 WL 827743, at *3 (C.D. Cal. Mar. 2, 2016)

18  (dismissing direct and contributory infringement claims with prejudice as

19  insufficiently pled where amended complaint offered only the "bare recitation of a

20  few terms of art" and "simply stat[ed] legalese in lieu of offering supporting facts

21  . . . merely reciting the magic words of a cause of action is insufficient to survive a

22  motion to dismiss."); *see also E. W. Sounds, Inc.*, 2012 WL 4003047, at *3 (plaintiff

23  must plead "by what acts during what time the defendant infringed the copyright").[4]

24

25  plausible on its face' [such as where] the plaintiff pleads factual content that allows
    the court to draw the reasonable inference that the defendant is liable for the
26  misconduct alleged.") (quoting  *Twombly*, 550 U.S. at 556, 570).

27      [4]   In addition to its reliance on a poorly pled factual basis and misapplication of
28  the relevant law, ALS's copyright claims ultimately will fail because CloudFlare is

## II.   ALS FAILS TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT

ALS's contributory trademark claim fails for multiple independent reasons.

### A.   ALS Cannot Manufacture A Separate Trademark Claim Out Of Its Copyright Claim Given The Indivisibility Of The Underlying Conduct

As a preliminary matter, ALS alleges that the exact same actions pertaining to the exact same content form the basis for both its copyright and trademark claims. In support of its trademark claim in particular, ALS contends that its copyrighted adult content has been reproduced and published on various websites without its authorization – and that the content bears both copyright notices and ALS trademark watermarks.[5]  *See* FAC ¶¶ 9, 20, 22, 23, 77, 81, 85.  ALS's grievance thus concerns the reproduction, distribution, and display of creative works – issues governed by copyright law.  *See* 17 U.S.C. § 106 (detailing exclusive rights of copyright owners).

The Supreme Court has recognized that trademark law should not "conflict with the law of copyright," and "the right to copy" communicative materials is a copyright-governed act.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539

---

entitled to safe harbor pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512 *et seq*.  The DMCA protects internet service providers like CloudFlare from the potentially crippling costs of being held liable for the allegedly infringing behavior of third parties who may use the provider's services.  In enacting the DMCA, Congress made clear its belief that "without clarification of their liability, service providers may hesitate to make the necessary investment in the expansion of the speed and capacity of the Internet."  S. Rep. No. 105-190 at 8 (1998).  ALS's plea to this Court for a sympathetic ear to impose liability on intermediaries like CloudFlare because ALS finds it "hard" to enforce its ownership rights over adult material runs afoul of the DMCA's statutory scheme squarely addressing the issue. ALS's copyright claims should be dismissed on CloudFlare's instant motion, but even were they to survive the pleadings stage, CloudFlare will prevail on its affirmative defense of DMCA safe harbor.

[5] ALS makes no allegation that it used any technical protection measures (TPMs) to protect its copyrighted works or that such TPMs were circumvented.

U.S. 23, 33-34 (2003).  To extend trademark protection to preclude distribution of copyright-governed content in which a trademark also happens to be implicated "would create a species of mutant copyright law."  *Id.*  In order to avoid such a conflict, the *Dastar* Court rejected Fox Film's attempt to hold video series publisher Dastar liable for trademark infringement because Dastar had not attributed certain World War II film coverage, originally produced by Fox, to Fox.  *Id.* at 26.  The Supreme Court rejected the trademark claim, because recognizing a trademark claim which covered the exact same material subject to an expired copyright would effectively grant an unauthorized perpetual copyright.  In doing so, the Court further recognized that its reasoning should *also* require the Copyright Act to preclude "Lanham Act liability for *crediting* the creator if that should be regarded as implying the creator's 'sponsorship or approval' of the copy."  *Id.* at 36.

Multiple courts have extended *Dastar*'s reasoning to preclude trademark claims that are coextensive with copyright claims, because the alleged act of trademark infringement is merely the unauthorized reproduction of a copyrighted work.  *See Phoenix Entm't Partners v. Rumsey*, No. 15-2844, 2016 WL 3924347, at *9 (7th Cir. July 21, 2016).  In *Phoenix*, the Seventh Circuit affirmed a district court's dismissal of trademark claims based on the visual display of a trademark on the screen of a copyrighted karaoke video recording, explaining that:

> Because the creative content of the karaoke tracks at issue in this case presumably remains subject to copyright protection, the unauthorized display and performance of those tracks may well present an actionable claim of copyright violation, as we have said.  But the routine display of Slep–Tone's embedded trademark during the performance of [copyrighted] tracks does not, without more, support a claim of trademark infringement or unfair competition under the Lanham Act.

*Id.*  The District Court for the District of Oregon reached the same conclusion, in a parallel case now briefed and awaiting oral argument before the Ninth Circuit:

-14-

Slep–Tone's claimed injuries are copyright injuries and not trademark injuries. Slep–Tone alleges that it was injured when the tracks were performed or presented at Canton's restaurant without authorization and without a license, i.e. it was stripped of control of the use of its created work. The Copyright Act, and not the Lanham Act, is what protects against these types of unauthorized uses.

*Slep-Tone Entm't Corp. v. Canton Phoenix Inc.*, No. 3:14-CV-00764, 2014 WL 5817903, at *3 (D. Or. Nov. 7, 2014). *See also Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 15-CV-05024, 2016 WL 1027998, at *12 (C.D. Cal. Mar. 14, 2016), *reinstating dilution claim only on partial reconsideration* 2016 WL 4134495 (C.D. Cal. Aug. 1, 2016) (dismissing trademark claim based on defendants' copying of movie audio clip containing a trademarked phrase, where copyright aspects were "the real basis of the claims").

This Court should reject ALS's reaching attempt to recast its copyright infringement claim as a trademark infringement claim.

**B.    ALS Fails To Properly Plead The Elements Of Either An Inducement Theory Or A Direct Control Theory Of Contributory Trademark Infringement**

Secondary trademark infringement is premised on the same doctrines as secondary copyright infringement but even more stringently applied. *Visa*, 494 F.3d at 806 ("The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement."). A defendant can be held liable for contributory trademark infringement if it (1) "intentionally induced the primary infringer to infringe" or (2) "continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Id.* at 807 (internal citations omitted). As for the latter formulation, when the alleged infringer supplies a service rather than a product, "[f]or liability to attach, there must be '[d]irect control and monitoring [by the

secondary infringer] of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Id.*

### 1. ALS does not allege that CloudFlare intentionally induced trademark infringement

Contributory trademark infringement premised on inducement requires a plaintiff to cite "affirmative acts" a defendant has taken to suggest or invite third parties to directly infringe a trademark. *See Visa*, 494 F.3d at 807 (affirming grant of motion to dismiss contributory trademark claim where Perfect 10 "cite[d] no affirmative acts by [Visa] suggesting that third parties infringe Perfect 10's mark, much less induce them to do so"). No such affirmative acts are pleaded here. For instance, ALS does not allege that CloudFlare designed its system to facilitate trademark infringement, advertised the availability of trademark-infringing materials, or otherwise actively encouraged trademark infringement to occur. *See* Part I-A-2, *supra*. As with its copyright inducement theory, ALS only uses the bare term "inducement" in a conclusory fashion, which fails under *Iqbal*. *See* FAC ¶¶ 39, 85, 10; *see also Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 191 (D.D.C. 2005) ("conclusory allegation" that Yahoo "allowed unauthorized third party use of the plaintiff's alleged trademark" in a domain name did not state contributory trademark infringement claim).

### 2. ALS does not allege that CloudFlare controls the instrumentalities of others' trademark infringement

ALS likewise has failed to allege any facts indicating that CloudFlare has "'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Visa*, 494 F.3d at 807 (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). *Visa* explained that control sufficient to state a claim requires the defendant to "ha[ve] the power to remove infringing material from these [other] websites or directly stop their distribution over the Internet." *Id.*

ALS has made no such allegations here – nor could it, given the nature of how CloudFlare's services work.  ALS alleges that CloudFlare provides services that enhance security, optimize performance and speed web page load times.  *See* FAC ¶¶ 29, 30, 32, 33, 34.  None of these services grant CloudFlare "the power to remove infringing material from" these websites or terminate their presence on the internet.  *Visa*, 494 F.3d at 807.

Indeed, ALS's allegations mirror the contributory trademark infringement claim the Ninth Circuit rejected in *Lockheed Martin.*  There, a government contractor sued a domain name registrar, Network Solutions, for contributory trademark infringement because third parties had registered domain names which resembled *Lockheed's* marks.  194 F.3d at 983.  The Ninth Circuit determined that Network Solutions could not be held contributorily liable because it simply provided a "routing service," and such "rote," automated, technical internet services do not embody the level of control necessary to impose contributory liability.  *Id.* at 984-85.  The *Lockheed* court likened a domain name registrar and IP Address router to "the United States Postal Service" which merely receives information and then directs it to the appropriate location.  *Id.*  The Ninth Circuit recognized that it would be a "stretch" to extend contributory trademark liability to cover such services, because they did "not entail the kind of direct control and monitoring required" to establish contributory liability.  *Id.*

Likewise here, ALS does not allege that CloudFlare has direct control over or monitors the infringing content.  As a result, ALS never alleges (nor could it) that, were CloudFlare to cease its services altogether, the underlying direct infringements displayed on the infringing websites would cease or be removed.  *See Visa*, 494 F.3d at 807.  Because ALS's allegations implicitly recognize that the infringing websites could still infringe the ALS Scan mark even if CloudFlare ceased its services, it fails to state a contributory trademark infringement claim.  *See, e.g., Gibson Guitar Corp. v. Viacom Int'l Inc.*, No. 12-CV-10870, 2013 WL 2155309, at *5 (C.D. Cal. May

-17-

17, 2013), *aff'd*, 640 F. App'x 677 (9th Cir. 2016) (Viacom could not be held contributorily liable for another's trademark infringement where infringement could still occur "independently of anything Viacom might do").

**C.    ALS Also Fails To Properly Plead An Underlying Direct Trademark Infringement On Which To Base Its Contributory Trademark Claim Against CloudFlare**

"By definition, there can be no liability for contributory [trademark] infringement unless there is direct infringement."  4 McCarthy on Trademarks and Unfair Competition § 25:17 (4th ed.).  Where a direct infringement claim fails, a contributory claim must also fail.  *See e.g., Beachbody, LLC v. Universal Nutrients, LLC*, No. 16-CV-02015, 2016 WL 3912014, at *3 (C.D. Cal. July 18, 2016) (citing *Visa*, 494 F.3d at 807) (dismissing contributory infringement claim after dismissing direct infringement premised on use of "Shakeology" mark in comparative advertising and on store receipts).

As with ALS's secondary copyright claims, the First Amended Complaint does not properly plead any act of underlying direct trademark infringement on which to base its contributory claim against CloudFlare.  It states in general terms that ALS content bearing ALS trademarks has been the subject of notifications to defendant companies (FAC ¶¶ 76-81, 85) – but it never pleads which listings were infringing, who infringed them, or when those notifications were sent.  "Rule 8 does not empower respondent to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss."  *Iqbal*, 556 U.S. at 687.

Moreover, the sparse facts ALS does plead are not actionable because the alleged trademark use merely identified genuine (even if unauthorized) copies of *actual* ALS content.  *See* FAC ¶¶ 3, 9, 20, 21, 22, 23, 24, 76, 77, 81, 85.  Plaintiff has thus pleaded a nominative fair use, which cannot form the basis for a contributory trademark infringement claim.  *See Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081-82 (9th Cir. 2015).  In *Adobe*, the plaintiff alleged that the defendant had committed trademark infringement by engaging in the unauthorized

-18-

sale of copyrighted software bearing actual Adobe logos.  *Id.*  Adobe did not claim "that the marks did not truthfully label genuine Adobe products as such."  *Id.*  Thus, "where a defendant uses the mark to refer to the trademarked good itself," there can be no trademark liability due to the doctrine of nominative fair use.  *Id.* at 1081 (internal citation omitted).  The nominative fair use doctrine ensures that "trademark law does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent."  *Id.* (internal citation omitted).  *See also Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1124 (D. Nev. 2013) (dismissing trademark claim on nominative fair use grounds because "it would be difficult (if not impossible) to identify Stevo's sports analysis services without using these marks"); *Designer Skin, LLC v. S & L Vitamins, Inc.*, 560 F. Supp. 2d 811, 821 (D. Ariz. 2008) (the unauthorized re-sale of tanning products was a nominative fair use, and not an actionable trademark infringement, where it was "undisputed that S & L Vitamins visibly uses the marks on its websites to accurately identify Designer Skin's products").

Here, ALS pleads that its creative content "display[s] both a copyright notification . . . as well as ALS's registered 'ALS Scan' trademark."  FAC ¶¶ 23, 85.  Thus, like in *Adobe*, ALS is not contesting that the images and videos are actual ALS content; it is instead complaining that those specific copies of ALS content are unauthorized.  Again, ALS's "major gripe" is not a trademark issue at all – unauthorized copies are better attacked "via its copyright claim."  *See Adobe*, 809 F.3d at 1082.  The Court should dismiss ALS's contributory trademark infringement claim for this additional reason.

## III.   ALS SCAN'S UNFAIR COMPETITION CLAIM IS BARRED ON MULTIPLE GROUNDS

ALS's state law unfair competition count necessarily fails because it claims to be based solely on alleged "acts of trademark infringement, direct and secondary," that "constitute unfair competition."  FAC ¶ 108.  As explained above, ALS has

-19-

failed to properly plead any contributory trademark infringement as to CloudFlare, and thus, has no anchor for its unfair competition claim. *See* Cal. Bus. & Prof. Code § 17200; *see also Local TV, LLC v. Superior Court*, No. B271883, 2016 WL 4578645, at *8 (Cal. Ct. App. Sept. 2, 2016) (Section 17200 "'borrows' violations of other laws and treats them as unlawful practices," and unfair competition claims must be dismissed when the "sole factual basis" for the claim is found defective); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (dismissing unfair competition claim based solely on insufficiently pled causes of action, thus plaintiff "cannot state a UCL claim based on these allegations").

Moreover, even if ALS had properly pleaded an underlying trademark claim on which to base its unfair competition claim, the unfair competition claim nevertheless is barred by Section 230 of the Communications Decency Act. The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "expressly preempts state law" assigning liability to online service providers due to user behavior. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). The CDA gives "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service," and the Ninth Circuit has explicitly held that unfair competition claims, like other state claims, cannot be raised against service providers due to the behavior of their users. *Id.* at 1118-19 (CDA bars liability for "state laws protecting intellectual property," which include "trademark, *unfair competition*, dilution, right of publicity and trade defamation, to name just a few") (emphasis added). Because ALS's state law unfair competition claim against CloudFlare attempts to hold CloudFlare liable for the behavior of websites utilizing CloudFlare's services, the unfair competition claim is "expressly" preempted under the CDA and must be dismissed. *See Perfect 10 v. CCBill LLC*, 340 F. Supp. 2d 1077, 1108 (C.D. Cal. 2004), *aff'd*, 488 F.3d at 1119 ("the

immunity provided by the CDA does apply to Perfect 10's Claim 6 for unfair competition under the UCL").[6]

As a third and independent reason for dismissal, the conduct underpinning ALS's entire case (including the unfair competition claim) is a copyright harm.  As a court in this district recently held, plaintiffs cannot assert both trademark and unfair competition claims where the copyright aspects are "the real basis of the claims."  *Lions Gate Entm't*, 2016 WL 1027998, at *12.

In *Lions Gate*, the plaintiff alleged that an advertising campaign referencing the line "Nobody puts Baby in a corner" from the movie *Dirty Dancing* constituted trademark infringement and unfair competition in addition to copyright infringement.  The court recognized that, as here, the case was about "the right to be the exclusive licensor and user" of a copyrighted movie and was "based on Defendants essentially copying Plaintiff's intellectual property."  *Id.* at *13-14.  Citing *Dastar* among other authorities, the Court dismissed the trademark and unfair competition claims with prejudice because they were "preempted by the Copyright Act and so any amendment would be futile."  *Id.*

The same result is warranted here.  Though purportedly based on its contributory trademark claim, ALS's unfair competition count complains about the unauthorized reproduction of copyrighted images and videos; such a state law claim is squarely preempted by the federal Copyright Act.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (dismissing Section 17200 unfair competition claim as preempted by Copyright Act);  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (dismissing Section 17200

---

[6]  CDA immunity from unfair competition claims for service providers has long been the law in the Ninth Circuit.  Plaintiff ALS's counsel in this case was also counsel for CCBill, who successfully defeated Perfect 10's Section 17200 unfair competition claim on CDA immunity grounds and won affirmance of that ruling by the Ninth Circuit.  *See Perfect 10, Inc. v. CCBill*, 488 F.3d at 1107 (listing counsel for defendants/cross-appellants CCBill).

unfair competition claim as preempted by copyright); *Ryan v. Editions Ltd. W., Inc.*, 417 F. App'x 699, 701 (9th Cir. 2011).  For all of these reasons, the dismissal of this claim should be with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should grant CloudFlare's Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6).

Dated:  September 26, 2016                     Respectfully submitted,

                                                QUINN EMANUEL URQUHART &
                                                SULLIVAN LLP


By_____
                                                Rachel Kassabian

                                                *Attorney for Defendant*
                                                *CloudFlare, Inc.*