## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-5051-GW(AFMx) | Date | October 3, 2016 |
|---|---|---|---|
| Title | *ALS Scan, Inc. v. Cloudflare, Inc., et al.* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
Jay M. Spillane

Attorneys Present for Defendants:  
Gary L. Bostwick  
Lawrence G. Walters  
Corey D. Silverstein

**PROCEEDINGS:** **MOTION BY PLAINTIFF ALS SCAN, INC. FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANT TIGER MEDIA, INC. [9];**

**DEFENDANT TIGER MEDIA INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM [35]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative, and for reasons stated on the record, Defendant Tiger's motion is GRANTED WITH LEAVE TO AMEND. Plaintiff's motion for preliminary injunctive relief is MOOT.

: 20

Initials of Preparer   JG

<u>ALS Scan, Inc. v. CloudFlare, Inc., et al.</u>, Case No. CV-16-5051-GW-AFM
Tentative Rulings on: (1) Defendant Tiger Media, Inc.'s Motion to Dismiss, and (2) Plaintiff's Motion for Preliminary Injunction

**I. Introduction**

ALS Scan, Inc. ("Plaintiff") sues CloudFlare, Inc. ("CloudFlare"); Tiger Media, Inc. ("Tiger"); OVH SAS; Hebergement OVH Inc.; Dolphin Media Ltd. ("Dolphin"); Hivelocity Ventures Corporation; Steadfast Networks, LLC; Duodecad IT Services Luxembourg S.A.R.L.; and Does 1-10 (collectively, "Defendants") for various claims related to Defendants' alleged infringement of Plaintiff's copyrighted and trademarked works. *See generally* First Am. Compl. ("FAC"), Docket No. 33.  The FAC asserts seven causes of action: (1) direct copyright infringement, against Dolphin and Does 1-5; (2) contributory copyright infringement, against all Defendants except Dolphin; (3) vicarious copyright infringement, against all Defendants except Dolphin; (4) direct trademark infringement, against Dolphin and Does 1-5; (5) direct trademark counterfeiting, against Dolphin and Does 1-5; (6) contributory trademark infringement, against all Defendants except Dolphin; and (7) unfair competition, against all Defendants. *Id.*

Plaintiff owns a library of copyrighted and trademarked works of adult entertainment. *Id.* ¶ 3.  Plaintiff alleges that its works are repeatedly infringed on pirate Internet sites[1] that display infringing adult content.  *Id.* ¶ 4.  These sites are allegedly supported by third-party service providers that continue doing business with the sites even after receiving actual notice of infringement from Plaintiff.  *Id.* ¶ 6.  Plaintiff alleges that the pirate sites monetize Internet traffic through advertisers and "traffic brokers," who pay to receive traffic from pirate sites and also resell traffic to purchasers.  *Id.*

According to Plaintiff, Tiger owns or operates an online advertising brokerage business called "JuicyAds," which caters to the adult entertainment industry.  *Id.* ¶ 11.  JuicyAds' Terms of Service explains that it conducts business with both "Publishers" and "Advertisers" – Publishers are owners or operators of websites with adult content who sell advertising space through the JuicyAds service, whereas Advertisers buy advertising space on Publishers' websites through the JuicyAds service. *Id.* ¶ 43.

---

[1] Plaintiff includes the names of some of these pirate sites, including imghili.net; namethatpornstar.com; slimpics.com; cumonmy.com; bestofsexpics.com; teenbe.com; mymaturespace.com; spankwiki.net; and stooorage.com.  *Id.* ¶ 5.

1

A Publisher applies for and obtains a user account with JuicyAds through the juicyads.com website, and informs JuicyAds of the websites the Publisher will use to deliver Internet traffic to Advertisers. *Id.* ¶ 48. The Publisher then receives a PIN it can use to place advertisements served by JuicyAds on the Publisher's website. *Id.* Plaintiff alleges that the registration process is automated and does not involve contact with JuicyAds personnel. *Id.* ¶ 48. Publishers choose the price for their traffic, from which JuicyAds takes a 25% commission. *Id.* ¶ 50. Advertisers can choose to purchase traffic from either specific Publishers or across the entire range of Publishers. *Id.* Plaintiff alleges that when a consumer clicks on a JuicyAds advertisement on a Publisher site, the consumer is transported temporarily to the JuicyAds server, and then to the website of the Advertiser. *Id.* ¶ 51.

Plaintiff alleges that JuicyAds reserves sole discretion and ability to suspend or terminate any users' account at any time. *Id.* ¶ 46. Moreover, JuicyAds' Terms of Service prohibits websites that engage in "[d]istribution of any copyrighted materials without permission, or linking to any copyrighted materials." *Id.* JuicyAds reserves the right to investigate any account and suspend payments and access to the JuicyAds service. *Id.* In addition, Plaintiff alleges that it is JuicyAds' policy to remove or block access to material it believes infringes on copyrighted materials; remove or disable access to material claimed to be infringing copyrighted material upon notification to its Designated Agent; and remove and discontinue service to repeat offenders. *Id.* ¶ 47.

Plaintiff alleges that it has sent 195 separate email notifications to JuicyAds with multiple examples of infringing ALS images on certain Publishers' websites, but JuicyAds refuses to terminate these Publishers' accounts. *Id.* ¶ 53. Moreover, Plaintiff claims that it hired an employee to obtain a personal JuicyAds account and submit information to JuicyAds that its website was www.stolenalspictures.com; JuicyAds thereafter provided the employee with information and hyperlinks to place advertisements on that website. *Id.* ¶ 55. The homepage of the website states that it displays "Infringing ALS Photos Made Free," and describes the website's process for stealing ALS's copyrighted images. *Id.* ¶ 56. However, despite this content, Plaintiff alleges that the website remains a Publisher in the JuicyAds network. *Id.* ¶57.

Through its operation of JuicyAds, Plaintiff alleges that Tiger has materially contributed to the infringing conduct of its Publishers. *Id.* ¶ 62. Plaintiff seeks actual damages, statutory damages, disgorgement of profits obtained from the infringing activity, trebling of damages,

costs and attorneys' fees, preliminary and permanent injunctive relief, and such other relief as the Court deems appropriate. *Id.* at 12:20-13:1.

Now pending before the Court is Tiger's Motion to Dismiss the FAC as it relates to Tiger. *See* Mot. to Dismiss ("MTD"), Docket No. 36. Plaintiff has opposed the Motion, *see* Opp'n to MTD ("Opp'n"), Docket No. 43, to which Tiger has replied, *see* Reply, Docket No. 46. Also pending before the Court is Plaintiff's Motion for a Preliminary Injunction Against Tiger. *See* Mot. for Prelim. Injunction ("Mot."), Docket No. 9. Tiger has opposed the Motion, *see* Opp'n to Mot., Docket No. 41, to which Plaintiff has replied, *see* Reply, Docket No. 44.

## II. Tiger's Motion to Dismiss

Tiger moves to dismiss the FAC under Rule 12(b)(6), on the grounds that Plaintiff fails to state a claim for secondary liability against Tiger.[2] *See generally* MTD.

### A. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw

---

[2] The causes of action asserted against Tiger include the second, third, sixth, and seventh causes of action. *See generally* FAC. As such, only these causes of action are addressed in the MTD and this Tentative Ruling.

3

the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

### *B. Analysis*

The FAC asserts four causes of action against Tiger, including contributory copyright infringement, vicarious copyright infringement, contributory trademark infringement, and unfair competition.

#### 1. The FAC Fails to State a Claim for Contributory Copyright Infringement

Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) ("*Amazon.com*") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("*Grokster*")). Thus, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("*Visa*") (explaining that contributory infringement can be established through either material contribution or inducement). Tiger does not dispute that it had knowledge of infringing conduct; rather, Tiger contends that Plaintiff has failed to allege that it materially contributed or induced the infringing conduct.

##### *a. Material Contribution*

A third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1375 (9th Cir. 1995) ("*Netcom*") (citing *Gershwin Publ'g*, 443 F.3d at 1162; *Apple Computer, Inc. v. Microsoft Corp.*, 821 F.Supp.616, 625 (N.D. Cal. 1993); *Demetriades v. Kaufmann*, 690 F.Supp. 289, 294 (S.D.N.Y. 1988)).

In *Amazon.com*, the Ninth Circuit analyzed the material contribution prong in the context of an Internet search engine operator and held that:

> a computer system operator can be held contributorily liable if it

4

> "has *actual* knowledge that *specific* infringing material is available using its system," and can "take simple measures to prevent further damage" to copyrighted works, yet continues to provide access to infringing works.

508 F.3d at 1172 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom*, 907 F.Supp. 1361, 1375 (N.D. Cal. 1995)). Although an "actor's contribution to infringement must be material to warrant the imposition of contributory liability," the Ninth Circuit emphasized that "services or products that facilitate access to websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities." *Id.* (internal quotations and citations omitted).

In *Amazon.com*, the district court had dismissed a contributory liability claim against Google, a search engine operator, explaining that even assuming Google had knowledge that links to websites displaying infringing material were made available using its search engine, because Google did not undertake promotional or advertising efforts to encourage visits to the infringing websites, it could not be liable for contributory infringement. *Id.* The Ninth Circuit reversed, explaining that:

> [t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, Google could be held contributorily liable if it had knowledge that infringing [copies of plaintiff's] images were available using its search engine, could take simple measures to prevent further damage to [plaintiff's] copyrighted works, and failed to take such steps.

*Id.* The Ninth Circuit thus remanded to the district court to resolve factual disputes over the adequacy of the plaintiff's notices to Google of the infringement and Google's responses to the notices, as well as factual disputes over whether there was a reasonable and feasible means for Google to refrain from providing access to the infringing websites. *Id.* at 1172-73.

Shortly after *Amazon.com*, the Ninth Circuit issued its decision in *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n* ("*Visa*"), 494 F.3d 788 (9th Cir. 2007). In that case, the plaintiff sued various credit card companies for contributory copyright infringement, alleging that the credit card companies had contracted with issuing banks to issue branded credit cards to consumers, and the issuing banks then contracted with merchant banks to settle transactions using those cards,

5

including transactions for payments to Internet websites that infringed the plaintiff's copyrights. *See Visa*, 494 F.3d at 792. The plaintiff claimed that the credit card companies had materially contributed to the websites' infringement because they were aware of the infringement, yet continued to process credit card payments for the infringing websites. *Id.* at 795.

The Ninth Circuit held that the plaintiff had failed to allege facts sufficient to establish material contribution, because the credit card companies:

> cannot be said to materially contribute to the infringement because they have no direct connection to that infringement. Here, the infringement rests on the reproduction, alteration, display and distribution of [plaintiff's] images over the Internet. [Plaintiff] has not alleged that any infringing material passes over [d]efendants' payment networks or through their payment processing systems, or that [d]efendants' systems are used to alter or display the infringing images . . . . Here, [] the services provided by the credit card companies do not help locate and are not used to distribute the infringing images. While [plaintiff] has alleged that [d]efendants make it easier for websites to profit from this infringing activity, the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would still be infringement.

*Id.* at 796. The Court further distinguished *Amazon.com*, emphasizing that "Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. Defendants do not provide such a service. They in no way assist or enable Internet users to locate infringing material, and they do not distribute it." *Id.* at 797.

Here, Tiger argues that the FAC fails to allege that Tiger materially contributed to the Publishers' infringing websites. *See* MTD at 7:19-14:15. Tiger contends that its operation of an advertising brokerage network does not substantially assist the Publishers' infringement, because it "does not create, operate, advertise, or otherwise promote the alleged infringing sites," nor does it provide a "site or facility" of infringement. *Id.* at 12:19-13:9. Rather, Tiger asserts that its business "simply serves ads on [P]ublishers' sites, and its serving of those ads does nothing to assist consumers in finding the infringing sites or the allegedly infringing works." *Id.*

The Court would agree that the FAC fails to plausibly allege a link between Tiger's advertising brokerage services and the infringing conduct of the Publishers. The FAC claims that JuicyAds provides "a marketplace for Publishers to increase their revenues by selling ad

6

space to Advertisers"; provides "robust search capabilities on juicyads.com [for Advertisers] to locate and review Publisher sites, including detailed analytics regarding the traffic to each such site;" offers users "various ways to frame searches for Publisher sites, including by categories of content types"; and "displays analytics for each of its Publisher sites including Alexa rankings, daily views and daily clicks." *See* FAC ¶¶ 41-49. However, although Advertisers are able to locate Publishers' websites utilizing Tiger's services, including infringing websites, the FAC fails to allege this contributes to the infringing activity. It is entirely unclear from the FAC how serving an advertisement on a website encourages infringement, other than by enabling the website to profit from those advertisements, a theory the Ninth Circuit expressly rejected in *Visa*. *See Visa*, 494 F.3d at 797 (rejecting theory that material contribution was established by the fact that defendants' services made it easier for websites to profit from infringing activity); *cf. Amazon.com*, 508 F.3d at 1172 ("Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials).[3]

As such, the Court would find that Plaintiff has failed to plausibly allege material contribution. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1032 (9th Cir. 2013) (affirming dismissal of complaint for failing to allege material contribution where complaint did not allege facts indicating that defendants gave material assistance in helping infringing website or its users accomplish infringement); *Elsevier Ltd. v. Chitika, Inc.*, 826 F.Supp.2d 398, 405 (D. Mass. 2011) (dismissing complaint for failing to allege material contribution against advertising broker that served advertisement on infringing website, reasoning that "while [the broker]'s advertising payments might make it easier for [] infringement to be profitable, [the broker] did not create, operate, advertise, or promote the infringing websites, and its advertisements were not the 'site' of the infringement").[4]

---

[3] The FAC conclusorily alleges that "Tiger maintains search functions on its website that can assist or enable Internet users to locate infringing material." *See id.* ¶ 63. However, the FAC provides no facts substantiating this assertion – indeed, there are no allegations that Advertisers use Tiger's search functions to locate infringing material or to specifically seek out infringing websites.

[4] Plaintiff cites to a number of cases that it claims supports its theory that a party may be contributorily liable for providing advertisement services, however, the Court finds that each of these cases is distinguishable and do not support Plaintiff's theory. First, Plaintiff relies on *Gershwin Publishing*, in which the Second Circuit held that a music management company could be contributorily liable for promoting concerts at which plaintiff's musical works were infringed on. *See* 443 F.2d at 1160-61. However, that case based its holding on the fact that the company had "created the [concerts'] audience as a market for those [infringing] artists . . . [the company]'s

### b. Inducement

Tiger also argues that the FAC fails to state a claim for inducement liability. *See* MTD at 14:16-15:14. In *Visa*, the Ninth Circuit explained that inducement liability can be established where one "'distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.'" *See Visa*, 494 F.3d at 800 (quoting *Grokster*, 545 U.S. at 936-37). "[T]he standard for inducement liability is providing a service 'with the object of promoting its use to infringe copyright'. . . . inducement 'premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.'" *Id.* (quoting *Grokster*, 545 U.S. at 937); *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013) (explaining that "the inducement copyright doctrine . . . applies to services available on the Internet as well as to devices or products").

Here, the FAC does not allege that JuicyAds provides its advertising brokerage service for the purpose of promoting copyright infringement, or that it has directly encouraged Publishers to display infringing content on their websites. *Cf. Grokster*, 545 U.S. at 923-24 (finding file-sharing service liable for infringement where the record was "replete with evidence

---

pervasive participation in the formation and direction of [the concerts] and its programing of compositions presented amply support" a finding of material contribution. *Id.* at 1163. In contrast, here, there are no allegations establishing that Tiger created the market of users for the infringing websites or pervasively participated in the infringement.

Plaintiff also relies on *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), in which the Ninth Circuit held that a swap meet operator could be contributorily liable for the infringing products of its vendors because the operator provided "space, utilities, parking, advertising, plumbing, and customers," and, most importantly, the provision of the "site and facility for known infringing activity." *Id.* at 264. The Ninth Circuit emphasized that the swap meet operator "actively strives to provide the environment and the market for counterfeit recording sales to thrive. Its participation in the [infringing] sales cannot be termed 'passive.'" *Id.* In contrast, here, Tiger does not provide the site or facilities for the infringing websites, nor are there any allegations that it actively strives to provide the market for the infringing websites.

Nor is Plaintiff's reliance on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1170 (C.D. Cal. 2002), persuasive. In that case, material contribution existed because the defendant web-service provider directly paid infringing websites based on the number of users that registered with the web-service provider through the infringing sites, provided technical and content advice to the infringing sites, and attempted to control the quality of the sites to present the websites' consumers with a unified brand. *Id*. The FAC by no means alleges such active participation on the part of Tiger.

Finally, Plaintiff relies on the decisions in *A&M Records v. Napster*, 114 F.Supp.2d 896, 906 (N.D. Cal. 2000), *aff'd in part*, 239 F.3d 1004 (9th Cir. 2001) and *Metro-Golden-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). However, both of those cases involved defendant websites that enabled users to locate and download electronic files that infringed on copyrighted works and distribute them through peer-to-peer sharing networks, thereby contributing to infringement of those works. In contrast, here, there are no allegations indicating how Tiger's services enable infringement. *See also* the discussion of inducement liability, *infra*.

8

that from the moment [plaintiffs] began to distribute their free software, each one clearly voiced the objective that recipients use it to download copyrighted works, and each took active steps to encourage infringement").[5] As such, the Court would find that Plaintiff has failed to plead contributory liability by inducement.

Because Plaintiff has failed to allege contributory copyright infringement, the Court would DISMISS the second cause of action as to Tiger.

### 2. The FAC Fails to State a Claim for Vicarious Copyright Infringement

"To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant (1) has the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *See Visa*, 494 F.3d at 802 (citations omitted). Tiger argues that the FAC fails to adequately state a claim for vicarious liability because Tiger does not have the requisite right and ability to supervise and control the infringing conduct. *See* MTD at 16:2-12.

The Court would agree. In *Visa*, the Ninth Circuit held that the defendants could not be held vicariously liable for infringement by independent websites because they did not have the ability to "take away the software the offending websites use to copy, alter, and distribute the infringing images, cannot remove those websites from the Internet, and cannot themselves block the distribution of those images over the Internet." *See Visa*, 494 F.3d at 805. Similarly, in *Amazon.com*, the Ninth Circuit found that there was no vicarious liability because Google did not have the legal right to stop or limit the direct infringement of third-party websites. *See Amazon.com*, 508 F.3d at 1173. Plaintiff argues that Tiger does have the ability in that it can eject users from its network, thereby decreasing the amount of traffic the infringing websites obtain. *See* Opp'n at 22:17-22. However, this theory was expressly rejected in both *Visa* and *Amazon.com*. *See Visa*, 494 F.3d at 804-05 (emphasizing that although loss of particular service provider could harm infringing website, that was not sufficient to establish that the providers had the legal right to stop third-party websites from infringing where infringing activity took place on third-party websites); *Amazon.com*, 487 F.3d at 731 (same). As Tiger correctly points out, the FAC does not allege that Tiger has the legal right to stop the infringing websites.

---

[5] Plaintiff asserts that it "has not yet discovered communications between JuicyAds and its Publishers," but argues that "it is reasonable to assume that discovery would adduce communications between Tiger and Publishers inducing infringement." *See* Opp'n at 21:9-18. Plaintiff thus requests that the Court defer its decision on Plaintiff's inducement theory until after discovery. *Id.* However, the FAC makes no allegations that Tiger promotes infringement. As such, the Court would find that Plaintiff has failed to adequately plead inducement.

For the foregoing reasons, the Court would DISMISS the third cause of action for vicarious copyright infringement against Tiger.

### 3. The FAC Fails to State a Claim for Contributory Trademark Infringement

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *See Visa*, 494 F.3d at 807 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Id.* (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984)). "For liability to attach, there must be 'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Id.* (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

Tiger argues that, with respect to the first prong, Plaintiff has not alleged facts that support a claim that Tiger intentionally induced any Publisher to use and infringe Plaintiff's trademarks. *See* MTD at 22:21-3. The Court would agree – the FAC alleges no facts indicating that Tiger intentionally induced trademark infringement by the infringing websites.[6] Indeed, the FAC does not even allege facts establishing what the purported trademark infringement entailed.

To establish the second prong, a plaintiff must show that the defendant "had direct control and monitoring of the instrumentality used by a third party to infringe." *See Lockheed Martin Corp.*, 194 F.3d at 984. As Tiger contends, the FAC contains no allegations that Tiger controls or monitors the "instrumentality" used by the Publishers to engage in the trademark infringement.

In sum, the Court would DISMISS the sixth cause of action for contributory trademark infringement against Tiger.

### 4. The FAC Fails to State a Claim for Unfair Competition

The FAC's seventh cause of action alleges that the "acts of trademark infringement, direct and secondary, constitute unfair competition under Cal. Bus. & Prof. Code § 17200." *See*

---

[6] The FAC conclusorily alleges that Defendants "have continued to provide services to the [infringing] sites with actual and constructive knowledge of those sites' infringement of ALS's trademark, and are thus liable for inducing and *contributing* to direct trademark infringement. *See* FAC ¶ 105 (emphasis added). However, under the Ninth Circuit's decision in *Visa*, a plaintiff must establish inducement, rather than material contribution, to establish contributory liability for trademark infringement.

FAC ¶ 108. The Ninth Circuit has made clear that this cause of action is "substantially congruent" to a claim under the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Thus, because Plaintiff's cause of action for contributory trademark infringement fails, its § 17200 claim necessarily fails. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 856, 875 ("[Plaintiff's] California unfair competition claim fails because its related Lanham Act claims fail."); *Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) (dismissing § 17200 claim where complaint failed to state a claim for trademark infringement).

As such, the Court would DISMISS the seventh cause of action for unfair competition against Tiger.

### *C. Conclusion*

Because Plaintiff has failed to allege secondary liability against Tiger, the Court would GRANT Tiger's Motion and DISMISS the FAC as to Tiger. Because Plaintiff may be able to cure the deficiencies in its allegations, the Court would dismiss without prejudice.

### III. Plaintiff's Motion for Preliminary Injunction

Plaintiff moves for a preliminary injunction against Tiger. *See* Mot. However, because the Court would dismiss the FAC's causes of action against Tiger, Plaintiff's motion for preliminary injunctive relief is MOOT.