1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Rachel Herrick Kassabian (Bar No. 191060)
2  rachelkassabian@quinnemanuel.com
   Carolyn M. Homer (Bar No. 286441)
3  carolynhomer@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
4  Redwood Shores, California 94065
   Telephone:   (650) 801-5000
5  Facsimile:   (650) 801-5100

6  *Attorneys for Defendant Cloudflare, Inc.*

7

8              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
9                    **WESTERN DIVISION**

10 | **ALS SCAN, INC.**, | Case No. 2:16-cv-05051-GW-AFM |

11                Plaintiff,          **CLOUDFLARE, INC.'S REPLY**
                                      **MEMORANDUM IN SUPPORT OF ITS**
12        vs.                         **MOTION TO DISMISS FIRST AMENDED**
                                      **COMPLAINT PURSUANT TO RULE**
13 **CLOUDFLARE, INC.**, et al,       **12(b)(6)**

14                Defendants.
                                      Hearing Date:    October 24, 2016
15                                    Hearing Time:    8:30 AM
                                      Place:           Courtroom 10
16                                    Judge:           Hon. George H. Wu

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ...................................................................................................... 1

I.  ALS FAILS TO DEMONSTRATE WHY ITS SECONDARY COPYRIGHT INFRINGEMENT CLAIMS SHOULD NOT BE DISMISSED. ................................................................................................ 1

    A.  ALS Fails To Sustain Its Contributory Copyright Infringement Claim Under Either Of Its Theories ............................................ 1

        1.  ALS has not pleaded material contribution ................................. 2

        2.  ALS has failed to plead "clear expression or other affirmative steps" promoting infringement to support an inducement theory ...................................................................... 5

    B.  ALS's Arguments In Support Of Its Vicarious Copyright Infringement Claim Are Unavailing ............................................... 7

    C.  ALS Mischaracterizes And Fails Its Burden To Properly Plead Any Underlying Direct Infringements To Support Secondary Liability ............................................................................... 8

II.  ALS'S CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM SHOULD BE DISMISSED. ....................................................................... 9

    A.  ALS Cannot Avoid Dismissal Of Its Indivisible Trademark Claim By Mischaracterizing The *Dastar* Line Of Cases As An "Election Of Remedies" Issue ......................................................... 10

    B.  ALS Cannot Save Its Contributory Trademark Infringement Claim From Dismissal ......................................................... 11

        1.  The FAC's allegations do not even remotely support an inducement theory. ................................................................... 11

        2.  Cloudflare's control of its own system is irrelevant to ALS's material contribution theory ............................................ 12

    C.  ALS's Unsupported Disagreements Aside, It Fails To Properly Plead An Underlying Direct Trademark Infringement ....................... 12

III.  ALS CONCEDES THAT ITS UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............ 13

CONCLUSION................................................................................................ 14

## TABLE OF AUTHORITIES

**Page**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ............................................................... 4

*Adobe Sys. Inc. v. Christenson*,
809 F.3d 1071 (9th Cir. 2015) ...................................................... 11, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................... 8, 9

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ............................................................... 3

*Capitol Records, Inc. v. MP3tunes, LLC*,
48 F. Supp. 3d 703 (S.D.N.Y. 2014) ....................................................... 4

*Coach, Inc. v. Sapatis*,
27 F. Supp. 3d 239 (D.N.H. 2014) ........................................................ 11

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ............................................................... 6

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ............................................................... 7

*Cutler v. Enzymes, Inc.*,
No. 08-CV-04650, 2009 WL 482291 (N.D. Cal. Feb. 25, 2009) ........................ 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ................................................................... 10, 11

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) ....................................................... 3, 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ......................................................... 4, 11

*Gucci America, Inc. v. Frontline Processing Corp.*,
721 F. Supp. 2d 228 (S.D.N.Y. 2010) ............................................... 11, 12

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
No. 07-CV-00043, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) ........................ 2

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) ............................................................... 9

*Knievel v. ESPN, Inc.*,
223 F. Supp. 2d 1173 (D. Mont. 2002),
*aff'd* 393 F.3d 1068 (9th Cir. 2005) ...................................................... 2

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
  No. 15-CV-05024, 2016 WL 1027998 (C.D. Cal. Mar. 14, 2016) ..................... 10

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F.3d 980 (9th Cir. 1999) ................................................................ 12

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ............................................................. 3, 11

*McRo, Inc. v. Namco Bandai Games Am., Inc.*,
  23 F. Supp. 3d 1113 (C.D. Cal. 2013) ...................................................... 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) .......................................................................... 6

*Microsoft Corp. v. Atek 3000 Computer Inc.*,
  No. 06-CV-6403, 2008 WL 2884761 (E.D.N.Y. July 23, 2008) ........................ 11

*Newborn v. Yahoo!, Inc.*,
  391 F. Supp. 2d 181 (D.D.C. 2005) ......................................................... 11

*OSU Student All. v. Ray*,
  699 F.3d 1053 (9th Cir. 2012) ............................................................... 9

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ............................................................... 13

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) .................................................... 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass;n*,
  494 F.3d 788 (9th Cir. 2007) ..................................................... 2, 5, 11, 12

*Perfect 10 v. Amazon*,
  508 F.3d 1146 (9th Cir. 2007) .......................................................... 4, 5, 7, 8

*Phoenix Entm't Partners v. Rumsey*,
  829 F.3d 817 (7th Cir. 2016) ............................................................... 10

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  907 F. Supp. 1361 (N.D. Cal. 1995) ......................................................... 3

*Slep-Tone Entm't Corp. v. Canton Phoenix Inc.*,
  No. 3:14-CV-00764, 2014 WL 5817903 (D. Or. Nov. 7, 2014) ........................ 10

*Smith v. Harrington*,
  No. 12-CV-03533, 2013 WL 132465 (N.D. Cal. Jan. 9, 2013) ........................ 13

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
  919 F. Supp. 2d 1112 (D. Nev. 2013) ...................................................... 13

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................. 2

-iii-

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ........................................................................ 5

## **Statutes**

17 U.S.C. § 512 ........................................................................................... 5, 6

**PRELIMINARY STATEMENT**

Though it makes a superficial effort to quibble with Cloudflare's arguments, ALS Scan, Inc. ("ALS") presents no colorable reason why its vicarious copyright infringement and secondary trademark infringement claims should not fail.  ALS further concedes that its unfair competition claim should be dismissed.  Thus, the only substantive issue remaining is whether Cloudflare's motion to dismiss ALS's contributory copyright infringement claim should be granted.  It should – for two reasons.

First, the bulk of ALS's argument is devoted to server host cases – but none of those cases govern here because Cloudflare is not a host, as ALS recognizes in both its complaint and its opposition.  Second, ALS's disingenuous claim that Cloudflare "materially contributes" to infringements because it could delete cache copies of those infringements is facially incorrect; the creation or deletion of cache copies of an underlying infringement has no bearing on the existence of that infringement.  To draw a physical analogy: if an unauthorized copy of an ALS photograph was reflected in a hallway mirror, smashing the mirror would not stop or eliminate the infringing photograph.  ALS's entire complaint should be dismissed.

**ARGUMENT**

**I.     ALS FAILS TO DEMONSTRATE WHY ITS SECONDARY COPYRIGHT INFRINGEMENT CLAIMS SHOULD NOT BE DISMISSED.**

      **A.     ALS Fails To Sustain Its Contributory Copyright Infringement Claim Under Either Of Its Theories**

ALS's Opposition has failed to show why its claim of contributory copyright infringement is sufficient to withstand Cloudflare's[1] motion to dismiss.

---

[1]   On September 27, 2016, Defendant rebranded from "CloudFlare" to "Cloudflare," which change is reflected in this brief.

1

2

### 1.    ALS has not pleaded material contribution

3    ALS's Opposition does not explain how it has properly pleaded its claim

4  under the material contribution theory, which should be dismissed.

5

### (a)    ALS's hosting argument misses the mark, because Cloudflare is not a content host

6

7    ALS devotes much of its brief to citing and discussing cases involving server

8  hosts, and arguing that it has established material contribution on that basis.  But

9  Cloudflare is not a host – as ALS itself acknowledges in its allegations.  *See* First

10  Amended Complaint ("FAC") ¶ 10 ("Cloudflare provides a variety of Internet

11  services to clients, including provision of a 'content delivery network' that delivers

12  services to ***hosts*** of pirate sites.") (emphasis added).[2]  The material ALS has asked

13  the court to take judicial notice of confirms this fact as well.[3]  *See* Declaration of Jay

14

15    [2]    ALS suggests that another Cloudflare service, domain protection from
potential hackers, is actionable as materially contributing to infringement because it
16  provides hosts "with cover to infringe in anonymity." ECF 51 ("Opp.") at 12.  This
lacks any plausibility.  As its website states, Cloudflare directs users to a Cloudflare
17  IP address to protect its millions of customers from potential cybercriminals who
would otherwise attack their facilities directly, i.e. with ransomware or denial-of-
18  service attacks.  *See* Cloudflare Support, *Why do my server logs show CloudFlare's
IPs using CloudFlare?* https://support.cloudflare.com/hc/en-us/articles/200170786-
19  Why-do-my-server-logs-show-CloudFlare-s-IPs-using-CloudFlare.  (Cloudflare's
domain services "allow[] CloudFlare to stop attacks before they reach your
20  network.").  Cloudflare also has an effective system to identify host information to
law enforcement, copyright holders (in response to proper DMCA notices, which
21  ALS did not provide here) and others.  *See* Cloudflare, *Abuse policy*,
https://www.cloudflare.com/abuse/ (appended hereto as Appendix A).  Protecting
22  websites – even allegedly infringing ones – from hackers is not a material
contribution to infringement because "infringement of [ALS's] copyrights can occur
23  without using Defendants' [] system."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494
F.3d 788, 798 (9th Cir. 2007).

24

25    [3]    The parties agree that this Court can, and should, take judicial notice of the
contents of Cloudflare's website.  Opp. at 4, fn. 1.  The doctrine of incorporation by
26  reference permits a court to take judicial notice of materials referenced in a
complaint or that serve as the basis for a plaintiff's claim.  *See United States v.
27  Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Because "the contents of the
[Cloudflare] website are at the center of Plaintiff['s] allegations" and no party
28  questions their authenticity (indeed, ALS relies on them), judicial notice is
appropriate.  *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002),

M. Spillane ("Spillane Decl."), ECF 52 at Ex. E (Cloudflare.com webpage stating "Setting up Cloudflare is easy . . . Keep your hosting provider. No code changes required."). The server host cases do not help ALS avoid dismissal. *See* Opp. at 9-11.[4]

**(b) Cloudflare's services are not necessary for – and thus not "material" to – the infringements at issue**

ALS urges in its opposition that it has pleaded material contribution because Cloudflare could "remove[] the 86 copies of infringing material that it caches," and "could reject infringers on its own site and facilities, even if it did not control all other sites and facilities on which infringement occurred." Opp. at 12, 14. This argument fails for several reasons.

First, this "86 copies" argument has not been pleaded in ALS's complaint and thus cannot save it from dismissal. *See McRo, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1125 (C.D. Cal. 2013) (Wu, J.) (in ruling on a Rule 12(b)(6) motion, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003)).

_____

*aff'd,* 393 F.3d 1068, 1077 (9th Cir. 2005) (taking judicial notice of complete website contents on motion to dismiss after plaintiff referenced only portions). Courts in this district have taken judicial notice of content on a defendant's website in granting a motion to dismiss. *See, e.g., Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. 07-CV-00043, 2007 WL 4976364, at *12 (C.D. Cal. Oct. 29, 2007) (explaining that defendant's website contents cannot be both "the specific factual hook that allows [Plaintiff] to state a claim and yet be so general that it is not a specific document referenced in its complaint" for purposes of judicial notice).

[4] All of the cases cited by ALS in support of this argument involved websites that were the *hosts* of copyrighted content. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1373-74 (N.D. Cal. 1995) (defendant provided storage and transmission services "*necessary* to facilitate" infringement) (emphasis added); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) (AOL subscribers could gain access to infringing USENET material only "[a]s a result" of material stored on AOL's servers); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011) (finding material contribution where defendants "physically host websites on their servers").

Second, the standard is whether a party "could take simple measures to prevent further damage to [the] copyrighted works, and failed to take such steps." *Perfect 10 v. Amazon*, 508 F.3d 1146, 1172 (9th Cir. 2007).[5]  But terminating Cloudflare's caching services does not alter the content of these websites nor remove them from the web.

Third, ALS's entire premise – that Cloudflare is demanding "immunity from secondary copyright liability if removing infringing copies of works from its own site and facilities won't eradicate every single infringing copy of the work on the Internet" (Opp. at 12) – is a non-starter, because Cloudflare is arguing no such thing. Indeed, ALS's own cases make clear that material contribution requires that a service **enable** the particular infringement challenged, not that a website must be able to "eradicate all direct infringement" past, present, and future.  Opp. at 13.  In each of ALS's cases, the defendant's services *were necessary* to infringement because direct infringers would have to "move on to another service provider" to continue infringing if the defendant's services ceased.  Opp. at 13.  For example, Napster materially contributed because its services were *necessary* for the alleged infringement: "*without the support service*s defendant provides, Napster users *could not find and download the music they want*." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (emphasis added).  Likewise in *Fonovisa*, it would have been "difficult" for ejected vendors to commit the same type and scale of infringement without the defendant's services.  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *see also Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 711 (S.D.N.Y. 2014) (infringing works stored in online "lockers" and necessarily were accessed "from the locker").  Here, by contrast, if

---

[5]  As Exhibit B to ALS's Opposition shows, Cloudflare's content delivery network ("CDN") services do not "damage" ALS's copyrighted works: Cloudflare simply improves the average speed of a web request by 3 milliseconds.  *See* Spillane Decl., Ex. B at 2.  This cannot be "material" because terminating Cloudflare's services would not "prevent further damage to [the] copyrighted works."  *Amazon*, 508 F.3d at 1172.  Infringement would still occur, albeit 3 milliseconds slower.

-4-

Cloudflare's services ceased, the allegedly infringing websites would continue to exist online, because caching and web security services are not necessary to these websites' ability to exist – or infringe.

In sum, ALS's material contribution theory is unsupported by any legal precedent, as ALS has failed to cite even a single case where a caching service was found contributorily liable.  Its theory is also factually implausible, because as a matter of basic physics, the presence or absence of a "mirror" cache of an underlying infringement has no impact, material or otherwise, on that infringement. Because infringement would "occur without" Cloudflare's services, *see Perfect 10, v. Visa*, 494 F.3d at 798, and ALS has not pleaded how Cloudflare's termination of service to customers accused of infringement would "prevent further damage" to its copyrights, ALS's contributory copyright claim must be dismissed.[6]

## 2.   ALS has failed to plead "clear expression or other affirmative steps" promoting infringement to support an inducement theory

The parties agree that inducement requires "specific acts" encouraging infringement.  Opp. at 14 (citing *Perfect 10 v. Amazon, Inc.*, 508 F.3d at 1170). ALS's Opposition posits that (1) Cloudflare "relies on high volume use" (which isn't even pleaded);[7] (2) Cloudflare "makes no effort to use filter tools or other mechanisms" to stop infringement and (3) Cloudflare does "not enforce its terms of service."  Opp. at 14.  None of these allegations saves ALS's inducement theory.

---

[6]   ALS claims in passing that "CloudFlare Alters Client Websites."  Opp. at 5. ALS does not explain how this issue is relevant, and indeed, it is not.  The very materials ALS points to reflect that any "alterations" concern things like adding cookies to track visitors and screening possible hackers or other security threats – not adding or removing the substantive content (such as images or videos) on a given website.  *See* Spillane Decl., Ex. D at 4.

[7]   No factual allegations in the FAC support any claim of a "high-volume" of infringement on Cloudflare's services.  In fact, ALS's reference to just 11 infringing websites (out of the four million sites Cloudflare serves, *see* www.cloudflare.com) confirms precisely the opposite.  FAC ¶ 81.

-5-

1    As for the first two arguments, they fail because the DMCA "safe harbor

2    expressly disclaims any affirmative monitoring requirement." *Viacom Int'l, Inc. v.*

3    *YouTube, Inc.*, 676 F.3d 19, 41 (2d Cir. 2012); *see also* 17 U.S.C. § 512(m) (safe

4    harbor "shall not be construed" as conditioned on a service provider "monitoring its

5    service or affirmatively seeking facts indicating infringing activity").  ALS's own

6    cases acknowledge this: "in the absence of other evidence of intent, a court would

7    be unable to find contributory infringement liability merely based on a failure to

8    take affirmative steps to prevent infringement." *Columbia Pictures Indus., Inc. v.*

9    *Fung*, 710 F.3d 1020, 1035 (9th Cir. 2013).

10    Neither *Fung* nor *Grokster* establishes that "high volume use," coupled with a

11    failure to develop filtering tools, is sufficient to confer inducement liability.  Both

12    *Fung* and *Grokster* allowed inducement liability where the record showed that most

13    of the site's "high-volume use" was infringing, *and* the defendant took steps to

14    actively encourage and assist infringement.  *Fung*, 710 F.3d at 1037; *Metro-*

15    *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939-940 (2005).

16    Under those facts, the defendant's "unlawful objective" of inducing infringement

17    was "unmistakable."  *Id.*  The active encouragement was key: *Fung* explicitly

18    cautions that a business model premised on high-volume use, where much of the use

19    is infringing, is insufficient and "alone would not justify an inference of unlawful

20    intent."  *Fung*, 710 F.3d at 1035 (citing *Grokster*, 545 U.S. at 940).  To the contrary,

21    "proper proof of the defendant's intent that its product or service be used to infringe

22    copyrights is paramount."  *Id.* at 1038.  As the Ninth Circuit has observed, "it is

23    important that we not permit inducement liability's relatively lax causation

24    requirement to 'enlarge the scope of [copyright's] statutory monopolies to

25    encompass control over an article of commerce' – such as technology capable of

26    substantial non-infringing uses – 'that is not the subject of copyright protection.'"

27    *Id.* at 1037-38 (citing *Sony*, 464 U.S. at 421).

28

1    As for ALS's third argument, it too fails because the DMCA explicitly

2 provides that the "failure of a service provider's conduct to qualify" for safe harbor

3 "shall not bear adversely upon the consideration of a defense" beyond safe harbor.

4 17 U.S.C. § 512(l).  As the Fourth Circuit held in *CoStar Grp., Inc. v. LoopNet, Inc.*,

5 the statute "declares its intent not to 'bear adversely upon' any of the ISP's defenses

6 under law, including the defense that the plaintiff has not made out a prima facie

7 case for infringement."  373 F.3d 544, 552 (4th Cir. 2004).

8    ALS nevertheless argues that Cloudflare's failure to comply with the DMCA

9 constitutes *per se* inducement.  *See* FAC ¶ 39 (alleging Cloudflare "refus[ed] all

10 along to implement or enforce a repeat infringer policy"); Opp. at 14 (alleging

11 Cloudflare "teaches its pirate site clients" that the Terms of Service are "for show

12 only").  This is backwards.  Inducement liability arises where a defendant engages

13 in affirmative acts to encourage infringement; DMCA protection is triggered where

14 a defendant engages in affirmative acts to discourage infringement.  The DMCA is

15 not a substantive standard of copyright liability, but a model for a safe harbor

16 affirmative defense.  If this case moves forward (which it shouldn't), Cloudflare will

17 present its qualifications for the DMCA's safe harbor protections; at that point ALS

18 may attempt to rebut Cloudflare's evidence.  But ALS's present allegations about

19 Cloudflare's supposed failure to comply with the DMCA's safe harbor provisions

20 does not stretch all the way in the opposite direction to plead affirmative

21 inducement.  Because ALS has failed to provide any factual support for its

22 inducement claim, such as allegations regarding any affirmative steps or intent to

23 invite infringement, its contributory claim based on inducement fails.

### B.    ALS's Arguments In Support Of Its Vicarious Copyright Infringement Claim Are Unavailing

26    ALS contends in its opposition that it has plausibly pleaded both elements of

27 this vicarious infringement claim.  It has not.

28    As for the first element, right and ability to supervise or control the direct

-7-

infringer (*Amazon*, 508 F.3d at 1173), ALS points to its allegations that Cloudflare can remove any cached copies of allegedly infringing works from its own caching network by terminating its services to the underlying direct infringer.  Opp. at 1. ALS is wrong because (1) nowhere in the FAC has it made such an allegation, instead alleging only the bare elements devoid of any facts, and (2) even if it had, this would only mean that Cloudflare has the right and ability to control *itself* – not that it has the right and ability to control the direct infringer's conduct in uploading infringing content to some third-party origin server.  Opp. at 16.

As for the second element, that Cloudflare derives a direct financial benefit from the infringement (*Amazon*, 508 F.3d at 1173), ALS points to its allegation that "Cloudflare's revenues are related to growth in its user base, which growth relates to the draw of infringing content."  Opp. at 16.  ALS again is wrong because (1) it has not alleged any such growth anywhere in the FAC, instead alleging only the bare elements devoid of any facts (FAC ¶ 96), and (2) even if it had, the test is not whether Cloudflare makes money from growing its user base – that is universally true of any company.  Rather, ALS must plead that Cloudflare gains subscribers specifically due to the availability of infringing material on Cloudflare's system. *Ellison*, 357 F.3d at 1079.  No such facts have been alleged, nor would ALS have any cognizable basis to allege them.

C.   **ALS Mischaracterizes And Fails Its Burden To Properly Plead Any Underlying Direct Infringements To Support Secondary Liability**

ALS urges that it should not have to list in "exhaustive detail" all infringements of its works in this case.  Opp. at 17.  Cloudflare is not suggesting that at all – but ALS cannot meet the governing pleading requirements by summarily claiming ownership of "hundreds" of copyrights collected over twenty years as possible grounds for its suit.  *Id.*  ALS is wrong to suggest that it can provide a "general averment" as to twenty years of copyright registrations (Opp. at 18) and meet its burden to give Cloudflare "fair notice of what the claim is."  *Bell Atl. Corp.*

-8-

1   *v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint cannot simply plead ownership
2   and otherwise be "devoid of any other specific facts related to the [copyrighted
3   work] and alleged copyright infringement."  *Cutler v. Enzymes, Inc.*, No. 08-CV-
4   04650, 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009) (dismissing direct
5   copyright infringement claim as insufficiently pleaded).

6       ALS's authority is not to the contrary: there was no Rule 12(b)(6) motion to
7   dismiss in *Napster*, and the plaintiffs in *OSU Student Alliance* specifically alleged
8   the wrongful removal of seven pieces of property.  *OSU Student All. v. Ray*, 699
9   F.3d 1053, 1058-59 (9th Cir. 2012).  Rather than offering a "general averment" that
10  their property was injured, the *OSU Student Alliance* plaintiffs attached multiple
11  exhibits to their complaint providing additional factual support for allegations that
12  the defendant university had violated due process, including photographs of their
13  damaged property and copies of emails with university officials.  *See OSU Student
14  All. v. Ray*, Case No. 6:09-CV-06269, ECF No. 1-1 (D. Or. Sep. 29, 2009) (Compl.
15  Exs. 1-9).  Having failed to offer similar factual support for its allegations, ALS's
16  failure to plead specific instances of direct infringement requires dismissal.[8]

17  ## II.   ALS'S CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM
         SHOULD BE DISMISSED

18
19      ALS has failed to demonstrate why its contributory trademark claim should
20  not be dismissed.

21
22

23      [8]  ALS has twice accused Cloudflare of refusing to reveal the identities of
    "primary hosts" of allegedly infringing content, both times referencing settlement
24  discussions protected under Federal Rule of Evidence 408.  *See* FAC ¶ 36; Opp. at
    12.  The context of these references makes clear that ALS is improperly attempting
25  to use these settlement discussions to bolster the merits of its case.  The Court
    should strike these references from the FAC and prohibit ALS from including any
26  such improper references to settlement communications in any future pleadings in
    this case.  *See, e.g., Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992)
27  (granting motion to dismiss copyright claim, and noting in tandem that the
    "settlement discussions alleged by plaintiff violate Rule 408 and thus are stricken
28  from the complaint pursuant to Rule 12(f)").

A.   **ALS Cannot Avoid Dismissal Of Its Indivisible Trademark Claim By Mischaracterizing The *Dastar* Line Of Cases As An "Election Of Remedies" Issue**

ALS attempts to avoid dismissal by mischaracterizing Cloudflare's arguments as an issue of election of remedies.  Opp. at 20.  Cloudflare is not suggesting that ALS's FAC must elect which remedies it wishes to pursue on each claim – or even that ALS must elect whether to allege a copyright or a trademark claim.  Rather, the *Dastar* line of cases holds that where a party's grievance concerns the reproduction, distribution, and display of creative works – as ALS does here – the resulting claim is governed by copyright law, ***not*** trademark law, even where the reproduced work bore a trademark necessarily reproduced with the copyrighted content.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003).

ALS devotes its argument to distinguishing *Dastar* because that case involved an expired copyright.  Opp. at 19-20.  But it is not *Dastar* alone that is fatal to ALS's claim – it is *Dastar's* progeny, which extended *Dastar's* rationale to the precise factual scenario presented here.  As explained in Cloudflare's moving papers, multiple courts have precluded trademark claims that are coextensive with copyright claims, because the alleged act of trademark infringement is merely the unauthorized reproduction of a copyrighted work.  *See Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 829-30 (7th Cir. 2016); *Slep-Tone Entm't Corp. v. Canton Phoenix Inc.*, No. 3:14-CV-00764, 2014 WL 5817903, at *3 (D. Or. Nov. 7, 2014); *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 15-CV-05024, 2016 WL 1027998, at *12 (C.D. Cal. Mar. 14, 2016).  This tracks the underlying differences between copyright and trademark: copyrights protect creative content and are time-limited; trademarks protect brands and can endure forever.  In ALS's attempt to distinguish *Dastar* and progeny, ALS effectively concedes that its trademark claim here would expire at the same moment its copyrights enter the public domain.  *See* Opp. at 20 ("ALS is not using trademark law to work around expired copyright protection.")  This concession underscores that ALS's true claim

-10-

is for copyright infringement alone.  The *Phoenix*, *Slep-Tone* and *Lion's Gate* cases are fatal to ALS's trademark claim, yet ALS makes only a cursory – and unpersuasive – effort to distinguish them.[9]  This Court should reject ALS's attempt to recast its copyright infringement claim as a trademark infringement claim.

## B.   ALS Cannot Save Its Contributory Trademark Infringement Claim From Dismissal

### 1.   The FAC's allegations do not even remotely support an inducement theory

ALS admits that it has nothing beyond its copyright inducement claim to support its trademark inducement claim.  Opp. at 21.  But it has no such copyright inducement claim, as demonstrated above.

Nor does the *Gucci* case (which relied heavily on the *dissent* in *Perfect 10 v. Visa* and should be afforded little weight) save ALS's claim, because there, unlike here, the Defendant affirmatively represented that it specialized in obtaining credit card processing facilities for "high risk merchant accounts," including those who sell "replica products."  *Gucci America, Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, 248-49 (S.D.N.Y. 2010).  Here, at best, ALS pleads an alleged failure to act (FAC ¶ 35), which even if taken as true, cannot support an inducement claim.  To the contrary, a plaintiff must plead "affirmative acts" a defendant has taken to suggest or invite third parties to directly infringe a trademark.  *See Visa*,

---

[9]  Nor do ALS's additional cases overcome *Dastar*.  First, both *Fonovisa* (1996) and *Cybernet* (2002) were decided pre-*Dastar* (2003).  *See Fonovisa*, 76 F.3d 259; *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002).  Second, ALS's citation to *Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06-CV-6403, 2008 WL 2884761 (E.D.N.Y. July 23, 2008) is inapposite because that case, concerning the unauthorized distribution of Microsoft software, was decided on default judgment without *Dastar* being brought to the court's attention.  *Id.* at *1.  *Atek's* trademark conclusion is contrary to binding Ninth Circuit precedent in any case.  *See Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081-82 (9th Cir. 2015) (dismissing trademark claim premised on unauthorized distribution of Adobe software).  Third, *Louis Vuitton*, 658 F.3d at 940 and *Coach, Inc. v. Sapatis*, 27 F. Supp. 3d 239, 243 (D.N.H. 2014) did not concern actual (but unlicensed) copies of creative content (like ALS's images here), but rather knock-off consumer products (i.e. fake handbags) manufactured by neither Louis Vuitton nor Coach but bearing their logos – a quintessential passing-off trademark harm.

-11-

494 F.3d at 807; *see also Newborn v. Yahoo!, Inc*., 391 F. Supp. 2d 181, 191 (D.D.C. 2005) ("conclusory allegation" that Yahoo "allowed unauthorized third-party use of the plaintiff's alleged trademark" in a domain name did not state contributory trademark infringement claim).  This claim fails.

### 2.  Cloudflare's control of its own system is irrelevant to ALS's material contribution theory

ALS urges that it has sufficiently pleaded a material contribution theory of contributory trademark infringement because "Cloudflare enjoys 'direct control and monitoring' of the 86 copies of websites Cloudflare caches."  Opp. at 22.  But the standard is whether Cloudflare controls the underlying direct infringer's instrumentalities such that it could remove the infringement from the direct infringer's website – not whether it controls its own activities.  *See Visa*, 494 F.3d at 807 (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).  ALS does not allege that Cloudflare has such control, and indeed it could not.  By contrast, ALS's reference to *Gucci* is illuminating.  There the court found contributory infringement because defendant's payment processing services were necessary to infringement: infringement "occurred through the sale" of counterfeits and thus payment was "in fact part of the infringement process."  *Gucci*, 721 F. Supp. 2d at 253.  ALS's failure to address this distinction or distinguish the *Lockheed* case is telling.  This claim should be dismissed.

### C.  ALS's Unsupported Disagreements Aside, It Fails To Properly Plead An Underlying Direct Trademark Infringement

ALS cites no authority supporting its bare claim that its pleading of an underlying direct trademark infringement claim meets the *Iqbal* standard – and it does not.  As for nominative fair use, ALS does not dispute that the ALS trademark accurately described the works in question.  ALS instead characterizes allegedly infringing works as "stolen" (*i.e.*, copied), making them "knockoffs."  Opp. at 23.  ALS cannot redefine this word: ALS has not alleged that works on the "pirate sites"

-12-

are *imitations* masquerading as ALS works, or that they are ALS works that have been "materially change[d]," as was the case with the counterfeit or knockoff products in the cases ALS relies on. *See, e.g.*, *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1122 (D. Nev. 2013). Rather, ALS affirmatively pleads these are *actual ALS works*, but reproduced without authorization. *See* FAC ¶¶ 3, 9, 20, 21, 22, 23, 24, 76, 77, 81, 85. Thus, the *Adobe* case dooms ALS's claim. "[W]here a defendant uses the mark to refer to the trademarked good itself," there can be no trademark liability due to the doctrine of nominative fair use. *Adobe*, 809 F.3d at 1081 (internal citation omitted).

## III. ALS CONCEDES THAT ITS UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Cloudflare argued, and ALS concedes, that ALS's unfair competition claim is barred by Section 230 of the Communications Decency Act. *See* Cloudflare's Memorandum in Support of its Motion to Dismiss, ECF 50 at 20; Opp. at 24. Because ALS "does agree" that the CDA as interpreted in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) bars ALS's unfair competition claim, the Court's dismissal should be with prejudice. *See Smith v. Harrington*, No. 12-CV-03533, 2013 WL 132465, at *11 (N.D. Cal. Jan. 9, 2013) ("In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.").[10]

---

[10]   Plaintiff's counsel Mr. Spillane filed a declaration claiming that the parties did not "conduct a conference of counsel about the motion to dismiss on 'September 19 and 20,' as Cloudflare says." Spillane Decl. ¶ 2. But Exhibit A to Mr. Spillane's declaration directly contradicts his statement. Exhibit A, an email chain, shows that Cloudflare's counsel sent four meet and confer emails to Mr. Spillane on September 18 and 19, including a request to speak by telephone – and that Mr. Spillane refused Cloudflare's request for a phone call. Cloudflare's counsel also called Mr. Spillane on September 19, but he did not answer, nor did he return counsel's voicemail. Cloudflare's counsel thus had no choice but to commence the conference of counsel with a substantive email listing the grounds for Cloudflare's planned motion. *See* Spillane Decl., Ex. A. On September 20, counsel exchanged four more meet and confer emails (only two of which Mr. Spillane attached to his Declaration), and at 11:19 a.m. counsel engaged in an approximately 20-minute telephonic discussion

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Cloudflare's Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6).

Dated:  October 10, 2016          Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

By_____
    Rachel Kassabian

*Attorney for Defendant
Cloudflare, Inc.*

---

about the details of Cloudflare's planned motion.   During that call, Cloudflare's counsel shared in further detail the substance of its planned motion, and provided specific case references and explanations of their holdings.  Although he had these case references during the call, Mr. Spillane also asked for an email listing the citations, which counsel provided that same day.  Cloudflare submits that eight emails (two of which contained substantive legal arguments and case citations), one voicemail and one 20-minute conference call is indeed a "conference of counsel," and that counsel cannot be heard to complain that these discussions were untimely, given his election to refuse to speak by phone on the initial date requested.

# APPENDIX A



| | | | | | |
|---|---|---|---|---|---|
| | Home | Features | Help | Sign up | Login |

# Abuse policy

CloudFlare offers network service solutions including a reverse proxy, pass-through security service, and a content distribution network (CDN). Because CloudFlare is a reverse proxy, our IP addresses appear in WHOIS and DNS records for websites using our services. We do not have access to our customer's content. CloudFlare is not a hosting provider.

## What can you do?

CloudFlare will forward all abuse reports that appear to be legitimate to the responsible hosting provider and to the website owner. In response to a legitimate abuse report CloudFlare will provide the complainant with the contact information for the responsible hosting provider so they can be contacted directly.

## What are we unable to do?

Since CloudFlare is not a hosting provider we do not have the capability to remove content from a website.

## How do I report?

If you do choose to file a report with CloudFlare, you'll want to select the the appropriate category for your report on the reporting form. Please provide a high level of detail in the description of the content, the exact steps needed to access the content, and the location of the content on the page. For reports of a sensitive nature, including nonconsensual pornography, please use the "general" option. We only review reports of URLs resolving to CloudFlare IPs.

Physical mail can be sent to:
CloudFlare, Inc.
Attn: Legal Department
101 Townsend St
San Francisco, CA 94107

## What if I'm a law enforcement official?

Law enforcement officials can contact us directly at abuse+law@cloudflare.com. You must include your badge & case number when contacting us to receive a response. It is a crime to falsely impersonate a law enforcement official.

**We accept the following kinds of reports:**

- Copyright infringement & DMCA violations
- Trademark infringement
- Child pornography
- Phishing & malware
- Violent threats

**Click here to submit an abuse report**

---

**Contact**
Contact support
Contact sales
Call sales: +1 888 993 5273

   

© CloudFlare, Inc.

**What we do**
Plans
Overview
Features
Network
Apps

**Community**
Blog
Case studies
Partners
Developers

**Support**
Help center
System status
Resources
Videos
Trust & Safety

**About us**
Our team
Careers
Press
Terms of service
Privacy & security