UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

****AMENDED** CIVIL MINUTES - GENERAL**

| Case No. | CV 16-5051-GW(AFMx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | *ALS Scan, Inc. v. Cloudflare, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jay M. Spillane | Gary L. Bostwick<br>Rachel H. Kassabian |

**PROCEEDINGS: CLOUDFLARE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) [49]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant Cloudflare's motion is GRANTED WITH LEAVE TO AMEND. Plaintiff will have until November 11, 2016 to file a Second Amended Complaint. Defendants will have three weeks from November 11 to respond.

The scheduling conference remains on calendar for November 28, 2016 at 8:30 a.m. Parties will file a joint Rule 26(f) report by noon on November 21, 2016.

: 23

Initials of Preparer JG

***ALS Scan, Inc. v. CloudFlare, Inc., et al.***, Case No. CV-16-5051-GW-AFM
Tentative Ruling on Defendant CloudFlare, Inc.'s Motion to Dismiss

## I. Background

ALS Scan, Inc. ("Plaintiff") sues CloudFlare, Inc. ("CloudFlare"); Tiger Media, Inc. ("Tiger"); OVH SAS; Hebergement OVH Inc.; Dolphin Media Ltd. ("Dolphin"); Hivelocity Ventures Corporation; Steadfast Networks, LLC; Duodecad IT Services Luxembourg S.A.R.L.; and Does 1-10 (collectively, "Defendants") for various claims related to Defendants' alleged infringement of Plaintiff's copyrighted and trademarked works. *See generally* First Am. Compl. ("FAC"), Docket No. 33. The FAC asserts seven causes of action: (1) direct copyright infringement, against Dolphin and Does 1-5; (2) contributory copyright infringement, against all Defendants except Dolphin; (3) vicarious copyright infringement, against all Defendants except Dolphin; (4) direct trademark infringement, against Dolphin and Does 1-5; (5) direct trademark counterfeiting, against Dolphin and Does 1-5; (6) contributory trademark infringement, against all Defendants except Dolphin; and (7) unfair competition, against all Defendants. *Id.*

Plaintiff owns a library of copyrighted and trademarked works of adult entertainment. *Id.* ¶ 3. Plaintiff alleges that its works are repeatedly infringed by pirate Internet sites, which display Plaintiff's works without Plaintiff's permission. *Id.* ¶ 4. These sites are allegedly supported by third-party service providers that continue doing business with the sites even after receiving actual notice of infringement from Plaintiff. *Id.* ¶ 6.

CloudFlare is a web performance and security company that offers a content delivery network ("CDN"), web content optimization, website security, denial of service (DDos) protection, and a managed domain name system network ("DNS"). *Id.* ¶ 29; *see also* Decl. of Jay Spillane ("Spillane Decl.") Exs. B-F, Docket No. 52-2 to 52-6.[1] CloudFlare's website advertises that its CDN caches[2] clients' "content across [CloudFlare's] global network, bringing it closer to visitors from every region." *Id.* Ex. B, Docket No. 52-2 at page 2. In addition, CloudFlare's website explains that it "empowers web businesses to deliver fast, secure, and device specific content to enhance the experience of mobile users . . . . A content delivery

[1] As discussed *infra*, the Court may take judicial notice of these exhibits as documents incorporated in the FAC.

[2] "Generally, a 'cache' is a 'computer memory with very short access time used for storage of frequently or recently used instructions or data.'" *Perfect 10, Inc. v. Amazon.com, Inc.* 508 F.3d 1146, 1156 n.3 (9th Cir. 2007) (quoting *United States v. Ziegler*, 474 F.3d 1184, 1186 n.3 (9th Cir. 2007)).

network (CDN) takes [clients'] static content and stores a copy closer to [clients'] visitors. By moving the content closer to [a client's] actual visitor, it takes less time to access the resources, which means the page loads faster." *Id.* Ex. C, Docket No. 52-3 at page 7.

CloudFlare's Terms of Service are published on its website and explain to its clients, in relevant part, the following:

> You retain full copyrights in any materials served through CloudFlare. Depending on the features you select or Apps you enable, CloudFlare may modify the content of your site. For example, CloudFlare may detect any email addresses and replace them with a script in order to keep it from being harvested, or CloudFlare may insert code to improve page load performance or enable a Third Party App. Depending on the features you enable, you acknowledge CloudFlare may:
>
> 1. Intercept requests determined to be threats and present them with a challenge page.
> 2. Add cookies to your domain to track visitors, such as those who have successfully passed the CAPTCHA on a challenge page.
> 3. Add script to your pages to, for example, add services, Apps, or perform additional performance tracking.
> 4. Other changes to increase performance or security of your website.
>
> CloudFlare will make it clear whenever a feature will modify your content and, whenever possible, provide you a mechanism to allow you to disable the feature. As a visitor to CloudFlare.com and a user of the CloudFlare Service, you consent to having your Internet Protocol address recorded and your activities monitored to prevent abuse. . . .
>
> CloudFlare reserves the right to investigate you, your business, and/or your owners, officers, directors, managers, and other principals, your sites, and the materials comprising the sites at any time. These investigations will be conducted solely for CloudFlare's benefit, and not for your benefit or that of any third party. If the investigation reveals any information, act, or omission, which in CloudFlare's sole opinion constitutes a violation of any local, state, federal, or foreign law or regulation, this Agreement, or is otherwise deemed to harm the Service, CloudFlare may immediately shut down your access to the Service. . . . You acknowledge that CloudFlare may, at its own discretion, reveal the information about your web server to alleged copyright holders or other complainants who have filed complaints with us. . . .
>
> CloudFlare's policy is to investigate violations of these Terms of

> Service and terminate repeat infringers. . . . In order to improve network performance, CloudFlare automatically removes content from our caches when it has been removed from our customer's origin web server. CloudFlare is not a hosting provider and has no way of removing abusive content on third party hosting services. Individuals or copyright holders concerned with content served through CloudFlare's network may submit a complaint for investigation . . . .

*Id.* Ex. D, Docket No. 52-4 at pages 4-9.

The FAC alleges that the purpose of CloudFlare's CDN is a to "speed a customer's access to the website of Cloudflare's client through a series of data centers maintained by Cloudflare that cache mirror copies of that site." FAC ¶ 32. According to Plaintiff, this service allows consumers seeking to access a website of CloudFlare's client to retrieve the website from the closest CloudFlare data center, rather than accessing the site from the primary host. *Id.* This purportedly results in a client's website loading twice as fast for its visitors, regardless of where they are located. *Id.*

In addition, Plaintiff alleges that CloudFlare's DNS service "allow[s] pirate sites and their hosts to conceal their identity from copyright owners. The domain registration information for some of the pirate sites . . . indicate that the sites reside on a Cloudflare server in Phoenix, Arizona. When presented with a notice of infringement, however, CloudFlare . . . refuses to disclose the identity of the primary host and site owner. In this fashion Cloudflare acts as a firewall protecting pirate sites and their hosts from legal recourse by copyright owners." *Id.* ¶ 33.

Plaintiff alleges that it sent numerous notices to CloudFlare of infringement of its copyrighted works by CloudFlare clients. *Id.* ¶ 34. However, Plaintiff alleges that CloudFlare has continued to offer its CDN and related services to these clients, despite the infringement notifications. *Id.* ¶ 36.

Plaintiff seeks actual damages, statutory damages, disgorgement of profits obtained from the infringing activity, trebling of damages, costs and attorneys' fees, preliminary and permanent injunctive relief, and such other relief as the Court deems appropriate. *Id.* at 12:20-13:1.

Now pending before the Court is CloudFlare's Motion to Dismiss.[3] *See* Mot. to Dismiss (""MTD"), Docket No. 49, 50. Plaintiff has opposed the Motion, *see* Opp'n to MTD ("Opp'n"),

[3] On October 3, 2016, the Court granted Defendant Tiger's Motion to Dismiss on the grounds that Plaintiff had failed to make out a claim for secondary liability against Tiger. *See* Final Ruling, Docket No. 53.

Docket No. 51, to which CloudFlare has replied. *See* Reply, Docket No. 55.

**II. Legal Standard**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

**III. Analysis**[4]

[4] Plaintiff has filed a Declaration with its Opposition arguing that CloudFlare failed to properly meet and confer prior to filing the instant Motion, because the parties did not complete their meet and confer conversations until the evening of September 20, which was only six days prior to the date CloudFlare filed the Motion. *See* Spillane Decl. Although Local Rule 7-3 requires that the parties meet and confer at least seven days prior to filing a motion, *see* C.D. Cal. L.R. 7-3, Plaintiff states that CloudFlare's counsel emailed him on September 18 requesting to meet and confer on September 19, but Plaintiff was not available; as such, the parties did not meet and confer until September 20. *Id.* ¶ 2. In light of these circumstances, the Court believes the parties substantially complied with Local Rule 7-3.

The Spillane Declaration also attaches five exhibits containing various screenshots from CloudFlare's website, although the Declaration does not clarify the basis for including these exhibits. *See id.* Exs. B-F. However,

The FAC asserts four causes of action against CloudFlare, including contributory copyright infringement, vicarious copyright infringement, contributory trademark infringement, and unfair competition. *See generally* FAC. CloudFlare alleges that Plaintiff has failed to adequately plead each cause of action.

***A. The FAC States a Claim for Contributory Copyright Infringement***

Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) ("*Amazon.com*") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("*Grokster*")). Thus, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("*Visa*") (explaining that contributory infringement can be established through either material contribution or inducement). CloudFlare does not dispute that it had knowledge of the infringing activity of its clients; rather, Cloudflare contends that Plaintiff has failed to allege that it materially contributed or induced the infringing activity.

1. <u>Material Contribution</u>

A third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1375 (9th Cir. 1995) ("*Netcom*") (citing *Gershwin Publ'g*, 443 F.3d at 1162; *Apple Computer, Inc. v. Microsoft Corp.*, 821 F.Supp. 616, 625 (N.D. Cal. 1993); *Demetriades v. Kaufmann*, 690 F.Supp. 289, 294 (S.D.N.Y. 1988)).

In *Amazon.com*, the Ninth Circuit analyzed the material contribution prong in the context of an Internet search engine operator (Google) and held that:

> a computer system operator can be held contributorily liable if it "has *actual* knowledge that *specific* infringing material is available

---

in its Reply, CloudFlare asserts that the Court should take judicial notice of these exhibits, because the FAC refers to and quotes various portions of the website, thereby incorporating the contents of the website into the FAC. *See* Reply at 2 n.2. The Court agrees. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

> using its system," and can "take simple measures to prevent further damage" to copyrighted works, yet continues to provide access to infringing works.

508 F.3d at 1172 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom*, 907 F.Supp. at 1375 (emphasis in original). Although an "actor's contribution to infringement must be material to warrant the imposition of contributory liability," the Ninth Circuit emphasized that "services or products that facilitate access to [infringing] websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities." *Id.* (internal quotations and citations omitted).

In *Amazon.com*, the district court had dismissed a contributory copyright infringement claim against Google, holding that even assuming Google had knowledge that links to websites displaying infringing material were made available using its search engine, because Google did not undertake promotional or advertising efforts to encourage visits to the infringing websites, it could not be liable for contributory infringement. *Id.* The Ninth Circuit reversed, reasoning that:

> [t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, Google could be held contributorily liable if it had knowledge that infringing [copies of plaintiff's] images were available using its search engine, could take simple measures to prevent further damage to [plaintiff's] copyrighted works, and failed to take such steps.

*Id.* The Ninth Circuit thereafter remanded the case to the district court to resolve factual disputes over the adequacy of the plaintiff's notices to Google of the infringement and Google's responses to the notices, as well as factual disputes over whether there was a reasonable and feasible means for Google to refrain from providing access to the infringing websites. *Id.* at 1172-73.

Shortly after *Amazon.com*, the Ninth Circuit issued its decision in *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n* ("*Visa*"), 494 F.3d 788 (9th Cir. 2007). In that case, the plaintiff sued various credit card companies for contributory copyright infringement, alleging that the credit card companies had contracted with issuing banks to issue branded credit cards to consumers, and the issuing banks then contracted with merchant banks to settle transactions using those cards, including transactions for payments to Internet websites that infringed the plaintiff's copyrights.

*See Visa*, 494 F.3d at 792. The plaintiff claimed that the credit card companies had materially contributed to the websites' infringement because they were aware of the infringement, yet continued to process credit card payments for the infringing websites. *Id.* at 795.

The Ninth Circuit held that the plaintiff had failed to allege facts sufficient to establish material contribution, because the credit card companies:

> cannot be said to materially contribute to the infringement because they have no direct connection to that infringement. Here, the infringement rests on the reproduction, alteration, display and distribution of [plaintiff's] images over the Internet. [Plaintiff] has not alleged that any infringing material passes over [d]efendants' payment networks or through their payment processing systems, or that [d]efendants' systems are used to alter or display the infringing images . . . . Here, [] the services provided by the credit card companies do not help locate and are not used to distribute the infringing images. While [plaintiff] has alleged that [d]efendants make it easier for websites to profit from this infringing activity, the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would still be infringement.

*Id.* at 796. The Circuit further distinguished *Amazon.com*, emphasizing that "Google may materially contribute to infringement by making it fast and easy for third parties to locate and distribute infringing material, whereas [d]efendants make it easier for infringement to be *profitable*," which the Court emphasized could not be the basis of contributory copyright liability. *Id.* at 797 (emphasis in original).

Here, the Court would find that Plaintiff has sufficiently alleged contributory liability against CloudFlare pursuant to a material contribution theory. Unlike the credit card companies in *Visa*, which did not help consumers access infringing websites, Plaintiff alleges that CloudFlare's CDN service makes it faster and easier – specifically, "twice as fast" – for consumers across the world to access infringing websites and load infringing images from any location. *See* FAC ¶ 32. Moreover, Plaintiff alleges that consumers seeking access to infringing websites retrieve the website and load the infringing images from the closest CloudFlare data center, rather than from the primary host. *Id.* These allegations are sufficient to state a claim for material contribution under Ninth Circuit precedent. *See Amazon.com*, 508 F.3d at 1172 (emphasizing that "services or products that facilitate access to [infringing] websites across the world can significantly magnify the effects of otherwise immaterial infringing activities"); *see also Louis Vuitton Malletier, S.A. v. Akonic Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011)

("[t]here is no question that providing direct infringers with server space" satisfies the material contribution standard); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (finding triable issue of fact where "reasonable trier of fact could conclude that [internet service provider] materially contributed to the copyright infringement by storing infringing copies of [the infringing] works on its [network] and providing [] users with access to those copies"); *Napster*, 239 F.3d at 1022 (emphasizing that "without the support services defendant provides, [] users could not find and download the music they want with the ease [provided by defendants]" (internal quotations and citations omitted)); *Netcom*, 907 F.Supp. at 1375 (finding internet service provider liable for contributory infringement because the provider "allows [the primary infringer's] infringing messages to remain on its system and be further distributed to other [users] worldwide . . . . Thus, it is fair, assuming [the provider] is able to take simple measures to prevent further damages to plaintiffs' copyrighted works, to hold [the provider] liable for contributory infringement where [it] has knowledge of [the] infringing postings yet continues to aid in the accomplishment of [the infringing activity]."').[5]

In addition, with respect to CloudFlare's DNS service, Plaintiff alleges that CloudFlare "allow[]s pirate sites and their hosts to conceal their identify from copyright owners," thereby preventing copyright holders from stopping the pirate sites' infringing activities. *Id.* ¶ 33. These allegations also support a material contribution claim. *See Amazon.com*, 508 F.3d at 1172 ("copyright holders cannot protect their rights in a meaningful way unless they can hold providers of [internet] services or products accountable"); *Napster*, 239 F.3d at 929-30 ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers.").

CloudFlare contends that it cannot be liable for material contribution because there are no "simple measures" CloudFlare could take to prevent further damage to Plaintiff's copyrighted works. *See* Mot. at 7:7-17. CloudFlare argues that "there are no measures of ***any*** kind that

---

[5] CloudFlare attempts to distinguish these cases by contending that in each case, "the services were *necessary* for the alleged infringement." *See* Reply at 4:15-18 (emphasis in original). CloudFlare argues that in contrast, here, the infringing activity would continue to exist without CloudFlare's services. *Id.* at 5:1-3. However, this argument is misplaced. In *Amazon.com*, the infringing websites would clearly have continued to exist even without Google's services – indeed, the Ninth Circuit held that Google's services made it "faster and easier" for users to access infringing images, thereby making it liable for material contribution, but at the same time found that Google could not be liable for vicarious liability, because the infringing websites would continue to exist "and distribute [their] infringing copies of [plaintiff's] images after its participation in [Google's services] has ended." *See* 508 F.3d at 1172-74.

CloudFlare could take to prevent this alleged infringement, because the termination of CloudFlare's CDN services would have no impact on the existence and ability of these allegedly infringing websites to continue to operate." *Id.* (emphasis in original). However, a defendant may still be liable for material contribution regardless of whether it is able to completely halt infringing activity, so long as it is able to take measures to "prevent further damage" to the copyrighted works. *See Amazon.com*, 508 F.3d at 1172. Here, terminating CloudFlare's services would likely have at least have some impact on the infringing activity of CloudFlare's clients, in that it would take users twice as long to access and load the infringing images. *See Napster*, 239 F.3d at 1021-22 (holding defendant liable for material contribution where it could have blocked access to its system by the suppliers of infringing music files, thereby making it more difficult for users to find and download infringing files).

In any event, the extent to which reasonable measures exist for CloudFlare to prevent further damage to Plaintiff's copyrighted works appears to be a factual issue to be resolved at a later stage in these proceedings. *See Amazon.com*, 508 F.3d at 1172-73 (remanding to district court to resolve "factual disputes over whether there are reasonable and feasible means for Google to refrain from providing access to infringing images").

In sum, because Plaintiff has alleged that CloudFlare's services facilitate access to its clients' infringing websites, the Court would find that Plaintiff has sufficiently alleged material contribution.[6]

2. Inducement

CloudFlare also argues that the FAC fails to state a claim for inducement liability, because there are no allegations that CloudFlare's services encourage the infringing activity. *See* MTD at 6:25-7:6; 8:6-20. In *Visa*, the Ninth Circuit explained that inducement liability is established where a defendant "'distributes a device with the object of promoting its use to

[6] The Court notes that the allegations Plaintiff raises with respect to CloudFlare are significantly different than those it raised with respect to Tiger. *See* Final Ruling at 6-7, Docket No. 53. In its Final Ruling on Tiger's Motion to Dismiss, the Court held that Plaintiff had failed to "plausibly allege a link between Tiger's advertising brokerage services and the infringing conduct of the [pirate sites]." *Id.* at 6. The Court emphasized that it was "entirely unclear from the FAC how serving an advertisement on a website encourages infringement, other than by enabling the website to profit from those advertisements, a theory the Ninth Circuit expressly rejected in *Visa*." *Id.* at 7. Here, in contrast, the FAC alleges a direct link between CloudFlare's services and the infringing conduct of the pirate websites – just as in *Amazon.com*, in which the Ninth Circuit held that Google could be liable for material contribution because its services made it faster and easier for consumers to access infringing websites, here, the FAC alleges that CloudFlare's services makes it faster and easier for consumers to access infringing websites and load infringing images. *See* FAC ¶ 32.

infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.'" *See Visa*, 494 F.3d at 800 (quoting *Grokster*, 545 U.S. at 936-37). "[T]he standard for inducement liability is providing a service 'with the object of promoting its use to infringe copyright'. . . inducement 'premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.'" *Id.* (quoting *Grokster*, 545 U.S. at 937); *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013) (explaining that "the inducement copyright doctrine . . . applies to services available on the Internet as well as to devices or products").

Here, the FAC does not allege that CloudFlare provides its services for the purpose of promoting copyright infringement, or that it directly encourages its clients to display infringing content on their websites. *Cf. Grokster*, 545 U.S. at 923-24 (finding file-sharing service liable for infringement where the record was "replete with evidence that from the moment [plaintiffs] began to distribute their free software, each one clearly voiced the objective that recipients use it to download copyrighted works, and each took active steps to encourage infringement"). As such, the Court would find that Plaintiff has failed to plead contributory liability pursuant to an inducement theory.

3. Direct Infringement

Alternatively, CloudFlare argues that Plaintiff has failed to plausibly allege direct copyright infringement, which is necessary in order to prove contributory infringement. *See, e.g., Amazon.com.*, 508 F.3d at 1169 ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." (Internal quotation and citation omitted.)).

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one of the exclusive rights granted to copyright holders under 17 U.S.C. § 107." *Napster*, 239 F.3d at 1013.

Here, Plaintiff alleges that it owns the copyrights to numerous works of adult entertainment, and has attached a list of its registrations. *See* FAC ¶ 3, Ex. 1, Docket No. 33-1. Plaintiff further alleges that various pirate Internet websites have infringed these works by displaying the works on their websites. *Id.* ¶ 4. Moreover, Plaintiff alleges that the infringing

activity has been occurring since around 2000 to the present. *Id.* ¶ 24.

CloudFlare appears to take issue with the fact that Plaintiff has not indicated which specific copyrights were allegedly infringed, and contends that "it is insufficient to attach to the complaint a list of every copyright registration a plaintiff may own, as [Plaintiff] has done here." *See* MTD at 12:5-14. In support, Plaintiff relies on *Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 013 WL 709276, *3 (S.D.N.Y. Feb. 27, 2013). However, in that case, the plaintiff had provided a spreadsheet listing its copyrighted works and registration numbers, but had also alleged that its copyright claims were not limited to the works on the spreadsheet. The Court held that because the plaintiff had indicated that the provided list was not exhaustive, the complaint failed to specify which works were at issue, and explained that "[w]hile the complaint need not specify which copyright is infringed by which act, the complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements." *See Palmer Kane*, 2013 WL 709276, at *3 (citing *Richard Feiner & Co., Inc. v. Larry Harmon Pictures Corp.*, 38 F.Supp.2d 276, 279 (S.D.N.Y. 1999)). In contrast, here, Plaintiff has not alleged that the list of copyright registrations is not exhaustive.

Because Plaintiff has sufficiently alleged ownership and violation of its display right, the Court would find that the FAC states a claim for direct copyright infringement against the pirate sites. *See* 17 U.S.C. § 106(5) (a copyright owner has the exclusive right to "display the copyrighted work publicly").

4. Conclusion

In sum, Plaintiff has sufficiently alleged a material contribution theory of contributory liability. The Court would therefore DENY CloudFlare's Motion with respect to the second cause of action.

***B. The FAC Fails to State a Claim for Vicarious Copyright Infringement***

"To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant (1) has the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *See Visa*, 494 F.3d at 802 (citations omitted).

CloudFlare argues that the FAC fails to adequately state a claim for vicarious liability because CloudFlare does not have the requisite right and ability to supervise and control the infringing conduct. *See* MTD at 10:1-11:6. The Court would agree. In *Visa*, the Ninth Circuit held that the defendants could not be held vicariously liable for infringement by independent

websites because they did not have the ability to "take away the software the offending websites use to copy, alter, and distribute the infringing images, cannot remove those websites from the Internet, and cannot themselves block the distribution of those images over the Internet." *See Visa*, 494 F.3d at 805. Similarly, in *Amazon.com*, the Ninth Circuit found that there was no vicarious liability because Google did not have the legal right to stop or limit the direct infringement of third-party websites. *See Amazon.com*, 508 F.3d at 1173.

Plaintiff argues that CloudFlare can eliminate copies of the infringing works that it caches at its 86 remote locations, thereby ending distribution of the infringing works from its server system. *See* Opp'n at 16:10-20. However, this theory was expressly rejected in both *Visa* and *Amazon.com*. *See Visa*, 494 F.3d at 804-05 (emphasizing that although loss of particular service provider could harm infringing website, that was not sufficient to establish that the providers had the legal right to stop third-party websites from infringing where infringing activity took place on third-party websites); *Amazon.com*, 487 F.3d at 731 (same). As CloudFlare correctly points out, the FAC does not allege that CloudFlare has the legal right to stop the infringing websites.

Moreover, the FAC does not allege that CloudFlare has a direct financial interest in the infringing activity. As the Ninth Circuit has explained, "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *See Ellison*, 357 F.3d at 1079. In *Ellison*, the Ninth Circuit held that there was a direct financial benefit because the infringing activity helped to encourage overall subscription to the internet service provider. *Id.* Here, the FAC does not allege that the infringing activity encourages customers to subscribe to CloudFlare's services or somehow directly creates a financial profit for CloudFlare.

As such, the Court would find that the FAC fails to state a claim for vicarious copyright liability and dismiss the third cause of action against CloudFlare.

***C. The FAC Fails to State a Claim for Contributory Trademark Infringement***

CloudFlare also contends that the FAC fails to state a claim for contributory trademark infringement, because the FAC fails to allege an action for direct trademark infringement, and also fails to allege any facts establishing contributory liability on the part of CloudFlare. *See* MTD at 13:3.

1. Direct Infringement

Plaintiff's fourth cause of action is for "direct trademark infringement," which requires a "trademark holder [to] show that the defendant's use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *See Adobe Sys., Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010)).

CloudFlare contends that Plaintiff's trademark infringement claim is based on the same underlying conduct as its copyright claims, and thus is indivisible from its copyright claim. *See* MTD at 13:6-15:15. In support, CloudFlare relies on *Dastar Corp. v. Twentieth Century Fox Film, Corp.*, 539 U.S. 23, 33-34 (2003), in which the Supreme Court held that a trademark claim cannot be relied upon to extend copyright rights to an expired copyright registration. However, in *Dastar*, the plaintiffs brought a trademark claim alleging that the defendant's television series failed to give proper credit to the plaintiffs' earlier television series based on the same general plot – the copyright to the plaintiffs' television series had expired and the television series was in the public domain. *See Dastar*, 539 U.S. at 26. The Court held that the plaintiffs' trademark claim was essentially a copyright claim and therefore preempted, emphasizing that the distinguishing factor between copyright and trademark is that trademark protects only the "producer of the tangible goods that are offered for sale, and not [] the author of any idea, concept, or communication embodied in those works." *Id.* at 37. The Court concluded that the defendant was the producer of the television show, and therefore, the plaintiffs could not prevail on their trademark infringement claim. *Id.*

Here, Plaintiff has properly alleged that it is both the producer of the images at issue and the author of the ideas embodied in those images, and thus has alleged separate claims for both copyright infringement and trademark infringement. Plaintiff's copyright claim rests on its allegations that it is the owner of the original idea and expression embodied in its adult works, while its trademark claim rests on its allegations that the infringing images are displayed with Plaintiff's trademark on them, thereby creating confusion as to origin. *See Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, __ F.Supp.3d __, 2016 WL 1027988, *13 (C.D. Cal. Mar. 14, 2016), *on reconsideration for other grounds*, (emphasizing that "if the [] defendants were to sell posters, journals, and clothing with [the trademarked phrase] on them, or take the goods [plaintiff] alleges it produces or licenses and put [defendant's] own mark on it, then there would

be a solid origin claim under the Lanham Act"); *see also Tristar Pictures, Inc. v. Del Taco, Inc.*, No. CV 99-07655DDPEX, 1999 WL 33260839 (C.D. Cal. Aug. 31, 2009) (explaining that existence of a copyright claim does not necessarily bar trademark protection for the same underlying material).

As such, the Court would find that Plaintiff has sufficiently alleged a claim for direct trademark infringement.[7]

2. Contributory Infringement

However, the Court would find that Plaintiff has failed to sufficiently allege a claim for contributory liability. "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *See Visa*, 494 F.3d at 807 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Id.* (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984)).

CloudFlare argues that, with respect to the first prong, the FAC is devoid of any allegations that CloudFlare engaged in affirmative acts to invite third parties to infringe on Plaintiff's trademark. *See* MTD at 16:5-19. The Court would agree.

With respect to the second prong, where a defendant supplies a service rather than a product, the *Visa* court explained that "[f]or liability to attach, there must be 'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Id.* (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). If a defendant does not "have the power to remove infringing material from [infringing] websites or directly stop their distribution over the Internet," a defendant does not have the requisite "direct control." *Id.*

---

[7] CloudFlare separately contends that the alleged infringing trademark use occurs on "genuine (even if unauthorized) copies of *actual* ALS content." *Id.* at 18:22-24. CloudFlare thus asserts that Plaintiff has pleaded a nominative fair use, and as such, there is no direct trademark infringement. *Id.* Plaintiff responds that its allegations are not that its trademark has been placed on genuine ALS works, but rather, that it has been placed on illegal copies of ALS works. *See* Opp'n at 23:6-16. Indeed, as Plaintiff points out, the authority cited to by CloudFlare in support of its nominal fair use theory all involved resale of genuine goods, not copies of those goods. *See, e.g., Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081-82 (9th Cir. 2015). The Court would agree with Plaintiff that, at least for purposes of this motion, Plaintiff's trademark infringement claim is not barred by a nominal fair use defense.

As CloudFlare points out, the FAC contains no allegations that CloudFlare has the ability to remove infringing material from its client's websites, nor that it can directly stop distribution of infringing material by those websites. At best, CloudFlare can terminate its client's accounts, which would make it harder for consumers to access the infringing material; however, this is not sufficient to establish direct control. *See Visa*, 494 F.3d at 807 ("At most, [plaintiff] alleges that [d]efendants can choose to stop processing payments to these websites, and that this refusal might have the practical effect of stopping or reducing the infringing activity. This, without more, does not constitute 'direct control.'").

In sum, the Court would DISMISS the sixth cause of action for contributory trademark infringement against CloudFlare.

***D. The FAC Fails to State a Claim for Unfair Competition***

CloudFlare also contends that Plaintiff's unfair competition claim is deficient – that cause of action alleges that the "acts of trademark infringement, direct and secondary, constitute unfair competition under Cal. Bus. & Prof. Code § 17200." *See* FAC ¶ 108. As CloudFlare points out, the Ninth Circuit has made clear that this cause of action is "substantially congruent" to a claim under the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Thus, because Plaintiff's cause of action for contributory trademark infringement fails, its § 17200 claim necessarily fails. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 856, 875 ("[Plaintiff's] California unfair competition claim fails because its related Lanham Act claims fail."); *Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) (dismissing § 17200 claim where complaint failed to state a claim for trademark infringement).

As such, the Court would DISMISS the seventh cause of action for unfair competition against CloudFlare.

**IV. <u>Conclusion</u>**

In sum, the Court would DENY CloudFlare's Motion with respect to the second cause of action for contributory copyright infringement. The Court would GRANT the Motion with respect to the third, sixth, and seventh causes of action. These causes of action would be dismissed without prejudice, as Plaintiff may be able to allege facts sufficient to support these claims.