1
2
3
4
5
6

JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

7
8
9
10
11

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

12
13

Attorneys for Defendant
STEADFAST NETWORKS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT COURT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants | Civil Action No: 2:16-cv-05051-GW-AFM<br><br>**STEADFAST NETWORKS LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Hearing Date:  February 9, 2017<br>Hearing Time: 8:30<br>Place:          Courtroom 10<br>Judge:          Hon. George H. Wu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES     iii

PRELIMINARY STATEMENT     1

I.    BACKGROUND     4

II.    LEGAL STANDARD FOR DISMISSAL UNDER     7

      FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

III.    ARGUMENT     9

   **A. Steadfast is Immune from Liability Under the**
      **DMCA Safe Harbor**     10

       1.    *Steadfast is a Service Provider Under*
          *17 U.S.C. §512(k)(1)(B)*     11

       2.    *Steadfast has Adopted and Reasonably Implemented*
          *Policy that Provides for Termination in Appropriate*
          *Circumstances*     11

       3.    *Steadfast Does Not Interfere with Standard*
          *Technical Measures*     13

       4.    *Steadfast Did Not Have Actual or Apparent Knowledge*
          *of the Alleged Copyright Infringement Prior to the*
          *Filing of This Lawsuit*     13

       5.    *Steadfast Acted Expeditiously Once it Received*
          *the Notices from Plaintiff*     13

       6.    *Steadfast Lacks the Ability to Control*
          *Allegedly Infringing Activity*     14

   **B. ALS Fails to State a Claim for Contributory Infringement**
      **Against Steadfast**     15

       1.    *Steadfast Did Not Substantially Contribute to the*
          *Copyright Infringement by the Imagebam Users*     15

2.   *Steadfast Did Not Induce Copyright Infringement Imagebam's Users*   19

C.   **Plaintiff Fails to State a Claim for Vicarious Copyright Infringement**   20

D.   **Plaintiff Fails to State a Claim for Contributory Trademark Infringement**   21

IV.   CONCLUSION   23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .....................14

*Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616 (N.D. Cal. 1993).......14

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)......7, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)...........................................................................................................7

*Corbis Corp. v. Amazon.com, Inc*., 351 F. Supp. 2d 1090 (W.D. Wash. 2004)..9, 11

*Demetriades v. Kaufmann*, 690 F. Supp. 289 (S.D.N.Y. 1988) ..............................14

*Gershwin Publ. Corp. v. Columbia Artists Mgmt.*, 443 F.3d 1159 (2d Cir. 1971) .14

*Hendrickson v. eBay, Inc.,* 165 F. Supp. 2d 1082 (C.D. Cal. 2001)........................13

*In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002).............11

*In re Rigel Pharm, Inc. Secs. Litig.*, 697 F.3d 869 (9th Cir. 2012) ..........................7

*Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 855, 102 S. Ct. 2182, 72 L. Ed.
2d 606 (1982) ...........................................................................................18

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).......................................................7

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ........................................7

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999).19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct.
2764, 162 L. Ed. 2d 781 (2005) ............................................................ 13, 16, 17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).............. 13, 14

*Perfect 10, Inc. v. Google, Inc.,* 416 F. Supp. 2d 828 (C.D. Cal. 2006)..................13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)..... 17, 18, 19

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361
(9th Cir. 1995) ........................................................................................14

*Sony Corp. v. Universal City Studios*, 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d
574 (1984) ................................................................................................19

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013) ......................................................................................................15

*UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d. 1099 (C.D. Cal. 2009) ..............................................................................................................15

*Ventura Content, Ltd. v. Motherless, Inc.,* No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948 (C.D. Cal. Jul. 3, 2013) ........................ 1, 2, 3, 9, 16, 18

**Statutes**

17 U.S.C. § 512 ........................................................................................................10

17 U.S.C. § 512(c) ............................................................................................ 3, 8, 9

17 U.S.C. § 512(c)(1)(A) .......................................................................................12

17 U.S.C. § 512(c)(1)(B) .......................................................................................12

17 U.S.C. § 512(c)(1)(C) .......................................................................................12

17 U.S.C. § 512(i)(1)(A) ........................................................................................10

17 U.S.C. § 512(k)(1)(B) ....................................................................................9, 10

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

## PRELIMINARY STATEMENT

Defendant, Steadfast Networks, LLC ("Steadfast") is a data center service company which offers cloud-based storage solutions to businesses. Steadfast provides cloud-based data storage to more than 1,500 clients, including the website www.imagebam.com ("Imagebam"). Imagebam provides hosting to individually registered users in order to upload images. *See* IMAGEBAM, http://www.imagebam.com (last visited Jan. 4, 2017). The Imagebam website contains its own Terms of Service and Abuse Policy, which lists Imagebam's Designated Digital Millennium Copyright Act ("DMCA") agent. *Id*.; see also "Report Abuse," IMAGEBAM, http://www.imagebam.com/report-abuse (last visited Jan. 4, 2017).

Steadfast does not operate or manage the Imagebam website. Steadfast does not in any way communicate with or interact with Imagebam's individual users. Steadfast only provides computer storage. It does not operate the Imagebam website or service, nor does it manage any functions of Imagebam. Steadfast does not have access to the individual users' content or accounts on Imagebam; it does not provide the software that runs the Imagebam website and service for the users to upload content; it does not enter into contracts with the Imagebam users; it does not register Imagebam users; it does not handle Imagebam user complaints; nor does it interact with the Imagebam users in any way.

In 2002, Karl Zimmerman founded Steadfast to serve the Internet economy by providing cloud-based storage solutions. Without storage providers like Steadfast, the Internet would not operate as it does. On the flipside, if the DMCA and its safe harbor provisions as codified in the Online Copyright Infringement Liability Limitation Act were not in existence, Steadfast would not likely be in business. Judge Wilson aptly explains the reason for DMCA safe harbor protection in *Ventura Content, Ltd. v. Motherless, Inc.*:

"Difficult and controversial questions of copyright liability in the online world prompted Congress to enact Title II of the ["DMCA"], the Online Copyright Infringement Liability Limitation Act (OCILLA). 17 U.S.C. § 512 (2003)." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). While recognizing that "'in the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability[,]'" **Congress was nonetheless "loath to permit the specter of liability to chill innovation that could also serve substantial socially beneficial functions."** *UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 718 F.3d 1006, 2013 WL 1092793, at *5 (9th Cir. 2013) (quoting S. Rep. No. 105-190, at 8 (1998) (alteration omitted)). In an effort to balance these competing concerns, Congress designed the OCILLA to "facilitate cooperation among Internet service providers and copyright owners 'to detect and deal with copyright infringements that take place in the digital networked environment.'" *Ellison,* 357 F.3d at 1076 (quoting S. Rep. 105-190, at 20 (1998); H.R. Rep. 105-551, pt. 2, at 49 (1998)).

*Ventura Content, Ltd. v. Motherless, Inc.*, No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948, at *10-11 (C.D. Cal. Jul. 3, 2013) (emphasis added).

In *Ventura Content,* the plaintiff sued a website similar to Imagebam which allowed users to upload pictures and videos.  Defendants sought safe harbor protection under Section 512 of the DMCA (17 U.S.C. § 512(c)), claiming its users were the infringers, not the defendants themselves.  Judge Wilson agreed with the defendants' position, holding:

A service provider does *not* have the "right and ability to control" infringing activity merely because it has the technological capacity to remove or block access to materials posted on its website or on its system;

2

"something more" is required. Specifically, "in order to have the 'right and ability to control,' the service provider must exert substantial influence on the activities of users."

*Ventura Content*, No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948 at *38-39 (emphasis in original) (internal citations omitted).

If Imagebam were added to this lawsuit it could claim safe harbor under the Section 512(c) of the DMCA, and Imagebam's safe harbor protection would inure to Steadfast. Given this legal impediment, ALS Scan, Inc. ("Plaintiff") is attempting to leapfrog both Imagebam and the individual users of the Imagebam hosting service to sue Steadfast for copyright and trademark infringement. The actions of Plaintiff are exactly why the safe harbor provisions of the DMCA were created by the United States Congress. Plaintiff should not be allowed to use the DMCA as a sword against Steadfast when its purpose was to shield businesses such as Steadfast.

Steadfast should be dismissed from this case because it has safe harbor protection under Section 512(c) of the DMCA. Further, even if Steadfast did not have safe harbor protection, Plaintiff's claims for vicarious and contributory copyright and trademark infringement are meritless and should be dismissed. Steadfast should not have to carry the financial and time burden involved in defending itself in a lawsuit it should not be a party to in the first place.

## I. BACKGROUND

In its Second Amended Complaint ("SAC"), Plaintiff claims to own a library of copyrighted and trademarked works of adult entertainment. SAC ¶ 3. Plaintiff alleges that its works are repeatedly infringed by pirate internet sites, which display Plaintiff's works without Plaintiff's permission. *See id.* ¶¶24-26. These "pirate" sites are allegedly supported by third-party service providers that continue doing business with the sites even after receiving actual notice of infringement from

Plaintiff.  *Id.* ¶25.  Plaintiff asserts that Steadfast hosts pirate sites, including Imagebam.  *Id.* ¶¶ 15, 49.  Plaintiff also asserts it has sent numerous notifications to Steadfast of infringing content on the Imagebam website and that Steadfast failed to implement or enforce a repeat infringer policy by removing Imagebam from its servers.  *Id.* ¶ 49.  Plaintiff made no other specific factual assertions against Steadfast in the SAC.

In the SAC, Plaintiff sets forth three causes of action against Steadfast: (1) contributory copyright infringement; (2) vicarious copyright infringement; and (3) contributory trademark infringement.  *See id.* ¶¶ 64-70, 77-79.

It is clear that Plaintiff did not conduct any real investigation of Imagebam. A cursory review of the Imagebam website indicates there are no images actually displayed on the Imagebam website; rather the website claims to offer "image hosting, galleries and photo sharing for Twitter, forums, blogs, eBay, Craigslist, Facebook and more."  *See* IMAGEBAM, http://www.imagebam.com (last visited Jan. 4, 2017).  Below is a screenshot of the Imagebam website homepage:



In order to use the services provided by Imagebam on its website, <u>individual users</u> must register and create an account with Imagebam (*see* "Register," IMAGEBAM, http://www.imagebam.com/register (last visited Jan. 4, 2017)):



As set forth directly on the Imagebam website, the Terms of Service sets forth a clear copyright policy and DMCA procedure to allow for the removal of any images which infringe copyrights, specifically:

***Compliance with Laws***
*Member assumes all knowledge of applicable law and is responsible for compliance with any such laws. Member may not use the Service in any way that violates applicable state, federal, or international laws, regulations or other government requirements. Member further agrees not to transmit any illegal material that encourages conduct that could constitute a criminal offense, give rise to civil liability or otherwise violate any applicable local, state, national, or international law or regulation.*
*Imagebam.com has a zero-tolerance policy regarding spam, child pornography, child modeling, copyright infringement and abuse.*
***Notification of Claimed Copyright Infringement***
*It is our policy to respond to notices of alleged infringement that comply with the Digital Millennium Copyright Act. If you are the owner of the copyright or intellectual property that violates copyright infringement.*
*Under the DMCA, a claim must be sent to the service providers Designated*

*Agent.*

**Copyright and Intellectual Property Statement**
**Notifying ImageBam of Violations:**
*If you believe that copyright infringement or intellectual property rights have been violated, please provide ImageBam with the following information:*

- *an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;*
- *a description of the copyrighted work or other intellectual property that you claim has been infringed;*
- *a description or url on ImageBam where the material that you claim is infringing is located on the ImageBam site;*
- *your current contact information, including telephone number, and/or email address;*
- *Your statement and good faith belief that the disputed use is not authorized by the copyright or intellectual property owner, its agent, or the law;*
- *Your statement made under penalty of perjury, that the above information in your Notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf.*
  *Notice of claims of copyright or intellectual property infringement can be directed to Imagebam.com's Designated Agent via* **dmca@imagebam.com**.
  *Please do not send any other notices or communications to the Designated Agent, who is appointed solely for the purposes of receiving notices of copyright claims under the DMCA*

"Terms of Service," IMAGEBAM, http://www.imagebam.com/terms-of-service (last visited Jan. 4, 2017).

Imagebam is not an unknown "pirate" website as Plaintiff claims (*see* SAC ¶ 49); rather, it is a website operated by Flixya Entertainment, LLC ("Flixya"), a California Limited Liability Company, with an address at 471 Nelo Street, Suite G, Santa Clara, California 95054. Flixya is also the DMCA agent for Imagebam. "Flixya Entertainment, LLC" Directory of DMCA Agents, https://www.copyright.gov/onlinesp/agents/f/flixya_entertain.pdf (last visited Jan.

4, 2017).  Certainly, Imagebam should be a defendant in this lawsuit.

If Plaintiff visited the Imagebam website, they would know the appropriate enforcement step to take was to contact Flixya directly to request the content be taken down.  However, Plaintiff sent the notices to Steadfast, who in turn forwarded them to the proper party, Flixya, who then removed the images in question.  Plaintiff skipped the pursuit of the actual infringers and instead seeks to drag Steadfast into this dispute.

## II. <u>LEGAL STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)</u>

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While the court must assume all facts alleged in Plaintiff's First Amended Complaint to be true for the purposes of this Rule 12(b)(6) Motion, Plaintiff's "[f]actual allegations must be enough to raise a right to relieve above the speculative level" such that there is a "reasonable expectation that discovery will reveal evidence of [the claim]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In determining whether a motion to dismiss should be granted, the court may consider not only the contents of the complaint but also any "materials incorporated into the complaint by reference, and matters of judicial notice."  *In re Rigel Pharm, Inc. Secs. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012); *see also Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).  The materials incorporated by reference need not be physically attached to the complaint, nor is the rule limited to "paper" documents – it applies equally to digital or electronic "materials" such as websites.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (affirming dismissal of defamation claim under Rule 12(b)(6) and taking

judicial notice of web pages on ESPN website containing allegedly defamatory content because "[t]he rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material"). Because Plaintiff specifically mentioned Imagebam and Steadfast it is appropriate to review the websites of these parties when deciding this Motion to Dismiss.

### III.   ARGUMENT

Steadfast has safe harbor protection under Section 512(c) of the DMCA for the claims brought against it by Plaintiff. Further, even if Steadfast did not have safe harbor protection, the assertion that Plaintiff sent DMCA Notices to Steadfast regarding the actions of individual users of the Imagebam service is not enough to establish a right to relief for copyright and trademark infringement by Steadfast above the speculative level.

Steadfast only provides computer storage. It does not operate the Imagebam website or service, nor does it manage any functions of Imagebam. Steadfast does not have access to the individual users' content or accounts on Imagebam; it does not provide the software that runs the Imagebam website and service for the users to upload content; it does not enter into contracts with the Imagebam users; it does not register Imagebam users; it does not handle Imagebam user complaints; nor does it interact with the Imagebam users in any way. Accordingly, Plaintiff has failed to state a claim against Steadfast upon which relief can be granted.

If one follows Plaintiff's theory of the claims against Steadfast to its logical conclusion, then Plaintiff would be entitled to demand the shutting down of virtually every major website on the Internet that contains user-generated content including, *inter alia*, Amazon, YouTube and Facebook, all of which have their own DMCA agents. Plaintiff's theory would allow it to supersede the protection put in place by the DMCA by attacking the storage providers for any website on the Internet. Relying of Plaintiff's theory, any website that hosts content uploaded

8

by individual users would need to be shut down based on the misdeeds of individual users.  This would mean Dropbox, Walgreen's Photo, Collage.com, Pinterest and others could be shut down.  While Plaintiff's theory may be creative, the Court should not allow it to overcome the protections put in place by the United States Congress which was "**loath to permit the specter of liability to chill innovation that could also serve substantial socially beneficial functions.**" *Ventura Content,* Case No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948, at *10-11 (emphasis added).

## A.  STEADFAST IS IMMUNE FROM LIABILITY UNDER THE DMCA SAFE HARBOR

Plaintiff has failed to state a claim because Steadfast is immune from liability under the DMCA's Section 512(c) safe harbor.  Section 512(c) of the DMCA "protect[s] eligible service providers from all monetary . . . relief that may arise from copyright liability."  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004).  Under this safe harbor, an entity is protected from liability for copyright infringement if it satisfies the following elements:

1.  the entity is a "service provider" as the term is defined in 17 U.S.C. § 512(k)(1)(B);

2.  the service provider has (a) adopted, (b) reasonably implemented, and (c) informed subscribers and account holders of the service provider's system or network of a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers;

3.  the service provider does not interfere with standard technical measures;

4.  prior to the filing of the suit, the service provider has neither actual knowledge of infringing material on its systems or network, nor an awareness of facts of circumstance from which infringement is apparent;

5. the service provider acted expeditiously to remove or disable access to infringing material upon obtaining knowledge or awareness of infringing material on its system or network; and

6. the service provider lacks the ability to control infringing activity.

*See* 17 U.S.C. § 512. As set forth below, Steadfast satisfies each of the elements.

      *1.*     <u>*Steadfast Is a Service Provider Under 17 U.S.C. §512(k)(1)(B).*</u>

Under the DMCA, "the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). Because Steadfast provides storage services it qualifies as a "service provider."

      *2.*     <u>*Steadfast Has Adopted and Reasonably Implemented a Policy That Provides for Termination in Appropriate Circumstances.*</u>

Steadfast satisfies the eligibility requirement set forth in 17 U.S.C. § 512(i)(1)(A) because it: (1) has adopted a policy for terminating access to its hosting storage services for repeat copyright infringers; (2) informs its users of the this policy; and (3) implements this policy in a reasonable manner.

***First***, Steadfast has adopted a policy in its terms and conditions that provides for the termination of its services against customers who violate copyright law:

      All services provided by Steadfast may be used for lawful purposes only. Transmission, storage, or presentation of any information, data or material in violation of any American law is prohibited. This includes, but is not limited to: copyrighted material, trademark, intellectual property, material that promotes any illegal activity, or material protected by trade secret and other statutes without proper authorization. Steadfast will comply with all requirements of all Federal and State laws and regulations and will comply with orders of any court of competent jurisdiction or regulatory agency with authority over Steadfast or its

business. The subscriber agrees to indemnify and hold harmless Steadfast from any claims resulting from such compliance or the use of the service which damages the subscriber or any other party

Any illegal activity may result in your site being suspended immediately, without notification.

"Acceptable Use Policy/Terms of Service," STEADFAST, http://steadfast.net/legal-information (last visited Jan. 4, 2017).

*Second*, Steadfast only has to inform users it has a termination policy.  A service provider "need only inform users that, in appropriate circumstances, it may terminate the user's accounts for repeated copyright infringement."  *Corbis*, 351 F. Supp. 2d at 1102 (citing *In re Aimster Copyright Litig*., 252 F. Supp. 2d 634 (N.D. Ill. 2002)).  Steadfast is not required "to reveal its decision-making criteria" to its customers.  *Corbis*, 351 F. Supp. 2d at 1102. As noted above, Steadfast informs all of its customers that access to its servers may be denied if they violate Steadfast's terms and conditions.

*Third*, Steadfast has registered as a DMCA Agent with the United States Copyright Office which provides copyright owners the ability to contact Steadfast in order to take down any infringing images.  *See* "Steadfast Networks, LLC" Directory of DMCA Agents, https://www.copyright.gov/onlinesp/agents/s/steadfast_networks_llc.pdf (last visited Jan. 4, 2017).

> 3.    *Steadfast Does Not Interfere with Standard Technical Measures.*

Steadfast satisfies the DMCA eligibility requirement set forth in 17 U.S.C. § 512(i)(1)(B) as it does not interfere with standard technical measures used to identify and protect copyrighted works.  Here, Plaintiff has not identified with particularity any standard technical measure used to identify or protect its copyrights, nor has Plaintiff asserted that Steadfast somehow interfered with such

measures.

### 4. *Steadfast Did Not Have Actual or Apparent Knowledge of the Alleged Copyright Infringement Prior to the Filing of This Lawsuit.*

Under the DMCA, Steadfast satisfies the requirement set forth in 17 U.S.C. § 512(c)(1)(A) because it lacked actual or apparent knowledge of the alleged infringing activity.  Plaintiff will assert that it sent numerous notices to Steadfast, which prove that Steadfast had actual or apparent knowledge of alleged copyright infringement.  This argument fails on two grounds.  **First**, the DMCA notices sent to Steadfast were in reference to <u>individual users</u> of the Imagebam website, not Imagebam itself.  **Second**, Imagebam has its own DMCA agent and Steadfast forwarded Plaintiff's notices to Imagebam, who apparently expeditiously removed the complained-of images because Plaintiff never followed up regarding the notices.

### 5. *Steadfast Acted Expeditiously Once It Received the Notices from Plaintiff.*

Upon receiving the notices from the Plaintiff, Steadfast immediately forwarded the notices to Imagebam, who removed the complained-of images, as Plaintiff never sent follow up correspondence to Steadfast.  Under 17 U.S.C. §§ 512(c)(1)(A) and (C), a service provider satisfies the safe harbor requirement if it acts expeditiously to remove (or disable access to) allegedly infringing material upon notice or actual knowledge of the claimed or actual infringement.  Steadfast's actions satisfy this requirement.

### 6. *Steadfast Lacks the Ability to Control Allegedly Infringing Activity.*

Steadfast does not have the practical ability to control the allegedly infringing conduct by individual users of the Imagebam website.  A service provider satisfies 17 U.S.C. § 512(c)(1)(B) of the DMCA if it lacks either the right <u>or</u> the ability to control infringing activity.  An accused infringer does not have the

ability to control a direct infringer by merely having "the ability . . . to remove or block access to materials posted on its website or stored in its system." *Perfect 10, Inc. v. Google, Inc.,* 416 F. Supp. 2d 828, 858 (C.D. Cal. 2006) (citing *Hendrickson v. eBay, Inc.,* 165 F. Supp. 2d 1082, 1093-94 (C.D. Cal. 2001)). Here, Steadfast must have the "practical ability" "to stop or limit the directly infringing conduct." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).  In the SAC, Plaintiff provides only conclusory allegations about Steadfast's control over the users of the Imagebam website and does not explain these allegations with particularity.  *See* SAC ¶¶ 64-70.  Steadfast simply provides storage services to Imagebam who in turn offers services to individual users.

In short, even if the Court took Plaintiff's conclusory and overbroad allegations as true, Steadfast is protected from liability by the DMCA safe harbor with regard to Plaintiff's copyright claims.  Thus, no relief can be granted and Steadfast should be dismissed from this lawsuit.[1]

## B.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT AGAINST STEADFAST

### 1.   *Steadfast Did Not Substantially Contribute to the Copyright Infringement by the Imagebam Users.*

Plaintiff has failed to state a claim that Steadfast is liable for contributory copyright infringement.  Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Amazon.com,* 508 F.3d at 1170; *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  In the SAC, Plaintiff does not allege that Steadfast had knowledge of the infringing activity of the individual users of the Imagebam website.  This omission is fatal to Plaintiff's

---

[1] In the SAC, Plaintiff makes no assertion that the images are still available.

claim and grounds for dismissal.  The mere receipt of a DMCA notice and then the removal of an image <u>does not</u> constitute proof that the images were in fact infringing.  In no way does Steadfast encourage or promote any illegal conduct, including the alleged infringements.

Steadfast can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (9th Cir. 1995) (citing *Gershwin Publ. Corp. v. Columbia Artists Mgmt.*, 443 F.3d 1159 (2d Cir. 1971); *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 625 (N.D. Cal. 1993); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 294 (S.D.N.Y. 1988)).

In *Amazon.com*, the Ninth Circuit held that "a computer system operator can be held contributorily liable if it "'has *actual* knowledge that *specific* infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works."  508 F.3d at 1172 (internal citations omitted) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom,* 907 F. Supp. at 1375) (emphasis in original).

In this case, Plaintiff can only show that Steadfast gained knowledge of the allegedly infringing material uploaded by Imagebam's individual users, upon Steadfast's receipt of the DMCA Notices.  Once Steadfast received the DMCA Notices from Plaintiff, it immediately forwarded the Notices to Imagebam who removed the material.[2]  This is <u>exactly</u> how the procedures established by the DMCA are supposed to work.  Unlike in *Amazon.com*, 508 F.3d at 1170, as soon

---

[2] Nowhere in the SAC does Plaintiff assert that the images in the DMCA Notices are still accessible.

as Steadfast was made aware of the allegedly infringing material it took action to prevent the further damage to Plaintiff's copyrighted materials.  There was no failure on Steadfast's part to take the requisite actions.

Plaintiff relies on the assumption that numerous DMCA Notices sent to Steadfast regarding the possible copyright infringement by Imagebam users constitutes a general awareness on Steadfast's part regarding the copyright infringement.  However, this theory has been rejected by prior courts in the Ninth Circuit.  *See UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d. 1099, 1111 (C.D. Cal. 2009) ("UMG nevertheless argues that Veoh is ineligible for the safe harbor because its founders, employees, and investors knew that widespread infringement was occurring on the Veoh system."), *aff'd sub nom. UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013).  In *UMG Recordings*, the Court rejected the plaintiff's argument, stating:

> No doubt it is common knowledge that most websites that allow users to contribute material contain infringing items.  If such general awareness were enough to raise a "red flag," the DMCA safe harbor would not serve its purpose of "facilitat[ing] the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age," and "balanc[ing] the interests of content owners, on-line and other services providers, and information users in a way that will foster the continued development of electronic commerce and growth of the Internet.

*UMG Recordings*, 665 F. Supp. 2d at 1111 (quoting S. Rep. 105-190, at 1-2 (1998); H.R. Rep. 105-551(II), at 21).

The mere issuance of DMCA Notices by Plaintiff does not establish that the entire Imagebam website was created to intentionally encourage infringement through specific acts.  In *Ventura Content* the Court wrote:

> Section 512(c)'s safe harbor . . . requires only that Defendants demonstrate the absence of a genuine issue of material fact as to whether they had actual or red flag knowledge of *specific instances of infringement* . . . . To demand more would require Defendants to demonstrate that material on their website was *not* copyright-infringing, effectively undermining Congress' "considered policy determination" of placing the "burden of policing copyright infringement . . . squarely on the owners of the copyright." . . . "[I]f merely hosting material that falls within a category of content capable of copyright protection, with the general knowledge that one's services could be used to share unauthorized copies of copyrighted material, was sufficient to impute knowledge to service providers, the §512(c) safe harbor would be rendered a dead letter[.]"

*Ventura Content*, No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948 at *25-26 (internal citations omitted).

Given the Ninth Circuit precedent and that Plaintiff does not allege Steadfast had knowledge of or intentionally encouraged infringement through specific acts, Plaintiff fails to state a claim for contributory copyright infringement claim against Steadfast fails.

2. _Steadfast Did Not Induce Copyright Infringement By Imagebam's Users._

Plaintiff has also failed to state a claim that Steadfast is liable for contributory copyright infringement through inducement.  Plaintiff, without asserting any facts, included a claim for contributory copyright infringement through inducement which requires proof that a defendant "intentionally induced[ed] or encourage[ed] direct infringement" by a third party.  *See MGM Studios*, 545 U.S. at 930, 937 (2005) ("The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others

to commit violations."). Inducement "is a legal determination, and dismissal may not be avoided by characterizing a legal determination as a factual one." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

Plaintiff has not pled any facts that Steadfast induced registered users of Imagebam to engage in copyright infringement. Unlike the *MGM Studios* case, Plaintiff has not pled any facts that would indicate Steadfast solicited, advertised, promoted or rewarded acts of direct infringement by others, or that Steadfast's storage services were created for the purpose of facilitating mass copyright infringement.[3] *See MGM Studios,* 545 U.S. at 939.

Plaintiff's allegation of inducement is made without factual allegations and, therefore, is not a viable claim under *Iqbal*, 556 U.S. at 678, and should be dismissed.

### C.   PLAINTIFF FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT

Plaintiff alleges no facts to support either element for vicarious copyright infringement as required under *Iqbal*, and thus this cause of action should be dismissed. "To state a claim for vicarious copyright infringement, Plaintiff must allege that defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *See Visa,* 494 F.3d. at 802. In the SAC, Plaintiff fails to adequately state a claim for vicarious liability because Steadfast does not have the requisite right and ability to supervise and control the infringing conduct. *See* SAC ¶¶ 68-70.

In no way does Steadfast encourage any conduct whatsoever, including especially the alleged infringements. Steadfast offers passive storage services to Imagebam. Steadfast has nothing to do with Imagebam's users and does not have

---

[3] In the SAC Plaintiff only specifically mentions Steadfast in Paragraph 49.

the ability to supervise or control what the independent Imagebam users can upload onto the Imagebam website.  Steadfast's situation is analogous to the services offered by credit card processors like in the *Visa* case, 494 F.3d 788.  Plaintiff's theory appears to rest on the fact that "numerous" DMCA Notices were sent to Steadfast regarding the actions of individual users of the Imagebam website which allegedly gives Steadfast the right to control the infringing conduct.  However, as stated previously, this theory was rejected in *Ventura Content*:

> A service provider does *not* have the "right and ability to control" infringing activity merely because it has the technological capacity to remove or block access to materials posted on its website or on its system; "something more" is required. Specifically, "in order to have the 'right and ability to control,' the service provider must exert substantial influence on the activities of users."

*Ventura Content,* No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948 at *38-39 (emphasis in original) (internal citations omitted)

The SAC is devoid of any allegation that Steadfast engaged in any affirmative acts to encourage or invite users to infringe.  Therefore, Plaintiff's vicarious liability cause of action against Steadfast must be dismissed.

## D.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT

Plaintiff has failed to state a claim for contributory trademark infringement against Steadfast.  "To be liable for contributory trademark infringement, [Steadfast] must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.  *See Visa*, 494 F.3d at 807 (citing *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)).  "The tests for secondary trademark infringement are

even more difficult to satisfy that those required to find secondary copyright infringement." *Visa*, 494 F.3d at 806 (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)).  "For liability to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'"  *Visa*, 494 F.3d at 807 (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

In the SAC, Plaintiff has not alleged any facts that would support a claim that Steadfast induced any user of the Imagebam website to use and infringe the Plaintiff's trademarks.  Further, the SAC does not allege any facts establishing what the purported trademark infringement by the Imagebam users entailed.

The SAC contains no factual allegations which could establish that Steadfast somehow controls or monitors any instrumentality used by the Imagebam users to engage in trademark infringement.  Steadfast should not be burdened with the costs of defending such a claim that has no basis in fact or in law.  For these reasons, Plaintiff's Contributory Trademark Infringement cause of action should be dismissed.

# IV.   <u>CONCLUSION</u>

Therefore, Steadfast respectfully requests this Court grant Steadfast Networks, LLC's Motion to Dismiss all the Counts against it in the Second Amended Complaint.

JOHN L. AMBROGI

COLIN T.J. O'BRIEN

PARTRIDGE PARTNERS, P.C.


PAUL D. SUPNIK


Dated: January 5, 2017          By: <u>s/Colin T.J. O'Brien</u>

COLIN T.J. O'BRIEN

Attorneys for Steadfast Networks, LLC

## **PROOF OF SERVICE**

I, COLIN T.J. O'BRIEN, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and that on January 5, 2017, true copies of the following document was served via the Court's ECF:

**STEADFAST NETWORKS LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

to the following parties in this action via their counsel:

ALS Scan, Inc.

Hivelocity Ventures Corp.

Cloudflare, Inc.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 5, 2017                    _s/Colin T.J. O'Brien_____

                                                          Colin T.J. O'Brien

                                                          Attorney for Defendant

                                                          Steadfast Networks LLC