Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>        Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT STEADFAST NETWORKS, LLC**<br><br>Filed Concurrently: Opposition to Motion to Dismiss<br><br>Date: February 16, 2017<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br>       350 W. 1st Street<br>       Los Angeles, CA |

Plaintiff ALS Scan, Inc. requests that the Court take judicial notice of the attached opinion in *Seide v. Level-(1), Steadfast*, USDC N.D. Ill. 1:16-cv-02975, denying Steadfast's motion to dismiss based upon DMCA defenses. *Fed. R. Evid. 201*.

DATED: January 26, 2017          SPILLANE TRIAL GROUP PLC

By: _____
                 Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SEIDE and DEFINED SPACE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>LEVEL-(1) GLOBAL SOLUTIONS, LLC; STEADFAST NETWORKS, LLC; ORBIT MEDIA STUDIOS, INC. and NOZONE, INC.,<br><br>Defendants. | No. 16 C 2975<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

David Seide is a photographer who licenses use of his copyrighted photographs through the company Defined Space (Seide and Defined Space together are "Plaintiffs"). Plaintiffs licensed Level-(1) Global Solutions, Inc., to use certain of Seide's photographs on Level-(1)'s website. Plaintiffs allege that Level-(1) and its internet service providers—Steadfast Networks, LLC, and Nozone, Inc.—violated various provisions of federal copyright law with respect to those photographs. Level-(1) has moved to dismiss some of the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 36. Steadfast has moved to dismiss the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(c). R. 26. And Nozone has moved to be dropped as a party to this case pursuant to Federal Rule of Civil Procedure 21. R. 29. For the following reasons, all three motions are denied.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion. *See Lodholtz v. York Risk*

*Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Rule 12(c) is "the proper heading" for a motion asserting an affirmative defense because "an affirmative defense is external to the complaint." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975-76 (7th Cir. 2013). For purposes of Rule 12(c), the pleadings include not just the complaint but the answer and "a copy of a written instrument that is an exhibit to a pleading." Fed. R. Civ. P. 10(c). Such written instruments include affidavits, letters, contracts, and loan documents. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

## Background

In March 2010, Plaintiffs licensed Level-(1) to use several photographs as "flash components" on its website for three months. R. 11 ¶ 22. The parties do not explain what "flash components" are, but based on the Court's review of Level-(1)'s website (www.level-1.com), the Court understands "flash component" to refer to a slideshow of photographs.[1] Plaintiffs delivered the photographs to Level-(1) on a CD. *Id.* ¶ 23. Embedded on each of the image files was information about the photograph's title, author, creation date, copyright, and terms of use. *Id.* Plaintiffs allege that "Level-(1) used and displayed the [photographs] beyond use as flash components under the terms of the Level-(1) License, including without limitation creating unauthorized derivative works of the [photographs], impermissibly altering

---

[1] *See also* Wikipedia.org, "Flash Component" ("A Flash Component is a stand-alone piece of content (movie clip), which has defined adjustable parameters and can be reused within Flash projects. . . . For example, a component can be a scroll bar, a site form, a gallery, or even something that has no graphics at all, such as a timer, a server connection utility, or a custom XML parse.") (visited on Aug. 10, 2016).

3

the [photographs], removing the copyright management information presented with and embedded in the [photographs], and publishing the [photographs] without regard to the copyright management information presented with and embedded in the [photographs]." *Id.* ¶ 25. More specifically, Plaintiffs allege that Level-(1) failed to accompany each of the photographs with the copyright notice, "© David B. Seide/DefinedSpace.com." *Id.* ¶ 26. Plaintiffs, however, do not explain how Level-(1) allegedly created "unauthorized derivative works" or "alter[ed]" the photographs.[2]

Plaintiffs attempted to contact Level-(1) about the license breach and the possibility of expanding the scope, and extending the term, of the license. *Id.* ¶ 29. Not until January 2011 were the parties able to reach agreement on a new license with a term of June 22, 2010 through December 31, 2011. *Id.* ¶ 30. Since the agreement post-dated its term, the agreement was apparently intended to serve as a settlement of Plaintiffs' claims regarding Level-(1)'s use of the photographs. Level-(1), however, failed to pay the fee required by the agreement. *Id.* ¶ 31.

Plaintiffs contacted Level-(1) about its breach of the license again on June 6, 2011. *Id.* ¶ 32. Level-(1) again orally agreed to a new license agreement, but again failed to pay. *Id.* ¶ 34. Plaintiffs allege that they "have diligently and repeatedly

---

[2] Although not relevant to the Court's analysis of the motions at issue, the Court notes that a clue as to what derivative works or alterations Plaintiff may be alleging is found in Steadfast's answer which attaches letters from Plaintiffs informing Defendants that they were violating Plaintiffs' copyrights. Those letters include color copies of the photographs at issue and screen shots of their use on Level-(1)'s website. *See* R. 13-1. The photographs have been cropped, and Level-(1) logos have been superimposed on the photographs. *See id.* Presumably, Plaintiffs are referring to these alterations.

4

contacted Level-(1) . . . to discuss the matter," *id.* ¶ 33, but Plaintiffs do not specifically allege any facts about the ensuing four years.

Apparently as of June 23, 2015, Level-(1) was still displaying Plaintiffs' photographs on its website, because on that date Plaintiffs sent a copyright infringement notice to NTT America, Inc., which at that time was Level-(1)'s internet service provider. *Id.* ¶¶ 35, 37. This notice was also forwarded to a company called Orbit (also a defendant in this case, who has not made a motion to dismiss), which designed and managed Level-(1)'s website. *Id.* ¶¶ 36, 39. As part of this notice, Plaintiffs again offered to enter into a new license agreement. *Id.* ¶ 40. Level-(1) and Orbit responded to the notice by rejecting the new license and removing the photographs from Level-(1)'s website. *Id.* ¶ 41.

However, on February 29, 2016, Plaintiffs discovered that the photographs had reappeared on Level-(1)'s website. *Id.* ¶ 42. Steadfast was Level-(1)'s new internet service provider, and Plaintiffs allege that Steadfast is a division of Nozone. *Id.* ¶ 15. Plaintiffs sent a copyright infringement notice to Steadfast and Nozone on March 2, 2016. *Id.* ¶ 46. Steadfast's answer alleges that the notice stated the following in relevant part:

> This letter is official notification under the Digital Millennium Copyright Act, and we seek the removal of the aforementioned infringing material from your servers. We further request that you immediately notify the infringer of this notice and inform them of their duty to remove the infringing material immediately, and notify them to cease any further posting of infringing material to your server in the future.

5

R. 13 at 15. Steadfast alleges that it forwarded Plaintiffs' letter to Level-(1) on March 2, 2016 (the email is attached as an exhibit to Steadfast's answer), *id.*, and informed Level-(1) that Steadfast's policy was that it would act to remove the photographs if Level-(1) did not do so within five days. *Id.* at 16. Steadfast also alleges that it received confirmation on March 10, 2016, that the photogrpahs had been removed from Level-(1)'s website, and attaches to its answer a copy of the notice. *Id.* at 17. Plaintiffs, however, allege that Defendants "failed to act expeditiously to remove, or disable access to," the photographs. R. 11 ¶¶ 47-49.

Nozone alleges in its answer that it has nothing to do with this case because it assigned its assets and liabilities to Steadfast. *See* R. 20. The assignment agreement is attached to Nozone's answer. *See* R. 20-1. In its brief, Nozone admits that it and Steadfast are owned by the same person. R. 45 at 2.

The complaint includes the following counts: Count I against all Defendants for "direct copyright infringement" under 17 U.S.C. § 501; Count II against all Defendants for "contributory copyright infringement" under 17 U.S.C. § 501; Count III against all defendants for "vicarious copyright infringement" under 17 U.S.C. § 501; Count IV against all defendants for removal or alteration of copyright management information under 17 U.S.C. § 1202; and Count V against Level-(1) for breach of the license agreement. Level-(1) seeks dismissal of Count I-IV to the extent they are untimely, and dismissal of Count V for failure to comply with an Illinois rule of procedure. Steadfast and Nozone seek dismissal of all the counts against them.

## Analysis

I. **Level-(1)'s Motion**

    A. **Statute of Limitations**

Level-(1) argues that "all alleged copyright infringement violations occurring prior to the March of 2013" are untimely. R. 36 at 2.³ The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Supreme Court explained in *Petrella v. Metro-Goldwyn-Mayer* that the Copyright Act's statute of limitations runs separately from each discrete infringement. 134 S. Ct. 1962, 1969 (2014). A discrete infringement arises when a new act causes "harm [to the plaintiff] over and above the harm that the earlier acts caused." *Id.* at 1969 n. 6. For example, "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong." *Id.* at 1969. But continuing harm from past infringements does not give rise to a discrete infringement. *Id.* at 1969 n. 6; *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014) ("We take the [Supreme] Court's statement to mean that the continuing-violation doctrine does not apply in this context."). The Seventh Circuit continues to apply the discovery rule to the Copyright Act's statute of limitations, such that it does not begin to run until a plaintiff discovers a violation. *See id.* at 618.

---

³ Level-(1) does not make a statute of limitations argument with respect to Count V which is based in contract, and to which the three year statute of limitations of the Copyright Act is inapplicable.

7

Plaintiffs appear to allege three discrete copyright infringement claims against Level-(1): (1) between March 2010 and June 2010, Level-(1) used the photographs under a license agreement that it allegedly violated; (2) after the license expired in June 2010, Level-(1) continued to use the photographs until June 2015 when it removed them from its website; and (3) on February 29, 2016 Plaintiffs discovered that the photographs had reappeared on Level-(1)'s website. Plaintiffs filed their complaint on March 9, 2016. Plaintiffs allege that they discovered the first and second infringements in 2010, well outside the three year time limit for this case of March 9, 2013. *See, e.g., Wolf v. Travolta*, 2016 WL 911469, at *14 n.13 (C.D. Cal. Mar. 4, 2016) (2016) (finding no discrete claim within the limitations period for an allegedly infringing document that was published outside the statute of limitations, and remained on the defendant's website without substantial revisions for the period of the statute of limitations). Nevertheless, the statute of limitations is an affirmative defense and plaintiffs are not required to "anticipate and attempt to plead around defenses." *Chi. Bldg. Design*, 770 F.3d at 613. Dismissal of a claim as untimely under Rule 12(b)(6) is appropriate only if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense," and the allegations "plainly reveal[] that [the] action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Here, the complaint does not touch on what interactions the parties had between June 6, 2011 and June 23, 2015, or how whatever happened in that time

8

period may have affected Plaintiffs' decision not to sue. "Maybe [Defendants themselves did] something that warrants tolling. Maybe [Plaintiffs] will be unable to prove that [Defendants'] acts justify tolling or estoppel." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). Plaintiffs allegations, however, do not "foreclose (and, indeed, they [somewhat] suggest) the applicability of the doctrine of equitable estoppel." *Porter v. Combs*, 105 F. Supp. 3d 872, 878 (N.D. Ill. 2015). As the Seventh Circuit said in similar circumstances, "It is best to await [discovery] rather than leap into a subject that evidence may cast in a new light." *Reiser*, 380 F.3d at 1030. Thus, Level-(1)'s motion is denied.

### B. Rule 12(f)

Level-(1) also argues that Count V should be "stricken" pursuant to Federal Rule of Civil Procedure 12(f) because Plaintiffs failed to attach the license agreement as is required by Illinois law, 735 ILCS 5/2-606, which provides that "[i]f a claim . . . is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading . . . or recited therein." R. 36 at 3. This statute, however, is a procedural rule that does not apply in federal court. *See Liu v. Nw. Univ.*, 78 F. Supp. 3d 839, 846-47 (N.D. Ill. 2015); *Mitchell v. United Med. Sys., Inc.*, 2011 WL 1526985, at *5 (N.D. Ill. Apr. 20, 2011); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002). Therefore, Level-(1)'s motion to strike Count V is denied.[4]

---

[4] At an appropriate point in this case, the parties should consider whether Count V is preempted in whole or in part. *See* 17 U.S.C. § 301(a); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986).

9

## II. Steadfast's Motion

Plaintiffs allege that Steadfast is Level-(1)'s internet service provider. *See* R. 11 ¶ 15 ("Steadfast provides network and information technology solutions including hosting websites on its servers."); *id.* ¶ 43 ("Steadfast . . . currently provide[s] web hosting and other information technology services in connection with [Level-(1)'s] website."). As a "service provider," Steadfast contends that it is protected from Level-(1)'s claims by the Digital Millennium Copyright Act's ("DMCA") safe-habor, which provides the following:

> A service provider shall not be liable . . . for infringement of copyright . . . if the service provider . . . upon notification of claimed infringement . . . responds expeditiously to remove or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(C). A service provider is eligible for this safe-harbor if it "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." *Id.* § 512(i)(1). According to the Ninth Circuit, a service provider "implements" such a policy "if it has a working notification system, a procedure for dealing with the DMCA-complaint notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007). A "service provider *reasonably*

implements its repeat infringer policy if it terminates users when appropriate." *Id.* at 1111 (emphasis added).

Steadfast argues that its pleading demonstrates that it has "adopted and reasonably implemented" a "repeat infringer" policy because it has such a policy on its website providing for disabling an infringing client's internet service when appropriate, *see* R. 13-3, and Steadfast alleges that it followed that policy in response to Plaintiffs' complaints. But merely "having" such a policy and following it in one instance does not necessarily satisfy the safe-harbor requirements. The safe-harbor's language does not ask whether a service provider appropriately responded to the particular alleged infringement at issue in the case at hand, but whether a service provider has reasonably implemented its policy generally. Evidence beyond Steadfast's actions in this particular case is necessary to determine whether Steadfast has reasonably implemented the policy required to qualify for the safe-harbor. Steadfast's actions in response to Plaintiffs' complaint might be evidence that it reasonably implements its policy, but it is insufficient evidence for the Court to make such a determination as a matter of law; rather, discovery is needed. For this reason, courts generally do not decide this issue on a motion to dismiss. *See Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) ("It is difficult to conclude as a matter of law, as the district court did, that AOL had 'reasonably implemented' a policy against repeat infringers. There is ample evidence in the record that suggests that AOL did not have an effective notification procedure in place at the time the alleged infringing activities were taking place."); *BWP Media USA, Inc. v.*

11

*Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) ("Defendants may attempt to establish their eligibility for the DMCA safe harbor at a later point in the litigation, when they can present evidence in support of the defense. At this stage, however, Defendants' premature attempt to qualify for the safe harbor is rejected."); *Choyce v. SF Bay Area Indep. Media Ctr.*, 2013 WL 6234628, at *4 (N.D. Cal. Dec. 2, 2013) ("The Court cannot determine on a motion to dismiss that Defendant's claim to service provider immunity under the DMCA defeats Plaintiff's copyright claim as a matter of law."). Thus, Steadfast's motion is denied.[5]

## III. Nozone's Motion

Nozone argues that it is not a proper party and should be "dropped" from the case under Federal Rule of Civil Procedure 21 because it "had nothing to do with the transactions of any of the conduct alleged in the Amended Complaint." R. 45 at

---

[5] The parties spend time in their briefs arguing whether the five days it took for Level-(1) to remove the offending photographs in 2016 demonstrates that Steadfast moved expeditiously in response to Plaintiffs' notification, which is another of the requirements for Steadfast to qualify for the safe-harbor. The Court does not need to decide whether a five-day response time is "expeditious" in order to decide Steadfast's motion, because there are factual issues regarding whether Steadfast reasonably implemented a policy. But five days sounds rather expeditious to the Court, and the case law on the issue seems to agree. *See Avdeef v. Google, Inc.*, 2015 WL 5076877, at *1, 3-4 (N.D. Tex. Aug. 26, 2015) (14 days is expeditious); *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 535-36 (S.D.N.Y. 2013) ("It cannot be disputed that [a] one-day response time . . . constitutes expeditious removal"; and three and a half weeks is expeditious to remove 170 videos); *Obodai v. Demand Media, Inc.*, 2012 WL 2189740, at *7 (S.D.N.Y. June 13, 2012) (email showing that the defendant sent notice to infringing user 22 days after receiving notice from copyright holder "establishes that the defendant expeditiously removed the infringing works"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 734 (S.D.N.Y. 2012) (five days to remove 700 photographs is expeditious). The parties should take this case law, and the Court's preliminary assessment of it, into account in any future briefing on this issue.

12

1. Rule 21 permits a Court to drop a party from a case if the party does not meet the standard for permissive joinder under Rule 20(a), which provides that a party may be joined as a defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." *See Schwartz v. Graebel Van Lines, Inc.*, 2006 WL 1343533, at 2 (N.D. Ill. May 15, 2006) ("Because Rule 21 does not include a standard for proper joinder, courts use the permissive joinder standards contained in Federal Rule of Civil Procedure 20(a)."). The problem with this argument is that Plaintiffs allege that Nozone did have something to do with Plaintiffs' alleged harm in that Plaintiffs allege that "Steadfast is a division of Nozone." R. 11 ¶ 15. In response to Plaintiffs' allegations, Nozone points to the fact that it assigned its assets and liabilities to Steadfast, and attaches the assignment agreement to its answer. But this simply amounts to a factual denial of Plaintiffs' allegations, and discovery is necessary to determine the relationship between Steadfast and Nozone and whether Nozone can be liable for the harm Plaintiffs allege. This is especially true since Nozone admits that Steadfast and Nozone are owned by the same person. *See* R. 45 at 2. Thus, Nozone's motion is denied.

## Conclusion

For the foregoing reasons, Level-(1)'s motion, R. 36, is denied; Steadfast's motion, R. 26, is denied; and Nozone's motion, R. 29, is denied.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 10, 2016

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this action.  My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.  A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT STEADFAST NETWORKS, LLC**
 will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 26, 2017, I checked the CM/ECF docket for this action and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Gary L. Bostwick– gbostwick@B1Law.com
Kevin S. Toll – kevin@silversteinlegal.com
Lawrence G. Walters – larry@firstamendment.com
Corey D. Silverstein – corey@silversteinlegal.com
Rachel H. Kassabian – rachelkassabian@quinnemanuel.com
Carolyn M. Homer – carolynhomer@quinnemanuel.com
John Lewis Holcomb – jholcomb@khslaw.com
Tammy X. W – twu@khslaw.com

Colin TJ O'Brien – tm@partridgepartnerspc.com
John L. Ambrogi – jla@partridgepartnerspc.com
Paul Supnick – paul@supnick.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 26, 2017, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling Local Rule, on (*date*) January 26, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served by Overnight Mail*
Hon. George H. Wu
U.S. District Court
312 N. Spring Street
Courtroom 10 – Spring St. Floor
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/26/2017 | Jessie Gietl | *[signature: Jessie Gietl]* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |