JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT COURT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants | Civil Action No: 2:16-cv-05051-GW-AFM<br><br>**STEADFAST NETWORKS LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Hearing Date: February 16, 2017<br>Hearing Time: 8:30 a.m.<br>Place:        Courtroom 9D<br>              350 W. 1st Street<br>              Los Angeles, CA<br>Judge:        Hon. George H. Wu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii
PRELIMINARY STATEMENT ......................................................................... 1
  A.  ALS Fails to State a Claim for Vicarious Copyright Infringement ................. 2
    1.  Steadfast Does Not Gain Any Direct Financial Benefit ............................ 2
    2.  Steadfast Does Not Have the Right and Ability to Supervise the Activity of Imagebam Users ........................................................................................ 4
  B.  ALS's Contributory Infringement Claim Fails .......... ………………………. 5
    1.  Steadfast Did Not Substantially Contribute to the Copyright Infringement by the Imagebam Users ....................................................................................... 5
    2.  ALS Does Not Dispute Steadfast Assertion That it Did Not Induce Copyright Infringement By Imagebam's Users .................................................... 8
  C.  Steadfast Is Immune From Liability Under the DMCA Safe Harbor .............. 9
  D.  ALS Fails to State a Claim for Contributory Trademark Infringement ......... 10
CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)……..…9

*BMG Rights Management (US) LLC v. Cox Communications, Inc*, 149 F.Supp. 3d 634 (E.D. Va. 2015) ..................................................................................................8

*Capitol Records, Inc. v. MP3tunes, LLC,* 48 F. Supp. 3d 703 (S.D.N.Y. 2014).......6

*Columbia Pictures Industries Inc. v. Fung,* 710 F.3d 1020 (9th Cir. 2013)..... 4, 5, 7

*Corbis Corp. v. Amazon.com, Inc*., 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004)..............................................................................................................................9

*Gucci Am., Inc. v. Frontline Processing Corp*., 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010)............................................................................................................................12

*Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982). ................................................................................................................11

*Lockheed Martin Corp. v. Network Solutions, Inc.* 194 F. 3d 980 (9th Cir. 1999).11

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2010)........................................................................................................................6, 11

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992)...........................................................................................................................3

*Media USA Inc. v. Hollywood Fan Sites LLC,* 115 F. Supp. 3d 397 (S.D.N.Y. 2015)..............................................................................................................................7

*MGM Studios*, 545 U.S. at 930, 937 (2005) ...............................................................9

*Perfect 10, Inc. v. Giganews, Inc.*, No. 15-55523, 2017 U.S. App. LEXIS 1128 (9th Cir. 2017)..................................................................................................................1, 2

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788 (9th Cir. 2007)... 2, 9, 11, 12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) ................5

*Ventura Content, Ltd. v. Motherless, Inc.* No. 2:11-cv-5912-SVM-FMO 2013 U.S. Dist. LEXIS 189948 (C.D. Cal. Jul 3, 2013) .......................................................1, 4

*Viacom Int'l, Inc. v. YouTube, Inc.*676 F.3d 19 (2nd Cir. 2012) ..........................7, 8

*Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013). .............7

**Statutes**

17 U.S.C. § 512(k)(1)(B) ........................................................................................9

17 U.S.C. § 512……………………………………… ………………………….10

**PRELIMINARY STATEMENT**

This lawsuit is nothing more than a shakedown of legitimate internet service providers by ALS Scan, Inc. ("ALS"). Instead of directing its efforts to the actual infringers, ALS has ensnared Steadfast Networks LLC ("Steadfast") requiring it to spend time and money in response to a frivolous lawsuit with unsupportable claims. ALS, in its Second Amended Complaint ("SAC") and in its Opposition to Steadfast's Motion to Dismiss ("Opposition"), demonstrates that its focus is directed to the wrong party. ALS may have presented a colorable argument that Imagebam.com ("Imagebam") and its customers should be in this litigation but not Steadfast. ALS has averred no set of facts nor presented any supportable argument to keep Steadfast in this litigation. Rather than direct their ire at the infringers specifically, ALS instead attempts to cast a net of general copyright infringement upon Steadfast to unfairly secure a monetary reward.

The Opposition filed by ALS is a hodgepodge of cases cobbled together without a logical structure. Many of the cases cited in the Opposition are either not on point or support Steadfast's position. The Opposition also fails to address the holding in *Ventura Content, Ltd. v. Motherless, Inc.* No. 2:11-cv-5912-SVM-FMO 2013 U.S. Dist. LEXIS 189948 (C.D. Cal. Jul. 3, 2013) while also ignoring the recent and particularly relevant decision by the Ninth Circuit in *Perfect 10, Inc. v. Giganews, Inc.*, No. 15-55523, 2017 U.S. App. LEXIS 1128 (9th Cir. 2017).

Steadfast provides computer storage space to businesses. Steadfast does not operate or manage any functions of the Imagebam website. Steadfast does not have access to the individual users' content or accounts on Imagebam; it does not provide the software that runs the Imagebam website and services for the users to upload content; it does not enter into contracts with the Imagebam users; it does not register Imagebam users; it does not handle Imagebam user complaints. Steadfast does not in any way communicate with or interact with Imagebam's

individual users.  Steadfast does not select any of the content Imagebam users post.  Steadfast does not in any way promote or take any affirmative steps to encourage any infringing activity. Further, Steadfast does not have the right or ability to supervise Imagebam's users' conduct and certainly does not gain a direct financial interest from the individual users conduct.  Steadfast is merely a passive third-party service provider.

ALS meritless claims for vicarious and contributory copyright and trademark infringement against Steadfast should be dismissed.

## ARGUMENT

### A.  ALS Fails to State a Claim for Vicarious Copyright Infringement

To state a claim for vicarious copyright infringement, ALS must allege that Steadfast has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 802 (9th Cir. 2007).  In the SAC, ALS fails to adequately state a claim for vicarious liability because Steadfast does not have the requisite right and ability to supervise and control the infringing conduct nor does Steadfast gain any direct financial interest in the infringing activity of the individual Imagebam users.

### 1.  *Steadfast Does Not Gain Any Direct Financial Benefit*

In its Opposition, ALS claims it has pleaded a claim against Steadfast for vicarious copyright infringement and cited numerous cases, but failed to cite *Perfect 10, Inc. v. Giganews, Inc.,* 2017 U.S. App. LEXIS 1128 (9th Cir. 2017) ("*Giganews"*) which is directly on point and cuts against ALS's argument that Steadfast had a direct financial benefit as a result of the actions of individual Imagebam users.

In *Giganews,* the plaintiff argued for a rule that would allow a court to hold a service provider, similar to Steadfast, liable for vicarious liability by showing

2

only that defendant benefitted financially from the infringement of another's works, regardless of whether the defendant received <u>any direct financial benefit from the specific infringement alleged</u>. *Id.* at *34. The Ninth Circuit rejected this theory stating:

> Such a rule would allow cases to be built on the rights of owners and the actions of users not before the court. At the very least, [plaintiff's] proposed rule is in significant tension with Article III's[1] standing requirement. At most, [plaintiff's] view runs counter to the requirement that there be a "causal connection between the injury and the conduct complained of[.]" *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992)

*Id.* at *35. The Ninth Circuit further held that a plaintiff is required to show that customers were drawn to defendant's service because of the infringing material at issue. *Id.* at *36

In this case, ALS has not alleged any facts that individual users of the Imagebam service were drawn to use Imagebam as a result of the services offered by Steadfast to Imagebam. ALS does not, because it cannot, allege how a third-party provider of storage can be linked to the conduct of Imagebam's users. The services offered by Steadfast are simply too far removed from the alleged infringement of individual Imagebam users such that there is no rational way Steadfast's services are a draw to potential or actual infringers.

To reiterate, in no way does Steadfast encourage any conduct whatsoever, including especially the alleged infringements. Steadfast is merely a data center

---

[1] Standing under Article III requires that a plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

3

services company offering cloud-based storage solutions to businesses. Steadfast is a business-to-business provider that does not market to or offer its services to users such as those that subscribe to Imagebam.

### 2. *Steadfast Does Not Have the Right and Ability to Supervise Activity of Imagebam Users*

Steadfast has nothing to do with Imagebam's users and does not have the ability to supervise or control what independent Imagebam users can upload onto the Imagebam website. In its Opposition, ALS states Steadfast "could 'plug the plug' and take the infringements or the site off the Internet" relying on the language in *Columbia Pictures Industries Inc. v. Fung,* 710 F.3d 1020, 1045 (9th Cir. 2013) but as explained in the Memorandum to Dismiss and ignored by ALS in its Opposition this theory was rejected by the court in *Ventura Content*:

> A service provider does *not* have the "right and ability to control" infringing activity merely because it has the technological capacity to remove or block access to materials posted on its website or on its system; "something more" is required. Specifically, "in order to have the 'right and ability to control,' the service provider must exert substantial influence on the activities of users.

*Ventura Content,* 2013 U.S. Dist. LEXIS 189948 at *38-39 (emphasis in original) (internal citations omitted).

ALS's reliance on *Columbia Pictures* is misplaced. In *Columbia Pictures* the Ninth Circuit found defendant could exert substantial influence on the activities of the users because it had the ability to locate infringing material; terminate users' access; to organize torrent files on his sites using a program that matches file names and content with specific search terms; and personally assisted users in locating infringing files. Thus, the defendant's ability to control infringing activity went well beyond merely locating and terminating users' access to infringing

4

material rather defendant engaged in culpable, inducing activity. *Columbia Pictures* at 1036-37.

The SAC is devoid of any allegations that Steadfast itself engaged in any affirmative acts to encourage or invite users to infringe (or even upload any content whatsoever) or that Steadfast exerted any influence on Imagebam users. Therefore ALS's reliance on *Columbia Pictures* is misplaced. ALS has not properly alleged (nor can it) that Steadfast had (1) the right and ability to supervise the infringing conduct of Imagebam users and that Steadfast has (2) a direct financial interest in the infringing activity of the Imagebam users. Therefore, ALS's vicarious liability cause of action against Steadfast must be dismissed.

**B.      ALS's Contributory Infringement Claim Fails**

   *1.    <u>Steadfast Did Not Substantially Contribute to the Copyright Infringement by the Imagebam Users.</u>*

In the SAC, ALS does not allege that Steadfast had knowledge of the infringing activity of the individual users of the Imagebam website. This omission is fatal to ALS's claim and grounds for dismissal. The mere receipt of a DMCA notice and then the removal of an image[2] is not constitute proof that the images were in fact infringing. In no conceivable way does Steadfast encourage or promote any illegal conduct, including the alleged infringements.

ALS in its Opposition claims the lack of knowledge on Steadfast's part is irrelevant because it contributed to the "direct infringement by continuing to host infringing images or the repeatedly(sic) infringing sites after obtaining notices of infringement." However, the cases cited by ALS in support of this argument are not on point.

---

[2] In its Opposition ALS states Steadfast has not removed the "infringing images" but has not indicated what these images are or when Steadfast was asked to remove the images.

5

For example in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2010), the defendant who leased servers, bandwidth, and some IP addresses to the ultimately liable defendant was found not-guilty as a matter of law by the district court. The Ninth Circuit agreed stating:

> We agree with the district court that no evidence presented at trial showed that [defendant] operated the servers that hosted the direct infringers' websites. Even assuming that the direct infringers could be construed as [defendant's] customers, Louis Vuitton presented no evidence that [defendant] had reasonable means to withdraw services to direct infringers." *Id.* 942.

Like the defendant in the *Louis Vuitton* case, Steadfast has no reasonable means to withdraw the services of individual users of the Imagebam services. ALS could have caused the complained of images to be removed by contacting Imagebam directly and following the DMCA procedures of that website but chose not to.

In *Capitol Records, Inc. v. MP3tunes, LLC,* 48 F. Supp. 3d 703 (S.D.N.Y. 2014) the defendant was found liable for contributory infringement because he had constructive knowledge of the infringement; he controlled the MP3tunes website; he knew major labels were not distributing works in MP3 format, meaning he knew the MP3s of major label songs on his other websites were infringing; he was aware of DMCA takedown notices; he formed a company policy to ignore complaints of copyright infringement absent a formal DMCA notice; he funded the site and facilities for the infringing activity; and he directed MP3tunes' development and setting relevant policies at the company all with the goal obtaining a financial benefit through infringement. *Capitol Records* is nothing like this case.

In the SAC, ALS did not assert any specific facts that would indicate

Steadfast is anything like the defendant in *Capitol Records*. The only specific reference ALS makes to Steadfast in the entire SAC are the following two sentences:

> "On information and belief, Steadfast hosts pirate sites, including Imagebam. ALS has sent numerous notifications to Steadfast of infringing ALS content on Imagebam, but Steadfast has failed to implement or enforce a repeat infringer policy by removing Imagebam from its servers."[3]

ALS's mention of *Viacom Int'l, Inc. v. YouTube, Inc.* 676 F.3d 19 (2nd Cir. 2012) is disingenuous especially given that in a subsequent decision it was found that YouTube was not contributory liable for copyright infringement. See, *Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013).

In *Media USA Inc. v. Hollywood Fan Sites LLC,* 115 F. Supp. 3d 397 (S.D.N.Y. 2015) the court did not even address the question of contributory copyright infringement and should not be considered by the court with regard to this claim.

In its Opposition, ALS states that in order to avoid liability for contributory infringement, a service provider must terminate services to repeat infringers. This is simply not the law. The service provider must have more power to influence the activity. The cases cited by ALS actually support Steadfast on this point. In *Columbia Pictures Industries Inc. v. Fung*, 710 F. 3d 1020 (9th Cir. 2013) the Ninth Circuit stated:

> …we recently explained in UMG that the "right and ability to control" infringing activity involves "something more" than "merely having the general ability to locate infringing material and terminate users' access."

---

[3] ALS has not stated what these "pirate sites" are and its description of Imagebam as a pirate site is without merit as explained in Steadfast's Memorandum in Support of Motion to Dismiss.

> *{internal citations omitted}*…we held that "in order to have the 'right and ability to control,' the service provider must also exert substantial influence on the activities of users.'" *Id*. (quoting *Viacom Int'l, Inc.,* 676 F.3d at 38 (second alteration in original). In doing so, we noted that "[s]ubstantial influence' may include . . . purposeful conduct, as in *Grokster*." *Id*. In the absence of any evidence of inducement or any other reason to suggest the defendant exerted substantial influence over its users' activities, we concluded the defendant was not ineligible for protection under this provision. *Id.* at 1045.

Nowhere in the SAC does ALS claim Steadfast has the ability to do "something more" with regard to the individual Imagebam users.

Lastly, ALS argues the court in *BMG Rights Management (US) LLC v. Cox Communications, Inc*, 149 F.Supp. 3d 634 (E.D. Va. 2015) found the defendant liable for contributory infringement because it did not terminate repeat infringers. ALS fails to appreciate the full story. The court said a jury <u>might</u> find the defendant liable for contributory infringement because it refused to accept notifications from the plaintiff and it refused to review additional information provided by the plaintiff. *Id.* at 673. Nowhere in the SAC does ALS allege such conduct by Steadfast because it cannot. Further, the Defendant in *BMG Rights* is unlike Steadfast because the Defendant was dealing directly with individual customers of its own services.

ALS fails to state a claim for contributory copyright infringement claim against Steadfast in the SAC and the cases cited in its Opposition do not support ALS's position.

   2. <u>*ALS Does Not Dispute Steadfast Assertion That It Did Not Induce Copyright Infringement By Imagebam's Users.*</u>

ALS has not contested that it failed to state a claim that Steadfast is liable for

contributory copyright infringement through inducement. ALS without asserting any facts, included a claim for contributory copyright infringement through inducement. In order for Steadfast to be liable for inducement, there must be conduct that "intentionally induced[ed] or encourage[ed] direct infringement" by a third party. *See MGM Studios*, 545 U.S. at 930, 937 (2005) ("The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations."). Inducement "is a legal determination, and dismissal may not be avoided by characterizing a legal determination as a factual one." See *Visa,* 494 F.3d at 788, 802.

ALS's bald allegation of inducement is not a viable claim under *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) at 678 and should be dismissed.

### C. Steadfast Is Immune from Liability Under DMCA Safe Harbor

Even if the Court finds that ALS's claims survive Steadfast's arguments of dismissal for failure to state a claim, Steadfast should be dismissed from the copyright claims based on the DMCA safe harbor defense. Section 512(c) of the DMCA "protect[s] eligible service providers from all monetary . . . relief that may arise from copyright liability." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004). Under this safe harbor, an entity is protected from liability for copyright infringement if it satisfies the following elements:

1. the entity is a "service provider" as the term is defined in 17 U.S.C. § 512(k)(1)(B);
2. the service provider has (a) adopted, (b) reasonably implemented, and (c) informed subscribers and account holders of the service provider's system or network of a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers;

9

3. the service provider does not interfere with standard technical measures;
4. prior to the filing of the suit, the service provider has neither actual knowledge of infringing material on its systems or network, nor an awareness of facts of circumstance from which infringement is apparent;
5. the service provider acted expeditiously to remove or disable access to infringing material upon obtaining knowledge or awareness of infringing material on its system or network; and
6. the service provider lacks the ability to control infringing activity.

*See* 17 U.S.C. § 512.  As set forth in its Memorandum in Support of its Motion to Dismiss, Steadfast satisfies each of the elements. In the Memorandum to Dismiss Steadfast stated it only provides computer storage; it does not operate the Imagebam website or service, nor does it manage any functions of Imagebam it does not have access to the individual users' content or accounts on Imagebam; it does not provide the software that runs the Imagebam website and service for the users to upload content; it does not enter into contracts with the Imagebam users; it does not register Imagebam users; it does not handle Imagebam user complaints; nor does it interact with the Imagebam users in any way.

In its Opposition, ALS did not dispute Steadfast's non-existent connection to the Imagebam users (nor does the SAC contain any allegations that could counter these) and, as such, the Court is entitled to rule that Steadfast is entitled to DMCA safe harbor protection.  ALS seeks to draw a parallel between this case and Steadfast's litigation in *Seide v. Steadfast* but this is misguided.  The Seide case primarily involved a contract dispute between a website owner and photographer. The case settled in 2016.

### D. ALS's Contributory Trademark Infringement Claim Fails

ALS has failed to state a claim for contributory trademark infringement against Steadfast. "To be liable for contributory trademark infringement,

[Steadfast] must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *See Visa*, 494 F.3d at 807 (citing *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982).

In the SAC, ALS has not alleged any facts that would support a claim that Steadfast induced any user of the Imagebam website to use and infringe ALS's trademarks nor did the SAC explain how Steadfast could supply a product to an Imagebam user that is infringing. Further, the SAC does not even allege any facts establishing what the purported trademark infringement by the Imagebam users entailed. Furthermore, the SAC contains no factual allegations which could even remotely establish that Steadfast somehow controls or monitors any instrumentality used by the Imagebam users to engage in trademark infringement. Steadfast should not be burdened with the costs of defending such a claim that has no basis in fact or in law.

ALS claims that the *Louis Vuitton* case is directly on point but, as explained above, the party in that case most similar to Steadfast was found not guilty of trademark infringement with the Ninth Circuit writing:

> We agree with the district court that no evidence presented at trial showed that [defendant] operated the servers that hosted the direct infringers' websites. Even assuming that the direct infringers could be construed as [defendant's] customers, Louis Vuitton presented no evidence that [defendant] had reasonable means to withdraw services to direct infringers"

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2010).

ALS's reliance on *Lockheed Martin Corp. v. Network Solutions, Inc.* 194 F. 3d 980 (9th Cir. 1999) is also misplaced. The Ninth Circuit further stated:

11

> Although [defendant's] routing service is only available to a registrant who has paid [defendant's] fee, [defendant] does not supply the domain-name combination any more than the Postal Service supplies a street address by performing the routine service of routing mail. As the district court correctly observed, Where domain names are used to infringe, the infringement does not result from [defendant's] publication of the domain name list, but from the registrant's use of the name on a web site or other Internet form of communication in connection with goods or services . . . . [defendant's] involvement with the use of domain names does not extend beyond registration.

Here Steadfast's involvement does not extend beyond it leasing space to Imagebam who in turn contracts with its individual users. Unlike the *Sealy* and *Fonovisa* cases that ALS relies on in its Opposition, Steadfast does not provide any direct (or even indirect) goods or services to the direct trademark infringer (the individual users). Steadfast is unlike a flea market operator that provides space to flea market sellers as it does not have any contact whatsoever with Imagebam's users.

The SAC does set forth any facts suggesting that Steadfast intentionally induced any Imagebam user to engage in trademark infringement. The SAC does not set forth any facts that even imply Steadfast's services specialize in "high risk" publishers. ALS has failed to plead sufficient facts to even infer that Steadfast "crafted 'advertisement[s] or solicitation[s] that broadcast[ ] a message designed to stimulate others to commit violations," *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010), let alone suggesting "affirmative steps taken to foster infringement" or "that [Steadfast] promoted [storage services] as a means to infringe." *See Visa*, 494 F.3d at 800–01.

For these reasons, ALS's contributory trademark infringement cause of

action should also be dismissed.

## **CONCLUSION**

Therefore, Steadfast respectfully requests this Court grant Steadfast Networks, LLC's Motion to Dismiss the following counts against Steadfast:

Count II      Contributory Copyright Infringement;

Count III     Vicarious Copyright Infringement;

Count VI    Contributory Trademark Infringement.

                                           JOHN L. AMBROGI
                                           COLIN T.J. O'BRIEN
                                           PARTRIDGE PARTNERS, P.C.

Dated: February 1, 2017           By: /s/Colin T.J. O'Brien
                                                 COLIN T.J. O'BRIEN

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: 310-859-0100
Facsimile: 310-388-5645

Attorneys for Steadfast Networks, LLC

13

# PROOF OF SERVICE

I, COLIN T.J. O'BRIEN, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and that on February 1, 2017, true copies of the following document was served via the Court's ECF:

**STEADFAST NETWORKS LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

to the following parties in this action via their counsel:

ALS Scan, Inc.

Hivelocity Ventures Corp.

Cloudflare, Inc.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 1, 2017              /s/Colin T.J. O'Brien_____
                                     Colin T.J. O'Brien
                                     Attorney for Defendant
                                     Steadfast Networks LLC