QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
  Carolyn M. Homer (Bar No. 286441)
  carolynhomer@quinnemanuel.com
  Mark T. Gray (Bar No. 305251)
  markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **CLOUDFLARE, INC.**, et al., <br><br> Defendants. | Case No. 2:16-cv-05051-GW-AFM <br><br> **CLOUDFLARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING EXTRATERRITORIALITY** <br><br> Hearing Date:   March 30, 2017 <br> Hearing Time:   8:30 AM <br> Place:   Courtroom 9D <br> Judge:   Hon. George H. Wu |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF RELEVANT FACTS ................................................................. 1

ARGUMENT ......................................................................................................... 3

I.     CLOUDFLARE IS ENTITLED TO PARTIAL SUMMARY
JUDGMENT AS TO 14 OF THE 15 ALLEGED DIRECT INFRINGER
WEBSITES BECAUSE THOSE ALLEGED INFRINGEMENTS ARE
EXTRATERRITORIAL ................................................................................ 3

      A.     Extraterritorial Acts of Alleged Direct Copyright Infringement
Are Not Actionable, Nor Can They Form the Basis for a
Contributory Infringement Claim ........................................................ 4

      B.     Cloudflare Has Established That the Underlying Acts of Direct
Infringement at Issue Here Occurred Outside of the United States ........ 6

      C.     ALS Scan Has Failed to Provide Any Evidence of Underlying,
Territorial Direct Infringements to Which Cloudflare Has
Materially Contributed ........................................................................ 7

CONCLUSION ...................................................................................................... 8

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................. 3, 7

5

*Danjaq, S.A. v. MGM/UA Commc'ns, Co.,*
   773 F. Supp. 194 (C.D. Cal. 1991),
   *aff'd sub nom Danjaq, S.A. v. Pathe Commc'ns Corp.,*
   979 F.2d 772 (9th Cir. 1992) ........................................................ 5

6

7

8

*Datacarrier S.A. v. WOCCU Servs. Grp., Inc.,*
   --- F. Supp. 3d ---, 2016 WL 6900716 (W.D. Wis. Nov. 22, 2016) ...................... 6

9

*Hydentra HLP Int. Ltd. v. Luchian,*
   No. 1:15-CV-22134, 2016 WL 5951808 (S.D. Fla. June 2, 2016) ....................... 1

10

11

*Litecubes, LLC v. Northern Light Products, Inc.,*
   523 F.3d 1353 (Fed. Cir. 2008) .................................................. 4,7

12

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,*
   210 F.3d 1099 (9th Cir. 2000) .................................................... 3

13

14

*Omega S.A. v. Costco Wholesale Corp.,*
   541 F.3d 982 (9th Cir. 2008) ..................................................... 4

15

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) .................................................. 6, 8

16

17

*Perfect 10, Inc. v. Giganews, Inc.,*
   847 F.3d 657 (9th Cir. Jan. 23, 2017) ............................................ 8

18

*Perfect 10, Inc. v. Yandex N.V.,*
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) ...................................... 5, 6, 7, 8

19

20

*Rosen v. eBay, Inc.,*
   No. 13-CV-6801, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ........................ 8

21

*Rundquist v. Vapiano SE,*
   798 F. Supp. 2d 102 (D.D.C. 2011) ............................................. 5, 6

22

23

*Shropshire v. Canning,*
   809 F. Supp. 2d 1139 (N.D. Cal. Aug., 2011) ...................................... 4

24

*Subafilms Ltd. v. MGM-Pathe Comm'n Co.,*
   24 F.3d 1088 (9th Cir. 1994) .................................................. 4, 5, 7

25

26

*Trader Joe's Co. v. Hallatt,*
   835 F.3d 960 (9th Cir. 2016) ..................................................... 4

27

28

**Statutes**

Fed. R. Civ. P. 56(a) ....................................................................................... 3

**Miscellaneous**

3 David Nimmer & Melville B. Nimmer, Nimmer on
   Copyright § 12.04[A][3][b] ......................................................................... 5

6 Patry on Copyright § 21:46 (2017) ............................................................... 5

## **PRELIMINARY STATEMENT**

Cloudflare's involvement in this case is based solely on the allegation that 15 other companies infringed serial litigant ALS Scan's copyrights in various pornographic images by hosting them on certain adult websites, and that Cloudflare's web optimization and cybersecurity services are somehow contributing to that infringement. Because ALS Scan has no evidence that 14 of those companies committed acts of alleged direct infringement within the United States, there is no basis for a direct copyright infringement claim against them, nor any basis for a contributory copyright infringement claim against Cloudflare arising from their actions. The Copyright Act is territorial and does not extend to direct infringements occurring outside the United States, as is the case here. Given the extraterritoriality of ALS Scan's claims, Cloudflare is entitled to partial summary judgment.

## **STATEMENT OF RELEVANT FACTS**

**ALS Scan**. ALS Scan, Inc. is a purveyor of pornographic media and serial copyright litigant that is headquartered in Maryland. ALS Scan is part of the "MetArt Network,"[1] a collection of porn websites overseen by Cyprus-based entity Hydentra HLP Int. Ltd. *See Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134, 2016 WL 5951808, at *1 (S.D. Fla. June 2, 2016) (Hydentra operates the MetArt Network, which includes ALSScan.com). Hydentra also is a serial copyright litigant and has filed over 20 copyright lawsuits in the past few years.[2]

**Cloudflare.** Cloudflare, Inc. provides internet services to optimize and protect websites, including by increasing the speed at which website content is delivered to end users, making such delivery considerably more bandwidth efficient, and by adding security services to prevent malicious attacks. Declaration of Trey Guinn in

---

[1] *See* https://www.alsscan.com/network/ (showing ALS Scan as part of "MetArt Network"); https://www.alsscan.com/privacy/ (ALS Scan Privacy Policy stating it is applicable to websites including alsscan.com and metart.com).

[2] A PACER search for "Hydentra" as plaintiff returns nearly two dozen lawsuits.

Support of Cloudflare's Motion for Partial Summary Judgment Re: Extraterritoriality ("Guinn Decl."), ¶ 3, Ex. A (Terms of Service §§ 7, 10).  Cloudflare has been honored with many industry awards and accolades, including the Wall Street Journal Technology Innovation Award in 2011 and 2012, and the TechCrunch 2015 award for Best Enterprise Startup.  Guinn Decl. ¶ 4.  A cyber-security innovator, Cloudflare's services improve transmission and security for its customers, who already have complete existing websites including hosting facilities, internet connectivity, and all the technical applications needed to run their websites.  *Id.*

Cloudflare is not a website hosting service and does not offer or provide such services to anyone.  *Id.* ¶ 5.  Cloudflare's Terms of Service explicitly forbid users from using Cloudflare for data storage of any kind.  *See* Guinn Decl. ¶ 5, Ex. A (Terms of Service § 10).

**ALS Scan's Complaint**.  On July 11, 2016, ALS Scan filed a complaint against Cloudflare alleging contributory copyright infringement, vicarious copyright infringement, and contributory trademark infringement.  Dkt. 1.  ALS Scan also named Tiger Media and Gerardus Van Ginneken as defendants.  *Id.*  The following month, ALS Scan amended its complaint to add an unfair competition claim against all defendants, including newly-added defendants Dolphin Media, Hivelocity Ventures Corp., Steadfast Networks, OVH SAS, and others.  Dkt. 33.  ALS Scan has since dropped its claims against Mr. Van Ginneken (Dkt. 32) and the OVH companies (Dkt. 113).  ALS Scan also elected to not amend, and dropped its claims against Tiger Media (Dkt. 63) following the Court's grant of a motion to dismiss (Dkt. 53).  The Court has also granted motions to dismiss, with leave to amend, for Steadfast Networks (Dkt. 111) and Dolphin Media (Dkt. 117).

**Cloudflare's Successful Motion to Dismiss.**  On September 26, 2016, Cloudflare moved to dismiss all four of the claims ALS Scan had alleged against it via the First Amended Complaint.  Dkt. 50.  On October 24, 2016, the Court issued an order granting Cloudflare's motion as to all but one of the claims, with leave to

1  amend.  Dkt. 60.  ALS Scan did not amend its complaint as to those dismissed claims,

2  choosing instead to abandon them, and leaving only a single claim for contributory

3  copyright infringement as to Cloudflare.  Dkt. 64.

4      **ALS Scan's Remaining Claim Against Cloudflare for Contributory**

5  **Infringement.**  ALS Scan alleges that the following 15 websites directly infringe its

6  copyrighted works, and that Cloudflare is contributing to that infringement by

7  providing its optimization and cybersecurity services to the operators of those sites:

8  | bestofsexpics.com | imgchili.net | imgtrex.com |
   |---|---|---|
9  | cumonmy.com | imgflash.net | pornwire.net |
10 | fboom.me | imgsen.se | slimpics.com |
11 | greenpiccs.com | imgspice.com | stoorage.com |
12 | img.yt | imgspot.org | vipergirls.to |

13 All 15 of these websites are or at one time were operated by customers of

14 Cloudflare.  Guinn Decl. ¶ 13.

15     **The foreign location of the servers hosting the websites at issue**.  "Host

16 servers" are physical pieces of computer hardware that permanently store a

17 website's content.  Guinn Decl. ¶ 6.  This is what most people think of when the

18 term "server" is used in the context of websites on the internet.  *Id.*  Cloudflare's

19 customer data contains the IP addresses of the host servers of the 15 alleged direct

20 infringer websites at issue.  Guinn Decl. ¶ 13.  Tracing those IP addresses using

21 basic IP address lookup tools such as domaintools.com confirms that 14 of the 15

22 websites at issue are hosted on servers located outside the United States.  Guinn

23 Decl. ¶¶ 14-16.

24     **Cloudflare's Web Optimization and Cybersecurity Services**.  As

25 explained above, Cloudflare does not operate host servers, nor does it own, operate

26 or control any of the websites at issue in this case.  Guinn Decl. ¶¶ 5, 12.  Instead, it

27 offers website optimization and security services to more than 5.5 million websites

28 all over the world.  Guinn Decl. ¶ 3.

Under Cloudflare's "Free" and "Pro" service plans, a website owner must designate Cloudflare as its domain nameserver. Guinn Decl. ¶ 7. Nameservers convert the text-based Uniform Resource Locator ("URL") of a website into a computer-readable address to point users and internet browsers in the direction of content stored elsewhere. Guinn Decl., ¶ 6. Stated another way, nameservers give directions by telling a user's personal computer where to look to find the website the user is searching for. *Id.* This has no impact on the location or substance of the content of the website's host server; in other words, it does not add, move, or remove any image or video files from the host server. Guinn Decl. ¶ 7. This service is why an IP address WHOIS lookup regarding a website operated by a Cloudflare customer traces to Cloudflare—because the customer has designated Cloudflare as its domain nameserver, which then points end users to the customer's website. *Id.* Among other things, a website operator can designate Cloudflare as the website's nameserver to redirect malicious attacks by preventing an attacker from reaching the customer's host servers and overloading its capacity, while permitting non-malicious users to visit the website normally. *Id.*

As part of its services Cloudflare also provides automated caching functionality to customer websites. Guinn Decl. ¶ 8. Caching servers temporarily cache content, typically for a few hours before being cleared (also known as "evicted") in order to improve the time it takes for website content from the host server to reach the end users in a particular geographic area. Guinn Decl. ¶ 6. Caching servers are thus part of the infrastructure or backbone of the internet, in that they help deliver internet-related data as quickly and efficiently as possible. *Id.* Cloudflare operates caching data centers located all over the world. Guinn Decl. ¶ 8. When an end user chooses to visit a Cloudflare customer's website, the user is routed through the Cloudflare caching server closest to that end user's computer. *Id.* This infrastructure and caching process is how modern internet transmissions are often sent and received. For example, the infrastructure used for public or personal

1   WiFi service (on airplanes, at the mall, or in hotel lobbies, for instance) uses a

2   similar caching and response process because that infrastructure often caches

3   frequently requested content.  Guinn Decl. ¶ 10.

4                                    **ARGUMENT**

5          Summary judgment is warranted where "there is no genuine issue as to any

6   material fact" and "the moving party is entitled to a judgment as a matter of law."

7   Fed. R. Civ. P. 56(a).  A court must enter summary judgment "against a party who

8   fails to make a showing sufficient to establish the existence of an element essential

9   to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A

10  moving party without the ultimate burden of persuasion at trial [] may carry its

11  initial burden of production by either . . . produc[ing] evidence negating an essential

12  element of the nonmoving party's case, or . . . show[ing] that the nonmoving party

13  does not have enough evidence of an essential element of its claim or defense to

14  carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v.*

15  *Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

16  **I.     CLOUDFLARE IS ENTITLED TO PARTIAL SUMMARY**
         **JUDGMENT AS TO 14 OF THE 15 ALLEGED DIRECT INFRINGER**
17       **WEBSITES BECAUSE THOSE ALLEGED INFRINGEMENTS ARE**
         **EXTRATERRITORIAL**
18
19         It is well-settled that the U.S. Copyright Act does not apply extraterritorially.

20  Because 14 of the 15 alleged direct infringer websites on which ALS Scan has based

21  its contributory infringement claim against Cloudflare are foreign websites hosted

22  on foreign servers, these alleged infringements are not actionable under U.S. law.[3]

23  Without an actionable direct infringement on which to base a contributory

24

25

26  _____
    [3]  Cloudflare estimates that this motion, if granted, will eliminate more than 96%
27  of ALS Scan's case against Cloudflare, leaving just a few dozen DMCA notices at
28  issue.

infringement claim, ALS Scan's case against Cloudflare as to these 14 websites fails too.[4]

**A.      Extraterritorial Acts of Alleged Direct Copyright Infringement Are Not Actionable, Nor Can They Form the Basis for a Contributory Infringement Claim**

As explained in the Ninth Circuit's seminal *Subafilms* case: "United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1094, 1098 (9th Cir. 1994) (copyright protection extends "no farther than the [United States'] borders."); *see also Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008) (The Copyright Act "presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States."). Thus, a claim for copyright infringement is not actionable unless the plaintiff establishes that the act of direct infringement occurred domestically. *See, e.g.*, *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1144 (N.D. Cal. Aug., 2011) (finding *Litecubes* "well-reasoned and persuasive" and holding extraterritoriality to be "an element of claim for copyright infringement").[5]

"It is definitional that, for a defendant to be held contributorily. . . liable, a direct infringement must have occurred." *Subafilms*, 24 F.3d at 1092 (citation omitted). Because the Copyright Act applies only to acts of direct infringement that

---

[4]  Cloudflare does not concede, but rather assumes for purposes of this motion only, that (1) ALS Scan owns valid copyrights in each of the images it asserts in this case, and (2) third-party use of these images is unauthorized and not subject to any other affirmative defense. Cloudflare reserves its right to move for summary judgment on these and other merits issues, should such a motion later prove necessary or appropriate.

[5]  In the Ninth Circuit, territoriality is viewed as an element of a claim, as opposed to a question of subject matter jurisdiction. *See, e.g., Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 968 (9th Cir. 2016).

occur within the United States, claims of secondary infringement are not cognizable under the Copyright Act unless the underlying act of direct infringement occurred within the United States:

> Given the undisputed axiom that United States copyright law has no extraterritorial application, it would seem to follow necessarily that a primary activity outside the boundaries of the United States, not constituting an infringement cognizable under the Copyright Act, cannot serve as the basis for holding liable under the Copyright Act one who is merely related to that activity within the United States.

*Subfilms*, 24 F.3d at 1093 (quoting 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright § 12.04[A][3][b], at 12-86); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126-27 (D.D.C. 2011) (in context of contributory liability, "[a]t least one act [of direct infringement] . . . must take place in the United States to trigger the protection of United States law"); *Danjaq, S.A. v. MGM/UA Commc'ns, Co.*, 773 F. Supp. 194, 203 (C.D. Cal. 1991), *aff'd sub nom Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772 (9th Cir. 1992) ("[G]iven that the performance of Bond films on European television would not infringe Danjaq's U.S. copyright, the court must conclude that [defendant's] alleged authorization of such performances [in the U.S.] is not actionable under the U.S. Copyright Act.").  The location of the contributory act is irrelevant – it is only the location of the direct infringement that matters, for extraterritoriality purposes.  *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1157 (N.D. Cal. 2013) ("For contributory infringement, the servers that matter are the servers where the underlying direct infringement [] occurred."); *Danjaq*, 773 F. Supp. at 203 ("[A[n] authorization of a noninfringing activity, such as . . . an overseas performance, is not actionable under the Copyright Act even if the authorization is made in the United States."); 6 Patry on Copyright § 21:46 (2017) ("[W]here the claim of direct infringement occurs wholly overseas[,] since an act occurring wholly overseas cannot violate U.S. copyright law, a claim of contributory infringement based on contributory conduct that occurs in the U.S. fails as a matter of law.").

One district court recently relied on *Subafilms* and its progeny to dismiss on extraterritoriality grounds a claim alleging that "WSG committed acts that would constitute contributory infringement in the United States, although the resulting direct infringement occurred outside the United States." *Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, --- F. Supp. 3d ---, 2016 WL 6900716, at *3 (W.D. Wis. Nov. 22, 2016). Similarly, another district court likewise recognized *Subafilms'* rationale when it declined to hold United States locations of Italian restaurant chain Vapiano contributorily liable for underlying direct infringements "taking place in foreign Vapiano restaurants." *Rundquist*, 798 F. Supp. 2d at 127.

In the context of alleged infringement on the internet, the Ninth Circuit's well-established "server test" recognizes that an infringement "takes place" at the location of the computer responsible for hosting the allegedly infringing content. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-62 (9th Cir. 2007) ("[I]t is the website publisher's computer, rather than [the search engine's] computer, that stores and displays the infringing image."). Thus, where an allegedly infringing website is hosted on a server located outside the United States, no claim for direct infringement under the U.S. Copyright Act lies. *Yandex*, 962 F. Supp. 2d at 1154, 1157 ("Yandex's hosting of full-sized Perfect 10 images on servers in Russia does not constitute direct copyright infringement in the United States."). Likewise, there can be no contributory liability under the U.S. Copyright Act where the underlying direct infringement took place on servers outside the United States. *Id.* ("For contributory infringement, the servers that matter are the servers where the underlying direct infringement . . . occurred.").

### B. Cloudflare Has Established That the Underlying Acts of Direct Infringement at Issue Here Occurred Outside of the United States

ALS Scan's contributory infringement claims are premised on Cloudflare's provision of services to third-party websites which display allegedly-infringing copies of ALS Scan's works. To prove its contributory claims, ALS Scan must

-6-

demonstrate that the underlying third-party direct infringements occurred in the United States. *See*, *e.g.*, *Subafilms*, 24 F.3d at 1093. With respect to 14 of the 15 websites at issue, ALS Scan will be unable to do so, because Cloudflare has produced documents confirming the IP addresses of these websites, and IP address lookup tools confirm that the host servers of those websites are located abroad. *See* Guinn Decl. ¶¶ 12-15. These acts of alleged direct infringements thus are extraterritorial, and ALS Scan accordingly has failed to establish a key element of its contributory copyright infringement claim. *See*, *e.g.*, *Litecubes*, 523 F.3d at 1368 (territoriality is "an element of the claim that must be proven before relief may be granted"); *Subafilms*, 24 F.3d at 1098-99.[6]

### C. ALS Scan Has Failed to Provide Any Evidence of Underlying, Territorial Direct Infringements to Which Cloudflare Has Materially Contributed

ALS Scan cannot meet its burden of making an "affirmative evidentiary showing" establishing that its claims as to these 14 websites are premised on territorial acts of direct copyright infringement. *See Celotex*, 477 U.S. at 321. On December 5, 2016, Cloudflare served discovery on ALS Scan focused on identifying the geographic locations of the host servers on which the direct infringements at issue are stored. In response, ALS Scan produced only

---

[6] Based on the parties' meet and confer discussions, Cloudflare anticipates ALS Scan will argue that Cloudflare's conduct occurs domestically by virtue of its United States headquarters and caching data centers, and thus, that the infringements here are indeed territorial. But Cloudflare's United States operations have no bearing on the question of territoriality, which looks to where the *direct* infringements occurred. ALS Scan contends that Cloudflare is a <u>contributory</u> infringer, by virtue of its provision of services to the 15 alleged direct infringer websites whose operators are or were Cloudflare customers. *See* SAC ¶¶ 27-41, 55, 64-67. The location of the alleged contributory conduct is irrelevant to the extraterritoriality inquiry. *Yandex*, 962 F. Supp. 2d at 1157("For contributory infringement, the servers that matter are the servers where the underlying direct infringement occurred.").

1   domaintools.com IP Address lookup reports for the 15 websites at issue, tracing to
2   Cloudflare servers.  But this is of no help to ALS Scan, because as explained above,
3   these are Cloudflare's **nameservers**, not the host servers of the websites at issue.
4   *See* Guinn Decl. ¶¶ 6-7.  Cloudflare's nameservers do not host these websites, but
5   rather, merely point users and internet browsers in the direction of content stored
6   elsewhere.  *Id.* ¶ 6.  The host servers constitute the "location" of these alleged direct
7   infringements.  *Yandex*, 962 F. Supp. 2d at 1157.

8          Importantly, the location of Cloudflare's conduct is irrelevant, because ALS
9   Scan has alleged a contributory claim against Cloudflare — ALS Scan has not
10  alleged that Cloudflare itself has committed any acts of direct infringement.  *See*
11  SAC ¶¶ 61-63.  Nor could ALS Scan do so, because automated, non-volitional and
12  temporary cache copies of copyrighted content are not actionable direct
13  infringements as a matter of law.  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657,
14  668 (9th Cir. Jan. 23, 2017) (volitional conduct is a required element of direct
15  copyright infringement; automatic distribution of internet content is not volitional
16  conduct); *Perfect 10 v. Amazon*, 508 F.3d at 1169-70 (caching is a fair use, not an
17  act of direct infringement); *Rosen v. eBay, Inc.*, No. 13-CV-6801, 2015 WL
18  1600081, at *21 (C.D. Cal. Jan. 16, 2015) ("The widespread use of [content delivery
19  networks] means that most content is passed from a service provider to one or more
20  third parties before reaching an end user . . . such usage is minimal and is a crucial
21  part of maintaining not only internet commerce, but the efficient operation of the
22  internet generally . . . and [is thus a] fair use.").

23         ALS Scan has proffered no triable issue of material fact.

24                          **CONCLUSION**

25         For the foregoing reasons, Cloudflare respectfully requests that the Court
26  grant its Motion for Partial Summary Judgment Regarding Extraterritoriality.

27

28

1    Dated:  March 2, 2017               Respectfully submitted,

2

3                                       QUINN EMANUEL URQUHART & SULLIVAN LLP

4

5                        By_____

6                                   Rachel Kassabian

7                                   *Attorney for Defendant Cloudflare, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLOUDFLARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE EXTRATERRITORIALITY