QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
  Carolyn M. Homer (Bar No. 286441)
  carolynhomer@quinnemanuel.com
  Mark T. Gray (Bar No. 305251)
  markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.,** | Case No. 2:16-cv-05051-GW-AFM |
| Plaintiff, | **CLOUDFLARE, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING EXTRATERRITORIALITY** |
| vs. | |
| **CLOUDFLARE, INC.,** et al., | |
| Defendants. | Hearing Date:    March 30, 2017 |
| | Hearing Time:   8:30 AM |
| | Place:             Courtroom 9D |
| | Judge:            Hon. George H. Wu |

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................ 1

I.    ALS SCAN'S CLAIM THAT EACH OF THE DIRECT
      INFRINGEMENTS IN SUIT DID NOT TAKE PLACE "ENTIRELY
      ABROAD" IS WRONG AND DOES NOT SAVE ALS FROM
      SUMMARY JUDGMENT ..................................................................... 1

      A.    The alleged host server infringements are entirely extraterritorial ........ 3

      B.    The alleged caching server infringements are not actionable and
            also fail for lack of proof ......................................................... 5

            1.    Computer caching is an automated process lacking the
                  required element of volitional conduct .......................... 6

            2.    Infrastructure-level caching is a fair use ......................... 9

            3.    ALS's caching server infringement theory fails for lack of
                  proof ................................................................. 11

II.   ALS'S "DOMESTIC IMPACT" THEORY OF TERRITORIALITY
      FAILS AS A MATTER OF LAW ...................................................... 13

CONCLUSION .......................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ........................................................ 8

*Desales v. Woo*,
860 F. Supp. 1436 (N.D. Cal. 1994) ............................................ 9

*Field v. Google Inc.*,
412 F. Supp. 2d 1106 (D. Nev. 2006) .......................................... 9

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
--- F.3d ---, 2017 WL 955259 (5th Cir. Mar. 10, 2017) ............... 4

*Johnson v. Methodist Med. Center of Ill.*,
10 F.3d 1300 (7th Cir. 1993) ........................................................ 5

*Los Angeles News Servs. v. Reuters Television Int'l Ltd.*,
149 F.3d 987 (9th Cir. 1998) ........................................................ 5

*Matthew Bender & Co. v. W. Pub. Co.*,
158 F.3d 693 (2d Cir. 1998) ......................................................... 7

*Pac. Century Int'l, Ltd. v. Does 1-37*,
282 F.R.D. 189 (N.D. Ill. 2012) ................................................... 3

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ............................................. 4, 9, 10

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) ................................................. 6, 8, 9

*Perfect 10, Inc. v. Yandex N.V.*,
962 F. Supp. 2d 1146 (N.D. Cal. 2013) ................................. 1, 3, 4

*Robert Kubicek Architects & Assocs., Inc. v. Bosley*,
No. 11-CV-02112, 2012 WL 6554396 (D. Ariz. Dec. 14, 2012) ......... 7

*Rosen v. eBay, Inc.*,
No. 13-CV-6801, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) .......... 9, 11

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ...................................................... 9

*Shropshire v. Canning*,
809 F. Supp. 2d 1139 (N.D. Cal. 2011) ........................................ 2

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
24 F.3d 1088 (9th Cir. 1994) ................................................. 3, 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wady v. Provident Life & Accident Ins. Co. of Am.*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002)..................................................................5

### **<u>Rules and Statutes</u>**

Fed. R. Civ. P. 56(f)(2) ...............................................................................................9

Fed. R. Evid. 408 .......................................................................................................8

# ARGUMENT

This case is ripe for partial summary judgment on extraterritoriality grounds. Nowhere in ALS's opposition does it contest that 14 of the 15 websites at issue in its contributory case against Cloudflare are hosted on foreign servers operated abroad. Nor does it contest that such extraterritorial direct infringements are not legally actionable. Instead, ALS shifts gears and suggests that the display of a foreign-hosted website can be the basis for a territorial claim because the content on that website may be temporarily cached globally (including within the United States) by automated transmission networks such as the one Cloudflare operates. ALS is incorrect. Indeed, its argument "would destroy the concept of territoriality inherent in the Copyright Act for works on the Internet." *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013), *as amended* (Sept. 6, 2013). Because the U.S. Copyright Act does not reach direct infringements occurring abroad, and because any domestic caching activity is non-actionable under the volitional conduct requirement and fair use doctrine, Cloudflare's motion for partial summary judgment should be granted.

**I.     ALS SCAN'S CLAIM THAT EACH OF THE DIRECT INFRINGEMENTS IN SUIT DID NOT TAKE PLACE "ENTIRELY ABROAD" IS WRONG AND DOES NOT SAVE ALS FROM SUMMARY JUDGMENT**

In hopes of avoiding summary judgment, ALS attempts to muddy the distinction between (1) foreign-hosted permanent copies of its images and (2) *separate* transitory cache copies that may be stored on one or more of Cloudflare's 102 cache servers (19 of which are located within the U.S, and 83 of which are located abroad).[1] *See, e.g.*, Dkt. 130 (ALS Scan Opp. to Cloudflare Mot. for S.J.)

---

[1]  ALS's Opposition urges that Cloudflare's Domain Name Server ("DNS") services (which, like all DNS services, act essentially as a forwarding service for internet users looking for a particular website) is somehow relevant to its contributory infringement claim. But ALS cites no cases in which DNS servers (continued)

("Opp.") at 9-10, 13-14.  ALS may not conflate the *permanent* copies of content on each website's host servers with the distinct *cache* copies that, depending on the frequency and location of user requests, may be served from one or more Cloudflare caching servers around the world.  As ALS's own brief acknowledges, "[e]ach act of copying constitutes a complete act" of possible infringement, Opp. at 13, and thus the Court must separately consider whether each copy independently can survive Cloudflare's motion.[2]  Here, there simply is no meaningful dispute that extraterritorial host server infringements must be dismissed as nonactionable.  And, ALS's cache server infringements fare no better for a number of reasons, including because automated computer caching lacks the required element of volitional conduct, and also because courts have held the minimal, incidental copying engaged in by CDNs to be a non-actionable fair use.[3]

---

were found liable for any form of copyright infringement.  Nor does ALS reference any specific Section 106 exclusive right implicated by DNS services.  Instead, ALS vaguely suggests that this aspect of internet architecture "frustrate[s] the rights of copyright owners."  Opp. at 8.  Because Cloudflare's DNS servers act solely to tell a website visitor's computer what the IP Address is for a given server hosting a particular website, which has nothing to do with the alleged acts of direct copyright infringement at issue, these accusations are irrelevant to the pending motion.

[2]  ALS's citation to *Shropshire* agrees: there, the Court examined each alleged infringement separately to determine territoriality, and concluded that the making of an infringing video in Canada was extraterritorial, whereas the separate act of uploading that video to a U.S. YouTube server was territorial.  *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1145-46 (N.D. Cal. 2011).

[3]  Though ALS's complaint generally averred as to ALS's ownership of a "substantial library" of adult "images and videos," SAC ¶ 18, ALS has thus far failed to disclose which of its copyrighted works are at issue.  *See, e.g.*, Dkt. 51 at 18; Declaration of Rachel Kassabian, Ex. A (ALS's Interrogatory Responses).  In its Opposition,  ALS now has admitted that "[a]ll of the infringements alleged in this case involve static ALS files in jpg format."  Opp. at 5.  Accordingly, Cloudflare requests that the court enter partial summary judgment dismissing ALS's copyrighted videos from this suit.  *See, e.g.,* SAC ¶ 18, Ex. 1 at lines 158-188.

**A.    The alleged host server infringements are entirely extraterritorial**

ALS's opposition papers fail to offer any factual or legal support for its contributory claims against Cloudflare based on alleged copies of ALS images on the 14 websites that are hosted on foreign servers.

First, ALS does not dispute that IP Address lookups are a reliable and widely accepted means of determining the geographic location of host servers for websites. Indeed, it has not objected to Cloudflare's IP Address lookup evidence, and also relies on such lookup tools itself.[4]  Nor does ALS dispute that the 14 websites at issue are stored on host servers located abroad.  *See* Dkt. 131 (ALS Statement of Genuine Dispute of Material Facts) at 4-5;[5]  *see also* Dkt. 124-2, Decl. of Trey Guinn ("Guinn Decl.") at 5-6 (showing that 14 of the 15 websites at issue are located abroad, in countries such as France, the Republic of Seychelles, and Romania).

Second, ALS does not, and cannot, dispute the extraterritoriality doctrine itself—that copyright protection extends "no farther than the [United States'] borders" and thus "United States copyright laws do not reach acts of infringement that take place entirely abroad."  *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094, 1098 (9th Cir. 1994) (citations omitted).

---

[4]  *See, e.g.,* Spillane Decl. ¶ 6, Ex. D (Dkt. 133-4) (containing 50 pages of IP Address lookups); Penn Decl. (Dkt. 134) ¶¶ 5-19; *see also* Penn Reply Decl., Ex. 3 (Dkt. 45-3) (Domaintools Report).  IP Address lookup tools have also been accepted as reliable in other cases.  *See, e.g.*, *Yandex*, 962 F. Supp. 2d at 1157-58 ("Using the same geo-location tools used by Perfect 10, Yandex demonstrates that the third-parties hosting the 50,000 full-sized images are extraterritorial[.]"); *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 196 (N.D. Ill. 2012) ("As the parties both indicate, it is possible to uncover the location of any IP Address through the use of free online tools.").

[5]  Though ALS purports to "dispute" those facts, it offers no supporting evidence, instead making the unrelated statement that Cloudflare's customer records are held by Cloudflare, which has no bearing on the accuracy of IP Address lookups or the records themselves.

As ALS implicitly acknowledges in switching its attention to alleged caching server copies (see below), the foreign-hosted permanent copies are not actionable direct infringements and cannot give rise to a contributory claim against Cloudflare. These acts took place "entirely" abroad:  the upload of content by users of the 14 domains would be a "reproduction" occurring entirely in the foreign country, where the copy was also saved onto a server; the creation of derivative works on the foreign servers would be entirely foreign; the display of those copies would take place at the location of the foreign server (*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007)); and even the distribution or "export" of those copies would take place at the foreign site where they were distributed from, not the location of any receiving computer.  *Yandex*, 962 F. Supp. 2d  at 1153; *see also Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, --- F.3d ---, 2017 WL 955259, at *10 (5th Cir. Mar. 10, 2017) ("That the United States was the destination [of exportation] does not convert [a Canadian third party's] conduct into domestic conduct for the purpose of the Copyright Act.").  Indeed, there could be no other reasonable conclusion;  otherwise, any foreign company offering a globally-accessible website hosted abroad would be swept up within the ambit of U.S. copyright law, which would "destroy the concept of territoriality inherent in the Copyright Act for works on the internet."  *Yandex*, 962 F. Supp. 2d  at 1153.

Given the Ninth Circuit's server test in *Amazon*, and the *Yandex* decision that is squarely on point, these alleged host server infringements are indisputably extraterritorial, and Cloudflare is entitled to partial summary judgment on ALS's contributory claims arising from them.  *See Amazon*, 508 F.3d at 1159-62; *Yandex,* 962 F.Supp.2d at 1154, 1157.[6]

---

[6]  ALS cites *Amazon* and suggests that Cloudflare, like Google, has "domestic servers" that "cause user's computer screens to fill with copyrighted images," Opp. at 12, which constitutes direct infringement.  Not only was this exact theory of direct liability rejected on fair use grounds later in that same decision, but ALS also has (continued)

**B.    The alleged caching server infringements are not actionable and also fail for lack of proof**

In hopes of saving its case on summary judgment, ALS shifts focus and urges that it is not the foreign host server copies, but rather the alleged transitory copies stored on Cloudflare's cache servers, that provide a territorial anchor for its claims. Nowhere in any of its three complaints has ALS articulated such a theory — that temporary cache copies are the purportedly actionable direct infringements underlying its case.  This unpleaded claim should fail for that reason alone.  *See, e.g., Wady v. Provident Life & Accident Ins. Co. of Am.,* 216 F. Supp. 2d 1060, 1066-67 (C.D. Cal. 2002) (*citing Johnson v. Methodist Med. Center of Ill.*, 10 F.3d 1300, 1304-05 (7th Cir. 1993)) (plaintiff precluded from arguing an unpleaded alter ego theory to avoid summary judgment).  But even considering it, and evaluating these alleged copies independently,[7] the temporary cache copies are not actionable either.

As a preliminary matter, ALS takes issue with Cloudflare's use of the word "cache," and in hopes of distinguishing Cloudflare's favorable caching cases, accuses that Cloudflare might not be using the term "accurately."  Opp. at 10 n.2.[8] But ALS cannot conjure up a dispute just by saying so—it must proffer evidence that Cloudflare's caching functionality is legally and materially distinguishable from other caching functionalities found to be non-actionable fair uses under Ninth

---

never asserted *any* direct infringement claims against Cloudflare, SAC ¶¶ 61-63, presumably because such claims would be futile.  *See* Mot. at 8.

[7]    *See* Opp. at 13 (citing *Los Angeles News Servs. v. Reuters Television Int'l Ltd.*, 149 F.3d 987 (9th Cir. 1998)).

[8]    ALS itself has used the same "caching" term to describe Cloudflare's services, and did not seem confused by it then.  *See, e.g.*, SAC ¶ 5 ("Pirate websites or their hosts engage the services of content delivery networks, who cache a copy of a website"); Dkt. 51 (ALS Opp. to Mot. to Dismiss) at 4 ("Cloud[f]lare caches your content across our global network").

Circuit law.  ALS has failed to do so.  Cloudflare, on the other hand, has provided undisputed evidence that its cache servers are "computer memory with very short access time used for storage of frequently or recently used instructions or data."  *See* Guinn Decl. ¶ 9 (cache copies are stored for a "short period of time, typically a few hours" and stating that only files that are "frequently requested" are cached); *see also* Spillane Decl., Ex. A (Dkt. 133-1) (stating that cached files "are never more than a few hours old").  Cache files stored on Cloudflare's cache servers are just that—cache files—and ALS's halfhearted attempt to split technological hairs is unavailing.  ALS's references to browser caching versus Cloudflare's caching is a distinction without a difference—both types of caching are passive, automated computer functions which reduce latency, minimize bandwidth usage, and improve the functioning of the internet for all of its users.  *See* Guinn Decl. ¶ 6 (caching is "part of the infrastructure or backbone of the internet" and helps deliver data "quickly and efficiently"); *see also* Spillane Decl., Ex. F (Dkt. 133-6) ("Content delivery networks have been around for the last 15 years.  Nearly every large website on the Internet uses a CDN.")

ALS's caching server theory of liability fails for at least three reasons, as set forth below.

### 1.  Computer caching is an automated process lacking the required element of volitional conduct

The reason ALS avoided focusing its complaint on temporary caching as a direct infringement by the website operator is because such a claim would inevitably fail.  It is well-settled that computer caching is an automated, *non-volitional* process.  Just two months ago, the Ninth Circuit decisively confirmed that volitional conduct is a required element of a claim for direct copyright infringement, and the automatic distribution of internet content does not satisfy this element.  *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666-68 (9th Cir. 2017).  ALS does not even mention *Giganews* in its Opposition, despite the fact that it is recent, controlling Ninth

1    Circuit precedent involving a case originating from the Central District of

2    California.

3         There is no human act involved in a computer system's automated and

4    temporary caching (and purging) of user-requested content on caching servers.

5    Guinn Decl., ¶ 8.  ALS does not rebut Cloudflare's sworn declaration that caching

6    only occurs for "frequently requested files" (Guinn Decl. ¶ 9); instead ALS attaches

7    documents that similarly state caching depends on "(a) where most of [a website's]

8    visitors are coming from and which Cloud[f]lare datacenter they are hitting, and (b)

9    how may times those resources are requested at the specific datacenter."  Spillane

10   Decl., Ex. J (Dkt. 133-10).  Because the actual caching of a particular piece of

11   content is automated and highly variable, "Cloud[f]lare does not cache the same

12   resources for [a] site globally at every datacenter location."  *Id.*  ALS is wrong to

13   claim that website owners "undertook actions – volitional conduct – resulting in"

14   copyright infringement (Opp. at 9); it is the *visitor requests* of a website that

15   determine whether a particular piece of content will actually be cached, and where –

16   not the website operator.  Cloudflare, as an infrastructure provider, is yet another

17   link in the chain removed from ALS's complained-of conduct.[9]  Spillane Decl., Ex.

18   F (Dkt. 133-6).

19        As for ALS's suggestion that the website operator's act of signing up for

20   Cloudflare's web optimization and security services somehow provides the required

21   _____

22        [9]  ALS wrongly attempts to merge the analysis for direct and secondary
     infringement by using the same act—creating cache copies—as a basis for both its
23   direct and contributory claims.  Courts routinely reject efforts by plaintiffs to merge
     the analyses.  *See, e.g.*, *Robert Kubicek Architects & Assocs., Inc. v. Bosley,* No. 11-
24   CV-02112, 2012 WL 6554396, at *7 (D. Ariz. Dec. 14, 2012) (contributory claim
     based on direct infringers' conduct was "subsumed in the direct infringement
25   claim"); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 707 (2d Cir. 1998)
     (contributory claim against distributor of allegedly infringing CD-ROMs "bespeaks
26   direct infringement (a claim we have already rejected for other reasons) rather than
27   contributory infringement").

28

volitional element, that too fails because signing up for a service (1) plainly is not an act of infringement, and (2) does not lead to the caching of any particular piece of content – only visitor requests for content do that.  Further, it is the content uploader, not the website operator, who is the volitional actor and thus the direct infringer in ALS's scenario — and the uploader is not the Cloudflare customer.[10]  ALS must show sufficient volitional conduct *regarding acts of alleged infringement* so as to satisfy the "unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts."  *Giganews*, 847 F.3d at 666.[11]  It cannot do so with respect to cache copies on Cloudflare servers.

---

[10]   ALS attempts to concoct volitional conduct using inadmissible settlement communications with no bearing on the specific allegedly infringing acts at issue here.  ALS has repeatedly accused Cloudflare of refusing to reveal the identities of "primary hosts" of allegedly infringing content, referencing settlement discussions protected under Federal Rule of Evidence 408.  *See* SAC ¶ 38; Dkt. 51 (ALS Opp. to Cloudflare Mot. to Dismiss) at 6-7, 12; Opp. at 1, 4, 8-9; Spillane Decl. ¶ 15. The very context of these references make clear that ALS is improperly attempting to use these settlement discussions to bolster the merits of its case, which Rule 408 forbids.  Fed. R. Evid. 408.  In any event, ALS's settlement conversation with Cloudflare does nothing to bolster its opposition.  Even accepting this statement as true (which it is not) and considering it on the merits, it does not prove territoriality of the foreign infringements at issue here, nor that any domestic cache copies are somehow actionable as a volitional act.  Spillane Decl., Ex. G (Dkt. 133-7) § 11.  Because this alleged statement has no bearing on the location or nature of the alleged acts of infringement, it is immaterial on this motion.

[11]   The Ninth Circuit's *Giganews* decision, discussing the proper interpretation of *Netcom* in 2017, is far more illuminating more than ALS's characterizations of *Netcom* as permitting any liability where a defendant "takes actions" resulting in copies appearing on servers.  Other appellate courts interpreting *Netcom* require meaningful acts to sustain liability for operation of servers, acts which ALS has not provided evidence of here.  *See CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (Copyright Act "requires *conduct* by a person who causes in some meaningful way an infringement") (emphasis in original).

1   Because caching is an automated, non-volitional computer process, cache

2   copies do not provide an actionable basis for ALS's contributory claims against

3   Cloudflare.  *Giganews*, 847 F.3d at 669-670.

4   **2.   Infrastructure-level caching is a fair use**

5   ALS's claim for liability over cache copies fails for the additional reason that

6   automated caching is a fair use.  ALS's opposition does not address (let alone

7   dispute) this issue and thereby concedes it.  *Compare* Mot. at 8 (citing authority that

8   CDN cache copies are protected under the doctrine of fair use) *with* Opp. at 1-14

9   (making no mention of fair use).  This issue may be properly considered on

10  summary judgment because there are "no material, historical facts" at issue

11  regarding the functioning of Cloudflare's caching services.  *Seltzer v. Green Day,*

12  *Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013).

13  As Cloudflare explained in its moving papers,[12] the courts that have

14  considered copyright liability for computer caching have held it to be a fair use.  *See*

15  *Amazon.com*, 508 F.3d at 1169–70; *Rosen v. eBay, Inc.*, No. 13-CV-6801, 2015 WL

16  1600081, at *20-*21 (C.D. Cal. Jan. 16, 2015); *Field v. Google Inc.*, 412 F. Supp.

17  2d 1106, 1118 (D. Nev. 2006).  ALS omits any discussion of the fair use holding in

18  *Perfect 10 v. Amazon*, but there the Ninth Circuit held in clear terms that "cache

19  copying constitutes a fair use."  508 F.3d at 1170.  In conducting the analysis, the

20  court noted that making cache copies to "assist in accessing the Internet" was a

21  transformative use weighing in favor of fair use, that cache servers cache "no more

22

23  [12]   Though ALS has raised the issue of liability predicated on *cache* copies for

24  the first time in this case in its Opposition, the Court may properly consider and
    reject it on summary judgment.  *See* Fed. R. Civ. P. 56(f)(2) (describing issue

25  "independent" of motion as one based on a ground "not raised by a party"); *see also*

26  *Desales v. Woo*, 860 F. Supp. 1436, 1446 n.8 (N.D. Cal. 1994) ("Although
    defendants raised the qualified immunity issue in their opposition papers and not on

27  their own motion for summary judgment, it is appropriate to rule on the issue at this

28  point.").

1  than is necessary," to assist in internet access, that cache copies "enhance an

2  individual's computer use" and do not supersede the rights of copyright owners, and

3  that "automatic background copying has no more than a minimal effect on [a

4  copyright owner's] rights, but a considerable public benefit." *Id.* at 1169.

5      The record evidence shows that the same facts in *Amazon* are true for

6  Cloudflare's caching functionality: the copies are transformative, i.e. they are used

7  for the purpose of facilitating internet access by making websites faster and more

8  secure. *See* Spillane Decl., Ex. A (Dkt. 133-1), Guinn Decl. ¶ 3. Only "frequently

9  requested files," of "specific types" are cached, and Cloudflare's system "does not

10 store the permanent copies" but instead forbids users from using Cloudflare for

11 storage via its Terms of Service. Guinn Decl. ¶¶ 5, 9, Ex. A § 10; Spillane Decl.,

12 Ex. J (Dkt. 133-10) (Cloudflare "does not cache the same resources for [a] site

13 globally" because it only caches material when necessary). Cloudflare's security

14 and optimization enhance an individual user's use by making the websites they visit

15 less vulnerable to malicious actors and delivering requested content over a shorter

16 distance. Further, and most critically, cache copies do not supersede ALS's

17 exploitation of its works in any way. Cache copies are simply mirror copies

18 reflecting the contents of other websites; they are not separately viewable, usable or

19 marketable. *See* Guinn Decl. ¶ 6. If Cloudflare's service did not exist, visitors to

20 the websites at issue would still type the same website URL into their browser, the

21 URL would be resolved to the host server IP address by a nameserver, and the

22 content of a particular webpage, including images, would still load on the user's

23 screen. Stated another way, no internet user who would not otherwise view the

24 images at issue straight from the host server would view the temporarily cached

25 copies either. From all perspectives, cache copies are indistinguishable and

26 imperceptible to users. The fact that internet infrastructure services like Content

27 Delivery Networks exist and engage in automatic temporary copying "has no more

28

than a minimal effect on [ALS Scan's] rights, but a considerable public benefit." *Amazon*, 508 F.3d at 1169.

As Judge Fitzgerald held in *Rosen v. eBay*—another case ALS ignores in its Opposition, despite the fact that it is from this judicial district and is directly on point—the "widespread use of CDNs" like Cloudflare "is a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally." 2015 WL 1600081, at *21. CDNs cause "only minor and wholly incidental copying" and are part of the "basic internet architecture" that have "trivial copyright-related effects" and thus, "fall[] within the protections of the fair use doctrine." *Id.* at *20; *see also* Spillane Decl. Ex. F ("Content delivery networks have been around for the last 15 years. Nearly every large website on the Internet uses a CDN.").

### 3.   ALS's caching server infringement theory fails for lack of proof

ALS's caching server theory fails for a third reason—lack of proof. In opposition, ALS offers the Penn declaration as its only evidence that any specific ALS images actually are cached (somewhere) on Cloudflare servers. But Penn's declaration shows only, at best, the caching of just seven images—one image on each of seven of the fourteen websites at issue in Cloudflare's motion:

| WEBSITE | ALS EVIDENCE OF CLOUDFLARE CACHING? |
|---|---|
| Bestofsexpics.com | One cached image  (Penn Decl. Ex. 1) |
| Greenpiccs.com | One cached image  (Penn Decl. Ex. 4) |
| Img.yt | One cached image  (Penn Decl. Ex. 5) |
| Imgchili.net | One cached image  (Penn Decl. Ex. 6) |

| WEBSITE | ALS EVIDENCE OF CLOUDFLARE CACHING? |
|---|---|
| Imgsen.se | One cached image  (Penn Decl. Ex. 8) |
| Slimpics.com | One cached image  (Penn Decl. Ex. 13) |
| Stooorage.com | One cached image  (Penn Decl. Ex. 14)[13] |
| fboom.me | NO EVIDENCE of any Cloudflare caching filed by ALS |
| imgflash.net | NO EVIDENCE of any Cloudflare caching filed by ALS |
| imgspice.com | NO EVIDENCE of any Cloudflare caching filed by ALS |
| imgspot.org | NO EVIDENCE of any Cloudflare caching filed by ALS |
| imgtrex.com | NO EVIDENCE of any Cloudflare caching filed by ALS |
| pornwire.net | NO EVIDENCE of any Cloudflare caching filed by ALS |
| vipergirls.to | NO EVIDENCE of any Cloudflare caching filed by ALS |

Moreover, this evidence does not help ALS Scan demonstrate a territorial alleged infringement, because none of these seven images is cached within the United States.  Specifically, the Redbot reports proffered by ALS Scan reflect that these seven images were cached on Cloudflare data center servers in Sydney, Australia.  *See* Penn Decl. ¶¶ 5, 6, 8, 9, 10, 12, 17, and Exs. 1, 2, 4, 5, 6, 8, 13; Declaration of Kenneth Carter ¶ 7.  Thus, even assuming the legal viability of ALS's domestic caching server theory (for which it fails to cite even a single

---

[13]  Of all of ALS Scan's evidence in the above chart, only one exhibit – Exhibit 14 – was produced to Cloudflare in discovery in this action.  Kassabian Decl. ¶ 2.

1  supporting case), it fails for lack of proof.  Cloudflare's motion for partial summary

2  judgment as to the 14 websites should be granted for this additional reason.[14]

3  **II.  ALS'S "DOMESTIC IMPACT" THEORY OF TERRITORIALITY**
   **FAILS AS A MATTER OF LAW**
4

5         ALS repeatedly contends, without legal citation, that its contributory claims

6  should survive this motion because the underlying direct infringements, even if

7  extraterritorial, have domestic "infringing consequences" or "impact."  *See* Opp. at

8  1, 7, 8, 9.  But in *Subafilms*, the Ninth Circuit squarely rejected this precise

9  argument:  holding that United States copyright laws *do not extend* to

10 "extraterritorial acts of infringement [even] when such acts result in adverse effects

11 within the United States."  24 F.3d at 1095.  Despite the copyright owner's

12 "contention that failure to apply the copyright laws extraterritorially in this case will

13 have a disastrous effect on the American film industry, and that other remedies, such

14 as suits in foreign jurisdictions or the application of foreign copyright laws by

15 American courts, are not realistic alternatives," the Ninth Circuit was "not

16 persuaded by Appellees' parade of horribles."  *Id.*  ALS's identical argument here is

17 likewise foreclosed.[15]

18 _____

19    [14]   Nor does ALS need any opportunity to try to round up more evidence before
   dismissal is appropriate — just four days ago ALS's counsel confirmed to
20 Defendants and represented to this Court that "We have produced everything we
   intend to rely on" in this case.  *See* Kassabian Decl. Ex. B (3/13/17 Hearing Tran., at
21 5:17-18); *see also* Dkt. 136 (Plaintiff's 3/10/17 Statement Re Scheduling
   Conference) at 1 ("ALS has produced all existing page captures showing infringing
22 ALS images on the sites in question.").
23

24    [15]   ALS asked the Court to delay its ruling on Cloudflare's motion pursuant to
   Rule 56(d), to give ALS the opportunity to "review Cloudflare's entire document
25 production and complete the Cloudflare deposition" because, per ALS's counsel,
   "[m]y hope is that … between those [unspecified] documents and the admissions in
26 Cloudflare's [deposition] testimony, there is enough to identify triable issues of
   material fact."  Spillane Decl., ¶ 16.  While this is a textbook example of what a
27 Rule 56(d) request should <u>not</u> look like, Cloudflare will not address the substance of
   (continued)
28

1

## <u>CONCLUSION</u>

2      For the foregoing reasons, Cloudflare respectfully requests that the Court

3 grant its Motion for Partial Summary Judgment Regarding Extraterritoriality.

4

5 Dated:  March 16, 2017                 Respectfully submitted,

6                                        QUINN EMANUEL URQUHART &
                                         SULLIVAN LLP
7

8

9 By_____

10                                       Rachel Kassabian
                                         *Attorney for Defendant Cloudflare, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 ALS's Request on reply, because on March 15, 2017, the Court issued a text-only

28 minute order denying ALS's request.  *See* Dkt. 142.