S. Michael Kernan, Esq. State Bar No. 181747
mkernan@kernanlaw.net
R. Paul Katrinak, State Bar No. 164057
pkatrinak@kernanlaw.net
Ryan E. Carreon, State Bar No. 311668
rcarreon@kernanlaw.net
KERNAN LAW FIRM
9663 Santa Monica Blvd. Suite 450
Beverly Hills, CA 90210
310-490-9777

Attorneys for Defendant
DOLPHIN MEDIA LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>CLOUDFLARE, INC., a Delaware corporation; OVH SAS, a French corporation; HEBERGEMENT OVH INC., a Québec provincial corporation; DOLPHIN MEDIA LTD., a Hong Kong company; HIVELOCITY VENTURES CORPORATION, a Florida corporation; STEADFAST NETWORKS, LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>     Defendants. | Case No: 2:16-cv-05051-GW-AFM<br><br>**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO SUPPLEMENTAL EVIDENCE AND ARGUMENT FROM PLAINTIFF FOR NATIONAL JURISDICTION UNDER FRCP R. 4(K)(2)**<br><br><u>Filed and Served Concurrently</u>:<br><br> 1. Declaration of Tomas Mazal<br> 2. Objections<br><br>Judge:    Hon. George H. Wu<br>Courtroom:  9D<br>Hearing Date:  TDB<br><br>Complaint Filed: July, 11, 2016 |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION.........................................................................................1

II.  PLAINTIFF HAS NO BASIS FOR SPECIFIC JURISDICTION UNDER

RULE 4(K)(2) ...........................................................................................3

   A.   None of the alleged contacts are expressly aimed at the United States.......... 4

   B.   The alleged Playboy, Penthouse and Hustler photos are irrelevant ............... 8

   C.   Under the principles of extraterritoriality, Dolphin's "contacts" with United

States are not related to Plaintiff's causes of action. ............................................ 8

   D.   Liability alone does not substitute for personal jurisdiction........................ 10

III. IN THE ALTERNATIVE DOLPHIN SHOULD BE DISMISSED FOR

FORUM NON CONVENIENS ........................................................................ 10

IV.  CONCLUSION ........................................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**

*Amini Innovation Corp. v. JS Imports, Inc.,* 497 F.Supp.2d 1093, 1104 (C.D. Cal. 2007) ................................................................................................ 2, 3, 6, 7

*Asahi Metal Indus. Co. v. Superior Court of Cal*., 480 U.S. 102, 112 (1987) .......... 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ........................... 3, 7, 9

*Go-Video, Inc. v. Akai Electric Co.,* 885 F.2d 1406, 1413 (9th Cir.1989) ............. 11

*Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984) ............. 9

*Kramer Motors, Inc. v. British Leyland, Ltd*., 628 F.2d 1175, 1178 (9th Cir. 1980). 5

*Lake v. Lake*, 817 F. 2d 1416, 1421 (9th Cir. 1987) ................................................. 5

*Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, 2008 WL 5412431 at *4 (C.D. Cal. Dec. 29, 2008) ................................................................................ 6

*Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008) .................................................................................................................. 10

*Loral Terracom v. Valley National Bank*, 49 F.3d 555, 561 (9th Cir. 1995)............ 9

*Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008).......... 10

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)........................... 5

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-62 (9th Cir. 2007) . 3, 10

*Perfect 10, Inc. v. Yandex N.V.,* 962 F. Supp. 2d 1146, 1157 (C.D. Cal. 2013) ..... 10

*Sher v. Johnson,* 911 F.2d 1357, 1365–66 (9th Cir.1990) ...................................... 11

*Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1144 (N.D. Cal. Aug., 2011) ........ 10

*Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1094, 1098 (9th Cir. 1994) .................................................................................................................. 10

*Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985).. 11, 12, 13

**Statutes**

17 U.S.C. § 512(c)(3) ............................................................................................... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff's latest offer of proof of nationwide contacts sufficient to invoke jurisdiction pursuant to Federal Rules of Civil Procedure, Rule 4(k)(2) suffers from the same incurable infirmities as Plaintiff's original Opposition. Namely, the additional contacts either do not arise out of the instant lawsuit, are completely irrelevant, or are not expressly aimed at the United States.

Underscoring the meritless nature of Plaintiff's additional "facts" are Plaintiff's paper-thin allegations that "[d]espite being a Hong Kong company, imgchili.net is entirely in English," and that "Dolphin pays for page views in amounts denominated by U.S. dollars." Supplemental Opposition pg. 3.

First, English is the official language of 67 countries and 27 non-sovereign entities including Hong Kong, the very county in which Defendant Media Ltd. (hereinafter "Dolphin") is located. Mazal Decl. ¶5. The fact that Dolphin, a Hong Kong entity, chose to publish its website in one of Hong Kong's official languages is hardly indicative of contacts expressly aimed at the United States.

Second, using U.S. Dollars as a denomination does not prove that Dolphin expressly aimed itself at the United States. Indeed, it is because the U.S. Dollar is the widely used cross the globe that Dolphin uses it for its transactions. Mazal Decl. ¶6.

Regardless, Plaintiff has provided no evidence that Dolphin ever paid anyone in the United States, and in fact Dolphin has never paid a U.S. based user. Mazal Decl. ¶14; *See, Amini Innovation Corp. v. JS Imports, Inc.,* 497 F.Supp.2d 1093, 1104 (C.D. Cal. 2007) (no purposeful availment because "[defendant] never completed any transactions through the website, with California residents or anyone else.").

Third, Plaintiff argues that, as part of its Affiliate Program, "Dolphin pays by far the most money -- $4.50 per 1000 views – for traffic from [countries in] 'Zone A,'" which includes the United States. Opposition at pg. 3-4. Plaintiff acknowledges that "Zone A" also includes "other English first world countries." The rates in Zone A are not keyed to the Unites States in particular, but rather all the countries listed in that particular "Zone." Mazal Decl. ¶9.

Regardless, Plaintiff has provided no evidence that Dolphin has ever paid anyone in the United States, and in fact Dolphin has never paid a U.S. based user as part of its Affiliate Program. Mazal Decl. ¶14; *See, Amini Innovation Corp. v. JS Imports, Inc.,* 497 F.Supp.2d 1093, 1104 (C.D. Cal. 2007) (no purposeful availment because "[defendant] never completed any transactions through the website, with California residents or anyone else.").

Additionally, Plaintiff's attempts to use Alexa to present unfounded and wholly speculative web traffic statistics is unavailing. It is well established that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In that sense, unilateral web traffic generated by third party Internet users based in the United States is not indicative that Dolphin expressly aimed any alleged infringement at the United States. Also, mere viewing of a web page, which is what Alexa allegedly tracks, is patently insufficient for personal jurisdiction. The issue is the location of the servers for copyright infringement, not where some third party is viewing a webpage. *See, Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-62 (9th Cir. 2007) ("[I]t is the website publisher's computer, rather than [the search engine's] computer, that stores and displays the infringing image.").  Here, the servers are based in Europe, which would have jurisdiction, not the United States. Mazal Decl. ¶4.

Finally, Plaintiff makes the highly misleading contention that "Dolphin seeks the protection of U.S. laws" because the phrase "Copyright © 2011-2017 imgChili. All rights reserved" is displayed on imgchili.net. and because imgchili.net's "Abuse" page contains "all of the elements required under the DMCA." Opposition at pg. 4.  The term and principles of Copyright and the © symbol are not exclusive to the United States and are therefore not indicative of purposeful availment. As previously articulated in Dolphin's original Motion and the accompanying Request for Judicial Notice, Hong Kong has its own Copyright Statute, and the Bern Convention provides copyright protection to all of it 172 signatory countries. Ironically, the United States ceased use of the © symbol when it joined the Berne Convention effective March 1, 1989.

Finally, the fact that the information imgchili.net's "Abuse" page contains information that meets the element required under the DMCA is not in and of itself indicative of purposeful availment. Plaintiff has cited to no webpage specifically referencing the DMCA or showing that Dolphin has agreed to abide by or be bound by United States law.

Therefore, Dolphin respectfully requests that the Court dismiss it from this action.

## II.   PLAINTIFF HAS NO BASIS FOR SPECIFIC JURISDICTION UNDER RULE 4(K)(2)[1]

The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one difference: rather than considering contacts between Dolphin and the forum state (California), the Court considers contacts with the nation as a whole. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) ("The due process analysis is identical to the one discussed above when

---

[1] In its February 27th tentative ruling, the Court stated that it "would consider allowing Plaintiff to submit supplemental briefing regarding whether Dolphin has sufficient contacts with the United States as a whole to warrant the exercise of specific jurisdiction. In doing so, Plaintiff would have to make a prima facie showing that Dolphin purposefully directed its infringing activities at the Unites States and that its claims arise out of or relate to Dolphin's forum-related activities." Ruling at pgs. 9-10.

3

the forum was California, except here the relevant forum is the entire United States.").

Specific jurisdiction arises out of a defendant's activities or contacts in the forum state, which, in contrast to the contacts required to establish general jurisdiction, <u>must be related to the cause of action being litigated</u>. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F. 2d 1416, 1421 (9th Cir. 1987)) (emphasis added). To support an exercise of specific jurisdiction, Dolphin must have minimum contacts with the United States that show it has personally and purposefully availed itself of the privileges of conducting activities related to Plaintiff's claims within the United States. See, *Ibid.*

### A. None of Dolphin's alleged contacts are expressly aimed at the United States

While courts have recognized that exclusively foreign acts can confer jurisdiction where the effects are felt in the forum state, the Ninth Circuit recognizing that the "foreign-acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context."  *See, Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (quotation and citation omitted).

The express aiming requirement is not satisfied where it is merely foreseeable that there will be an impact on individuals in the forum. *Pebble Beach*, 453 F.3d at 1156; *Schwarzenegger*, 374 F.3d at 805. Indeed, a defendant's awareness that the stream of commerce may or will sweep his service or product into the forum State does not convert the mere act of placing the service or product into the stream into an act purposefully directed toward the forum State. *See, Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987).

In the context of Internet websites, "[t]he mere maintenance of an interactive website, without consummated commercial activity, is not sufficient to establish

SUPPLEMENTAL REPLY IN SUPPORT OF LACK OF JURISDICTION UNDER RULE 4(k)(2)

specific jurisdiction." *Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, 2008 WL 5412431 at *4 (C.D. Cal. Dec. 29, 2008).

Here, Plaintiff has not produced any evidence that Dolphin has expressly aimed its website at the United States. Regardless, Dolphin has never remitted payment to any user located in the United States. Mazal Decl. ¶14; *See, Amini Innovation Corp. v. JS Imports, Inc.,* 497 F.Supp.2d 1093, 1104 (C.D. Cal. 2007) (no purposeful availment because "[defendant] never completed any transactions through the website, with California residents or anyone else.").

Plaintiff claims that that "[d]espite being a Hong Kong company, imgchili.net is entirely in English," and that "Dolphin pays for page views in amounts denominated by U.S. dollars." Supplemental Opposition pg. 3.

First, English is the official language of 67 countries and 27 non-sovereign entities including Hong Kong, the very country in which Dolphin is located. See Mazal Decl. ¶5. The fact that Dolphin, a Hong Kong entity, chose to publish it website in one of Hong Kong's official languages is hardly indicative of contacts expressly aimed at the United States.

Second, using U.S. Dollars as a denomination does not prove that Dolphin expressly aimed its activities at the United States. Indeed, the U.S. Dollar is the most widely used currency in the world, and in addition to the United States, 10 other countries have adopted the U.S. Dollar as their sole official currency, and approximately 30 additional countries accept the U.S. Dollar as legal tender. It is because of its wide spread use that Dolphin has chosen to use the U.S. Dollar for its transactions. Mazal Decl. ¶6.

Third, Plaintiff argues that, as part of its Affiliate Program, "Dolphin pays by far the most money -- $4.50 per 1000 views – for traffic from [countries in] 'Zone A,'" which includes the United States. Opposition at pg. 3-4. This too is not indicative of express aiming. Plaintiff acknowledges that "Zone A" also includes

SUPPLEMENTAL REPLY IN SUPPORT OF LACK OF JURISDICTION UNDER RULE 4(k)(2)

"other English first world countries." As part of Dolphin's Affiliate Program, every country in the world is assigned to a particular "Zone" with predetermined rates based on all the countries in that particular "Zone." Mazal Decl. ¶9.

The rates in Zone A are not keyed to the Unites States in particular, but rather all the countries listed in that particular "Zone." Mazal Decl. ¶9. The industry payout rates for "English first world countries" is generally higher than other areas, which is why that particular Zone has an increased payout. Mazal Decl. ¶9. However, in "Zone A" Dolphin's payouts are comparatively low. Mazal Decl. ¶9.

Regardless, Plaintiff has provided no evidence that Dolphin has ever paid anyone in the United States, and in fact Dolphin has never paid a U.S. based user as part of its Affiliate Program. Mazal Decl. ¶14; *See, Amini Innovation Corp. v. JS Imports, Inc.,* 497 F.Supp.2d 1093, 1104 (C.D. Cal. 2007) (no purposeful availment because "[defendant] never completed any transactions through the website, with California residents or anyone else.").

Additionally, Plaintiff's attempts to use Alexa to present unfounded and wholly speculative web traffic statistics is unavailing. It is well established that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). In that sense, unilateral web traffic generated by third party Internet users based in the United States is not indicative that Dolphin expressly aimed any alleged infringement at the United States.

As for the statistics, Alexa itself recognizes that its statistics are prone to certain biases.[2] Additionally, on February 14, 2017, Alexa issued a press release

---

[2] https://support.alexa.com/hc/en-us/articles/200461920-Are-there-known-biases-in-Alexa-s-traffic-data-

SUPPLEMENTAL REPLY IN SUPPORT OF LACK OF JURISDICTION UNDER RULE 4(k)(2)

stating that a significant number of the metrics used to compile its web rankings and statistics had been manipulated for a significant number of websites.[3]

Finally, Plaintiff makes the highly misleading contention that "Dolphin seeks the protection of U.S. laws" because the phrase "Copyright © 2011-2017 imgChili. All rights reserved" is displayed on imgchili.net. Opposition at pg. 4. Additionally, Plaintiff makes the specious argument that imgchili.net's "Abuse" page contains "all of the elements required under the DMCA." *Ibid.*

The term and principles of Copyright and the © symbol are not exclusive to the United States and are therefore not indicative of purposeful availment. See Mazal Decl. ¶7. As previously articulated in Dolphin's original Motion and the accompanying Request for Judicial Notice, Hong Kong has its own Copyright Statute, and the Bern Convention provides copyright protection to all of it 172 signatory countries. Ironically, the United States ceased use of the © symbol when it joined the Berne Convention effective March 1, 1989.

Finally, the fact that the information imgchili.net's "Abuse" page contains information that meets the element required under the DMCA is not in and of itself indicative of purposeful availment. Plaintiff has cited to no webpage specifically referencing the DMCA or showing that Dolphin has agreed to abide by or be bound by United States law. Indeed, the elements of a DMCA request codified in 17 U.S.C. § 512(c)(3), includes information that would be necessary for any website to successfully combat infringement, whether in the United States or not, including identification of the copyrighted work claimed to have been infringed, information regarding where it is located, and contact information for the party making the request. See 17 U.S.C. § 512(c)(3) (ii)-(iv). The fact that Dolphin engages in good practices related to combating infringement should not subject it to personal jurisdiction in a foreign court.

---

[3] http://blog.alexa.com/alexa-global-traffic-metrics-update/

SUPPLEMENTAL REPLY IN SUPPORT OF LACK OF JURISDICTION UNDER RULE 4(k)(2)

**B.      The alleged Playboy, Penthouse and Hustler photos are irrelevant**

Contacts with a forum state are relevant for purposes of specific jurisdiction only if they are sufficiently related to the cause of action. *See, Loral Terracom v. Valley National Bank*, 49 F.3d 555, 561 (9th Cir. 1995). A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must "arise out of or relate to" at least one of defendant's contacts with the forum." *Burger King,* 471 U.S. at 472. In other words, the Court's inquiry must focus on the direct causal relationship among "the defendant, the forum, and the litigation." *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984).

Underscoring the insufficiency of Plaintiff's "evidence," Plaintiff once again has attempted to pass off wholly irrelevant materials to "prove" that jurisdiction is proper in this case. Neither Playboy, Penthouse nor Hustler are parties to the instant lawsuit, and Plaintiff has not shown how any alleged contacts with them arises out of or is in any way related to Plaintiff's claims. Plaintiff has provided no evidence as to the ownership of the alleged Playboy, Penthouse and Hustler photos. Just as Plaintiff cannot prove who owns those photos, Plaintiff cannot establish that those photos are being used without permission on Dolphin's website.

**C.      Under the principles of extraterritoriality, Dolphin's "contacts"
with United States are not related to Plaintiff's causes of action.**

Additionally, Plaintiff attempts to premise jurisdiction on Dolphin's alleged contract with Cloudflare and alleged use of "[C]loudflare servers" to host the content on Dolphin's website, despite the fact that has been conclusively debunked by previously filed declarations from Cloudflare, (See Docket # 109, Declaration Justin Paine In Support of ALS Scan's Application to Seal Cloudflare Customer and Business Record ¶ 10). According to Plaintiff, both Cloudflare and the alleged servers are located in California. If Dolphin's alleged contract with Cloudflare and

8

use of California based servers were sufficient to confer jurisdiction, Dolphin would be subject to jurisdiction in California under a regular personal jurisdiction inquiry and thus would not be within the reach of Rule 4(k)(2).

Regardless, the well recognized principles of extraterritoriality preclude a finding of any infringement related contacts under the facts presented.

As explained in the Ninth Circuit's seminal *Subafilms* case: "United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1094, 1098 (9th Cir. 1994) (copyright protection extends "no farther than the [United States'] borders."); *see also, Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 988 (9th Cir. 2008) (The Copyright Act "presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States."). Thus, a claim for copyright infringement is not actionable unless the plaintiff establishes that the act of direct infringement occurred domestically. *See, e.g., Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1144 (N.D. Cal. Aug., 2011) (finding *Litecubes* "well-reasoned and persuasive" and holding extraterritoriality to be "an element of claim for copyright infringement").

In the context of alleged infringement on the internet, the Ninth Circuit's well-established "server test" recognizes that an infringement "takes place" at the location of the computer responsible for hosting the allegedly infringing content. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-62 (9th Cir. 2007) ("[I]t is the website publisher's computer, rather than [the search engine's] computer, that stores and displays the infringing image."). Thus, where an allegedly infringing website is hosted on a server located outside the United States, no claim for direct infringement under the U.S. Copyright Act lies. *Perfect 10, Inc. v. Yandex N.V.,* 962 F. Supp. 2d 1146, 1157 (C.D. Cal. 2013) ("Yandex's hosting of

9

full-sized Perfect 10 images on servers in Russia does not constitute direct copyright infringement in the United States.").

In this case, Dolphin has been accused of various forms of direct infringement. All of Dolphin's servers, which ostensibly host the allegedly infringing photographs, are all located outside the United States. Mazal Decl. ¶4. Because Plaintiffs claim for direct infringement only arises in the geographic location of Dolphin's servers (in this case Europe) any contacts "arising out of" the infringement claims would also occur in Europe, not the United States.

### D.     Liability alone does not substitute for personal jurisdiction

Even if Dolphin would be liable for direct infringement, Plaintiff may not use liability as a substitute for personal jurisdiction. Liability is not to be conflated with amenability to suit in a particular forum. *See, Sher v. Johnson,* 911 F.2d 1357, 1365–66 (9th Cir.1990) ("Liability and jurisdiction are independent."). Personal jurisdiction has constitutional dimensions, and regardless of policy goals, Congress cannot override the due process clause, the source of protection for non-resident defendants. *See, Go-Video, Inc. v. Akai Electric Co.,* 885 F.2d 1406, 1413 (9th Cir.1989).

## III.     IN THE ALTERNATIVE DOLPHIN SHOULD BE DISMISSED FOR FORUM NON CONVENIENS

In its original Motion, Dolphin raised the argument that, in the alternative, Dolphin should be dismissed under the doctrine of *Forum Non Conveniens*, as Hong Kong would be a suitable forum to bring the instant suit.[4]

In Opposition, Plaintiff, citing *Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985), argued that in order for a dismissal under *Forum Non Conveniens* to be appropriate, all defendants must be amenable to process in

---

[4] In its tentative ruling, the Court stated that it was inclined to grant Dolphin's Motion to Dismiss for lack of personal jurisdiction, and thus did not need to consider the merits of Dolphin's alternate *Forum Non Conveniens* argument. Because the court raised the possibility of Rule 4(k)(2) jurisdiction *sua sponte,* if the Court is inclined to find jurisdiction under Rule 4(k)(2), Dolphin respectfully requests that the Court also reconsider the *Forum Non Conveniens* argument raised in the original Motion.

the foreign jurisdiction. *Watson* actually stands for the proposition that dismissal of an individual defendant who is amenable to process in the alternative forum is proper even where the other defendants are no amenable to process in the foreign jurisdiction. Thus, under *Watson*, it would be proper to dismiss Dolphin, who is clearly subject to jurisdiction in Hong Kong, even if it would not be proper to dismiss the other Defendants over whom it is unclear whether Hong Kong has jurisdiction.

In *Watson,* the foreign plaintiffs sued the pharmaceutical company, Merrell, for products liability and added two of its employees as defendants--a supervisor of testing and a medical director. When the pharmaceutical company moved to dismiss the foreign plaintiffs' claims, it was not clear that the proposed foreign court would have jurisdiction over the individual defendants, and the individuals had not consented to appear in a foreign court. *Id*. at 356-57.

The district court granted the company's motion to dismiss as to all defendants because Merrell was the "primary defendant," and the plaintiffs would not be deprived "of a meaningful opportunity to pursue their claims" even without the individual defendants appearing abroad. *Id.* at 357. The Sixth Circuit affirmed the dismissal of Merrell.

The gravamen of the Complaint is various forms of copyright and trademark infringement.[5] First, the Complaint Plaintiff characterizes Dolphin as owning and operating "the most egregious pirate site averred herein." Complaint ¶ 40. Second, Dolphin is the only Defendant accused of direct infringement. Complaint ¶ 63-65, 73-78. All other Defendants are accused of secondary and vicarious infringement, ostensibly arising out of Dolphins alleged direct infringement. Thus, as the purported "most egregious" infringer and as the only party accused of direct

---

[5] At the time of Dolphin's original Motion to Dismiss, Plaintiff's Second Amended Complaint was the operative pleading. On March 20, 2017, Plaintiff filed and served by email the Third Amended Complaint which contained no material changes to the allegations against Dolphin. All citations in this section are to the Third Amended Complaint.

SUPPLEMENTAL REPLY IN SUPPORT OF LACK OF JURISDICTION UNDER RULE 4(k)(2)

infringement in an action premised wholly on infringement, Dolphin could rightfully be considered the "primary defendant." Plaintiffs, therefore, would not be deprived on a meaningful opportunity to pursue their claims in Hong Kong. *See, Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985).

As explained in the original Motion, various treaties render Hong Kong as a suitable forum in which Plaintiff can fully prosecute its claims for Trademark and Copyright infringement against Dolphin.

Thus, in contrast to Plaintiff's argument, the doctrine of *forum non conveniens* may be invoked even if some of the defendants are not amenable to the jurisdiction of the foreign court.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Dolphin Media Ltd. respectfully request that the Court grant its Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction and/or improper venue, or in the alternative, dismiss based on *forum non conveniens*. A suitable alternative forum exists, this forum is inconvenient for the parties, and California has no interest in the resolution of this dispute while the alternative forum does have such an interest.

DATED: March 30, 2017                    THE KERNAN LAW FIRM


                                         By: _/s/ S. Michael Kernan_____
                                              S. Michael Kernan
                                              Attorney for Defendant
                                              Dolphin Media Limited