UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-5051-GW(AFMx) | Date | April 13, 2017 |
|---|---|---|---|
| Title | *ALS Scan, Inc. v. Cloudflare, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Sandra MacNeil | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jay M. Spillane | Rachel H. Kassabian - by telephone |
| | John L. Ambrogi - by telephone |

**PROCEEDINGS:** CLOUDFLARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING EXTRATERRITORIALITY [121];

STATUS CONFERENCE

The Court's Ruling following Supplemental Briefing re Dolphin Media, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction [93] is circulated and attached hereto. For reasons stated on the record, Defendant Dolphin's Motion is placed back on calendar for May 4, 2017 at 8:30 a.m.

Defendant Cloudflare's Motion for Partial Summary Judgment is continued to May 4, 2017 at 8:30 a.m. Plaintiff will have until April 20, 2017 to file its offer of proof. Defendant will respond by April 27, 2017.

|  | : | 06 |
|---|---|---|
| | Initials of Preparer | JG |

*ALS Scan, Inc. v. Cloudflare, Inc., et al.*, Case No. CV-16-5051-GW (AFMx)
Ruling following Supplemental Briefing re Dolphin Media, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction

On February 27, 2017, the Court issued a Tentative Ruling and held a hearing regarding Defendant Dolphin Media Limited's ("Dolphin") Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, or in the Alternative, Forum Non Conviens. *See* Tent. Ruling, Docket No. 117. The Court held that Plaintiff had failed to establish a prima facie case of general or specific jurisdiction over Dolphin in California, but allowed Plaintiff to submit supplemental briefing regarding whether Dolphin has sufficient contacts with the United States as a whole to warrant the exercise of specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2). *Id.* at pages 9-10. Now pending before the Court are the parties' supplemental briefs. *See* Pl.'s Supp'l Br., Docket No. 138; Dolphin's Supp'l Br., Docket No. 158.

Under Rule 4(k)(2),"[e]ven in the absence of a federal statute authorizing nationwide service, foreign defendants who are not otherwise subject to jurisdiction in any state but who have contacts *with the nation as a whole* ('national contacts') are subject to personal jurisdiction on *claims arising under federal law*." Schwarzer, Tashima, et al., Cal. Prac. Guide Fed. Civ. Proc. Before Trial (2016) § 3:33:5, at 3-15 (citing Fed. R. Civ. Proc. 4(k)(2); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *Holland Am. Line Inc. v. Wartsila North Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297-98 (Fed. Cir. 2009)). To "establish personal jurisdiction based on a defendant's aggregated national contacts, plaintiff must prove three factors: the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; the claim arises under federal law; and the federal court's exercise of personal jurisdiction comports with due process." *Id.* § 3:35:5b, at 3-16 (internal quotation marks and citations omitted).

"The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the defendants and the forums state, we consider contacts with the nation as a whole." *See Pebble Beach*, 453 F.3d at 1155 (internal quotations and citations omitted). As discussed in the Court's Tentative Ruling, the Ninth Circuit utilizes the following three-prong test to analyze

1

whether specific jurisdiction[1] exists, of which Plaintiff bears the burden of establishing the first two prongs: (1) whether Dolphin purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities in the forum; (2) whether Plaintiff's claims arise out of Dolphin's forum-related activities; and (3) whether the exercise of jurisdiction is reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Where a defendant "has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework'" in determining whether jurisdiction exists. *Mavrix Photo v. Brand Techs.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Schwarzenegger*, 374 F.3d at 802). Thus, whether nationwide jurisdiction exists "depends on whether [Dolphin's infringing] actions were purposefully directed at the [United States]." *Id.* at 1159; *see also Pebble Beach*, 453 F.3d at 1159 ("Even if [plaintiff] is unable to show purposeful direction as to California, [plaintiff] can still establish jurisdiction if [defendant] purposefully directed his action at the United States."). Purposeful direction is analyzed pursuant to the "effects" test outlined in *Calder v. Jones*, 465 U.S. 763 (1984), which "requires that 'the defendant allegedly must have (1) committed an intentional act, (2) ***expressly aimed*** at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *See Mavrix Photo*, 647 U.S. at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)) (emphasis added).

In its Supplemental Brief, Plaintiff contends that Dolphin maintains the following contacts with the United States, which purportedly establish that it expressly aims its infringing acts at the United States:

- Dolphin maintains an interactive website named "imgchili.net" that allows customers worldwide, including U.S. customers, to register for an account.
- Imgchili.net account holders may sign up to receive their payments from Dolphin[2] through PayPal, a company headquartered in California.
- The imgchili.net website is retrieved from storage servers that are maintained by

---

[1] Plaintiff has not attempted to establish that Dolphin is subject to general jurisdiction within the United States, nor would it succeed on such an argument based on the proffered contacts Dolphin maintains with the United States. *See Holland Am. Line*, 485 F.3d at 462 (requiring "extensive contacts" with the United States to warrant general jurisdiction under Rule 4(k)(2)).

[2] As explained by Plaintiff, Dolphin pays account holders for page views of images uploaded by those account holders to imgchili.net, including infringing copyrighted material. *See* Pl.'s Supp'l Br. at 1:9-13.

- Cloudflare, a company headquartered in California.
- Imgchili.net enables account holders to upload content stolen form U.S. copyright owners, including Playboy, Penthouse, Hustler, and Plaintiff.
- The imgchili.net website is entirely in English.
- Dolphin pays account holders for page views in amounts denominated by U.S. dollars.
- Dolphin pays the most amount of money – $4.50 per 1,000 page views – for page views that occur in countries listed in "Zone A"; Zone A countries include the United States, Australia, Canada, New Zealand, and the United Kingdom.
- Dolphin purportedly seeks "the protection of U.S. laws" because it utilizes a copyright reservation that states the following: "Copyright © 2011-2017 imgchili."
- Imgchili.net's "Abuse" page instructs parties notifying Dolphin of infringement that their infringement notifications must contain certain elements, which are also elements required under the Digital Copyright Millennium Act ("DCMA"), 17 U.S.C. § 512(c)(3).
- According to a technology service that provides statistics indicating the number of website visits a given website receives from each country, the United States accounts for 10% of the total visits to imgchili.net.

*See* Pl.'s Supp'l Br. at 1:6-4:16; *see also* Decl. of Eric Penn ("Penn Decl."), Docket No. 139.

Plaintiff asserts that the above contacts establish that "Dolphin is targeting its operations purposely toward the U.S. market," thereby warranting the exercise of nationwide jurisdiction over Dolphin. *See* Pl.'s Supp'l Br. at 6:12-14. Dolphin, in contrast, asserts that none of the above contacts indicate that Dolphin expressly aims its acts at the United States. The Court would agree with Dolphin.

With respect to Dolphin's use of services provided by companies that are headquartered in California, as the Court explained in its Tentative Ruling, this theory has been expressly rejected by the Ninth Circuit. *See* Tent. Ruling at page 8. Indeed, it is unclear how Dolphin's use of these companies' services is related to whether Dolphin expressly aims its acts at the United States – for example, there is no indication that Dolphin uses PayPal and Cloudflare because its use of U.S. companies draws more pages views from individuals located in the

3

United States.  *Cf. Mavrix Photo*, 647 F.3d at 1230 (holding that website specifically targeted California because it utilized advertisements targeting California residents and focused on the California-centered celebrity and entertainment industries).

In addition, as Dolphin points out, the fact that imgchili.net is in English and advertises payment amounts in U.S. dollars does not show that Dolphin expressly aims its infringing acts at the United States.  *See* Dolphin's Supp'l Br. at 5:9-23; *see also Mavrix Photo*, 647 F.3d at 1229 (maintaining a website that is accessible in the forum is not sufficient to establish express aiming; a plaintiff must show "something more" indicating that the defendant purposefully targeted its infringing acts at the forum).  Indeed, as Dolphin points out, English is the official language of 67 countries and 27 non-sovereign entities, including Hong Kong, where Dolphin is headquartered.  *See* Decl. of Tomas Mazal ("Mazal Decl.") ¶ 5, Docket No. 158-1.  Similarly, the U.S. dollar is widely used as currency around the world, and does not establish that Dolphin utilizes the U.S. dollar to attract account holders based in the United States.  *See* Mazal Decl. ¶ 5.

For similar reasons, Dolphin's inclusion of the United States in the category of "Zone A" companies for which Dolphin pays more per page view does not establish that it specifically targets the United States over the other countries listed in Zone A.  *See Pebble Beach*, 453 F.3d 1151, 1157 (9th Cir. 2006) (requiring "individualized targeting" indicating that "the defendant purposefully directed its activity in a substantial way to the forum").  Moreover, there is no evidence that Dolphin has actually paid any account holder for page views of *infringing* images in the United States.  *See NuboNau, Inc. v. NB Labs, Ltd.*, 10cv2631-LAB (BGS), 2012 WL 843503, at *11-12 (S.D. Cal. Mar. 9, 2012) (explaining that under purposeful direction test, contacts that do not arise out of infringing activity are not relevant to the analysis); *Pebble Beach*, 453 U.S. at 1160 ("[A]lthough [defendant] may serve [U.S. citizens], there is not a scintilla of evidence indicating that this patronage is related to either [defendant's] choice of a[n infringing] domain name or the posting of a passive website [under that domain name].").

In addition, Plaintiff's proffered evidence that imgchili.net receives 10% of its Internet traffic from the United States does not indicate that Dolphin individually targets the United States.  Indeed, the evidence proffered establishes that imgchili.net receives 20% of its Internet traffic from Japan, 10.4% from the United States, 10.4% from Germany, and various proportions under 10% from 27 other countries.  *See* Penn Decl. Ex. 6, Docket No. 139-6.  Plaintiff provides no authority indicating that merely receiving a portion of Internet traffic from the United States

4

indicates that a website individually targets the United States. *Cf. Pebble Beach*, 453 F.3d at 1157 (requiring that defendant direct its activity "in a substantial way to the forum").

Finally, Plaintiff's contention that Dolphin avails itself of the protection of United States copyright laws by utilizing the reservation "Copyright © 2011-2017 imgchili" is not supported by the record. Plaintiff provides no evidence that imgchili.net's copyright is a reservation of rights under United States copyright laws, rather than any other country; indeed, as Dolphin points out, Hong Kong has its own copyright statute, and the "©" symbol is not exclusive to the United States. *See* Mazal Decl. ¶ 7; *see also* Mot. to Dismiss Ex. D, Docket No. 93-7 (Hong Kong copyright statute). The mere fact that Dolphin uses a copyright symbol also utilized in the United States does not establish that it directs its actions there. *See Pebble Beach*, 453 F.3d at 1159 (holding that the use of a website ending in ".com," a domain ending affiliated with the United States, does not establish that a website's primary target is the United States).

Notably, Plaintiff provides no authority supporting its contention that the contacts proffered in its Supplemental Brief are sufficient to confer nationwide jurisdiction. In any event, based on the governing legal authority, the Court would find that the proffered contacts are not sufficient. *See NuboNau, Inc.*, 2012 WL 843503, at *12 (S.D. Cal. Mar. 9, 2012) (refusing to exercise nationwide jurisdiction where there was no evidence that defendant's infringing acts were purposefully directed at United States, emphasizing that "[j]ust because a foreign act has foreseeable effects in a forum state does not mean specific jurisdiction there is appropriate"); *Schwarzenegger*, 374 F.3d at 803 ("It may be true that [defendant's] intentional act eventually caused harm to [plaintiff] in California, and [defendant] may have known that [plaintiff] lived in California. But this does not [establish express aiming at California]."); *cf. Mavrix Photo*, 647 F.3d at 1229 (finding purposeful direction where defendant "used [plaintiff']s copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain"); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297-98 (Fed. Cir. 2009) (finding specific jurisdiction in the United States warranted under Rule 4(k)(2) based on defendant's intentional copying and distributing of infringing games to thousands of U.S. customers, resulting in its exploitation of the United States market for commercial game and harm to the United States copyright holder).

The Court would therefore GRANT Dolphin's Motion to Dismiss for Lack of Personal Jurisdiction.

5

**Dolphin's Evidentiary Objections, Docket No. 158-2**

1. Sustained
2. Sustained
3. Sustained
4. Sustained
5. Sustained
6. Sustained
7. Sustained
8. Sustained
9. Sustained
10. Sustained
11. Sustained
12. Sustained
13. Sustained
14. Overruled
15. Overruled
16. Overruled
17. Overruled
18. Overruled
19. Overruled
20. Overruled