Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>    Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION BY DEFENDANT CLOUDFLARE, INC. FOR PARTIAL SUMMARY JUDGMENT [OFFER OF PROOF]**<br><br>Filed Concurrently: Supplemental Spillane Declaration; Supplemental Penn Declaration; Supplemental Statement of Genuine Disputes; Demand for Lodging<br><br>Date: May 4, 2017<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br>         350 W. 1st Street<br>         Los Angeles, CA |

**Table of Contents**

SUMMARY OF SUPPLEMENTAL OPPOSITION ............................................1

DISPUTED AND UNDISPUTED FACTS.........................................................1

ARGUMENT .........................................................................................................9

I.  ALS HAS DEMONSTRATED GENUINE ISSUES OF MATERIAL FACT CONCERNING DOMESTIC VIOLATION OF ITS REPRODUCTION, DISPLAY AND/OR DISTRIBUTION RIGHTS WHERE DIRECT INFRINGERS ENGAGE CLOUDFLARE TO "STORE" AN INFRINGING ALS IMAGE ON A DOMESTIC CLOUDFLARE CACHING SERVER..........................................................................................................10

II.  ALS HAS DEMONSTRATED GENUINE ISSUES OF MATERIAL FACT CONCERNING DOMESTIC VIOLATION OF ITS REPRODUCTION AND/OR DISTRIBUTION RIGHTS WHERE DIRECT INFRINGERS ENGAGE CLOUDFLARE TO COPY AND DELIVER INFRINGING ALS IMAGES THROUGH A DOMESTIC CLOUDFLARE CACHING SERVER. .......................................................................................13

III.  THE COURT SHOULD NOT ENTERTAIN NEW THEORIES UPON WHICH CLOUDFLARE'S MOTION WAS NOT BASED...........................15

CONCLUSION....................................................................................................16

# Table of Authorities

**Cases**

*Los Angeles News Services v. Reuters Television Int'l Ltd.*,
　149 F.3d 987 (9th Cir. 1998) .............................................................. 10, 15, 16

*Perfect 10 v. Yandex*, 962 F. Supp. 2d 1146 (N.D. Cal. 2013) ........................... 11

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ...... 9, 10, 14

*Religious Technology Center v. Netcom*, 907 F.Supp.1361 (N.D. Cal. 1995) ... 10

*Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088 (9th Cir. 1994) ...... 10

**Statutes**

*17 U.S.C. § 106(1)* ................................................................................. 9, 14, 15

*17 U.S.C. § 106(3)* ............................................................................................ 9, 14

*17 U.S.C. § 106(5)* ................................................................................. 9, 11, 13

## SUMMARY OF SUPPLEMENTAL OPPOSITION

In its March 30, 2017 order on the motion by Defendant Cloudflare, Inc. ("Cloudflare") for partial summary judgment, the Court said it "would provide Plaintiff the opportunity to submit an offer of proof as to evidence that infringing copies of Plaintiff's copyrighted images were in fact stored on Cloudflare's U.S. servers. If Plaintiff is able to provide sufficient proof for each website, the Court would DENY Cloudflare's MSJ." Doc. 159.

Plaintiff ALS Scan, Inc. ("ALS") has provided such evidence. Submitted herewith, as well as with ALS's prior opposition, is proof that the websites in question, by engaging in Cloudflare's services, caused domestic infringement of ALS's exclusive rights to reproduce, distribute and display its copyrighted works. Cloudflare's motion should therefore be denied.

## DISPUTED AND UNDISPUTED FACTS

CloudFlare offers, among other services, a managed domain name system ("DNS") and a content delivery network ("CDN"). (3/2/17 Guinn Decl., Doc. 124-2.)

To become a Cloudflare client, Cloudflare requires the client to name two Cloudflare nameservers as the authoritative nameservers for their website domain.[1] (3/2/17 Guinn Decl. ¶ 7, Doc. 124-2; Guinn Depo. 13:14-14:22, Ex. 1.)[2] "This service is why an IP address WHOIS lookup regarding a website

---

[1] "Nameservers convert the text-based Uniform Resource Locator ("URL") of a website into a computer-readable address to point users and internet browsers in the direction of content stored elsewhere. Stated another way, nameservers give directions by telling a user's personal computer where to look to find the website the user is searching for." (3/2/17 Guinn Decl.¶ 6, Doc 124-2.)

[2] The pages and exhibits from the Guinn Declaration are attached to the Supplemental Spillane Declaration as Exhibit 11. ALS is concurrently filing a demand that Cloudflare lodge the original deposition transcript with the Court.

operated by a Cloudflare customer traces to Cloudflare—because the customer has designated Cloudflare as its domain nameserver." (3/2/17 Guinn Decl. ¶ 7, Doc. 124-2.)

> **Q … [W]hy does Cloudflare have customers designate two Cloudflare nameservers?**
> A   Cloudflare has customers designate Cloudflare nameservers in order to route Internet requests to Cloudflare so that [its]³ service can operate.
> **Q   And what does that enable Cloudflare to do?**
> A   It enables Cloudflare to direct website visitors to Cloudflare servers.

(Guinn Depo. 14:23-15:5.)

Cloudflare's "Global AnyCast Network" of data centers includes both nameservers and caching servers.⁴  "[T]he Cloudflare nameservers are used so that DNS will route a website visitor to send HTTP requests to Cloudflare caching servers."  (Guinn Depo. 15:14-16:5.)

Cloudflare's CDN, its "Global Anycast Network," comprises 102 data centers throughout the world, nineteen of which are in the United States. (3/9/17 Spillane Decl. ¶ 7, Ex. E, Cloudflare 133; Guinn Depo. 19:12-21:9, Ex. 4.)  "The Cloudflare . . . Global Anycast network contains caching servers as

---

³ Corrections from the deposition errata sheet are incorporated in brackets.

⁴ "Caching servers are servers that temporarily cache content, typically for a few hours before being cleared (also known as 'evicted') in order to improve the time it takes for website content from the host server to reach the end users in a particular geographic area. The more geographically distant an end user is from a server, the longer it takes for content from that server to reach that end user. A caching server that is located nearer to the end user than the host server shortens the physical distance that the host's content must travel, and therefore also shortens the time it takes for the content to load in an end user's browser." (3/2/17 Guinn Decl. ¶ 6, Doc. 124-2.)

well as nameservers." (Guinn Depo. 16:2-5.) "A content delivery network (CDN) takes your static content and stores a copy closer to your visitors." (3/9/17 Spillane Decl. ¶ 8, Ex. F, Doc. 133.) "When an end user chooses to visit a Cloudflare customer's website, the user is routed through the Cloudflare caching server closest to that end user's computer. *See* Ex. B (Cloudflare Support > Getting Started > Cloudflare 101 > Step 1)." (3/2/17 Guinn Decl. ¶ 8, Ex. B, Doc 124-2.)

> **Q ... [I]s there ... a step after [a query reaches a Cloudflare DNS server] which the DNS server employs to send the visitor to the nearest Cloudflare caching server, provided that the user's seeking to access something that is cached?**
> Ms. Kassabian: Objection. Vague
> A  Yes.
> **Q  Please explain how that works.**
> A  So when a visitor visits a website, they first do a DNS lookup. It's similar to looking up someone's phone number in the phone book. . . . The DNS server responds with an IP address of the web server, and in that instance, the second request which is similar to making the phone call after doing a lookup in the phone book is the request to a Cloudflare caching server.
> **Q  So . . . in this process, the Cloudflare DNS server will direct the user to the nearest Cloudflare caching server?**
> A  Yes.
> **Q  And . . . that's the nearest Cloudflare caching server within the Cloudflare global AnyCast network?**
> A  Correct.

(Guinn Depo. 17:1-18:1.)

> **Q: [S]ay I'm sitting at my computer in Los Angeles, and I put into the browser bar a URL imgchili.net, slash, whatever ending in .jpg. Okay? Now, if I then hit enter, where do I first go?**
> MS. KASSABIAN:  Objection.  Incomplete hypothetical.
> You can answer.

1
2
3
4
5
6
7

      THE WITNESS:  What will happen is you will do a DNS lookup.
That DNS response will come from a DNS server in the region,
very likely in Los Angeles.  The -- then you make an H[T]TP
request for that -- that URL which ends in .jpg, potentially to the
Los Angeles data center.  If that file is in the cache, we can deliver
it from our temporary cache, and if the file is not in cache, we
would proxy the request through to the web server and take a copy
of the file from the web server and deliver it to the web browser.

(Guinn Depo. 25:10-26:2.)

8
9
10

      **Q   Is it Cloudflare's objective to send . . . a browser from, say,
Los Angeles to the . . . Los Angeles caching server maintained
by Cloudflare if possible?**
      A   Yes.

11

(Guinn Depo. 28:9-13.)[5]

12
13
14
15
16
17
18
19
20
21

      **Q   . . . [I]f I have asked for a .jpg file that isn't at that moment
cached on the Cloudflare caching server in Los Angeles, that
server will pull that file from the origin server and draw it up
to the Cloudflare caching server?  Is that correct?**
      MS. KASSABIAN:  Objection.  Vague.
      THE WITNESS:  The file will actually be proxied -- pulled from
the origin server and proxied and delivered through to the
requester, so in this instance you.
      BY MR. SPILLANE:
      **Q   Well, is the delivery path you just described straight from
the origin server or from the origin server to the Cloudflare
caching server in Los Angeles and then to me?**
      A   The latter.

22

(Guinn Depo. 29:9-24.)

23
24

---

25
26
27
28

[5] It is also possible that a browser from Los Angeles could be connected to a Cloudflare caching server not in Cloudflare's Los Angeles data center.  (Guinn Depo. 27:10-28:8.) In some instances submitted herewith queries for a .jpg file from Los Angeles retrieved a copy cached in Dallas.  In some instances queries from Maryland retrieved information from Boston and Newark in addition to Northern Virginia.  (See Spillane and Penn Decls.)

- 4 -

Even under examination by Cloudflare's counsel, Cloudflare emphasized that Cloudflare makes temporary copies of image files and stores those images closest to the consumer:

> **Q: But in order to move the website contents closer to the user, CDN servers have to create temporary copies of that content, right?**
> MR. SPILLANE: Objection. Leading.
> THE WITNESS: Exactly.
> **Q: So how do temporary copies created by CDN services impact website performance?**
> A: By making these . . . cached copies close to the end users, it allows us to deliver portions of the website closer to the user, and it causes the website to load faster.

(Quinn Depo. 90:25-91:11.)

Whether or not a file is stored on a Cloudflare caching server is a function of "popularity." "[W]hen there are multiple requests for the same object all hitting the same data center, we will cache that object in that data center so that . . . once a request is popular or an object is popular, we can serve requests for that object from that data center." (Guinn Depo. 30:4-15.) A file cached in a Cloudflare caching server through popular requests has a two hour "time to live" or "TTL." Further requests for that file during the TTL will cause Cloudflare to query the origin server to validate if the object has changed, and if not Cloudflare will restart the two hour TTL. (Guinn Depo. 30:16-31:18.)

In ALS's experience, two consecutive requests for a file are sufficient to pull a file into Cloudflare's cache if the first query indicated the file was expired. (4/20/17 Spillane Decl. ¶ 5.)

The ALS images in question in this suit are .jpg static files. (3/9/17 Penn Decl. ¶ 4, Doc. 134.) "Cloudflare's CDN caches [.jpg files] for all account types by default." (Guinn Depo. 21:23-24:9 Ex. 5.)

1     "Cloudflare's website explains to users that they can determine whether 'Cloudflare is caching [a client's] site or a specific file by checking the responses shown in the "CF-Cache-Status" header,' and states that within the CF-Cache-Status header, 'HIT' means 'resource in cache, served from CDN Cache'; 'MISS' means 'resource not in cache, served from origin server'; and 'EXPIRED' means 'resource in cache but has since expired, served from origin server.' . . . Spillane Decl. Ex. J at CLOUDFLARE00000144, Docket No. 133-10." 3/30/17 Order Doc. 159 p. 6.

    The "CF-RAY" header row ends with three characters employing airport codes showing "which Cloudflare caching data center is serving the cached content to the user requesting the report." (3/16/17 Carter Decl. ¶ 7, Doc. 144-2.)

    A "cache control" header is used to determine for how long a file should be cached. (Guinn Depo. 59:6-24.) That header does not communicate whether the client has requested that its content not be cached. (Guinn Depo. 59:25-60:14.)

    The Second Amended Complaint lists fifteen websites that "are or have been Cloudflare customers." (3/2/17 Guinn Decl. ¶ 12, Doc. 124-2.) Cloudflare's "trust and safety team" produced a schedule showing the "cache level" for fourteen of those sites.[6] Twelve requested "aggressive" caching and two "basic" caching. (Guinn Depo. 35:2-25, Ex. 8.)

    Since the Court's March 30, 2017 Order, ALS determined that the response headers shown by the redbot.org site showed information from queries made by redbot.org's servers in Hong Kong, thus eliciting the "SYD" (Sydney

---

[6] It appears that stooorage.com went off the Internet sometime after this case was filed.

Australia) value in the CF-RAY response header. 4/20/17 Penn Decl. ¶¶ 3, 4. ALS therefore made queries for infringing ALS images on eleven[7] of the fifteen sites at issue in the Cloudflare motion from locations in the United States: 1) hurl.it, a response header site like redbot.org with servers in Northern Virginia, 4/20/17 Penn Decl. ¶¶ 7, 8, Exs. 1-10; 2) Eric Penn's computer in Woodstock, Maryland, 4/20/17 Penn Decl. ¶ 9 Exs. 11-21; 3) from Eric Penn's computer in Woodstock, Maryland using a VPN to connect to computers in various parts of the US, 4/20/17 Penn Decl. ¶ 10 Ex. 22; and 4) from Jay Spillane's computer in Los Angeles, 4/20/17 Spillane Decl. ¶ 4 Exs. 1-10. The results of these searches, together with the results from the 3/9/17 Penn Declaration to the extent there are any important differences, are as follows:

|  | Notes | Spillane | hurl.it | Penn 4/20/17 | Penn 3/9/17 |
|---|---|---|---|---|---|
| **imgchili.net** |  |  |  |  |  |
| Cf-Cache |  | Hit | Hit | Hit |  |
| Cf-Ray |  | LAX | IAD | IAD |  |
| **slimpics.com** |  |  |  |  |  |
| Cf-Cache |  | Hit | Hit | Hit |  |
| Cf-Ray |  | DFW | IAD | IAD |  |
| **cumonmy.com** | Domestic origin server |  |  |  |  |
| **bestofsexpics.com** |  |  |  |  |  |
| Cf-Cache |  | Hit | Hit | Hit |  |
| Cf-Ray |  | DFW | IAD | IAD |  |

---

[7] Cumonmy.com is on a domestic origin server, so Cloudflare is not including that site in its motion. ALS is not contesting pornwire.net in this case. Stooorage.com and imgflash.net appears to have dropped off the Internet, so ALS was not able to obtain current response header information for images on those sites. The 3/9/17 Penn Decl., Doc. 134, has response header information for infringing ALS images on stooorage.com and imgflash.net from earlier points in time.

| | | | | | |
|---|---|---|---|---|---|
| **stooorage.com** | Off the Internet | | | | |
| Cf-Cache | | | | | Hit[8] |
| Cf-Ray | | | | | SYD |
| **greenpiccs.com** | | | | | |
| Cf-Cache | | Hit | [9] | Hit | |
| Cf-Ray | | DFW | | IAD | |
| **imgsen.se** | | | | | |
| Cf-Cache | | ///[10] | /// | /// | Hit |
| Cf-Ray | | DFW | IAD | IAD | SYD |
| **imgspice.com** | | | | | |
| Cf-Cache | | /// | /// | /// | |
| Cf-Ray | | DFW | IAD | IAD, EWR | |
| **imgspot.org** | | | | | |
| Cf-Cache | | /// | /// | /// | Hit |
| Cf-Ray | | DFW | /// | IAD, BOS | SYD |

---

[8] ALS is perplexed by the statements in the March 30, 2017 Order that "the Court has not located a header reading 'CF-Cache-Status: HIT' on any of the exhibits cited by Plaintiff," yet the Court was able to see the "SYD" value in the CF-RAY header, citing "Penn Ex. 6 at page 5." The electronically filed copy of this Exhibit, Doc 134-6, clearly shows the entire response header information in white type on a black background. The "Cf-Cache-Status: HIT" information is five rows above the CF-RAY header. ALS has found that there can be aspect ratio problems when exhibits that constitute captures of web pages are printed on 8x11 paper without special attention by the copy service. It is possible that the Court's paper courtesy copy clipped the pages showing the response headers. In the future ALS will ask its copy service to pay special attention to any aspect ratio problems in printing courtesy copies, and ALS respectfully requests that the Court or its clerks check the electronic PACER copy of filed exhibits if there are any doubts about whether the paper courtesy copy is complete.

[9] A blank other than in the 3/9/17 Penn column means no results were obtained.

[10] "///" means the response header did not have this field.

| | | | | | |
|---|---|---|---|---|---|
| **img.yt** | | | | | |
| Cf-Cache | | /// | /// | /// | Hit |
| Cf-Ray | | LAX | IAD | IAD | SYD |
| **vipergirls.to** | | | | | |
| Cf-Cache | | /// | /// | /// | |
| Cf-Ray | | LAX | IAD | IAD | |
| **pornwire.net** | Not pursuing | | | | |
| **fboom.me** | | | | | |
| Cf-Cache | | | /// | /// | |
| Cf-Ray | | | IAD | EWR | |
| **imgflash.net** | Off the Internet | | | | |
| Cf-Cache | | | | | /// |
| Cf-Ray | | | | | SYD |
| **imgtrex.com** | | | | | |
| Cf-Cache | | MISS | MISS | MISS | |
| Cf-Ray | | LAX | IAD | EWR | |

## ARGUMENT

The direct infringers committed copyright infringement by violating any one or more of ALS's exclusive rights under 17 U.S.C. § 106. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007). Here, the direct infringers have violated <u>three</u> of ALS's exclusive rights in and to its images: ALS's exclusive rights to reproduce, display and distribute its copyrighted works. *17 U.S.C. § 106(1), (3), (5).*

When the direct infringers, the fourteen websites placed at issue in Cloudflare's motion,[11] engaged Cloudflare for its services and named two Cloudflare nameservers as the authoritative nameservers for their sites, they did

---

[11] Of the fifteen sites specifically listed in the Second Amended Complaint that Cloudflare admits are or were Cloudflare customers, one, cumonmy.com, has a domestic host server, and thus Cloudflare has not moved for partial summary judgment as to that site.

- 9 -

Supplemental Opposition to Cloudflare Partial MSJ

1  so with the information and intention that Cloudflare would route all queries for
2  images on their sites through Cloudflare nameservers, and that to speed service
3  users would view copies of static content stored on the nearest Cloudflare
4  caching server.  Thus, queries emanating from the U.S. would route though a
5  domestic Cloudflare nameserver to a domestic Cloudflare caching server, where
6  a copy of the requested image would be distributed to the user's browser.
7  These actions, at least partially domestic, defeat Cloudflare's motion for
8  summary judgment on grounds of "extraterritoriality."  *Religious Technology*
9  *Center v. Netcom*, 907 F.Supp.1361 (N.D. Cal. 1995) (taking actions that cause
10 infringing temporal reproductions to be stored on Usenets was an act of direct
11 infringement); *Subafilms Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1098
12 (9th Cir. 1994) ("the United States copyright laws do not reach acts of
13 infringement that take place <u>entirely</u> abroad") (emphasis added); *Los Angeles*
14 *News Services v. Reuters Television Int'l Ltd.*, 149 F.3d 987 (9th Cir. 1998)
15 (action not barred on grounds of extraterritorialty were infringing copies were
16 made in the U.S. and broadcast in Europe).

17 **I.    ALS HAS DEMONSTRATED GENUINE ISSUES OF MATERIAL**
18 **      FACT CONCERNING DOMESTIC VIOLATION OF ITS**
19 **      REPRODUCTION, DISPLAY AND/OR DISTRIBUTION RIGHTS**
20 **      WHERE DIRECT INFRINGERS ENGAGE CLOUDFLARE TO**
21 **      "STORE" AN INFRINGING ALS IMAGE ON A DOMESTIC**
22 **      CLOUDFLARE CACHING SERVER.**

23     Cloudflare places great emphasis on the so-called "'server test,'" which
24 supposedly "recognizes that an infringement 'takes place' at the location of the
25 computer responsible for hosting the allegedly infringing content."  Cloudflare
26 Motion Doc. 122 p.6.  As the Court correctly noted in its March 30, 2017
27 Order, p.8 n.9, the so-called "server test" is not limited to files "stored" or
28 "served" only on a "primary 'host' computer."  *Id.,* citing *Amazon.com, Inc.,*

*supra,* 508 F.3d at 1159. Further, the "server test" as used in *Amazon.com, Inc.* and *Perfect 10 v. Yandex*, 962 F. Supp. 2d 1146 (N.D. Cal. 2013) was discussed in the context of (and only in the context of) determining the situs of infringement of the copyright owner's exclusive right to "display" its copyrighted works. *17 U.S.C. § 106(5).* 508 F.3d at 1159. The Ninth Circuit held that wherever a copy of an image is stored on a server and communicated to a web browser, the situs of the resulting infringement of the "display" right is the situs of that stored copy.

> "[A] person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory. There is no dispute that Google's computers store thumbnail versions of Perfect 10's copyrighted images and communicate copies of those thumbnails to Google's users. Therefore, Perfect 10 has made a prima facie case that Google's communication of its stored thumbnail images directly infringes Perfect 10's display right."

508 F.3d at 1160.

Here, the evidence is uncontroverted that copies of infringing ALS images stored on domestic Cloudflare caching servers were recently displayed to U.S. users with respect to four sites in question: imgchili.net, slimpics.com, bestofsexpics.com and greenpiccs.com. There, the Cf-Cache headers from the recent queries show "HIT" and the CF-RAY headers showed U.S. locations.

For four other sites, stooorage.com, imgsen.se, imgspot.org and img.yt, there is direct evidence that Cloudflare was storing copies of infringing ALS images from those sites on Cloudflare caching servers. See 3/9/17 Penn Decl. Exs. 5 (img.yt), 8 (imgsen.se), 10 (imgspot.org) and 14 (stooorage). Those older captures of infringing ALS images and response headers all show "HIT" for Cf-Cache-Status. Although the CF-RAY headers on those older captures showed "SYD" as the server location, because Mr. Penn was using the

1   redbot.org service in Hong Kong at the time, the recent captures from queries
2   from U.S. servers all showed U.S. server locations in the CF-RAY headers.[12]

3      A reasonable trier of fact could conclude that infringing ALS images
4   from these sites are or were stored on domestic Cloudflare caching servers for
5   display to domestic users.  Such a conclusion would be based upon: 1) old
6   captures showing "hit" for cache status; 2) current captures showing files stored
7   on or transited through domestic Cloudflare servers; 3) Cloudflare's schedule
8   showing all sites in question elected "aggressive" or "basic" caching protocols;
9   4) the Carter admission that the CF-RAY header shows which Cloudflare data
10  center "is <u>serving</u> the cached content to the user requesting the report"
11  (emphasis added); and 5) Cloudflare's informational materials and Guinn
12  testimony regarding how Cloudflare's system is set up to operate.  Where there
13  is disputed evidence that at certain times copies of infringing ALS images from
14  those sites were stored on domestic Cloudflare servers and displayed to
15  domestic users, Cloudflare's motion should be denied.

16      With respect to another four sites, none of the available response headers
17  have a Cf-Cache-Status header.  These are <u>imgspice.com, vipergirls.to,</u>
18  <u>fboom.me and imgflash.net</u>.  The captures show "cache control" headers, but
19  Mr. Guinn testified that this header contains no information as to whether the
20  client has or has not elected to have files cached.  For imgspice.com,
21  vipergirls.to and fboom.me, the recent captures show values in the CF-RAY
22  headers for domestic Cloudflare servers.  For imgflash.net the only capture is an

---

[12] ALS is relying on earlier captures in the case of stooorage.com because that site is no longer online.  In the cases of imgsen.se, imgspice.com and imgspot.org, the earlier captures show "HIT" for Cf-Cache Status while the recent captures have no Cf-Cache-Status header at all.  ALS suspects that these sites or Cloudflare may have altered their caching regimen after the 3/9/2017 Penn Declaration to obscure the caching status of those sites.

old one, when Mr. Penn was using redbot.org, showing "SYD" in the CF-RAY header. Whether copies of infringing ALS files from these sites were stored on Cloudflare caching servers is unclear, or disputed.

A reasonable trier of fact could conclude that infringing ALS images from these sites are or were stored on domestic Cloudflare caching servers for display to domestic users. Such a conclusion would be based upon: 1) current captures showing files stored on or transited through domestic Cloudflare servers; 2) Cloudflare's schedule showing all sites in question elected "aggressive" or "basic" caching protocols; 3) the Carter admission that the CF-RAY header shows which Cloudflare data center "is serving the cached content to the user requesting the report" (emphasis added); and 4) Cloudflare's informational materials and Guinn testimony regarding how Cloudflare's system is set up to operate. Thus, Cloudflare's motion should be denied for these sites at all.

## II. ALS HAS DEMONSTRATED GENUINE ISSUES OF MATERIAL FACT CONCERNING DOMESTIC VIOLATION OF ITS REPRODUCTION AND/OR DISTRIBUTION RIGHTS WHERE DIRECT INFRINGERS ENGAGE CLOUDFLARE TO COPY AND DELIVER INFRINGING ALS IMAGES THROUGH A DOMESTIC CLOUDFLARE CACHING SERVER.

Even to the extent the Court concludes that ALS has not adduced triable issues concerning "storage" of infringing files on domestic Cloudflare servers, for all sites in question ALS showed that direct infringers, by engaging Cloudflare's services, set into motion domestic reproduction and distribution of ALS's copyrighted works.

The "server test," involving where files are "stored," only pertains to violations of a copyright owner's exclusive rights to "display" copyrighted works. *17 U.S.C. § 106(5)*. When the websites in question engaged Cloudflare,

they did so with the information and intention that, where a copy of a queried infringing ALS image is not stored on a Cloudflare caching server, Cloudflare's nameservers would cause a copy of the file to be delivered through the nearest Cloudflare caching server to the user's browser. These actions are direct violations of ALS's exclusive rights to reproduce and distribute its works. *17 U.S.C. § 106(1), (3)*.

The Guinn testimony concerning the experience of a user from Los Angeles shows how domestic direct infringements of ALS's reproduction and distribution rights occur. If a user from Los Angeles requests an infringing ALS file from a Cloudflare client, and no copy is stored on a Cloudflare caching server, the Cloudflare nameserver in Los Angeles will cause a copy of that infringing file to be made from the origin host, then the infringing file will be distributed through the Los Angeles Cloudflare caching server to the user's browser. These are domestic infringements.

*Amazon.com, Inc., supra,* is instructive. From pages 1159 to the top of 1162 the court analyzed infringement of Perfect 10's exclusive display rights. The court then separately analyzed whether Google infringed Perfect 10's exclusive rights of distribution, *17 U.S.C. § 106(3)*.

> "The district court also concluded that Perfect 10 would not likely prevail on its claim that Google directly infringed Perfect 10's right to distribute its full-size images. *Perfect 10,* 416 F.Supp.2d at 844-45. The district court reasoned that distribution requires an 'actual dissemination' of a copy. *Id.* at 844. Because Google did not communicate the full-size images to the user's computer, Google did not distribute these images. *Id.*"

508 F.3d at 1162.

Here, by contrast, the websites in question "actually disseminated" copies of infringing files by and through domestic Cloudflare servers. In the case of the hypothetical Los Angeles user, the websites in question did "communicate

the full-size images to the user's computer" by creating a copy of the requested image at the instance of a Cloudflare nameserver in Los Angeles and disseminating that copy through a Cloudflare caching server in Los Angeles.

That the reproduction occurred at the instance of a Cloudflare domestic nameserver is also a direct domestic violation of ALS's exclusive rights to reproduce its works. *17 U.S.C. § 106(1)*; *Los Angeles News Services v. Reuters Television Int'l Ltd.*, 149 F.3d 987 (9th Cir. 1998) (infringing copies of tape were made in New York, and thus infringement claims not dismissed on grounds of extraterritoriality even where the infringing copies were only broadcast in Europe).

Cloudflare's motion should therefore be denied in its entirety.

### III. THE COURT SHOULD NOT ENTERTAIN NEW THEORIES UPON WHICH CLOUDFLARE'S MOTION WAS NOT BASED.

At the March 30 hearing, Cloudflare argued two brand new theories, neither of which was set forth in its motion or statement of undisputed facts. The Court should not entertain these theories, nor any other new theories Cloudflare may raise in its reply to this offer of proof.

Cloudflare's motion for partial summary judgment was based exclusively on the contention that knowledge of the location of the origin servers of the fifteen sites in question, alone, was enough for the Court to grant partial summary judgment as to the sites with foreign origin servers.

Cloudflare's first new theory was that the proprietors of the fifteen sites in question are merely another layer of secondary infringers, and the true direct infringers are supposedly users who upload infringing content to those sites. Cloudflare did not move on that theory, did not offer evidence that the sites in question or so structured and did not adduce any evidence as to the domestic or foreign location of any of these users.

Cloudflare's second new theory was that the Court can not only grant partial summary judgment on a website by website basis, but if the Court finds a partially domestic component to direct infringement as to any of these sites, the Court can supposedly still grant partial summary judgment on an image by image basis, shearing off liability for any foreign copies. Again, Cloudflare did not move on this theory. Further, the courts have rejected Cloudflare's argument. Where the infringing conduct is at least partially domestic, the plaintiff may claim damages for all infringing conduct, domestic or foreign. *Los Angeles News Services, supra,* 149 F.3d at 992 (plaintiff entitled to damages from foreign exploitation of tape that was unlawfully copied in New York).

## **CONCLUSION**

Cloudflare's motion for partial summary judgment should be denied.

DATED: April 20, 2017           SPILLANE TRIAL GROUP PLC

By: _____
Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this action. My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507. A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION BY DEFENDANT CLOUDFLARE, INC. FOR PARTIAL SUMMARY JUDGMENT [OFFER OF PROOF]** will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 20, 2017, I checked the CM/ECF docket for this action and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Gary L. Bostwick– gbostwick@B1Law.com<br>Kevin S. Toll – kevin@silversteinlegal.com<br>Lawrence G. Walters – larry@firstamendment.com<br>Corey D. Silverstein – corey@silversteinlegal.com<br>Rachel H. Kassabian – rachelkassabian@quinnemanuel.com<br>Carolyn M. Homer – carolynhomer@quinnemanuel.com<br>John Lewis Holcomb – jholcomb@khslaw.com<br>Tammy X. Wu – twu@khslaw.com | Colin TJ O'Brien – tm@partridgepartnerspc.com<br>John L. Ambrogi – jla@partridgepartnerspc.com<br>Paul Supnick – paul@supnick.com<br>Raymond Katrinak – pkatrinak@kernanlaw.net<br>Ryan Carreon – rcarreon@kernanlaw.net<br>Stephen M Kernan – kernanlaw@gmail.com |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) April 20, 2017, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling Local Rule, on (*date*) April 20, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served by Overnight Mail*
Hon. George H. Wu
U.S. District Court
312 N. Spring Street
Courtroom 10 – Spring St. Floor
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/20/2017 | Jessie Gietl | *Jessie Gietl* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |