1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Rachel Herrick Kassabian (Bar No. 191060)
2    rachelkassabian@quinnemanuel.com
     Carolyn M. Homer (Bar No. 286441)
3    carolynhomer@quinnemanuel.com
     Mark T. Gray (Bar No. 305251)
4    markgray@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
5  Redwood Shores, California 94065
   Telephone:   (650) 801-5000
6  Facsimile:    (650) 801-5100

7  *Attorneys for Defendant Cloudflare, Inc.*

8

9                     UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

                          WESTERN DIVISION

11

12 ALS SCAN, INC.,                    | Case No. 2:16-cv-05051-GW-AFM

                Plaintiff,            | DECLARATION OF RACHEL KASSABIAN
13                                    | IN SUPPORT OF CLOUDFLARE, INC.'S
         vs.                          | NOTICE OF MOTION TO COMPEL
14                                    | DISCOVERY FROM PLAINTIFF ALS
   CLOUDFLARE, INC., et al.,          | SCAN
15
                Defendants.
16                                    | Hearing Date:      September 12, 2017
                                      | Hearing Time:      10:00 AM
17                                    | Place:   Courtroom 840, 8th Fl.
                                      |          255 East Temple Street
18                                    |          Los Angeles, California 90012
                                      | Judge:   Hon. Alexander MacKinnon
19

20

21

22

23

24

25

26

27

28

I, Rachel Kassabian, declare:

1.      I am an attorney licensed to practice before this Court.  I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP and counsel for Cloudflare, Inc. in this matter.  I make this declaration of my own personal knowledge and, if called to testify, I could and would competently testify hereto under oath.  I submit this declaration in support of Cloudflare's Motion to Compel Discovery From Plaintiff ALS Scan.

2.      On December 30, 2016, Cloudflare propounded its Second Set of Requests for Production of Documents upon ALS Scan.  On February 8, 2017, ALS Scan provided its written responses thereto, a true and correct copy of excerpts of which is attached hereto as **Exhibit A.**

3.      On May 31, 2017, Cloudflare propounded its Third Set of Requests for Production of Documents upon ALS Scan.  On July 3, 2017, ALS Scan provided its written responses thereto, a true and correct copy of excerpts of which is attached hereto as **Exhibit B**

4.      On May 31, 2017, Cloudflare propounded its Third Set of Interrogatories upon ALS Scan.  Though the responses were due on June 30, ALS asked for an extension, and Cloudflare agreed to extend ALS Scan's deadline to July 3, 2017.  ALS did not provide its responses on July 3.  Instead, Cloudflare sent its responses via regular U.S.Mail, and Cloudflare did not receive ALS Scan's responses until Monday, July 10, when they were delivered via U.S. mail, and postmarked with the date July 5 by the U.S. Post Office.  A true and correct copy of excerpts of ALS Scan's responses is attached hereto as **Exhibit C.**

5.      On May 31, 2017, Cloudflare propounded its First Set of Requests for Admission upon ALS Scan.  On July 10, 2017, Cloudflare received ALS Scan's written responses thereto.  A true and correct copy of excerpts of ALS Scan's responses to Cloudflare's Requests for Admission is attached hereto as **Exhibit D.** As can be seen, ALS made certain objections, including as to the terms "host" and

"caching."  Via a July 11, 2017 meet and confer letter, Cloudflare offered that for RFAs 4-9, which use the term "host," ALS could apply the same meaning to that term as the meaning ALS ascribed to that term in its own Third Amended Complaint.  Likewise, for RFAs 42, 43 and 45, which use the term "caching," Cloudflare offered that ALS could apply the same meaning to that term as the meaning ALS ascribed to that term in its own Third Amended Complaint.  ALS has not amended its responses to Cloudflare's First Set of Requests for Admission since that time.

6.    On July 7, 2017, Cloudflare propounded its Fifth Set of Requests for Production of Documents upon ALS Scan.  On August 7, 2017, ALS Scan provided its written responses thereto, a true and correct copy of excerpts of which is attached hereto as **Exhibit E.**

7.    On May 23, 2017, I sent a letter to ALS Scan's counsel detailing ALS's failure to produce agreed materials in response to Cloudflare's Second Set of RFPs. On June 2, 2017, the parties met and conferred on this subject, with ALS stating that it would be producing additional ALS communications.

8.    On July 6, 2017, I sent a letter to ALS Scan's counsel detailing several deficiencies in ALS Scan's document production, including communications and documents relating to Cloudflare or the complaint and the failure to produce a privilege log.  I sent a follow-up letter on July 11, 2017, which outlined further deficiencies with ALS Scan's document production with respect to financial metrics and also included deficiencies in ALS Scan's interrogatory responses regarding the identification of DMCA notices to persons other than Cloudflare, the timing of infringing image takedowns in response to notices, the identification of unique images between copyright registrations or applications and the alleged infringements, and ALS Scan's contentions regarding the unavailability of a DMCA Safe Harbor defense.  On July 21, 2017, I sent a letter to ALS Scan's counsel detailing several deficiencies in ALS Scan's privilege log, including its failure to

describe the basis for any privilege asserted or to include documents from any custodian aside from Mr. Spillane himself.

9.      ALS's counsel did not specifically respond to any of my letters as described above.

10.      On July 26, 2017, ALS Scan's counsel sent a letter addressed to counsel for all defendants which, he claimed, "intended to respond to the various letters that have been sent regarding discovery."  As to all outstanding requests for production, ALS Scan represented in this letter that it "has produced all information responsive to all requests, except to the very limited extent that ALS has asserted objections to the overbreadth of a few requests."  Specific to Cloudflare's damages requests, ALS Scan said it "has produced all financial data from which an expert might derive an opinion regarding actual damages, including detail down to general ledgers in response to the Cloudflare motion to compel. The Excel infringement logs disclose the number of works ALS will argue for purposes of statutory damages." "Concerning the privilege log," counsel confirmed the privilege asserted "would be attorney-client privilege and I am the custodian."  ALS Scan represented that, "[t]ime allowing a revised log will be produced."  However, as of this writing, no log has been produced.  Additionally, regarding ALS Scan's apparent failure to log (or possibly even search for) documents from its employees, counsel responded only that he had "found no support for the notion that I need to respond to email interrogatories regarding sources and methods of locating privileged information." ALS Scan's July 26, 2017 letter did not address many of the outstanding discovery issues I had raised in my earlier correspondence.

11.      Considering ALS Scan had not meaningfully responded to any of my letters—and in some instances provided no response—on August 1, 2017, I sent another letter to ALS Scan requesting a conference of counsel pursuant to L.R. 37-1, which outlined and reiterated many of the deficiencies in ALS Scan's production,

1  including each of the communications production issues raised in Cloudflare's

2  pending motion to compel.

3      12.    Separately, on July 7, 2017, I sent a letter to ALS Scan's counsel, who

4  is also representing third party Steve Easton in this matter, regarding Mr. Easton's

5  failure to respond to Cloudflare's subpoena (due June 30, 2017).  On July 11, 2017,

6  after having received Mr. Easton's untimely subpoena response, I sent another letter

7  to Mr. Easton's counsel regarding his late response and failure to produce any

8  documents.

9      13.    Starting on July 17, eleven days before his July 28 noticed deposition,

10  Mr. Easton began producing large volumes of emails.  For instance, on July 17, I am

11  informed that Mr. Easton made his first production of documents pursuant to the

12  subpoena, containing 8,898 emails, many of which had not been previously

13  produced by ALS Scan, despite appearing relevant to Cloudflare's First and Second

14  Sets of Requests for Production, which  were served on December 5 and 31, 2016

15  respectively.  On July 24, 2017, I sent Mr. Easton's counsel (also ALS's counsel) a

16  letter detailing deficiencies in Mr. Easton's production of documents, including the

17  apparent omission of relevant categories of documents.  Later that day, Mr. Easton

18  produced an additional 1,860 emails, which Mr. Easton's counsel Jay Spillane

19  represented were a "further voluntary production of Easton emails" that were "not

20  responsive to anyone's requests."  Contrary to Mr. Spillane's representation that

21  these documents were not responsive to any requests, I am informed that many of

22  them were communications between Mr. Easton and Cloudflare that were

23  responsive to Cloudflare's subpoena to Mr. Easton, as well as to Cloudflare's

24  Requests for Production to ALS Scan.

25      14.    I flew to Nashville, Tennessee and deposed Mr. Easton on July 28,

26  2017.  During that deposition, in response to my questioning, Mr. Easton confirmed

27  that several additional categories of documents existed that, as best we can tell based

28

on our searches, have not been produced.  A true and correct copy of excerpts from the transcript of Mr. Easton's July 28, 2017 deposition are attached as **Exhibit F**.

15.     On August 4, 2017, I sent Mr. Easton's counsel a letter detailing these additional deficiencies along with citations to admissions by Mr. Easton that such documents existed -- including correspondence between Mr. Easton and Cloudflare, communications with ALS Scan regarding DMCA notices, and communications with persons other than Cloudflare regarding infringement.

16.     ALS's business partner Hydentra, which handles marketing and administration for ALS's core service, its ALSSCAN.COM subscription adult website, has produced an email between itself and ALS, and has indicated that more exist.  ALS Scan has not produced such communications.

17.     On August 9, 2017, the parties held a telephonic conference of counsel. My colleague Carolyn Homer and I participated in that meet and confer call, as did ALS's counsel Jay Spillane.  On that call, ALS Scan's counsel represented that:

- Mr. Easton's document production would be supplemented, though he did not identify which specific requests would be addressed or when the production would be made;

- subject to its objections, documents responsive to Cloudflare's Fifth Set of Requests for Production of Documents would be produced that same day;

- it had pulled the financial transaction records between Hydentra and ALS Scan for the duration of the Hydentra Agreement, which would be produced "soon";

- that ALS Scan was require to provide notice to Alex Kirn before it could produce its copy of the Purchase & Sale Agreement transferring ownership of ALS Scan from Kirn to its current owner Sarah Walsh, though he admitted he had not even attempted to provide such notice, despite having had Cloudflare's request in hand for over a month;

- approximately 150 additional emails would be produced reflecting internal correspondence of some kind between ALS Scan's employees, though he did not identify which Requests these documents would be responsive to, what they were about, or when the production would be made;

- all of the entries of ALS Scan's privilege log are for documents from ALS Scan's counsel's email account and not from the accounts of any of ALS Scan's employees or agents; and

- ALS Scan would add the nature of the privilege asserted to its privilege log at some unknown time in the future, and would take Cloudflare's other concerns under advisement.

18.     Other items on the August 9 meet and confer agenda did not result in changes to ALS Scan's position.  In particular, ALS Scan's counsel:

- maintained that he would not and was not required to confirm he actually searched for responsive documents from his clients' email accounts in preparing the privilege log, nor did he agree that ALS Scan was obliged to log any privileged documents that were located and withheld, outside of his own emails; and

- represented that he did not have time to amend ALS Scan's deficient interrogatory responses, so he would not do so and was not willing to discuss the details regarding their deficiencies.

19.     Attached as **Exhibit G** is a true and correct copy of excerpts of the transcript from the June 20, 2017 hearing regarding Cloudflare's prior motion to compel.

20.     Attached as **Exhibit H** is a true and correct copy of an August 11, 2011 email chain between Steve Easton, Sarah Walsh, and Eric Penn, produced in this matter at Easton011220.

21.     Attached as **Exhibit I** is a true and correct copy of a June 21, 2017 email chain between Steve Easton and Eric Penn, produced in this matter at Easton070443.

22.     Attached as **Exhibit J** is a true and correct copy of an October 4, 2016 email chain between Steve Easton and Eric Penn, produced in this matter at Easton006124.

23.     Attached as **Exhibit K** is a true and correct copy of ALS Scan's February 15, 2017 Responses to Cloudflare's Second Set of Interrogatories.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 14th day of August, 2017, in San Francisco, California.


By_____
        Rachel Kassabian

# EXHIBIT A

Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>       Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION FROM DEFENDANT CLOUDFLARE, INC.** |

1     Plaintiff ALS Scan, Inc. ("ALS") objects to the entirety of Cloudflare's
2  preliminary instructions to the extent that they impose burdens beyond those
3  required under the Federal Rules.

4     Without limitation, ALS objects to ¶ 3, concerning electronic discovery.
5  ALS is either producing documents in native format as they were kept in the
6  ordinary course of business or rendering the documents into .pdf format.  ALS
7  assumes no burdens to perform operations to render documents completely
8  "text-searchable."  Most Adobe programs have options that Cloudflare can use
9  to render documents in .pdf format searchable through OCR.  ALS doesn't
10  understand what "a description of the system from which they derived sufficient
11  to render the records and information intelligible" means, and assumes no
12  burden beyond producing documents as requested.

13

14 **Request for Production No. 6**
15     All certificates of copyright registration for each COPYRIGHTED
16  WORK.
17 **Response to Request for Production No. 6**
18     ALS has produced all responsive documents.

19

20 **Request for Production No. 7**
21     All deposit materials provided to the U.S. Copyright Office in connection
22  with the registration of each COPYRIGHTED WORK.
23 **Response to Request for Production No. 7**
24     Objection: this request asks for information not proportional to the needs
25  of the case, considering the importance of the issues at stake in the action, the
26  amount in controversy, the parties' relative access to relevant information, the
27  parties' resources, the importance of the discovery in resolving the issues, and
28  whether the burden or expense of the proposed discovery outweighs its likely

- 1 -

1  benefit.  FRCP R. 26(b)(1).  Deposit copies for galleries of photographic images

2  of the sort registered by ALS are particularly data-intensive.  ALS invites

3  Cloudflare to inspect and obtain records of deposits, registrations and

4  recordations on file at the Copyright Office.

5  https://www.copyright.gov/circs/circ06.pdf.

6

7  **Request for Production No. 8**

8      DOCUMENTS sufficient to show the source of YOUR alleged exclusive

9  rights to the copyright in each COPYRIGHTED WORK, including but not

10  limited to the work-for-hire, purchase, assignment, transfer, or license

11  agreement pertaining to that COPYRIGHTED WORK.

12  **Response to Request for Production No. 8**

13      The copyright registrations themselves are sufficient to show that ALS

14  owns the copyright in the subject works and all matters stated in the certificate.

15  11 U.S.C. § 410(c).  ALS has produced all registrations.

16      To the extent that Cloudlfare is demanding that ALS produce not only the

17  copyright registrations but also cumulative proof of the matters stated in the

18  registrations, this request asks for information not proportional to the needs of

19  the case, considering the importance of the issues at stake in the action, the

20  amount in controversy, the parties' relative access to relevant information, the

21  parties' resources, the importance of the discovery in resolving the issues, and

22  whether the burden or expense of the proposed discovery outweighs its likely

23  benefit.  FRCP R. 26(b)(1).

24

25  **Request for Production No. 9**

26      All DOCUMENTS that REFER OR RELATE to YOUR efforts to

27  license or otherwise monetize any or all of the COPYRIGHTED WORKS,

28

- 2 -

1 including but not limited to all licensing, assignment, and settlement

2 agreements.

3 **Response to Request for Production No. 9**

4     Objection: this request asks for information that is not relevant and not

5 proportional to the needs of the case, considering the importance of the issues at

6 stake in the action, the amount in controversy, the parties' relative access to

7 relevant information, the parties' resources, the importance of the discovery in

8 resolving the issues, and whether the burden or expense of the proposed

9 discovery outweighs its likely benefit.  FRCP R. 26(b)(1).  Every record in

10 ALS's possession, custody or control could be construed to "refer or relate" in

11 some way to ALS's efforts to make money.

12     Without waiving these objections, ALS responds that it does not license

13 or assign rights to its images to third parties, except for limited licenses to

14 advertising affiliates who use the images to direct traffic to ALS sites.  ALS

15 monetizes its copyrighted works by charging for access to secure pages on

16 ALS's proprietary sites.  In response to this request, ALS will produce

17 summary billings or sales reports showing the revenues to ALS's sites.

18

19 **Request for Production No. 10**

20     DOCUMENTS sufficient to show the identity of each person, website, or

21 entity who may lawfully use, reproduce, distribute or display each

22 COPYRIGHTED WORK.

23 **Response to Request for Production No. 10**

24     Objection: this request asks for information that is not relevant and not

25 proportional to the needs of the case, considering the importance of the issues at

26 stake in the action, the amount in controversy, the parties' relative access to

27 relevant information, the parties' resources, the importance of the discovery in

28

- 3 -

1  resolving the issues, and whether the burden or expense of the proposed
2  discovery outweighs its likely benefit.  FRCP R. 26(b)(1).
3
4  **Request for Production No. 11**
5       DOCUMENTS sufficient to show YOUR corporate structure, including
6  but not limited to YOUR parent(s), subsidiaries, affiliates and shareholders, and
7  your membership in the Metart Network.
8  **Response to Request for Production No. 11**
9       Objection: this interrogatory is vague and ambiguous.  The Metart
10 Network and "corporate structure" are unrelated concepts.  Further, information
11 regarding shareholders is irrelevant and confidential.
12      Without waiving this objection ALS will produce all documents
13 sufficient to show corporate structure of ALS.
14
15 **Request for Production No. 12**
16      All DOCUMENTS and COMMUNICATIONS that REFER OR
17 RELATE to CLOUDFLARE.
18 **Response to Request for Production No. 12**
19      Objection: ALS will not produce responsive information protected by the
20 attorney-client or work product privileges.
21      Without waiving this objection, ALS will produce all non-privileged
22 responsive documents in its possession, custody or control.
23
24 **Request for Production No. 13**
25      All COMMUNICATIONS between YOU (including Sarah Walsh, Eric
26 Penn, Steve Easton, or any other of your officers, employees, representatives or
27 agents) and CLOUDFLARE.
28

ALS Responses to Second Set of RFPs From Cloudflare

**Response to Request for Production No. 13**

    ALS will produce all responsive documents.

**Request for Production No. 14**

    All notices of alleged copyright infringement YOU have ever sent that REFER OR RELATE to the alleged DIRECT INFRINGEMENT or CONTRIBUTORY INFRINGEMENT of the COPYRIGHTED WORKS.

**Response to Request for Production No. 14**

    ALS will produce all responsive documents.

**Request for Production No. 15**

    DOCUMENTS sufficient to identify each act (including the date thereof) that YOU claim renders CLOUDFLARE liable to YOU for CONTRIBUTORY INFRINGEMENT.

**Response to Request for Production No. 15**

    ALS will produce documents sufficient to show this.

**Request for Production No. 16**

    DOCUMENTS sufficient to identify each unique COPYRIGHTED WORK that YOU claim is the subject of YOUR cause of action for CONTRIBUTORY INFRINGEMENT against CLOUDFLARE.

**Response to Request for Production No. 16**

    ALS will produce documents sufficient to show this.

**Request for Production No. 17**

    All charts, spreadsheets or other DOCUMENTS listing each unique DIRECT INFRINGEMENT by each WEBSITE that is the subject of YOUR

1   cause of action for CONTRIBUTORY INFRINGEMENT against

2   CLOUDFLARE.

3   **Response to Request for Production No. 17**

4       Objection: ALS will not produce responsive information protected by the

5   attorney-client or work product privileges.

6       Without waiving this objection, ALS will produce all non-privileged

7   responsive documents in its possession, custody or control..

8

9   **Request for Production No. 18**

10      All DOCUMENTS that REFER OR RELATE to any alleged DIRECT

11  INFRINGEMENT of the COPYRIGHTED WORKS by any CLOUDFLARE

12  customer.

13  **Response to Request for Production No. 18**

14      Objection: ALS will not produce responsive information protected by the

15  attorney-client or work product privileges.

16      Without waiving this objection, ALS will produce all non-privileged

17  responsive documents in its possession, custody or control.

18

19  **Request for Production No. 19**

20      DOCUMENTS sufficient to IDENTIFY all persons, entities and/or

21  websites YOU contend have infringed the COPYRIGHTED WORKS at any

22  time since their creation.

23  **Response to Request for Production No. 19**

24      ALS will produce documents sufficient to show this.

25

26  **Request for Production No. 20**

27      All DOCUMENTS that REFER OR RELATE to any damages or harm,

28

- 6 -

1  including, without limitation, monetary damage, YOU claim to have suffered,

2  or are likely to suffer, as a result of CLOUDFLARE's alleged conduct as set

3  forth in YOUR COMPLAINT.

4  **Response to Request for Production No. 20**

5      Objection: this request asks for information that is not relevant and not

6  proportional to the needs of the case, considering the importance of the issues at

7  stake in the action, the amount in controversy, the parties' relative access to

8  relevant information, the parties' resources, the importance of the discovery in

9  resolving the issues, and whether the burden or expense of the proposed

10  discovery outweighs its likely benefit.  FRCP R. 26(b)(1).  Every record in

11  ALS's possession, custody or control could be construed to "refer or relate" in

12  some way to ALS's efforts to make money, which in turn could "refer or relate"

13  to some degree to damages.

14      Without waiving these objections, ALS will produce all documents that it

15  intends to rely upon for its damage analysis or which ALS will use to evidence

16  damages.

17

18  **Request for Production No. 21**

19      All DOCUMENTS that REFER OR RELATE to, or support or disprove,

20  YOUR allegations in the COMPLAINT.

21  **Response to Request for Production No. 21**

22      Objection: ALS will not produce responsive information protected by the

23  attorney-client or work product privileges.

24

25  **Request for Production No. 22**

26      DOCUMENTS (including complaints) sufficient to identify every prior

27  judicial, quasi-judicial or arbitral proceeding involving alleged copyright

28  infringement to which YOU have been a party.

1   **Response to Request for Production No. 22**

2       ALS will produce documents sufficient to show this.

3

4   **Request for Production No. 23**

5       All transcripts of any depositions, hearings or trials involving alleged

6   copyright infringement in which YOU (including Sarah Walsh, Eric Penn,

7   Steve Easton, or any other of your officers, employees, representatives or

8   agents) have given any sworn testimony on behalf of ALS SCAN.

9   **Response to Request for Production No. 23**

10       ALS will produce all responsive documents.

11

12   **Request for Production No. 24**

13       All sworn declarations YOU have filed or submitted in any lawsuit or

14   other judicial or arbitral proceeding involving alleged copyright infringement in

15   which YOU were a party.

16   **Response to Request for Production No. 24**

17       ALS will produce all responsive documents..

18

19   **Request for Production No. 25**

20       All COMMUNICATIONS to, from or copying Sarah Walsh that REFER

21   OR RELATE to YOUR allegations in the COMPLAINT.

22   **Response to Request for Production No. 25**

23       Objection: ALS will not produce responsive information protected by the

24   attorney-client or work product privileges.

25       Without waiving this objection, ALS will produce all non-privileged

26   responsive documents in its possession, custody or control.

27

28

ALS Responses to Second Set of RFPs From Cloudflare

**Request for Production No. 26**

All COMMUNICATIONS to, from or copying Eric Penn that REFER OR RELATE to YOUR allegations in the COMPLAINT.

**Response to Request for Production No. 26**

Objection: ALS will not produce responsive information protected by the attorney-client or work product privileges.

Without waiving this objection, ALS will produce all non-privileged responsive documents in its possession, custody or control.

**Request for Production No. 27**

All COMMUNICATIONS to, from or copying Steve Easton that REFER OR RELATE to YOUR allegations in the COMPLAINT.

**Response to Request for Production No. 27**

Objection: ALS will not produce responsive information protected by the attorney-client or work product privileges.

Without waiving this objection, ALS will produce all non-privileged responsive documents in its possession, custody or control.

**Request for Production No. 28**

All COMMUNICATIONS between YOU (including Sarah Walsh, Eric Penn, Steve Easton, or any other of your officers, employees, representatives or agents) on the one hand, and anyone (including the Motion Picture Association of America or the Recording Industry Association of America) on the other, that REFER OR RELATE to YOUR allegations in the COMPLAINT.

**Response to Request for Production No. 28**

ALS will produce all responsive documents.

- 9 -

1  **Request for Production No. 29**

2      All DOCUMENTS that REFER OR RELATE to any effort by YOU to

3  consider, prior to YOU sending a takedown notification pursuant to the Digital

4  Millennium Copyright Act, whether the alleged infringements at issue in the

5  COMPLAINT were in fact a fair use.

6  **Response to Request for Production No. 29**

7      Objection: ALS will not produce responsive information protected by the

8  attorney-client or work product privileges.

9

10  **Request for Production No. 30**

11      All COMMUNICATIONS that REFER OR RELATE TO

12  CLOUDFLARE'S abuse webform located at

13  https://www.cloudflare.com/abuse/form , including YOUR refusal or

14  declination to use that webform to submit notices regarding alleged copyright

15  infringement..

16  **Response to Request for Production No. 30**

17      Objection: ALS will not produce responsive information protected by the

18  attorney-client or work product privileges.

19      Without waiving this objection, ALS responds: there are no non-

20  privileged responsive documents.

21

22  DATED:  February 8, 2017        SPILLANE TRIAL GROUP PLC

23

24

25  By: _____

26                  Jay M. Spillane
          Attorneys for Plaintiff ALS Scan, Inc.

27

28

ALS Responses to Second Set of RFPs From Cloudflare

**PROOF OF SERVICE**

1.  At the time of service I was over 18 years of age and not a party to this action.  My business address is: Spillane Trial Group PLC, 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.

2.  On February 8, 2017 I served the following document(s):

**PLAINTIFF'S RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANT CLOUDFLARE, INC.**

3.  I served these documents on the following person(s):

See attached service list.

4.  The document(s) in item 2 were served by the following means:

**X   By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 3 and *(specify one):*

    **X**   (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    ☐   (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed as indicated above at Los Angeles, CA.

☐   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 3. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 3. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in item 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 8, 2017

*Jessie Gietl*

Jessie Gietl

PROOF OF SERVICE

*ALS v. Cloudflare*
USDC C.D. Cal. 2:16-cv-5051-GW-AFM
Mail Service List

<u>Attorneys for Cloudflare and OVH</u>:

Rachel Herrick Kassabian
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

<u>Attorneys for Hivelocity</u>:

Shahrokh Sheik
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067

<u>Attorneys for Steadfast</u>:

Colin O'Brien
Partridge Partners P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654

Paul D. Supnick
9401 Wilshire Boulevard
Suite 1250
Beverly Hills, CA 90212

<u>Attorneys for Dolphin</u>:

S. Michael Kernan
The Kernan Law Firm
9663 Santa Monica Blvd.
Suite 450
Beverly Hills, CA 90210

# EXHIBIT B

Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE LAW GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>              Plaintiff,<br><br>    vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>              Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S RESPONSES TO THIRD SET OF REQUESTS FOR PRODUCTION FROM DEFENDANT CLOUDFLARE, INC.** |

1　　　　Plaintiff ALS Scan, Inc. ("ALS") objects to the Definitions and

2　Instructions to the extent that they purport to impose burdens beyond those

3　required by the Federal Rules of Civil Procedure.  Without limiting this

4　objection, ALS objects to the Instruction to the extent that they purport to

5　require ALS to produce documents by any method other than the so-called

6　"Relativity" style format that Cloudflare has insisted upon.

7

8　　**REQUEST FOR PRODUCTION NO. 31**:

9　　　　All sale, license, assignment, transfer, or other agreements related to any

10　IMAGE or COPYRIGHTED WORK YOU are asserting against

11　CLOUDFLARE in THIS LAWSUIT.

12　　**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:

13　　　　ALS will produce all responsive documents.

14

15　　**REQUEST FOR PRODUCTION NO. 32**:

16　　　　All DOCUMENTS (including web page captures or screenshots)

17　showing that any IMAGES YOU are asserting against CLOUDFLARE in THIS

18　LAWSUIT are or were domestically cached by CLOUDFLARE.

19　　**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**:

20　　　　ALS has and will produce all responsive documents.

21

22　　**REQUEST FOR PRODUCTION NO. 33**:

23　　　　All DOCUMENTS (including web page captures or screenshots)

24　showing that any IMAGES YOU are asserting against CLOUDFLARE in THIS

25　LAWSUIT are or were infringed by the WEBSITE(S).

26　　**RESPONSE TO REQUEST FOR PRODUCTION NO. 33**:

27　　　　ALS has and will produce all responsive documents.

28

- 1 -

1   **REQUEST FOR PRODUCTION NO. 34**:

2   All DMCA NOTICES YOU sent to any PERSON regarding any alleged

3   infringement of any of the IMAGES at issue in YOUR LAWSUIT against

4   CLOUDFLARE.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

6   ALS has and will produce all responsive documents.

7

8   **REQUEST FOR PRODUCTION NO. 35**:

9   All DOCUMENTS (including lists, spreadsheets, databases, or other

10  records) used by ALS's agents (such as Eric Penn or Steve Easton) to determine

11  "which sites have authority to display ALS images, and which do not," as set

12  forth in ¶ 57 of the COMPLAINT.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35**:

14  There are no responsive documents.

15

16  **REQUEST FOR PRODUCTION NO. 36**:

17  All DOCUMENTS REFERRING OR RELATING TO Alex Kirn's

18  photography work for ALS pertaining to any IMAGES YOU are asserting

19  against CLOUDFLARE in THIS LAWSUIT.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36**:

21  ALS objects to this Request on the grounds that it is vague and

22  ambiguous, overbroad and calls for production of documents neither relevant

23  nor reasonably calculated to lead to the discovery of admissible information.

24  ALS has already answered discovery requests explaining that there are no

25  "work for hire" agreements with Alex Kirn pertaining to his photography for

26  ALS.  He shot the ALS works as owner/employee of ALS then, after selling the

27  shares to Sarah Walsh, has continued to shoot as an employee.  Virtually

28

- 2 -

1   anything, or nothing, might "refer" or "relate" to "Alex Kirn's photography

2   work."

3

4   **REQUEST FOR PRODUCTION NO. 37:**

5   DOCUMENTS sufficient to identify Alex Kirn's legal employment

6   status with ALS at the time(s) he shot any of the IMAGES YOU are asserting

7   against CLOUDFLARE in THIS LAWSUIT.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

9   ALS has already produced its tax returns, which show that Alex Kirn

10  owned the shares of ALS until recently.  ALS will produce redacted copies of

11  Alex Kirn's past W2 statements to the extent they are still in ALS's possession,

12  custody or control.

13

14  **REQUEST FOR PRODUCTION NO. 38:**

15  All DOCUMENTS that REFER OR RELATE TO ALS's relationship

16  with Steve Easton, including any employment agreements, contractor

17  agreements, joint ventures, or any other contract or agreement relating to Steve

18  Easton's authorization to send DMCA NOTICES on behalf of ALS.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

20  There is no formal employment agreement or contract.  The beginning of

21  the relationship may be reflected in emails.  If ALS still has possession, custody

22  or control of such email(s) they will be produced.

23

24  **REQUEST FOR PRODUCTION NO. 39:**

25  All DOCUMENTS that REFER OR RELATE TO compensation ALS

26  pays to Steve Easton for his services, including but not limited to, his

27  compensation structure, income formula or basis, and any bonus or incentive

28  program.

- 3 -

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

2      ALS objects to this request on the grounds that it is overbroad and calls

3   for information neither relevant nor reasonably calculated to lead to the

4   discovery of admissible evidence.  ALS further objects to this request on the

5   grounds that it invades the rights of privacy of Steve Easton.

6

7   **REQUEST FOR PRODUCTION NO. 40:**

8      All COMMUNICATIONS between ALS and Apic Worldwide (a/k/a the

9   Association for the Protection of Internet Copyright).

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

11      ALS objects to this request to the extent it calls for production of

12   information protected by the attorney-client communication privilege or the

13   attorney work product doctrine.

14      ALS objects to this request on the grounds that it is overbroad and calls

15   for information neither relevant nor reasonably calculated to lead to the

16   discovery of admissible evidence.  ALS has already agreed to produce every

17   email communications that pertains to the sites and infringements at issue in the

18   case.

19

20   **REQUEST FOR PRODUCTION NO. 41:**

21      All DOCUMENTS that REFER OR RELATE to COMMUNICATIONS

22   between ALS and Apic Worldwide (a/k/a the Association for the Protection of

23   Internet Copyright).

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

25      ALS objects to this request to the extent it calls for production of

26   information protected by the attorney-client communication privilege or the

27   attorney work product doctrine.

28

- 4 -

1    ALS objects to this request on the grounds that it is overbroad and calls

2    for information neither relevant nor reasonably calculated to lead to the

3    discovery of admissible evidence.  ALS has already agreed to produce every

4    email communications that pertains to the sites and infringements at issue in the

5    case.

6

7    **REQUEST FOR PRODUCTION NO. 42:**

8    All COMMUNICATIONS between ALS and the WEBSITES.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

10   ALS has and will produce all responsive documents.

11

12   **REQUEST FOR PRODUCTION NO. 43:**

13   All COMMUNICATIONS between ALS and the PERSONS providing

14   hosting services to the WEBSITES.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

16   ALS has and will produce all responsive documents.

17

18   **REQUEST FOR PRODUCTION NO. 44:**

19   All COMMUNICATIONS between ALS and the United States

20   Copyright Office.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

22   ALS will produce all responsive documents.

23

24   **REQUEST FOR PRODUCTION NO. 45:**

25   All COMMUNICATIONS, notes, memos, letters or other

26   DOCUMENTS REFERRING OR RELATING TO ALS's

27   COMMUNICATIONS with the United States Copyright Office.

28

- 5 -

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**:

2    ALS will produce all responsive documents.

3

4    **REQUEST FOR PRODUCTION NO. 46**:

5    All COMMUNICATIONS between ALS and law enforcement officials

6    anywhere in the world REFERRING OR RELATING TO the WEBSITES.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 46**:

8    ALS will produce all responsive documents.

9

10   **REQUEST FOR PRODUCTION NO. 47**:

11   All COMMUNICATIONS, notes, memos, letters or other

12   DOCUMENTS REFERRING OR RELATING TO ALS's

13   COMMUNICATIONS with law enforcement officials anywhere in the world

14   concerning the WEBSITES.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 47**:

16   ALS will produce all responsive documents.

17

18   **REQUEST FOR PRODUCTION NO. 48**:

19   DOCUMENTS sufficient to identify all PERSONS associated or

20   affiliated with YOU (other than ALS itself and Spillane Trial Group PLC) who

21   have a pecuniary interest in the outcome of THIS LAWSUIT.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 48**:

23   ALS objects to the ALS objects to this request to the extent it calls for

24   production of information protected by the attorney-client communication

25   privilege or the attorney work product doctrine.

26   There are no non-privileged responsive documents.

27

28

- 6 -

1   **REQUEST FOR PRODUCTION NO. 49:**

2       DOCUMENTS sufficient to show ALS's gross and net revenues, by year,

3   for every year since 2001.

4       **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

5       ALS has already produced its tax returns, which show gross and net

6   revenues, for each such year.

7

8   **REQUEST FOR PRODUCTION NO. 50:**

9       All DOCUMENTS that constitute ALS's balance sheets, audit reports,

10  general ledgers, or profit/loss statements for every year since 2001.

11      **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

12      ALS will produce all responsive documents.

13

14  **REQUEST FOR PRODUCTION NO. 51:**

15      DOCUMENTS sufficient to show ALS's membership dues or

16  subscription fees for ALSSCAN.COM and ALSANGELS.COM every year

17  since 2001.

18      **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

19      ALS doesn't have a document that schedules subscription fees for the

20  sites.  The sales summaries ALS has already produced reflect the price(s) at

21  which subscriptions were sold.

22

23  **REQUEST FOR PRODUCTION NO. 52:**

24      DOCUMENTS sufficient to show ALS's total number of members or

25  subscribers to ALSSCAN.COM and ALSANGELS.COM for every year since

26  2001.

27

28

ALS Responses to Third RFPs From Cloudflare

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52**:

2      ALS objects to this request on the grounds that it is overbroad and calls

3  for information neither relevant nor reasonably calculated to lead to the

4  discovery of admissible evidence.

5

6  **REQUEST FOR PRODUCTION NO. 53**:

7      DOCUMENTS sufficient to show all current and historical posted

8  versions of the Terms of Service, privacy policies, FAQs, customer support

9  pages, Section 2257 pages, and all other online terms for ALSSCAN.COM and

10  ALSANGELS.COM, for the period 2001 to present.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 53**:

12      ALS objects to this request on the grounds that it is overbroad and calls

13  for information neither relevant nor reasonably calculated to lead to the

14  discovery of admissible evidence.  ALS doesn't have documents showing

15  "historical" terms.  Cloudflare can take screen captures of the terms currently

16  displayed and use publicly available means to search for archival captures of

17  the sites.

18

19  **REQUEST FOR PRODUCTION NO. 54**:

20      All DOCUMENTS and COMMUNICATIONS REFERRING OR

21  RELATING TO ALS's claimed losses since 2001, and the reasons therefore.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 54**:

23      ALS objects to the ALS objects to this request to the extent it calls for

24  production of information protected by the attorney-client communication

25  privilege or the attorney work product doctrine.

26      ALS will produce all non-privileged responsive documents, if any.

27

28

- 8 -

1  **REQUEST FOR PRODUCTION NO. 55**:

2  DOCUMENTS sufficient to show ALS's gross and net revenues, and

3  expenses, attributable to each IMAGE, GALLERY or PHOTOSET at issue in

4  THIS LAWSUIT against CLOUDFLARE, by year, for every year since 2001.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 55**:

6  Subscribers to ALS's sites gain access to the entire gallery of works

7  available on the site.  ALS doesn't have information on gross or net revenues or

8  expenses broken down on an "image," "gallery" or "photoset" basis.

9

10  **REQUEST FOR PRODUCTION NO. 56**:

11  Documents sufficient to show ALS Scan's profits or losses attributable to

12  each IMAGE, GALLERY or PHOTOSET at issue in THIS LAWSUIT against

13  CLOUDFLARE, by year, for every year since 2001.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 56**:

15  Subscribers to ALS's sites gain access to the entire gallery of works

16  available on the site.  ALS doesn't have information on gross or net revenues or

17  expenses broken down on an "image," "gallery" or "photoset" basis.

18

19  **REQUEST FOR PRODUCTION NO. 57**:

20  Documents sufficient to show the value of each IMAGE, GALLERY and

21  PHOTOSET at issue in THIS LAWSUIT against CLOUDFLARE.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 57**:

23  Subscribers to ALS's sites gain access to the entire gallery of works

24  available on the site.  ALS doesn't sell licenses to its works to third parties.

25  ALS doesn't have information on "value" broken down on an "image,"

26  "gallery" or "photoset" basis.

27

28

ALS Responses to Third RFPs From Cloudflare

1   **REQUEST FOR PRODUCTION NO. 58**:

2   All DOCUMENTS REFERRING OR RELATING TO YOUR

3   contention, if YOU so contend, that CLOUDFLARE is not entitled to DMCA

4   safe harbor in THIS LAWSUIT.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 58**:

6   ALS objects to this request to the extent it calls for production of

7   information protected by the attorney-client communication privilege or the

8   attorney work product doctrine.

9   ALS will produce all non-privileged responsive documents.

10

11   **REQUEST FOR PRODUCTION NO. 59**:

12   ALL DOCUMENTS REFERRING OR RELATING TO the alleged

13   infringement of each of the IMAGES at issue in THIS LAWSUIT against

14   CLOUDFLARE which occurred prior to YOUR application to register each of

15   those IMAGES.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 59**:

17   ALS objects to this request to the extent it calls for production of

18   information protected by the attorney-client communication privilege or the

19   attorney work product doctrine.

20   ALS will produce all non-privileged responsive documents.

21

22   DATED:  July 3, 2017

23                              SPILLANE LAW GROUP PLC

24

25

26   By: _____

27                              Jay M. Spillane
                               Attorneys for Plaintiff ALS Scan, Inc.

28

- 10 -

## PROOF OF SERVICE

1.  At the time of service I was over 18 years of age and not a party to this action.  My business address is: Spillane Trial Group PLC, 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.

2.  On July 3, 2017 I served the following document(s):

**PLAINTIFF'S RESPONSES TO THIRD SET OF REQUESTS FOR PRODUCTION FROM DEFENDANT CLOUDFLARE, INC.**

3.  I served these documents on the following person(s):

See attached service list.

4.  The document(s) in item 2 were served by the following means:

**X   By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 3 and *(specify one):*

    **X**   (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    ☐   (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed as indicated above at Los Angeles, CA.

☐   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 3. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 3. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in item 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 3, 2017

*Jessie Gietl*

_____

Jessie Gietl

---

PROOF OF SERVICE

*ALS v. Cloudflare*
USDC C.D. Cal. 2:16-cv-5051-GW-AFM
Mail Service List

Attorneys for Cloudflare:

Rachel Herrick Kassabian
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Attorneys for Hivelocity:

Shahrokh Sheik
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067

Attorneys for Steadfast:

Colin O'Brien
Partridge Partners P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654

Paul D. Supnik
9401 Wilshire Boulevard
Suite 1250
Beverly Hills, CA 90212

Co-Counsel for ALS:

John Flynn
Kevin Neal
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225

# EXHIBIT C

1  Jay M. Spillane (Bar No. 126364)
2  jspillane@spillaneplc.com
   SPILLANE LAW GROUP PLC
3  468 N. Camden Drive
   Second Floor
4  Beverly Hills, CA 90210
   (424) 217-5980
5  (888) 590-1683 (fax)

6  Attorneys for Plaintiff ALS Scan, Inc.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation, | Case No.: 2:16-cv-05051-GW-AFM |
| Plaintiff, | **PLAINTIFF'S RESPONSES TO THIRD SET OF INTERROGATORIES FROM DEFENDANT CLOUDFLARE, INC.** |
| vs. | |
| CLOUDFLARE, INC., a Delaware corporation, et al., | |
| Defendants. | |

**Interrogatory No. 12**

IDENTIFY the complete basis for YOUR contention, if YOU so contend, that Alex Kirn (and any other photographers of the COPYRIGHTED WORKS) were ALS employees at the time they shot the COPYRIGHTED WORKS, including a detailed description of all employment agreements, terms of employment (including full time, part time, salaried or hourly status), employment status documentation (such as W-2 forms, W-4 forms and status of withholding of payroll taxes), dates of employment, the degree of control by ALS over the creation of the COPYRIGHTED WORKS (including location and equipment), and the degree of control by ALS over the employee (including the employee's schedule in creating the COPYRIGHTED WORKS, and the method of payment for the COPYRIGHTED WORKS).

**Response to Interrogatory No. 12**

ALS objects to this request on ground that the level of detail demanded is unreasonable, oppressive and overbroad and invades the rights of privacy of the employees in question.

Alex Kirn previously owned 100% of the shares of ALS. Mr. Kirn received a salary from ALS (W2) and also distributions of net income reportable in a Schedule K1. He devoted his full time services to ALS, including shooting photos and videos. Mr. Kirn sold the shares of ALS to Sarah Walsh in about December 2013. Since that time Mr. Kirn has continued to shoot works under the direction and control of ALS on a part time basis, for which he is paid a salary as reflected in a W2.

Jenae Gates has been employed by ALS since about January 2005 and remains employed by ALS to the present. She devotes her full time services to ALS for which she receives a salary as reflected on a W2. She shoots subject to the direction and control of ALS.

- 1 -

1    ALS provides the equipment for the shoots and directs the location and
2    poses.  ALS doesn't pay "for the COPYRIGHTED WORKS" but pays a salary
3    to those shooting the works.
4         At a very early stage – 1996 and early 1997 – ALS engaged Charles
5    Davis as an independent photograph to shoot sessions.  Each time Mr. Davis
6    signed a "Photography Contract" providing that ALS would remain the
7    exclusive owner of the content of the shoot and for payment after the photo
8    session.  ALS provided the film and directed the location and timing of the
9    shoot.
10
11   **Interrogatory No. 13**
12        IDENTIFY each and every PERSON to whom ALS has ever sent a
13   DMCA NOTICE REFERRING OR RELATING TO any of the IMAGES at
14   issue in YOUR LAWSUIT against CLOUDFLARE, the date(s) of those
15   DMCA NOTICES, and the PERSONS' response to those DMCA NOTICES.
16   **Response to Interrogatory No. 13**
17        ALS objects to this request on the grounds that it is overbroad,
18   oppressive and unreasonably burdensome.  In order to answer the questions,
19   ALS would have to examine and prepare a summary or abstract from the Steve
20   Easton emails, which Cloudflare has demanded and which are being produced.
21   The burden of deriving the answer will be substantially the same for either
22   party.  Cloudflare is invited to review those records and prepare its own
23   summary or abstraction under FRCP R. 33(d).
24
25   **Interrogatory No. 14**
26        For each IMAGE YOU contend was contributorily infringed by
27   CLOUDFLARE, IDENTIFY all evidence (including web page captures, if any)
28   supporting YOUR contention, if YOU so contend, that the IMAGE (1) was

1   directly infringed by one or more of the WEBSITES, and (2) is or was
2   domestically cached by CLOUDFLARE.
3   **Response to Interrogatory No. 14**
4         Prior to sending an email giving notice of infringement, Steve Easton
5   observed infringing ALS content on the sites in question.  The infringing nature
6   of the images were verifiable by observation, and if necessary Mr. Easton could
7   confirm the infringing nature of the content by contacting ALS.  The infringing
8   nature of the content is not hard to discern.  First, pirate websites don't charge a
9   subscription fee to view their content.  Second, a pirate site often displays
10  content by multiple copyright owners, sometimes leaving the owners' copyright
11  notification on the image.  Third, a pirate site displays entire galleries of ALS
12  models, perhaps 200 or more images, rather than the sixteen or so images ALS
13  authorizes its affiliates to use.  Fourth, the images are available for download,
14  sometimes with a convenient zip download feature that permits a user to
15  download an entire ALS gallery in one click.  Fifth, the site is not pointing
16  traffic to ALS but to third parties.
17        Steve Easton them composes an email to all parties he perceives are
18  involved in the infringing content, or providing services to the infringing site,
19  given notice of the infringement.  The emails contain a hyperlink to each and
20  every infringing image, thus providing notice of the work infringed and the
21  location of the infringing copy.  Mr. Easton then sends the email.
22        If the owner or operator of the pirate website takes the infringing images
23  down, then the links in the Easton email resolve to an error page stating that the
24  requested image cannot be found.  However, even in those cases the hyperlinks
25  contain informative characters the permit ALS to identify the set of works that
26  were the subject of the infringement notice.
27
28

ALS Responses to Third Set of Interrogatories From Cloudflare

1    In a limited number of cases, Eric Penn created page captures showing
2    the Easton email and a selection of the infringing ALS images on the pirate
3    website.
4    In an even more limited number of cases, ALS has produced screen
5    captures of infringing ALS images on pirate websites showing that the image
6    was served from a domestic Cloudflare data center.
7    The Easton emails, the extant page captures and the captures of header
8    data showing whether particular images were located on Cloudflare data centers
9    have been produced by ALS.
10
11   **Interrogatory No. 15**
12   For each IMAGE YOU contend was contributorily infringed by
13   CLOUDFLARE, IDENTIFY (1) whether, when and to whom YOU sent a
14   DMCA NOTICE regarding the alleged infringement, and (2) whether and when
15   the alleged infringement was removed from the WEBSITE(S) following YOUR
16   transmission of that DMCA NOTICE (if any).
17   **Response to Interrogatory No. 15**
18   ALS has produced updated schedules reflecting the dates and recipients
19   of all Easton emails giving post-registration notice of infringement of works
20   with respect to which ALS seeks to hold Cloudflare secondarily liable.  ALS
21   doesn't have a systematic method for logging whether the alleged infringements
22   were or were not removed.  In some case Mr. Easton sent a follow up email
23   notification if he observed that after sending an infringement notice the
24   infringing works had not been removed.
25
26   **Interrogatory No. 16**
27   IDENTIFY in detail each and every reason why YOU stopped using
28   CLOUDFLARE's abuse webform, located at

- 4 -

https://www.cloudflare.com/abuse/form, to report alleged copyright
infringements.

**Response to Interrogatory No. 16**

Mr. Easton has an email format that he uses for all of his clients. His
format is convenient to communicate infringement of an unlimited number of
works to an unlimited number of recipients.

Cloudflare's web form says that only ten infringing URLs at a time will
be accepted. In this case Mr. Easton often needed to report infringement of 200
or more ALS works on one website. To provide notice to Cloudflare in that
instance would have required him to use Cloudflare's web form twenty or more
times versus sending one email with every infringing URL.

The email format conveniently allows Mr. Easton to send a single email
to all parties associated with the website, for example its owner and the host as
well as Cloudflare if the identities of those parties were known. If Mr. Easton
wanted to send notice of infringement to three parties, he could conveniently
add those parties to the "to" line of the email. On the other hand, sending
notice of infringement to three parties through use of web forms would have
required Mr. Easton to access and use the forms on three different sites.
Cloudflare only recently amended its online complaint form to enable a choice
to forward the complaint to the site owner or host.

Mr. Easton sends lots of notices of lots of infringement of the copyrights
of his clients to lots of parties. If Mr. Easton had to stop and use Cloudflare's
online form every time he sent a notice of infringement to Cloudflare the whole
process would have bogged down. The law did not require Mr. Easton to use
Cloudflare's form. Mr. Easton could better serve his clients and provide faster
and more complete notices of infringement by using email submissions.

- 5 -

**Interrogatory No. 17**

For each IMAGE YOU contend was contributorily infringed by CLOUDFLARE, IDENTIFY the first date, to YOUR knowledge, that it was (1) uploaded to ALSSCAN.COM and/or ALSANGELS.COM, (2) made available for printing or downloading by registered users of ALSSCAN.COM and/or ALSANGELS.COM, and (3) directly infringed by one or more WEBSITES.

**Response to Interrogatory No. 17**

(1) ALS can supplement these responses with a schedule of upload dates. (2) These would be the same dates as No. 1. However, it should be noted that registered subscribers to ALS's sites have a limited right to print or download content for ease of personal consumption, not for the purposes of resale or redistribution of the works. (3) The dates of direct infringement are reflected by the dates of the Steve Easton emails, which have been produced to ALS. FRCP R. 33(d).

**Interrogatory No. 18**

For every IMAGE YOU contend was infringed at a URL YOU listed in any DMCA NOTICE(S) YOU sent to CLOUDFLARE, IDENTIFY whether the alleged infringement is still accessible via that URL as of the date of YOUR response to this Interrogatory.

**Response to Interrogatory No. 18**

ALS has not systematically logged if or when content in an infringement notice remains live. In some cases ALS has noted the date of a second notice of infringement or an observation that content is still live on the infringement schedules produced to Cloudflare. In order to answer the questions, ALS would have to examine and prepare a summary or abstract from the Steve Easton emails, which Cloudflare has demanded and which are being produced. The burden of deriving the answer will be substantially the same for either party.

- 6 -

1  Cloudflare is invited to review those records and prepare its own summary or

2  abstraction under FRCP R. 33(d).

3

4  **Interrogatory No. 19**

5      IDENTIFY and describe in detail every instance in which (1) YOU or (2)

6  Steve Easton (on behalf of YOU or any other PERSON) sent a DMCA

7  NOTICE to any PERSON which turned out to be erroneous, incorrect,

8  mistaken, or false, in whole or in part.

9  **Response to Interrogatory No. 19**

10      None of which ALS is aware.

11

12  **Interrogatory No. 20**

13      For each of the copyright registrations and registration applications listed

14  in Exhibit 1 to YOUR COMPLAINT, IDENTIFY (1) whether YOU are still

15  asserting each of the registrations or applications against CLOUDFLARE in

16  THIS LAWSUIT, and if so, (2) which specific IMAGES included within each

17  of those registrations or applications YOU contend were infringed by which

18  specific WEBSITES at which specific URLs, and (3) if YOU sent a DMCA

19  NOTICE regarding those alleged infringements, the date(s) those DMCA

20  NOTICE(S) were sent, and to whom.

21  **Response to Interrogatory No. 20**

22      All of this information is set forth in the updated infringement logs

23  produced by ALS on June 23, 2017.

24

25  **Interrogatory No. 21**

26      IDENTIFY the complete factual and legal basis for YOUR contention, if

27  YOU so contend, that YOU are entitled to a separate statutory damages award

28

- 7 -

1    for each IMAGE YOU claim was infringed and are asserting against

2    CLOUDFLARE in THIS LAWSUIT.

3    **Response to Interrogatory No. 21**

4        The Copyright Act provides for an award of statutory damages for each

5    "work" infringed. A photograph is a "work." The photographs were not

6    assembled into a collective whole or registered or held out as compilations.

7    Each individual image has independent economic value and is, in itself, viable.

8

9    **Interrogatory No. 22**

10       IDENTIFY the complete factual and legal basis for YOUR contention, if

11   YOU so contend, that Cloudflare is not entitled to DMCA safe harbor in THIS

12   LAWSUIT.

13   **Response to Interrogatory No. 22**

14       ALS needs more time to provide a complete answer to this question.

15   Cloudflare unreasonably refused a request for a mere one week extension to

16   answer this set of interrogatories. ALS will provide supplemental responses

17   setting forth its answer to this interrogatory.

18

19   DATED: July 3, 2017

                               SPILLANE LAW GROUP PLC

                               By: _____

                                     Jay M. Spillane

                               Attorneys for Plaintiff ALS Scan, Inc.

                               ALS SCAN, INC.

                               By: _____

                                     Sarah Walsh

                               Its President

ALS Responses to Third Set of Interrogatories From Cloudflare

**Response to Interrogatory No. 21**

The Copyright Act provides for an award of statutory damages for each "work" infringed. A photograph is a "work." The photographs were not assembled into a collective whole or registered or held out as compilations. Each individual image has independent economic value and is, in itself, viable.

**Interrogatory No. 22**

IDENTIFY the complete factual and legal basis for YOUR contention, if YOU so contend, that Cloudflare is not entitled to DMCA safe harbor in THIS LAWSUIT.

**Response to Interrogatory No. 22**

ALS needs more time to provide a complete answer to this question. Cloudflare unreasonably refused a request for a mere one week extension to answer this set of interrogatories. ALS will provide supplemental responses setting forth its answer to this interrogatory.

DATED: July 3, 2017

SPILLANE LAW GROUP PLC

By: _____
Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

ALS SCAN, INC.

By: _____
Sarah Walsh
Its President

- 8 -

ALS Responses to Third Set of Interrogatories From Cloudflare

## PROOF OF SERVICE

1.   At the time of service I was over 18 years of age and not a party to this action.  My business address is: Spillane Trial Group PLC, 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.

2.   On July 3, 2017 I served the following document(s):

**PLAINTIFF'S RESPONSES TO THIRD SET OF INTERROGATORIES FROM DEFENDANT CLOUDFLARE, INC.**

3.  I served these documents on the following person(s):

See attached service list.

4.  The document(s) in item 2 were served by the following means:

**x   By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 3 and *(specify one):*

    **x**   (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    ☐   (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed as indicated above at Los Angeles, CA.

☐   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 3. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 3. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in item 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 3, 2017

*Jessie Gietl*

_____

Jessie Gietl

*ALS v. Cloudflare*
USDC C.D. Cal. 2:16-cv-5051-GW-AFM
Mail Service List

Attorneys for Cloudflare:

Rachel Herrick Kassabian
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Attorneys for Hivelocity:

Shahrokh Sheik
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067

Attorneys for Steadfast:

Colin O'Brien
Partridge Partners P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654

Paul D. Supnik
9401 Wilshire Boulevard
Suite 1250
Beverly Hills, CA 90212

Co-Counsel for ALS:

John Flynn
Kevin Neal
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225

# EXHIBIT D

1   Jay M. Spillane (Bar No. 126364)
2   jspillane@spillaneplc.com
    SPILLANE LAW GROUP PLC
3   468 N. Camden Drive
    Second Floor
4   Beverly Hills, CA 90210
    (424) 217-5980
5   (888) 590-1683 (fax)

6   Attorneys for Plaintiff ALS Scan, Inc.

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  ALS SCAN, INC., a Maryland          Case No.: 2:16-cv-05051-GW-AFM
11  corporation,
                                         **PLAINTIFF'S RESPONSES TO**
12          Plaintiff,                   **FIRST SET OF REQUESTS FOR**
                                         **ADMISSION FROM DEFENDANT**
13                                       **CLOUDFLARE, INC.**
14      vs.

15  CLOUDFLARE, INC., a Delaware
16  corporation, et al.,

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

1    **REQUEST FOR ADMISSION NO. 1:**

2         Admit that YOU do not contend that CLOUDFLARE directly

3    infringes YOUR COPYRIGHTED WORKS.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

5         ALS admits that it has not pleaded any such contention and that

6    direct infringement by Cloudflare is not an issue at the trial.  ALS is not

7    aware of all of Cloudflare's operations and has not completed its

8    discovery from Cloudflare.  To the extent that ALS may in the future

9    discover evidence of direct infringement by Cloudflare or appreciate a

10   theory of direct infringement based upon facts known and/or to be

11   discovered, ALS denies this request.

12

13   **REQUEST FOR ADMISSION NO. 2:**

14        Admit that CLOUDFLARE does not store permanent copies of

15   content displayed on the WEBSITES.

16   **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

17        Admitted.

18

19   **REQUEST FOR ADMISSION NO. 3:**

20        Admit that YOU have no evidence that CLOUDFLARE stores

21   permanent copies of content displayed on the WEBSITES.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

23        Admitted.

24

25   **REQUEST FOR ADMISSION NO. 4:**

26        Admit that CLOUDFLARE does not host the WEBSITES.

27

28

- 1 -

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that YOU have no evidence that CLOUDFLARE hosts the WEBSITES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 6:**

Admit that CLOUDFLARE does not own or operate the host servers for the WEBSITES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOU have no evidence that CLOUDFLARE owns or operates the host servers for the WEBSITES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that CLOUDFLARE cannot remove content from the WEBSITES' host servers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that YOU have no evidence that CLOUDFLARE can remove content from the WEBSITES' host servers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

If "host" means permanent storage of material until termination of the business relationship with the user, then this request is admitted. If "host" means storage for a period of time beyond transitory or ephemeral storage, this request is denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that if CLOUDFLARE terminated its services to the WEBSITES, those WEBSITES would still be accessible on the Internet.

- 3 -

1   than CLOUDFLARE) to other PERSONS at those other PERSONS' request or

2   direction.

3      **RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

4      Denied.

5

6      **REQUEST FOR ADMISSION NO. 42:**

7      Admit that CLOUDFLARE provides caching services.

8      **RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

9      If by "caching services" Cloudflare means "systems caching" within the

10   meaning of 17 U.S.C. § 512(b), then the request is denied.  If by "caching

11   services" Cloudflare means services that could be referred to as "caching" in

12   any sense of the term, then the requested is admitted.

13

14      **REQUEST FOR ADMISSION NO. 43:**

15      Admit that CLOUDFLARE's caching services comply with industry

16   standard data communications protocols.

17      **RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

18      If by "caching services" Cloudflare means "systems caching" within the

19   meaning of 17 U.S.C. § 512(b), then the request is denied.  If by "caching

20   services" Cloudflare means services that could be referred to as "caching" in

21   any sense of the term, then the requested is denied for lack of information or

22   belief.

23

24      **REQUEST FOR ADMISSION NO. 44:**

25      Admit that CLOUDFLARE complies with rules concerning the

26   refreshing, reloading, or other updating of material in its system.

27

28

ALS Responses to First RFAs From Cloudflare

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

The requested is denied for lack of information or belief.

**REQUEST FOR ADMISSION NO. 45:**

Admit that CLOUDFLARE automatically follows WEBSITES' rules or instructions regarding caching.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

If by "caching" Cloudflare means "systems caching" within the meaning of 17 U.S.C. § 512(b), then the request is denied. If by "caching" Cloudflare means services that could be referred to as "caching" in any sense of the term, then the requested is denied for lack of information or belief.

**REQUEST FOR ADMISSION NO. 46:**

Admit that ALS has never sent a DMCA NOTICE to CLOUDFLARE stating that the IMAGE(S) located at the URLs that were the subject of the DMCA NOTICE had been previously been removed from the WEBSITE in question.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Denied.

**REQUEST FOR ADMISSION NO. 47:**

Admit that ALS has never sent a DMCA NOTICE to CLOUDFLARE stating that access to the IMAGE(S) located at the URLs that were the subject of the DMCA NOTICE had been disabled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Denied.

- 13 -

**REQUEST FOR ADMISSION NO. 67:**

Admit that YOU have tracked and/or recorded the WEBSITES' response (if any) to YOUR DMCA NOTICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

ALS admits that it has sometimes observed responses to DMCA notifications and made a note. ALS denies that it has "tracked and/or recorded" website responses systematically or in every instance.

**REQUEST FOR ADMISSION NO. 68:**

Admit that YOU have not tracked and/or recorded the WEBSITES' response (if any) to YOUR DMCA NOTICES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

ALS admits that it has sometimes observed responses to DMCA notifications and made a note. ALS denies that it has "tracked and/or recorded" website responses systematically or in every instance.

**REQUEST FOR ADMISSION NO. 69:**

Admit that for all the COPYRIGHTED WORKS at issue in THIS LAWSUIT involving IMAGES for which YOU possess issued registrations, YOU registered them as published works with the United States Copyright Office.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Admitted.

**REQUEST FOR ADMISSION NO. 70:**

Admit that every representation YOU made to the United States Copyright Office in connection with the applications YOU submitted for

1   all of YOUR issued copyright registrations at issue in THIS LAWSUIT was

2   truthful.

3       **RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

4       The decision to place information in the Date of Publication field of a

5   copyright registration form was a legal judgment made by prior counsel, not a

6   statement of fact that can be proven "true" or "false," and on this ground ALS

7   denies the request.

8

9       **REQUEST FOR ADMISSION NO. 71:**

10      Admit that YOU are not asserting any copyrighted videos against

11  CLOUDFLARE in THIS LAWSUIT.

12      **RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

13      Admitted.

14

15      **REQUEST FOR ADMISSION NO. 72:**

16      Admit that YOU identify each IMAGE with a unique name or number.

17      **RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

18      Admitted.

19

20      **REQUEST FOR ADMISSION NO. 73:**

21      Admit that YOU do not identify each IMAGE with a unique name or

22  number.

23      **RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

24      Denied.

25

26      **REQUEST FOR ADMISSION NO. 74:**

27      Admit that YOU identify each PHOTOSET with a unique name or

28  number.

**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Admitted.

**REQUEST FOR ADMISSION NO. 75:**

Admit that YOU do not identify each PHOTOSET with a unique name or number.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

Admitted.

**REQUEST FOR ADMISSION NO. 76:**

Admit that YOU identify each GALLERY with a unique name or number.

**RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

Admitted.

**REQUEST FOR ADMISSION NO. 77:**

Admit that YOU do not identify each GALLERY with a unique name or number.

**RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

Admitted.

**REQUEST FOR ADMISSION NO. 78:**

Admit that CLOUDFLARE is entitled to DMCA safe harbor in THIS LAWSUIT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

Denied.

**RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

Admitted.

DATED:  July 3, 2017

SPILLANE LAW GROUP PLC

By: _____
              Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

- 25 -

# EXHIBIT E

Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE LAW GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>       Plaintiff,<br><br>  vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>       Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S RESPONSES TO FIFTH SET OF REQUESTS FOR PRODUCTION FROM DEFENDANT CLOUDFLARE, INC.** |

1    Plaintiff ALS Scan, Inc. ("ALS") objects to the Definitions and

2    Instructions to the extent that they purport to impose burdens beyond those

3    required by the Federal Rules of Civil Procedure.

4

5    **REQUEST FOR PRODUCTION NO. 64**:

6    All COMMUNICATIONS between YOU and any HYDENTRA

7    ENTITY.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 64**:

9    ALS objects to this request on the grounds that it seeks information

10   neither relevant nor reasonably calculated to lead to the discovery of admissible

11   evidence, is unduly burdensome and overbroad.  ALS further objects on the

12   grounds that this discovery is not proportional to the needs of the case,

13   considering the importance of the issues at stake in this action, the amount in

14   controversy, the parties' relative access to relevant information, the parties'

15   resources, the importance of the discovery in resolving the issues and whether

16   the burden or expense of the proposed discovery outweighs its likely benefit.

17   ALS has had an ongoing business relationship with Hydentra, which has

18   managed alsscan.com, and to call for every communication without regard to

19   subject matter would drag in a huge volume of information with no probative

20   value.  In response to this request, ALS will produce communications with

21   Hydentra that pertain to the infringement issues raised in this action, Cloudflare

22   or copyright to the content on alsscan.com.

23

24   **REQUEST FOR PRODUCTION NO. 65**:

25   All COMMUNICATIONS or other DOCUMENTS REFERRING OR

26   RELATING TO any HYDENTRA ENTITY.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65**:

ALS objects to this request on the grounds that it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and overbroad.  ALS further objects on the grounds that this discovery is not proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  ALS objects to this request to the extent it calls for information protected by the attorney-client privilege or work product doctrine.  ALS has had an ongoing business relationship with Hydentra, which has managed alsscan.com, and to call for every communication without regard to subject matter would drag in a huge volume of information with no probative value.  In response to this request, ALS will produce communications with Hydentra that pertain to the infringement issues raised in this action, Cloudflare or copyright to the content on alsscan.com.

**REQUEST FOR PRODUCTION NO. 66**:

All DOCUMENTS constituting all Net Receipts, statements, and invoices YOU have received from any HYDENTRA ENTITY, as referenced by § 6.F of the "ALS Hydentra Executed Contract" YOU produced.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66**:

ALS will produce all responsive documents.

**REQUEST FOR PRODUCTION NO. 67**:

All DOCUMENTS constituting all "complete and accurate records regarding the relationship contemplated by" § 6.G of the "ALS Hydentra Executed Contract" YOU produced.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67**:

There are no responsive documents, except to the extent one would consider the ALS-Hydentra contract itself and the payout records produced in response to Request No. 66 responsive to this request.

**REQUEST FOR PRODUCTION NO. 68**:

All DOCUMENTS constituting all audits or audit reports of YOUR records, including those conducted by or for any HYDENTRA ENTITY pursuant to § 6.G of the "ALS Hydentra Executed Contract" YOU produced.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68**:

There are no responsive documents.

**REQUEST FOR PRODUCTION NO. 69**:

All DOCUMENTS constituting any notice or consent of any assignment of any rights or obligations under the "ALS Hydentra Executed Contract" pursuant to § 11.D of that agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69**:

There are no responsive documents.

**REQUEST FOR PRODUCTION NO. 70**:

All DOCUMENTS REFERRING OR RELATING TO Jenae A. Gates' photography work for ALS pertaining to any images YOU are asserting against CLOUDFLARE in THIS LAWSUIT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70**:

ALS has already produced an exemplary W2 from 2006 showing Jenae A. Gates's employment with ALS and its employee manual, which show in general terms her employment and the terms of employment.  ALS will produce redacted W2s for earlier years also showing Jenae Gates's employment.  There are no responsive documents that pertain to her "photography work," such as a work for hire agreement or anything of that nature.

**REQUEST FOR PRODUCTION NO. 71**:

DOCUMENTS sufficient to identify Jenae A. Gates' legal employment status with ALS at the time(s) she shot any of the IMAGES YOU are asserting against CLOUDFLARE in THIS LAWSUIT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71**:

ALS has already produced an exemplary W2 from 2006 showing Jenae A. Gates's employment with ALS and its employee manual, which show in general terms her employment and the terms of employment.  ALS will produce redacted W2s for earlier years also showing Jenae Gates's employment.

**REQUEST FOR PRODUCTION NO. 72**:

All DMCA notices Jenae A. Gates sent to any PERSON regarding any alleged infringement of any of the IMAGES at issue in THIS LAWSUIT against CLOUDFLARE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72**:

There are no responsive documents.

**REQUEST FOR PRODUCTION NO. 73**:

DOCUMENTS sufficient to show all IMAGES later registered as ALS COPYRIGHTS that were personally captured, shot, or fixed by Alex Kirn.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73**:

ALS has already produced all of the Copyright Registrations pertaining to works shot by Alex Kirn as well as deposit copies of every work submitted to the Copyright Office.  There are no other responsive documents.

**REQUEST FOR PRODUCTION NO. 74**:

DOCUMENTS sufficient to show all IMAGES later registered in the ALS COPYRIGHTS that were personally captured, shot, or fixed by any PERSON other than Alex Kirn, including but not limited to the "subcontractor" photographer Alex Kirn identified during his June 25, 2002 deposition in the matter of *ALS Scan v. Mauro, et al.,* at pages 30-31 of the transcript.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74**:

ALS has already produced all of the Copyright Registrations pertaining to works shot by Alex Kirn as well as deposit copies of every work submitted to the Copyright Office.  ALS has also produced every work-for-hire agreement with third parties in its files.  There are no other responsive documents.

**REQUEST FOR PRODUCTION NO. 75**:

DOCUMENTS sufficient to show Alex Kirn's past and current ownership interest (if any) in ALS SCAN.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75**:

As ALS has said repeatedly in response to similar inquiries, ALS has already produced its tax returns, which show Alex Kirn as owner of 100% of the shares of ALS prior to their sale.

**REQUEST FOR PRODUCTION NO. 76**:

All DOCUMENTS REFERRING OR RELATING TO the creation of the images copyrighted in the ALS COPYRIGHTS, including but not limited to all

model releases, DOCUMENTS created pursuant to 18 U.S.C. § 2257 and 18

U.S.C. § 2257A, and DOCUMENTS identifying all model, photographer,

location, styling, make-up, film, processing, travel, public relations, legal, and

advertising expenditures incurred in connection therewith.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**:

ALS objects to this request on the grounds that it seeks information

neither relevant nor reasonably calculated to lead to the discovery of admissible

evidence, is unduly burdensome and overbroad.  ALS further objects on the

grounds that this discovery is not proportional to the needs of the case,

considering the importance of the issues at stake in this action, the amount in

controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues and whether

the burden or expense of the proposed discovery outweighs its likely benefit.

There isn't a single document referenced in this request that has any bearing on

copyright.  To the extent that this request asks for expenditures, ALS has

already produced a backup file of its Quickbooks database, which reflects all

ALS expenditures.


**REQUEST FOR PRODUCTION NO. 77**:

All DOCUMENTS identifying the terms on which Alex Kirn sold his

ownership interest in ALS SCAN to Sarah Walsh, including the agreement

memorializing the sale, all COMMUNICATIONS regarding the sale and

purchase price, and all DOCUMENTS REFERRING OR RELATING TO the

valuation of ALS SCAN as a going concern and/or the valuation of the ALS

COPYRIGHTS at the time of the sale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77**:

ALS will produce its copy of the purchase and sale agreement, however,

the parties agreed it would remain confidential, and thus ALS will require either

Mr. Kirn's consent or to provide him with notice and an opportunity to seek a protective order.  ALS objects to the request to produce all communications regarding sale price on the grounds that this discovery is not proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  There were no valuations.

**REQUEST FOR PRODUCTION NO. 78**:

DOCUMENTS sufficient to show the click, view, or other popularity data over time per IMAGE on YOUR websites, including ALSSCAN.COM and ALSANGELS.COM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78**:

There are no responsive documents.

**REQUEST FOR PRODUCTION NO. 79**:

DOCUMENTS sufficient to show the click, view, or other popularity data over time per PHOTOSET or GALLERY on YOUR websites, including ALSSCAN.COM and ALSANGELS.COM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79**:

ALS will produce all responsive documents, namely, downloads from Google Analytics that show page views and a download from a Metart utility that shows statistics by photo set.

**REQUEST FOR PRODUCTION NO. 80**:

DOCUMENTS sufficient to show the number of times each IMAGE has been downloaded from YOUR websites, including ALSSCAN.COM and

1  ALSANGELS.COM, over what time period and by whom.

2      **RESPONSE TO REQUEST FOR PRODUCTION NO. 80**:

3      ALS is producing the server logs for alsangels.com in response to

4  Request No. 81.  Server logs from alsscan.com are in the possession, custody or

5  control of Hydentra.  Concerning the request for information concerning the

6  identity of ALS's customers, ALS objects on the grounds that this discovery is

7  not relevant and not proportional to the needs of the case, considering the

8  importance of the issues at stake in this action, the amount in controversy, the

9  parties' relative access to relevant information, the parties' resources, the

10  importance of the discovery in resolving the issues and whether the burden or

11  expense of the proposed discovery outweighs its likely benefit.

12

13      **REQUEST FOR PRODUCTION NO. 81**:

14      All ALSSCAN.COM andALSANGELS.COM server logs, data files,

15  summaries or reports REFERRING OR RELATING TO any uploads, views,

16  clicks or downloads of each IMAGE.

17      **RESPONSE TO REQUEST FOR PRODUCTION NO. 81**:

18      ALS is producing the server logs for alsangels.com.  Server logs from

19  alsscan.com are in the possession, custody or control of Hydentra.

20

21      **REQUEST FOR PRODUCTION NO. 82**:

22      All COMMUNICATIONS between YOU and any ALSSCAN.COM or

23  ALSANGELS.COM -visitor, user, subscriber or member, REFERRING OR

24  RELATING TO any of the IMAGES.

25

26      **RESPONSE TO REQUEST FOR PRODUCTION NO. 82**:

27      ALS objects on the grounds that this discovery is not relevant and not

28  proportional to the needs of the case, considering the importance of the issues at

- 8 -

1  stake in this action, the amount in controversy, the parties' relative access to

2  relevant information, the parties' resources, the importance of the discovery in

3  resolving the issues and whether the burden or expense of the proposed

4  discovery outweighs its likely benefit.

5

6  **REQUEST FOR PRODUCTION NO. 83**:

7  DOCUMENTS sufficient to explain the "ALS OnDemand" service and

8  whether it relates to any COPYRIGHTED WORKS at issue in THIS

9  LITIGATION.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 83**:

11  ALS will produce a page captures describing that ALSOnDemand

12  service.  ALS has no documents "explaining" whether the ALSOnDemand

13  service "relates" to copyrighted works at issue in this lawsuit.

14

15  **REQUEST FOR PRODUCTION NO. 84**:

16  DOCUMENTS sufficient to show all revenue generated and/or received

17  by YOU in connection with the sale or licensing or downloads of YOUR

18  IMAGES.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 84**:

20  There are no responsive documents.

21

22  **REQUEST FOR PRODUCTION NO. 85**:

23  All DOCUMENTS that REFER OR RELATE to the past or present

24  value of ALS, including but not limited to business valuations or consulting

25  reports.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85**:

27  There are no responsive documents, except to the extent the purchase and

28  sale agreement would be considered responsive.

- 9 -

**REQUEST FOR PRODUCTION NO. 86**:

DOCUMENTS sufficient to IDENTIFY the name and current business address, email, and phone number of every accountant who has been employed or retained or engaged by ALS dating back to 2001.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86**:

ALS will produce responsive contact information.

**REQUEST FOR PRODUCTION NO. 87**:

DOCUMENTS sufficient to show the source of former ALS CEO Alex Kirn's sworn statement that ALS had 2 million unique users in 2003. *See Global Innovations, Inc. v. ALS Scan, Inc.,* No. 3:03-cv-1277-JSW, Dkt. 16 (N.D. Cal. June 26, 2003) (Declaration of Alex Kirn In Support of Motion to Dismiss or Transfer).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87**:

The testimony does not say 2 million unique "users" but 2 million unique "visitors."  ALS has no documents dating back to 2003 that would show unique visits.

**REQUEST FOR PRODUCTION NO. 88**:

All DOCUMENTS constituting or purporting to be counter-notices ALS has received in response to any DMCA Notices ALS has sent.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**:

ALS has produced every communication to or from Mr. Easton, who exclusively communicated for ALS regarding infringement notifications, pertaining to the sites at issue.  To the extent that any documents could be construed as "counter-notices" they would be in that production.

**REQUEST FOR PRODUCTION NO. 89**:

DOCUMENTS sufficient to show any studies or analyses of ALS's actual, estimated, or projected profits and losses from the sale, delivery, distribution or licensing for sale, delivery or distribution of its alleged copyrighted materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89**:

There are on responsive documents.

**REQUEST FOR PRODUCTION NO. 90**:

ALS' s detailed, consolidated, or other financial statements for the period 2001 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90**:

ALS has produced all financial information in its possession, custody or control.  There are on financial statements as such, but Cloudflare can create financial statements from the material produced.

**REQUEST FOR PRODUCTION NO. 91**:

DOCUMENTS sufficient to show ALS 's efforts to market, promote or increase revenues generated by or paid subscriptions to alsscan.com and alsangels.com, including but not limited to marketing campaigns and expenditures from 2001 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91**:

Hydentra is responsible for marketing alsscan.com, and they would therefore be in possession of any documents responsive to this request for that site for the period in which ALS's contract with Hydentra has been in place. ALS will produce all responsive documents showing any marketing efforts ALS has made.

**REQUEST FOR PRODUCTION NO. 92**:

DOCUMENTS sufficient to show ALS 's efforts to increase paid memberships or subscriptions to alsscan.com or alsangels.com.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92**:

Hydentra is responsible for marketing alsscan.com, and they would therefore be in possession of any documents responsive to this request for that site for the period in which ALS's contract with Hydentra has been in place. ALS will produce all responsive documents showing any marketing efforts ALS has made.

DATED:  August 7, 2017

SPILLANE LAW GROUP PLC

By: _____
      Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

- 12 -

## **PROOF OF SERVICE**

1.   At the time of service I was over 18 years of age and not a party to this action.  My business address is: Spillane Trial Group PLC, 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.

2.  On August 7, 2017 I served the following document(s):

**PLAINTIFF'S RESPONSES TO FIFTH SET OF REQUESTS FOR PRODUCTION FROM DEFENDANT CLOUDFLARE, INC.**

3.  I served these documents on the following person(s):

See attached service list.

4.  The document(s) in item 2 were served by the following means*:*

**X   By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 3 and *(specify one):*

> **x**   (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.
>
> ☐   (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.
> I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed as indicated above at Los Angeles, CA.

☐   **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 3. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 3. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐   **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in item 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 7, 2017

*Jessie Gietl*

_____

Jessie Gietl

*ALS v. Cloudflare*
USDC C.D. Cal. 2:16-cv-5051-GW-AFM
Mail Service List

Attorneys for Cloudflare and OVH:

Rachel Herrick Kassabian
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Attorneys for Hivelocity:

Shahrokh Sheik
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067

Attorneys for Steadfast:

Colin O'Brien
Partridge Partners P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654

Paul D. Supnick
9401 Wilshire Boulevard
Suite 1250
Beverly Hills, CA 90212

# EXHIBIT F

## Page 1

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

ALS SCAN, INC.,          )
                         )
        Plaintiff,   )
                         )
vs.                      ) CASE NO.
                         ) 2:16-cv-05051-GW-AFM
CLOUDFLARE, INC., et  )
al,                      )
                         )
        Defendants.   )
_____ )

VIDEOTAPE DEPOSITION OF:

STEVE EASTON

Taken on behalf of the Defendants

July 28, 2017

CLEETON DAVIS COURT REPORTERS, LLC
402 BNA Drive, Suite 108
Nashville, Tennessee 37217
615.726.2737
www.cleetondavis.com

## Page 2

1  APPEARANCES:
2  For the Plaintiff:
3  JAY M. SPILLANE, ESQ.
   Spillane Law Group, PLC
4  468 North Camden Drive
   Second Floor
5  Beverly Hills, California 90210-4507
   414.217.4507
6  (E-mail Unavailable)
7  For the Defendants:
8  RACHEL HERRICK KASSABAIN, ESQ.
   MARK T. GRAY, ESQ.
9  Quinn Emanuel Urquhart & Sullivan, LLP
   555 Twin Dolphin Drive
10 Fifth Floor
   Redwood Shores, California 94065
11 650.801.5000
   Rachelkassabain@quinnemanuel.com
12 Markgray@quinnemanuel.com
13 For Steadfast Networks:
14 JOHN L. AMBORGI, ESQ.
   Partridge Partners
15 321 North Clark Street
   Suite 720
16 Chicago, Illinois 60654
   312.634.9506
17 JLA@partridgepartnerspc.com
18
19
20
21
22
23
24
25

## Page 3

1                I N D E X
                       Page/Line
2
3  THE WITNESS:  STEVE EASTON
4  EXAMINATION BY MS. KASSABIAN          9   7
5
6         INDEX OF EXHIBITS
7  Exhibits      Description      Page/Line
8  Exhibit 1   Subpoena            43   12
9  Exhibit 2   January 3, 2017 E-mail,   105  13
             Easton 5932
10            (Confidential)
11 Exhibit 3   March 26, 2016 E-mail,    106   6
             Easton 7628
12            (Confidential)
13 Exhibit 4   January 5, 2016 E-mail,   110   7
             Easton 7889
14            (Confidential)
15 Exhibit 5   September 22, 2015       111   1
             E-mail, Easton 8086
16            (Confidential)
17 Exhibit 6   June 26, 2015 E-mail,    111  10
             Easton 8186
18            (Confidential)
19 Exhibit 7   March 30, 2017 E-mail,   111  22
             Easton 69087
20            (Confidential)
21 Exhibit 8   July 1, 2011 E-mail      128   7
             Chain, Easton 5765
22
   Exhibit 9   August 11, 2011 E-mail   130  16
23            Chain, Easton 11220 to
             11221
24
   Exhibit 10  February 23, 2017 E-mail 135   8
25            Chain, ALS - img.yt 340

## Page 4

1  Exhibit 11  May 14, 2017 E-mail      144  15
             Chain, Re: ALS -
2            ImageTwist 1806
3  Exhibit 12  June 4, 2012 E-mail      151   3
             Chain, Easton 5552 to
4            5554
5  Exhibit 13  September 6, 2012 E-mail 153  11
             Chain, Easton 5379 to
6            5381
7  Exhibit 14  May 28, 2013 E-mail      156   8
             Chain, Easton 5181 to
8            5183
9  Exhibit 15  October 14, 2013 E-mail  156  19
             Chain, Easton 5012 to
10            5016
11 Exhibit 16  October 16, 2013 E-mail  157  20
             Chain, Easton 5007 to
12            5011
13 Exhibit 17  January 3, 2014 E-mail   158   6
             Chain, Easton 4781 to
14            4784
15 Exhibit 18  March 24, 2016 E-mail,   159   8
             Report Received:
16            (#877317) Re: ALS -
             GREENPICCS.com 25
17
   Exhibit 19  June 7, 2016 E-mail,     159  22
18            Report Received:
             (#1030143) IMGCHILI
19
   Exhibit 20  June 11, 2016 E-mail     160   9
20            Chain, Report Received:
             (#1037200) ALS -
21            imgchili.com 2528
22 Exhibit 21  November 10, 2015 E-mail 162  22
             Chain, Cloudflare 10966
23
   Exhibit 22  February 1, 2016 E-mail  166  20
24            Chain, Cloudflare 10967
25

Page 25

| | | |
|---|---|---|
| 08:47 | 1 | A.   I -- I actually do construction work |
| 08:47 | 2 | on the side, if I can find things that I'm |
| 08:48 | 3 | capable of. |
| 08:48 | 4 | Q.   Any other part-time jobs that you |
| 08:48 | 5 | currently hold? |
| 08:48 | 6 | A.   No. |
| 08:48 | 7 | Q.   Do some of your former clients -- I'll |
| 08:48 | 8 | start -- let me start that question again. |
| 08:48 | 9 |      Do you know whether some of your |
| 08:48 | 10 | former clients stopped working with you |
| 08:48 | 11 | because they started using, for instance, |
| 08:48 | 12 | automated services or bots or something to |
| 08:48 | 13 | generate DMCA Notices? |
| 08:48 | 14 | A.   I do not.  They tried way back in the |
| 08:48 | 15 | early -- in -- in the -- I -- I can't exactly |
| 08:48 | 16 | -- but they didn't work.  But they -- there |
| 08:48 | 17 | -- there was some that switched to other |
| 08:48 | 18 | people to do what I do. |
| 08:48 | 19 | Q.   Have you ever worked as a DMCA agent |
| 08:48 | 20 | for MetArt? |
| 08:49 | 21 | A.   No. |
| 08:49 | 22 | Q.   Have you ever worked as a DMCA agent |
| 08:49 | 23 | for Perfect 10? |
| 08:49 | 24 | A.   No. |
| 08:49 | 25 | Q.   Sir, if there was a trial in this case |

Page 26

| | | |
|---|---|---|
| 08:49 | 1 | at some point down the road, are you planning |
| 08:49 | 2 | to come to California to testify on |
| 08:49 | 3 | ALS Scan's behalf? |
| 08:49 | 4 | A.   Yes. |
| 08:49 | 5 | Q.   You know there was a subpoena issued |
| 08:49 | 6 | to you in this case by Cloudflare, correct, |
| 08:49 | 7 | sir? |
| 08:49 | 8 | A.   I'm aware. |
| 08:49 | 9 | Q.   Did you personally collect the |
| 08:49 | 10 | documents that were produced in response to |
| 08:49 | 11 | that subpoena? |
| 08:49 | 12 | A.   I have no documents. |
| 08:49 | 13 | Q.   By documents, I also mean e-mails.  Do |
| 08:49 | 14 | you believe you have no e-mails? |
| 08:49 | 15 | A.   Oh, yes, I -- I do and they've been |
| 08:49 | 16 | provided, as far as I know. |
| 08:49 | 17 | Q.   Did you personally assist in the |
| 08:49 | 18 | collection of your e-mails? |
| 08:49 | 19 | A.   I don't -- print -- in printing |
| 08:50 | 20 | physical documents, are you asking? |
| 08:50 | 21 | Q.   I'm asking about the search.  Did you |
| 08:50 | 22 | personally search for responsive e-mails or |
| 08:50 | 23 | other documents in response to Cloudflare's |
| 08:50 | 24 | subpoena? |
| 08:50 | 25 | A.   I did. |

Page 27

| | | |
|---|---|---|
| 08:50 | 1 | Q.   Where did you look? |
| 08:50 | 2 | A.   My e-mail. |
| 08:50 | 3 | Q.   Is that your Apic Gmail account? |
| 08:50 | 4 | A.   Yes. |
| 08:50 | 5 | Q.   Did you search any other e-mail |
| 08:50 | 6 | accounts? |
| 08:50 | 7 | A.   I cannot. |
| 08:50 | 8 | Q.   Why? |
| 08:50 | 9 | A.   I don't have access to them. |
| 08:50 | 10 | Q.   To your other e-mail accounts? |
| 08:50 | 11 | A.   Correct. |
| 08:50 | 12 | Q.   Why not? |
| 08:50 | 13 | A.   The website's offline.  The person |
| 08:50 | 14 | that hosted the website has control of what |
| 08:50 | 15 | -- of the e-mail server, I suppose, and I |
| 08:50 | 16 | don't know how to contact him. |
| 08:50 | 17 | Q.   Which host is that? |
| 08:50 | 18 | A.   It was a personal friend who was in |
| 08:50 | 19 | Texas.  That's -- and I didn't -- I don't -- |
| 08:50 | 20 | I'm trying to remember the name of it.  But |
| 08:51 | 21 | he -- he was on -- I'm -- I don't remember |
| 08:51 | 22 | the name of it. |
| 08:51 | 23 | Q.   Was that an e-mail account you used |
| 08:51 | 24 | for your DMCA Notice work? |
| 08:51 | 25 | A.   Yes. |

Page 28

| | | |
|---|---|---|
| 08:51 | 1 | Q.   Including for ALS Scan? |
| 08:51 | 2 | A.   Yes, but I believe this was prior to |
| 08:51 | 3 | Cloudflare's existence. |
| 08:51 | 4 | Q.   So this e-mail account that was hosted |
| 08:51 | 5 | by some service in Texas is an account you |
| 08:51 | 6 | have not used for more than eight years? |
| 08:51 | 7 | A.   Oh, much more than eight years. |
| 08:51 | 8 | Q.   Did you search any other sources in |
| 08:51 | 9 | response to Cloudflare's subpoena besides |
| 08:51 | 10 | your Apic Gmail account? |
| 08:51 | 11 | A.   No. |
| 08:51 | 12 | Q.   Did you look for documents in paper |
| 08:51 | 13 | files? |
| 08:51 | 14 | A.   I have none. |
| 08:51 | 15 | Q.   You have no paper documents in your |
| 08:51 | 16 | home? |
| 08:51 | 17 | A.   I don't keep any paper documents. |
| 08:51 | 18 | Q.   Did you personally log in to your Apic |
| 08:52 | 19 | Gmail account to run searches looking for |
| 08:52 | 20 | e-mails related to the Cloudflare case? |
| 08:52 | 21 | A.   Yes. |
| 08:52 | 22 | Q.   Did anybody else log in to your Gmail |
| 08:52 | 23 | account to run searches? |
| 08:52 | 24 | A.   Yes, ma'am. |
| 08:52 | 25 | Q.   Who did? |

<table>
<tr><td colspan="3">Page 29</td></tr>
</table>

| | | | |
|---|---|---|---|
| 08:52 | 1 | A. | Mr. Spillane. |
| 08:52 | 2 | Q. | Anyone else? |
| 08:52 | 3 | A. | No. |
| 08:52 | 4 | Q. | When did you log in to your Gmail |
| 08:52 | 5 | | account to run searches for documents |
| 08:52 | 6 | | responsive to Cloudflare's subpoena, |
| 08:52 | 7 | | approximately when? |
| 08:52 | 8 | A. | Just, what was it, two days ago when I |
| 08:52 | 9 | | was aware of it, that was an issue.  I |
| 08:52 | 10 | | thought they were already aware of them, |
| 08:52 | 11 | | so.... |
| 08:52 | 12 | Q. | And did you bring any documents here |
| 08:52 | 13 | | with you today that you located during your |
| 08:52 | 14 | | search two days ago? |
| 08:52 | 15 | A. | No, ma'am. |
| 08:52 | 16 | Q. | Did you find anything in your search |
| 08:52 | 17 | | two days ago? |
| 08:52 | 18 | A. | Yes, ma'am. |
| 08:52 | 19 | Q. | What did you find? |
| 08:53 | 20 | A. | I went back two years and found |
| 08:53 | 21 | | approximately 7,000 exchanges both ways. |
| 08:53 | 22 | Q. | Between you and? |
| 08:53 | 23 | A. | And Cloudflare. |
| 08:53 | 24 | Q. | And Cloudflare? |
| 08:53 | 25 | A. | (Witness moves head up and down.) |

<table>
<tr><td colspan="3">Page 30</td></tr>
</table>

| | | | |
|---|---|---|---|
| 08:53 | 1 | Q. | Where are those documents? |
| 08:53 | 2 | A. | In my Gmail account. |
| 08:53 | 3 | Q. | Where are they today?  Did you bring |
| 08:53 | 4 | | them with you? |
| 08:53 | 5 | A. | No, ma'am. |
| 08:53 | 6 | Q. | Why not? |
| 08:53 | 7 | A. | I don't have that capable -- abilities |
| 08:53 | 8 | | of printing them. |
| 08:53 | 9 | Q. | So -- |
| 08:53 | 10 | A. | Nor the time. |
| 08:53 | 11 | Q. | Okay. |
| 08:53 | 12 | | MS. KASSABIAN:  So, Mr. Spillane, |
| 08:53 | 13 | | do you have those 7,000 e-mails? |
| 08:53 | 14 | | MR. SPILLANE:  We produced them. |
| 08:53 | 15 | | BY MS. KASSABIAN: |
| 08:53 | 16 | Q. | I guess I'd like to sort of clarify. |
| 08:53 | 17 | | Are you saying you found 7,000 e-mails |
| 08:53 | 18 | | between Cloudflare and yourself -- |
| 08:53 | 19 | A. | Going back to 2016. |
| 08:53 | 20 | Q. | Okay. |
| 08:53 | 21 | A. | Or -- yeah, to late 2015-2016.  I |
| 08:53 | 22 | | didn't go back further than that because it |
| 08:53 | 23 | | was probably in excess of 20,000. |
| 08:53 | 24 | Q. | So 7,000 e-mails going back one -- |
| 08:54 | 25 | | approximately one year? |

<table>
<tr><td colspan="3">Page 31</td></tr>
</table>

| | | | |
|---|---|---|---|
| 08:54 | 1 | A. | Two, maybe. |
| 08:54 | 2 | Q. | One or two -- |
| 08:54 | 3 | A. | And I deleted quite a few.  I -- I |
| 08:54 | 4 | | didn't anticipate this, so just to keep my |
| 08:54 | 5 | | mailbox from being jammed up, so.... |
| 08:54 | 6 | Q. | Do you know how many of the 7,000 |
| 08:54 | 7 | | e-mails you located between you and |
| 08:54 | 8 | | Cloudflare in the past one or two years have |
| 08:54 | 9 | | been produced to Cloudflare in this case? |
| 08:54 | 10 | A. | I do not. |
| 08:54 | 11 | Q. | You said going back further, you have |
| 08:54 | 12 | | approximately 20,000 e-mails between |
| 08:54 | 13 | | Cloudflare and you? |
| 08:54 | 14 | A. | Well, that was a wild guess ba- -- |
| 08:54 | 15 | | based on the quantity in the last year or |
| 08:54 | 16 | | two. |
| 08:54 | 17 | Q. | You think it's more than 10,000 |
| 08:54 | 18 | | e-mails probably? |
| 08:54 | 19 | A. | Oh, yes. |
| 08:54 | 20 | Q. | Do you know if those e-mails have been |
| 08:54 | 21 | | produced to Cloudflare? |
| 08:54 | 22 | A. | I do not. |
| 08:54 | 23 | | MS. KASSABIAN:  Okay.  So we'll -- |
| 08:54 | 24 | | we would like those e-mails produced, |
| 08:55 | 25 | | Mr. Spillane.  Is that in the works or not? |

<table>
<tr><td colspan="3">Page 32</td></tr>
</table>

| | | | |
|---|---|---|---|
| 08:55 | 1 | | MR. SPILLANE:  I produced |
| 08:55 | 2 | | everything.  You've got it all. |
| 08:55 | 3 | | MS. KASSABIAN:  You didn't produce |
| 08:55 | 4 | | 10,000 e-mails, so we'd like all of those |
| 08:55 | 5 | | produced. |
| 08:55 | 6 | | THE WITNESS:  Are these -- these |
| 08:55 | 7 | | -- those were not just pertaining to |
| 08:55 | 8 | | ALS Scan.  Those were -- |
| 08:55 | 9 | | BY MS. KASSABIAN: |
| 08:55 | 10 | Q. | Yes, I understand, sir.  So those may |
| 08:55 | 11 | | be responsive to our subpoena anyway, but I |
| 08:55 | 12 | | appreciate that clarification. |
| 08:55 | 13 | | When did you delete e-mails with |
| 08:55 | 14 | | Cloudflare? |
| 08:55 | 15 | A. | The only e-mails I deleted were the |
| 08:55 | 16 | | ones coming from them, the auto responses. |
| 08:55 | 17 | Q. | When did you do that? |
| 08:55 | 18 | A. | I've done it probably several times up |
| 08:55 | 19 | | until about a year ago. |
| 08:55 | 20 | Q. | So when was the last time you deleted |
| 08:55 | 21 | | e-mails from Cloudflare to you? |
| 08:55 | 22 | A. | I -- I -- maybe -- I don't -- when |
| 08:55 | 23 | | Mr. Spillane asked me to stop. |
| 08:56 | 24 | Q. | When was that? |
| 08:56 | 25 | A. | Maybe six months, eight months ago. |

| | | Page 41 |
|---|---|---|

| 09:04 | 1 | A.   Burned (phonetic). |
| 09:04 | 2 | Q.   Lawrence (phonetic)? |
| 09:04 | 3 | A.   Yeah, but I can't think of.... |
| 09:05 | 4 | Q.   Do you remember January of 2017 that |
| 09:05 | 5 | -- roughly eight months ago, do you remember |
| 09:05 | 6 | doing any document collections around January |
| 09:05 | 7 | of 2017 for this case? |
| 09:05 | 8 | A.   Meaning -- document collections |
| 09:05 | 9 | meaning what? |
| 09:05 | 10 | Q.   Meaning searching your e-mail account |
| 09:05 | 11 | and turning over Cloudflare or ALS Scan |
| 09:05 | 12 | related e-mails to Mr. Spillane in connection |
| 09:05 | 13 | with this case? |
| 09:05 | 14 | A.   I believe I -- I -- it may have been |
| 09:05 | 15 | in January. |
| 09:05 | 16 | Q.   When was the first time you remember |
| 09:05 | 17 | running searches in your e-mail account to |
| 09:05 | 18 | turn them over to Mr. Spillane in connection |
| 09:05 | 19 | with this case? |
| 09:05 | 20 | MR. SPILLANE:  Objection, assumes |
| 09:05 | 21 | facts not in evidence. |
| 09:05 | 22 | THE WITNESS:  I don't know. |
| 09:06 | 23 | BY MS. KASSABIAN: |
| 09:06 | 24 | Q.   When was the first time your e-mail |
| 09:06 | 25 | account was searched in connection with |

| | | Page 42 |
|---|---|---|

| 09:06 | 1 | producing documents in this case? |
| 09:06 | 2 | A.   I can't recall the date. |
| 09:06 | 3 | Q.   So you remember doing it personally |
| 09:06 | 4 | two days ago, right? |
| 09:06 | 5 | A.   Uh-huh, yes. |
| 09:06 | 6 | Q.   And before that, you mentioned |
| 09:06 | 7 | Mr. Spillane having access to your e-mail |
| 09:06 | 8 | account -- |
| 09:06 | 9 | A.   Yes, ma'am. |
| 09:06 | 10 | Q.   -- to run searches, correct? |
| 09:06 | 11 | A.   Yes. |
| 09:06 | 12 | Q.   Okay.  When did that happen, that |
| 09:06 | 13 | search? |
| 09:06 | 14 | A.   I don't know. |
| 09:06 | 15 | Q.   Was it in the last 30 days? |
| 09:06 | 16 | A.   I don't know. |
| 09:06 | 17 | Q.   You don't remember? |
| 09:06 | 18 | A.   I don't -- I don't know. |
| 09:06 | 19 | Q.   Okay.  And I can't remember if you |
| 09:06 | 20 | said, did -- whether anyone else accessed |
| 09:06 | 21 | your Gmail account to run searches. |
| 09:06 | 22 | A.   Not that I'm aware of. |
| 09:06 | 23 | Q.   Okay.  Did you ever personally forward |
| 09:06 | 24 | e-mails to ALS Scan or counsel in order to |
| 09:06 | 25 | have them produced, or did other people |

| | | Page 43 |
|---|---|---|

| 09:06 | 1 | access your Gmail account and pull the |
| 09:06 | 2 | e-mails to have them produced? |
| 09:06 | 3 | A.   Probably both. |
| 09:06 | 4 | Q.   Probably both? |
| 09:07 | 5 | So you might have forwarded some |
| 09:07 | 6 | e-mails? |
| 09:07 | 7 | A.   Yes, ma'am. |
| 09:07 | 8 | MS. KASSABIAN:  I'd like to mark |
| 09:07 | 9 | as Exhibit 1 the subpoena and -- to Mr. |
| 09:07 | 10 | Easton that was served by Cloudflare in this |
| 09:07 | 11 | case in June of 2017. |
| 09:07 | 12 | (Exhibit 1 was marked.) |
| 09:07 | 13 | MR. SPILLANE:  What number is this |
| 09:07 | 14 | one? |
| 09:07 | 15 | MS. KASSABIAN:  1. |
| 09:07 | 16 | MR. SPILLANE:  Do you guys want to |
| 09:07 | 17 | run on -- if you want to run depo exhibit |
| 09:07 | 18 | numbers so it can become trial exhibits, you |
| 09:07 | 19 | might want to start at a higher number, like |
| 09:07 | 20 | 201 or something.  Or -- or you don't -- not |
| 09:07 | 21 | want to deal with that now? |
| 09:07 | 22 | MS. KASSABIAN:  Yeah, let's not |
| 09:07 | 23 | deal with that now. |
| 09:07 | 24 | MR. SPILLANE:  All right. |
| 09:07 | 25 | BY MS. KASSABIAN: |

| | | Page 44 |
|---|---|---|

| 09:07 | 1 | Q.   So, sir, do you recognize what's been |
| 09:07 | 2 | marked as Exhibit 1? |
| 09:08 | 3 | A.   Do I -- this, too? |
| 09:08 | 4 | MR. SPILLANE:  Well, she asked you |
| 09:08 | 5 | if you recognized it, so -- |
| 09:08 | 6 | THE WITNESS:  I've read it, yes. |
| 09:08 | 7 | BY MS. KASSABIAN: |
| 09:08 | 8 | Q.   You've seen it before? |
| 09:08 | 9 | A.   Yes. |
| 09:08 | 10 | Q.   Could you please turn to Page 4 where |
| 09:08 | 11 | it says "Document Requests." |
| 09:09 | 12 | A.   (Witness complies.) |
| 09:09 | 13 | Q.   Do you see Item 1 under the heading |
| 09:09 | 14 | "Document Requests" on Page 4? |
| 09:09 | 15 | MR. SPILLANE:  It's the numbered |
| 09:09 | 16 | Page 4.  It's not the fourth page of the |
| 09:09 | 17 | exhibit.  It's the one that's got "Page 4" on |
| 09:09 | 18 | the bottom. |
| 09:09 | 19 | THE WITNESS:  I'm sorry, what was |
| 09:09 | 20 | the question? |
| 09:09 | 21 | BY MS. KASSABIAN: |
| 09:09 | 22 | Q.   Do you see Item 1 there? |
| 09:09 | 23 | A.   Uh-huh, yes. |
| 09:09 | 24 | Q.   ALS Scan pays you a quarterly or an |
| 09:09 | 25 | annual fee for your DMCA Notice work, |

## Page 61

```
09:25   1    Q.   Does slimpics.com host images uploaded
09:25   2    by its users?
09:25   3    A.   I don't know how they acquire them.
09:25   4    Q.   Does cumonmy.com host images uploaded
09:25   5    by its users?
09:25   6    A.   Again, it -- the -- the blogs, I'm not
09:26   7    aware of how they operate.
09:26   8    Q.   Do you know how bestofsexpics gets
09:26   9    images uploaded to its website?
09:26   10   A.   Same type of site, I'm not aware.
09:26   11   Q.   Okay.  Of these sites that we've just
09:26   12   sort of ticked through -- and I'm happy to
09:27   13   refresh your memory on the list, but we can
09:27   14   start with imgchili.  Do they take down
09:27   15   content when you sent them a DMCA Notice?
09:27   16   A.   Some do.
09:27   17   Q.   Which ones do and which ones don't?
09:27   18   Let's start with imgchili.
09:27   19   A.   They do.
09:27   20   Q.   How about NameThatPornSpar [sic] --
09:27   21   Star?
09:27   22   A.   I can't -- I honestly -- okay.  Here
09:27   23   -- here -- here is the -- the details on it.
09:27   24   When I say they do, they sometimes take them
09:27   25   down completely and I can't find them again,
```

## Page 62

```
09:27   1    and they sometimes just take -- make it
09:27   2    appear that they took them down and -- and
09:27   3    put them somewhere else.  And that's been the
09:27   4    big issue.  It's constantly, you know, a
09:27   5    search issue.
09:27   6    Q.   Yeah, and I guess I'm not referring to
09:27   7    the situation where a takedown happens and
09:27   8    then maybe the same images get uploaded
09:27   9    again.
09:27   10   A.   Right.
09:27   11   Q.   I'm speaking just about the act of a
09:28   12   takedown versus the act of ignoring your
09:28   13   notice, sir.
09:28   14   A.   It --
09:28   15   Q.   So with that in mind, can -- can you
09:28   16   tell me, does slimpics.com generally process
09:28   17   your notices and -- and take your images
09:28   18   down?
09:28   19   A.   I believe they do.
09:28   20   Q.   And you said imgchili.net does as
09:28   21   well?
09:28   22   A.   I believe so.
09:28   23   Q.   Does cumonmy do so?
09:28   24   A.   I don't recall.
09:28   25   Q.   Does bestofsexpics generally process
```

## Page 63

```
09:28   1    your notices and take down the images?
09:28   2    A.   I also don't recall.
09:28   3    Q.   Does Stooorage take down images in
09:28   4    response to your notices?
09:28   5    A.   On occasion.
09:28   6    Q.   Do they do it for your ALSScan.com
09:28   7    notices?
09:28   8    A.   I don't recall.
09:28   9    Q.   Does greenpiccs process your DMCA
09:28   10   Notices with takedowns?
09:28   11   A.   No.
09:28   12   Q.   Does ImageBam process your notices
09:28   13   with takedowns?
09:28   14   A.   Yes.
09:28   15   Q.   Does imgsen.se, i-m-g-s-e-n dot s-e,
09:29   16   process your notices with takedowns?
09:29   17   A.   No.
09:29   18   Q.   Does imgspice, i-m-g-s-p-i-c-e dot com
09:29   19   process your notices with takedowns?
09:29   20   A.   Most of the time.
09:29   21   Q.   Does imgspot, i-m-g-s-p-o-t dot org,
09:29   22   process your DMCA notices with takedowns?
09:29   23   A.   No.
09:29   24   Q.   Does i-m-g dot y-t process your DMCA
09:29   25   Notices with takedowns?
```

## Page 64

```
09:29   1    A.   Yes.
09:29   2    Q.   Does ViperGirls.to process your
09:29   3    notices with takedowns?
09:29   4    A.   They did not for the past six or seven
09:29   5    years, but I found the guy, and now he is
09:29   6    taking everything down very quickly.
09:29   7    Q.   When did that takedown process start?
09:29   8    A.   Within the last two months.
09:29   9    Q.   When you say you found the guy, what
09:29   10   do you mean?
09:29   11   A.   I got his identification and his
09:29   12   address.
09:29   13   Q.   From where?
09:29   14   A.   WhoIsGuard, the people that were
09:30   15   harboring their domain registration.
09:30   16   Q.   So you asked WhoIsGuard to give you
09:30   17   who --
09:30   18   A.   I didn't ask.  They volunteered.
09:30   19        I'm sorry I interrupted you.
09:30   20   Q.   WhoIsGuard contacted you?
09:30   21   A.   Yes.
09:30   22   Q.   How did they know to contact you?
09:30   23   A.   Well, they were included in the DMCA
09:30   24   Notice.
09:30   25   Q.   So they got back to you and said we --
```

Page 65

| | | |
|---|---|---|
| 09:30 | 1 | we have this person's contact information? |
| 09:30 | 2 | A.   They just recently, after years of |
| 09:30 | 3 | having a problem with them, started |
| 09:30 | 4 | responding with the identification of the |
| 09:30 | 5 | infringer. |
| 09:30 | 6 | Q.   WhoIsGuard has started responding? |
| 09:30 | 7 | A.   Yes. |
| 09:30 | 8 | Q.   And is that in response to the |
| 09:30 | 9 | ALS Scan DMCA Notices that you sent to |
| 09:30 | 10 | Cloudflare and WhoIsGuard and others? |
| 09:30 | 11 | A.   Yes. |
| 09:30 | 12 | Q.   How -- for the websites we've been |
| 09:30 | 13 | talking today -- talking about today, has |
| 09:30 | 14 | WhoIsGuard given you contact information for |
| 09:30 | 15 | all of these or just ViperGirls? |
| 09:31 | 16 | A.   If -- if -- if they are the registry |
| 09:31 | 17 | for the domain, they have been lately |
| 09:31 | 18 | responding to all of them. |
| 09:31 | 19 | Q.   And they'll send you an e-mail saying: |
| 09:31 | 20 | Here's the contact information? |
| 09:31 | 21 | A.   Yes. |
| 09:31 | 22 | Q.   Okay.  We'd like those e-mails |
| 09:31 | 23 | produced.  And I've -- we've not seen those, |
| 09:31 | 24 | so I'll put -- make another note on the |
| 09:31 | 25 | record for Mr. Spillane to check on that. |

Page 66

| | | |
|---|---|---|
| 09:31 | 1 | Sir, did you save those e-mails? |
| 09:31 | 2 | A.   I believe so. |
| 09:31 | 3 | Q.   So we'd like all the WhoIsGuard |
| 09:31 | 4 | e-mails providing you with contact |
| 09:31 | 5 | information regarding any of the websites |
| 09:31 | 6 | that are at issue in the case involving |
| 09:31 | 7 | Cloudflare, okay, sir? |
| 09:31 | 8 | MR. SPILLANE:  No, no, no.  Please |
| 09:31 | 9 | don't give the witness document production |
| 09:31 | 10 | requests orally.  And we're not taking oral |
| 09:31 | 11 | requests. |
| 09:31 | 12 | MS. KASSABIAN:  So this is for the |
| 09:31 | 13 | record, and we will send you a letter if |
| 09:31 | 14 | you'd prefer to receive it that way, |
| 09:31 | 15 | Mr. Spillane. |
| 09:31 | 16 | MR. SPILLANE:  I'd prefer |
| 09:31 | 17 | receiving a document request.  I don't resee |
| 09:31 | 18 | [sic] -- recall receiving a document request |
| 09:31 | 19 | saying please produce all communication with |
| 09:31 | 20 | WhoIsGuard. |
| 09:32 | 21 | MS. KASSABIAN:  So I believe these |
| 09:32 | 22 | will be responsive and we can take that up |
| 09:32 | 23 | after the deposition, okay? |
| 09:32 | 24 | BY MS. KASSABIAN: |
| 09:32 | 25 | Q.   So WhoIsGuard gave you contact |

Page 67

| | | |
|---|---|---|
| 09:32 | 1 | information for ViperGirls.to, correct? |
| 09:32 | 2 | A.   Yes. |
| 09:32 | 3 | Q.   And you said that was approximately |
| 09:32 | 4 | two months ago? |
| 09:32 | 5 | A.   Two to three. |
| 09:32 | 6 | Q.   Okay.  How about PornWire.net, do they |
| 09:32 | 7 | generally process your DMCA Notices with a |
| 09:32 | 8 | takedown? |
| 09:32 | 9 | A.   I don't know. |
| 09:32 | 10 | Q.   Is that because you don't recall? |
| 09:32 | 11 | A.   It's because I -- yes.  I -- I -- I |
| 09:32 | 12 | generate a tremendous amount of notices, and |
| 09:32 | 13 | I can't remember all of them. |
| 09:32 | 14 | Q.   So they're not one of the websites |
| 09:32 | 15 | that you send lots and lots of notices to; is |
| 09:32 | 16 | that why you don't remember? |
| 09:32 | 17 | A.   Right. |
| 09:32 | 18 | Q.   How about fboom.me, did they generally |
| 09:32 | 19 | process your DMCA Notices with a takedown? |
| 09:32 | 20 | A.   Yes. |
| 09:33 | 21 | Q.   Does imgflash.net, i-m-g-f-l-a-s-h dot |
| 09:33 | 22 | net, process your DMCA Notices, generally |
| 09:33 | 23 | speaking, with a takedown? |
| 09:33 | 24 | A.   No. |
| 09:33 | 25 | Q.   Has WhoIsGuard given you the contact |

Page 68

| | | |
|---|---|---|
| 09:33 | 1 | information for that site? |
| 09:33 | 2 | A.   I don't think so. |
| 09:33 | 3 | Q.   Do you know who runs imgflash.net? |
| 09:33 | 4 | A.   I do not. |
| 09:33 | 5 | Q.   How about ImgTrex, i-m-g-t-r-e-x dot |
| 09:33 | 6 | com, do they generally process your notices |
| 09:33 | 7 | with a takedown? |
| 09:33 | 8 | A.   No. |
| 09:33 | 9 | Q.   How about ArtOfX.org, do they |
| 09:33 | 10 | generally process your notices with a |
| 09:33 | 11 | takedown? |
| 09:33 | 12 | A.   If I recall, the -- they do not |
| 09:33 | 13 | comply, but they are what is -- how's that |
| 09:33 | 14 | called -- where he's using third-party |
| 09:33 | 15 | content where I have to individually take the |
| 09:33 | 16 | content down from these other image hosts and |
| 09:33 | 17 | torrent file hosts. |
| 09:34 | 18 | Q.   So in other words, ArtOfX.org is not |
| 09:34 | 19 | hosting the images, right? |
| 09:34 | 20 | A.   Correct.  He's just uploading them. |
| 09:34 | 21 | Q.   They link to images hosted elsewhere? |
| 09:34 | 22 | A.   Correct. |
| 09:34 | 23 | Q.   And then you can figure out where |
| 09:34 | 24 | those images are hosted by just sort of |
| 09:34 | 25 | clicking through and seeing where you end up? |

Page 73

| 09:49 | 1 | Q. Okay. And so you know they've |
| 09:49 | 2 | processed by basically going back and |
| 09:49 | 3 | checking to see what happened? |
| 09:49 | 4 | A. Yes. |
| 09:49 | 5 | Q. Okay. So imgchili, for instance, |
| 09:49 | 6 | doesn't write back to your notices every |
| 09:49 | 7 | time? |
| 09:49 | 8 | A. No. |
| 09:49 | 9 | Q. Do they ever write back to your |
| 09:49 | 10 | notices? |
| 09:49 | 11 | A. I don't think so. |
| 09:49 | 12 | Q. Okay. Which of these websites, that |
| 09:49 | 13 | we've been talking about, can you think of as |
| 09:49 | 14 | having written back to you to confirm |
| 09:49 | 15 | processing, at least sometimes? |
| 09:49 | 16 | A. When I found out who img.yt was -- who |
| 09:49 | 17 | is the same as ViperGirls, by the way, he |
| 09:49 | 18 | started a little bit of a -- a dialogue, but |
| 09:49 | 19 | now he doesn't respond. |
| 09:49 | 20 | Q. Okay. And setting aside like a -- a |
| 09:49 | 21 | dialogue, which of these websites can you |
| 09:49 | 22 | recall, you know, where -- where the -- like |
| 09:49 | 23 | the administrator, the DMCA employee, you |
| 09:49 | 24 | know, kind of sends like a canned response |
| 09:50 | 25 | saying: "Thank you. We've processed" on |

Page 74

| 09:50 | 1 | occasion or from time to time? |
| 09:50 | 2 | A. Fboom. |
| 09:50 | 3 | Q. Uh-huh. |
| 09:50 | 4 | A. I don't know whose -- else on that. I |
| 09:50 | 5 | don't think there's anybody else on that |
| 09:50 | 6 | list. Generally the only responses were just |
| 09:50 | 7 | the torrent file. |
| 09:50 | 8 | Q. And which ones -- |
| 09:50 | 9 | A. Fboom is the only one that you have on |
| 09:50 | 10 | there. |
| 09:50 | 11 | Q. Okay. And if you -- if you want to |
| 09:50 | 12 | see the list, it's on Pages 14 and 15 of the |
| 09:50 | 13 | complaint, if it would help you to -- |
| 09:50 | 14 | A. Oh. |
| 09:50 | 15 | Q. Yeah, it should be there. Do you see |
| 09:50 | 16 | it? |
| 09:50 | 17 | A. Yes. |
| 09:50 | 18 | Q. And if that helps refresh your memory |
| 09:50 | 19 | at all. Is there anyone? |
| 09:50 | 20 | A. -- I -- |
| 09:50 | 21 | Q. -- besides fboom -- |
| 09:50 | 22 | A. ImageBam. I didn't know they were on |
| 09:50 | 23 | this list. ImageBam responds. Or Steadfast |
| 09:50 | 24 | responds -- |
| 09:50 | 25 | Q. Uh-huh. |

Page 75

| 09:50 | 1 | A. -- that -- that -- |
| 09:50 | 2 | Q. Any -- any other of these websites |
| 09:51 | 3 | that even occasionally will send you a |
| 09:51 | 4 | written communication? |
| 09:51 | 5 | A. Just Cloudflare. |
| 09:51 | 6 | Q. When did you have this dialogue with |
| 09:51 | 7 | the person who operates img.yt and |
| 09:51 | 8 | ViperGirls.to? |
| 09:51 | 9 | A. Are you asking me dates? |
| 09:51 | 10 | Q. Like, approximately what month or what |
| 09:51 | 11 | week, if you know. |
| 09:51 | 12 | A. He responded to me maybe a year ago |
| 09:51 | 13 | when he first started, but then that was it. |
| 09:51 | 14 | But then when I found out who he was, he |
| 09:51 | 15 | started to respond faster. |
| 09:51 | 16 | Q. Uh-huh. |
| 09:51 | 17 | A. But that stopped. |
| 09:51 | 18 | And he's really the only one that I |
| 09:51 | 19 | can think of. |
| 09:51 | 20 | Q. So you found out who he was two or |
| 09:51 | 21 | three months ago, correct? |
| 09:51 | 22 | A. Right. |
| 09:51 | 23 | Q. And then you had a dialogue with him |
| 09:51 | 24 | where he would actually respond to your |
| 09:52 | 25 | e-mails; is that right? |

Page 76

| 09:52 | 1 | A. Right. |
| 09:52 | 2 | Q. So -- |
| 09:52 | 3 | A. But just a few and then it stopped. |
| 09:52 | 4 | Q. Sure. Okay. |
| 09:52 | 5 | MS. KASSABIAN: So those would be |
| 09:52 | 6 | responsive and we'll just add this to our |
| 09:52 | 7 | list, Mr. Spillane, of e-mails we haven't |
| 09:52 | 8 | seen in Mr. Easton's production, that we |
| 09:52 | 9 | would like to see. |
| 09:52 | 10 | BY MS. KASSABIAN: |
| 09:52 | 11 | Q. Do you recall how many back-and-forth |
| 09:52 | 12 | exchanges you had with this individual, the |
| 09:52 | 13 | dialogue you just referred to? |
| 09:52 | 14 | A. Oh, no. |
| 09:52 | 15 | Q. So there was a -- an exchange of |
| 09:52 | 16 | e-mails, a dialogue of some kind in the last |
| 09:52 | 17 | two or three months in response to your DMCA |
| 09:52 | 18 | Notices, correct? |
| 09:52 | 19 | A. Right. |
| 09:52 | 20 | Q. And then approximately a year ago, |
| 09:52 | 21 | there was also a little bit of a dialogue; is |
| 09:52 | 22 | that correct? |
| 09:52 | 23 | A. Right. |
| 09:52 | 24 | Q. A back-and-forth regarding your |
| 09:52 | 25 | notices? |

Page 133

| | | |
|---|---|---|
| 11:05 | 1 | technically knowledgeable of how it works. |
| 11:05 | 2 | Q.   And you don't know which one Mr. Penn |
| 11:05 | 3 | was using then? |
| 11:05 | 4 | A.   I do not. |
| 11:05 | 5 | Q.   And then you kind of write back to |
| 11:05 | 6 | Eric saying:  Well, thanks for your |
| 11:05 | 7 | introduction, but I'm going to need |
| 11:05 | 8 | confirmation from Sarah that I can deal with |
| 11:05 | 9 | you, right?  Words to that effect.  If you |
| 11:05 | 10 | look at the middle e-mail on this page?  You |
| 11:05 | 11 | see:  "Please understand I need confirmed by |
| 11:05 | 12 | Sarah...." |
| 11:05 | 13 | A.   Yeah, I -- I'm -- I don't remember |
| 11:06 | 14 | what this was about. |
| 11:06 | 15 | Q.   It looks like maybe you were out of |
| 11:06 | 16 | town or something.  You say:  "I'm out of |
| 11:06 | 17 | town till Monday," right? |
| 11:06 | 18 | A.   I don't remember what it -- honestly, |
| 11:06 | 19 | it's a long time ago. |
| 11:06 | 20 | Q.   And then Sarah writes back and says: |
| 11:06 | 21 | "Yes, Eric is all good." |
| 11:06 | 22 |      Do you see that? |
| 11:06 | 23 | A.   Yes. |
| 11:06 | 24 | Q.   So she's giving you the confirmation |
| 11:06 | 25 | that you can talk to Eric? |

Page 134

| | | |
|---|---|---|
| 11:06 | 1 | A.   Yes.  Okay.  I get it.  Yes. |
| 11:06 | 2 | Q.   And she says:  "He's been with us a |
| 11:06 | 3 | couple of years.  And a lot of the copyright |
| 11:06 | 4 | infringements I've sent you lately are the |
| 11:06 | 5 | ones that he found." |
| 11:06 | 6 |      Do you see that? |
| 11:06 | 7 | A.   Yes. |
| 11:06 | 8 | Q.   So it sounds like in 2011 Sarah was |
| 11:06 | 9 | sending you copyright infringement reports, |
| 11:06 | 10 | right? |
| 11:06 | 11 | A.   She may have thought she did, but I've |
| 11:06 | 12 | received very, very few from either one of |
| 11:06 | 13 | them. |
| 11:06 | 14 | Q.   Okay.  So she's saying:  "A lot of the |
| 11:07 | 15 | infringements I've sent you lately are the |
| 11:07 | 16 | ones he found," right? |
| 11:07 | 17 | A.   I -- yeah. |
| 11:07 | 18 | Q.   And now it looks like she's kind of |
| 11:07 | 19 | handing the reins over to Eric and now he's |
| 11:07 | 20 | going to do it, right? |
| 11:07 | 21 | A.   Right. |
| 11:07 | 22 | Q.   Okay.  Do you know what -- how -- do |
| 11:07 | 23 | you know what service Sarah was using, if |
| 11:07 | 24 | any, to collect these copyright infringements |
| 11:07 | 25 | and send them on to you? |

Page 135

| | | |
|---|---|---|
| 11:07 | 1 | A.   I have no clue. |
| 11:07 | 2 |      MS. KASSABIAN:  I'd like to mark |
| 11:07 | 3 | as Exhibit 10 an -- a DMCA Notice that does |
| 11:07 | 4 | not have a Bates-stamp because it was not |
| 11:07 | 5 | produced to us with one.  But it is dated |
| 11:07 | 6 | February 23rd, 2017 from Steve Easton to a |
| 11:07 | 7 | variety of recipients, including Cloudflare. |
| 11:08 | 8 |      (Exhibit 10 was marked.) |
| 11:08 | 9 | BY MS. KASSABIAN: |
| 11:08 | 10 | Q.   This is about image -- img.yt, |
| 11:08 | 11 | correct? |
| 11:08 | 12 | A.   Correct. |
| 11:08 | 13 | Q.   And this is Notice No. 340, right? |
| 11:08 | 14 | A.   To img.yt, yeah. |
| 11:08 | 15 | Q.   Right.  So you sequentially number |
| 11:08 | 16 | your notices in the Subject line and you also |
| 11:08 | 17 | reference what website you are going after, |
| 11:08 | 18 | right? |
| 11:08 | 19 | A.   Correct. |
| 11:08 | 20 | Q.   And in this DMCA Notice, we see an |
| 11:08 | 21 | example of the HTML code pasted in there with |
| 11:08 | 22 | the URL so that there's additional characters |
| 11:08 | 23 | before and after the URLs, right? |
| 11:08 | 24 | A.   Yes. |
| 11:08 | 25 | Q.   And do you see right above the URLs |

Page 136

| | | |
|---|---|---|
| 11:09 | 1 | where it says:  "Sets Woodland Fairy, Swell & |
| 11:09 | 2 | Quell"? |
| 11:09 | 3 | A.   Yes. |
| 11:09 | 4 | Q.   What's that? |
| 11:09 | 5 | A.   That's ALS -- that's what they called |
| 11:09 | 6 | the -- the photo shoot so that they could |
| 11:09 | 7 | reference what it -- what it was. |
| 11:09 | 8 | Q.   So who typed those words?  Was that |
| 11:09 | 9 | you or ALS? |
| 11:09 | 10 | A.   I put that -- I put that in there. |
| 11:09 | 11 | Q.   Okay.  How did you know that? |
| 11:09 | 12 | A.   Because it was on the page where -- |
| 11:09 | 13 | the header of page. |
| 11:09 | 14 | Q.   And so if you see a reference to a |
| 11:09 | 15 | photo set on an alleged infringement, you |
| 11:09 | 16 | sometimes type it into the UR- -- to the DMCA |
| 11:09 | 17 | Notice; is that right? |
| 11:09 | 18 | A.   I recently started that about, I don't |
| 11:09 | 19 | know, several months ago. |
| 11:09 | 20 | Q.   Okay.  And this is an example of that? |
| 11:09 | 21 | A.   Correct. |
| 11:09 | 22 | Q.   So all of these URLs here relate to |
| 11:09 | 23 | these two photo sets; is that right? |
| 11:09 | 24 | A.   Yes. |
| 11:09 | 25 | Q.   And which specific pictures were being |

Page 245

| | | |
|---|---|---|
| 01:58 | 1 | web forms of other providers. I don't see |
| 01:58 | 2 | any relevance. |
| 01:58 | 3 | So I'm gathering you must be out |
| 01:58 | 4 | of questions that pertain to the case about |
| 01:58 | 5 | Cloudflare, in which case I'm wondering why |
| 01:58 | 6 | we're not winding up. |
| 01:58 | 7 | MS. KASSABIAN: Are you finished |
| 01:58 | 8 | with your speech? |
| 01:58 | 9 | MR. SPILLANE: It wasn't a speech. |
| 01:59 | 10 | It was a statement of my problem with your |
| 01:59 | 11 | line of questioning and my question about |
| 01:59 | 12 | whether you have questions or not that |
| 01:59 | 13 | pertain to Cloudflare. |
| 01:59 | 14 | MS. KASSABIAN: Are you making a |
| 01:59 | 15 | longwinded relevance objection? |
| 01:59 | 16 | MR. SPILLANE: I don't think it |
| 01:59 | 17 | was longwinded. I think I said it in as few |
| 01:59 | 18 | words as I could to explain the basis of my |
| 01:59 | 19 | objection. |
| 01:59 | 20 | MS. KASSABIAN: And are you |
| 01:59 | 21 | finished with it? |
| 01:59 | 22 | MR. SPILLANE: Yes. |
| 01:59 | 23 | BY MS. KASSABIAN: |
| 01:59 | 24 | Q. Then we will proceed. |
| 01:59 | 25 | MS. KASSABIAN: I'd like to |

Page 246

| | | |
|---|---|---|
| 01:59 | 1 | mark as -- |
| 01:59 | 2 | THE COURT REPORTER: 38. |
| 01:59 | 3 | MS. KASSABIAN: -- Exhibit 38 a |
| 01:59 | 4 | DMCA-Notice type of e-mail, Bates-stamped |
| 01:59 | 5 | Easton 37238 through -49. |
| 01:59 | 6 | (Exhibit 38 was marked.) |
| 01:59 | 7 | MS. KASSABIAN: And while we are |
| 02:00 | 8 | at it, let's mark as Exhibit 39 another |
| 02:00 | 9 | DMCA-Notice type of e-mail, Bates-stamped |
| 02:00 | 10 | Easton 69622 through -32. |
| 02:00 | 11 | (Exhibit 39 was marked.) |
| 02:00 | 12 | BY MS. KASSABIAN: |
| 02:00 | 13 | Q. Sir, these are two DMCA Notices that |
| 02:00 | 14 | you sent to Cloudflare regarding |
| 02:00 | 15 | imgchili.net, right? |
| 02:00 | 16 | A. Yes, ma'am. |
| 02:00 | 17 | Q. And the first one is dated January 25, |
| 02:00 | 18 | 2016, right? |
| 02:00 | 19 | A. Yes, ma'am. |
| 02:00 | 20 | Q. And the second one, Exhibit 39 is |
| 02:00 | 21 | dated June 18th, 2017, just about a month |
| 02:00 | 22 | ago, right? |
| 02:00 | 23 | A. Yes. |
| 02:00 | 24 | Q. This first one here was sent before |
| 02:00 | 25 | this lawsuit was filed, correct? |

Page 247

| | | |
|---|---|---|
| 02:01 | 1 | A. Correct. |
| 02:01 | 2 | Q. And in this DMCA e-mailed notice, you |
| 02:01 | 3 | say -- you -- you copied on the e-mail |
| 02:01 | 4 | several parties OVH, imgchili, AWEmpire, |
| 02:01 | 5 | JuicyAds and Cloudflare, right? |
| 02:01 | 6 | A. Correct. |
| 02:01 | 7 | Q. OVH is the host and the imgchili |
| 02:01 | 8 | website is for the website operator, right? |
| 02:01 | 9 | A. Right. |
| 02:01 | 10 | Q. And then on the second DMCA Notice, |
| 02:01 | 11 | you -- you sent it to Cloudflare regarding |
| 02:01 | 12 | imgchili. You didn't copy OVH, and you |
| 02:01 | 13 | didn't copy imgchili, did you? |
| 02:01 | 14 | A. Correct. |
| 02:01 | 15 | Q. Why not? |
| 02:02 | 16 | A. I think I was instructed not to. |
| 02:02 | 17 | Q. You didn't copy imgchili or OVH |
| 02:02 | 18 | because you didn't actually want this notice |
| 02:02 | 19 | processed, did you? |
| 02:02 | 20 | MR. SPILLANE: Hang on. I'm going |
| 02:02 | 21 | to need to talk -- talk to the witness about |
| 02:02 | 22 | a potential privilege objection. So I'll |
| 02:02 | 23 | need a moment with him, please. |
| 02:02 | 24 | MS. KASSABIAN: That question did |
| 02:02 | 25 | not ask for any communications. |

Page 248

| | | |
|---|---|---|
| 02:02 | 1 | MR. SPILLANE: I'll -- I'll -- |
| 02:02 | 2 | I'll -- I'll need a moment to talk to the |
| 02:02 | 3 | witness about a possible privilege objection, |
| 02:02 | 4 | so we'll -- we'll take a moment. |
| 02:02 | 5 | (Witness and Mr. Spillane exit the |
| 02:02 | 6 | proceedings.) |
| 02:02 | 7 | THE VIDEOGRAPHER: Are we going |
| 02:02 | 8 | off the record? |
| 02:02 | 9 | MS. KASSABIAN: We sure are, in |
| 02:02 | 10 | the middle of a question, which I object to, |
| 02:02 | 11 | but we will wait for Mr. Spillane's return. |
| 02:02 | 12 | THE VIDEOGRAPHER: Off the record, |
| 02:02 | 13 | 1357. |
| 02:03 | 14 | (Brief recess observed.) |
| 02:06 | 15 | THE VIDEOGRAPHER: We're back on |
| 02:07 | 16 | the record, 1401. |
| 02:07 | 17 | You may proceed. |
| 02:07 | 18 | MR. SPILLANE: Can I have the |
| 02:07 | 19 | question re- -- reread, please? |
| 02:07 | 20 | (Requested portion was read into |
| 02:07 | 21 | the record as follows: "You didn't copy |
| 02:07 | 22 | imgchili or OVH because you didn't actually |
| 02:07 | 23 | want this notices -- noticed processed, did |
| 02:07 | 24 | you?") |
| 02:07 | 25 | MR. SPILLANE: Go ahead. |

Page 249

02:07  1    THE WITNESS:  That's not, to my
02:07  2  knowledge, the reason.
02:07  3  BY MS. KASSABIAN:
02:07  4    Q.    You know that when you send a DMCA
02:07  5  Notice to imgchili, they generally process it
02:07  6  by taking down the content, right?
02:07  7    A.    Yes.
02:07  8    Q.    And that's at least in part why you
02:08  9  would send DMCA Notices to imgchili, among
02:08  10  others, when you want an imgchili takedown,
02:08  11  right?
02:08  12    A.    Correct.
02:08  13    Q.    But on your latest -- one of your most
02:08  14  recent DMCA Notices to imgchili regarding
02:08  15  imgchili, you stopped copying them, right?
02:08  16    A.    This was -- this is the difference.
02:08  17  This was my notice (indicating).  This is
02:08  18  Eric Penn's notice, which I just forwarded to
02:08  19  who he told me to forward it to.
02:08  20    Q.    Right.  Mr. Penn told you who to send
02:08  21  it to?
02:08  22    A.    Yeah, he would copy me, "Send it here,
02:08  23  here and here."  And I just would copy and
02:08  24  paste it.  So I may not have noticed, but it
02:08  25  wasn't --

Page 250

02:08  1    Q.    And he didn't tell you to send an
02:08  2  image -- the imgchili DMCA Notice to
02:08  3  imgchili, did he?
02:08  4    A.    I guess not.  It may have been an
02:08  5  oversight.  It may have -- you know, it
02:08  6  happens, but....
02:08  7    Q.    Are you guessing as to what Mr. Penn
02:09  8  might have been thinking?
02:09  9    A.    I'm guessing.
02:09  10    MS. KASSABIAN:  Let's mark as
02:09  11  Exhibits 40 and 41 two more DMCA Notices.
02:09  12  The first is Bates-stamped Easton 66070
02:09  13  through -92, and the second is Easton 69664
02:09  14  through -74.
02:10  15    (Exhibit 40 and Exhibit 41 were
02:10  16  marked.)
02:10  17    (Sotto voce discussion.)
02:10  18    MR. SPILLANE:  Is that 40 and 41
02:10  19  or is that my copy of 40?
02:10  20    THE COURT REPORTER:  40 and 41.
02:10  21    MR. SPILLANE:  Oh, this is 40 and
02:10  22  41?  Okay.
02:10  23    MS. KASSABIAN:  That's 41
02:10  24  (tendering).
02:10  25    MR. SPILLANE:  41 is --

Page 251

02:10  1    MS. KASSABIAN:  And this is 40
02:10  2  (tendering).
02:10  3    MR. SPILLANE:  Okay.
02:10  4  BY MS. KASSABIAN:
02:10  5    Q.    Here we have another two DMCA Notices
02:10  6  regarding ImgTrex, right?
02:10  7    A.    Correct.
02:10  8    Q.    And one's in April of 2017 and one's
02:10  9  June 18th of 2017, right?
02:10  10    A.    Correct.
02:11  11    Q.    Who's Benjamin Fonze?
02:11  12    A.    He's the advertiser that's behind most
02:11  13  of the image pirates.
02:11  14    Q.    He's ExoClick?
02:11  15    A.    Yes.
02:11  16    Q.    So on this first e-mail, the first
02:11  17  DMCA Notice regarding ImgTrex in April, you
02:11  18  sent it to Cloudflare and to the host, right?
02:11  19    A.    Correct.
02:11  20    Q.    And you -- and you know who the host
02:11  21  is obviously?
02:11  22    A.    I think.  They don't respond at all.
02:11  23    Q.    Right.  But you know this is the host
02:11  24  because you've got --
02:11  25    A.    I'm not --

Page 252

02:11  1    Q.    -- you've gotten that information
02:11  2  before, right?
02:11  3    A.    I -- I'm not positive because
02:11  4  originally they were on WorldStream.
02:11  5  WorldStream kicked them off, and I was told
02:12  6  -- I -- I guess it was Cloudflare told me
02:12  7  that they went to QUASINETWORKS, but I don't
02:12  8  know.
02:12  9    Q.    And in the second DMCA Notice
02:12  10  regarding ImgTrex on June 18th, you only sent
02:12  11  it to Cloudflare by e-mail, not web form,
02:12  12  right; is that correct?
02:12  13    A.    Correct.
02:12  14    Q.    And you did not copy the host, even
02:12  15  though you know who the host is reported to
02:12  16  be, right?
02:12  17    A.    Correct.
02:12  18    Q.    Now, looking down at Exhibit 41, do
02:12  19  you see how there's a list of URLs?
02:12  20    A.    Yes.
02:12  21    Q.    And the URLs have a reference to a
02:12  22  person's name?
02:13  23    A.    Yes.
02:13  24    Q.    And then it says "S6," right?
02:13  25    A.    Yes.

Page 277

| 02:50 | 1 | A. Correct. |
| 02:50 | 2 | Q. -- right? |
| 02:50 | 3 | A. Yes. |
| 02:50 | 4 | Q. These are from your Gmail account? |
| 02:50 | 5 | A. Yes. |
| 02:50 | 6 | Q. Have you tried to have those e-mails |
| 02:50 | 7 | recovered? |
| 02:50 | 8 | A. I didn't know there was a way I could |
| 02:50 | 9 | do that. |
| 02:50 | 10 | Q. Is this October 2016 time period |
| 02:50 | 11 | around the time that you recall being |
| 02:50 | 12 | instructed to preserve documents? |
| 02:50 | 13 | A. Oh, my -- my comment about re- -- |
| 02:50 | 14 | deleted thousands of Cloudflare replies is |
| 02:51 | 15 | from a long time ago. I didn't -- I -- I |
| 02:51 | 16 | haven't deleted huge a- -- amounts of |
| 02:51 | 17 | anything in the last couple years. |
| 02:51 | 18 | Q. Okay. So then sitting in your Gmail |
| 02:51 | 19 | inbox right now are hundreds and hundreds of |
| 02:51 | 20 | Cloudflare responses to the hundreds and |
| 02:51 | 21 | hundreds of DMCA Notices you've sent since |
| 02:51 | 22 | October of 2016? |
| 02:51 | 23 | A. Thousands. |
| 02:51 | 24 | Q. Thousands of them? |
| 02:51 | 25 | A. (Witness moves head up and down.) |

Page 278

| 02:51 | 1 | Q. Okay. So those would have been |
| 02:51 | 2 | responsive to our subpoena, and we did not |
| 02:51 | 3 | receive them. |
| 02:51 | 4 | A. You told me you didn't receive my |
| 02:51 | 5 | invoices either, and they're right here. |
| 02:51 | 6 | Q. We received nine, not -- not hundreds |
| 02:51 | 7 | or thousands -- |
| 02:51 | 8 | A. I didn't say -- |
| 02:51 | 9 | Q. -- of your -- |
| 02:51 | 10 | A. -- hundreds or thousands. |
| 02:51 | 11 | Q. Please let me finish. |
| 02:51 | 12 | We received nine Cloudflare web form |
| 02:51 | 13 | responses -- I'm sorry, wri- -- e-mail |
| 02:51 | 14 | responses asking you to send a web form, and |
| 02:51 | 15 | a small handful of web form responses, not |
| 02:52 | 16 | thousands and thousands. |
| 02:52 | 17 | So we will follow up with |
| 02:52 | 18 | Mr. Spillane, and if, in fact, you have all |
| 02:52 | 19 | of these Cloudflare responses, then we -- we |
| 02:52 | 20 | would like them produced. |
| 02:52 | 21 | A. Certainly. |
| 02:52 | 22 | Q. When was the last time you deleted a |
| 02:52 | 23 | Cloudflare reply e-mail? |
| 02:52 | 24 | A. It's been a couple years, probably. |
| 02:52 | 25 | Q. Okay. And so if we did a forensic |

Page 279

| 02:52 | 1 | examination of your Gmail account to look for |
| 02:52 | 2 | delete dates, we would not find a Cloudflare |
| 02:52 | 3 | reply to you deleted any earlier than about |
| 02:52 | 4 | 2015? |
| 02:52 | 5 | A. Not intentionally. I mean, there may |
| 02:53 | 6 | be one or two, but they were just auto |
| 02:53 | 7 | replies. |
| 02:53 | 8 | Q. And you've been saving them? |
| 02:53 | 9 | A. Yes. |
| 02:53 | 10 | Q. So they're all in your e-mail account? |
| 02:53 | 11 | A. They should be. |
| 02:53 | 12 | Q. So we will add that to our list of |
| 02:53 | 13 | items that should have been produced but |
| 02:53 | 14 | weren't, to Mr. Spillane. |
| 02:53 | 15 | So it's your testimony, sir, that |
| 02:54 | 16 | since this lawsuit was filed in July of 2016, |
| 02:54 | 17 | you have not deleted a single e-mail to or |
| 02:54 | 18 | from Cloudflare involving ALS Scan? |
| 02:54 | 19 | A. Not that I know of. Not |
| 02:54 | 20 | intentionally. |
| 02:54 | 21 | Q. Okay. Sir, if we asked Gmail to |
| 02:54 | 22 | recover those deleted files with your |
| 02:54 | 23 | consent, would that be all right with you? |
| 02:54 | 24 | A. Yes. |
| 02:55 | 25 | MS. KASSABIAN: I'd like to mark |

Page 280

| 02:55 | 1 | as Exhibit 45 an e-mail Bates-stamped Easton |
| 02:55 | 2 | 10247 through -49. |
| 02:55 | 3 | (Exhibit 45 was marked.) |
| 02:55 | 4 | BY MS. KASSABIAN: |
| 02:55 | 5 | Q. This is an e-mail between you and |
| 02:55 | 6 | Alex Kern, right? |
| 02:55 | 7 | A. Yeah. Yes, sir [sic], it is. |
| 02:56 | 8 | Q. And on January 9th, 2012, on the |
| 02:56 | 9 | second page, you wrote an e-mail saying: |
| 02:56 | 10 | "It's time to start to fight back." |
| 02:56 | 11 | Do you see that? |
| 02:56 | 12 | A. Uh-huh. |
| 02:56 | 13 | Q. And you refer -- you -- you reference |
| 02:56 | 14 | a spider called Teleport Pro, right? |
| 02:56 | 15 | A. Correct. |
| 02:56 | 16 | Q. And you say: "I can't stop some of |
| 02:56 | 17 | these idiots, so here's what I would like to |
| 02:56 | 18 | do. It's totally legal to spider website |
| 02:56 | 19 | content," right? |
| 02:56 | 20 | A. (Witness moves head up and down.) |
| 02:56 | 21 | Q. And then you say: "We choose an image |
| 02:56 | 22 | and everyone locks on continuous download at |
| 02:56 | 23 | the same time. It will overheat the server |
| 02:56 | 24 | or completely crash the domain." |
| 02:56 | 25 | Do you see that? |

Page 285

| | | |
|---|---|---|
| 03:13 | 1 | A.   I have not. |
| 03:13 | 2 | Q.   You never seen any spreadsheets |
| 03:13 | 3 | listing URLs, for example? |
| 03:13 | 4 | A.   Other than what you see here |
| 03:13 | 5 | (indicating), no. |
| 03:13 | 6 | Q.   And by "here" you mean the DMCA -- |
| 03:13 | 7 | A.   Like, yeah. |
| 03:13 | 8 | Q.   -- notices? |
| 03:13 | 9 | A.   That's the only time I've ever seen a |
| 03:13 | 10 | list of actual infringements. |
| 03:13 | 11 | Q.   So you've not been involved in |
| 03:13 | 12 | creating any spreadsheets tracking |
| 03:13 | 13 | infringements or anything like that? |
| 03:13 | 14 | A.   No. |
| 03:13 | 15 |     MS. KASSABIAN:  I would like to |
| 03:13 | 16 | mark as Exhibit 40- |
| 03:13 | 17 |     THE COURT REPORTER:  -6. |
| 03:14 | 18 |     MS. KASSABIAN:  -- a spreadsheet. |
| 03:14 | 19 | Oh. |
| 03:14 | 20 |     (Exhibit 46 was marked.) |
| 03:14 | 21 | BY MS. KASSABIAN: |
| 03:14 | 22 | Q.   And this is for the ArtOfX.org |
| 03:14 | 23 | website, and my question for you, Mr. Easton, |
| 03:14 | 24 | is do you recognize this document? |
| 03:14 | 25 | A.   No. |

Page 286

| | | |
|---|---|---|
| 03:14 | 1 | Q.   And have you had any involvement in |
| 03:14 | 2 | its preparation? |
| 03:14 | 3 | A.   No, ma'am, I've never seen this |
| 03:14 | 4 | before. |
| 03:14 | 5 | Q.   Do you see at the top there's some |
| 03:14 | 6 | headings? |
| 03:14 | 7 | A.   Yes. |
| 03:14 | 8 | Q.   And the first heading said "DMCA |
| 03:14 | 9 | Number"? |
| 03:14 | 10 | A.   Yes. |
| 03:14 | 11 | Q.   Okay.  "Date," "Recipient," et cetera, |
| 03:14 | 12 | et cetera? |
| 03:14 | 13 | A.   Yes. |
| 03:14 | 14 | Q.   Okay.  And then it says, one, two, |
| 03:14 | 15 | three, four, five, sixth column over:  "Not |
| 03:15 | 16 | CF/linked file locker infringements." |
| 03:15 | 17 |     Do you see that? |
| 03:15 | 18 | A.   Yeah. |
| 03:15 | 19 | Q.   Do you know what that means? |
| 03:15 | 20 | A.   I -- okay.  I'm going to guess it |
| 03:15 | 21 | says: Not Cloudflare linked file locker |
| 03:15 | 22 | infringements. |
| 03:15 | 23 | Q.   And do you have an understanding as to |
| 03:15 | 24 | what that means? |
| 03:15 | 25 | A.   Probably -- I'm -- I'm not certain -- |

Page 287

| | | |
|---|---|---|
| 03:15 | 1 | certain, but I -- when it says file locker, |
| 03:15 | 2 | that means they're -- the pages were linked |
| 03:15 | 3 | to a -- like, a -- the files. |
| 03:15 | 4 | Q.   Right.  And so in this case, for |
| 03:15 | 5 | ArtOfX, which I know is a website you |
| 03:15 | 6 | visited -- |
| 03:15 | 7 | A.   Right. |
| 03:15 | 8 | Q.   -- does this mean that the links on |
| 03:15 | 9 | ArtOfX are to file lockers hosting these |
| 03:15 | 10 | infringing images? |
| 03:15 | 11 | A.   They -- they were, as I recall, or |
| 03:16 | 12 | still -- they still are active.  But they |
| 03:16 | 13 | also used a little -- a small sample, five or |
| 03:16 | 14 | ten images, to -- to show what is in that |
| 03:16 | 15 | file. |
| 03:16 | 16 | Q.   The little thumbnails? |
| 03:16 | 17 | A.   Cor--- well, they are thumbnails, but |
| 03:16 | 18 | you can make enlargements of them.  But |
| 03:16 | 19 | that's what was linked to all these file |
| 03:16 | 20 | lockers. |
| 03:16 | 21 | Q.   So ArtOfX shows you some thumbnails |
| 03:16 | 22 | that entice you to click? |
| 03:16 | 23 | A.   Right. |
| 03:16 | 24 | Q.   And go to the file locker? |
| 03:16 | 25 | A.   Right. |

Page 288

| | | |
|---|---|---|
| 03:16 | 1 | Q.   And then the file locker is hosting |
| 03:16 | 2 | some additional images? |
| 03:16 | 3 | A.   Usually the entire photo shoot or set. |
| 03:16 | 4 | Q.   And did you -- when you were working |
| 03:16 | 5 | on the ArtOfX DMCA Notices, did you click |
| 03:16 | 6 | through to the file locker -- |
| 03:16 | 7 | A.   Yes. |
| 03:16 | 8 | Q.   -- and download the pictures? |
| 03:16 | 9 | A.   I didn't download the pictures.  I had |
| 03:16 | 10 | the files removed. |
| 03:16 | 11 | Q.   You had the files removed? |
| 03:16 | 12 | A.   I had the -- the -- the torrent files |
| 03:16 | 13 | or file locker files -- |
| 03:16 | 14 | Q.   Yes. |
| 03:16 | 15 | A.   -- removed. |
| 03:16 | 16 | Q.   How? |
| 03:16 | 17 | A.   I notify them the same way as I do the |
| 03:17 | 18 | image hosts. |
| 03:17 | 19 | Q.   And so the underlying file locker |
| 03:17 | 20 | copies of images that you first linked to |
| 03:17 | 21 | from ArtOfX.com -- dot -- dot org, those are |
| 03:17 | 22 | down now? |
| 03:17 | 23 | A.   If -- unless they're on this Up store |
| 03:17 | 24 | (phonetic), which is hosted in Romania, yeah, |
| 03:17 | 25 | they're done. |

Page 297

| | | |
|---|---|---|
| 03:53 | 1 | to -- to Mr. Spillane to give you those, so |
| 03:53 | 2 | that he can identify and provide for you the |
| 03:53 | 3 | precise page and line sections where we |
| 03:53 | 4 | discussed Mr. Easton's compensation and |
| 03:54 | 5 | his -- his home address. |
| 03:54 | 6 | MR. SPILLANE:  I'm also -- I -- |
| 03:54 | 7 | I -- I'm designating Exhibits 2, 3, 4, 5, 6 |
| 03:54 | 8 | and 7 as confidential.  I -- I -- I didn't |
| 03:54 | 9 | previously appreciate that they bore |
| 03:54 | 10 | Mr. Easton's mail address, which he'd like |
| 03:54 | 11 | not to be out in the public.  So I'm |
| 03:54 | 12 | designating them here.  And I'll also go back |
| 03:54 | 13 | to the database and mark -- mark these |
| 03:54 | 14 | documents as confidential so that you |
| 03:54 | 15 | subsequently can see that right there on the |
| 03:54 | 16 | page. |
| 03:54 | 17 | I propose the following |
| 03:54 | 18 | stipulation with respect to the handling of |
| 03:54 | 19 | the transcript" that the court reporting |
| 03:54 | 20 | company be relieved of any duties it may have |
| 03:54 | 21 | with retention of the transcripts; that once |
| 03:54 | 22 | the transcript is prepared and delivered, the |
| 03:54 | 23 | original will be delivered to me at my |
| 03:54 | 24 | office. |
| 03:54 | 25 | I will make arrangements for |

Page 298

| | | |
|---|---|---|
| 03:54 | 1 | Mr. Easton to review the transcript, make any |
| 03:55 | 2 | changes, sign it under penalty of perjury |
| 03:55 | 3 | within 30 days or within any larger period of |
| 03:55 | 4 | time to which we may stipulate in writing. |
| 03:55 | 5 | I will -- and then since you're |
| 03:55 | 6 | the examining party, I will transmit the -- |
| 03:55 | 7 | the signed, corrected original to you for |
| 03:55 | 8 | safekeeping.  Cloudflare will make the |
| 03:55 | 9 | original transcript available on reasonable |
| 03:55 | 10 | demand of the case.  And for -- if for any |
| 03:55 | 11 | reason an -- an original signed transcript |
| 03:55 | 12 | isn't available at the trial, then a |
| 03:55 | 13 | certified copy can be used as though it were |
| 03:55 | 14 | a signed original. |
| 03:55 | 15 | MS. KASSABIAN:  Fine with me. |
| 03:55 | 16 | Although I assume the reporting service is |
| 03:55 | 17 | going to keep a digital copy regardless. |
| 03:55 | 18 | MR. SPILLANE:  Right.  I meant -- |
| 03:55 | 19 | I meant the paper transcript. |
| 03:55 | 20 | MS. KASSABIAN:  All right.  Right. |
| 03:55 | 21 | With that caveat, that sounds fine to me. |
| 03:55 | 22 | MR. SPILLANE:  All right. |
| 03:55 | 23 | MS. KASSABIAN:  Thank you, |
| 03:55 | 24 | everyone. |
| 03:55 | 25 | THE VIDEOGRAPHER:  We're going off |

Page 299

| | | |
|---|---|---|
| 03:55 | 1 | the record.  The time is 1549. |
| 03:55 | 2 | FURTHER DEPONENT SAITH NOT. |
| 03:55 | 3 | (Proceedings concluded at |
| 03:56 | 4 | 3:55 p.m.) |
| 03:56 | 5 | |

Page 300

| | |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | I certify that the witness in the |
| 3 | foregoing deposition, STEVE EASTON, was by me |
| 4 | duly sworn to testify in the within entitled |
| 5 | cause; that the said deposition was taken at |
| 6 | the time and place therein named; that the |
| 7 | testimony of said witness was reported by me, |
| 8 | a Shorthand Reporter and Notary Public of the |
| 9 | State of Tennessee authorized to administer |
| 10 | oaths and affirmations, and said testimony, |
| 11 | Pages 8 through 298 was thereafter |
| 12 | transcribed into typewriting. |
| 13 | I further certify that I am not of |
| 14 | counsel or attorney for either or any of the |
| 15 | parties to said deposition, nor in any way |
| 16 | interested in the outcome of the cause named |
| 17 | in said deposition. |
| 18 | IN WITNESS WHEREOF, I have hereunto |
| 19 | set my hand this 9th day of August, 2017. |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | _____ |
| 25 | Carissa L. Boone, LCR No. 382 |
| | My License Expires: 6/30/2018 |

Page 301

```
1              E R R A T A
2
           I, STEVE EASTON, having read the
3   foregoing deposition, Pages 8 through 298,
    taken July 28, 2017, do hereby certify said
4   testimony is a true and accurate transcript,
    with the following changes (if any):
5
6   PAGE LINE   SHOULD HAVE BEEN      REASON
7   ___ ____  _____  _____
8   ___ ____  _____  _____
9   ___ ____  _____  _____
10  ___ ____  _____  _____
11  ___ ____  _____  _____
12  ___ ____  _____  _____
13  ___ ____  _____  _____
14  ___ ____  _____  _____
15  ___ ____  _____  _____
16  ___ ____  _____  _____
17  ___ ____  _____  _____
18  ___ ____  _____  _____
19  ___ ____  _____  _____
20        _____
          Steve Easton
21
22
    _____
23  Notary Public
24  My Commission Expires: _____
25
```

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES


| | | |
|---|---|---|
| ALS SCAN, INC., | ) | CASE NO:  2:16-CV-05051-GW-AFM |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| CLOUDFLARE, INC., ET AL., | ) | Tuesday, June 20, 2017 |
| | ) | (10:00 a.m. to 11:02 a.m.) |
| Defendants. | ) | |


DEFENDANT, CLOUDFLARE, INC.'S MOTION TO COMPEL (ECF #186)


BEFORE THE HONORABLE ALEXANDER F. MACKINNON,
UNITED STATES MAGISTRATE JUDGE


**APPEARANCES**:


For Plaintiff:                JAY M. SPILLANE, ESQ.
                              Spillane Trial Group, PLC
                              468 N. Camden Drive, 2nd Floor
                              Beverly Hills, CA 90210-4507


For Cloudflare:              RACHEL H. KASSABIAN, ESQ.
                             Quinn Emanuel Urquhart & Sullivan, LLP
                             555 Twin Dolphin Drive, 5th Floor
                             Redwood Shores, CA 94065


Court Reporter:              Recorded; CourtSmart

Deputy Clerk:                Ilene Bernal

Transcriber:                 Exceptional Reporting Services, Inc.
                             P.O. Box 18668
                             Corpus Christi, TX 78480-8668
                             361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1      **Los Angeles, California; Tuesday, June 20, 2017; 10:00 a.m.**

2                              **(Call to Order)**

3           **THE CLERK:**  Calling item number one, Case Number

4    CV16-05051-GW-AFMx, *ALS Scan, Inc. versus Cloudflare, Inc., et*

5    *al.*  Counsel please make your appearances.

6           **MR. SPILLANE:**  Good morning, your Honor, Jay

7    Spillane, for ALS Scan.

8           **THE COURT:**  Good morning.

9           **MS. KASSABIAN:**  Good morning, your Honor, Rachel

10   Kassabian, from Quinn Emanuel here on behalf of Cloudflare.

11          **THE COURT:**  Good morning.  Thank you.  Okay we're

12   here this morning on a motion to compel brought by the

13   defendant Cloudfare.  Before we get to the merits of that, I

14   want to raise one other issue.  There was a declaration filed,

15   I think this was filed by, I guess this was filed by the

16   defendant by, it was a declaration of Nolan Sch –

17          **MS. KASSABIAN:**  Schoichet.

18          **THE COURT:**  Schoichet, yeah.

19          **MS. KASSABIAN:**  Schoichet.

20          **THE COURT:**  Yes.  And there was some material

21   attached to that, particularly Exhibit "E," that had, I guess

22   you could nicely say sexual explicit material, visually

23   displayed in the exhibit.  We sealed that declaration.  I'm not

24   sure there's a rule of court on it, but I guess for my own

25   perspective I don't think that material should be made publicly

1          THE COURT:  Like it shows an infringement could cover

2   a multitude of pictures.

3          MR. SPILLANE:  Right, right, right.

4          THE COURT:  Should I break it down by picture?

5          MR. SPILLANE:  Right, but I'm right on that issue,

6   let me just show this -- so here's the two things, so on page

7   2, lines 22 to 23, I've broken out for your Honor just a single

8   line item from our summary and this pertains to Exhibit "C"

9   which is document 192-3.  It might be useful to grab.

10          THE COURT:  You're going to have to go -- I'll get

11   192-3.  For some reason I don't seem to have it immediately at

12   my fingertips.  But I'll --

13          MR. SPILLANE:  Okay.  Well, here's the idea.  So this

14   information on Page 2 is a little pull out from our summary of

15   infringements we're pressing against Cloudflare, and if you had

16   Exhibit 192-3, it's the actual email, this DMC Number 1914,

17   sent on June 11, 2015.  Okay.  So, what that says is the email

18   was sent to Cloudflare and Dolphin, which is the name of the

19   side owner.  The model in the photoset is Christine.  The

20   number of individual images is 179 and the Christine photoset

21   was -- pertains to the registration, the number of which is

22   given here and we've produced the registration.

23          Now here's what happens.  So, Mr. Easton sends this

24   email, Dear Cloudflare and Dolphin, please be advised I

25   represent ALS and below are the links to a 179 pictures of

1   Christine that belong to my clients, infringing, we demand you

2   take it down.  So, generally speaking the site takes it down.

3           So what happens is you're left with an email and the

4   URL themselves, you can see it says ALS Christine RS5.  Those

5   characters are in each of the links.

6           Now the problem is, once the pictures -- so we know

7   it's the ALS's Christine set, and I forget what the RS5

8   pertains to, but it identifies which -- you know, she's on the

9   beach or whatever.  But the problem is once the links go dead,

10  we don't have any way of knowing which particular picture of

11  Christine relates to which link.

12          In other words, we can't say the first link was the

13  one she's in her bikini and the third one was the one where she

14  has her clothes off and you can't -- you can't detail that

15  anymore because the links are dead and there isn't enough

16  information in the URLs themselves to tell us which particular

17  picture of Christine.  So, this is why I call this make work.

18          In order to do what Cloudflare is wanting as a theme

19  without -- and I've explained this to Ms. Kassabian, what

20  Cloudflare keeps pounding the table on is a theme.  It's a case

21  about pictures, we want an identification picture by picture.

22  To effectuate that, all we do is take this one row and turn it

23  into a 179 rows with exactly the same information and it --

24          **THE COURT:**  Well, you don't know what -- the point is

25  you don't know exactly which picture of Christine relates to

38

1    those 179 links.

2            **MR. SPILLANE:**  Right.  We can't break it out any

3    further than that.  So all --

4            **THE COURT:**  That's all you know.

5            **MR. SPILLANE:**  All we're able to say is 179 pictures

6    of Christine were on that site at that time and they relate to

7    this links and at this point we can't tell you link number one

8    is this picture and link number two is that picture.

9            **THE COURT:**  And the defendants, if they contend

10   that's going to be insufficient as a matter of proof of

11   infringement, that'll be a different question, but from a

12   discovery standpoint you've given them all the information you

13   have.

14           **MR. SPILLANE:**  Yeah.  If we could break it down

15   any -- if there's a break out, we give the break out.  For

16   example, some emails are about two models, so we break it out.

17   There's a 150 Amber and 120 of Trixie or something like that.

18   Whatever detail we're capable of supplying we supplied.

19           **THE COURT:**  Okay.  Let me -- is there anything else

20   you'd like to raise at the moment?  Because I have an 11:00

21   that I need to be available for so I'm going to give the

22   defendant a brief chance to respond and if there's anything

23   else I'll give you a minute or two, okay?

24           **MR. SPILLANE:**  All right.  Thank you.

25           **THE COURT:**  Thank you.

47

1   phone as well, okay?

2            **MR. SPILLANE:**  All right.  Thank you very much.

3            **MS. KASSABIAN:**  Thank you, your Honor.

4       **(Proceeding adjourned at 11:02)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

June 28, 2017

TONI HUDSON, TRANSCRIBER

# EXHIBIT H

| | |
|---|---|
| **From:** | APIC Worldwide <apiccopyright@gmail.com> |
| **Sent:** | Thursday, August 11, 2011 5:45 AM |
| **To:** | sarah@smart.net |
| **Cc:** | epenn@smart.net |
| **Subject:** | Re: APIC |

great , just being careful.
I'll be back Monday

S

On Thu, Aug 11, 2011 at 7:52 AM, Sarah <sarah@smart.net> wrote:
> Hi Steve,
>
> Yes, Eric is all good ;-)  He's been with us a couple of years and a lot of the copyright
> infringements I've sent you lately are ones he found.  I thought it would be okay if he just
> contacted you directly with those.
>
> Thanks,
> Sarah
>
> On 10 Aug 2011 at 21:10, APIC Worldwide wrote:
>
>> Hi Eric,
>>
>> Please understand I need confirmed by Sarah.
>> I'm out of town until Monday, if you could hold tight...
>>
>> S
>>
>>
>>
>> On Wed, Aug 10, 2011 at 8:47 PM, Eric Penn <epenn@smart.net> wrote:
>> > Hi Steve (sp?)
>> > I just wanted to introduce myself. I'm Eric and I work with ALS Scan, Inc.
>> > In the past, you've usually rcvd (C) emails from Sarah (sarah@smart.net) but
>> > I will most likely be handling these from now on.
>> > I have an automated alert system that updates me daily of infringement
>> > links... usually just a couple. I was wondering if you would prefer daily
>> > short-lists or a weekly digest of my reports?
>> > Hope all is well with you and your work at APIC is greatly appreciated!
>> > Regards,
>> > Eric

Easton011220

>> > ALS Scan, Inc.
>> > On 10 Aug 2011 at 7:58, Sarah wrote:
>> >> FYI
>> >> ------- Forwarded message follows -------
>> >> Date sent:        Tue, 9 Aug 2011 23:39:39 -0500
>> >> Subject:        APIC
>> >> From:        APIC Worldwide <apiccopyright@gmail.com>
>> >> To:        admin@a-w.org
>> >>
>> >> I will be out of the office until Monday this week , last minute
>> >> emergency.
>> >>
>> >> S
>> >> ------- End of forwarded message -------
>> >
>
>
>

Easton011221

# EXHIBIT I

**From:** Steve Easton Authorized Agent <apiccopyright@gmail.com>
**Sent:** Wednesday, June 21, 2017 4:29 PM
**To:** als.epenn@gmail.com
**Subject:** Re: NEW SIGN INS TO YOUR GMAIL

search :justin paine"


On Wed, Jun 21, 2017 at 6:21 PM, ALS Eric <als.epenn@gmail.com> wrote:
> ARE ME :)

Easton070443

# EXHIBIT J

From:          Steve Easton Authorized Agent <apiccopyright@gmail.com>
Sent:          Tuesday, October 4, 2016 7:17 AM
To:            als.epenn@gmail.com
Subject:       Re: ALS - CHRONOS.TO 340

I doubt I have it. I've deleted thousands of cloudflare replies.  I'll start adding it and I doubt it will matter/

On Tue, Oct 4, 2016 at 10:13 AM, ALS Eric <als.epenn@gmail.com> wrote:
> Interesting. That's an email I'd like to have a copy of if possible.
> They've been quoted questioning if we used proper notice procedures.
> dmca@cloudflare.com is what is listed under their registered agent
> with the USCO which is part of safe harbor eligibility. I would at least CC it.
>
> On Tue, Oct 4, 2016 at 11:08 AM, Steve Easton Authorized Agent
> <apiccopyright@gmail.com> wrote:
>>
>> when I used to use that they requested "abuse" ?
>>
>>
>> On Tue, Oct 4, 2016 at 9:55 AM, ALS Eric <als.epenn@gmail.com> wrote:
>> > Steve - please see attached. I recommend you use or in addition
>> > copy dmca@cloudflare.com vs just abuse@cloudflare.com going forward.
>> >
>> >
>> > On Tue, Oct 4, 2016 at 10:25 AM, Steve Easton Authorized Agent
>> > <apiccopyright@gmail.com> wrote:
>> >>
>> >> NOTICE OF COPYRIGHT, TRADEMARK INFRINGEMENT
>> >>
>> >>
>> >> Date:  Oct 4, 2016
>> >>
>> >> To:
>> >>
>> >> CLOUDFLARE
>> >> 665 Third Street #207
>> >> SAN FRANCISCO
>> >>
>> >>
>> >> QUASINETWORKS / SEYCHELLES
>> >> ECATEL  hosts CHRONOS.TO  / LEVEL3 upstream ECATEL professional
>> >> response "go fuck your mother"  Feb 1, 2016
>> >>
>> >>
>> >> ZEOBIT / MALWARE
>> >>
>> >>

Easton006124

>> >> CLOUDFLARE is a safe harbor for criminals
>> >>
>> >>
>> >>
>> >>
>> >> ////////////////////////////////////////////////////////////
>> >> ///////////////////////////////////////////////////////
>> >> Infringing URLs:
>> >>
>> >>
>> >> ©  ® TM /ALS Scan, Inc.
>> >> PO Box 263
>> >> Randallstown, Md.
>> >>
>> >>
>> >>
>> >>
>> >> f="http://chronos.to/52wjjgylg8hj" target="_blank"><img
>> >> src="http://chronos.to/t/011/03701/52wjjgylg8hj" border="0" alt=""
>> >> /></a><br />
>> >>
>> >> <a href="http://chronos.to/x2k7bebgm72l" target="_blank"><img
>> >> src="http://chronos.to/t/032/03701/x2k7bebgm72l" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ipv8i01s4gfk"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/ipv8i01s4gfk" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/c9ht5ybrxy91"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/c9ht5ybrxy91" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/wpaoureqb1ql"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/wpaoureqb1ql" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/041iedru2gw4"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/041iedru2gw4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/3fiwysa1uer8"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/3fiwysa1uer8" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/olereskymuty"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/olereskymuty" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xrbxtwajnx5i"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/xrbxtwajnx5i" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/eqg19l7ekehu"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/eqg19l7ekehu" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ycxno7htp03i"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/ycxno7htp03i" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/kp7e31sqiuyt"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/kp7e31sqiuyt" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/e7f4s2l8kk3p"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/e7f4s2l8kk3p" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/5uxg37eoc6hf"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/5uxg37eoc6hf" border="0" alt=""

Easton006125

```
>> >> /></a> <a href="http://chronos.to/zm4zdx0m9egf"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/zm4zdx0m9egf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/z0talze44s61"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/z0talze44s61" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lki80qa5l8xl"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/lki80qa5l8xl" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/x2fd0uhsgnv4"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/x2fd0uhsgnv4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/26laprmegdzf"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/26laprmegdzf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/8ecitag979ax"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/8ecitag979ax" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/6wl5vabxh0c9"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/6wl5vabxh0c9" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/f8v9o98j6mwn"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/f8v9o98j6mwn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/g8prc9f99dvu"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/g8prc9f99dvu" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/0euq587julsb"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/0euq587julsb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/a21zy6e4qyu6"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/a21zy6e4qyu6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/hjvg3nffr4ov"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/hjvg3nffr4ov" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ufhrgbvg1f11"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/ufhrgbvg1f11" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/a3suebujo7bd"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/a3suebujo7bd" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/yaonh1h7z52h"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/yaonh1h7z52h" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2r6byl5hhksc"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/2r6byl5hhksc" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/v08pbphy7zzj"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/v08pbphy7zzj" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/fsv15q9pm8vv"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/fsv15q9pm8vv" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1ap1mct7zg4e"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/1ap1mct7zg4e" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/uydbnfkdllaa"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/uydbnfkdllaa" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/fi893h1c2hkl"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/fi893h1c2hkl" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/grgvfvfhbs1q"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/grgvfvfhbs1q" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/5501gzvfx6gc"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/5501gzvfx6gc" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xddsq1lbuju5"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/xddsq1lbuju5" border="0" alt=""
```

Easton006126

```
>> >> /></a> <a href="http://chronos.to/h4pmva404wfb"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/h4pmva404wfb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/o4zb7v511owb"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/o4zb7v511owb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/dklbj44pz5nk"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/dklbj44pz5nk" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/y9sl3085j70v"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/y9sl3085j70v" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/pmh07uhoi21g"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/pmh07uhoi21g" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xero5w11dawy"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/xero5w11dawy" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/kqetig72jykk"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/kqetig72jykk" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/nyra869o81dp"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/nyra869o81dp" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xrj8c19ycwg8"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/xrj8c19ycwg8" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/luryjzk9dqcb"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/luryjzk9dqcb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lwtuf0nv3agm"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/lwtuf0nv3agm" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/szwrv0avl1fa"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/szwrv0avl1fa" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ubn9vlom3vj5"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/ubn9vlom3vj5" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ul6xjr08dz17"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/ul6xjr08dz17" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/7wub41i6jj46"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/7wub41i6jj46" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/3p2a97lqajlh"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/3p2a97lqajlh" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1152qayek45k"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/1152qayek45k" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/f66vmqomkz1m"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/f66vmqomkz1m" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/jjd2jx9833cm"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/jjd2jx9833cm" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/q6ne1n8ejz7j"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/q6ne1n8ejz7j" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/7t9j331vtf14"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/7t9j331vtf14" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/82gwub4ds4h8"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/82gwub4ds4h8" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xu1qm7m757ny"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/xu1qm7m757ny" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/50yvpkfdnnoz"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/50yvpkfdnnoz" border="0" alt=""
```

Easton006127

```
>> >> /></a> <a href="http://chronos.to/f8j6i49ouxl6"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/f8j6i49ouxl6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/8cvp8rx140u9"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/8cvp8rx140u9" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/e9894uit6wjx"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/e9894uit6wjx" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/grgmm6nl1p32"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/grgmm6nl1p32" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/573os2n5x777"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/573os2n5x777" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/zab2t2l4nry2"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/zab2t2l4nry2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xl4qezldtgeu"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/xl4qezldtgeu" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/nxdrcr1gy3p8"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/nxdrcr1gy3p8" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/h4dlxvnpzwdm"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/h4dlxvnpzwdm" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/idnecs4gen72"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/idnecs4gen72" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/tjvbrxalm9gi"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/tjvbrxalm9gi" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/j4894rx06qzt"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/j4894rx06qzt" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/szhxdi9d8ldm"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/szhxdi9d8ldm" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/br4xcpbivfai"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/br4xcpbivfai" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/5j2pprl3tw4q"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/5j2pprl3tw4q" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/z78snfpxzvuc"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/z78snfpxzvuc" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/o0oz615iickb"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/o0oz615iickb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/o4yjpcmmv3mj"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/o4yjpcmmv3mj" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ris5xgoy5eyh"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/ris5xgoy5eyh" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/09srjdml2pg9"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/09srjdml2pg9" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/3epv219jqzgs"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/3epv219jqzgs" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ob03alhjxlno"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/ob03alhjxlno" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/aev2rixc4qup"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/aev2rixc4qup" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/qe32narvmojx"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/qe32narvmojx" border="0" alt=""
```

Easton006128

```
>> >> /></a> <a href="http://chronos.to/bpeprn3ehjof"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/bpeprn3ehjof" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/u5rn35g8jimw"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/u5rn35g8jimw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/vpd23x974xvb"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/vpd23x974xvb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/z907pzt1j8be"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/z907pzt1j8be" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/o9zkl3mm2lro"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/o9zkl3mm2lro" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/yqd20s2btvdf"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/yqd20s2btvdf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/40361wketq0n"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/40361wketq0n" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/dz1i157vfz5h"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/dz1i157vfz5h" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/dw4lto6glp64"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/dw4lto6glp64" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lpx8y7zytwqw"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/lpx8y7zytwqw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/5vrcrffg70zw"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/5vrcrffg70zw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1hv044eudu1u"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/1hv044eudu1u" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/qc4bbiob979t"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/qc4bbiob979t" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/mivihazlb3y6"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/mivihazlb3y6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/oamdee3ssjbf"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/oamdee3ssjbf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/njhqa54xorw0"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/njhqa54xorw0" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/aklsxxsue9ky"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/aklsxxsue9ky" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/djlts2sd9v73"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/djlts2sd9v73" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/uiwyk8fgzoa0"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/uiwyk8fgzoa0" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/axcumi56ra4k"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/axcumi56ra4k" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/m9e95yqpiofy"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/m9e95yqpiofy" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/grqj8k1mwovy"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/grqj8k1mwovy" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/z7ghaptidnrn"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/z7ghaptidnrn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ztm348iq9qxq"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/ztm348iq9qxq" border="0" alt=""
```

Easton006129

>> >> /></a> <a href="http://chronos.to/49aqzsctaif4"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/49aqzsctaif4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/x7sb34chg8cy"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/x7sb34chg8cy" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/glhgwsw1mrsg"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/glhgwsw1mrsg" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/qrs5rz3vhhzk"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/qrs5rz3vhhzk" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/4tly2ltqt28m"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/4tly2ltqt28m" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xa2qu0fi3mgk"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/xa2qu0fi3mgk" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/vhntoxr9p92l"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/vhntoxr9p92l" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/200gpbynyp2v"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/200gpbynyp2v" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/88deuf7iurn2"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/88deuf7iurn2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ix5gk5qgik1h"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/ix5gk5qgik1h" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2lo9ca49wq26"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/2lo9ca49wq26" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/8amcjefpbquj"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/8amcjefpbquj" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/9galxbv5xqlh"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/9galxbv5xqlh" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/mqa5wiyqd5le"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/mqa5wiyqd5le" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2aslwi91avlb"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/2aslwi91avlb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ammzdmc44ea0"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/ammzdmc44ea0" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/wr1zjn9rymzq"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/wr1zjn9rymzq" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/b0a1gdum94p1"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/b0a1gdum94p1" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/cv53ln5kdb3u"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/cv53ln5kdb3u" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ohjh5kx4a8yn"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/ohjh5kx4a8yn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/o0i1k5fceilr"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/o0i1k5fceilr" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/w3eb5frrux21"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/w3eb5frrux21" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ekre6sacyeod"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/ekre6sacyeod" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/0si190b9sdep"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/0si190b9sdep" border="0" alt=""

Easton006130

>> >> /></a> <a href="http://chronos.to/h9c0k4y4h31b"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/h9c0k4y4h31b" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/m9hsih26ztgy"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/m9hsih26ztgy" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/oj6997dmh18q"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/oj6997dmh18q" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/x5qxwe4k6ix9"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/x5qxwe4k6ix9" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/tix1rajmrmg6"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/tix1rajmrmg6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2lndjqm1ooud"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/2lndjqm1ooud" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/95sob6garazv"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/95sob6garazv" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/60lw25s0k89m"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/60lw25s0k89m" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/3q2ru9bdgzm2"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/3q2ru9bdgzm2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/qeq5mdztoc4n"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/qeq5mdztoc4n" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1lq2wgklyue7"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/1lq2wgklyue7" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/3ovc1hmym40e"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/3ovc1hmym40e" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/c7q5q651cx44"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/c7q5q651cx44" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/prku8ha8rid6"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/prku8ha8rid6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/cg1rbd11sng2"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/cg1rbd11sng2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1t2ejp87zpq6"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/1t2ejp87zpq6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/alusqoi1p5xn"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/alusqoi1p5xn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1a3w7jw0lgkf"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/1a3w7jw0lgkf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/rc2edjrnrgn9"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/rc2edjrnrgn9" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/nnlg07jcsoxt"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/nnlg07jcsoxt" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/qcu0f5kyezxn"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/qcu0f5kyezxn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/j9vjx7c8ai1g"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/j9vjx7c8ai1g" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/l8t7hkkz8rws"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/l8t7hkkz8rws" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/creo6hpmtf2x"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/creo6hpmtf2x" border="0" alt=""

Easton006131

```
>> >> /></a> <a href="http://chronos.to/seodqj1snack"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/seodqj1snack" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/vnlj8li54z31"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/vnlj8li54z31" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1upa72jqxlvg"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/1upa72jqxlvg" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/nd9xg2b1rs7h"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/nd9xg2b1rs7h" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/91h44pnybjv2"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/91h44pnybjv2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/4i08vfufi7ul"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/4i08vfufi7ul" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xz3sea9iyhyf"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/xz3sea9iyhyf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xs8q0b5qiisv"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/xs8q0b5qiisv" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/n72wjt8c5xgo"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/n72wjt8c5xgo" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/6uzsufyrbzpw"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/6uzsufyrbzpw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/9hltb7fqz0zj"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/9hltb7fqz0zj" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/kmwkognaeqvt"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/kmwkognaeqvt" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/6bvd4z5kxtj4"
>> >> target="_blank"><img src="http://chronos.to/t/011/03701/6bvd4z5kxtj4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ghy7pahc61ea"
>> >> target="_blank"><img src="http://chronos.to/t/022/03701/ghy7pahc61ea" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/uqptf1xm7355"
>> >> target="_blank"><img src="http://chronos.to/t/032/03701/uqptf1xm7355" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/5rcs83fm1na7"
>> >> target="_blank"><img src="http://chronos.to/t/021/03701/5rcs83fm1na7" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2mthr0trugdi"
>> >> target="_blank"><img src="http://chronos.to/t/012/03701/2mthr0trugdi" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/r3ze6i8hfge6"
>> >> target="_blank"><img src="http://chronos.to/t/031/03701/r3ze6i8hfge6" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/j7aw0caqt0sl"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/j7aw0caqt0sl" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/zzub04pxivv2"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/zzub04pxivv2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1nhf1dykk2u2"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/1nhf1dykk2u2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/llutl9t18k96"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/llutl9t18k96" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/mdhrlgcn3e10"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/mdhrlgcn3e10" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/li92kin3r6xk"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/li92kin3r6xk" border="0" alt=""
```

Easton006132

```
>> >> /></a> <a href="http://chronos.to/i9qryaln3g3w"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/i9qryaln3g3w" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/yr0bek1px9aj"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/yr0bek1px9aj" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/tpu9pllhdnil"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/tpu9pllhdnil" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lhw56f9tmdv4"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/lhw56f9tmdv4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/k22qlvaiytsf"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/k22qlvaiytsf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/q2btx6g0d6ef"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/q2btx6g0d6ef" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/k9mfi7pcawdw"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/k9mfi7pcawdw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/wmalyppcw5ty"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/wmalyppcw5ty" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/rjgxctcyvcak"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/rjgxctcyvcak" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/oq3egmhx46bv"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/oq3egmhx46bv" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/mdqdebni8xbd"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/mdqdebni8xbd" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2laewu5an00u"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/2laewu5an00u" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/c1oog022vkc4"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/c1oog022vkc4" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/siek5acwtr7r"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/siek5acwtr7r" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ao5502gpju9w"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/ao5502gpju9w" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/gu724n5907hf"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/gu724n5907hf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/w9xm5gsff84k"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/w9xm5gsff84k" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/q284golbehdn"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/q284golbehdn" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/9y942vo48v5w"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/9y942vo48v5w" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/4o2io1nabw2j"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/4o2io1nabw2j" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/95mhnpyhmw7m"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/95mhnpyhmw7m" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/n3vvsvh162ll"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/n3vvsvh162ll" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/hd72riiu76i2"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/hd72riiu76i2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/2o43papkhkcd"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/2o43papkhkcd" border="0" alt=""
```

Easton006133

```
>> >> /></a> <a href="http://chronos.to/yquvpdip7biz"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/yquvpdip7biz" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/7l9ve56bobjd"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/7l9ve56bobjd" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/64c7uu6so39j"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/64c7uu6so39j" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/yi1zr6bu49nb"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/yi1zr6bu49nb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/aqhtiuteq5f0"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/aqhtiuteq5f0" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/jq430ot43a54"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/jq430ot43a54" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/bnb81b3cj598"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/bnb81b3cj598" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/6csj5p0pvkwm"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/6csj5p0pvkwm" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/p3azv1knadte"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/p3azv1knadte" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/96sloy1hgkmo"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/96sloy1hgkmo" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/xump6e33sub7"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/xump6e33sub7" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/1fk3od7r8dzb"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/1fk3od7r8dzb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/275o978jwy6q"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/275o978jwy6q" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/g7xftlo5kh98"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/g7xftlo5kh98" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/nk7s2o7rou1z"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/nk7s2o7rou1z" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lutc0hen24aw"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/lutc0hen24aw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/z7c9ocfwbfhb"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/z7c9ocfwbfhb" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ygnyslt4x78u"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/ygnyslt4x78u" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/lz1651pnspoz"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/lz1651pnspoz" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/w6akul8ngc1f"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/w6akul8ngc1f" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/kvhp96ahg4j2"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/kvhp96ahg4j2" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/bm4vq711a8bf"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/bm4vq711a8bf" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/yrwdy037uk6a"
>> >> target="_blank"><img src="http://chronos.to/t/012/03702/yrwdy037uk6a" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/m4ckddvs49gk"
>> >> target="_blank"><img src="http://chronos.to/t/031/03702/m4ckddvs49gk" border="0" alt=""
```

Easton006134

```
>> >> /></a> <a href="http://chronos.to/93paue9mj1qw"
>> >> target="_blank"><img src="http://chronos.to/t/011/03702/93paue9mj1qw" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/t9y4vd138c5o"
>> >> target="_blank"><img src="http://chronos.to/t/022/03702/t9y4vd138c5o" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/e4odr5n1sc5g"
>> >> target="_blank"><img src="http://chronos.to/t/032/03702/e4odr5n1sc5g" border="0" alt=""
>> >> /></a> <a href="http://chronos.to/ug2z2oc0ps99"
>> >> target="_blank"><img src="http://chronos.to/t/021/03702/ug2z2oc0ps99" border="0" alt=""
>> >> /></a> <br />
>> >>
>> >>
>> >>
>> >>
>> >>
>> >>
>> >>
>> >> ///////////////////////////////////////////////////////
>> >> ////////////////////////////////////////////////
>> >>
>> >>
>> >> Pursuant to the Digital Millennium Copyright Act  and the WIPO
>> >> (World Intellectual Property Organization)
>> >> (<http://lcweb.loc.gov/copyright/legislation/dmca.pdf>), this
>> >> letter serves as actual notice of infringement in the event of
>> >> legal proceedings.
>> >>
>> >> Steve Easton is a DMCA agent, NOT an attorney. On behalf of the
>> >> owner of  exclusive right to the  material at issue in this
>> >> notice, I hereby state that I have a good faith belief that use of
>> >> the material in the manner complained of is not authorized by the
>> >> owner, its agent, or the law. I hereby state, under penalty of
>> >> perjury under the laws of the United States, that the information
>> >> in this notification is accurate, and under penalty of perjury,
>> >> that the complaining party is authorized to act on behalf of the
>> >> owner of an exclusive right that is being infringed as set out in this notification.
>> >>
>> >> ...............
>> >
>> >
>
>
```

Easton006135

# EXHIBIT K

Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CLOUDFLARE, INC., a Delaware corporation, et al., <br><br> Defendants. | Case No.: 2:16-cv-05051-GW-AFM <br><br> **PLAINTIFF'S RESPONSES TO SECOND SET OF INTERROGATORIES FROM DEFENDANT CLOUDFLARE, INC.** |

1       ALS Scan objects to and disclaims any burden to follow Cloudflare's

2   "Instructions."

3

4   **Interrogatory No. 6**

5       For each COPYRIGHTED WORK, IDENTIFY the complete chain of

6   title information for that COPYRIGHTED WORK, including: (a) the author,

7   date and means of creation; (b) the copyright registration number and date; (c)

8   the identity of each owner, assignee, exclusive licensee or non-exclusive

9   licensee of the COPYRIGHTED WORK over time; (d) when and how YOU

10  acquired any exclusive rights to the COPYRIGHTED WORK; and (e) all

11  DOCUMENTS that REFER OR RELATE to this chain of title information.

12  **Response to Interrogatory No. 6**

13      Objection: To the extent Cloudflare expects ALS to break down its

14  answer individually for each of the numerous works at issue, this request asks

15  for information not proportional to the needs of the case, considering the

16  importance of the issues at stake in the action, the amount in controversy, the

17  parties' relative access to relevant information, the parties' resources, the

18  importance of the discovery in resolving the issues, and whether the burden or

19  expense of the proposed discovery outweighs its likely benefit.  FRCP R.

20  26(b)(1).  Additionally, an answer to this interrogatory may be obtained by

21  examining, auditing, compiling, abstracting or summarizing ALS's business

22  records, and the burden of deriving or ascertaining the answer will be

23  substantially the same for either party.  FRCP R. 33(d).

24      Without waiving these objections, ALS responds:

25      There isn't a "chain of title."  ALS's copyrighted works are all

26  proprietary, none licensed or purchased from third parties.  The author is always

27  ALS.  The images are shot by ALS employees.  The copyright registration

28  certificates have been produced to Cloudflare in the "Copyright Registrations"

folder as alscan-copyright-registrations.zip.  Each registration contains the registration number and date.  There are no licensees, except that members of ALS's affiliate program receive a limited license to display a limited number of ALS works for the purpose of directing traffic to ALS's proprietary sites.  The documents supporting this answer have been produced by ALS.

**Interrogatory No. 7**

For each COPYRIGHTED WORK, IDENTIFY its first PUBLICATION, including: (a) the publisher; (b) the date and means of PUBLICATION (i.e., the magazine, periodical, website, or other channel of distribution used); and (c) all DOCUMENTS that REFER OR RELATE to the PUBLICATION.

**Response to Interrogatory No. 7**

Objection: To the extent Cloudflare expects ALS to break down its answer individually for each of the numerous works at issue, this request asks for information not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FRCP R. 26(b)(1).  Additionally, an answer to this interrogatory may be obtained by examining, auditing, compiling, abstracting or summarizing ALS's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party.  FRCP R. 33(d).  Finally, the terms "publisher" and "publication" are vague and ambiguous in this context.

Without waiving these objections, ALS responds:

While ALS's issued copyright registrations indicate a publication date for ALS's works, it is not clear that ALS's works are "published" within the meaning of the copyright law, in that ALS does not distribute its works for sale,