QUINN EMANUEL URQUHART & SULLIVAN, LLP
Rachel Herrick Kassabian (Bar No. 191060)
rachelkassabian@quinnemanuel.com
Carolyn M. Homer (Bar No. 286441)
carolynhomer@quinnemanuel.com
Mark T. Gray (Bar No. 305251)
markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **CLOUDFLARE, INC.**, et al., <br><br> Defendants. | Case No. 2:16-cv-05051-GW-AFM <br><br> **[DISCOVERY MATTER]** <br><br> **SUPPLEMENTAL MEMORANDUM RE: DEFENDANT CLOUDFLARE, INC.'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF ALS SCAN** <br><br> Hearing Date: September 12, 2017 <br> Hearing Time: 10:00 AM <br> Place: Courtroom 840, 8th Fl. <br> 255 East Temple Street <br> Los Angeles, California 90012 <br> Judge: Hon. Alexander MacKinnon |

Once again, it has taken discovery motion practice to motivate Plaintiff ALS Scan, Inc. ("ALS") to respond to Cloudflare's discovery requests. During the week following Cloudflare's service of the Joint Stipulation, ALS finally produced some of the items requested in Cloudflare's second Motion to Compel. But for other documents, including many which ALS has insisted do not exist, today's Deposition of Sarah Walsh confirmed the opposite – ALS has failed to produce key documents responsive to Cloudflare's requests.[1]

***ALS's Now-Admitted Failure to Search and Produce Internal ALS Emails.*** Cloudflare seeks all communications related to Cloudflare, the Complaint, the allegedly direct infringing Websites, and the Copyright Office. *See* RFPs 12-13, 25-28, 42-43, 44-45. In its submission, ALS finally admits that Steve Easton "was the source of the responsive communications" for its prior productions. Dkt. 245-1 at 7. In other words, *ALS searched a third party agent's email account in responding to Cloudflare's document requests*, and failed to do a comprehensive search of its own internal emails. It is shocking that, more than one year into this litigation, ALS has carefully avoided doing a methodical search of its own emails, and would not have done so at all were it not for Cloudflare's persistence and motion practice. This is inexcusable, and frankly, sanctionable. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.*, No. 11-CV-07098, 2015 WL 12699460, at *27 (C.D. Cal. Feb. 4, 2015) (sanctioning copyright plaintiffs for, *inter alia*, failing to search and produce from their email accounts). Following Cloudflare's delivery of the Joint Stipulation, ALS produced 141 new emails involving ALS employee communications, of which most did not also copy DMCA Agent Steve Easton. These emails are highly relevant to the case, such as an email between Sarah Walsh and ALS employee Janae Gates regarding ALS's current revenues (Ms. Walsh

---

[1] The Walsh deposition is ongoing. Once the transcript has been finalized, and in advance of the September 12 hearing, Cloudflare will submit the excerpts of the Walsh transcript relating to the existence of responsive unproduced documents.

testified today that Gates sends her such revenue reports via email *every single day*), an email between ALS and Hydentra regarding amending its online Terms of Service, and a critical communication with the Copyright Office in which ALS describes and expresses confusion about ALS's copyright registration processes.

The diminutive size of the production, however, lays plain the fact that even as of now, ALS has not undertaken a fulsome search of these employee email accounts. Indeed, it appears that ALS has now admitted that it only searched its internal email accounts for the terms "Cloudflare," and possibly also "Copyright Office" and "MPAA." *See* Dkt. 245-1 at 9. ALS's production makes more sense now, as all but one of the new emails (the one email with the Copyright Office) hits on the word "Cloudflare." This is patently insufficient, as it omits other terms used repeatedly in the Complaint, such as the domain names of all 17 allegedly infringing websites (which likely were discussed internally without a cc to Easton), the words "cache," "CDN," "reverse proxy," "pirate," "piracy," and the "Digital Citizens Alliance." As another example, ALS has only produced two email threads involving Janae Gates at all, both of which are relevant here – despite the fact that she is now ALS's principal photographer and also tracks revenues. ALS's claim that searching its own email accounts would be repetitive of its Easton email search is meritless, as it can automatically de-duplicate identical emails using its document production platform. Moreover, Easton has testified that he deleted emails, so ALS's search of its own email accounts will likely yield responsive emails with Easton that Easton himself did not produce. *See* Dkt. 245-1 at 8.

This Court should therefore order ALS to search for and produce all responsive emails from the email inboxes of its employees Eric Penn, Sarah Walsh, Alex Kirn, and Janae Gates, and to provide a sworn verification from ALS detailing its efforts to locate them, including specific accounts searched and search terms applied. *See, e.g.*, *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12-CV-03035, 2015 WL 502697,

at *8 (E.D. Cal. Feb. 5, 2015) ("Where a party does not have responsive documents, it must come forward with an explanation of the search conducted.").

***Easton Emails.*** Easton's production relates to the same RFPs described above. *See* RFPs 12-13, 25-28, 42-43, 44-45; Dkt. 245-1 at 10. ALS's response confirms the deficiencies Cloudflare identified in its motion. Cloudflare RFPs 12-13 asked for *all* communications related to Cloudflare – and ALS agreed to produce them. ALS's explanation that emails between Cloudflare and Easton regarding websites not identified in the Complaint "are neither relevant nor responsive," is incorrect. These emails relate, at a minimum, to ALS's allegations that Cloudflare supports piracy and to ALS's knowledge of Cloudflare's DMCA policies. ALS may not selectively produce what it has already agreed to produce in full.

Further, ALS did not even address Cloudflare's other two concerns, regarding (1) Easton communications with two websites at issue in this case, img.yt and vipergirls.to, and (2) Easton's communications with "file locker" websites.

***Hydentra Emails (RFP 64-65).*** ALS has produced only four Hydentra emails, and has refused to conduct any further searches for or productions of its emails with Hydentra. *See* Dkt. 245-1 at 14-15. The small number of email threads concern ALS working with MetArt to identify the operator behind ViperGirls, and to update its Terms of Service. As ALS acknowledges, however, Hydentra "has been in charge of marketing and operations for alsscan.com since 2013." Hydentra operates alsscan.com, which is the very business ALS claims Cloudflare has harmed, and distributes revenues to ALS on a bi-monthly basis. Emails with Hydentra are responsive to many key issues in the case, including alleged lost revenues (and reasons therefor), ALS's licensing and monetization of its works, the value of ALS's copyrighted works, ALS's publication of its works, and other key issues. Just today, ALS witness Sarah Walsh testified that she receives reports from Hydentra every month or two containing detailed financials and subscriber metrics, and also exchanges emails with Hydentra's co-owner regarding

payments, revenues and promotions. She keeps a "Hydentra" folder in one of her email accounts. None of these items have been produced.

ALS's vague burden claim is unsupported, as ALS does not quantify how many emails it has with Hydentra, nor what the specific burden would be in simply producing them. *See, e.g., Virco Mfg. Corp. v. Hertz Furniture Sys.,* No. 13-cv-2205, 2014 WL 12591482, at *6 (C.D. Cal. Jan. 21, 2014) ("plaintiff has offered no evidence that it would suffer any undue burden from producing such electronic data…."); *accord Unisource Worldwide, Inc. v. Swope,* No. 13-cv-02822, 2013 WL 12116382, at *2 (C.D. Cal. May 14, 2013) (finding that third parties made "only a generalized burden argument, failing even to submit a declaration detailing why producing the documents would be unduly burdensome and expensive"). ALS should be ordered to produce its communications with Hydentra which bear on its revenues (and alleged lost revenues), marketing, business operations, or copyrighted works.

***Hydentra Financials (RFP 66).*** ALS has produced a two-page export of what appears to be payments made by Hydentra to ALS. But ALS has not produced the recurring Hydentra statements and invoices RFP 66 asks for. Sarah Walsh testified today that these exist and are generated bi-monthly, contrary to ALS's prior representations. ALS should be ordered to produce these Hydentra financial reports.

***Documents Related to ALS Purchase and Sale Agreement (RFP 77).*** During the middle of Sarah Walsh's deposition today, ALS finally produced this highly relevant Agreement, which Ms. Walsh testified she turned over to her counsel well over a month ago. The Agreement attaches a valuation sheet listing the assets being sold – <u>which directly contradicts ALS's representations</u> in its written document responses that "There were no valuations." *See* Dkt. 245-1 at 28. ALS should be ordered to produce all communications regarding and drafts of that valuation sheet.

***ALSScan.com Analytics, Server Logs, and Marketing Materials (RFPs 79-81, 91).*** On August 19, 2017, five days *after* Cloudflare served this Joint Stipulation on ALS, ALS finally produced some analytic, server log, and marketing materials,

satisfying these requests at least in part. Given the late production of these materials, Cloudflare is still going through them and will determine whether the newly produced materials are complete or not.

*Identifying Specific Images* **(Interrogatory No. 20).** ALS's argument sidesteps this issue entirely. To the extent ALS's response to Interrogatory No. 20 claims that image-level information was provided in response to Interrogatory No. 9 (when it wasn't), it should be amended or stricken.

*Cloudflare's DMCA Safe Harbor.* **(RFP 58 and Interrogatory No. 22).** Once again, ALS has promised to answer this interrogatory and provide these documents at some point in the future, but has not done so and should be ordered to do so.

*ALS's Identification of Infringement Against Third Parties*. **(Interrogatory No. 13).** ALS knows which websites have infringed its images. As a compromise Cloudflare will accept a simple list of which other entities or websites have infringed its copyrights.

*Privilege Log.* Six days after Cloudflare served its portions of the Joint Stipulation, ALS produced an amended privilege log with hundreds more entries. The original log was just a single page; the amended log is 29 pages long. However these still appear to be taken only from Mr. Spillane's email account. Any responsive documents which have been or will be withheld on the basis of privilege from the ALS custodians must be logged.

Dated: August 29, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By _____
Rachel Kassabian
*Attorney for Defendant Cloudflare, Inc.*