QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
  Carolyn M. Homer (Bar No. 286441)
  carolynhomer@quinnemanuel.com
  Mark T. Gray (Bar No. 305251)
  markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.,**<br><br>                 Plaintiff,<br><br>        vs.<br><br>**CLOUDFLARE, INC.,** et al.,<br><br>                 Defendants. | Case No. 2:16-cv-05051-GW-AFM<br><br>**[DISCOVERY MATTER]**<br><br>**JOINT STIPULATION RE: DEFENDANT CLOUDFLARE, INC.'S MOTION FOR PROTECTIVE ORDER REGARDING ALS SCAN, INC.'S DEPOSITION NOTICE DIRECTED TO MATTHEW PRINCE**<br><br>Hearing Date:      October 10, 2017<br>Hearing Time:      10:00 AM<br>Place:  Courtroom 840, 8th Fl.<br>          255 East Temple Street<br>          Los Angeles, California 90012<br>Judge:   Hon. Alexander MacKinnon |

---

JOINT STIPULATION RE: CLOUDFLARE'S MOTION FOR PROTECTIVE ORDER

6205179v1/28381-0001

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENTS ................................................................. 1

    A.    Cloudflare's Preliminary Statement ....................................... 1

    B.    ALS Scan's Preliminary Statement ........................................ 1

II.   THE DISCOVERY REQUEST AT ISSUE ................................................. 3

III.  CLOUDFLARE'S POSITION .................................................................... 3

    A.    Factual Background ................................................................. 3

        1.    Neither Party Identifies Cloudflare CEO Mr. Prince as a Relevant Witness. ....................................... 3

        2.    Mr. Prince Authors a Wall Street Journal Article Regarding Cloudflare's Decision to Terminate its Relationship with a Highly Controversial Neo-Nazi Website. ....................................... 4

        3.    Mr. Prince's Lack of Unique Personal Knowledge Regarding the Issues Relevant to this case. .................... 5

        4.    ALS Scan Serves a Deposition Notice Upon Mr. Prince, and a Rule 30(b)(6) Notice Seeking Corporate Testimony on the Same Topics About Which it Seeks to Depose Mr. Prince. ....................................... 5

        5.    The Parties Meet and Confer Regarding Cloudflare's Objection to the Prince Deposition Notice. .................... 7

    B.    Legal Standard ........................................................................ 7

    C.    Argument ................................................................................. 9

        1.    Mr. Prince has no Unique Personal Knowledge Relevant to ALS Scan's Copyright Claims ..................... 9

        2.    ALS Scan May Obtain Relevant Discovery Through Less Burdensome Means – Including the 30(b)(6) Deposition Notice it Already Issued. ................................ 10

IV.   ALS SCAN'S POSITION ......................................................................... 11

V.    CONCLUSIONS ...................................................................................... 19

    A.    Cloudflare's Conclusion ....................................................... 19

    B.    ALS Scan's Conclusion ........................................................ 19

Pursuant to Local Rule 37-2, Defendant Cloudflare, Inc. ("Cloudflare") and Plaintiff ALS Scan, Inc. ("ALS Scan") respectfully submit this Joint Stipulation Regarding Cloudflare's Motion for Protective Order concerning the noticed deposition of Cloudflare's Chief Executive Officer, Matthew Prince.

## I.   PRELIMINARY STATEMENTS

### A.   Cloudflare's Preliminary Statement

Cloudflare seeks a protective order precluding ALS Scan's request to depose Cloudflare's Chief Executive Officer Mr. Matthew Prince, because Mr. Prince has no unique personal knowledge relevant to ALS Scan's claims, and the discovery ALS seeks from Mr. Prince is either irrelevant or is available through less burdensome means.

After almost a year of discovery efforts, neither party has identified Mr. Prince as an individual with knowledge relevant to this litigation, nor has he submitted any declarations or been identified in discovery responses or documents as a relevant witness in this matter.  Instead, on the eve of the close of the discovery period, and just days before the parties' scheduled mediation in this case, ALS Scan suddenly asserted that Mr. Prince must be deposed because he "has made himself a key witness" by publishing an article in the Wall Street Journal regarding net neutrality and free speech issues.  But these issues have no bearing on the factual or legal circumstances of this copyright case.  And even if Mr. Prince did possess some knowledge relevant to this case, there are dozens of lower-ranking employees who could provide the necessary discovery.  ALS Scan's demand to depose Mr. Prince falls far short of the stringent requirements for deposing high-ranking executives set by governing case law. Cloudflare's motion for a protective order should be granted.

### B.   ALS Scan's Preliminary Statement

This is not a case in which over-zealous plaintiffs notice the deposition of a corporate CEO, whose knowledge is distant and cumulative, for the purpose of ratcheting nuisance and settlement value.  To the contrary, Mr. Prince interjected

-1-

himself into the public dialogue by bragging in numerous public statements, including a Wall Street Journal opinion piece, that Cloudflare kicked a neo-Nazi site, Daily Stormer, "off the internet."  Mr. Prince also said: "Our terms of use give us broad discretion to choose whom we allow to use our network."

Mr. Prince's statements stand in stark contrast to Cloudlfare's testimony in this case that Cloudflare cannot remove content from the internet.  They also contrast with Cloudflare's disclosures in this case that it has only terminated services to repeat copyright infringers when presented with a court adjudication of infringement.

The questions that follow from Mr. Prince's statement and Cloudflare's disclosures are i) who created this narrow policy of termination only upon receipt of court adjudication of infringement, ii) could this policy be changed, iii) who could change it and iv) why hasn't Cloudflare terminated any of the websites at issue in this case despite receipt by Cloudflare of tens, hundreds and in one case over one thousand emails from ALS's agent Steve Easton directly copyright infringement on Cloudflare's customers' sites.  The answers: all of these policies can be changed or determined in the sole discretion of Matthew Prince.

ALS attempted to inquire into these topics through the less-intrusive means of a deposition of Cloudflare under FRCP R. 30(b)(6) but Cloudflare's testimony, by designee Trey Guinn, was useless.  Mr. Guinn admitted that he failed to prepare for the deposition by speaking to Mr. Prince, and had merely surmised Mr. Prince's reasoning from having worked at Cloudflare for years and from Mr. Prince's public statements. When asked the basis for Mr. Prince's determination that neo-Nazi hate speech was a violation of terms warranting termination of service, Mr. Guinn offered non-responsive pablum, about the intended effect of the decision – to be "provocative" and "start a conversation."  When pressed for a responsive answer, Mr. Guinn admitted that the decision to terminate Daily Stormer was at the "discretion" and "say" of Prince.  When asked why, if Cloudflare could terminate neo-Nazis it could not do more to terminate repeat copyright infringers, Mr. Guinn again gave a non-responsive answer and

admitted that the decision to terminate customers for repeat copyright infringement was up to Mr. Prince.

Cloudflare has admitted that the grounds for termination of services to a customer for repeat infringement is up to Mr. Prince. His testimony is highly relevant and not remote or merely cumulative. Only he knows the answers. ALS is entitled to his testimony.

## II.    THE DISCOVERY REQUEST AT ISSUE

On August 23, 2017, ALS Scan served a deposition notice on Cloudflare seeking to take the deposition of Matthew Prince, Cloudflare's Chief Executive Officer, on September 14, 2017 at the offices of Quinn Emanuel Urquhart & Sullivan, LLP in San Francisco, California (the "Prince Deposition Notice"). *See* Declaration of Rachel Kassabian ("Kassabian Decl.") filed concurrently herewith, Ex. A (Prince Deposition Notice).

## III.   CLOUDFLARE'S POSITION

### A.    Factual Background

Cloudflare is an internet infrastructure service provider that offers web optimization and cybersecurity services. In this case, ALS Scan alleges claims against Cloudflare for contributory copyright infringement, contending that various Cloudflare customers operate websites that display unauthorized copies of ALS Scan's photosets. Cloudflare has vigorously denied ALS Scan's claims.

### 1.    Neither Party Identifies Cloudflare CEO Mr. Prince as a Relevant Witness.

The parties began discovery efforts in late 2016, and those efforts have continued throughout this litigation to the present time. To date, none of ALS Scan's written discovery requests have asked for information related to Mr. Prince. Kassabian Decl. ¶ 6. None of Cloudflare's responses referenced Mr. Prince or indicated he might have personal knowledge of relevant facts. *Id.* Prior to the Prince Deposition Notice, neither

party had identified Mr. Prince as a potential witness nor indicated he might possess discoverable information.  *Id.* ¶¶ 5-6.

### 2. Mr. Prince Authors a Wall Street Journal Article Regarding Cloudflare's Decision to Terminate its Relationship with a Highly Controversial Neo-Nazi Website.

On August 22, 2017, the WALL STREET JOURNAL published an article authored by Mr. Prince titled "Was I Right to Pull the Plug on a Nazi Website?" (the "WSJ Article"), available at https://www.wsj.com/articles/was-i-right-to-pull-the-plug-on-a-nazi-website-1503440771.  In the WSJ Article, Mr. Prince stated that he "helped kick a group of neo-Nazis off the internet last week, but since then I've wondered whether I made the right decision."  Prince Decl. ¶ 4.  Mr. Prince explained in the WSJ Article that the neo-Nazi site, Daily Stormer, "was constantly targeted by anti-Nazi hackers trying to knock it offline."  *Id.*  However, as a Cloudflare client, "Cloudflare had helped foil those cyberattacks until last week when Cloudflare terminated its account."  *Id.*

Mr. Prince explained that Cloudflare had been receiving a large number of abuse reports regarding the site, and that the neo-Nazi website, however, was using the forwarded complaints to identify the complainants, and then harassing them, stalking them, and threatening them in various ways.  *Id.* ¶ 6.  Cloudflare determined it could not permit its Abuse reporting system to be abused in the form of retaliatory harassment.  *Id.*  Additionally, the Daily Stormer began claiming that Cloudflare secretly supported their ideology, causing a major distraction to the Company.  *Id.* ¶ 7.  The WSJ Article was intended as an intellectual exercise to start a conversation regarding censorship and free speech on the internet.  *Id.* ¶ 8.  The WSJ Article had nothing to do with copyright infringement issues or Cloudflare's DMCA policy and procedure.  *Id.*  When Mr. Prince stated in the WSJ Article that "[he] helped kick a group of neo-Nazis off the internet last week," his comments were intended to illustrate a point – not to be taken literally.  *Id.* ¶ 9.  Everyone in the internet technology field (which was Mr. Prince's intended audience) knows that Cloudflare cannot, as a technical matter, kick *anyone* off the internet, even temporarily, because Cloudflare is

-4-

not a hosting provider.  *Id.*  Cloudflare has no ability to delete content hosted on websites run by its customers, nor does Cloudflare have the ability to delete the websites themselves.  *Id.*  If Cloudflare terminates a customer, such as was referenced in the full context of the WSJ Article, the customer's websites do not disappear from the internet – that is not possible from a technical perspective – they merely become more vulnerable to distributed denial of service (DDOS) attacks.  *Id.* ¶ 10.

During the parties' meet and confer regarding Cloudflare's planned protective order motion, ALS Scan admitted that the only reason it is seeking Mr. Prince's deposition is because of the WSJ Article.  Kassabian Decl. ¶ 4.

### 3. Mr. Prince's Lack of Unique Personal Knowledge Regarding the Issues Relevant to this case.

Mr. Prince lacks unique personal knowledge regarding Cloudflare's DMCA policy and procedure and its published Terms of Service.  The various members of Cloudflare's Trust and Safety Team, among other employees, have the requisite knowledge and expertise to testify regarding these issues.  Prince Decl. ¶ 5, 8.  Mr. Prince also lacks unique personal knowledge regarding Cloudflare's technology and services, including the specifics of what happens when a Cloudflare customer account is terminated.  There are many Cloudflare engineers who could speak to the issue of what happens as a technical matter when Cloudflare terminates a customer account.  *Id.* ¶ 9.

### 4. ALS Scan Serves a Deposition Notice Upon Mr. Prince, and a Rule 30(b)(6) Notice Seeking Corporate Testimony on the Same Topics About Which it Seeks to Depose Mr. Prince.

On August 23, 2017, ALS Scan served Cloudflare with a deposition notice directed to Mr. Prince.  Kassabian Decl. Ex. A (Prince Deposition Notice).  When Cloudflare asked what possible relevance Mr. Prince had to this case, ALS responded that Mr. Prince was relevant in light of his authorship of the WSJ Article.  Kassabian Decl. ¶ 4.

-5-

Simultaneously with service of the Prince deposition notice, ALS Scan also served a revised 30(b)(6) deposition notice to Cloudflare, in which it added four new topics to the previous iteration of its 30(b)(6) deposition notice to Cloudflare:

> Topic 13:  How did Cloudflare "kick a group of neo-Nazis off the internet?"  Matthew Prince, Wall Street Journal, August 23, 2017.

> Topic 14:  Can Cloudflare kick copyright infringers off the internet?  If not, how is it that Cloudflare can kick neo-Nazis off the Internet but not copyright infringers?

> Topic 15:  Why hasn't Cloudflare kicked copyright infringers off the Internet, except upon receipt of a court order?

> Topic 16:  If Cloudflare's "terms of use give [it] broad discretion to choose whom we allow to use our network," why hasn't Cloudflare used that discretion to choose not to allow the Websites to use Cloudflare's network?

*Id.* Ex. B (ALS Scan's 30(b)(6) notice).  On September 5, 2017, Cloudflare designated Cloudflare Solution Engineer Trey Guinn as its corporate witness on these topics.  *Id.* ¶ 2.  Mr. Guinn already was deposed in this case, and during that deposition he gave testimony regarding similar issues:

> Q:  Could Cloudflare's customer websites still be accessed if they stopped using Cloudflare?

> A: They could be.  They would be slower, but they could still be accessed.  The -- the exact same content would be there with or without Cloudflare.

> Q: So if tomorrow a customer cancels its Cloudflare account, the following day when a website -- when a website user visited that -- visits that website, is the website still going to be visible?

> A:  The website will still be visible, and the website will be exactly the same.  It will likely just be a bit slower.

Kassabian Decl. Ex. C (Guinn Deposition), at 94:1-13 (objection omitted).

### 5.     The Parties Meet and Confer Regarding Cloudflare's Objection to the Prince Deposition Notice.

During the parties' Rule 37-1 conference of counsel, ALS Scan stated that Mr. Prince would not have been relevant to this case had he not written the WSJ Article. Kassabian Decl. ¶ 4.  ALS Scan explained its position that Mr. Prince had unique, personal knowledge regarding the WSJ Article itself (*i.e.*, what he meant and why he wrote it), as well as how Cloudflare interprets its terms of service to determine which accounts to terminate.  *Id.*  ALS Scan also stated that Mr. Prince was in a unique position as "the boss" such that he could direct his subordinates how to interpret Cloudflare's terms of service, including its repeat infringer policies, and to terminate an account.  *Id.*  In response, Cloudflare explained that the WSJ Article had nothing to do with copyright infringement, Cloudflare's DMCA policies and procedures, or any facts relevant to this case.  *Id.*  Rather, each of the subject areas ALS Scan identified were either irrelevant or could be handled by more appropriate, lower-level employees.  *Id.*

### B.     Legal Standard

Pursuant to Fed. R. Civ. P. 26(c), the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [by] forbidding the disclosure or discovery."

Courts have long recognized that depositions of high-ranking executives present the potential for abuse, harassment, and undue burden, and thus, an apex witness deposition will only be permitted if "the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and [] the party seeking the deposition has exhausted other less intrusive discovery methods." *Reinsdorf v. Skechers U.S.A., Inc.*, No. 10-cv-07181, 2012 WL 12883889, *2 (C.D. Cal. May 9, 2012) (denying motion to compel deposition of apex witness after failure to demonstrate unique personal knowledge or the exhaustion of less burdensome means of discovery) (citation omitted); *see also Perfect 10, Inc. v. Google Inc.*, No. 04-cv-9484-AHM (C.D. Cal. July 20, 2010) (Dkt. 930) (granting motion for a protective order where apex witness lacked

unique, personal knowledge relevant to the merits of the lawsuit and plaintiff failed to demonstrate the inability to obtain the information through other means); *Anderson v. County of Contra Costa,* No. 15-cv-01673, 2017 WL 930315, *3 (N.D. Cal. Mar. 9, 2017) (denying motion to compel an apex witness deposition).

Thus, an apex deposition will not be permitted where the apex witness does not have unique, non-repetitive, first hand knowledge of the specific issues or incidents at issue in the lawsuit. *See K.C.R. v. County of Los Angeles*, No. CV 13–3806, 2014 WL 3434257 (C.D. Cal. July 11, 2014) (denying motion to compel apex deposition where "[i]t is undisputed that [the apex witness] does not have first-hand knowledge of the specific shooting at issue in this case"); *Perfect 10*, No. 04-cv-9484(Dkt. 930). Moreover, limitations on apex witness depositions are appropriate "where the information sought can be obtained through less intrusive discovery methods, such as by interrogatory or depositions of lower-level employees with more direct knowledge of the facts at issue." *Somers v. Dig. Realty Tr. Inc.*, 2016 WL 7157505, at *1 (N.D. Cal. Dec. 8, 2016) (quoting *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)); *see also Robertson v. McNeil-PPC Inc.*, No. 11-cv-09050, 2014 WL 12576817 (C.D. Cal. Jan. 13, 2014) (reversing denial of protective order where plaintiff "has not exhausted other means of obtaining the information that she seeks" from the apex witness); *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-cv-5340, 2006 WL 2578277 at *3 n. 3 (N.D. Cal. Sept. 6, 2006) ("[C]ourts generally refuse to allow the immediate deposition of a high level executive [. . .] before the testimony of lower level employees with more intimate knowledge of the case has been secured."); *Mehmet v. PayPal, Inc.*, 2009 WL 921637 at *2 (N.D. Cal. Apr. 3, 2009) ("[Courts] generally refuse to allow the immediate deposition of a high-level executive, the so-called 'apex deponents,' *before* the depositions of lower level employees with more intimate knowledge of the case.") (emphasis in original).

The fact that an apex witness may have made public statements regarding general subject areas does not override these important safeguards. *See Affinity Labs*, 2011 WL

1753982, *10 (Steve Jobs' public statements about the importance of the technology at issue were not evidence of first-hand knowledge of relevant information).

**C.    Argument**

Mr. Prince is Cloudflare's highest-ranking executive, responsible for all of its employees and operations worldwide. He is also the public face of the company, with a demanding press and business schedule on top of his massive responsibilities overseeing all aspects of Cloudflare's business operations. The law precludes depositions of senior executives like Mr. Prince where, as here, the executive in question lacks any unique personal knowledge relevant to the case. Moreover, even when senior executives do have some degree of personal knowledge, courts still preclude such depositions when the information sought can be obtained by less intrusive means. Both factors are satisfied here.

**1.    Mr. Prince has no Unique Personal Knowledge Relevant to ALS Scan's Copyright Claims**

Mr. Prince has no unique personal knowledge regarding ALS's copyright claims.

Neither party has identified Mr. Prince as a potential witness nor indicated he might possess discoverable information. Kassabian Decl. ¶¶ 5-6. None of ALS Scan's requests have asked for information related to Mr. Prince. *Id.* None of Cloudflare's responses referenced Mr. Prince or indicated he might have personal knowledge of relevant facts. *Id.*

During the parties' Local Rule 37-1 conference of counsel, ALS Scan claimed that Mr. Prince has unique, relevant knowledge in three subject areas: the WSJ Article itself, how Cloudflare interprets its terms of service to determine which accounts to terminate, and his unique position as "the boss" such that, for example, he could direct his subordinates how to interpret Cloudflare's terms of service. Kassabian Decl. ¶ 4. ALS is wrong on all three counts.

First, ALS Scan argues that Mr. Prince injected himself into the public forum with public statements about Cloudflare's ability to kick undesirable clients off the

-9-

1  Internet and how Cloudflare applies terms to terminate services to clients.  Kassabian
2  Decl. ¶ 4.  Thus, ALS Scan argues, Mr. Prince's unique, first-hand knowledge is related
3  to the WSJ Article itself, including what Mr. Prince meant by what he wrote.  But Mr.
4  Prince's statements in the WSJ Article regarding issues of free speech on the internet
5  are not related to "the facts at issue" in this copyright case.  *Reinsdorf*, 2012 WL
6  12883889, *2.

7      Second, ALS Scan argues that Mr. Prince possesses knowledge related to
8  Cloudflare's Terms of Service.  Kassabian Decl. ¶ 4.  But any such knowledge Mr.
9  Prince has is not unique, nor is it tied to "the facts at issue."  *Reinsdorf*, 2012 WL
10  12883889, *2.  Cloudflare's Trust and Safety Department handles issues pertaining to
11  terminations for violations of Cloudflare's published policies.  Prince Decl. ¶ 5.  Prince
12  Decl. ¶ 5, 8.  Many lower-level Cloudflare engineers could speak to the issue of what
13  happens as a technical matter when Cloudflare terminates a customer account.  *Id.* ¶ 9.

14      Third, ALS Scan argues that Mr. Prince possesses unique knowledge *because* he
15  is an apex witness.  As the CEO, ALS Scan claims Mr. Prince dictates Cloudflare
16  policy and gives directions to lower-level personnel on how to interpret that policy,
17  including whether to terminate accounts.  Kassabian Decl. ¶ 4.  For the same reason as
18  ALS Scan's other two arguments, this argument fails on its face.  Broadly speaking, if
19  being a CEO with authority over employees was sufficient in and of itself to be
20  considered relevant to issues concerning the daily job functions of those employees,
21  then the apex doctrine would not exist.  *See Reinsdorf*, 2012 WL 12883889, *2.

22          **2.    ALS Scan May Obtain Relevant Discovery Through Less
                    Burdensome Means – Including the 30(b)(6) Deposition Notice
23                  it Already Issued.**

24      Even if Mr. Prince had unique personal knowledge relevant to the facts of this
25  case (which ALS Scan has not and cannot demonstrate), ALS Scan is required to first
26  show that such information cannot be obtained through less burdensome means.
27  *Somers*, 2016 WL 7157505, at *1.  Here, there are many lower-level Cloudflare
28

1  employees who could speak to the policy and technical issues about which ALS Scan
2  seeks to depose Mr. Prince.  Prince Decl. ¶ 5, 8-9.

3        Indeed, not only do alternative witnesses exist, but two are being provided.  ALS
4  Scan has already propounded a notice of corporate deposition on the topics about which
5  Mr. Prince could be expected to testify.  Kassabian Decl. Ex. B (ALS Scan's 30(b)(6)
6  notice).  Indeed, Cloudflare has already designated non-apex corporate witnesses to
7  testify on these subjects.  Kassabian Decl. ¶ 2.  That deposition is set to occur on
8  September 15, 2017.  Kassabian Decl. ¶ 2.  ALS Scan must first take this less
9  burdensome discovery and then demonstrate, if it can, that the result was somehow
10 insufficient in a manner only testimony from Cloudflare's CEO could cure *before* it can
11 seek to depose Mr. Prince on these issues.  *Anderson*, 2017 WL 930315, *3 ("Plaintiff
12 shall *first* depose a Rule 30(b)(6) witness regarding the Jail's policies and practices, and
13 any other relevant topics, *then* meet and confer with Defendants about the necessity and
14 scope of [an apex witness] deposition.") (emphasis added); *Robertson*, 2014 WL
15 12576817 at *20; *Mehmet*, 2009 WL 921637 at *2; *Google, Inc.*, 2006 WL 2578277 at
16 *3 n. 3.  ALS Scan's deposition notice to Mr. Prince should be quashed for this reason,
17 too.

18 **IV.  ALS SCAN'S POSITION**

19        **A.    Factual Background**

20       Cloudflare's CEO, Matthew Prince interjected himself into the public debate
21 about speech on the Internet in the wake of recent controversies concerning white
22 supremacists.  He wrote about Cloudflare's decision to terminate services to one of its
23 clients, Daily Stormer, a neo-Nazi site. *See* Matthew Prince, *Why We Terminated Daily*
24 *Stormer* (Aug. 16, 2017),  https://blog.cloudflare.com/why-we-terminated-daily-
25 stormer/.  Mr. Prince published an opinion piece in the Wall Street Journal on August
26 23, 2017.  There, he said: "I helped kick a group of neo-Nazis off the internet last
27 week."  Also: "Our terms of use give us broad discretion to choose whom we allow to
28 use our network."  Spillane Decl. ¶ 9 Ex. H.

Mr. Prince's statement to the public that Cloudflare kicked neo-Nazis off the internet stand in sharp contrast to Cloudflare's testimony in this case, where it claims it is powerless to remove content from the Internet. Said Trey Guinn, Cloudflare Solutions Engineer: "[A] caching server is like a mirror reflecting an object's image. Removing the object eliminates the mirrored copy, but removing the mirror has no impact on the object itself.  Thus, removing a host server's content also removes the cache copy, whereas removing the cache copy has no impact on the permanent copy of the content sitting on the host server."  Doc. 124-2 ¶ 6.

ALS sent a notice of deposition of Matthew Prince, but Cloudflare refused to produce him.

ALS also sent a notice of the deposition of Cloudflare via FRCP R. 30(b)(6). Spillane Decl. ¶ 5 Ex. B.  ALS sought to obtain testimony from Cloudflare's corporate designee(s) concerning Cloudflare's Terms of Service and also concerning Mr. Prince's statements and their ramifications concerning termination of service to repeat copyright infringers.

Cloudflare designated Justin Paine concerning Cloudflare's Terms.  Mr. Paine admitted that neither Cloudflare's Terms of Service page nor its Abuse page disclosed to customers or to the public that conduct that violated Cloudflare's Terms and could result in termination of services.  Nor do Cloudflare's Terms define the term "repeat infringer" or disclose the circumstances under which Cloudflare could determine that conduct constitutes repeat infringement.  Spillane Decl. ¶¶ 5-7, Exs. B-F.

Topics 13-16 were:

13.    How did Cloudflare "kick a group of neo-Nazis off the internet?"  Matthew Prince, Wall Street Journal, August 23, 2017.

14.    Can Cloudflare kick copyright infringers off the internet?  If not, how is it that Cloudflare can kick neo-Nazis off the Internet but not copyright infringers?

15.   Why hasn't Cloudflare kicked copyright infringers off the Internet, except upon receipt of a court order?

16.   If Cloudflare's "terms of use give [it] broad discretion to choose whom we allow to use our network," why hasn't Cloudflare used that discretion to choose not to allow the Websites to use Cloudflare's network?

Cloudflare designated Trey Guinn to testify concerning these topics. Cloudflare confirmed this in a letter and Mr. Guinn testified that he was prepared to address Topics 13-16. Spillane Decl. ¶¶ 5, 8, Exs. B, C, G.

Mr. Guinn testified that Mr. Prince's statement that Cloudflare kicked Daily Stormer off the internet was not true, and admitted that Mr. Prince knew the statement to be untrue. When asked whether Mr. Prince intended to mislead the public, Mr. Guinn offered non-responsive pablum. Spillane Decl. ¶¶ 9, 10, Ex. G.

When asked the basis for Mr. Prince's determination that neo-Nazi speech was a violation of Terms warranting termination of services, Mr. Guinn gave non-responsive pablum concerning the intended effect of the termination, that Cloudflare was attempting to be "provocative" and "start a conversation." Spillane Decl. ¶ 11. Mr. Guinn admitted that he had not prepared for the deposition by speaking to Mr. Prince, but surmised his reasoning based upon knowing him and also statements that Mr. Prince had made public. *Id.* Mr. Guinn sowed confusion by stating that engaging in neo-Nazi hate speech is not a violation of Cloudflare's Terms. *Id.* When pressed on the canned answer that Mr. Prince was attempting to "start a conversation," Mr. Guinn gave rambling answers in which he said in the same sentence that Mr. Prince was "provocative" yet "bowed to public pressure," ultimately devolving into admissions that the decision to terminate Daily Stormer was in the "discretion" and "say" of Mr. Prince. *Id.* When asked questions about why Cloudflare doesn't kick copyright infringers off the Internet if it can kick neo-Nazis off the Internet, Cloudflare tried to pull Mr. Guinn as the designee for this topic, then he admitted that the decision whether

-13-

to terminate customers for repeat copyright infringement was also at the discretion of Mr. Prince.  Spillane Decl. ¶ 12, Ex. G.

Mr. Guinn's inability to testify to Mr. Prince's rationale for terminating service to Daily Stormer is underscored by public disclosure of an email Mr. Prince sent to Cloudflare personnel.  Mr. Prince told his employees he made an "arbitrary" decision to terminate services to Daily Stormer because he woke up in a "bad mood" and concluded they were "assholes."

> "Team:
>
> Earlier today Cloudflare terminated the account of the Daily Stormer. We've stopped proxying their traffic and stopped answering DNS requests for their sites. We've taken measures to ensure that they cannot sign up for Cloudflare's services again.
>
> This was my decision. Our terms of services reserve the right for us to terminate users of our network at our sole discretion. My rationale for making this decision was simple: the people behind the Daily Stormer are assholes and I'd had enough.
>
> Let me be clear: this was an arbitrary decision. It was different than what I'd talked talked [sic] with our senior team about yesterday. I woke up this morning in a bad mood and decided to kick them off the Internet. I called our legal team and told them what we were going to do. I called our Trust & Safety team and had them stop the service. It was a decision I could make because I'm the CEO of a major Internet infrastructure company."

Cloudflare CEO on Terminating Service to Neo-Nazi Site: 'The Daily Stormer Are Assholes' (Aug. 16, 2017), available at http://gizmodo.com/cloudflare-ceo-on-terminating-service-to-neo-nazi-site-1797915295.

## B.    Legal Standard

Federal Rule of Civil Procedure Rule 30(a)(1) broadly provides that a party "may, by oral questions, depose any person, including a party, without leave of court[.]"  A party seeking to prevent a deposition must show "good cause," FRCP R.

-14-

26(c), specifically a particular and specific need for protection. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

When courts have barred or limited a deposition of a high corporate officer, this is because the witness lacked personal knowledge and it appeared the deposition was for purposes of harassment. However, "[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). See also *First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*, 1995 WL 566026 at *2 (N.D. Cal. 1995) [holding plaintiff could depose defendant's CEO on his motivations behind the general policy decision to stop insuring churches (of which plaintiff was one) in general]; *Finisar Corp. v. Nistica, Inc.*, 13-cv-03345-BLF (N.D. Cal. 6/29/15) (compelling deposition of CEO who had unique and non-repetitive knowledge of the facts at issue and where prior depositions failed to yield complete information).

In *Apple*, the plaintiff sought to depose Samsung's CEO over Samsung's objections. *Id.* at 264. Samsung had produced a Rule 30(b)(6) witness who had testified that the strategy about which the plaintiff sought to depose the CEO did not play a role in the development of the relevant products or features. *Id.* Nevertheless, the court in that case allowed the deposition to proceed, and balanced the parties' interests by limiting the time allotted for the deposition to two hours. *Id.* at 265. Similarly, the court allowed the plaintiff to depose the EVP in light of evidence that he had personally ordered a comparison of the relevant products for a presentation. *Id.* at 266. The dispositive question before the court in both instances was whether the would-be deponent had engaged in "hands-on action" demonstrative of unique personal knowledge. *Id.* at 265.

The second factor courts consider is whether other available means of discovery may yield the relevant information. However, the party seeking the deposition is not required to exhaust futile discovery methods. Instead, courts consider whether "the

-15-

information **can** be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees **with more direct knowledge of the facts at issue**." *Groupion*, 2012 WL 359699 at \*2 (emphases supplied), quoting *Afinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982 at \*15 (N.D. Cal. 2011). Put another way, the *availability* of obtaining information from other means is as relevant to this analysis as a party's efforts in exhausting those available methods. *See Apple*, 282 F.R.D. at 263 ("The court therefore looks . . . to the availability or exhaustion of other less burdensome discovery methods."). Therefore, when the information sought is unique to the apex deponent, other less intrusive discovery methods are unavailable. For example, in *Apple*, the court permitted Apple to depose Samsung's EVP where his unique personal knowledge could not "be supplied by other means." *Id.* at 267. Apple was also allowed to depose Samsung's SVP of R&D even though Apple arguably had failed to ask relevant questions of a lower-level deponent, because the court determined the SVP would have unique personal knowledge that could not be gleaned by deposing anyone else. *Id.* at 267-68.

### C.    Argument

Cloudflare urges this Court to prevent ALS Scan from taking Mr. Prince's deposition, but Mr. Prince has knowledge that is not merely cumulative of that offered by Cloudflare's Rule 30(b)(6) designees. By his own admissions, Mr. Prince's decision to terminate certain users' accounts was "arbitrary," the result of him waking up "in a bad mood," and a decision he made unilaterally as "CEO of a major Internet infrastructure corporation." Mr. Prince has made it clear that he is the one who determines the circumstances under which Cloudflare will terminate a user's account.

### 1.    Mr. Prince has unique personal first-hand knowledge of facts that are relevant to this case.

Cloudflare's ability to terminate an account is central to this case. To avail itself of safe harbor, an Internet Service Provider ("ISP") must adopt and reasonably implement a policy that provides for the termination of repeat infringers' accounts. 17

-16-

U.S.C. § 512(i)(1)(A). Yet Cloudflare, in arguing that it has reasonably implemented its policy, points (in part) to limitations in its ability to terminate an infringing user's account.

Mr. Paine clarified during his deposition that Cloudflare does not include any language in its terms of service that reference a repeat infringer policy. Spillane Decl. ¶¶ 5-7. Indeed, the terms of service do not identify the circumstances under which a repeat infringer's account will be terminated. *Id.* Thus, to satisfy its obligations under 17 U.S.C. § 512(i)(1)(A), Cloudflare relies upon discretionary decision-making.

In addition to whatever mechanism Cloudflare allegedly employs, Mr. Prince was able to decide on his own to terminate a user's account. Since Cloudflare has the discretion to terminate accounts and Mr. Prince exercises his discretion personally to do so, his decision to terminate certain accounts while continuing to provide services to repeat infringers for whom Cloudflare has received thousands of take-down notices is dispositive in determining whether Cloudflare reasonably implements its (apparently discretionary and unofficial) policy against repeat infringers.

Under *Apple*, Mr. Prince can be subject to deposition if he has unique personal knowledge of the facts of the case. One of the facts at issue here is that Cloudflare did not exercise its discretion to terminate the infringers' accounts. As Trey Guinn testified, Mr. Prince plays a role in deciding whether or not to do so. Spillane Decl. ¶ 12. Furthermore, nobody but Mr. Prince knows his motivations or the rationale behind his decision to terminate select user accounts. This is the kind of hands-on involvement that drove the court's decision to permit certain depositions in *Apple*.

Cloudflare cannot meet its burden of proof here under *Blankenship*; specifically, it has failed to show any burden or risk of prejudice to Mr. Prince other than the fact that this deposition will be inconvenient to him as a CEO. However, it is not arguing that Mr. Prince did not make the statements described above or that he is not able to terminate user accounts.

**2.** **ALS Scan has not discovered the information sought through other means.**

As in *Apple*, here ALS Scans does not need to show that it has exhausted every other method of discovery where there is simply no other method that would reveal the necessary information. By his own admission, Mr. Prince made the decision to terminate user accounts on his own. Any other employee would only be able to testify as to Cloudflare's general policy; however, apparently in practice its policy includes allowing Mr. Prince to terminate accounts at his discretion. When his discretion is at issue, no Rule 30(b)(6) designee can offer the necessary testimony.

As discussed above, ALS Scans has deposed other Cloudflare employees in an effort to ascertain this information, but they cannot provide insight into Mr. Prince's rationale or decision-making process. Instead, during his deposition, Cloudflare designee Trey Guinn confirmed that the decision of whether to terminate the accounts of copyright infringers would belong, at least in part, to Mr. Prince. Spillane Decl. ¶ 12. Thus, applying the standard expressed in *Groupion*, there is no available lower-level employee whose testimony can be exhausted.

Besides, ALS Scan has already taken the depositions of Cloudflare's Rule 30(b)(6) designees. As in *Apple*, these employees were unable to offer testimony concerning Mr. Prince's state of mind.  Likewise, again as in *Apple*, the fact that another employee might have been able to offer insight does not operate to bar ALS Scans from proceeding with deposing Mr. Prince. Instead, the question is whether ALS Scans has other methods available for obtaining this information. Cloudflare identified Mr. Guinn as its deponent, and Mr. Guinn admitted that he had not spoken with Mr. Prince about the motivation behind the decision to terminate *The Daily Stormer*'s account. Spillane Decl. ¶ 11. Therefore, he cannot offer testimony to Mr. Prince's state of mind or decision-making process. Besides, ALS Scans is not required to show that any testimony it would receive from Mr. Prince would be non-repetitive of the testimony obtained from lower-level employees. *See First United Methodist Church*,

-18-

1  1995 WL 566026 at \*3. The purpose of deposing Mr. Prince is to determine what
2  information he has as a decision-maker that other employees do not. *See id.*

3  The evidence has both demonstrated that Mr. Prince has first-hand knowledge
4  relevant to this issue and that his unique knowledge is unavailable by any other means.
5  No other employee can testify to Mr. Prince's decision-making process when it comes
6  to terminating a user's access. *See* Spillane Decl. ¶ 11. No other employee can offer an
7  explanation as to why *The Daily Stormer*'s account was terminated while repeat
8  infringers' accounts are allowed to remain. *Id.* In a case where Mr. Prince's personal
9  judgment appears to govern even over Cloudflare's own policies and procedures,
10 Cloudflare cannot meet its heavy burden of demonstrating why he should not be
11 deposed.

12 **V.    CONCLUSIONS**

13 **A.    Cloudflare's Conclusion**

14 Mr. Prince is irrelevant to ALS Scan's copyright claims against Cloudflare.  Mr.
15 Prince has no direct personal knowledge relevant to this case, let alone unique and non-
16 cumulative personal knowledge.  Further, ALS Scan has not exhausted less burdensome
17 options for discovery, including depositions of lower-level employees equally or more
18 knowledgeable about the subject of the 30(b)(6) topics ALS Scan served covering the
19 subjects about which it seeks to depose Mr. Prince.

20 The deposition of Mr. Prince would pose an unreasonable, unnecessary, and
21 significant burden on Mr. Prince and Cloudflare.  Cloudflare's motion for a protective
22 order should be granted, and Cloudflare and Mr. Prince should be relieved from any
23 obligation to respond to ALS Scan's deposition notice to Mr. Prince.

24 **B.    ALS Scan's Conclusion**

25 ALS Scan is not required to prove that it has exhausted discovery when there are
26 no other means available, and nothing short of Mr. Prince's deposition will reveal the
27 necessary information. Cloudflare argues that its repeat infringer policy is adequate but
28 has demonstrated that it can (and will) terminate a user's account if Mr. Prince so

-19-

wishes. ALS Scan seeks to depose Mr. Prince to assess the credibility of Cloudflare's argument that it employs a rigorous repeat infringer policy that puts it within the DMCA's safe harbor protections.

No other Rule 30(b)(6) deponent will suffice. Mr. Prince has demonstrated that he operates outside the company's regular policies. Since he has taken it upon himself to select user accounts for termination, his unique personal knowledge is now relevant to the question of Cloudflare's capabilities, policies, and procedures for determining which users' accounts should be terminated.

Dated:  September 11, 2017            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By_____
Rachel Kassabian
*Attorney for Defendant Cloudflare, Inc.*

Dated:  September 19, 2017            Respectfully submitted,

SPILLANE TRIAL GROUP PLC

By_____
Jay Spillane
*Attorney for Plaintiff ALS Scan, Inc.*

-20-