QUINN EMANUEL URQUHART & SULLIVAN, LLP
Rachel Herrick Kassabian (Bar No. 191060)
rachelkassabian@quinnemanuel.com
Carolyn M. Homer (Bar No. 286441)
carolynhomer@quinnemanuel.com
Mark T. Gray (Bar No. 305251)
markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **ALS SCAN, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **CLOUDFLARE, INC.**, et al., <br><br> Defendants. | Case No. 2:16-cv-05051-GW-AFM <br><br> **[DISCOVERY MATTER]** <br><br> **DEFENDANT CLOUDFLARE, INC.'S SUPPLEMENTAL MEMORANDUM RE: CLOUDFLARE'S MOTION FOR PROTECTIVE ORDER REGARDING ALS, INC.'S DEPOSITION NOTICE DIRECTED TO MATTHEW PRINCE** <br><br> Hearing Date: October 10, 2017 <br> Hearing Time: 10:00 AM <br> Place: Courtroom 840, 8th Fl. <br> 255 East Temple Street <br> Los Angeles, California 90012 <br> Judge: Hon. Alexander MacKinnon |

# TABLE OF CONTENTS

**Page**

I. ALS'S LEGAL AUTHORITY SUPPORTS CLOUDFLARE'S POSITION ..... 1

II. MR. PRINCE'S TESTIMONY WOULD BE DUPLICATIVE OF CLOUDFLARE'S 30(B)(6) TESTIMONY ..... 2

III. ALS MISCHARACTERIZES CLOUDFLARE'S 30(B)(6) TESTIMONY ..... 3

IV. ALS MISCHARACTERIZES THE RELEVANCE OF THE DAILY STORMER EVENT ..... 4

Pursuant to Local Rule 37-2.3, Defendant Cloudflare, Inc. ("Cloudflare") respectfully submit this Supplemental Memorandum regarding its Motion for Protective Order concerning the noticed deposition of Cloudflare's Chief Executive Officer, Matthew Prince. ALS mischaracterizes Mr. Prince's public statements, Cloudflare's policies, and witness testimony in an attempt to manufacture relevance through alleged inconsistency. *See* Joint Stipulation, Dkt. 265-1 at 2, 13, 17, 18. ("Jt. Stip."). There is no inconsistency, and ALS already has the testimony it expects to elicit from Mr. Prince.

## I. ALS'S LEGAL AUTHORITY SUPPORTS CLOUDFLARE'S POSITION

ALS provides several examples of decisions in which apex depositions were allowed to proceed. Jt. Stip. 14-16. However, all of ALS's cases share a common element: the requesting party had shown the witness to posses unique, first-hand knowledge of the facts at issue (*i.e.*, they satisfied the elements of the test).

ALS mischaracterizes the holding of *First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*, 1995 WL 566026 at *2 (N.D. Cal. 1995), as "plaintiff could depose defendant's CEO on his motivations behind the general policy decision to stop insuring churches (of which plaintiff was one) in general." Jt. Stip. 15. However, the Court found him personally involved "in the dispute with [Plaintiff] regarding the policy's coverage." *Id.* *1; *see Affinity Labs of Texas v. Apple, Inc.*, No. 09-cv-4436, 2011 WL 1753982, *14 (N.D. Cal. May 9, 2011) (confirming *First United Methodist* court found personal knowledge and distinguishing because "there is no suggestion that Mr. Jobs has any knowledge of [Plaintiff], its owners or the Patents–In–Suit"). Similarly, ALS's summary of *Finisar Corp. v. Nistica, Inc.* concedes the Court determined that the plaintiff's CEO "had unique and non-repetitive knowledge of the facts at issue." Jt. Stip. 15; *Finisar*, 13-cv-03345, 4-5 (N.D. Cal. June 30, 2015) (Dkt. 218) ("[Defendant] has made a plausible showing that [Plaintiff's CEO] may have first-hand knowledge of relevant matters as a percipient witness.").

Finally, ALS also concedes *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 265 (N.D. Cal. 2012), requires "hands-on action." Jt. Stip. 15. Apple had demonstrated that Samsung's CEO "was at the head of a strategic shift in Samsung's design mentality," its Executive Vice President "directly order[ed] side-by-side comparisons of Apple and Samsung products," and its EVP of R&D was "directly involved in reviewing certain Samsung features in relation to Apple." *Apple*, 282 F.R.D. at 265-67.

Contrary to facts in those cases, Mr. Prince's statements regarding the Daily Stormer have nothing to do with ALS, the websites at issue, their respective owners, or the copyrighted images asserted in this matter.[1] Mr. Prince has no personal knowledge regarding any of these issues. Supp. Prince Decl. ¶¶ 2-3. Despite ALS's baseless claims to the contrary, *e.g.*, Jt. Stip. at 17, Mr. Prince was not personally involved in Cloudflare's response to the infringement notices at issue or any decisions regarding application of Cloudflare's repeat infringer policies as to the accountholders for the websites allegedly hosting ALS's images. *Id.*

## II. MR. PRINCE'S TESTIMONY WOULD BE DUPLICATIVE OF CLOUDFLARE'S 30(B)(6) TESTIMONY

The foundation of ALS's factual argument is the misrepresentation of Cloudflare's corporate testimony, ignoring relevant and responsive answers or writing them off as "pablum." Jt. Stip. 13, 17. In fact, ALS received answers to the relevant

---

[1] To the extent ALS claims Cloudflare failed to establish "good cause" under *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), ALS ignores that the intended deponent in *Blankenship* had first-hand knowledge of the facts at issue. *Id.* Good cause for a protective order exists where the intended deponent is an apex witness who lacks unique, first-hand knowledge of the facts at issue in the case is in and discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. *See Abarca v. Merck & Co., Inc.*, No. 07-cv-0388, 2009 WL 2390583, *6-7 (E.D. Cal. Aug. 3, 2009). Rule 26(c) itself allows the Court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." The burden and expense to Cloudflare and Mr. Prince preparing and sitting for a deposition is not justified by testimony merely confirming that Cloudflare's corporate designee accurately described Cloudflare's technical capabilities and given Mr. Prince's lack of first-hand knowledge of the facts at issue.

30(b)(6) topics. Mr. Prince's testimony on these issues, to the extent he could even provide any at all, would be duplicative.

ALS wanted to know "How did Cloudflare "kick a group of neo-Nazis off the internet?." Kassabian Decl. Ex. B (Topic 13). Mr. Guinn testified that it did not and that Mr. Prince's statement about helping to do so was merely illustrative of the point he was making. Supp. Kassabian Decl. Ex. E, at 60:8-61:19. Mr. Prince can provide no additional testimony on this topic. ALS wanted to know "Can Cloudflare kick copyright infringers off the internet?" Kassabian Decl. Ex. B (Topic 14). Mr. Guinn testified that it cannot. Supp. Kassabian Decl. Ex. E, at 60:8-61:19. Mr. Prince can provide no additional relevant testimony on this topic. ALS wanted to know "how is it that Cloudflare can kick neo-Nazis off the Internet but not copyright infringers?" Kassabian Decl. Ex. B (Topic 15). Mr. Guinn testified that it cannot kick *anyone* off the internet. Supp. Kassabian Decl. Ex. E, at 60:8-61:19. Mr. Prince can provide no additional relevant testimony on this topic. ALS wanted to know "why hasn't Cloudflare used [its] discretion to choose not to allow the Websites to use Cloudflare's network?" Kassabian Decl. Ex. B (Topic 16). Mr. Paine explained Cloudflare's policies with respect to how Cloudflare applies its repeat infringer policy, and Mr. Guinn explained that the Daily Stormer issue had nothing to do with copyright issues or the repeat infringer policy. Supp. Kassabian Decl. Ex. F, at 11:10-12:11, 13:6-15; Ex. E, at 73:3-10. Mr. Prince can provide no additional testimony on this topic; he was not involved in any analysis regarding the websites at issue. Supp. Prince Decl. ¶ 3.

### III. ALS MISCHARACTERIZES CLOUDFLARE'S 30(B)(6) TESTIMONY

ALS's arguments in the Joint Stipulation mischaracterize Cloudflare's corporate testimony. Mr. Guinn did not testify that Mr. Prince was untruthful or "offer[] non-responsive pablum" to the suggestion Mr. Prince intended to mislead the public. Jt. Stip. 13. Rather, Mr. Guinn merely re-confirmed Cloudflare cannot kick websites off the internet, a fact Mr. Prince did not misrepresent. Supp. Kassabian Decl. Ex. E, at 79:12-25. Although the issue is irrelevant, Mr. Guinn did not merely "surmise" Mr.

Prince's reasoning for the termination of Daily Stormer nor provide a "canned answer." Jt. Stip. 13. To the contrary, in addition to the multiple public statements Mr. Prince himself made in which he expressly provided his motivations, Mr. Guinn spoke at length about his personal interactions with Mr. Prince and a company-wide discussion of the issue. Supp. Kassabian Decl. Ex. E, at 62:17-63:16; 64:10-65:5; 69:23-72:8. Nor was there any confusion regarding hate speech being a violation of Cloudflare's Terms of Service. Jt. Stip. 13. Neither Mr. Guinn nor Mr. Prince, either publicly or in his declaration, have claimed the Daily Stormer was terminated simply because it used hate speech. *E.g.*, Prince Decl. ¶¶ 5-7.

ALS also implies that Cloudflare witnesses testified that Mr. Prince makes the decision on whether to terminate repeat infringers, and even stated Cloudflare's policies are "at the sole discretion of Matthew Prince." Jt. Stip. 2, 13-14, 17. This is not Cloudflare's testimony. This is not Cloudflare's policy. Cloudflare's DMCA policy and procedure are set by its legal department and implemented by its Trust and Safety Department. Supp. Kassabian Decl. Ex. F, at 48:7-50:4; Prince Decl. ¶ 8. There is no evidence that Mr. Prince has any knowledge about the alleged infringements at issue or that he had any interaction or involvement in Cloudflare's responses to notifications of infringement. ALS has not and cannot show that Mr. Prince unique, personal knowledge of the facts at issue in this case. *Reinsdorf v. Skechers U.S.A., Inc.*, No. 10-cv-07181, 2012 WL 12883889, *2 (C.D. Cal. May 9, 2012).

**IV. ALS MISCHARACTERIZES THE RELEVANCE OF THE DAILY STORMER EVENT**

ALS repeatedly cites termination of the Daily Stormer's Cloudflare account as a basis for deposing Mr. Prince, complaining that his statements contradict corporate testimony and reflect personal discretion that lower-level employees cannot speak to. Jt. Stip. 2, 12, 18. However, despite ALS's refusal to acknowledge it, Mr. Prince's statement was not a factual description of Cloudflare's technical capabilities, but rather was an illustrative point. Prince Decl. ¶ 9. As Cloudflare's corporate designee has

testified on multiple occasions, it is not possible for Cloudflare to remove a website from the internet. Kassabian Decl. Ex. C, at 94:1-13; Supp. Kassabian Decl. Ex. E, at 60:8-61:19. ALS's counsel even conceded during Mr. Guinn's deposition that "I got tripped up over the technicality of whether terminating services had the effect of kicking them off the internet." Supp. Kassabian Decl. Ex. E, at 68:10-13. It is not a technicality. It is the crux of ALS's relevancy argument. Cloudflare cannot kick its customers off the internet. Mr. Prince did not contradict this. He explained only that he "helped" do so by terminating service, which led to various hackers attacking the Daily Stormer's host, which led to the Daily Stormer being taken off the internet. Prince Decl. ¶ 11. That fact does not "contrast with Cloudflare's disclosures in this case that it has only terminated services *to repeat copyright infringers* when presented with a court adjudication of infringement." Jt. Stip. 2 (emphasis added). The Daily Stormer was not an accused, let alone an adjudicated, copyright infringer.

Considering Cloudflare's corporate witnesses have addressed all relevant noticed topics, ALS also argues that lower-level employees cannot speak to Mr. Prince's state of mind in terminating the Daily Stormer account. Jt. Stip. 18. However, ALS is not entitled to depose Mr. Prince about his personal opinions regarding the termination of an unrelated account for unrelated reasons. Also irrelevant would be Mr. Prince's speculations as to how he might respond to the hypothetical situation in which his team requests his input on whether to terminate a repeat infringer. The facts of this case are that Mr. Prince was not involved in any consideration of the application of Cloudflare's repeat infringer policy to the websites at issue. Supp. Prince Decl. ¶ 3. He therefore has no state of mind testimony to give that would actually be tied to the facts of this case. *Reinsdorf*, 2012 WL 12883889, *2.

| | |
|---|---|
| Dated: September 26, 2017 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br><br>By *[signature: Rachel Henick Kassabian]*<br>　　Rachel Kassabian<br>　　*Attorney for Defendant Cloudflare, Inc.* |