QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
  Carolyn M. Homer (Bar No. 286441)
  carolynhomer@quinnemanuel.com
  Mark T. Gray (Bar No. 305251)
  markgray@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

*Attorneys for Defendant Cloudflare, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CLOUDFLARE, INC., et al., <br><br> Defendants. | Case No. 2:16-cv-05051-GW-AFM <br><br> **[DISCOVERY MATTER]** <br><br> **SECOND SUPPLEMENTAL MEMORANDUM RE: DEFENDANT CLOUDFLARE, INC.'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF ALS SCAN** <br><br> Hearing Date:  TBD <br> Hearing Time:  TBD <br> Place:  Courtroom 840, 8th Fl. <br>   255 East Temple Street <br>   Los Angeles, California 90012 <br> Judge:  Hon. Alexander MacKinnon |

During the September 12, 2017 hearing on Cloudflare's second Motion to Compel, the Court granted Cloudflare's motion as to certain items,[1] and Cloudflare agreed to continue to meet and confer with ALS Scan regarding other outstanding items, and submit a supplemental memorandum regarding the items remaining for decision by the Court.  *See* Dkt. 245-1.  Cloudflare does so now.

In an effort to minimize the number of issues requiring court resolution, Cloudflare has agreed to narrow, hold in abeyance pending further discovery, or otherwise consider resolved, several of the discovery requests which were the subject of Cloudflare's motion.[2]  However, Cloudflare and ALS have reached an impasse on two critical discovery issues, related to communications and infringement identifications.  Additionally, although ALS Scan agreed during meet and confer to produce certain financial spreadsheets also called for by Cloudflare's motion to compel, it has failed to actually do so.  Cloudflare asks the Court to grant its motion as to these three remaining issues.

## I.   DISPUTED ITEMS FROM CLOUDFLARE'S MOTION TO COMPEL REMAINING FOR RESOLUTION

### A.   RFPs 12-13, 25-28, 42-43, 44-45, 64-65:  ALS Has Refused to Produce Further Responsive Communications Relevant to its Allegations[3]

Despite the parties' meet-and-confer efforts, ALS has refused to run any additional search terms or produce any additional ALS communications.  *See* Cloudflare's RFPs 12-13, 25-28, 42-43, 44-45; Jt. Stip. (Dkt. 245-1) at 3-12; Cloudflare's Supp. Memo. (Dkt. 248) at 1-3.  Cloudflare's requests called for ALS's communications, including those involving Sarah Walsh, Eric Penn, Steve Easton

---

[1]  Cloudflare's motion was granted, and ALS was ordered to provide further responses, to (1) Interrogatory No. 22 within 2 days, (2) Requests for Admission Nos. 74-77 within 10 days, (3) RFAs 4-9 and 42-43, 45 within 20 days, and (4) Interrogatory No. 13, due Wednesday, October 4.

[2]  *See* Jt. Stip. § III-C (analytics, server logs, and marketing); *id.* § IV-C, F (timing of take downs for asserted infringements, and ALS sale agreement documents); *id.* § V-C (RFA regarding copyright office).; *id.* § VI (privilege log deficiencies).

[3]  *See* Jt. Stip. (Dkt. 245-1) § II and § III-A, B.

an Alex Kirn, which were related to Cloudflare, the allegedly direct-infringing websites, or ALS's Complaint.  In its written responses ALS *agreed* to produce all responsive communications, but as of mid-August had only produced emails from Mr. Easton's custodial files – not any internal emails.  *See* Jt. Stip. (Dkt. 245-1) § II-B.  Following service of Cloudflare's portions of the original joint stipulation, ALS produced 141 responsive internal communications.  Cloudflare's Supp. Memo. (Dkt. 248) at 1-2.  During the depositions of ALS witnesses Sarah Walsh and Eric Penn, however, it became clear that this internal email production was far from complete.

In particular, Eric Penn testified that he conducted the bulk of the electronic and email collection in the case.  *See* Supp. Kassabian Decl., Ex. L (Penn Tr.) at 87-90.  Penn searched ALS Scan email accounts for just four terms – "Cloudflare," "copyright," "infringement," and "lawsuit."  *Id.* at 89-94.  This search omits many obvious responsive terms, such as the names of the 17 allegedly infringing websites at issue, and certain other key terms referenced in ALS's Complaint, such as "CDN" and "piracy."  Moreover, Penn testified that he, as a non-lawyer, personally reviewed the emails and made his own relevance decisions.  *Id.* at 91.  Mr. Penn also took it upon himself to set aside all emails on which Mr. Easton was copied, since he assumed those had already been produced, *id.* at 91-93.

Similarly, Sarah Walsh testified that she has kept years worth of emails from ALS's DMCA agent Steve Easton in a single "Easton" email folder.  Nevertheless, she did not comprehensively search, collect, or produce the contents of that folder.  *See* Supp. Kassabian Decl., Ex. M (Walsh Tr.) at 319-322.  ALS contends that this production would be duplicative of Mr. Easton's own production – but Mr. Easton testified, and admitted in an email, that he has repeatedly deleted emails regarding Cloudflare, including during the pendency of this litigation.  *See* Jt. Stip. (Dkt. 245-1) at 11.  Likewise, Walsh acknowledged that although emails from the webmaster account when Mr. Kirn owned the company are still in existence, she has not

searched or produced them.  *See* Supp. Kassabian Decl., Ex. M (Walsh Tr.) at 59-60, 288.

During meet-and-confer efforts, ALS stated that the burden of searching its internal emails was too great to undertake any further efforts; ALS refused to "go back and re-do the entire search with the search terms" Cloudflare proposed because the terms "would substantially expand the scope of the RFPs in question."  But ALS *agreed* to produce all responsive internal communications regarding, *e.g.*, the Complaint, the allegedly direct-infringing websites at issue, and Cloudflare.  *See* Jt. Stip. at II-A (providing full text of Cloudflare's requests and ALS's responses).  Cloudflare's proposed search terms below directly map onto those three subjects.  The fact that ALS chose to run a facially incomplete set of search terms to respond to these requests does not excuse them from the obligation to do so now.  Nor is any resulting burden undue, as the search terms track the specific allegedly infringing websites ALS has elected to sue Cloudflare about, as well as the key matters at issue here, such as "CDNs" and "piracy."

ALS Scan has also refused to produce emails with Hydentra, particularly with respect to the parties' business relationship, financial reports, and discussions of affiliate use of ALS content.  *See* Jt. Stip. (Dkt. 245-1) at § III-A, B.  Walsh testified that ALS regularly communicates with Hydentra regarding subscription numbers and marketing.  *See* Supp. Kassabian Decl., Ex. M (Walsh Tr.) at 71-72, 113-115, 290.  She even keeps a "Hydentra" specific folder in her email account, which she believes was turned over to counsel.  *See id.* at 291-294.  Penn separately testified that he has email communications with Hydentra where he complains about bad affiliates so that Hydentra will either terminate them or require changes to their affiliate practices.  Supp. Kassabian Decl., Ex. L (Penn Tr.) at 162.  ALS claims that it would be too burdensome to search for and produce these documents.  In discussions about narrowing the request, Cloudflare asked ALS to at least estimate how many emails exist in the "Hydentra" folder or would otherwise be responsive to

Cloudflare's requests.  Because ALS has not provided any such quantification, its burden objection is unsupported.

Cloudflare therefore requests that the Court order ALS Scan to search the email accounts of the ALS Webmaster, Sarah Walsh, Eric Penn and Janae Gates, and thereafter produce the following items:

- The contents of the Sarah Walsh "Easton" folder;
- The contents of the Sarah Walsh "Hydentra" folder;
- All non-privileged documents hitting on the following search terms taken directly from the Third Amended Complaint:

| | | |
|---|---|---|
| ○ artofx | ○ imgspice | ○ copyright.gov |
| ○ bestofsexpics | ○ imgspot | ○ CDN |
| ○ cumonmy | ○ imgtrex | ○ locker |
| ○ fboom | ○ imagetwist | ○ pirate* |
| ○ greenpiccs | ○ pornwire | ○ piracy |
| ○ img.yt | ○ slimpics | ○ proxy |
| ○ imgchili | ○ stooorage | |
| ○ imgflash | ○ vipergirls | |
| ○ imgsen | ○ cach* | |

**B.     Interrogatory No. 20:  ALS Has Refused To Identify Unique Original Images, Despite Admitting that it Can Do So.[4]**

Through meet and confer efforts, Cloudflare has narrowed Interrogatory No. 20 to one request – it asks that ALS Scan create a chart, or add a column to its existing infringement charts, which identifies, by reference to ALS's own internal deposit documents and image file names, the unique images it asserts have been infringed in this case.  *See* Cloudflare's Interrogatory No. 20; Joint Stip. (Dkt. 245-1) at 21-23; Cloudflare's Supp. Memo. (Dkt. 248) at 5.  Such a request is routine in

---

[4]   *See* Jt. Stip. (Dkt. 245) § IV-B.

-4-

any copyright case, yet ALS has staunchly refused to provide this information for nearly a year.  With discovery set to close in just two weeks, the time has come for ALS to do what every other copyright plaintiff routinely does without resort to motion practice – disclose which "works" it claims to be suing about.

ALS Scan contends that each of its images is a "work" eligible for a separate statutory damages award (as opposed to each photoset or each registration, as Cloudflare contends).  Accordingly, for each asserted infringement, ALS Scan must support its contention by identifying which specific images it alleges were infringed, by unique identifier, or admit that it lacks such evidence.  This is critical evidence because, absent such an identification, the factfinder will have no basis to calculate the statutory damages ALS demands.  Under governing law only one statutory award is permitted per "work" regardless of how many times that work is infringed. So, ALS's listed infringements must be individually identified so that they can be de-duplicated before statutory damages can be calculated.  *See, e.g., Warner Bros. Entm't v. X One X Prods.,* 840 F.3d 971, 978 (8th Cir. 2016) (*citing* 17 U.S.C. 504(c)(1)).

At the June 20, 2017 hearing before this court, ALS's counsel stated that it was impossible for ALS to identify which specific images were infringed at which specific links.  *See* Kassabian Decl. (Dkt. 245-2), Ex. G at 37 (ALS: "[T]he problem is once the links go dead, we don't have any way of knowing which particular picture of Christine relates to which link…because the links are dead and there isn't enough information in the URLs themselves to tell us which particular picture of Christine [it is.]").  In response to a question regarding whether ALS knew "exactly which picture of Christine relates to those 179 [infringing] links," ALS responded that it did not – that "Whatever detail we're capable of supplying we supplied." *See* Jt. Stip. (Dkt. 245-1) at 21-22.  Contrary to counsel's representations, ALS employee Eric Penn repeatedly admitted at his September 7-8 deposition that it would indeed be possible for him to add a column to his infringement charts

identifying the unique internal ALS identifier for many of the specific images ALS

Scan asserts was infringed (though not necessarily all of them), but that he has not

done so.  Supp. Kassabian Decl., Ex. L (Penn Tr.) at 315-316, 330-333, 346-350.

*Penn Transcript at 315-316*
Q So actually, there's just a single image listed for each of these rows
under the "Number of Images" column, right?
A Correct.
Q And that's the number of images that ALS Scan is asserting against
Cloudflare as having been infringed as listed in the DMCA notices for
artofx.org, right?
A That's my understanding. And to revise a previous statement,
having jogged my memory, artofx.org, one image on each of these
rows, for my purposes, would identify the specific image in question
because they were the so-called cover shot.
Q So where on this spreadsheet do you identify the specific image in
question?
A I did not indicate it in a way that might be apparent to somebody
else.
Q But you could easily do that by adding another column listing the
unique identifier for the particular image being asserted here, right?
A I could add a column which reflected the internal name and number
of the specific image, yes.
Q But that's not on this version of the chart, correct?
A Correct.

*Penn Transcript at 330-333*
Q Where are the specific images actually identified in this
spreadsheet?
A It appears the "Captured Links" column identifies specific images.
Q Can you read one of the unique image identifiers in this
spreadsheet?
A The first one is ALS -- well, bestofsexpics.com/als-scan-faye-
runaway-girl.html.
Q And that's a reference to a shoot, right?
A "Faye Runaway" indicates a shoot, as I indicated in the fourth
column. The link indicates the URL of the image of Faye Runaway's
– of Faye Runaway that I captured.
Q That just identifies the screenshot, right?
A Correct.
Q That's the URL of the screenshot that you captured?

-6-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A That's correct.

Q That doesn't identify for us the particular unique image, for instance, using the naming conventions that ALS Scan uses in its copyright deposits, right?

A Correct. The specific image is identified in the screenshot.

Q Right. But it's not on this chart?

A It is not on this chart.

Q So if you went to the screenshot, could you identify the unique image?

A I could.

Q And could you then list that unique image identifier in another column in this chart if you wanted to?

A Theoretically, that's possible.

As further support for the need for unique image identifications, for ALS's 1999-2001 copyright registrations, ALS's former CEO Alex Kirn testified on October 4 that an independent contractor named Jeremy Hopkins shot all of the close-up images during that time period. *See* Supp. Kassabian Decl., Ex. N (Kirn Rough Tr.) at 116-118. ALS has not produced and apparently does not have a work-for-hire agreement for Mr. Hopkins. *See id.* at 121, 130-132. Thus, ALS lacks standing to sue on those particular close-up images – making the identification of those individual images it purports to assert in this case imperative. 17 U.S.C. § 101; 17 U.S.C. § 201(b); 17 U.S.C. § 204 (specifying that work-for-hire agreements and copyright transfers must be in writing).

Providing individual image information is directly responsive to Interrogatory 20, which asks ALS to identify "which specific IMAGES included within each of those registrations or applications YOU contend were infringed by which specific WEBSITES at which specific URLs." The identification of which individual images are actually being asserted is critical to the case, and courts in this district have issued similar orders to other notoriously recalcitrant copyright plaintiffs. *See, e.g.*, *Perfect 10 v. Google*, No. 05-CV-4753 (C.D. Cal.) at Dkt. 1193 (ordering plaintiff in a large copyright case to produce a spreadsheet identifying each

-7-

1  infringement and image).   ALS should be ordered to provide this information via a

2  fulsome and complete written response to Interrogatory 20.

3  **II.     ALS'S FAILURE TO PRODUCE AGREED-UPON ITEMS**

4          As a last item, Cloudflare has repeatedly sought ALS Scan's internal

5  spreadsheets which is uses to track its current sales and subscription information,

6  and ALS agreed to produce them. *See* Jt. Stip. (Dkt. 245-1) at § IV-F; RFP 50.

7  After Sarah Walsh testified about financial spreadsheets she maintains and updates,

8  Cloudflare inquired further about whether they had been produced.  ALS Scan

9  responded to Cloudflare's inquiries by saying ALS's "sales.xls" spreadsheet had

10 already been produced – but ignored Cloudflare's requests that ALS identify the

11 sheet by file location or BATES number.  Then today, October 5, at her continued

12 deposition, Ms. Walsh testified again regarding ALS's two financial tracking

13 spreadsheets, "sales.xls", and "sales_totals.xls", stating that ALS continues to

14 update them.  Cloudflare requests that the Court order ALS to produce native copies

15 of the most recent versions of those spreadsheets.

16                                        \*\*\*

17         Cloudflare respectfully requests the Court grant this remainder of

18 Cloudflare's pending motion to compel and order that, within ten days of the court's

19 Order, ALS must (a) produce its internal communications related to the Complaint

20 that hit on the above-referenced search terms, and its "Easton" and "Hydentra"

21 folders in Walsh's email account, (b) respond to Interrogatory No. 20 by identifying

22 for each alleged infringement ALS's unique, internal file name for the respective

23 image at issue, or confirm that it does not have that information as the case may be,

24 and (c) produce updated native copies of ALS's "sales.xls" and "sales_totals.xls"

25 spreadsheets.

26

27

28

1  Dated:  October 5, 2017                    Respectfully submitted,

2                                             QUINN EMANUEL URQUHART &
                                              SULLIVAN LLP
3

4

5  By_____

6      Rachel Kassabian
       *Attorney for Defendant Cloudflare, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28