JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT COURT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants. | Civil Action No: 2:16-cv-05051-GW-AFM<br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>***PUBLIC REDACTED VERSION***<br><br>**Hearing Date: January 4, 2018**<br>**Hearing Time: 8:30am**<br>**Place:   Courtroom 9D, 9th Fl.**<br>**350 West 1st Street**<br>**Los Angeles, CA, 90012**<br>**Judge:   Hon. George H. Wu** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................1

SUMMARY JUDGMENT STANDARD.................................................................1

STATEMENT OF CASE........................................................................................2

FACTS ....................................................................................................................3

    A.   Steadfast's Business and Terms and Conditions................................3

    B.   Steadfast's Business with Flixya .......................................................4

    C.   Steadfast's Business with Flixya was Extremely Limited .................4

    D.   There was no infringement by Steadfast or Flixya .............................5

    E.   Alleged Infringements Were Expeditiously Removed .......................5

    F.   ALS Sent Defective DMCA Notices but Steadfast Still Acted ........6

    G.   The Actual Infringers of the ALS's Content were ALS Members ....7

ARGUMENT ..........................................................................................................8

I.     ALS HAS NOT ESTABLISHED CONTRIBUTORY INFRINGEMENT....8

   A.   Flixya is neither a direct infringer nor a contributory infringer ...................11

   B.   Genuine Dispute about Knowledge of Specific Infringements Exists..........12

   C.   Steadfast took actions to disable the allegedly infringing material .............13

   D.   ALS's Contributory Trademark Infringement Claims Lack Merit ...............14

II.    ALS DID NOT PROVIDE STEADFAST WITH DMCA-COMPLIANT NOTIFICATIONS PURSUANT TO § 512(C)(3)(A) ............................................14

III.   STEADFAST SATISFIES EACH ELEMENT OF THE DMCA ................17

   A.   Steadfast both responded and acted per the DMCA .....................................18

IV.   STEADFAST SATISFIES 17 U.S.C. § 512(i) ..............................................19

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A.   Steadfast adopted and informed its users of its policy ...................................20

B.   Steadfast has reasonably implemented its repeat infringer policy ...............21

1.   Steadfast is not aware of any repeat infringers ...........................................22

2.   An "appropriate circumstance" to terminate a user does not include terminating a user who follows the law ...........................................................24

CONCLUSION ........................................................................................................25

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ....................................................1, 25

4

5

*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004). 21, 24

6

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)................................................20

7

*Flava Works, Inc. v. Gunter*, 689 F. 3d 754 (7th Cir. 2012) ............................ 11, 12

8

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996).....................8, 9

9

10

*Hempton v. Pond5, Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830
   (W.D. Wash. Oct. 25, 2016)...................................................................................21

11

12

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936 (9th Cir. 2011) 2, 9,
   10, 11

13

14

*Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017)
   ...............................................................................................................................18

15

16

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).....................................8, 9

17

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) .............1

18

19

*Perfect 10, Inc. v. Amazon.com, Inc.*, No. CV 05-4753 AHM (SHx), 2009 U.S. Dist.
   LEXIS 42341 (C.D. Cal. May 12, 2009) ..............................................................15

20

*Perfect 10, Inc. v. CCBill*, 488 F.3d 1102 (9th Cir. 2007)................................ passim

21

*Perfect 10, Inc. v. Giganews, Inc.*, 993 F. Supp. 2d 1192 (C.D. Cal. 2014) ...... 16, 17

22

23

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist.
   LEXIS 183590 (C.D. Cal. Nov. 14, 2014)............................................................13

24

*Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)...............14

25

26

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361
   (N.D. Cal. 1995) .....................................................................................................8

27

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327 (9th Cir. 1983)......2

28

iii

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013) ..................................................................................................2, 23

*UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008) ..............................................................................................................2

**STATUTES**

17 U.S.C. § 512(c) ....................................................................... passim

17 U.S.C. § 512(i) ......................................................... 17, 19, 21, 23

17 U.S.C. § 512(k) ...................................................................................15

17 U.S.C. § 512(m) ..................................................................................16

18 U.S.C. § 1030 .................................................................... 11, 16

**OTHER AUTHORITIES**

Nimmer on Copyright § 12B.04 (2017) ............................................ 14, 15

**RULES**

Fed. R. Civ. P. 56 ....................................................................................25

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons stated below, Defendant Steadfast Networks, LLC ("Steadfast") opposes Plaintiff ALS Scan, Inc.'s ("ALS") motion for partial summary judgment.

## PRELIMINARY STATEMENT

ALS seeks partial summary judgment against Steadfast for secondary copyright and trademark infringement and that Steadfast is not entitled to the DMCA's safe harbor protection. ALS's motion should be denied because there are genuine disputes of material fact and because ALS has not shown that it is entitled to judgment as a matter of law. Accordingly, ALS's motion must be denied in its entirety.

## SUMMARY JUDGMENT STANDARD

Summary judgment is improper when there are genuine disputes of material fact or when the moving party is unable to show it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact for trial. *Id.* at 323. If the moving party fails to satisfy its initial burden, "the nonmoving party has no obligation to produce anything" and summary judgment must be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000). Assuming that the moving party satisfies its initial burden of production, the nonmoving party must set forth facts showing that there is a genuine issue for trial. *Id.* at 1103. Then, the evidence, and any

1

inferences based on underlying facts, must be viewed in the light most favorable to the nonmoving party. *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328-29 (9th Cir. 1983). "Only admissible evidence may be considered in deciding a motion for summary judgment." *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1086 (C.D. Cal. 2008).

## STATEMENT OF CASE

In enacting the Digital Millennium Copyright Act ("DMCA"), Congress sought to "foster *cooperation* among copyright holders and service providers in dealing with infringement on the Internet." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013) (emphasis added). Congress knew cooperation among the various parties was crucial to the DMCA's success. As evidenced by the "exclusionary rule," Congress made it clear that those who refuse to participate will suffer the consequences. *See id.* at 1022. ALS has chosen not to play by the rules in order to further its agenda while ignoring the actual infringers.

ALS has not presented evidence or law supporting its contributory copyright and trademark infringement claims. ALS repeatedly claims it faces a "whack a mole" dilemma in enforcing its rights but discovery has shown the "moles" are ALS's own customers; ALS takes absolutely no steps to curb the infringement of its works by its own customers. Puzzlingly, ALS continues to rely on *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936 (9th Cir. 2011), despite the fact

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

that ruling cuts against its theory, *see* Dkt. 111, p. 7 n.3. Nearly ten months of discovery following this Court's February 16, 2017 Order (Dkt. 111) granting Steadfast's Motion to Dismiss, ALS still has not established contributory copyright or trademark infringement against Steadfast. ALS has failed to and cannot show any active inducement or material contribution by Steadfast because Steadfast is simply too removed from the alleged infringing activity.

## FACTS

### A.        Steadfast's Business and Terms and Conditions

Steadfast is a data-center service provider, offering cloud-based storage solutions (Dkt. 90, 1:2-5; Karl Zimmerman ("KZ") Decl. ¶4). Steadfast established terms and conditions which its clients must abide by: "We reserve the right to refuse service to anyone for any reason not prohibited by law. Also **we reserve the right to terminate service to any client for any reason not prohibited by law** . . . . All services provided by Steadfast may be used for lawful purposes only. . . . **This includes, but is not limited to: copyrighted material, trademark, intellectual property**, material that promotes any illegal activity, or material protected by trade secret and other statutes without proper authorization. . . ." (Decl. KZ ¶6, Ex. A.) (emphasis added).

The terms are posted on its website (*Id.* at ¶7), making it clear that copyright and trademark infringement is a violation, and reserving the right to terminate any client not prohibited by law (*Id.* at ¶9). Steadfast has never had to terminate a client

3

for repeat infringement (*Id.* at ¶11).

### B.        Steadfast's Business with Flixya

From 2007 to 2017 Steadfast leased servers to Flixya Entertainment ("Flixya"). (JLA Decl. Ex. O; KZ Dep. 15:12-18; Dkt. 296-2; KZ Decl. ¶¶ 14-20). The leased servers were completely dedicated to Flixya, including its operation of hosting Flixya's Imagebam.com website (KZ Decl. ¶¶14-20). Steadfast had no ability to terminate services to individual users of Imagebam.com other than unilaterally shutting down the entire server which would have violated the law (JLA Decl. Ex. O p.45:6-24; KZ Decl. ¶31). Imagebam.com was not a pirate site when it was operated by Flixya (JLA Decl. Exs. K-N, T; KZ Decl. ¶¶38-39).

### C.        Steadfast's Business with Flixya was Extremely Limited

Steadfast did not operate, control, or manage any functions of Flixya's Imagebam.com website; did not have access to individual users' content or accounts on Flixya's Imagebam.com website; did not provide the software that ran the Flixya's Imagebam.com website or provide services for users to upload content; did not enter into contracts with Flixya's Imagebam.com users; did not register Flixya's Imagebam.com users; did not handle Flixya's Imagebam.com user complaints; did not in any way communicate with or interact with Flixya's Imagebam.com individual users; did not select any of the content Flixya's Imagebam.com users posted; did not in any way promote or take any affirmative steps to encourage any infringing activity, did not have the right or ability to

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

supervise Flixya's Imagebam.com users' conduct and did not gain a direct financial interest from the individual user's conduct (KZ Decl. ¶¶ 13-31). Flixya has its own terms and conditions that apply to its users, and it maintains its own DMCA agent. (JLA Decl. Exhs. Q and R).

**D.     There was No Infringement by Steadfast or Flixya**

Steadfast was not a direct infringer; Steadfast's client Flixya was not a direct infringer. The direct infringers of the ALS content were the users of Flixya's Imagebam.com website.  Discovery has shown that many, if not all the infringers of the ALS content, were actually ALS's own members who posted ALS content with impunity (JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. 94:8-97:2; Ex. C Easton 09/06/17 Dep. 36:22-37:4). On June 21, 2017, Flixya sold Imagebam.com to Securest Ltd.; Steadfast offers no services to Securest (KZ Decl. ¶¶36-37), meaning several of ALS's exhibits are irrelevant and misleading and involve a non-party, see, e.g., (Penn Decl. ¶12 (Dkt. 300); id. Ex. 20, p. 38 (Dkt. 300-20); id. Ex. 21 (Dkt. 300-21)).

**E.     Alleged Infringements Were Expeditiously Removed**

ALS confirmed that all the images addressed in the notices were removed expeditiously (JLA Decl. Ex. C Easton 09/06/17 Dep. 36:22-37:4). Flixya posted the required DMCA information on its Imagebam.com website, had users agree to the terms of service, and informed users that his or her account will be terminated

(JLA Decl. Exhs. Q &R; Penn's 9/13/17 Dep. Ex. 6). Flixya responded to DMCA notifications, removed content, and terminated repeat infringers (JLA Decl. Ex. O, KZ Dep. 109:2-110:12; KZ Decl. ¶26). Steadfast also went above and beyond in making sure the complained of content was removed through its ticketing system which tracked all DMCA notices, including those where Steadfast was merely cc'd. (Kevin Stange Decl. ¶¶ 4-10). Steadfast made sure copyright holders were protected by obtaining assurance from Flixya that it had both a DMCA policy in place and that it had barred repeat infringers from using Flixya's Imagebam.com website (JLA Decl. Ex. O; KZ Dep. 24:2-25:12; JLA Decl. Ex. T).

## F.   ALS Sent Defective DMCA Notices but Steadfast Still Acted

Steadfast never received a DMCA-compliant notification from Easton because it is not the designated agent of Imagebam.com (JLA Decl. Ex. B, Penn Dep. 50:17 – 52-6; Ex. Q; Stange Decl. 5). As acknowledged by ALS, through Eric Penn, Steadfast did not have awareness of any alleged specific infringement prior to the DMCA notification (JLA Decl. Ex. B, Penn Dep. 62:16-63:21; 77:9-19; 81:9-17; 86:1-12; 93:15-22; 105:18-25; 109:6-13; 116:23-117:3). Steadfast did more than what is required under the DMCA by responding to Easton and forwarding his faulty notices to Flixya (Stange Decl. ¶¶8, 10). ALS, through its agent, admits that Steadfast responded to the notices: "Q. As far as the DMCA notices that you sent to Steadfast on behalf of ALS Scan, were those notices always responded to? A. Yes" (JLA Decl. Ex. C,Easton Dep. 28:25-29:3). Upon receipt of Easton's non-

6

compliant notices, Steadfast immediately forwarded the notices to Flixya, resulting in the removal of the images (Stange Decl. ¶8; JLA Ex. C Easton 09/06/17 Dep. 36:22-37:4). This has been acknowledged by ALS throughout this litigation: "Q. Okay. Have all of these images been removed? A. I believe so, yes." *Id.*

G.       The Actual Infringers of the ALS's Content were ALS Members

ALS took only the bare minimum of effort to police its content, never employing available digital rights protection mechanisms. ALS has approximately [*Redacted*] members (JLA Decl. Ex A Walsh Dep. 23:2-25:11). ALS was aware that some of these [*Redacted*] members were meting out its copyrighted images but never bothered to determine which members were responsible for these activities (*Id.*). Despite knowing its members were violating its terms and conditions, ALS never terminated any memberships (JLA Decl. Ex. B Penn 09/13/17 Dep. 98:10-100:8). ALS never prevented its members from downloading all of its content; never attempted to determine which of its members were posting its content on the adult fan forums and never sought to enforce its terms and conditions against its members. ALS admits its "practice was never to use any sort of technology or tracking to see an image come off of our server and then follow it as that user took it and you know, tried to disseminate it elsewhere." (Ex. B Penn 09/13/17 Dep. 100:3-18). The only thing ALS did was to hire Steve Easton at $[*Redacted*] a year for 15 years to send DMCA notices. Easton did not even have any quota of notices to send nor did ALS hire anybody else to assist with the

7

takedown of images (JLA Decl. Ex. A Walsh Dep. 26:11-29:14, 34:12-35:22; Ex. B Penn 09/13/17 Dep. 96:18-100:7).

<u>**ARGUMENT**</u>

**I.    ALS HAS NOT ESTABLISHED CONTRIBUTORY INFRINGEMENT**

Nearly ten months after this Court's February 16, 2017 ruling dismissing the complaint, ALS still provides no material evidence or law supporting its contributory copyright and trademark infringement claims and thus fails to show it is entitled to summary judgment on its claims and its motion should be denied.

The rule is that "[o]ne infringes contributorily by intentionally inducing or encouraging *direct infringement*." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added). But ALS implicitly applies its own novel theory: one infringes contributorily by intentionally inducing or encouraging *contributory infringement*. Further, Steadfast can only be liable for material contribution if its participation in the infringing conduct of the primary infringer was "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995). Here, Steadfast was three times removed from the conduct of the primary infringers and it did not materially contribute to the infringing conduct of the primary infringers.

ALS confusingly relies on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 260 (9th Cir. 1996). In *Fonovisa,* the plaintiff brought an action against operators of a swap meet, where third-party vendors routinely sold counterfeit

8

goods. *Id.* The operators provided support services including "provision of space, utilities, parking, advertising, plumbing, and customers." *Id.* at 264. The Ninth Circuit held "providing the site and facilities for known infringing activity is sufficient to establish contributory liability" where the operator "actively strives to provide the environment and the market for counterfeit . . . sales to thrive." *Id.* The court rejected the swap meet operators' argument that it had a passive role. *Id.*

Assume the landowners, who resided on the opposite side of the country, simply leased the land where the swap meet took place to the swap meet operators, for a monthly fee. ALS's lawsuit against Steadfast is the equivalent of the *Fonivisa* plaintiff suing these landowners. Steadfast is the landowner who leased the property to Flixya, who then created the environment (Imagebam.com) in which a few third-party strangers allegedly posted unauthorized images. Unlike the swap operators that defied the officer's order to remove counterfeits in *Fonovisa*, Flixya removed the infringing images once alerted. Further, Flixya never promoted infringing activity at its website. (JLA Decl. Ex.Q). ALS has no evidence Flixya (or even Steadfast) acted *intentionally*, or could have intention imputed, under *Grokster*, *Fonovisa,* or any Ninth Circuit precedent.

Moreover, this illogicality is exactly the reason ALS's reliance on *Louis Vuitton*, 658 F.3d at 936, is so misplaced given the facts in the case reinforce Steadfast's defense. *See* Dkt. 297, 12:20-14:3, 24:13-25:15. In this case, Louis Vuitton sued Akanoc Solutions, Inc. ("Akanoc"), Managed Solutions Group, Inc.

9

("MSG"), and Steven Chen, for contributory copyright and trademark infringement. *Id.* at 939-40. "MSG leased servers, bandwidth, and some IP addresses to Akanoc. Akanoc, in turn, operated the servers and otherwise ran the business." *Id.* at 940. Akanoc then leased server space to customers; Louis Vuitton claimed Akanoc's customers directly infringed its copyrights and trademarks. *Id.*

The jury returned verdicts against the three defendants, who then filed post-trial motions, asking the district court to set aside the jury's verdict. *Id.* at 941. "The district court granted the post-trial motion as to MSG, concluding there was no evidence indicating MSG sold domain names, operated the servers, or did anything more than own and lease the hardware operated by Akanoc and Chen." *Id.* On appeal, the Ninth Circuit agreed:

> We agree with the district court that no evidence presented at trial showed that MSG operated the servers that hosted the direct infringers' websites. Even assuming that the direct infringers could be construed as MSG's customers, Louis Vuitton presented no evidence that MSG had reasonable means to withdraw services to the direct infringers. *Id.* at 942.

Steadfast is MSG in that it only leased servers to Flixya (JLA Decl. Ex. O, KZ Dep. 15:12-18; KZ Decl. ¶¶14-20, Dkt. 296-2, ALS's SUF ¶ 10, 11). Steadfast did not operate the servers (KZ Decl. ¶18). The servers leased by Flixya were completely dedicated to Flixya's operations, including its operation of hosting Imagebam.com (Decl. KZ ¶19; JLA Decl. Ex. O, KZ Dep. 15:12-18; Dkt. 296-2;

ALS's SUF ¶ 10, 11). Steadfast simply did not in any way induce or materially contribute to any of the alleged copyright or trademark infringement.

Further, Steadfast, like MSG in *Louis Vuitton*, cannot be found to have materially contributed to any infringing conduct. Even assuming Imagebam.com users were clients of Steadfast (which they were not), there is no evidence Steadfast "had reasonable means to withdraw services to the <u>direct infringers</u>." 658 F.3d at 942 (emphasis added). Steadfast's only means to withdraw services from individual Imagebam.com's users would be to break the law by hacking Flixya's system. (JLA Decl. Ex. O, KZ Dep. 45:6-24; KZ Decl. ¶¶29-32); *see* 18 U.S.C. § 1030 (prohibiting accessing a computer without or in excess of authorization).

*Louis Vuitton* makes clear a service provider need only withdraw services from *direct infringers*. 658 F.3d at 942. Flixya is not a direct infringer. *See Flava Works, Inc. v. Gunter*, 689 F. 3d 754, 758 (7th Cir. 2012) ("The infringers are *the uploaders* of copyrighted work."). ALS doesn't dispute this either. *See*, *e.g.*, Dkt. 297, 23:1-2 (arguing mistakenly 17 U.S.C. § 512(i) encompasses repeat contributory infringers) (JLA Decl. Ex. B, Penn Dep. 64:13-65:11; 72:10-24). For these reasons ALS's theory of the case regarding Steadfast's contributory copyright and trademark infringement should be rejected and summary judgment denied.

### A.    Flixya was neither a direct infringer nor a contributory infringer

It is undisputed that Flixya did not directly infringe copyright. "[t]he

11

infringers are *the uploaders* of copyrighted work." *Flava Works, Inc.*, 689 F. 3d at 758 (emphasis added); *id.* at 757 ("The infringer is the customer of Flava who copied Flava's copyrighted video by uploading it to the Internet."). The facts in the record *also* demonstrate that Flixya was not a contributory infringer. Indeed, Flixya posted the required DMCA information on imagebam.com, had users agree to the terms of service, and informed users that his or her account will be terminated (JLA Decl. Ex. O, KZ Dep. 24:2-27:24, Exhs. Q & R). Flixya also had a system for removing unauthorized content, responding to DMCA notifications, removing content, and terminating repeat infringers (JLA Decl. Ex. O, KZ Dep. 24:2-27:24, Exhs. Q & R). If Flixya was neither a direct infringer nor a contributory infringer, how is it possible for Steadfast to be one? If one follows ALS's theory it could hold any company that is copied on a DMCA notice as contributory liable even if their client followed the rules of the DMCA.

   **B.**     **Genuine Dispute about Knowledge of Specific Infringements Exists**

        Even if the Court accepted ALS's theory, there is still a genuine dispute of material fact concerning Steadfast's knowledge that specific ALS images were available on the Flixya-leased servers. First, Easton's notifications did not comply with the DMCA, and thus were insufficient to impute actual knowledge. Second, such notifications only raise a general awareness. ALS, through Eric Penn, has admitted Steadfast would not have specific knowledge of infringement (JLA Decl. Ex. B Penn 09/13/17 Dep. 62:16-64:11; 77:9-77:19; 81:9-81:17; 86:5-86:12;

93:15-22; 105:18-25; 109:6-13: 116:23-117:3).

A general awareness is simply not enough, as stated in *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 183590, at *21-22 (C.D. Cal. Nov. 14, 2014):

> Equally as important, however, is that "general awareness that infringement may be occurring" is usually irrelevant to the specific question of whether a particular defendant violated a particular copyright held by a particular plaintiff. . . . This is because "merely hosting a category of copyrightable content, such as music videos, with the general knowledge that one's services could be used to share infringing material, is insufficient to meet the actual knowledge requirement ... ." *UMG Recordings*, 718 F.3d at 1022.

## C.       Steadfast took actions to disable the allegedly infringing material

Even assuming Easton's notifications gave Steadfast sufficient knowledge, Steadfast took direct and immediate actions which resulted in the complete removal of the allegedly infringing images on Flixya's Imagebam.com website. Once Easton sent his legally insufficient notices to Steadfast, Steadfast immediately forwarded the notices to Flixya (Stange Decl. ¶ 8 JLA Decl. Ex. O KZ Dep. 86:23-87:9). In turn, Flixya disabled access to the allegedly infringing works that were hosted on imagebam.com (JLA Decl. Ex. C Easton 09/06/17 Dep. 36:22-37:4). Indeed, <u>all</u> of the allegedly infringing images were removed, and were no longer accessible on imagebam.com (*Id.*). Thus, Steadfast did not "continue to

provide access" to the specific infringing material.

### D. ALS's Contributory Trademark Infringement Claims Lack Merit

ALS has no evidence that Steadfast was contributorily liable for trademark infringement. "For liability to attach, there must be 'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). As shown above, ALS's reliance on *Louis Vuitton* leads to its argument's demise. Steadfast could not control or monitor the Flixya-leased server, including how Flixya operated, controlled, and managed imagebam.com or its users.

## II. ALS DID NOT PROVIDE STEADFAST WITH DMCA-COMPLIANT NOTIFICATIONS PURSUANT TO § 512(C)(3)(A)

ALS's arguments are premised on the faulty assumption that it provided Steadfast with DMCA-compliant notifications pursuant to § 512(c)(3)(A). To be effective, a copyright holder's "notification of claimed infringement **must** [1] be a written communication [2] provided to the *designated agent of a service provider* that [3] includes substantially the [elements listed in § 512(c)(3)(A)(i)-(vi)]." 17 U.S.C. § 512(c)(3)(A) (emphasis added). Unlike the requirement needing substantial compliance with the elements listed in § 512(c)(3)(A)(i)-(vi), a copyright holder has "no such leeway" with the basic requirement **that the notice be provided to the service provider's designated agent**. Nimmer on Copyright § 12B.04 (2017).

The reasoning in *Perfect 10, Inc. v. Amazon.com, Inc.* is instructive. No. CV

14

05-4753 AHM (SHx), 2009 U.S. Dist. LEXIS 42341, at *18 (C.D. Cal. May 12, 2009). There, Perfect 10 sent DMCA notices only to Amazon, and then it sued Amazon and Amazon's subsidiary, A9. *Id.* at *1-2. A9 argued that Perfect 10's notices were ineffective because the notices were improperly sent to Amazon. *Id.* at *15. The court agreed, finding that Perfect 10 "cite[d] no authority that would require one ISP, by virtue of its ownership or hosting of another ISP, to pass along a DMCA notice, where the two ISPs are *distinct corporate entities* and, more importantly, have *each properly designated* its own copyright agent." *Id.* at *17-18 (emphasis added).

Here, Easton allegedly found infringing images on Flixya's Imagebam.com, which is an image host, and thus a "service provider" under § 512(k)(1)(B). In compliance with § 512(c)(2), Flixya was the designated an agent for Imagebam.com with the Copyright Office and conspicuously posted the necessary DMCA-agent information on its website (JLA Decl. Exs. Q and R, Penn 09/13/2017 Dep. Exs. 6 & 10). Neither source of information mentions Steadfast (*Id.*). *Thus, as a matter of law, Steadfast is not the "designated agent" for Imagebam.com*. Because ALS failed to provide notice to the "*designated agent* of a service provider" under § 512(c)(3)(A), ALS's notices to Steadfast are ineffective as a matter of law. *See* Nimmer § 12B.04 (notice "which is not served on the service provider's designated agent" is a "nullity.").

Alternatively, ALS's notifications to Steadfast failed to substantially comply

with the elements listed in § 512(c)(3)(A)(i)-(vi). *See Perfect 10, Inc. v. CCBill*, 488 F.3d 1102, 1112 (9th Cir. 2007) ("[S]ubstantial compliance means substantial compliance with *all* of § 512(c)(3)'s clauses, not just some of them."). First, ALS failed to substantially comply with § 512(c)(3)(A)(ii) because ALS neither identified nor provided a list of works *made accessible through Steadfast's website* (KZ Decl. ¶34; Stange Decl. ¶11). Second, ALS failed to substantially comply with § 512(c)(3)(A)(iii) because ALS did not provide Steadfast with reasonably sufficient information to locate the allegedly infringing material (JLA Decl. Ex. O KZ Dep. 45:6-24). Steadfast could not remove the material on its servers without breaking the law. 17 U.S.C. § 512(m)(2); 18 U.S.C. § 1030 (prohibiting accessing a computer without or in excess of authorization). Because ALS's notices failed to substantially comply with *all* of § 512(c)(3)(A) the notices are ineffective as a matter of law.

What now? ALS's improper legal and factual assumptions result in a domino effect. First, ALS's argument that Steadfast failed to "act" or "respond" under § 512(c)(1)(A)(iii) and § 512(c)(1)(C) crumbles. Section 512(c)(3)(B)(ii) provides an "exclusionary rule" that prohibits the consideration of ineffective notices. As a result, "[a] service provider's obligation to remove infringing material is not triggered unless the copyright holder provides a notice that complies with § 512(c)(3)(A)." *Perfect 10, Inc. v. Giganews, Inc.*, 993 F. Supp. 2d 1192, 1198 (C.D. Cal. 2014). Even though Steadfast did "act" upon and "respond[ed]" to

16

ALS's notifications, such actions were not required because its duty to act or respond was never triggered. *See id.* In sum, ALS's challenge to § 512(c)(1)(A)(iii) and § 512(c)(1)(C) fall.

Second, and most importantly, when notices are deemed ineffective, such notices "do[] not raise a genuine issue of material fact that [a service provider] failed to reasonably implement a repeat infringer policy with the meaning of § 512(i)(1)(A)." *CCBill*, 488 F.3d at 1113. In other words, ineffective notices are "excluded" from the "reasonably implemented" analysis, too. Here, the crux of ALS's argument is that the "sheer number of infringement notifications pertaining to imagebam.com should have caused Steadfast to terminate the account for that site and remove the site from its servers" (Dkt. 297, p. 21). Because ALS's notification to Steadfast in regards to Imagebam.com are excluded as immaterial, this leaves ALS with absolutely no evidence supporting its claim that Steadfast did not reasonably implement its repeat infringer policy under § 512(i)(1)(A). On this point alone, the Court should find in Steadfast's favor regarding the safe harbor defense.

## III.   STEADFAST SATISFIES EACH ELEMENT OF THE DMCA

Even if the Court holds that ALS's notifications are effective as a matter of law, the facts ALS sets forth do not support a ruling in ALS's favor regarding Steadfast's safe harbor defense. Instead, Steadfast submits that the facts actually support the conclusion that it satisfies each element challenged by ALS. Section

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

512(c) protects eligible service providers from all monetary relief "for infringement of copyright by reason of the storage [of material] at the direction of a user." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017) (quoting 17 U.S.C. § 512(c)). To qualify for the § 512(c) protection, a service provider must satisfy several elements. Steadfast addresses each element in turn.

**A.      Steadfast both responded and acted per the DMCA**

Steadfast sufficiently acted and responded pursuant to both § 512(c)(1)(A)(iii) and § 512(c)(1)(C). Steadfast "d[id] something" in response to each of Easton's notices (Stange Decl. ¶ 10; JLA Decl. Ex. O KZ Dep. 45:6-24). In response to Easton's notices, Steadfast immediately forwarded the notices to Flixya, which resulted in the removal of the material or the material's accessibility being disabled (JLA Decl. Ex. C Easton Dep. 28:25-29:3). Steadfast engaged in the <u>activity</u> of forwarding notices to Flixya with the goal of removing the material (JLA Decl. Ex. C Easton Dep. 32:22-23). Steadfast's actions resulted in the removal of the alleged infringing ALS content, which ALS acknowledges. (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

ALS's claim Steadfast "did nothing," "did not 'act,'" and "did not respond" (*see* Dkt. 297, 15:7-8) is simply wrong. The removal of the alleged infringing ALS content was not the result of magic but instead was the result of actions taken by

18

Steadfast and Flixya. Steadfast acted above and beyond the requirements of § 512(c)(1)(C). Steadfast had a ticketing system which monitored all incoming DMCA notifications and set up procedures to follow up on all received notices to ensure compliance by their clients (Decl. Stange ¶¶3-9).

Moreover, ALS's manipulation of case law should not be accepted by this court. The DMCA does not require service providers to proactively seek out and remove or disable allegedly infringing material. Indeed, ALS provides no precedent to support such a position. Such a position runs contrary to Congress' intent to have cooperation <u>among</u> service providers and copyright holders. By forwarding Easton's non-compliant DMCA notices, Steadfast cooperated with Flixya even when it was not required to with the end goal of removing the infringing material, just as Congress intended for in such a situation. ALS's claim that Steadfast should have conducted further investigation into how Flixya was responding to infringement notifications has no basis in law. Steadfast's actions were more than sufficient, thus this Court should deny ALS's motion.

## IV.   STEADFAST SATISFIES 17 U.S.C. § 512(i)

ALS wrongly claims Steadfast is not entitled to the § 512(c) protections because Steadfast is unable to satisfy the conditions of § 512(i). Based on the facts presented, this Court should deny ALS's motion and find that Steadfast satisfies 17 U.S.C. § 512(i), or at a minimum find that genuine disputes of fact remain.

Section § 512(i)(1)(A) requires service providers to: "(1) adopt a policy that

provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implement that policy in a reasonable manner; and (3) inform its subscribers of the policy." *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) (citing 17 U.S.C. § 512(i)(1)(A)).

### A. Steadfast adopted and informed its users of its policy

Steadfast adopted a sufficient policy: "This document clearly outlines procedures and restrictions for all clients. . . . [W]e will not tolerate any unlawful activity or abuse on our servers. . . . In the absence of any other Agreement, you will have accepted this Policy and these Terms and be bound by them if you use any of the services offered by Steadfast ("Services"). . . . We reserve the right to refuse service to anyone for any reason not prohibited by law. Also **we reserve the right to terminate service to any client for any reason not prohibited by law**. . . . Transmission, storage, or presentation of any information, data or material in violation of any American law is prohibited. **This includes, but is not limited to: copyrighted material, trademark, intellectual property**, material that promotes any illegal activity. . . . Any illegal activity may result in your site being suspended immediately, without notification." (Decl. of KZ ¶6, Ex. A) (emphasis added).

Steadfast requires its clients to accept these terms and conditions (*Id.* at ¶6). This agreement is also posted on its website (*Id.* at ¶7). Steadfast reserves the right to terminate any client for any violation not prohibit by law, including copyright

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

and trademark infringement (*Id.* at Ex. A). Steadfast's policy "goes beyond the threshold requirement of DMCA by communicating a policy to its users that allows for termination for any infringement." *Hempton v. Pond5, Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830, at *19 (W.D. Wash. Oct. 25, 2016).

ALS grumbles that the Agreement: "said nothing about what Steadfast would or could do in response to a notice of copyright infringement;" made "on [sic] reference to 'repeat infringers[;]'" "did not inform account holders of the criterion by which Steadfast would determine an account holder to be a repeat infringer or terminate services" (Dkt. 297, p. 17:25-18:5). But this identical complaint was considered and rejected in *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1100 (W.D. Wash. 2004). Contrary to ALS's claims, Steadfast adopted and informed users of a policy which provides for the termination of repeat infringers, and thus satisfies that requirement of § 512(i)(1)(A).

**B.      Steadfast has reasonably implemented its repeat infringer policy**

To satisfy § 512(i)(1)(A), a service provider must show that its repeat infringer policy is "reasonably implemented." In *CCBill*, the Ninth Circuit split the inquiry into two: "implementation" and "reasonableness." 488 F.3d at 1109-1115. Here, it is undisputed that Steadfast meets the "implementation" standard, as set out in *CCBill*.[1] What's left is the reasonableness inquiry; in other words, whether

---

[1] ALS recites the standard for "implementation" as set out in *CCBill* but does not

Steadfast implemented its repeat infringer policy *reasonably*.

The DMCA "permits service providers to implement a variety of procedures, but an implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright." *CCBill*, 488 F.3d at 1109. In other words, a "service provider reasonably implements its repeat infringer policy if it terminates users when 'appropriate.'" *Id.* at 1111. "Section 512(i) itself does not clarify when it is 'appropriate' for service providers to act. It only requires that a service provider terminate users who are 'repeat infringers.'" *Id.* Additionally, notices that do not satisfy § 512(c)(3) have no bearing on whether a defendant reasonably implemented their repeat infringer policies. *Id.* at 1113.

Steadfast satisfies this element for the following reasons, taken independently and together: First, as stated above, because Easton's notices did not comply with § 512(c)(3), such notices do not support ALS's claim that Steadfast failed to reasonably implement its repeat infringer policy. Steadfast also is (i) not aware of any repeat infringers, and (ii) an "appropriate circumstance" to terminate a user does not include terminating a user who follows the law.

   1.   *Steadfast is not aware of any repeat infringers*

---

challenge Steadfast's ability to satisfy the "implementation" standard. See Dkt. 297, p. 19-24(ALS raising no challenge). Steadfast had a working notification system; a procedure for dealing with DMCA notifications; did not prevent copyright holders from collecting information to issue notifications (Stange Decl. ¶¶ 4-10).

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Because Steadfast has had no situations involving repeat infringers, ALS

2    cannot claim it has not reasonably implemented its repeat infringer policy. The

3    Ninth Circuit has heard Congress loud and clear: the DMCA does not require

4    Steadfast to seek out repeat infringers with hopes that such evidence will one day

5    help it establish the safe harbor defense. *See Shelter Capital Partners LLC*, 718

6    F.3d at 1029 ("§ 512(m) provides that § 512(c)'s safe harbor protection may not be

7

8    conditioned on 'a service provider monitoring its service or affirmatively seeking

9    facts indicating infringing activity").

10

11        ALS also attempts to rewrite § 512(i)(1)(A), claiming that Congress

12   intended this provision to include either repeat direct infringers or repeat

13   contributory infringers (Dkt. 297, 23:1-4). The DMCA's structure does not support

14   this interpretation. Congress did not intend for a copyright holder to "go after"

15   either an alleged contributory infringer of a contributory infringer, or a service

16

17   provider's service provider. Neither the law, nor the facts support ALS's position.

18   There is no evidence that Steadfast failed to terminate a repeat infringer.

19

20        ALS incorrectly argues that Flixya was a repeat infringer, and thus should

21   have been terminated by Steadfast. Flixya was not the repeat infringer. ALS,

22

23   however, does not argue that Steadfast should have terminated Flixya because it

24   "repeatedly or blatantly infringe[d] copyright" *CCBill*, 488 F.3d at 1109. Instead,

25   ALS argues that "at some point the sheer number of infringement notifications …

26

27   should have caused Steadfast to terminate" Flixya (Dkt. 297, 21:23-26). Since

28

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2013 Steadfast received an average of 28 notices per month (albeit deficient notices under the DMCA) regarding images on Flixya's Imagebam.com. For the years 2016 and 2017 the number of notices actually decreased to 21 per month. (JLA Decl. Ex. P Steadfast's Response to Plaintiff's Second Special Interrogatories). Further, the number of notices sent to Steadfast does not prove that Flixya is a repeat infringer. *Corbis Corp*, 351 F. Supp. 2d at 1105 (noting "such notices are not the <u>sine qua non</u> of copyright liability"); *id.* at 1104 (a service provider "need not conduct active investigation of possible infringement or make a decision regarding difficult infringement issues"). Indeed, the number of notices received from ALS were miniscule especially compared to other service providers such as Google which receives 75,000,000 DMCA notices a month (JLA Decl. Ex. S). This is the Internet world we live in today.

> 2. *An "appropriate circumstance" to terminate a user does not include terminating a user who follows the law*

Here, the facts in the record demonstrate that Flixya did not blatantly infringe copyright. Rather, the facts show that Flixya complied with the DMCA. Flixya posted the required DMCA information on its imagebam.com website, had users agree to the terms of service, and informed users that his or her account will be terminated (JLA Decl. Ex. B, Penn Dep. 50:17-52:6; Ex. O, KZ Dep. 24:2-27:24, Ex. R). Flixya also had an automated system for removing unauthorized content, responded to DMCA notifications, removed content, and terminated repeat infringers (JLA Decl. Ex. O, KZ Dep. pp 24:2-27:24). Again, a "service

provider reasonably implements its repeat infringer policy if it terminates users when 'appropriate.'" *CCBill*, 488 F.3d at 1111. Appropriate cannot mean terminating users who comply with the law.

The facts show that Steadfast reasonably implemented its repeat infringer policy, and thus satisfies § 512(i)(1)(A). Summary judgment in favor of ALS would be improper.

## CONCLUSION

For the foregoing reasons, this Court should deny ALS's motion for partial summary judgment. As demonstrated here, ALS's arguments, that Steadfast is liable for contributory copyright and trademark infringement, lack merit. As a result, ALS's suit against Steadfast is a waste of judicial resources. Steadfast respectfully requests that this Court uses its power to enter summary judgment *sua sponte* pursuant to Federal Rule of Civil Procedure 56(f) on ALS's contributory copyright and trademark infringement claims, Steadfast's contention that ALS's notices were not effective under the DMCA, and any other relief that this Court deems just. *See Celotex Corp.*, 477 U.S. at 326; *see also* Fed. R. Civ. P. 56(f).

JOHN L. AMBROGI
COLIN T.J. O'BRIEN
PARTRIDGE PARTNERS, P.C.

PAUL D. SUPNIK

Dated: December 14, 2017          By: s/John L. Ambrogi
                                  John L. Ambrogi
                                  Attorneys for Steadfast Networks, LLC

25

## <u>PROOF OF SERVICE</u>

I, John L. Ambrogi, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **STEADFAST NETWORKS LLC'S RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT** was served via electronic filing to the following parties in this action via their counsel:

> ALS Scan, Inc.
> Cloudflare, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

 I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: December 14, 2017      s/John L. Ambrogi
              Attorney for Defendant
              Steadfast Networks LLC