Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE LAW GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

John P. Flynn (Az. Bar No. 015065)
Kevin D. Neal (Az. Bar No. 011640)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
(602) 530-8500 (fax)
john.flynn@gknet.com
kevin.neal@gknet.com

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**PLAINTIFF'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT STEADFAST NETWORKS, LLC**<br><br>Date: February 1, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br>350 W. 1st Street<br>Los Angeles, CA |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1a.[1]  ALS produces high quality proprietary adult content. | Disputed that ALS produces high quality adult content as the term "high quality" is just opinion.  ALS produces niche porn that focuses on exclusively small breasted, skinny models with toy insertions (John L. Ambrogi ("JLA") Declaration Ex. A, Walsh Deposition pp 18 lines 12 -24). This niche focus on young models has been described by ALS Scan as schoolgirls porn (JLA Declaration Ex. D Penn 09/07/17 Deposition pps 170 lines 6-24).  ALS Scan's agent Steve Easton does not view ALS's work as high quality as its sole purpose is to sell sex (JLA Declaration Ex. E Easton 07/28/17 Deposition pp 202 lines1 - 21). |
| 1a.  Moving Party's Response<br><br>The adjective that applies to ALS's copyrighted content is immaterial. Steadfast does not dispute that ALS produces proprietary copyrighted adult content. | |

[1]  The paragraph numbering in Steadfast's Statement of Genuine Issues is confusing.  ALS's Statement had <u>twenty-five</u> undisputed facts, Doc. 296-2. Steadfast broke some of those down into separate parts and renumbered ALS's paragraphs so that they now total <u>forty-three</u>.  For example, Steadfast took ALS's first paragraph and broke it out into three separate rows, one for each sentence.  The separate numbering of each row results in the number of paragraphs changing from twenty-five to forty-three.  Here, ALS sticks to its original numbering of twenty-five paragraphs.  Where Steadfast took a single paragraph and broke it out into separate rows, ALS here numbers those rows "1a., 1b., 1c." etc.

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.b.  ALS has registered its works with the Copyright Office.  (Walsh Decl. ¶¶ 2, 3; Third Amended Complaint ["TAC"] Ex. 1.) | Admitted that ALS Scan has, in some instances, registered some of its works with the Copyright Office.  Disputed that it has registered all of its work with the Copyright Office.  ALS has admitted that it ceased applying for copyright registration for the period 2004 to 2015 (JLA Declaration Ex. A Walsh Deposition pp 42:19 to 43:9).  It is unclear whether all the images at issue here have been registered. |

1b.  Moving Party's Response

Steadfast did not controvert that the registrations described by Sarah Walsh and listed as Exhibit 1 of the TAC are in fact registrations of ALS's copyrighted works.  Steadfast's theory, without evidence, that the registrations may not cover "all" of ALS's works is immaterial.

| 1.c.  ALS's content is available on secure web pages, access to which is exclusive to paying members of ALS's websites, alsangels.com and alsscan.com. | Disputed that ALS's content is on secure webpages (JLA Declaration ¶ 10 Exhibit H).  Further access to much of ALS's content is not exclusive to its members (JLA Declaration ¶¶8-10 Exhibit G).  ALS has admitted its content can be downloaded for free by non-members. (Declaration Exhibit B Penn 09/13/17 Deposition pp 61-62). |

1.c.  Moving Party's Response

ALS did not say that its content is <u>only</u> on secure pages accessible to paying members.  The Ambrogi declaration attaches two screen captures from the public "Home Page" of ALS Scan that has a limited selection of publicly available sample shots.   Penn Reply Decl. ¶¶ 2-3.  The Penn testimony is

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| misrepresented. He said that ALS offers "promotional galleries that contain a limited sampling of images that are viewable for free." 61:12-17. Mr. Penn did not say ALS provides a feature to download the promotional content. He said that any image on the Internet can be captured with a right click or screen capture. 61:18-62:7. | |
| 2.a. ALS is also owner of the registered mark "ALS Scan" in connection with web sites and multimedia materials featuring adult entertainment. | Admitted that ALS is an owner of a registered mark "ALS SCAN." Disputed to the extent that it inaccurately describes the actual services that ALS offers. |
| 2.a.. Moving Party's Response<br><br>What's the inaccuracy and where is the evidence of inaccuracy? The undisputed testimony is that the ALS Scan mark appears on its content on web sites. | |
| 2.b. ALS content always displays ALS's registered "ALS Scan" trademark. | Disputed, ALS content does not always display the ALS Scan trademark (JLA Declaration ¶¶7-9 Exhibits F and G). |
| 2.b. Moving Party's Response<br><br>Steadfast captured an image from the free tour page, one that has a different aspect ratio than the images in the members' pages. The same image taken from the members' area shows the "ALS Scan" mark in the lower right. Penn Reply Decl. ¶¶ 3, 4, Ex. B. | |
| 2.c. Thus, unlawful display of an infringing ALS image infringes both ALS's copyrights and trademark rights. (Walsh Decl. ¶ 4; TAC Ex. 2.) | Disputed, to the extent that this statement is meant to apply to this specific case, but admitted to the extent it is a general conclusion of law. Disputing further, ALS allows numerous individuals and companies to display and download its content |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| | (Declaration Exhibit B Penn 09/13/17 Deposition pp 61-62). Moreover, since not all ALS images use ALS's trademark, this statement is false. See Response to number 5 above. |
| 2.c.  Moving Party's Response<br><br>Steadfast has no evidence that ALS's doesn't own the copyright to its content or that ALS gives it all away for free.  The statement that "ALS allows numerous individuals and companies to display and download its content" is an abject misrepresentation of the Penn testimony.  He said that ALS offers "promotional galleries that contain a limited sampling of images that are viewable for free." 61:12-17.  Mr. Penn did not say ALS provides a feature to download the promotional content.  He said that any image on the Internet can be captured with a right click or screen capture.  61:18-62:7.  Steadfast is mistaken that the sample photo it took from the free home page lacks the trademark as displayed in the members' area.    Penn Reply Decl. ¶¶ 3, 4, Ex. B. | |
| 3.  ALS's largest business problem is the ubiquitous availability of infringing ALS content on Internet sites with no apparent function other than to provide storage on servers to entire galleries of stolen adult content – "pirate" sites. (Walsh Decl. ¶¶ 5-7.) | Disputed as to what ALS's largest business problem is.  ALS is a niche website that focuses on schoolgirl porn with an emphasis on insertions Despite its niche content ALS has many competitors including Nubiles.net; club17.com; ftvgirls.com in the same niche; Further ALS's business model namely a pay site model was created before the proliferation of free sites with adverting such as pornhub.com, tube8.com, xhamster.com and redtube.com have become the most popular way to access pornographic images.<br>(JLA Declaration Exhibit A Walsh |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Deposition pp 18:12 – 20:5; JLA Exhibit D Penn 09/07/17 Deposition pps 170 lines 6-24, 171:2 – 175:6). See also responses to number 3, 8 and 9. |

3.  Moving Party's Response

Steadfast did not controvert ALS's assessment that infringement is its <u>largest</u> business problem.  ALS did not say that it was free from all competition in the marketplace or that the market has no alternatives to subscription-based websites like ALS.

| | |
|---|---|
| 4.  ALS has observed an endless loop of systematic infringement: 1) within hours after ALS posts a new content gallery on its secure webpages a stolen copy of the entire gallery is displayed for free on a pirate site; 2) adult "fan" forums (e.g. vipergirls.to) provide surfers with links to the free stolen ALS galleries; 3) infringing content on the pirate sites is juxtaposed with advertisements placed by ad brokers who pay for clicks or joins; 4) ALS sends notice(s) of infringing content on the pirate site and, sometimes, the infringing content is taken down; but 5) that gallery or another stolen ALS gallery appears on another page of the same pirate site shortly thereafter; and 6) the cycle continues endlessly. (Walsh Decl. ¶ 8.) | Disputed.  While ALS claims to see systematic infringement for years it took only the bare minimum of effort to police its content.  ALS never used digital rights protection mechanisms known as DRM; software.  ALS never prevented its members from downloading all of its content; never attempted to determine which of its members were posting its content on the adult fan forums.  In fact, ALS admits its "practice was never to use any sort of technology or tracking to see an image come off of our server and then follow it as that user took it and you know, tried to disseminate it elsewhere." The only thing that ALS did was to hire Steve Easton for a flat fee to send DMCA notices.  Mr. Easton did not have any quota of notices to send nor did ALS hire anybody else to assist with the takedown of images (JLA |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | Declaration Exhibit A Walsh Deposition pp 26:16-27:pp 34:12-35:22; Exhibit B Penn 09/13/17 Deposition pps 96 lines 18-22, 100 lines 3-7; ). |

4.  Moving Party's Response

Steadfast did not controvert what ALS has observed.  Instead, it added new facts that don't materially controvert ALS's motion.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case.  He said that he was not aware of any adult content provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member.  In any event, Steadfast has no evidence or authority that ALS loses its rights under the Copyright law because ALS is not using technology that Steadfast insists it should employ.

| 5.  Providing notice of infringement to, and seeking to hold parties responsible for, infringing activity is a time consuming, expensive and fraught endeavor.  ALS pays an agent, Steve Easton, to observe and send notices of infringement on ALS's behalf.  However, even where a pirate site complies with a takedown notice, other infringing ALS content appears on the same site.  ALS gives notice where it can to companies providing services to the pirate sites, such as storage of the pirate sites on servers, but too often the service providers decline to terminate services.  Thus, ALS is forced to play | Disputed, ALS has only paid Steve Easton a flat fee each year for the past 15 years (JLA Declaration Exhibit A Walsh Deposition pp 34:12-35:22). Further, ALS has admitted that its number of paid subscribers is low. (JLA Declaration Exhibit A Walsh Deposition pp 23 lines 2-3).  ALS is aware that some of its paid subscribers are meting out its copyrighted images but it has never bothered to determine which members were responsible for these activities (JLA Declaration Exhibit A Walsh Deposition pp 23:18 to 25:11).  Further, despite knowing that its paid |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| an endless game of "whack-a-mole" with no abatement in infringement of its content.  (Walsh Decl. ¶ 9.) | subscribers were violating its terms and conditions ALS never terminated any memberships (JLA Declaration Exhibit B Penn 09/13/17 Deposition pps. 98:10 to 100:8). Lastly ALS was aware that individuals (the "moles"), more than likely ALS paid subscribers, were uploading the ALS content to the fan forums but ALS never tried to stop them. Ambrogi Declaration Exhibit B (Penn 09/13/17 Deposition pps. 94:8 to 97:2). |
| 5.  Moving Party's Response<br><br>Steadfast did not controvert ALS's testimony, but added additional facts that do not warrant denial of ALS's motion.  ALS pays Steve Easton what it can afford to pay.  Sarah Walsh did not say that the number of ALS subscribers is "low."  Walsh Depo. 23:2-3.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case.  He said that he was not aware of any adult content provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member. ||
| 6.  Imagebam.com has frequently stored and displayed infringing galleries of ALS content. From December 26, 2013 through June 22, 2017 Steve Easton sent 853 notices of infringement to imagebam.com and Steadfast of infringing content belonging to ALS or other of Steve | Disputed, Easton sent 853 Notices to Imagebam and cc'd Steadfast.  All the notices were handled directly by Imagebam.  ALS has admitted that Imagebam had a method that allowed copyright owners to provide notice of infringement (JLA Declaration Exhibit J).  Steadfast further disputes |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| Easton's adult clients that was reproduced, displayed and distributed without authority on imagebam.com. (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Ex. 1; Walsh Decl.¶¶ 10, 11.) Of those notices from Easton, 185 gave notice of copyright and trademark infringement pertaining to ALS's content. (*Id.*) A single email often gave notice of infringement of dozens, if not two hundred or more, copyrighted works. (*Id.*) | the remainder of this paragraph as there is no evidence in the record regarding the content of Mr. Easton's other clients; nor is there evidence showing which content belonging to ALS was infringed. Ambrogi Declaration Exhibit C Easton 09/06/17 Deposition pp 36:3 to 38:4; Exhibit B Penn 09/13/17 Deposition 56:6 to 57:24). Disputed as to the validity of these notices. Steadfast is not Imagebam.com's designated agent, thus all notices sent to Steadfast in regards to imagebam.com were ineffective under the DMCA. |

6. Moving Party's Response

Steadfast admitted the number and receipt of the notifications. ALS's paragraph did not address relative responsibility to "handle" the notices or legal sufficiency of the notifications. Steadfast's complaint that "there is no evidence in the record regarding the content of Mr. Easton's other clients" is unintelligible. All of the Easton notices, in respect of ALS content and the content of other copyright owners, is on the disc submitted with the Notice of Manual Filing. Easton said in his declaration that he represents and send notices for other copyright owners.

| 7. Steadfast admitted to receiving a total of 1,517 notifications of infringement on imagebam.com since 2013. (Spillane Decl. ¶ 2, Ex. 1, Response to Interrogatory 13.) | Disputed, Steadfast received 1517 notices regarding Imagebam. However, the mere receipt of a DMCA notice does not constitute proof of infringement. See, 17 U.S.C. § 512(c)(3), such notices are not the <u>sine qua non</u> of copyright liability. See Ellison, 357 F.3d at 1077 (claims for on-line copyright infringement are |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| | evaluated just as they would be in the non-online world)." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1105 (W.D. Wash. 2004). Disputed, Steadfast disputes the validity of such notices. The notices failed to comply with the DMCA. Steadfast was not Imagebam.com's designated agent, and thus these notices are ineffective under the DMCA. |

7. Moving Party's Response

ALS directly quoted Steadfast's interrogatory response.  Steadfast is contesting the legal effect of the notices, not the accuracy of the undisputed fact.

| 8.a.  Imagebam.com has been one of the worst sites in terms of regularly displaying entire galleries of infringing ALS works | Disputed.  ALS did not provide any examples of entire galleries of ALS works downloaded on Imagebam.com (JLA Declaration Exhibit C Easton 09/06/17 Deposition pp 36:3 to 38:4; Exhibit B Penn 09/13/17 Deposition 56:6 to 57:24).  Further, Steadfast has not offered any services to Flyxia since June 21, 2017 and the Imagebam.com website has been sold to a different entity that is not a customer of Steadfast (Karl Zimmerman Declaration ¶¶ 35-37). Thus, several exhibits submitted by Eric Penn are not relevant to the claims against Steadfast because the exhibits were created 5 months after Steadfast ceased offering services. |

ALS MSJ – Steadfast – Response to Genuine Disputes

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| **8.a.  Moving Party's Response**<br><br>Steadfast provides no evidence which sites have presented ALS with the worst infringement problems, none to controvert the assertion that imagebam.com has been one of the worst.  The Penn Declaration provided numerous screen captures of infringement notices to Steadfast regarding ALS content on imagebam.com, together with exemplary captures of infringing ALS content on imagebam.com.  Penn Decl. ¶¶ 4-7, Exs. 1-19.  Steadfast quarrels with the legal effect of the notices, not the accuracy of the facts. | |
| **8.b.**  While imagebam.com apparently claims to be a content neutral share site for third-party uploaded content, thus claiming the privileges of the DMCA, even a short time looking at imagebam.com reveals key attributes of "pirate" sites, ones primarily dedicated to storing galleries of infringing adult content – "red flags" of infringement.  ["In short, these sites are tooled to maximize upload of high volumes of alluring content while minimizing consequences to users uploading content without authority.  More specifically, imagebam.com, like other pirate sites: 1) offers alternative high volume upload capacities not typically offered on 'mainstream' content- share sites; 2) fails to offer limitations such that only friends or invitees may view content, but rather uploads all content to unsecure publicly viewable pages; 3) monetizes uploaded content through advertisements over, under and proximate to uploaded | Disputed, as to what imagebam.com apparently claims to be, the contents of Imagebam.com's website speaks for itself (JLA Declaration Ex. Q).  Courts have defined pirate sites as sites that are "obviously infringing because they typically use words such as 'pirate,' 'bootleg' or slang terms in their URL and header information to make their illegal purpose obvious." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1109 (W.D. Wash. 2004). Disputed as to ALS's self made-up key attributes. ALS through the testimony of Eric Penn, admits that the Imagebam.com website does not advertise in any way for uploaders to make money (JLA Declaration Exhibit B Penn 09/13/17 Deposition 34:3 to 34:14; 36:4 to 36:6; 43:16 to 43:19). Furthermore, nothing about the imagebam.com URL elicits the terms pirate, bootleg, or slang terms (JLA Declaration Exhibit Q). Upon viewing |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| content, ads that do not direct traffic to the copyright owner; 4) provides code or hyperlinks that can be quickly used to publish the location of the imagebam.com page on adult 'fan' forums, sites offering links to free stolen adult content galleries; 5) require no verifiable personal information to upload content and have weak ability to track and terminate users; and 6) fail to display information indicating compliance with 18 USC § 2257, requiring record keeping of the age of models appearing in adult content."][2] | imagebam.com, nothing about the website makes it appear like it has an obviously illegal purpose (JLA Declaration Exhibit Q Penn 09/13/17 Depo. Ex. 6). |
| 8.b.  Moving Party's Response<br><br>Steadfast did not dispute that imagebam.com has the six characteristics described in the Penn Declaration.  Steadfast suggested other facts not contained in ¶ 8 and disputed the legal conclusions drawn from the facts. | |
| 8.c.  In short, these sites are tooled to maximize upload of high volumes of alluring content while minimizing consequences to users uploading content without authority. | Disputed as to the term "alluring" as any picture can be uploaded to Imagebam.com. Disputed as to what qualifies as high volumes. Disputed as to this "fact" has no basis in the record. Disputed as to minimizing consequences for users because |

[2] Steadfast teased a sentence out of ¶ 8 of ALS's Statement to make this row, but the remainder of the paragraph is needed in order to understand the selected sentence.  The quoted portion in brackets is taken from the rest of ALS's ¶ 8.

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Flixya's imagebam.com made it clear that those who violate copyright laws would be terminated. Disputed as to knowing how imagebam.com is tooled; the website speaks for itself. See, (JLA Declaration Exhibit Q Penn 09/13/17 Depo. Ex. 6). |
| 8.c. Moving Party's Response<br><br>This sentence was teased out of the middle of ALS's ¶ 8.  The complete quote in in ¶ 8.b. above.  Steadfast did not dispute that imagebam.com has the six characteristics described in the Penn Declaration.  Steadfast suggested other facts not contained in ¶ 8 and disputed the legal conclusions drawn from the facts. | |
| 8.d.  More specifically, imagebam.com, like other pirate sites: 1) offers alternative high volume upload capacities not typically offered on "mainstream" content-share sites; 2) fails to offer limitations such that only friends or invitees may view content, but rather uploads all content to unsecure publicly viewable pages; 3) monetizes uploaded content through advertisements over, under and proximate to uploaded content, ads that do not direct traffic to the copyright owner; 4) provides code or hyperlinks that can be quickly used to publish the location of the imagebam.com page on adult "fan" forums, sites offering links to free stolen adult content galleries; 5) requires no verifiable personal information to upload content and has weak ability to track and terminate | Disputed, Eric Penn has no special qualifications which allows him to define what a pirate site is as he has not been qualified as an expert. Penn's statements are mere opinion. Further disputed, ALS did not provide any examples of entire galleries of ALS works downloaded on Imagbam. Further, Steadfast has not offered any services to Imagebam since June 2017.  Thus, several exhibits submitted by Eric Penn are not relevant to the claims against Steadfast because the exhibits were created 5 months after Steadfast ceased offering services.  Further, Imagebam.com is no longer owned by Flixya.  ALS, through Eric Penn, admits Imagebam.com allows users to post images onto Twitter and forums and blogs and eBay and Craigslist and |

- 12 -

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| users; and 6) fail to display information indicating compliance with 18 USC § 2257, requiring record keeping of the age of models appearing in adult content. (Penn Decl. ¶¶ 8-32, Exs. 20-22.) | Facebook all of which are legitimate uses (JLA Declaration Exhibit B Penn 09/13/17 Deposition 66:22 to 67:5). Lastly numerous third parties have acknowledged that Imagebam.com offers legitimate services (JLA Declaration Exhibits K to N). |
| 8.d.   Moving Party's Response<br><br>Steadfast did not dispute that imagebam.com has the six characteristics described in the Penn Declaration.  Steadfast suggested other facts not contained in ¶ 8 and disputed the legal conclusions drawn from the facts. | |
| 9.a.  Steadfast is a company providing Cloud Services, Dedicated Servers, Data Center Colocation, Disaster Recovery & Business Continuity, Managed Security and IT Consulting. www.steadfast.net; Spillane Decl. ¶ 3, Ex. 2.  . | Admitted as to what services Steadfast generally provides. |
| 9.b.  In the words of Karl Zimmerman, Managing Member of Steadfast, Steadfast provides "IT Infrastructure Services." Zimmerman Depo. pp. 12-13 | Admitted, as to the services Steadfast offers in general. As it relates to here, Steadfast leased Flixya dedicated servers (Zimmerman Declaration ¶ 19) |
| 10.  One of Steadfast's clients was Flixya Entertainment, which operated imagebam.com.  Flixya opened an account with Steadfast in July 2006.  Steadfast maintained the physical server.  Id. pp. 14. Flixya leased dedicated servers owned by Steadfast, on which was stored imagebam.com. | Disputed that Flixya *only* operated imagebam.com. Flixya leased, controlled, and operated the server, on which it operated, managed, and owned imagebam.com and the contents of the server, and possibly other websites (Zimmerman Declaration ¶¶ 13-22) |

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| ["Steadfast maintained the physical server."][3] | Admitted to the extent that 1) Flixya Entertainment was one of Steadfast's clients; 2) Flixya operated imagebam.com; and 3) Flixya opened an account with Steadfast in July 2006. As mentioned previously, that account closed on June 21, 2017 (Zimmerman Declaration ¶¶ 15-20, 35). |
| 10.  Moving Party's Response<br><br>Steadfast did not controvert any of ALS's facts.  ALS did not say that imagebam.com was Flixya's only operation, nor did ALS attempt to establish the date on which Flixya may have closed its account with Steadfast. | |
| 11.a.  Flixya leased three dedicated servers from Steadfast with 3 Terabyte upload capacities.  Flixya also purchased basic management services. Id. pp. 16-21, Exs. 1, 2. | Admitted that Flixya leased services. Answering further Steadfast leased servers to Flixya for a flat fee. It did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 14-31). |

---

[3] Steadfast omitted the bracketed sentence from ALS's ¶ 10.

| ALS Scan's Claimed Uncontroverted Facts and Supporting Evidence | Steadfast's Response to Cited Fact and Supporting Evidence |
|---|---|
| 11.a.  Moving Party's Response<br><br>Steadfast did not controvert ALS's asserted facts.  Steadfast offered other facts, none of which controvert the asserted facts. ||
| 11.b.  Steadfast is not aware of any sites Flixya placed on the servers leased from Steadfast other than imagebam.com.  Id. 22:6-9. | Admitted, further answering the Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya (Zimmerman Declaration ¶ 19). |
| 12.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  Id. pp. 30-31. | Admitted, further answering the Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya (Zimmerman Declaration ¶ 19). |
| 13.  In March 2007 Flixya raised a technical quarrel about the system performance they were obtaining from the servers provided and configured by Steadast.  Id. pp. 33-36, Ex. 4.  In the discussion Flixya said "Last night in just under ten hours 33,000 videos were uploaded without a single crash."  Id. 39:14-18, Ex. 4 STF 37844.  Mr. Zimmerman did not wonder why imagebam.com was uploading 33,000 videos.  Id. 39:19-21.  Steadfast did not ask what kind of videos were being uploaded.  Id. 40:1-3.  Flixya said that the technical issues had resulted in "decreased ad revenues."  Id. 40:8-18. | Disputed as to describing business communications as a quarrel. Further answering the Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya (Zimmerman Declaration ¶ 19). Disputed as to the assumption that such statement should cause Mr. Zimmerman to wonder.<br><br>All of this is irrelevant and hearsay. None of these "facts" go to any element of a claim or defense. |

| 13. Moving Party's Response |  |
|---|---|
| Steadfast did not controvert the disputed facts. Whether the conversation reflects a "quarrel" is a picayune quibble, not a controverted material fact. Steadfast offers other facts and questions the legal effect of the asserted fact. Karl Zimmerman did not contest the word "quarrel" when testifying to his discussions with Flixya. Zimmerman Depo. 33:9-13. |  |
| 14. Steadfast looked at imagebam.com and saw that advertisements were placed at the top of pages. Id. 40:19-41:1. Steadfast did not see the drop box indicating a choice to upload "adult" or "family friendly" content. Steadfast did not ask whether imagebam.com was receiving primarily adult content. Id. 41:19-42:3. | Disputed, there are no advertisements when going to Imagebam.com's homepage (JLA Decl. Ex. Q, Penn 09/13/17 Depo. Ex. 6). Answering further Steadfast leased servers to Flixya for a flat fee. It did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 14-31). Further answering Steadfast was forwarded a letter from counsel for Flixya that stated in part: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use |

- 16 -

| | |
|---|---|
| | the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 38) (JLA Decl. Ex. T April 6, 2011 from the Law Office of Hung Chang to James Grady) |

14.  Moving Party's Response

These are direct quotes from the Zimmerman Deposition.  The testimony wasn't that he saw advertisements on imagebam.com's "home page."  He said "We had seen image and cases where there was advertisements I believe at the top of the pages, some of the pages."  Zimmerman Depo. 40:19-41:1. The appearance of advertisements in conjunction with the infringing images can be seen throughout Penn Exs. 1-19.  For example Ex. 1 p. 7 (livejasmin.com pop over ad), Ex. 1 pp. 8-9 (ad over full screen image), Ex. 2 p. 5 (ads over ALS cover shot) Ex. 2 p.17 (similar ads over full size image).  The other exhibits contain similar examples.  The remainder of the paragraph contains additional facts, not disputes to the asserted facts.

| | |
|---|---|
| 15.  The Steadfast servers leased by Flixya also stored imagebam.com's MySQL database, "a standard open-sourced database platform."  Id. pp. 44, 62-63. | Admitted, further stating, MySQL is a standard open-source database platform that Flixya itself controlled. Additionally, Steadfast did not maintain or service the MySQL database and could not accessed it without breaking the law (Zimmerman Decl. ¶¶14-20, 30-32). |
| 16.  If Steadfast had powered down the servers leased by imagebam.com, the front page of the site would have been inaccessible until Flixya could perform operations to direct users to the page on some other company's server.  Id. pp. 46-48. | Admitted. Answering further, any interruption would have been trivial because the front page was also on another server not operated by Steadfast. (JLA Decl. Ex. O, Zimmerman Declaration at pp. 47). Further, disabling a site without a |

| | |
|---|---|
| | court order would be breaking the law (JLA Decl. Ex. O, Zimmerman Depo at pp. 45) (Zimmerman Decl. . ¶¶31-33). |
| 17.  Steadfast stored on its servers, at a minimum, the front page of imagebam.com, which supported the entire upload capacity, and the MySQL database.  Id. pp. 33-48; Penn Decl. ¶¶ 8-20, Exs. 20-22. | Disputed.  At the maximum Steadfast only leased server space to Steadfast which controlled the MySQL database.  Answering further Steadfast leased servers to Flixya for a flat fee. it did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 14-31). |

17.  Moving Party's Response

Zimmerman specifically testified that if Steadfast has powered down the servers leased to imagebam.com "the front page of the site would have probably been inaccessible for a short period of time."  Zimmerman Depo. 46:1-10.  The Zimmerman Declaration does not assert that the front page of the imagebam.com did not reside on the Steadfast server.  The rest of the response consists of additional facts that do not controvert the asserted facts.

| | |
|---|---|
| 18.a.  Mr. Zimmerman, as Steadfast's corporate witness, was not able to recall what policy Steadfast maintained for termination for repeat infringement; he relied on website Terms produced in the case.  Id. pp. 10-11, Ex. 1, pp. 88-89. | Admitted that Mr. Zimmerman could not recall the exact terms of the Steadfast policy at his depositon. |

| | |
|---|---|
| 18.b.  However, Steadfast's website says little to nothing on this subject. Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement."  Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service."  (Spillane Decl. ¶ 5, Ex. 4.) | Disputed; Steadfast has a DMCA policy which is located on the Steadfast website (JLA Decl. Ex. U). |
| 18.b.  Moving Party's Response<br><br>Steadfast did not controvert the asserted facts.  The Ambrogi declaration says he attaches a page with production numbers STF 37768 to 37770, but the attached document has different production numbers.  Ambrogi Decl. ¶ 23 Ex. U.  No witness authenticates Ex. U.  The hearsay page apparently comes from a "knowledge base" segment of Steadfast's website. | |
| 18.c.  That page, https://www.steadfast.net/legal-information,says it was "last updated January 30, 2017."  That was shortly after Steadfast first appeared in this case.  (12/8/16 Stipulation to Vacate Default, Doc. 75.) | Admitted |
| 18.d.  The current page says "Steadfast responds to notices of alleged copyright infringement and terminates accounts of repeat infringers according to the process set out in the U.S. Digital Millennium Copyright Act." (Id.) | Admitted |
| 18.e.  In discovery Steadfast said "Steadfast has not defined the term 'repeat infringer' as even the DMCA is silent as to any definition." (Zimmerman Depo. pp. 121-24, Ex. 10, p. 3 ¶ 5.1.) | Admitted, but this is a question of law based on disputed material questions of fact. |
| 18.f.  Steadfast's Terms as of September 27, 2016, before Steadfast | Disputed as to the characterization that the Terms "only" said that. The |

| | |
|---|---|
| appeared in this case, which were last updated August 6, 2015, said only "[a]ny illegal activity may result in your site being suspended immediately, without notification. . . . Steadfast will be the sole arbiter as to what constitutes a violation of this provision." (Spillane Decl. ¶ 6, Ex. 5.) | Terms as of September 27, 2016 includes the following: "We reserve the right to refuse service to anyone for any reason not prohibited by law. Also **we reserve the right to terminate service to any client for any reason not prohibited by law**. … All services provided by Steadfast may be used for lawful purposes only. Transmission, storage, or presentation of any information, data or material in violation of any American law is prohibited. **This includes, but is not limited to: copyrighted material, trademark, intellectual property**, material that promotes any illegal activity, or material protected by trade secret and other statutes without proper authorization. … <br><br>[Declaration of Karl Zimmerman ¶4, Ex. A.] (emphasis added). |

18.f.  Moving Party's Response

The full Terms as of September 27, 2016 are attached to the Spillane Decl. as Ex. 5.  The parties agree that they say what they say.

| | |
|---|---|
| 19.  The first complaint of infringement on imagebam.com came not long after Flixya opened an account with imagebam.com.  As the site "grew in size and popularity," the number of infringement complaints grew. Zimmerman Depo. pp. 55-56 | Disputed.  Steadfast received a decreasing number of DMCA notices directed to Imagebam after 2014 (JLA Decl. Ex. P Response to Interrogatory No. 13).  Disputed that Flixya opened an account with imagebam.com. Flixya, owned, operated and managed the Imagebam.com website and was its DMCA agent (Zimmerman Decl. ¶22) (JLA Decl. Ex. R. Penn 09/13/17 Depo. Ex. 10).  Thus, all DMCA Notices should have been directed to |

| | | |
|---|---|---|
| 1 2 3 | | that agent. Answering further, Steadfast is not Flixya's designated agent (JLA Decl. Ex. R. Penn 09/13/17 Depo. Ex. 10). |
| 4 5 6 7 8 | 19.  Moving Party's Response<br><br>The paragraph has a typo.  It should have said when Flixya opened an account with "Steadfast."  The asserted facts are direct quotes from the Karl Zimmerman Deposition, 55:16-56:5.  Steadfast offers additional facts, none of which controvert the asserted facts. | |
| 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 | 20.a.  In March 2011 Steadfast received "hundreds of DMCA complaints from Groupfivephotosports.com" about imagebam.com.  Id. pp. 64-65, Ex. 7. The notifications "escalated" to Karl Zimmerman, who inquired of Flixya. "They provided the IPs of the users and had indicated that those users had been terminated." Id. pp. 69-70.  Flixya's primary method for tracking uploaders was IP ("Internet protocol"). | Admitted, but answering further, Flixya's attorney sent to Groupfive's attorney a letter dated April 6, 2011, in which he stated "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 38) (JLA Decl. Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady). |
| 26 27 28 | 20.b.  However, the same person could log onto imagebam.com from different IPs by logging in from different locations.  Id. pp. 29-30. | Disputed as speculation. There is no evidence that the relevant imagebam.com users in this case engaged in such activity. This is |

| | entirely speculative as it pertains to the alleged infringing acts of Imagebam.com's users not in this case. Further, the persons uploading the content could actually be ALS Scan members (JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. 94:8-97:2; Ex. C Easton 09/06/17 Dep. 36:22-37:4). |
|---|---|

20.b.  Moving Party's Response

The asserted fact is a direct quote from the Karl Zimmerman deposition. He directly confirmed that the same person could upload material to imagebam.com from different IP addresses. The asserted fact does not attempt to address the identity of users uploading infringing ALS content, or whether such user might have been ALS Scan members.

| 21.a.  In response to the Groupfive contentions Steadfast wanted proof that Flixya was blocking the IPs from which the infringing uploads had occurred for Steadfast's protection. "We needed to assure that they were taken care of and dealing with repeat infringers." Id. 85:16-86:7 | Admitted. Answering further, in other words, under the Steadfast's Terms, its clients must comply with copyright laws, and such Steadfast wanted to make sure that Flixya was complying with the DMCA, and not in violation (Zimmerman Decl. ¶12). |
|---|---|
| 21.b.  Steadfast did not believe, however, that Steadfast has to terminate repeat infringers in order to maintain legal protections. Id. 86:19-22. | Disputed, mischaracterizes the testimony. Steadfast wanted to ensure that Flixya had a repeat infringer policy (JLA Declaration Exhibit O Zimmerman Depo pp. 86:23 to 87:9). Answering further, in other words, under the Steadfast's Terms, its clients must comply with copyright laws, and such Steadfast wanted to make sure that Flixya was complying with the DMCA, and not in violation (Zimmerman Decl. ¶12). Answering further, Flixya is not a repeat infringer (Zimmerman Decl. ¶ 38) (JLA Decl. |

- 22 -

| | |
|---|---|
| | Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady). |

**21.b. Moving Party's Response**

"Q. Well, is it your information that in order to maintain certain legal protections, you have to terminate repeat infringers?

**A. I don't believe the law says that."**

Zimmerman Depo. 86:19-22.

| | |
|---|---|
| 21.c.  Steadfast wanted proof that <u>Flixya</u> was implementing <u>Flixya's</u> repeat infringer policy, but Steadfast did not need the information for compliance with <u>its own</u> repeat infringer policy. Id. p. 87.[4] | Disputed the infringers were the Flixya's individual users not Flixya itself.  ALS's agent Steve Easton has confirmed that individuals posted the content and the content was removed (JLA Declaration Ex. C; Easton 09/06/17 Depo. pp 36:22 to 37:4) |

**21.c.  Moving Party's Response**

The "dispute" doesn't have anything to do with the asserted fact.  Mr. Zimmerman said he wanted proof that Flixya was implementing Flixya's repeat infringer policy, but denied that he needed the information to comply with Steadfast's own repeat infringer policy.  Zimmerman Depo. 87:6-17.  The fact that Mr. Zimmerman wanted to know whether Flixya was applying Flixya's repeat infringer policy infers that imagebam.com's users were the direct infringers.  Whether Flixya removed content on request is beside the point.

| | |
|---|---|
| 22.  Steadfast does not believe that its own repeat infringer policy would "apply" whenever Steadfast's client was an Internet service provider and supplied evidence that <u>they</u> complied with the DMCA.  Id. 91:6-17.[5] | Disputed, Steadfast concluded that Flixya was in compliance with the requirements of the DMCA and strove to make sure it was following the procedures and polices it had created in order to abide by the DMCA (JLA Decl. Ex. O; Zimmerman Depo pp. 94:8 to 95:7). |

---

[4]  Steadfast removed the emphases from ALS's Statement.
[5]  Steadfast removed the emphasis from ALS's Statement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**22.  Moving Party's Response**

ALS's asserted fact is taken directly from Mr. Zimmerman's testimony at 91:6-17.  The additional testimony proffered by Steadfast does not controvert the assertion, but confirms that Mr. Zimmerman came to the asserted conclusion after his own reading of the case law.

| | |
|---|---|
| 23.a.  After the Groupfivephotosports situation, Steadfast received hundreds of notifications of infringement on imagebam.com from Steve Easton.  Id. pp. 95-96.  Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  Id. pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly."  Id. 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  Id. 96:19-22. | Admitted. Answering further Flixya had working DMCA procedures and Flixya was the DMCA agent for Imagebam.com. (Zimmerman Decl. ¶ 38) (JLA Decl. Ex. R, Penn 09/13/17 Depo Ex. 10; Ex. T April 6, 2011 letter  from the Law Office of Hung Chang to James Grady). |
| 23.b.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications.  The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u>[6] did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  Id. pp. 98- | Disputed, mischaracterizes the testimony of Karl Zimmerman. Steadfast investigated Imagebam and concluded it had followed everything required of it under the DMCA, that Steve Easton never stated Imagebam was not complying with the takedown notices; and that Steadfast was not presented with evidence that Imagebam was not complying with its DMCA polices (JLA Decl. Ex. O Zimmerman Depo pp. 103:7 to 104:8; Ex. T April 6, 2011 letter from the |

[6]  Steadfast removed the emphases from ALS's Statement.

| 104. | Law Office of Hung Chang to James Grady) (Zimmerman Decl. ¶ 38). |

23.b.  Moving Party's Response

"Q.  So with this Group Five Photosports, you communicated to ImageBam, You need to send us proof of what you're doing to terminate these users for our own records and protection, right?
A. Yes.
Q. And they gave you at one point a screenshot, and then they gave you a PDF supplying some proof of who they were terminating right?
A. Correct.
Q. Did ImageBam ever give you that kind of evidence in relation to the Steve Easton complaints?
A. No, because it was never requested.
Q. Never requested by who?
A. By ALS or Steve Easton.
Q. Well, why didn't Steadfast request it?
A. Why would we request it?
Q. Because you asked for it in the Group Five Photosports example.
A. Because it was requested of us.
Q. By the copyright owner?
A. Correct."

Zimmerman Depo. 99:12-100:11.  The asserted statement is 100% supported by the Zimmerman testimony.  Steadfast is just spinning the same testimony. They're saying he "investigated" imagebam.com because another copyright owner, Group Five Photosports, asked for proof of termination of imagebam.com users.  Steadfast agrees that Mr. Zimmerman's testimony was that he placed the burden on Mr. Easton to not only send the infringement notice but follow up with a statement that the content was not down or demand proof of termination of imagebam.com users.

| 24.  Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem.  Id. p. 112.  Since Flixya had demonstrated | Disputed, as stated by Karl Zimmerman, Steadfast had learned that all automated processes were working and content was being removed promptly and was never given any indication that the DMCA procedures put in place by Steadfast |

| | |
|---|---|
| that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. Id. 116-118. | and Flixya's Imagebam were not being followed (JLA Declaration Exhibit O, Zimmerman Depo pp. 109:2 to 110:12; Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady) (Zimmerman Decl. ¶ 38). |

24.   Moving Party's Response

Again, Steadfast is not disputing the facts, but putting its spin on the undisputed facts.  The undisputed facts are that Mr. Zimmerman asked for proof of what imagebam.com was doing in response to the Group Five Photosports complaints because the copyright owner asked for such proof, and that Mr. Zimmerman did nothing to see what Flixya was doing in response to the Easton notifications because Mr. Easton did not demand that Steadfast follow up.

| | |
|---|---|
| 25.  Steadfast has never terminated a customer for repeat infringement.  Id. 123:22-124:6.  (Id. 123:22-124:6; Spillane Declaration ¶ 7, Ex. 6, Response to Interrogatory No. 6.) | Admitted, answering further Steadfast has terminated customers for violating its terms and conditions. Unlike ALS Scan which has never terminated any of its users for disseminating its content for free (JLA Declaration Ex. A Walsh Deposition 26:16-29:14; pp 34:12-35:22; Ex. B Penn 09/13/17 Depo. pps 96 lines 18-22, 100 lines 3-7) (Zimmerman Decl. ¶10). |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|

ALS's RESPONSE TO STEADFAST'S ADDITIONAL FACTS

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 44. Steadfast is a data-center service provider, offering cloud-based storage solutions (Dkt. 90, 1:2-5; Zimmerman Decl. ¶4). | Admitted. |
| 45. Steadfast established terms and conditions which its clients must abide by (Zimmerman Decl. ¶4). | Admitted. |
| 46. Steadfast's terms and conditions are posted on its website (Zimmerman Decl. ¶4). | Admitted. |
| 47. Steadfast has never had to terminate a client for repeat infringement (Zimmerman Decl. at ¶11). | |
| 48. From 2007 to 2017 Steadfast leased servers to Flixya Entertainment ("Flixya"). (John Ambrogi ("JLA") Decl. Ex. O; Karl Zimmerman ("KZ") Dep. 15:12-18; Dkt. 296-2; Zimmerman Decl. ¶¶ 14-20). | Admitted. |
| 49. The leased servers were completely dedicated to Flixya, including its operation of hosting Flixya's Imagebam.com website (Zimmerman Decl. ¶¶14-20). | Objection, vague and ambiguous. Disputed. If by "hosting" Steadfast means storage of a website on a server, Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center. Zimmerman Depo. pp. 30-31. |
| 50. Steadfast had no ability to terminate services to individual users of Imagebam.com other than unilaterally shutting down the entire server which would have violated the law (JLA Decl. Ex. O p.45:6-24; Zimmerman Decl. ¶11). | Objection, calls for a legal conclusion. Admitted that Steadfast could have powered down the servers on which imagebam.com was stored. |
| 51. Imagebam.com was not a pirate site when it was operated by Flixya | Objection, vague and ambiguous. Disputed. Imagebam.com has |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| (JLA Decl. Exs. K-N, T; Zimmerman Decl. ¶¶38-39). | frequently stored and displayed infringing galleries of ALS content. From December 26, 2013 through June 22, 2017 Steve Easton sent 853 notices of infringement to imagebam.com and Steadfast of infringing content belonging to ALS or other of Steve Easton's adult clients that was reproduced, displayed and distributed without authority on imagebam.com.  (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Exs. 1-19; Walsh Decl.¶¶ 10, 11.)  Of those notices from Easton, 185 gave notice of copyright and trademark infringement pertaining to ALS's content.  (*Id.*)  A single email often gave notice of infringement of dozens, if not two hundred or more, copyrighted works.  (*Id.*) Steadfast admitted to receiving a total of 1,517 notifications of infringement on imagebam.com since 2013. (Spillane Decl. ¶ 2, Ex. 1, Response to Interrogatory 13.) |
| 52.  Steadfast did not operate, control, or manage any functions of Flixya's Imagebam.com website (Zimmerman Decl. ¶¶18-22). | Admitted. |
| 53.  Steadfast did not have access to individual users' content or accounts on Flixya's Imagebam.com website (Zimmerman Decl. ¶29). | Admitted. |
| 54.  Steadfast did not provide the software that ran the Flixya's Imagebam.com website or provide services for users to upload content (Zimmerman Decl. ¶¶18-22). | Admitted. |
| 55.  Steadfast did not enter into | Admitted. |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| contracts with Flixya's Imagebam.com users (Zimmerman Decl. ¶ 22. | |
| 56.  Steadfast did not register Flixya's Imagebam.com users (Zimmerman Decl. ¶ 22). | Admitted. |
| 57.  Steadfast did not handle Flixya's Imagebam.com user complaints (Zimmerman Decl. ¶ 22). | Objection, vague and ambiguous. "Disputed."  Steadfast was supposed to "handle" the infringement notifications from Mr. Easton by reasonably implementing a policy of termination of repeat infringers. (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Exs. 1-19; Walsh Decl.¶¶ 10, 11.) |
| 58.  Steadfast did not in any way communicate with or interact with Flixya's Imagebam.com individual users (Zimmerman Decl. ¶ 22). | Admitted. |
| 59.  Steadfast did not select any of the content Flixya's Imagebam.com users posted (Zimmerman Decl. ¶¶ 22, 24). | Admitted. |
| 60.  Steadfast did not in any way promote or take any affirmative steps to encourage any infringing activity (Zimmerman Decl. ¶¶22-25). | Admitted. |
| 61.  Steadfast did not have the right or ability to supervise Flixya's Imagebam.com users' conduct (Zimmerman Decl. ¶¶ 29-31). | Admitted. |
| 62.  Steadfast did not gain a direct financial interest from the individual user's conduct (Zimmerman Decl. ¶ 15). | Admitted. |
| 63.  Flixya has its own terms and conditions that apply to its users, and it maintains its own DMCA agent. (JLA Decl. Exhs. Q and R). | Objection, lacks foundation. Disputed.  The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to copyright infringement. |

- 29 -

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 64. Many, of the infringers of the ALS content, were actually ALS's own members who posted ALS content (JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. 94:8-97:2; Ex. E Easton 07/28/17 Dep. 36:22-37:4). | Objection, lacks foundation. Disputed. Penn 56-57 has nothing to do with the assertion. At p. 96 Mr. Penn says it is "possible" that an ALS member could have posted infringing copies of ALS content. No witness said they had knowledge that it was an ALS member who was uploading the infringing content. |
| 65. On June 21, 2017, Flixya sold Imagebam.com to Securest Ltd. (Zimmerman Decl. ¶36). | Admitted. |
| 66. Steadfast offers no services to Securest (Zimmerman Decl. ¶37). | Admitted. |
| 67. ALS confirmed that all the images addressed in the notices were removed expeditiously (JLA Decl. Ex. C Easton 09/06/17 Dep. 36:22-37:4). | Objection, lacks foundation. Disputed. It is not clear in the cited testimony which images are being discussed. Mr. Easton says that whatever images were being discussed were removed, but he did not address timing. |
| 68. Flixya posted the required DMCA information on its Imagebam.com website (JLA Decl. Exhs. Q & R; Penn's 09/13/17 Dep. Ex. 6). | Objection, lacks foundation. Disputed. The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to copyright infringement. |
| 69. Flixya had users agree to the terms of service (JLA Decl. Exhs. Q & R; Penn's 09/13/17 Dep. Ex. 6). | Objection, lacks foundation. Disputed. The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to copyright infringement. Neither document shows that Flixya users had to agree to terms. |
| 70. Flixya responded to DMCA notifications, removed content, and terminated repeat infringers (JLA Decl. Ex. O, KZ Dep. 109:2-110:12; | Disputed. The only time Steadfast found out what Flixya did in response to infringement notices was with Group Five Photosports. Zimmerman |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| Zimmerman Decl. ¶26). | Depo. 64-65, 69-70.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. *Id.* pp. 95-96.  Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so. *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. |
| 71.  Steadfast made sure complained of content was removed through its ticketing system which tracked all DMCA notices, including those where Steadfast was merely cc'd (Kevin Stange Decl. ¶¶ 4-10). | Objection.  Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness.  Disputed.  The only time Steadfast found out what Flixya did in response to infringement notices was with Group Five Photosports. |

- 31 -

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| | Zimmerman Depo. 64-65, 69-70. After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. *Id.* pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks. Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so. *Id.* pp. 105-06. Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3. Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22. Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the copyright owner asked for that evidence. Since Easton did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. |
| 72. Steadfast never received a DMCA-compliant notification from Easton because it is not the designated agent of Imagebam.com (JLA Decl. Ex. B, Penn Dep. 50:17 – 52-6; Ex. Q; Stange Decl. 5). | Objection, compound, vague and ambiguous. Disputed. ALS sent infringement notifications to Steadfast by using the email address provided by Steadfast for infringement notices. (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Exs. 1-19; |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| | Walsh Decl.¶¶ 10, 11.) |
| 73. Steadfast did not have awareness of any alleged specific infringement prior to the DMCA notification (JLA Decl. Ex. B, Penn Dep. 62:16-63:21; 77:9-19; 81:9-17; 86:1-12; 93:15-22; 105:18-25; 109:6-13; 116:23-117:3). | Admitted. |
| 74. ALS through its agent, admits that Steadfast responded to all DMCA notifications from ALS (JLA Decl. Ex. C, Easton Dep. 28:25-29:3). | Disputed. The witness does not say that the responses were from Steadfast, or that Steadfast did anything in response to the notices. |
| 75. Steadfast immediately forwarded the DMCA Notices to Flixya which resulted in the images being removed (Stange Decl. ¶8; JLA Ex. C Easton 09/06/17 Dep. 36:22-37:4). | Objection. Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness. Disputed. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. Easton only testified that unspecified images were removed. He said nothing about what Steadfast did. |
| 76. ALS has approximately [Redacted] members (JLA Decl. Ex A Walsh Dep. 23:2-25:11). | Admitted. |
| 77. ALS was aware that some of these [Redacted] members were meting out its copyrighted images but never bothered to determine which members were responsible for these activities (JLA Decl. Ex A Walsh Dep. 23:2-25:11). | Disputed. The witness did not say she knows ALS members were "meting out copyrighted images" nor did she say she "never bothered" to determine which members were responsible for doing this. What Ms. Walsh says is that if ALS members are violating terms by uploading ALS content without authorization, she doesn't know how she could learn their identities. |
| 78. Despite knowing its members were violating its terms and conditions, ALS never terminated any memberships for copyright infringement (JLA Decl. Ex. B Penn | Objections, assumes facts not in evidence. Disputed. No ALS witness testified that they knew which of their members, if any, had violated ALS terms of service. |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 09/13/17 Dep. 98:10-100:8). | |
| 79.  ALS never prevented its members from downloading all of its content (Ex. B Penn 09/13/17 Dep. 100:3-18). | Disputed.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case. He said that he was not aware of any adult content provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member. |
| 80.  ALS never attempted to determine which of its members were posting its content on the adult fan forums (Ex. B Penn 09/13/17 Dep. 100:3-18). | Disputed.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case. He said that he was not aware of any adult content provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member. |
| 81.  ALS never sought to enforce its terms and conditions against its members (Ex. B Penn 09/13/17 Dep. 100:3-18). | Disputed.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case. He said that he was not aware of any adult content |

- 34 -

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
|  | provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member. |
| 82.  ALS admits its "practice was never to use any sort of technology or tracking to see an image come off of our server and then follow it as that user took it and you know, tried to disseminate it elsewhere." (Ex. B Penn 09/13/17 Dep. 100:3-18). | Disputed.  Steadfast mispresents the Penn deposition.  All he said was that it was possible that ALS members downloaded ALS content then reuploaded that to a pirate site without authority, but he did not testify ALS knew this to be the case. He said that he was not aware of any adult content provider that used digital rights management ("DRM").  Mr. Penn did not say, nor did Steadfast provide evidence, that any DRM technology would prevent or identify an ALS member from uploading content to a pirate site or identify that member. |
| 83.  The enforcement activities that ALS undertook was to hire Steve Easton at $[*Redacted*] a year for 15 years to send DMCA notices (JLA Decl. Ex. A Walsh Dep. 26:11-29:14, 34:12-35:22; Ex. B Penn 09/13/17 Dep. 96:18-100:7). | Admitted. |
| 84.  Easton did not have any quota of notices to send nor did ALS hire anybody else to assist with the takedown of images (JLA Decl. Ex. A Walsh Dep. 26:11-29:14, 34:12-35:22; Ex. B Penn 09/13/17 Dep. 96:18-100:7). | Admitted. |
| 85.  Flixya never promoted infringing activity at its Imagebam.com website. (JLA Decl. Ex.Q). | Objection, lacks foundation. Disputed. Ex. Q is an authenticated hearsay document that does not |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
|  | address promotion of infringement. |
| 86.  Steadfast only leased servers to Flixya (JLA Decl. Ex. O, KZ Dep. 15:12-18; Zimmerman Decl. ¶¶14-20, Dkt. 296-2, ALS's SUF ¶ 10, 11). | Admitted. |
| 87.  Steadfast did not operate Flixya's servers (Zimmerman Decl.  ¶ 18). | Disputed.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center. Zimmerman Depo. pp. 30-31. |
| 88.  The servers leased by Flixya were completely dedicated to Flixya's operations, including its operation of hosting Imagebam.com (Decl. KZ ¶19; JLA Decl. Ex. O, KZ Dep. 15:12-18; Dkt. 296-2; ALS's SUF ¶ 10, 11). | Admitted. |
| 89.  Steadfast's only means to withdraw services from individual Imagebam.com's users would be to break the law by hacking Flixya's system. (JLA Decl. Ex. O, KZ Dep. 45:6-24; Zimmerman Decl.  ¶¶29-32). | Objection, calls for a legal conclusion. Disputed.  Steadfast could power down the servers on which imagebam.com resided.  Zimmerman Depo. pp. 46-48. |
| 90.  Flixya is not a direct infringer (JLA Decl. Ex. B, Penn Dep. 64:13-65:11; 72:10-24). | Objection, lacks foundation, call for a legal conclusion.  Disputed.  Steadfast does not identify whether Flixya or third party users uploaded infringing ALS content. |
| 91.  Flixya posted the required DMCA information on imagebam.com, had users agree to the terms of service, and informed users that his or her account will be terminated (JLA Decl. Ex. O, KZ Dep. 24:2-27:24, Exhs. Q & R). | Objection, lacks foundation. Disputed.  The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to copyright infringement. |
| 92.  Flixya had a system for removing unauthorized content, responding to DMCA notifications, removing content, and terminating repeat infringers (JLA Decl. Ex. O, KZ Dep. | Objection, lacks foundation. Disputed.  The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 24:2-27:24, Exhs. Q & R). | copyright infringement. The only time Steadfast found out what Flixya did in response to infringement notices was with Group Five Photosports. Zimmerman Depo. 64-65, 69-70. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. |
| 93.  ALS, through Eric Penn, has admitted Steadfast would not have specific knowledge of infringement (JLA Decl. Ex. B Penn 09/13/17 Dep. 62:16-64:11; 77:9-77:19; 81:9-81:17; 86:5-86:12; 93:15-22; 105:18-25; 109:6-13: 116:23-117:3). | Objection, vague and ambiguous. Disputed. The testimony was that Steadfast would not necessarily have specific knowledge of infringing ALS content prior to receipt of a notice from Easton. The Easton notices provided direct and specific information about the location of infringing ALS content. |
| 94.  Steadfast immediately forwarded the notices it received from ALS to Flixya (Stange Decl. ¶ 8 JLA Decl. Ex. O KZ Dep. 86:23-87:9). | Objection.  Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness.  Disputed. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. |
| 95.  Flixya disabled access to all the allegedly infringing works that were hosted on imagebam.com and they are no longer available on imagebam.com (JLA Decl. Ex. C Easton 09/06/17 Dep. 36:22- 37:4). | Objection, lacks foundation. Disputed.  It is not clear in the cited testimony which images are being discussed.  Mr. Easton says that whatever images were being discussed were removed, but he did not address timing. |
| 96.  Imagebam.com is an image host therefore Flixya is a servicer provider and Flixya was the designated an agent for Imagebam.com with the Copyright Office and conspicuously posted the necessary DMCA-agent information on its website (JLA Decl. Exs. Q and R, Penn 09/13/2017 Dep. Exs. 6 & | Objection, lacks foundation. Disputed.  The Ambrogi Declaration attaches and fails to authenticate two hearsay documents, neither of which states any policy pertaining to copyright infringement. |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 10). | |
| 97.  Neither the Imagebam.com website or the Copyright Office mentions Steadfast as the DMCA agent for Imagebam.com (JLA Decl. Exs. Q and R, Penn 09/13/2017 Dep. Exs. 6 & 10). | Admitted. |
| 98.  ALS neither identified nor provided a list of allegedly infringed works made accessible through Steadfast's website (Zimmerman Decl. ¶34; Stange Decl. ¶11). | Disputed.  From December 26, 2013 through June 22, 2017 Steve Easton sent 853 notices of infringement to imagebam.com and Steadfast of infringing content belonging to ALS or other of Steve Easton's adult clients that was reproduced, displayed and distributed without authority on imagebam.com.  (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Exs. 1-19; Walsh Decl.¶¶ 10, 11.)  Of those notices from Easton, 185 gave notice of copyright and trademark infringement pertaining to ALS's content.  (*Id.*)  A single email often gave notice of infringement of dozens, if not two hundred or more, copyrighted works.  (*Id.*)  The emails contain hyperlinks identifying both the infringed work and its location on the imagebam.com site.  (*Id.*) |
| 99.  ALS did not provide Steadfast with reasonably sufficient information to locate the allegedly infringing material (JLA Decl. Ex. O KZ Dep. 45:6-24). | Disputed.  From December 26, 2013 through June 22, 2017 Steve Easton sent 853 notices of infringement to imagebam.com and Steadfast of infringing content belonging to ALS or other of Steve Easton's adult clients that was reproduced, displayed and distributed without authority on imagebam.com.  (Easton Decl.; Notice of Manual Filing; Penn Decl. ¶¶ 2-4, Exs. 1-19; Walsh Decl.¶¶ 10, 11.)  Of |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| | those notices from Easton, 185 gave notice of copyright and trademark infringement pertaining to ALS's content. (*Id.*) A single email often gave notice of infringement of dozens, if not two hundred or more, copyrighted works. (*Id.*) The emails contain hyperlinks identifying both the infringed work and its location on the imagebam.com site. (*Id.*) |
| 100. Steadfast could not remove the material on its servers without breaking the law (17 U.S.C. § 512(m)(2); 18 U.S.C. § 1030 (prohibiting accessing a computer without or in excess of authorization)). | Objections, calls for a legal conclusion. Disputed. Steadfast could power down the servers on which imagebam.com resided. Zimmerman Depo. pp. 46-48. |
| 101. Steadfast did something in response to each of Easton's notices (Stange Decl. ¶ 10; JLA Decl. Ex. O KZ Dep. 45:6-24). | Objection. Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness. Disputed. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. |
| 102. In response to Easton's notices, Steadfast immediately forwarded the notices to Flixya, which resulted in the removal of the material or the material's accessibility being disabled (JLA Decl. Ex. C Easton Dep. 28:25-29:3). | Objection. Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness. Disputed. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. |
| 103. Steadfast engaged in the activity of forwarding notices to Flixya with the goal of removing the material (JLA Decl. Ex. C Easton Dep. 32:22-23). | Objection. Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness. Disputed. Steadfast did nothing in response to the Easton notices. Zimmerman Depo. pp. 95-104. |
| 104. Steadfast's actions resulted in the removal of the alleged infringing ALS | Objection. Steadfast cannot provide testimony by declaration that |

- 39 -

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| content, which ALS acknowledges (JLA Decl. Ex. C Easton Dep. 37:3-4). | contradicts the testimony of its 30(b)(6) witness.  Disputed.  Steadfast did nothing in response to the Easton notices.  Zimmerman Depo. pp. 95-104. |
| 105.  Steadfast had a ticketing system which monitored all incoming DMCA notifications and set up procedures to follow up on all received notices to ensure compliance by their clients (Decl. Stange ¶¶3-9). | Objection.  Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness.  Disputed.  Steadfast did nothing in response to the Easton notices.  Zimmerman Depo. pp. 95-104. |
| 106.  Steadfast adopted a policy that read in part "This document clearly outlines procedures and restrictions for all clients. . . . [W]e will not tolerate any unlawful activity or abuse on our servers. . . . In the absence of any other Agreement, you will have accepted this Policy and these Terms and be bound by them if you use any of the services offered by Steadfast ("Services"). . . . We reserve the right to refuse service to anyone for any reason not prohibited by law. Also we reserve the right to terminate service to any client for any reason not prohibited by law. . .. Transmission, storage, or presentation of any information, data or material in violation of any American law is prohibited. This includes, but is not limited to: copyrighted material, trademark, intellectual property, material that promotes any illegal activity. . . . Any illegal activity may result in your site being suspended immediately, without notification" (Decl. of KZ ¶6, Ex. A). | Objection as to time.  Disputed.  The quoted policy was not stated until January 2017, after Steadfast was served with process in this case. Spillane Decl. ¶ 5, Ex. 4;  12/8/16 Stipulation to Vacate Default, Doc. 75. |

ALS MSJ – Steadfast – Response to Genuine Disputes

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| 107.  Steadfast requires its clients to accept these terms and conditions (Decl. of KZ ¶6). | Admitted. |
| 108.  Steadfast's terms and conditions agreement is posted on its website (Decl. of KZ ¶7). | Admitted. |
| 109.  Steadfast reserves the right to terminate any client for any violation not prohibit by law, including copyright and trademark infringement (Zimmerman Decl. Ex. A). | Admitted. |
| 110.  Steadfast had a working notification system; a procedure for dealing with DMCA notifications; did not prevent copyright holders from collecting information to issue notifications (Stange Decl. ¶¶ 4-10). | Objection.  Steadfast cannot provide testimony by declaration that contradicts the testimony of its 30(b)(6) witness.  Disputed. Steadfast did nothing in response to the Easton notices.  Zimmerman Depo. pp. 95-104. |
| 111.  Since 2013 Steadfast received an average of 28 notices per month (albeit deficient notices under the DMCA) regarding images on Flixya's Imagebam.com. For the years 2016 and 2017 the number of notices actually decreased to 21 per month. (JLA Decl. Ex. P Steadfast's Response to Plaintiff's Second Special Interrogatories). | Objection, assumes facts not in evidence, compound, lacks foundation. Disputed.  The interrogatory response was not signed by Steadfast and does not contain the asserted information. |
| 112.  Google receives 75,000,000 DMCA notices a month (JLA Decl. Ex. S). | Objection, lacks foundation, hearsay. Disputed. |
| 113.  Flixya posted the required DMCA information on its imagebam.com website (JLA Decl. Ex. B, Penn Dep. 50:17-52:6; Ex. O, KZ Dep. 24:2-27:24, Ex. R). | Objection, lacks foundation, hearsay. Disputed.  The Penn testimony is about a document filed with the Copyright Office, not what was on the imagebam.com site.  The Zimmerman deposition doesn't have evidence of what appeared on the imagebam.com site.  Ex. R is the document |

| Steadfast's Undisputed Facts | ALS's Response |
|---|---|
| | supposedly submitted to the Copyright Office.  There is no evidence of what was stated on the imagebam.com site. |
| 114.  Flixya users agree to the terms of service, and informed users that his or her account will be terminated (JLA Decl. Ex. B, Penn Dep. 50:17-52:6; Ex. O, KZ Dep. 24:2-27:24, Ex. R). | Objection, lacks foundation, hearsay.  Disputed.  The Penn testimony is about a document filed with the Copyright Office, not what was on the imagebam.com site.  The Zimmerman deposition doesn't have evidence of what appeared on the imagebam.com site.  Ex. R is the document supposedly submitted to the Copyright Office.  There is no evidence of what was stated on the imagebam.com site. |
| 115.  Flixya had an automated system for removing unauthorized content, responded to DMCA notifications, removed content, and terminated repeat infringers (JLA Decl. Ex. O, KZ Dep. pp 24:2-27:24). | Objection, lacks foundation, hearsay.  Disputed.  Zimmerman testimony is only that he witnessed Flixya do something in response to the Group Give Photosports complaints. |

DATED:  January 19, 2018

SPILLANE LAW GROUP PLC
GHALLAGHER & KENNEDY P.A.

By: _____
        Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

- 42 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this action.  My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.  A true and correct copy of the foregoing document entitled (*specify*):
**PLAINTIFF'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT STEADFAST NETWORKS, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 19, 2018, I checked the CM/ECF docket for this action and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Gary L. Bostwick– gbostwick@B1Law.com
Kevin S. Toll – kevin@silversteinlegal.com
Lawrence G. Walters – larry@firstamendment.com
Corey D. Silverstein – corey@silversteinlegal.com
Rachel Kassabian – rachelkassabian@quinnemanuel.com
Carolyn M. Homer – carolynhomer@quinnemanuel.com
Mark Thomas Gray    markgray@quinnemanuel.com
Armen Nercessian    anercessian@fenwick.com
Jedediah Wakefield    jwakefield@fenwick.com
Sapna S Mehta    smehta@fenwick.com

Colin TJ O'Brien – tm@partridgepartnerspc.com
John L. Ambrogi – jla@partridgepartnerspc.com
Daniel L Rogna    daniel@partridgepartnerspc.com
Paul Supnick – paul@supnick.com
Raymond Katrinak – pkatrinak@kernanlaw.net
Ryan Carreon – rcarreon@kernanlaw.net
Stephen M Kernan – kernanlaw@gmail.com
John P Flynn    john.flynn@gknet.com
Kevin D Neal    kevin.neal@gknet.com

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) January 19, 2018, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling Local Rule, on (*date*) January 19, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail or Attorney Service***
Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/19/2018 | Jessie Gietl | *Jessie Gietl* |
|---|---|---|
| Date | Printed Name | Signature |