JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT COURT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants. | Case No: 2:16-cv-05051-GW-AFM<br>**DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA**<br><br>Filed Concurrently: Zimmerman Decl.; Stange Decl.; Ambrogi Decl.; Statement of Uncontroverted Facts.<br>**Hearing Date: March 12, 2018**<br>**Hearing Time: 8:30am**<br>**Place:   Courtroom 9D, 9th Fl.**<br>**350 West 1st Street**<br>**Los Angeles, CA, 90012**<br>**Judge:   Hon. George H. Wu** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

SUMMARY JUDGMENT STANDARD...........................................................2

UNDISPUTED FACTS ...................................................................................3

   A.    Steadfast's Business and Terms and Conditions...........................3

   B.    Steadfast's Compliance with the DMCA...................................3

   C.    Steadfast's Limited Business with Flixya ...................................4

   D.    ALS Improperly Sends Notifications to Steadfast in Regards to Alleged Infringements on Flixya's Imagebam.com. ..........................................6

   E.    Steadfast Responded Expeditiously to ALS's Legally Insufficient Notices of Claimed Infringement...........................................................7

ARGUMENT ...................................................................................................8

  I.   ALS NOTIFICATIONS OF CLAIMED INFRINGEMENT ARE LEGALLY INSUFFICIENT. ..........................................................................................8

   A.    ALS's Notices to Steadfast Were Not Notices Provided to Imagebam.com's Designated Agent, as a Matter of Law.....................................8

   B.    Alternatively, ALS's Notifications Failed to Substantially Comply with the DMCA Requirements Listed in § 512(c)(3)(A)(i)-(vi). .................................10

  II.   STEADFAST IS ENTITLED TO THE SAFE HARBOR DEFENSE ...........12

   A.    Steadfast Qualifies as a Service Provider Under § 512(k)(1)(B)...............12

   B.    Steadfast Satisfies the Eligibility Requirements of § 512(i)......................12

     1.   Steadfast adopted and informed its users of its policy.............................13

     2.   Steadfast reasonably implemented its policy. ...........................................13

      a.   Steadfast "implemented" its DMCA policy............................................14

      b.   Steadfast implemented its DMCA policy reasonably.............................14

i

3.      Steadfast satisfies § 512(i)(1)(B). ............................................17

C.      Steadfast Satisfies the Elements Under § 512(c) Safe Harbor...................17

1.      Storage at the direction of the user under § 512(c)(1). .............................17

2.      Because ALS's only evidence of Steadfast's knowledge is barred under § 512(c)(3)(B)(i), Steadfast satisfies § 512(c)(1)(A). ...........................................18

3.      Alternatively, Steadfast acted and responded expeditiously to disable access to the ALS images....................................................................................19

4.      Steadfast did not receive a financial benefit directly attributable to ALS's images in which it had the right and ability to control such activity. ................20

5.      Steadfast designated an agent to receive notifications of claimed infringement. .....................................................................................................24

CONCLUSION ..........................................................................................................24

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................2

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .........................................................2

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013)...... 20, 21, 22

*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004)........17

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004).............................................1, 13

*Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012) .....................................16

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 U.S. Dist. LEXIS 100268 (C.D. Cal. May 1, 2017)....................................................9

*Hempton v. Pond5, Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830 (W.D. Wash. Oct. 25, 2016).................................................................13

*Hendrickson v. Ebay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001)........................18

*Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017)12, 17, 23

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) ............2

*Perfect 10, Inc. v. Amazon.com, Inc.*, No. CV 05-4753 AHM (SHx), 2009 U.S. Dist. LEXIS 42341 (C.D. Cal. May 12, 2009) .........................................................9, 10

*Perfect 10, Inc. v. CCBill*, 488 F.3d 1102 (9th Cir. 2007)................................ passim

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 665-70 (9th Cir. 2017) ...............16

*Perfect 10, Inc. v. Giganews, Inc.*, 993 F. Supp. 2d 1192 (C.D. Cal. 2014) .............19

*Scott v. Harris*, 550 U.S. 372 (2007) .........................................................................2

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013).................................................................... 1, 16, 18, 22

*UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008)..............................................................................................1, 3

1

**STATUTES**

2   17 U.S.C. § 512(c) ................................................................................. passim

3   17 U.S.C. § 512(i) ................................................................................ 13, 14, 17

4
    17 U.S.C. § 512(k) ....................................................................................9, 12
5

6   17 U.S.C. § 512(m) ................................................................................ 11, 22

7   18 U.S.C. § 1030 .................................................................................... 11, 22

8

**OTHER AUTHORITIES**

9   Nimmer on Copyright § 12B.04 (2017)........................................... 9, 10, 18

10

**RULES**

11  Fed. R. Civ. P. 56...........................................................................................2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT

Steadfast Networks, LLC ("Steadfast") moves for partial summary judgment on two separate legal issues: (1) the legal insufficiency of ALS Scan's ("ALS") notifications of claimed infringement under 17 U.S.C. § 512(c)(3); and (2) Steadfast's affirmative defense under the 17 U.S.C. § 512(c) safe harbor. Because there is no genuine dispute of material fact and because Steadfast has demonstrated through its submissions herein that it is entitled to partial judgment as a matter of law, Steadfast respectfully asks this Court to grant this motion in its favor.

The Digital Millennium Copyright Act ("DMCA") modernized domestic copyright law for the digital age. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). "Congress hoped to provide greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." *Id.* (citation and quotation marks omitted). "[B]y limiting the liability of service providers, the DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand." *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1090 (C.D. Cal. 2008).

In enacting the DMCA, Congress sought to "foster *cooperation* among copyright holders and service providers in dealing with infringement on the Internet." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013) (emphasis added). Congress knew cooperation among the

1

various parties was crucial for the DMCA's success. As evidenced by the "exclusionary rule," however, Congress made it clear that those who refuse to participate will suffer the consequences. *See id.* at 1022. ALS has chosen to ignore the rules in order to further its agenda while failing to take appropriate action against any of the actual infringers.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And it may also meet its initial burden "by 'showing'– that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000) (citation omitted).

The nonmoving party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Only admissible evidence may be considered in deciding a motion for summary judgment." *UMG Recordings, Inc. v. Veoh*

1   *Networks, Inc.*, 620 F. Supp. 2d 1081, 1086 (C.D. Cal. 2008).

2                          **UNDISPUTED FACTS**

3      **A.    Steadfast's Business and Terms and Conditions**

4

5      Steadfast[1] is a data-center service provider, offering cloud-based storage

6   solutions. Statement of Uncontroverted Facts ("SOF") ¶ 1. Steadfast has

7   established terms and conditions for use of its services, which all of its clients are

8   required to accept. SOF ¶¶ 3-4. Its terms and conditions are posted on its website.

9   SOF ¶ 5. Without companies like Steadfast, the Internet could not exist and operate

10  the way we know it.

11     As clearly set out in its terms and conditions, Steadfast does not "tolerate

12  any unlawful activity" on its servers. SOF ¶ 6. Steadfast "reserve[s] the right to

13  terminate service to any client for any reason not prohibited by law," including

14  copyright and trademark infringement. SOF ¶ 7. Steadfast has terminated clients

15  for violating its terms and conditions. SOF ¶ 8. But it has never terminated a client

16  for repeat copyright infringement because it has never had a client who repeatedly

17  infringed copyrights. SOF ¶¶ 9-10.

18     **B.    Steadfast's Compliance with the DMCA**

19     Steadfast ensures that third-party intellectual property rights are protected by

20  following the provisions of the DMCA, including the notice and takedown

----

[1] Steadfast is a Delaware limited liability corporation with offices located at 800 S. Wells St., Suite 190, Chicago, IL 60607. SOF ¶ 2.

3

procedures. Steadfast has a working notification system to process DMCA notifications. SOF ¶ 11. At all relevant times, Steadfast had (and has) a designated agent to receive notices of claimed copyright infringement registered with the Copyright Office and the necessary information posted on its website. SOF ¶¶ 12-13. Steadfast maintains records of all the DMCA notifications it receives. SOF ¶ 14. Steadfast employs procedures for processing notifications that comply with the DMCA and those that are non-compliant with the DMCA. SOF ¶¶ 15-16. Steadfast does not prevent copyright owners from collecting information needed to issue notifications. SOF ¶ 17. Nor does it interfere with technical measures that it is aware of that may be used by copyright holders to identify or protect copyright works. SOF ¶ 18. Steadfast is simply a good Internet participant that has followed the rules.

### C.   Steadfast's Limited Business with Flixya

From 2007 to June 21, 2017, one of Steadfast's clients was Flixya Entertainment, LLC ("Flixya"). SOF ¶ 19.[2] Throughout this time period, Steadfast provided server rental services to Flixya. SOF ¶ 22. Steadfast leased servers to Flixya for a flat fee, and did not receive compensation from Flixya for any other

---

[2] Flixya was a limited liability company with offices at 471 Nelo St., Suite G, Santa Clara, CA 95054. SOF ¶ 20. Steadfast and Flixya have always been separate, different, and unaffiliated legal corporate entities. SOF ¶ 21.

1   reason. SOF ¶¶ 23-24.[3] The Flixya-leased servers were "dedicated servers,"

2   meaning that the Flixya-leased servers were entirely operated, managed, and

3   controlled by Flixya. SOF ¶¶ 26-27. Steadfast only maintained the physical

4   hardware of the Flixya-leased servers. SOF ¶ 28. Indeed, Steadfast did not operate,

5   manage, or control the Flixya-leased servers. SOF ¶ 29.

6       By around February 2007, Steadfast became aware of Flixya's ownership of

7   <imagebam.com>. SOF ¶ 30. Flixya owned, hosted, managed, operated, and

8   created <imagebam.com>, operating all of the website's functions. SOF ¶ 31.

9   Steadfast did not host <imagebam.com>; Flixya hosted <imagebam.com>. SOF ¶¶

10  32-33. Flixya's <imagebam.com> is a host for user-uploaded content. SOF ¶ 34.

11  Only users of Flixya's <imagebam.com> upload images to the website. SOF ¶ 35.

12  Steadfast did not select any of the content Flixya's <imagebam.com> users posted,

13  nor did it ever upload ALS's content to the website. SOF ¶¶ 36-38.

14      Flixya's <imagebam.com> informed users of its terms of service on its

15  website, and required users to agree to those terms. SOF ¶ 39-40. On the home

16  page of <imagebam.com>, Flixya placed a "Report Abuse" link. SOF ¶ 41. The

17  "Report Abuse" link resolves to a page that discusses providing notice of

18  infringement to dmca@imagebam.com. SOF ¶ 42. Flixya's <imagebam.com> has

19  a designated agent, whose information was made available on its website and was

---

[3] Steadfast did not manufacture the servers that were leased to Flixya. SOF ¶ 25.
The Flixya-leased server was an Intel Core2Duo E8400, which was manufactured
by Supermicro. *Id.*

provided to the Copyright Office, as early as May 20, 2014. SOF ¶ 43.

Dmca@imagebam.com is the correct email address to send DMCA notifications

for claimed infringements on Imagebam.com. SOF ¶ 44. Flixya has never

designated Steadfast to be <imagebam.com>'s designated agent to receive notices

of claimed copyright infringement. SOF ¶ 45. Steadfast is not, and has never been,

the designated agent to receive notices of claimed copyright infringement for

<imagebam.com>. SOF ¶ 46.

      Based on Steadfast's interactions with Flixya, Steadfast believed that

Flixya's <imagebam.com> complied with the law. SOF ¶ 47. Flixya has an

automated system for removing unauthorized content, responded to DMCA

notifications, removed content, and terminated repeat infringers. SOF ¶ 48.

### D.    ALS Improperly Sends Notifications to Steadfast in Regards to Alleged Infringements on Flixya's Imagebam.com.

      ALS engages in the business of "adult" entertainment, creating and

marketing erotic content. SOF ¶ 49. ALS's agent, Steve Easton ("Easton"), sends

notifications of claimed infringement on behalf of ALS to Steadfast. SOF ¶ 50. In

the emails Easton sent to Steadfast, Easton included <imagebam.com> hyperlinks

that allegedly resolved to ALS images. SOF ¶ 51. Easton never sent a notice to

Steadfast, in which Easton claimed that a <steadfast.net> hyperlink resolved to an

ALS image. SOF ¶ 52.

      Easton never sent Steadfast a notice that complied with the DMCA. SOF ¶

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

53.  Indeed, Easton never emailed Steadfast a claimed notice of infringement for which Steadfast was the responsible designated agent. SOF ¶ 54. None of the notices identified works made accessible through Steadfast's website. SOF ¶ 55. Moreover, Easton's notices did not contain sufficient information to locate the infringing material. SOF ¶ 56. Steadfast did not operate, control, or manage any functions of <imagebam.com>, nor did it have permission to locate or remove allegedly infringing ALS content on the Flixya-leased server. SOF ¶¶ 57-62.

### E.   Steadfast Responded Expeditiously to ALS's Legally Insufficient Notices of Claimed Infringement.

Even though the DMCA notices sent by ALS were insufficient, Steadfast still took direct and immediate actions which resulted in the complete removal of the allegedly infringing ALS images on Flixya's <imagebam.com> website. SOF ¶ 63. When Steadfast improperly received an email from Easton, Steadfast's notification system assigned the email a ticket number and it then immediately forwarded the notices to the designated agent for Flixya's <imagebam.com>. SOF ¶¶ 64-66. Steadfast responded to all the Easton notices; ALS admits this: "Q. As far as the DMCA notices that you sent to Steadfast on behalf of ALS Scan, were those notices always responded to? A. Yes." SOF ¶ 67. In fact, ALS confirmed that all the images addressed in the notices were expeditiously removed. SOF ¶¶ 67-69. ALS admits this: "And as far as you understand or are aware, all of these images

have been removed? A. Yes." SOF ¶ 68. Here, Steadfast did more than what is required under the DMCA by responding to Easton and forwarding his faulty notices to Flixya.

## ARGUMENT

## I.   ALS NOTIFICATIONS OF CLAIMED INFRINGEMENT ARE LEGALLY INSUFFICIENT.

Steadfast moves for partial summary judgment on the legal insufficiency of ALS's notifications of claimed infringement on two independent grounds. First, ALS's notices are ineffective because ALS failed to provide notice to the "designated agent of a service provider" under § 512(c)(3)(A). Second, ALS's notices to Steadfast failed to substantially comply with all of the requirements of § 512(c)(3)(A).

### A.   ALS's Notices to Steadfast Were Not Notices Provided to Imagebam.com's Designated Agent, as a Matter of Law.

To be effective, a copyright holder's "notification of claimed infringement **must** [1] be a written communication [2] provided to the *designated agent of a service provider* that [3] includes substantially the [elements listed in § 512(c)(3)(A)(i)-(vi)]." 17 U.S.C. § 512(c)(3)(A) (emphasis added). Unlike the requirement needing substantial compliance with the elements listed in § 512(c)(3)(A)(i)-(vi), a copyright holder has "no such leeway" with the basic requirement that the notice be provided to the service provider's designated agent.

8

Nimmer on Copyright § 12B.04 (2017).

Here, Easton allegedly found infringing images on Flixya's <imagebam.com>, which is an image host, and thus a "service provider" under § 512(k)(1)(B). SOF ¶ 34. *See Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 U.S. Dist. LEXIS 100268, at *15 (C.D. Cal. May 1, 2017) (collecting cases, which conclude that "[w]ebsites that host user-uploaded images" are "service providers" under the DMCA). In compliance with § 512(c)(2), Flixya designated an agent for <imagebam.com> with the Copyright Office and conspicuously posted the necessary DMCA agent information on its website. SOF ¶¶ 40-43. Flixya never designated Steadfast to be its agent, nor has Steadfast agreed to take on such role. SOF ¶¶ 45-56. Indeed, ALS admits that neither the <imagebam.com> website nor the Copyright Office mentions Steadfast as the DMCA agent for <imagebam.com>. Dkt. 319, ¶ 97; SOF ¶ 44. ALS puts it best: "What's the correct email address to send DMCA notices to ImageBam.com? A: … I would say DMCA@imagebam.com is correct." SOF ¶ 44. Thus, as a matter of law, Steadfast is not the "designated agent" to receive notices of claimed infringement for Flixya's <imagebam.com> under § 512(c)(3)(A).

The reasoning in *Perfect 10, Inc. v. Amazon.com, Inc.* is instructive. No. CV 05-4753 AHM (SHx), 2009 U.S. Dist. LEXIS 42341, at *18 (C.D. Cal. May 12, 2009). There, Perfect 10 sent DMCA notices only to Amazon, and then it sued Amazon and Amazon's subsidiary, A9. *Id.* at *1-2. A9 argued that Perfect 10's

9

notices were ineffective because the notices were improperly sent to Amazon instead of the subsidiary. *Id.* at \*15. The court agreed, finding that Perfect 10 "cite[d] no authority that would require one ISP, by virtue of its ownership or hosting of another ISP, to pass along a DMCA notice, where the two ISPs are *distinct corporate entities* and, more importantly, have *each properly designated* its own copyright agent." *Id.* at \*17-18 (emphasis added). Here, ALS cites "no authority that would require [Steadfast] … to pass along a DMCA notice, where the two ISPs are *distinct corporate entities* and, more importantly, have *each properly designated* its own copyright agent." *Id.* at \*17-18 (emphasis added).

Because ALS failed to provide notice to the "*designated agent* of a service provider" under § 512(c)(3)(A), **ALS's notices to Steadfast are ineffective as a matter of law**. *See* Nimmer § 12B.04 (notice "which is not served on the service provider's designated agent" is a "nullity.").

**B.   Alternatively, ALS's Notifications Failed to Substantially Comply with the DMCA Requirements Listed in § 512(c)(3)(A)(i)-(vi).**

Alternatively, ALS's notices to Steadfast failed to substantially comply with the elements listed in § 512(c)(3)(A)(i)-(vi). *See Perfect 10, Inc. v. CCBill*, 488 F.3d 1102, 1112 (9th Cir. 2007) ("[S]ubstantial compliance means substantial compliance with *all* of § 512(c)(3)'s clauses, not just some of them."). Particularly, ALS's notices failed to substantially comply with § 512(c)(3)(A)(ii) and §

10

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

512(c)(3)(A)(iii).

First, under § 512(c)(3)(A)(ii), the notices must identify the copyrighted work that is claimed to have been infringed at that site. Here, ALS's notices to Steadfast did not identify works on Steadfast.net. SOF ¶¶ 52, 55. Because ALS neither identified nor provided a list of works *made accessible through Steadfast's website*, ALS failed to substantially comply with § 512(c)(3)(A)(ii).

Second, under § 512(c)(3)(A)(iii), notices must contain information "reasonably sufficient to permit the service provider to locate the material." Here, complicating matters for Steadfast, it is undisputed that Steadfast did not operate, control, or manage any functions of Flixya's <imagebam.com> website." SOF ¶ 57. Dkt. 319, ¶ 52. It is also undisputed that Steadfast did not have access to individual users' content or accounts on Flixya's <imagebam.com> website. SOF ¶ 58; Dkt. 319, ¶ 53. Assuming that the complained of ALS images were stored on a Flixya-leased server (which ALS has not shown), an <imagebam.com> URL does nothing to inform Steadfast where the complained of ALS material is located. SOF ¶ 59. Indeed, ALS knows that Steadfast does not even have the right to locate the material. SOF ¶¶ 59-60. Steadfast could not locate the material on its servers without breaking the law. 17 U.S.C. § 512(m)(2); 18 U.S.C. § 1030 (prohibiting accessing a computer without or in excess of authorization). Accordingly, ALS failed to substantially comply with § 512(c)(3)(A)(iii) because ALS's notices did not provide Steadfast with reasonably sufficient information to locate the allegedly

11

infringing material. Because ALS's notices failed to substantially comply with *all* of § 512(c)(3)(A), **the ALS notices are ineffective as a matter of law**.

Either theory supports Steadfast's contention that ALS's notifications are legally insufficient and should be deemed ineffective as a matter of law. Thus, this Court should grant summary judgment on Steadfast's motion that ALS's notices are legally ineffective under 17 U.S.C. § 512(c)(3)(A).

## II.   STEADFAST IS ENTITLED TO THE SAFE HARBOR DEFENSE

Steadfast moves for partial summary judgment on the § 512(c) safe harbor. Section 512(c) protects eligible service providers from all monetary relief "for infringement of copyright by reason of the storage [of material] at the direction of a user." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017) (quoting 17 U.S.C. § 512(c)(1)). To qualify for the § 512(c) protection, a service provider must satisfy the following elements:

### A.   Steadfast Qualifies as a Service Provider Under § 512(k)(1)(B).

For purposes of § 512(c), a service provider must qualify as a "service provider," which is defined as "a provider of online services or network access, or the operator[s] of facilities therefor." 17 U.S.C. § 512(k)(1)(B). Steadfast is a data-center service provider, offering cloud-based storage solutions. SOF ¶ 1. Therefore, it qualifies as a "service provider" under § 512(k)(1)(B).

### B.   Steadfast Satisfies the Eligibility Requirements of § 512(i).

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

Section § 512(i)(1)(A) requires service providers to: "(1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implement that policy in a reasonable manner; and (3) inform its subscribers of the policy." *Ellison*, 357 F.3d at 1080 ("*Ellison* factors"). Under § 512(i)(1)(B), a service provider must accommodate and not interfere with standard technical measures.

### 1. Steadfast adopted and informed its users of its policy.

Steadfast has adopted terms and conditions, which it posted on its website. SOF ¶¶ 3-5. Steadfast also informs its clients that it "reserve[s] the right to terminate service to any client for any reason not prohibited by law," including copyright and trademark infringement. SOF ¶ 7. Steadfast's policy "goes beyond the threshold requirement of [the] DMCA by communicating a policy to its users that allows for termination for any infringement." *Hempton v. Pond5, Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830, at *19 (W.D. Wash. Oct. 25, 2016). Accordingly, Steadfast satisfies the first and third *Ellison* factors pertaining to § 512(i)(1)(A).

### 2. Steadfast reasonably implemented its policy.

To satisfy § 512(i)(1)(A), a service provider must show that its repeat infringer policy is "reasonably implemented," which pertains to the second *Ellison* factor. In *CCBill*, the Ninth Circuit split the inquiry into two elements:

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

"implementation" and "reasonableness." *CCBill*, 488 F.3d at 1109-1115. The two

elements are considered in turn.

### a. Steadfast "implemented" its DMCA policy.

In *CCBill*, the Ninth Circuit held that a "service provider 'implements' a

policy if it has a working notification system, a procedure for dealing with DMCA-

compliant notifications, and … [to] not actively prevent copyright owners from

collecting information needed to issue such notifications." *Id*. at 1109. Perfection,

however, is not required. *Id*. at 1110.

Here, Steadfast has a working notification system to process DMCA

notifications. SOF ¶ 11. Steadfast maintains records of all the DMCA notifications it

receives. SOF ¶ 14. Steadfast employs procedures for processing not only

notifications that comply with the DMCA, but also the notifications that are non-

compliant. SOF ¶ 15-16. Steadfast also does not prevent copyright owners from

collecting information needed to issue notifications. SOF ¶ 17. Therefore, Steadfast

sufficiently *implements* its DMCA policy, pursuant to § 512(i)(1)(A).

### b. Steadfast implemented its DMCA policy reasonably.

The DMCA "permits service providers to implement a variety of procedures,

but an implementation is reasonable if, under 'appropriate circumstances,' the

service provider terminates users who repeatedly or blatantly infringe copyright."

*CCBill*, 488 F.3d at 1109. In other words, a "service provider reasonably

implements its repeat infringer policy if it terminates users when 'appropriate.'" *Id*.

at 1111. "Section 512(i) itself does not clarify when it is 'appropriate' for service providers to act. It only requires that a service provider terminate users who are 'repeat infringers.'" *Id*. And, ineffective DMCA notices "do[] not raise a genuine issue of material fact that [a service provider] failed to reasonably implement a repeat infringer policy within the meaning of § 512(i)(1)(A)." *Id*. at 1113.

The undisputed facts show that Steadfast implemented its DMCA policy *reasonably* for the following reasons, taken independently and together: First, as stated above, because Easton's notices to Steadfast do not comply with § 512(c)(3), such notices do not raise a genuine dispute of material fact that Steadfast failed to reasonably implement a repeat infringer policy. *See id*. at 1113. As a result, ALS has no evidence that Steadfast has ever failed to reasonably implement its repeat infringer policy.

Second, because Steadfast has had no situations involving repeat infringers, ALS cannot claim that Steadfast has not reasonably implemented its repeat infringer policy.[4] *See* SOF ¶¶ 9-10. The Ninth Circuit has heard Congress loud and clear: the DMCA does not require Steadfast to seek out repeat infringers with hopes that such evidence will one day help it establish the safe harbor defense. *See Shelter Capital*

---

[4] Significantly, ALS failed to respond to Steadfast's supported assertion that "Steadfast has never had to terminate a client for repeat infringement." Dkt. 319, ¶ 47. ALS had an opportunity to respond and failed to do so. Accordingly, Steadfast requests that this Court deem this as an admission. *See* Fed. R. Civ. P. 56(e).

*Partners LLC*, 718 F.3d at 1029 ("§ 512(m) provides that § 512(c)'s safe harbor protection may not be conditioned on 'a service provider monitoring its service or affirmatively seeking facts indicating infringing activity.'").

Third, an "appropriate circumstance" to terminate a user does not include terminating a client who follows the law. ALS has no evidence indicating that Flixya uploaded any of ALS's images to <imagebam.com>. SOF ¶¶ 34-35. Indeed, Flixya's <imagebam.com> website indicates that only <imagebam.com>'s users upload content. SOF ¶¶ 34-35. Thus, Flixya cannot be a direct infringer. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012) ("The infringers are the uploaders of copyrighted work."); *see also Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657 (9th Cir. 2017) (discussing volitional-conduct requirement), *cert. denied*, 2017 U.S. LEXIS 7259 (U.S. Dec. 4, 2017). **If Flixya is not a direct infringer in the first place, then it certainly cannot be a repeat infringer**. SOF ¶¶ 34-35.

Moreover, ALS has no evidence that Flixya failed to comply with the DMCA. Instead, the facts show that Flixya complied with the DMCA. SOF ¶¶ 34-35, 39-43, 47-48, 64-69. Flixya posted the required DMCA information on its <imagebam.com> website, had users agree to the terms of service, and informed users that his or her account will be terminated. SOF ¶¶ 39-43. Flixya also had an automated system for removing unauthorized content, responded to DMCA notifications, removed content, and terminated repeat infringers. SOF ¶¶ 47-48.

Again, a "service provider reasonably implements its repeat infringer policy if it terminates users when 'appropriate.'" *CCBill*, 488 F.3d at 1111. "Appropriate" cannot mean terminating clients who comply with the law. Accordingly, the undisputed facts show that Steadfast reasonably implemented its repeat infringer policy, pursuant to § 512(i)(1)(A).

        3.   Steadfast satisfies § 512(i)(1)(B).

Steadfast accommodates and does not interfere with standard technical measures that it is aware of that may be used to identify and protect copyrighted works. SOF ¶ 18. There is no evidence in the record that suggests otherwise. Nor has ALS disputed this element at any point. Accordingly, Steadfast satisfies § 512(i)(1)(B). *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1106 (W.D. Wash. 2004) (finding element satisfied where plaintiff does not challenge it).

**C.    Steadfast Satisfies the Elements Under § 512(c) Safe Harbor.**

        1.   Storage at the direction of the user under § 512(c)(1).

"To be eligible at the threshold for the § 512(c) safe harbor, a service provider must show that the infringing material was stored 'at the direction of the user.'" *Mavrix Photographs, LLC*, 873 F.3d at 1052 (quoting 17 U.S.C. § 512(c)(1)). As a preliminary matter, Steadfast's position is that ALS has no evidence that any of ALS's content was, in fact, stored on any of the Flixya-leased servers. Certainly, ALS will disagree with this position. Such a disagreement, however, is not material to whether Steadfast can satisfy § 512(c)(1). Assuming

that the alleged ALS images were stored on a Flixya-leased server, it is undisputed that the images were stored at the direction of <imagebam.com users>, not Steadfast. SOF ¶¶ 36-38. Thus, Steadfast satisfies this element of § 512(c)(1).

2. Because ALS's only evidence of Steadfast's knowledge is barred under § 512(c)(3)(B)(i), Steadfast satisfies § 512(c)(1)(A).

"A service provider is also not liable under § 512(c) if it acts 'expeditiously to remove, or disable access to, the material' when it (1) has actual knowledge, (2) is aware of facts or circumstances from which infringing activity is apparent, or (3) has received notification of claimed infringement meeting the requirements of § 512(c)(3)." *CCBill*, 488 F.3d at 1111. Steadfast satisfies § 512(c)(1)(A) for a variety of reasons.

First, as expressly provided in the DMCA, an ineffective notification "'shall not be considered' when evaluating whether the service provider had actual or constructive knowledge of the infringing activity under the first prong set forth in Section 512(c)(1)." *Hendrickson v. Ebay, Inc.*, 165 F. Supp. 2d 1082, 1089 (C.D. Cal. 2001) (quoting 17 U.S.C. § 512(c)(3)(B)(i)). ALS's notices are legally ineffective, and thus barred by this "exclusionary rule" in § 512(c)(3)(B)(i). *See Shelter Capital Partners LLC*, 718 F.3d at 1022. As a result, ALS "bears the burden of demonstrating knowledge independently of the failed notification." *Id.* (quoting Nimmer § 12B.04(B)(4)(c)). But ALS cannot meet this burden. Indeed, ALS admits that "Steadfast did not have awareness of any alleged specific

infringement prior to the DMCA notification." SOF ¶ 62; Dkt. 319, ¶ 73. Because ALS's only evidence of Steadfast's knowledge is barred under § 512(c)(3)(B)(i), Steadfast satisfies § 512(c)(1)(A).[5]

Moreover, both § 512(c)(1)(A)(iii) and § 512(c)(1)(C) impose similar obligations, which require Steadfast to "act" or "respond[]" expeditiously <u>only</u> upon gaining sufficient knowledge or a substantially compliant DMCA notification. As shown above[6], however, Steadfast's "obligation to remove infringing material [was] not triggered …." *Perfect 10, Inc. v. Giganews, Inc.*, 993 F. Supp. 2d 1192, 1198 (C.D. Cal. 2014). Because Steadfast's obligations to either act or respond expeditiously to remove infringing material were never triggered, Steadfast also satisfies both § 512(c)(1)(A)(iii) and § 512(c)(1)(C).

       3.     <u>Alternatively, Steadfast acted and responded expeditiously to disable access to the ALS images.</u>

Second, and alternatively, assuming that ALS's notices were substantially compliant (which they were not) with § 512(c)(3), the undisputed facts show that Steadfast satisfies § 512(c)(1)(A)(iii) and § 512(c)(1)(C). Indeed, Steadfast took direct and immediate actions which resulted in the complete removal of the allegedly infringing images on Flixya's <imagebam.com> website. SOF ¶¶ 63-65.

---

[5] If the Court agrees with Steadfast on this point, it leads to the conclusion that Steadfast also satisfies 17 U.S.C. § 512(c)(1)(C) because that element is predicated on Steadfast receiving a substantially compliant, effective notification.
[6] Steadfast also provided a detailed discussion in its opposition. Dkt. 303, p. 16-19.

ALS admits that Steadfast responded to the notices: "Q. As far as the DMCA notices that you sent to Steadfast on behalf of ALS Scan, were those notices always responded to? A. Yes." SOF ¶ 67. Here, once Easton sent his legally insufficient notices to Steadfast, Steadfast immediately forwarded the notices to Flixya. SOF ¶¶ 63-65. In turn, Flixya disabled access to the allegedly infringing works that were hosted on <imagebam.com>. SOF ¶¶ 63, 67-68. Indeed, all of the allegedly infringing images were removed, and were no longer accessible on <imagebam.com>. SOF ¶¶ 63, 67-68. This has been acknowledged by ALS throughout this litigation: "Q. Okay. Have all of these images been removed? A. I believe so, yes." SOF ¶ 68. The undisputed facts show that Steadfast satisfies § 512(c)(1)(A)(iii) and § 512(c)(1)(C).

4. Steadfast did not receive a financial benefit directly attributable to ALS's images in which it had the right and ability to control such activity.

Under § 512(c)(1)(B), a service provider must show that it neither (1) "receive[s] a financial benefit directly attributable to the infringing activity," nor that it (2) has "the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B); see Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1044 (9th Cir. 2013). Steadfast shows that it does neither.

Steadfast did not receive a financial benefit directly attributable to the infringing activity. "[A] service provider receives a direct financial benefit from

infringing activity where 'there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits.'" *Fung*, 710 F.3d at 1044. The relevant inquiry is "'whether the infringing activity constitutes a draw for subscribers, not just an added benefit.'" *Id*. (quoting *CCBill*, 488 F.3d at 1117). "[A] direct financial benefit cannot be established showing that a service provider receive[d] a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities." *Id*. (citation and quotation marks omitted).

ALS admits that "Steadfast did not gain a direct financial interest from the individual users' conduct." Dkt. 319, ¶ 62; SOF ¶ 70. Indeed, there is no evidence that any of the alleged infringing conduct acted as a draw for subscribers. SOF ¶ 71. Moreover, Steadfast only leased servers to Flixya for a flat fee. SOF ¶¶ 23-24; *see* Dkt. 319, ¶ 62. However, the Ninth Circuit has already clearly held that such a flat fee payment structure is insufficient to show a direct financial benefit. *CCBill*, 488 F.3d at 1118. Accordingly, Steadfast satisfies § 512(c)(1)(B) because no reasonable jury could conclude that Steadfast gained a financial benefit directly attributable to the infringing activity.

Alternatively, Steadfast satisfies § 512(c)(1)(B) because it is undisputed that Steadfast lacked the right <u>and</u> ability to control the alleged infringing activity on Flixya's <imagebam.com>. The "'right and ability' to control infringing activity

involves 'something more' than 'merely having the general ability to locate infringing material and terminate users' access.'" *Fung*, 710 F.3d at 1045 (citation omitted). Additionally, the DMCA does not require a service provider to break the law to be entitled to the safe harbor. *See* 17 U.S.C. § 512(m)(2).

Here, ALS admits that Steadfast did not have the right to supervise Flixya's <imagebam.com> users' conduct. SOF ¶ 72. Indeed, Steadfast was neither given permission nor authorized by Flixya to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users. SOF ¶¶ 60-61. Moreover, because Steadfast was not given permission or authorized to access the Flixya-leased server, Steadfast is prohibited by law from accessing a computer without or in excess of authorization. *See* 18 U.S.C. § 1030 (prohibiting accessing a computer without or in excess of authorization); *see* 17 U.S.C. § 512(m)(2). Because it is undisputed that Steadfast did not have the right to control such activity, Steadfast satisfies § 512(c)(1)(B).

Additionally, Steadfast lacked the *ability to control* the infringing conduct. "[I]n order to have the 'right and ability to control,' the service provider must 'exert[] substantial influence on the activities of users.'" *Shelter Capital Partners LLC*, 718 F.3d at 1030 (citation omitted). "Substantial influence" includes "high levels of control over activities of users." *Id*.

Here, Steadfast exerts no influence on the imagebam.com users. It is undisputed that Steadfast did not operate, control, or manage any functions of Flixya's <imagebam.com> website. SOF ¶ 57. Steadfast did not have access to individual user's content or accounts on Flixya's <imagebam.com> website. SOF ¶ 58. Steadfast did not provide the software that ran Flixya's <imagebam.com> website or provide services for users to upload content. SOF ¶ 73. Steadfast did not select any of the content Flixya's <imagebam.com> users posted. SOF ¶ 38. Steadfast did not have the ability to supervise Flixya's <imagebam.com> users' conduct. SOF ¶ 72. In short, Steadfast lacks any influence over the infringing activity and has no control of Flixya's <imagebam.com>, which is not in dispute.

Despite these admissions, ALS may complain that Steadfast had control because it could have "pulled the plug on the servers storing the imagebam.com site." Dkt. 297, p. 20. In other words, ALS's logic is that, by "pull[ing] the plug" on the Flixya-leased servers, Steadfast would have removed or blocked access to the alleged infringements. But the "[r]ight and ability to control involves *something more* than the ability to remove or block access" to the alleged infringements. *Mavrix Photographs, LLC*, 873 F.3d at 1058 (emphasis added) (citation and quotation marks omitted). Because Steadfast can do no more than simply "pull[] the plug on the servers," Steadfast lacks the right and ability to control the infringing activity. Accordingly, Steadfast satisfies § 512(c)(1)(B).

5. <u>Steadfast designated an agent to receive notifications of claimed infringement.</u>

Under § 512(c)(2), a service provider must designate an agent to receive notifications by posting the information on its website in a location accessible to the public, and by providing the contact information to the Copyright Office. Here, Steadfast had (and has) a designated agent to receive notices of claimed copyright infringement registered with the Copyright Office and the necessary information posted on its website. SOF ¶¶ 13-14.

# CONCLUSION

For the foregoing reasons, Steadfast respectfully requests that this Court grant its motion for partial summary judgment against ALS on both its claims that ALS's notices of claimed infringement are legally insufficient under 17 U.S.C. § 512(c)(3), and that, regardless of the legal insufficiency of the notices, Steadfast is nevertheless entitled to the 17 U.S.C. § 512(c) safe harbor protections. Steadfast has demonstrated that there is no genuine dispute of material fact and that it is entitled to partial judgment as a matter of law. Steadfast also requests that this court grant any other relief that this Court deems just.

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN L. AMBROGI
COLIN T.J. O'BRIEN
PARTRIDGE PARTNERS, P.C.

PAUL D. SUPNIK

Dated: February 1, 2018          By: s/John L. Ambrogi
                                      John L. Ambrogi
                                      Attorneys for Steadfast Networks, LLC

## **PROOF OF SERVICE**

I, Colin T.J. O'Brien, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA** was served via electronic filing to the following parties in this action via their counsel:

      ALS Scan, Inc.
      Cloudflare, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: February 1, 2018         _s/Colin T.J. O'Brien_
                      Attorney for Defendant
                      Steadfast Networks, LLC