ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:  415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC., | Case No.: 2:16-cv-05051-GW-AFM |
| Plaintiff, | **DECLARATION OF JUSTIN PAINE IN SUPPORT OF CLOUDFLARE, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | **[REDACTED PUBLIC VERSION]** |
| CLOUDFLARE, INC., et al., | |
| Defendants. | Date:       March 5, 2018<br>Time:       8:30 A.M.<br>Courtroom: 9D<br>Judge:      George H. Wu |
| | Trial Date:  April 24, 2018 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I, Justin Paine, declare as follows:

1.      I am Head of Trust & Safety at Cloudflare, Inc. I have worked at Cloudflare since July 2011, and I have held my current position since November 2014. My current job responsibilities include implementing Cloudflare's policies and procedures for dealing with abuse-related issues and incidents, and I work closely with Cloudflare's legal, policy, network operations, systems reliability engineering, and technical customer support teams concerning abuse-related questions. I also serve as Cloudflare's primary liaison with United States federal cybersecurity units, including the Department of Homeland Security's National Cybersecurity and Communications Integration Center (NCCIC), the United States Computer Emergency Readiness Team (US-CERT), and National Cyber-Forensics & Training Alliance (NCFTA). Before my current role, I worked at Cloudflare as a Trust & Safety Engineer (2014); a Systems Reliability Engineer (2013-2014); Head of Customer Support and Manager of Trust & Safety (2012-2013); and Technical Support Engineer and Manager of Trust & Safety (2011-2012). Based on my job responsibilities and my review of Cloudflare's business records, I am familiar with Cloudflare's business and operations, Cloudflare's procedures for receiving and processing complaints of abuse, and the customer account histories that I discuss in this declaration. I base this declaration on my personal knowledge.

**Cloudflare's Systems for Handling Complaints**

2.      Cloudflare offers network service solutions for websites, including reverse proxy, pass-through security, and content distribution network (or CDN) services. Because Cloudflare operates a reverse proxy service, Cloudflare IP addresses appear in the WHOIS and DNS records for websites that use Cloudflare services. This allows Cloudflare to analyze requests to and from customer websites and then relay the traffic through Cloudflare data centers. There Cloudflare uses automated processes to check the traffic for harmful transmissions, such as distributed denial of service (DDoS) attacks. Cloudflare's services improve website

1    performance and make the Internet safer.

2         3.     Cloudflare is not a hosting provider. It does not have control over, or

3    information about, specific materials that appear on a customer's website. At most,

4    Cloudflare caches certain materials that appear on the origin server or "host" server

5    of a website for a limited time in order to improve network performance. Since

6    Cloudflare does not offer web hosting services, it is not capable of removing

7    materials from a website. Materials will remain on the host server for a website

8    regardless of whether that website uses Cloudflare services or not. Termination of

9    Cloudflare services for a website does not change the availability or appearance of

10   that website, or any of the materials on it.

11        4.     Cloudflare does not encourage infringement, nor does it take step to

12   foster infringement. While Cloudflare is in no position to remove materials from a

13   website itself, Cloudflare has developed robust and effective systems for addressing

14   all manner of abuse complaints regarding websites that may use Cloudflare

15   services, including complaints about spam, malware, phishing, child abuse

16   materials, infringement, harassment, and other issues. **Exhibit 1** is a printout of the

17   abuse policy that Cloudflare publishes on its website. The policy invites

18   complainants to submit abuse reports through a web form that includes specialized

19   fields for each type of alleged abuse, and instructs them to select "the appropriate

20   category for your report on the reporting form" and "provide a high level of detail

21   in the description of the content, the exact steps needed to access the content, and

22   the location of the content on the page." The policy also provides that "Cloudflare

23   will forward all abuse reports that appear to be legitimate to the responsible hosting

24   provider and to the website owner. In response to a legitimate abuse report

25   Cloudflare will provide the complainant with the contact information for the

26   responsible hosting provider so they can be contacted directly."

27        5.     Cloudflare has developed a specific web form for submission of

28   complaints relating to claims of copyright infringement. **Exhibit 2** is a printout of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECL OF JUSTIN PAINE ISO CLOUDFLARE'S
MOTION FOR SUMMARY JUDGMENT
2
CASE NO. 2:16-CV-05051-GW-AFM

the blank form that complainants can use to submit complaints of alleged copyright infringement. The form asks the complainant for important information that Cloudflare needs to process the claim. This information includes the full name of the complainant; the name of the copyright holder (if different); contact information for the complainant, including e-mail address; identity of the allegedly infringing web addresses (by URL); a description of the original work, including links to the work or evidence of source material; an acknowledgement that the complainant has a good faith belief that use of the material at the allegedly infringing URLs is not authorized; an acknowledgement that the complainant is authorized to act on behalf of the copyright owner; an acknowledgement that the complainant understands that, under 17 U.S.C. § 512(f), he or she may be liable for any damages, including costs and attorneys' fees, for knowingly and materially misrepresenting the reported material; and a digital signature. Cloudflare requests this information because the information will help the hosting provider or website operator, who is in a better position to remove or disable access to the materials at issue, resolve the accusation of infringement. The web form also allows the complainant to select whether Cloudflare forwards the report to the website hosting provider, the website owner, or both. The web form feeds into an automated process that transmits the complaint, at the complainant's option, to the website owner and/or the website hosting provider.

6.      Once a complainant submits a complete report through the web form, Cloudflare automatically saves the information entered through the web form into a database and uses the information to generate and send by e-mail a report to the website host and/or owner. The website host and the website owner are likely in a position to remove the allegedly infringing material, unlike Cloudflare. **Exhibit 3** shows a template for the e-mail that Cloudflare sends to a hosting provider of a website when a complainant has submitted a report for alleged copyright infringement through the web form, and **Exhibit 4** shows a template for the e-mail

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   that Cloudflare sends to a website owner. Cloudflare also provides the complainant

2   with host information to allow the complainant to follow up directly with the

3   hosting provider. **Exhibit 5** and **Exhibit 6** are examples of the e-mail

4   communications that Cloudflare automatically sends to a complainant upon

5   receiving a complaint with all the information that the web form requests.  Exhibit 5

6   regards a complaint Cloudflare received for imgchili.net, and Exhibit 6 regards a

7   complaint for img.yt; I understand that Plaintiff ALS Scan, Inc. bases claims on

8   both of these websites.

9          7.      Many copyright owners utilize Cloudflare's web form. Cloudflare's

10  process frequently results in the allegedly infringing materials promptly being taken

11  down by the host or website operator. For instance, **Exhibit 7** is a January 16, 2017

12  e-mail that Cloudflare received from the website operator for namethatpornstar.com

13  confirming the removal of allegedly infringing materials following a complaint

14  through the Cloudflare web form. Similarly, **Exhibit 8** is an e-mail to Cloudflare

15  from the operator of imgspice.com, dated December 5, 2014, confirming the

16  removal of materials; **Exhibit 9** is a December 15, 2016 e-mail from the operator of

17  greenpiccs.com doing the same; and **Exhibit 10** is a similar October 6, 2014 e-mail

18  from imagetwist.com. (These exhibits contain redactions of the complainant's

19  telephone number and street address out of consideration for the third-party

20  complainants' privacy.) Whenever the host sites removes materials, Cloudflare's

21  automated processes also remove them from any caches that Cloudflare has.

22         8.      If the host provider requests it, Cloudflare will also provide the IP

23  address for the customer to the host to assist in resolving the issue. Cloudflare does

24  not, however, typically provide the IP address for its customers to the complainant

25  because of concerns that the complainant or third parties could use the IP address to

26  launch malicious attacks, including DDoS attacks, on the host server for the

27  website——the very types of attacks that Cloudflare's services seek to prevent.

28  There is a significant history of abuses concerning complaints claiming copyright

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

infringement, and Cloudflare has no way of telling whether any particular accusation of copyright infringement regarding material that allegedly appears on a webpage in a given instance is a mere pretext for Cloudflare to remove security functions for an entire webpage. For that reason, absent a valid subpoena or court order, Cloudflare is able to provide the IP address for its customers to the complainant only in cases where the complainant is a member of Cloudflare's Trusted Reporter Program (a group of vetted organizations and law enforcement organizations). In practice, Cloudflare's process of forwarding information to the host resolves most complaints, and Cloudflare does not receive further claims relating to the same matter or website. Indeed, Cloudflare regularly receives communications from complainants thanking Cloudflare for connecting complainants with the correct hosting provider and providing complainants with host information. **Exhibit 11** and **Exhibit 12** are two such examples of e-mails that Cloudflare has received from complainants. (Out of consideration for the privacy of the complainant, Exhibit 12 contains redactions of the complainant's telephone number and street address.)

9. Sometimes Cloudflare receives a well-formed complaint through its web form but then finds out from the hosting provider or website owner that the URL or URLs a complainant identifies do not lead to the material that the complaint concerns. Because Cloudflare is not a host, it is in no position to validate any of the information or assertions that appear in a complaint submitted through its web form. Nor does Cloudflare have the necessary information to determine whether material that appears on any particular website is authorized to be there. **Exhibit 13** is an example of a case where Cloudflare received a complaint through its web form regarding materials on imgspice.com, and then the website operator notified Cloudflare that the complaint was invalid because the challenged materials did not appear on the imgspice.com website. (As with other exhibits, Exhibit 13 contains redactions of the complainant's telephone number and street address.)

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.     If a complainant does not use the Cloudflare web form and instead sends an abuse complaint by e-mail, Cloudflare sends back an automated response asking the complainant to use the web form. Cloudflare uses a web form to handle abuse complaints because it allows Cloudflare to have a standard format that enables automated processing of complaints. By contrast, e-mail communications vary in form and content, can be difficult to interpret, and may contain incomplete information. Because e-mail complaints lack a standard format, processing is difficult to automate and often requires manual review and transcription. At the scale Cloudflare operates, processing abuse complaints in e-mail messages is unworkable as a practical matter. Internet companies commonly use automated forms and systems like the one that Cloudflare uses.

## ALS's Communications with Cloudflare

11.     I understand that this case arises from a number of communications that Steve Easton sent to Cloudfare on behalf of ALS. I am familiar with Mr. Easton from my work at Cloudflare, and I have communicated with him a number of times over the past several years with respect to communications that he has sent on behalf of a variety of entities, including communications sent from his company, APIC Worldwide. I have explained to Mr. Easton how to use Cloudflare's web form to submit complaints of alleged copyright infringement several times, but Mr. Easton has largely refused to use it when submitting complaints on behalf of ALS. Mr. Easton has successfully used the web form to submit complaints to Cloudflare on behalf of other clients, including for instance J. Stephen Hicks Photography, Holly Randall, and EENT Inc.

12.     I understand that ALS asserts that, as its agent, Mr. Easton sent Cloudflare thousands of accusations of infringement on its behalf. By contrast, Cloudflare's records show that ALS has submitted complete complaints through the Cloudflare web form only fourteen times through October 19, 2017: Mr. Easton appears to have submitted twelve of these complaints; Sarah Walsh submitted one;

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   and Eric Penn submitted one. **Exhibit 14** is a chart of data from Cloudflare's

2   records that shows the date and time of each of these complaints, the website

3   accused in the complaint, and the identity of the person who submitted the

4   complaint. The data in Exhibit 14 comes from a spreadsheet that Cloudflare

5   produced in native format with Bates number CLOUDFLARE00011775.

6         13.    Cloudflare's records reflect that, when Mr. Easton submitted

7   complaints on ALS's behalf using the web form and provided all the information

8   that Cloudflare asked for in the web form, the challenged materials were removed.

9   For instance, Cloudflare's records at Exhibit 14 shows that Mr. Easton submitted a

10   complaint regarding the domain pornburst.xxx on February 18, 2016. Upon

11   submitting the complaint through the web form, Cloudflare automatically sent an

12   email to the website operator. **Exhibit 15** is the e-mail that Cloudflare received

13   back from the website operator for pornburst.xxx on February 19, 2016 confirming

14   that the "[c]ontent has been removed as requested." (This exhibit contains

15   redactions of Mr. Easton's street address.) I understand that ALS has not based its

16   claims on that website in this lawsuit.

17         14.    On the few occasions that Mr. Easton has used the web form, he has

18   often failed to provide all the information that Cloudflare asks for on it. When a

19   complainant provides insufficient information for Cloudflare to process a

20   complaint, Cloudflare sends an automated response to the complainant informing

21   him what information is missing. For instance, **Exhibit 16** is an e-mail thread

22   regarding a complaint that Mr. Easton attempted to submit through the web form on

23   June 23, 2015. Cloudflare's automated response to Mr. Easton stated that

24   Cloudflare could not process the complaint because it was missing "[s]ufficient

25   information to identify the copyrighted works [512(c)(3)(A)(iv)]"; "[a] statement by

26   the owner that it has a good faith belief that there is no legal basis for the use of the

27   materials complained of [512(c)(3)(A)(v)]"; and/or "[a] statement of the accuracy

28   of the notice and, under penalty of perjury, that the complaining party is authorized

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  to act on the behalf of the owner [512(c)(3)(A)(vi)]." Cloudflare invited Mr. Easton

2  to "reply to this message, keeping the report identification number in the subject

3  line intact, with the required information" so that Cloudflare could forward this

4  information to the host and website owner and resolve the complaint.

5       15.    Similarly, **Exhibit 17** is an e-mail thread regarding a complaint that

6  Mr. Easton attempted to submit through the web form on July 2, 2015. Cloudflare's

7  automated response to Mr. Easton stated that Cloudflare could not process the

8  complaint because it was missing "[s]ufficient information to identify the

9  copyrighted works [512(c)(3)(A)(iv)]" and again invited Mr. Easton to reply with

10  the required information.

11       16.    Even in the rare instances that Mr. Easton has used the web form and

12  provided Cloudflare all the information that it requests, Mr. Easton has also

13  demanded that Cloudflare turn over the IP addresses for the origin server of an

14  allegedly infringing website. While Cloudflare does provide IP addresses to *host*

15  *providers* if they request them to resolve claims, Cloudflare does not typically

16  provide the information to a complainant absent a valid subpoena or court order,

17  unless the complainant is a member of Cloudflare's Trusted Reporter Program

18  (which ALS is not). This is because third parties can abuse the information to attack

19  websites. If Cloudflare publicly disclosed the IP addresses of the servers on which

20  its customers' websites reside, malicious attackers would be able to abuse the

21  complaint process with false allegations and then directly attack those domains by

22  sending DDoS attacks to those servers. This would bypass the very security

23  services Cloudflare offers. Cloudflare has explained this to Mr. Easton multiple

24  times, yet Mr. Easton has persisted in demanding IP addresses. For instance,

25  **Exhibit 18** is an e-mail exchange I had with Mr. Easton on April 24, 2015

26  following an abuse report Mr. Easton submitted through the web form, in which I

27  informed him: "We don't provide IPs in response to abuse reports. The hosting

28  provider was provided with a copy of your report and the IP of their customer."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Similarly, **Exhibit 19** is an e-mail Mr. Easton sent on July 16, 2015 in response to an automated acknowledgement of an abuse report from Cloudflare, in which Mr. Easton writes: "Either you start giving IP addresses or the list of over 1000 users you hide will be given to San Francisco police and the Attorney General[.]" **Exhibit 20** and **Exhibit 21** are similar e-mails from Mr. Easton, dated August 18, 2014 and February 4, 2015 respectively, threatening to report Cloudflare to the FBI. **Exhibit 22** is a further exchange between Mr. Easton and Cloudflare's Trust & Safety team, dated July 31, 2015, where Cloudflare writes: "We've been over this before. You will need to reach out to the hosting provider since we do not control the content of our customers."  And **Exhibit 23** is a February 2, 2016 e-mail from Mr. Easton, responding to an automated communication from Cloudflare he received after using the web form, in which he writes: "Yesterday ECATEL abuse answered 'not our IP, go fuck your mother'. . . . IMGSPOT.org is a criminal, over 1 million stolen images on ECATEL's servers. . . . several others are BCC'd here to go after their property."

17.    Despite Cloudflare's instructions to Mr. Easton and, through him, to ALS to use the web form to submit complaints of alleged copyright infringement, Mr. Easton and ALS have refused to do so. Instead, they have continued to send large numbers of long, deficient and difficult-to-understand notifications to Cloudflare by e-mail. **Exhibit 24** is an example of the type of e-mail notifications that Mr. Easton would send to Cloudflare on behalf of ALS. The notifications used ambiguous references to "COPYRIGHT / TRADEMARK INFRINGEMENT" and then proceeded to list a long string of undifferentiated HTML code, including URLs and other HTML elements, without any explanation of what they were or where they came from. For instance, Exhibit 24 is an 82-page email, almost 80 pages of which consists of HTML code from an unidentified webpage. The bulk of the e-mails that Mr. Easton sent on behalf of ALS did not state that there were images at the URLs or how they might infringe ALS's rights. Many of them did not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   identify or describe the copyrighted materials that ALS claimed to own, and in fact

2   did not even identify ALS as the owner of any copyrights. And they routinely failed

3   to include a physical or digital signature. Each time, consistent with Cloudflare's

4   procedures and policies, Cloudflare has automatically sent back a response

5   directing Mr. Easton to use the Cloudflare web form.

6                            **The Websites at Issue**

7         18.    I understand that ALS identified 17 websites that it claims displayed

8   its copyrighted works and used Cloudflare's services. The websites are: artofx.org;

9   bestofsexpics.com; cumonmy.com, fboom.me; greenpiccs.com; imgchili.net;

10  imgflash.net; imgsen.se; imgspice.com; imgspot.org; imgtrex.com;

11  imagetwist.com; img.yt; namethatpornstar.com; slimpics.com; stooorage.com; and

12  vipergirls.to.

13        19.    I reviewed Cloudflare's account records to determine the time frames

14  during which Cloudflare provided services to those websites. Artofx.org began

15  using Cloudflare's service on September 28, 2013; bestofsexpics.com on August

16  15, 2015; cumonmy.com on June 26, 2013; fboom.me on December 5, 2016;

17  greenpics.com on April 6, 2015; imagetwist.com on July 8, 2017; img.yt on June 3,

18  2014; imgchili.net on December 28, 2013; imgflash.net on July 11, 2015; imgsen.se

19  on July 11, 2015; imgspice.com on April 3, 2014; imgspot.org on July 3, 2014;

20  imgtrex.com on January 17, 2015; namethatpornstar.com on September 15, 2016;

21  slimpics.com on September 18, 2015; stooorage.com on November 14, 2014; and

22  vipergirls.to on March 6, 2013. As of September 2017, when I last reviewed the

23  account records, two of those websites no longer used Cloudflare's services. The

24  domain imgflash.net was purged on February 23, 2017 and the domain

25  stooorage.com was purged on December 21, 2016.

26        20.    Cloudflare provides services to free and paid accounts. The majority of

27  the over seven million web properties that Cloudflare provides services to are free

28  accounts.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
San Francisco

21. I searched Cloudflare's billing records for transactions with customer names associated with each of the 17 domains on which ALS bases its claims. As of September 2017, only five of the domains had ever been associated with a paid Cloudflare account: █████████████████████████████████████████████ **Exhibit 25** is a printout of a spreadsheet that I compiled of Cloudflare's billing transactions with those paid accounts. It was produced in this case as a native spreadsheet with the Bates number CLOUDFLARE00011182. Exhibit 25 shows that Cloudflare cumulatively collected ████████████████████████

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of February, 2018.

_____
Justin Paine