UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-5051-GW(AFMx) | | Date | February 5, 2018 |
|---|---|---|---|---|
| Title | *ALS Scan, Inc. v. Cloudflare, Inc., et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jay M. Spillane | Colin T.J. O'Brien |
| | John L. Ambrogi by telephone |
| | Andrew Bridges |

**PROCEEDINGS:** PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT STEADFAST NETWORKS, LLC [296]

Court hears argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED.

Plaintiff's Motion for Partial Summary Judgment [324], and Defendant Cloudflare, Inc.'s Motion for Summary Judgment [347], set for March 5, 2018, are continued to March 12, 2018 at 8:30 a.m. Counsel may stipulate to the briefing schedule.

:  09

Initials of Preparer  JG

*ALS Scan, Inc. v. Cloudflare, Inc., et al.*, Case No. CV 16-5051-GW-(AFMx)
Tentative Ruling on Plaintiff's Motion for Partial Summary Judgment Regarding Liability and Affirmative Defenses

## I. Background

ALS Scan, Inc. ("Plaintiff") sues Cloudflare, Inc. ("Cloudflare"); Dolphin Media Ltd. ("Dolphin"); Hivelocity Ventures Corporation ("Hivelocity"); and Steadfast Networks, LLC ("Steadfast") (collectively, "Defendants")[1] for various claims related to Defendants' alleged infringement of Plaintiff's copyrighted and trademarked works. *See generally* Third Am. Compl. ("TAC"), Docket No. 148.[2] The TAC asserts six causes of action: (1) direct copyright infringement, against Dolphin; (2) contributory copyright infringement, against all Defendants; (3) vicarious copyright infringement, against Dolphin, Hivelocity, and Steadfast; (4) direct trademark infringement, against Dolphin; (5) direct trademark counterfeiting, against Dolphin; and (6) contributory trademark infringement, against Dolphin, Hivelocity, and Steadfast. *Id.*

Plaintiff owns a library of copyrighted and trademarked works of adult entertainment. *Id.* ¶ 3. Plaintiff alleges that its works are repeatedly infringed by pirate Internet sites, which display Plaintiff's works without Plaintiff's permission. *Id.* ¶ 4. These sites are allegedly supported by third-party service providers that continue doing business with the sites even after receiving actual notice of infringement from Plaintiff. *Id.* ¶ 6.

Plaintiff alleges that Steadfast operates servers on which pirate sites reside and provides DNS service to pirate sites, including imagebam.com. *Id.* ¶¶ 13, 46. Plaintiff alleges that Steadfast physically hosts these pirate sites on its servers, routes internet traffic to those sites, and is in control of a master switch that keeps those sites, including imagebam.com online and available. *Id.* ¶ 50. Plaintiff has allegedly sent numerous notifications to Steadfast alerting it to infringing content on imagebam.com, but Steadfast has failed to implement or enforce a repeat infringer policy by removing imagebam.com from its servers. *Id.* ¶ 47. Plaintiff sues Steadfast

---

[1] The Court previously granted Defendant Tiger Media, Inc.'s ("Tiger") motion to dismiss the First Amended Complaint as to Tiger. *See* Docket No. 53. Plaintiff did not seek to file an amended complaint against Tiger. In addition, on February 23, 2017, Plaintiff dismissed Defendants Hebergement OVH Inc. and OVH SAS from this action. *See* Docket No. 113.

[2] Plaintiff filed the Third Amended Complaint after the instant Motion was filed. However, the Third Amended Complaint did not change the allegations or the cause of action asserted against Cloudflare. Because the Third Amended Complaint is now the operative complaint in this action, the Court cites to this version rather than the Second Amended Complaint.

for contributory copyright infringement (Claim II), Vicarious Copyright Infringement (Claim III), and Contributory Copyright Infringement (Claim VI).[3]

Plaintiff seeks actual damages; statutory damages; disgorgement of profits; attorney's fees and costs; injunctive relief; and such other relief as the Court deems appropriate. *See* TAC at 19:18-20:4.

Now pending before the Court is Plaintiff's Motion for Partial Summary Judgment Against Steadfast ("Motion"). *See* Notice of Hearing on Motion and Motion for Summary Judgment Against Defendant Steadfast Networks, LLC, Docket No. 296. Plaintiff moves for summary judgment on liability for contributory copyright infringement and contributory trademark infringement. *Id.* at 7-15. Plaintiff also moves for summary judgment on Steadfast's safe harbor defense under 17 U.S.C. § 512. *Id.* Steadfast has opposed the Motion. *See* Amended Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp'n"), Docket No. 316. Plaintiff filed a Reply. *See* Docket No. 308.

## II. **Legal Standard**

Summary judgment is proper when the pleadings, the discovery and disclosed materials on file, including any affidavits/declarations, show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56; *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005). To satisfy its burden at summary judgment, a moving party *with* the burden of persuasion must establish "beyond controversy every essential element of its [claim or defense]." *S. Cal. Gas Co. v. City*

---

[3] Plaintiff made similar though less detailed allegations against Steadfast in its Second Amended Complaint ("SAC"). *See* Second Amended Complaint, Docket No. 64 at ¶¶ 15, 49. Steadfast successfully moved to dismiss the SAC, but the Court granted leave to amend. *See generally* Minute Order Granting Steadfast Networks LLC's Motion to Dismiss ("MTD Ruling"), Docket No. 111. The Court dismissed Plaintiff's claims against Steadfast because Plaintiff only alleged Steadfast "hosted" pirate sites, but did not provide any additional allegations as to Steadfast's control over those sites. *See* MTD Ruling at 7-10. With respect to contributory copyright Infringement (Count II), the Court found that Plaintiff failed to sufficiently allege material contribution and/or inducement. *See id.* at 7. With respect to vicarious infringement, the Court found that Plaintiff failed to allege "that Steadfast has a direct financial interest in the infringing activity or has the right and ability to stop the infringing conduct." *Id.* at 9. Finally, with respect to contributory trademark infringement, the Court found that Plaintiff failed to allege that Steadfast induced infringement by the third party pirate sites and failed to allege that Steadfast controls or monitors any instrumentality used by imagebam.com to engage in trademark infringement. *Id.* After Plaintiff amended, Steadfast answered the TAC on April 10, 2017. *See* Docket No. 163.

[4] Under Federal Rule of Civil Procedure 56, the same legal standard applies to motions for partial summary judgment and ordinary motions for summary judgment. *See* Fed. R. Civ. P. 56(a): *see also California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998); *Barnes v. Cnty. of Placer*, 654 F.Supp.2d 1066, 1070 (E.D. Cal. 2009), *aff'd*, 386 F.App'x 633 (9th Cir. 2010) ("A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment.").

*of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); William W. Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Proc. Before Trial (The Rutter Group 2016) § 14:126 at 14-45.  By contrast, a moving party *without* the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted, emphasis in original) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  In addition, the evidence presented by the parties must be admissible.  *See* Fed. R. Civ. P. 56(e); *see also Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992) (to survive summary judgment, the non-movant party "ordinarily must furnish affidavits containing admissible evidence tending to show the existence of a genuine dispute of material fact").  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  With that said, courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party.  *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *see also Motley v. Parks*, 432 F.3d 1072, 1075, n.1 (9th Cir. 2005) (en banc).

### III. Analysis

    A.  *Undisputed Facts*[5]

---

[5] Some of the underlying "undisputed" facts cited herein have been disputed by Plaintiff or Defendant.  The Court

Plaintiff produces proprietary adult content. *See* Plaintiff's Response to Statement of Genuine Disputes Re Motion For Partial Summary Judgment Against Defendant Steadfast Networks, LLC ("PSGD"), Docket No. 319 at ¶ 1.[6] Plaintiff's content is available on secure webpages access to which Plaintiff limits to its paying members. *Id.* Plaintiff registers its works with the Copyright Office. *Id.* Plaintiff also owns the registered trademark "ALS Scan" that appears on its websites and on all of its proprietary content. *Id.* ¶ 2.

For several years, Plaintiff's proprietary content has appeared on a variety of "pirate" sites without authorization. *See id.* ¶¶ 3-4. Plaintiff pays an agent, Steve Easton ("Easton"), to observe instances of suspected infringement on these pirate sites and to send notices to the site operators. *Id.* ¶ 5. Imagebam.com is one such site, and Plaintiff, through Easton, sent 185 notices of infringement to imagebam.com between December 26, 2013 and June 22, 2017. *Id.* ¶ 6. Easton sent notice via emails that included hyperlinks to the offending images. *Id.* Each email generally included hyperlinks to several images. *Id.* These notices were also sent to Steadfast because it physically maintained and owned the servers where imagebam.com resided. *Id.* Imagebam.com is operated on Steadfast's servers by non-party Flixya. *Id.* ¶ 10.

Steadfast is a company that provides Cloud Services, Dedicated Servers, Data Center Colocation, Disaster & Business Continuity, Managed Security and IT Consulting. *Id.* ¶ 9. Steadfast also provides what it calls "IT Infrastructure services." *Id.* Beginning in July 2006, Steadfast had Flixya as a client and leased three servers to Flixya. *Id.* ¶ 10. Steadfast provided, configured, and housed the servers on racks in Steadfast's data center. *Id.* ¶ 12. Flixya also purchased "basic management services" from Steadfast.[7] *Id.* Steadfast charged Flixya a flat fee

---

has reviewed such disputes and has included in this summary only facts that are supported by the cited evidence, altering the proffered facts if necessary to accurately reflect the uncontroverted evidence. To the extent that the cited underlying "undisputed" facts have been disputed, the Court finds that the stated disputes: (1) fail to controvert the proffered "undisputed" facts, (2) dispute the facts on grounds not germane to the below statements, and/or (3) fail to cite evidence in support of the disputing party's position. As such, the Court treats such facts as undisputed. Any proffered facts not included in this Tentative Ruling were found to be: (1) improper opinions or conclusions rather than facts, (2) were unsupported by admissible evidence, (3) were deemed irrelevant to the Court's present analysis, or (4) some combination thereof.

[6] Defendant filed, or at least attempted to file a response to Plaintiff's Response to Defendant's Statements of Genuine Disputes. *See* Docket No. 321. Such a document is not contemplated by the rules and was disregarded. The Court urges both parties to review the Court's Standing Order, as well as the directions the Court provided to the parties on the record at the last hearing with respect to how to draft these documents.

[7] Neither party explains what these "basic management services" entailed.

4

and the servers were "dedicated", meaning that Flixya controlled the entire server.[8] *Id.* ¶¶ 11, 49. Steadfast "maintained" the physical servers. *Id.* ¶ 10.

      Flixya used the servers to house, and manage imagebam.com, using its own software and web management services. *See id.* ¶¶ 10, 11, 15, 17, 49. Flixya had its own user policies and user agreement that prohibited uploading infringing content. *Id.* ¶¶ 63, 68-69. Flixya also had its own DMCA agent, its own procedures for removing infringing content that appeared on imagebam.com, and had the power to remove users who posted infringing content. *Id.* ¶¶ 63, 68-69, 92.

      Steadfast did not "operate, control, or manage" imagebam.com.[9] *Id.* ¶ 52. Steadfast did not have access to imagebam.com's individual user accounts, or the site's content. *Id.* ¶ 53. Steadfast did not directly profit in any way from the content that imagebam.com users posted, nor did it select or control that content or otherwise interact with imagebam.com users. *Id.* ¶¶ 58-62. Steadfast also could not terminate individual imagebam.com user accounts. *Id.* ¶ 50. However, Steadfast *could* shut down the servers, which would effectively render imagebam.com inoperative and block access to its content.[10] *Id.* ¶¶ 16, 50, 89. Steadfast also had the ability to cancel Flixya's account which would presumably entail taking control of the servers and require a shutdown of imagebam.com. *Id.* ¶ 106. Steadfast has its own user policy that prohibits unlawful activity and acts of infringement by its customers.[11] *Id.* ¶¶ 106-110.

      Upon receiving notice from Easton that Plaintiff's content appeared on imagebam.com, Steadfast forwarded Easton's notices to Flixya. *Id.* ¶ 75. Steadfast also "tracked" each

---

[8] Neither party provides a complete explanation of the term "dedicated." As the Court understands it, the key aspect of a "dedicated" server for the purposes of the present case is that Flixya leased the *entire* server and was free to manage its content. The Court assumes, but could be wrong, that Steadfast may lease server space to several clients on the same physical server, in which case it would exercise considerably more control.

[9] Both parties use the terms such as "control," "maintain," and "operate" without defining or differentiating between these terms. Therefore, it is unclear who "maintained" the servers, as opposed to "controlled" or "managed" the servers. Likewise, it is unclear if "managing" web content housed on a server is different than managing the server. It does appear relatively clear that Steadfast had no role in maintaining, controlling, or managing imagebam.com. However, it is unclear if the same can be said for the servers.

[10] Steadfast asserts that unilaterally shutting down the leased servers would violate the law absent a court order. *See* PSGD ¶¶ 50, 89, 100. However, it is unclear if that would remain the case were Steadfast to cancel Flixya's account.

[11] The specific parameters of that policy remain in dispute. *See* PSGD ¶¶ 18, 106-110.

5

notification that it received from Easton through a "ticketing system."[12] *Id.* ¶ 71. Steadfast did not follow up directly with Flixya to assure that each image identified in the notices was removed.[13] *See id.* ¶¶ 23-24. Steadfast also did not power down Flixya's servers, or cancel Flixya's account. *Id.* ¶ 25. Steadfast has never cancelled a client account based on repeated acts of infringement. *Id.* ¶¶ 25, 47. Many of the ALS images that appeared on imagebam.com were removed by Flixya. *Id.* ¶ 95.

### B. Contributory Copyright Infringement

Plaintiff moves for summary judgment on its second cause of action for contributory copyright infringement on a "material contribution" theory. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion For Partial Summary Judgment Against Defendant Steadfast Networks, LLC ("Mot."), Docket No. 297 at pages 11:14-22.

Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) ("*Amazon.com*") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("*Grokster*")). Thus, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("*Visa*") (explaining that contributory

---

[12] Plaintiff objects to the evidence supporting Steadfast's contentions that it had a "ticketing system" and that it forwarded notices to Flixya. *See* Plaintiff's Evidentiary Objections to Genuine Disputes ("Pl. Objections"), Docket No. 320 at page 3. According to Plaintiff, Steadfast's 30(b)(6) deponent testified that Steadfast took no actions in response to receiving DMCA notifications and could not recall the specifics of Steadfast's policies regarding infringement generally. *See* PSGD ¶ 18. As a result of this testimony, Plaintiff argues that any declaration testimony that discusses any steps taken by Steadfast, including the maintenance of its "ticketing system" must be disregarded. However, in the Ninth Circuit, only declaration testimony that "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment" should be disregarded. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). After reviewing the deposition testimony and subsequent declaration, the Court disagrees with Plaintiff's assessment of the evidence. *See id.* ("Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence . . . .").

[13] In March 2011, Steadfast received a large number of DMCA complaints from non-party Groupfivephotosports.com about alleged infringement occurring on imagebam.com. PSGD ¶ 20. Steadfast forwarded these notices to Flixya and later followed up with Flixya "to assure that [the infringing images] were taken care of and [that Flixya was] dealing with repeat infringers." *Id.* ¶ 21. Steadfast contends that it followed up with Flixya in that circumstance only because Groupfivephotosports.com requested that it do so. *Id.* ¶ 23. Steadfast did not follow up in the same manner with respect to Plaintiff. *Id.* Plaintiff admits that it never requested this type of follow up. *Id.* Plaintiff places a great deal of emphasis on the fact that Steadfast followed up with Flixya in the case of Groupfivesports.com but did not do the same with respect to ALS.

infringement can be established through either material contribution or inducement).

A third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1375 (N.D. Cal. 1995) ("*Netcom*") (citing *Gershwin Publ'g*, 443 F.3d at 1162; *Apple Computer, Inc. v. Microsoft Corp.*, 821 F.Supp. 616, 625 (N.D. Cal. 1993); *Demetriades v. Kaufmann*, 690 F.Supp. 289, 294 (S.D.N.Y. 1988)).

In *Amazon.com*, the Ninth Circuit analyzed the material contribution prong in the context of an Internet search engine operator (Google) and held that:

> a computer system operator can be held contributorily liable if it "has *actual* knowledge that *specific* infringing material is available using its system," and can "take simple measures to prevent further damage" to copyrighted works, yet continues to provide access to infringing works.

508 F.3d at 1172 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom*, 907 F.Supp. at 1375 (emphasis in original). Although an "actor's contribution to infringement must be material to warrant the imposition of contributory liability," the Ninth Circuit emphasized that "services or products that facilitate access to [infringing] websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities." *Id.* (internal quotations and citations omitted).

In *Amazon.com*, the district court had dismissed a contributory copyright infringement claim against Google, holding that even assuming Google had knowledge that links to websites displaying infringing material were made available using its search engine, because Google did not undertake promotional or advertising efforts to encourage visits to the infringing websites, it could not be liable for contributory infringement. *Id.* The Ninth Circuit reversed, reasoning that:

> [t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, Google could be held contributorily liable if it had knowledge that infringing [copies of plaintiff's] images were available using its search engine, could take simple measures to prevent further damage to [plaintiff's] copyrighted works, and failed to take such steps.

7

*Id.* The Ninth Circuit thereafter remanded the case to the district court to resolve factual disputes over the adequacy of the plaintiff's notices to Google of the infringement and Google's responses to the notices, as well as factual disputes over whether there was a reasonable and feasible means for Google to refrain from providing access to the infringing websites. *Id.* at 1172-73.

Shortly after *Amazon.com*, the Ninth Circuit issued its decision in *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n* ("*Visa*"), 494 F.3d 788 (9th Cir. 2007). In that case, the plaintiff sued various credit card companies for contributory copyright infringement, alleging that the credit card companies had contracted with issuing banks to issue branded credit cards to consumers, and the issuing banks then contracted with merchant banks to settle transactions using those cards, including transactions for payments to Internet websites that infringed the plaintiff's copyrights. *See Visa*, 494 F.3d at 792. The plaintiff claimed that the credit card companies had materially contributed to the websites' infringement because they were aware of the infringement, yet continued to process credit card payments for the infringing websites. *Id.* at 795.

The Ninth Circuit held that the plaintiff had failed to allege facts sufficient to establish material contribution, because the credit card companies:

> cannot be said to materially contribute to the infringement because they have no direct connection to that infringement. Here, the infringement rests on the reproduction, alteration, display and distribution of [plaintiff's] images over the Internet. [Plaintiff] has not alleged that any infringing material passes over [d]efendants' payment networks or through their payment processing systems, or that [d]efendants' systems are used to alter or display the infringing images . . . . Here, [] the services provided by the credit card companies do not help locate and are not used to distribute the infringing images. While [plaintiff] has alleged that [d]efendants make it easier for websites to profit from this infringing activity, the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would still be infringement.

*Id.* at 796. The Court further distinguished *Amazon.com*, emphasizing that "Google may materially contribute to infringement by making it fast and easy for third parties to locate and distribute infringing material, whereas [d]efendants make it easier for infringement to be *profitable*," which the Court emphasized could not be the basis of contributory copyright liability. *Id.* at 797 (emphasis in original).

The Ninth Circuit has also recognized that a third party may materially contribute to

8

infringement, at least in part, by providing physical space to known infringers, or, in the online context, by providing server space to known infringers. *See Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("*Fonovisa*") ("[W]e agree with the Third Circuit's analysis…that providing the site and facilities for known infringing activity is sufficient to establish contributory liability."); *see also*, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("*Louis Vuitton*") ("Material contribution turns on whether the activity in question 'substantially assists' direct infringement…. There is no question that providing direct infringers with server space satisfies that standard.").

For example, in *Fonovisa*, the Ninth Circuit held that a swap meet operator could be liable for contributory infringement because the operator provided infringers with "space, utilities, parking, advertising, plumbing, and customers," and, most importantly, the provision of the "site and facility for known infringing activity." 76 F.3d at 264. The Ninth Circuit emphasized that the swap meet operator "actively strives to provide the environment and the market for counterfeit recording sales to thrive. Its participation in the [infringing] sales cannot be termed 'passive.'" *Id.*

*Louis Vuitton* examined an analogous setting in the online world. In *Louis Vuitton*, the plaintiff sued three different defendants − MSG, Akanoc, and Chen-for contributory copyright and trademark infringement for their role in hosting websites that directly infringed on Louis Vuitton's trademarks and copyrights. 658 F.3d at 939-40. MSG and Akanoc were in the "web hosting business" and were both owned by Chen. *Id.* MSG leased servers, bandwidth, and IP addresses to Akanoc. *Id.* Akanoc operated the servers and leased packages of server space, bandwidth, and IP addresses to customers, who, in turn, directly infringed on Louis Vuitton's copyrights and trademarks. *Id.* The case went to trial and the jury returned a verdict for plaintiff against all three defendants for contributory infringement. *Id.* at 941. The defendants filed a motion for judgment as a matter of law seeking to overturn the verdict. *Id.* The district court denied the JMOL as to both Akanoc and Chen, but granted it as to MSG. *Id.*

The Ninth Circuit affirmed both rulings. With respect to MSG, the Ninth Circuit agreed with the district court that "no evidence presented at trial showed that MSG operated the servers that hosted the direct infringers' websites." *Id.* at 942. The panel reasoned that "even assuming that the direct infringers could be construed as MSG's customers, [plaintiff] presented no evidence that MSG had reasonable means to withdraw services to the direct infringers." *Id.*

9

Alternatively, the Ninth Circuit found that Akanoc and Chen were contributory liable because they "physically [hosted] websites on their servers and [routed] internet traffic to and from those [infringing] websites." *Id.* at 942.

Neither *Fonovosia* or *Louis Vuitton* hold that merely providing space to known infringers, be it physical or online, constitutes material contribution as a matter of law. Rather, in both cases, the third party provided space, additional services, and had a reasonable means to withdraw services. *See, e.g.*, *Fonovisa*, 76 F.3d at 264; *Louis Vuitton*, 658 F.3d at 942. *Louis Vuitton* illustrates this distinction: MSG was not liable because it merely leased servers to Akanoc but *Akanoc was liable* because it physically hosted the websites, routed internet traffic to and from the sites, and "had direct control over the 'master switch' that kept the websites online and available." *Id.* at 943.

Here, Plaintiff argues that Steadfast is liable for contributory copyright infringement as a matter of law because it: (1) rented servers to Flixya, (2) infringing material repeatedly appeared on those servers via imagebam.com, (3) Steadfast knew about the infringement, and (4) Steadfast could have, but did not "power down" the servers. *See* Mot. at 13:18-24. According to Plaintiff, Steadfast is just like Akanoc in *Louis Vuitton* because Steadfast continued to allow imagebam.com to be stored on its servers after learning that as many as 1517 infringing images appeared on that site. *Id.* at 13:24-14:3.

Steadfast counters that it cannot be liable for contributory infringement for several reasons. First, Steadfast argues that, as a general matter it is too far removed from the actual direct infringement to materially contribute. *See* Opp'n at 7:21-8:11. According to Steadfast, the primary infringers here are imagebam.com's users, with whom it undisputedly has little to no interaction. *Id.* at 10:9-16. Thus, argues Steadfast, it cannot materially contribute to the direct infringement that occurs on imagebam.com. *Id.* Steadfast further argues that it lacks a reasonable means to withdraw services from imagebam.com's users because to do so would require shutting down the entire site, an action that Steadfast contends would be unlawful. *Id.* 10:16-26. According to Steadfast, its situation is directly analogous to MSG in *Louis Vuitton*, the defendant that escaped liability because it merely rented physical servers. *Id.* at 10:9-10. Similarly, Steadfast distinguishes itself from the swap meet operator in *Fonovisa* and argues that it is more akin to an absentee landlord (a purely hypothetical absentee landlord) who leased the property to the swap meet operator. *Id.* at 8:12-9:9. Steadfast also argues that material issues of

10

fact remain as to its knowledge of specific infringements. *Id.* at 11:28-12:21. Finally, Steadfast argues that it is not liable because it took reasonable actions to disable the infringing material by (1) forwarding Easton's notifications to Flixya and (2) assuring that Flixya removed the offending content. *See id.* at 12:23-13:7.

Both parties' legal positions have some merit with respect to how the present facts fit within the Ninth Circuit authority. The Court would agree with Plaintiff that, under *Louis Vuitton* and *Fonovisa*, Steadfast's decision to continue to lease server space knowing that space is being used for infringement potentially gives rise to liability. This is because the Court would agree with Plaintiff that Steadfast knew that infringement was occurring on servers that it physically maintained. *See* PSGD ¶¶ 6, 10, 11, 15, 17, 49. The Court would also agree with Plaintiff that Steadfast did something more than lease physical server space, including providing "basic management services" to Flixya, "configuring" the servers, and physically "maintaining" the servers. *Id.* ¶¶ 10, 12. The Court would also agree that Steadfast had the ability to shut down imagebam.com, and appears to have had every right to do so under its own terms and conditions but did not. *Id.* ¶¶ 16, 50, 89, 106. However, these facts do not entitle *Plaintiff* to summary judgment for several reasons. *See Amazon.com*, 508 F.3d at 1172 (remanding case to resolve factual disputes over whether there was a reasonable and feasible means for Google to refrain from providing access to the infringing websites).

First, the Court agrees with Defendant that Steadfast's actions are distinguishable from *Luis Vuitton* and *Fonovisa* in that Steadfast did not offer much in the way of services beyond the leasing of physical servers. Moreover, Steadfast did not exercise the same type of control over the infringing parties as the swap meet owner in *Fonovisa*, or Akanoc in *Luis Vuitton*.

Second, several material facts remain in dispute that preclude summary judgment for Plaintiff (and likely Steadfast for that matter). For example, the parties dispute the nature of the control Steadfast exercised over the infringing material. Plaintiff claims that Steadfast "provided and configured" three dedicated servers to Flixya, which Steadfast physically maintains. PSGD ¶¶ 10, 12. Plaintiff also claims that Flixya purchased "basic management services" from Steadfast. *Id.* ¶ 12. Plaintiff further claims that Steadfast can shut down those servers and thereby block the infringing material. *Id.* ¶ 16.

Steadfast disputes aspects of this characterization. Specifically, Steadfast contends that Flixya operates and maintains the servers. *Id.* ¶ 49. Steadfast also contends that it has no ability,

11

absent a Court order to control the content of the servers. *Id.* ¶¶ 89, 106. Additionally, the parties vehemently dispute the nature of the actions Steadfast took, or failed to take, to prevent further infringement of Plaintiff's copyrights. Plaintiff claims Steadfast did absolutely nothing. *Id.* ¶¶ 23-24. However, Plaintiff also admits that many of the images that were subject to a DMCA notice were removed from imagebam.com. *Id.* ¶ 95. For its part, Steadfast claims that it took action by forwarding Easton's notices to Flixya and assuring that Flixya had proper procedures to remove infringing material from the servers. *Id.* ¶¶ 71, 75. As indicated above, the fact that Steadfast did not follow up with Flixya concerning Plaintiff's images in the same manner Steadfast did with other companies does not necessarily mean Steadfast took no action at all. *See* supra at page 6 note 13. Ultimately, both sides have raised triable issues of fact with respect to material contribution. As a result, the Court would deny Plaintiff's Motion. *City of Santa Ana*, 336 F.3d at 888; *see also*, *Amazon.com*, 508 F.3d at 1172.

In sum, the Court would deny the Motion as to liability on Claim II.

### C. *Safe Harbor Affirmative Defense*

To qualify for protection under any safe harbor of the DMCA, a defendant must establish certain threshold requirements, including that the defendant is a "service provider" as defined by the DMCA; the defendant adopted and reasonably implemented a "repeat infringer" policy that "provides for the termination in appropriate circumstances of subscribers and account holders of the service providers' system or network"; and the defendant accommodates "standard technical measures" that identify or protect copyrighted works. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27-28 (2d Cir. 2012). In addition, under Section 512(c), a defendant must establish:

> (A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

*See* 17 U.S.C. § 512(c)(1)(A)-(C).

Most courts have refused to determine whether a party is entitled to protection under the

DMCA on a motion to dismiss and/or a motion for summary judgment, noting that "it is difficult to conclude as a matter of law [that a defendant] ha[s] 'reasonably implemented' a policy against repeat infringers." *See Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004); *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp.3d 342, 358-59 (S.D.N.Y. 2014) ("At the complaint stage, there are insufficient facts to demonstrate that the Defendants named in this action satisfy even the threshold requirements [of the DMCA]. Defendants bring no credible argument that the complaint, and attachments themselves, establish, for instance, that they have 'reasonably implemented' a repeat infringer policy."); *Viacom Int'l*, 676 F.3d at 41 (vacating district court's grant of summary judgment on DMCA defense, explaining that "further fact-finding is required to determine whether [defendant] is ultimately entitled to safe harbor protection in this case").

Plaintiff argues that Steadfast's safe harbor defense fails as a matter of law for two reasons. *See* Mot. at 14:7-21. First, Plaintiff argues that Steadfast failed to act expeditiously to remove or disable access to the infringing material as required by Section 512c(A)(iii). *See id.* at 14:22-16:4. However, as discussed above in the context of Steadfast's liability for material contribution, factual disputes remain with respect to what exact steps Steadfast took, if any, to prevent further infringement. *See supra* at 12. As a result, the Court cannot determine, one way or the other, whether Steadfast acted to remove or disable access to the infringing material as required under the safe harbor.

Plaintiff next argues that Steadfast's safe harbor defense fails because Steadfast did not "adopt and reasonably implement" a policy that provides termination of repeat offenders as required by Section 512(c)(i)(A). *See* Mot. at 16:5-24:7. Again, disputed facts remain as to how Steadfast implemented its policy against repeat offenders. Moreover, the parties dispute the contours of that policy itself. While the fact Steadfast has never terminated one of its own customers for infringement is potentially damaging to its ability to fit the safe harbor, Plaintiff has not established that Steadfast faced a situation requiring it to terminate one of its users. Even in the present case it is unclear that Steadfast needed to terminate Flixya's account given Flixya itself had a policy that was arguably successful at removing infringing images from imagebam.com. Finally, courts have generally left safe harbor defenses to the jury. *See Viacom Int'l*, 676 F.3d at 41; *Ellison*, 357 F.3d at 1080.

In sum, the Court would deny Plaintiff's Motion on the affirmative defense.

### D. Contributory Trademark Infringement

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *See Visa*, 494 F.3d at 807 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." *Id.* (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984)). "For liability to attach, there must be 'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Id.* (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

As detailed above, Plaintiff fails to carry its burden on summary judgment on its contributory copyright infringement claim because disputes remain as to material facts, including whether or not Steadfast failed to take steps to prevent infringement on its servers. The merits of Plaintiff's trademark claim also require the resolution of these disputes. *See Visa*, 494 F.3d at 807. As such, the Court would deny the Motion with respect to Plaintiff's trademark infringement claim.

## IV. Evidentiary Rulings[14]

A. Plaintiff's Objections.

1. Overruled.
2. Sustained in part, overruled in part.
3. Overruled.
4. Overruled.
5. Overruled.
6. Overruled.
7. Overruled.
8. Overruled.
9. Overruled.
10. Overruled.
11. Overruled.
12. Overruled.

---

[14] Plaintiff did not separately number its evidentiary objections. *See generally* Pl. Objections. Instead, Plaintiff kept the numbering from Defendant's Additional Facts associated with the evidence to which it objects. *Id.* Most of Plaintiff's objections fail to properly identify the specific testimony being objected to, and instead simply object to the facts themselves. For that reason, the vast majority of Plaintiff's objections fail because they are not really evidentiary objections at all. That being said, the Court did review the evidence cited in each of the facts in rendering its evidentiary rulings. The Court has also renumbered Plaintiff's objections.

13. Overruled.
14. Sustained in part, overruled in part.
15. Sustained.
16. Overruled.
17. Overruled.
18. Overruled.
19. Overruled.
20. Sustained.
21. Sustained.
22. Overruled.
23. Overruled.
24. Overruled.
25. Overruled.
26. Overruled.
27. Overruled.
28. Overruled.
29. Overruled.
30. Overruled.
31. Overruled.
32. Overruled.
33. Overruled.

## V. Conclusion

The Court would DENY Plaintiff's Motion in its entirety.