ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC., | Case No.: 2:16-cv-05051-GW-AFM |
| Plaintiff, | **CLOUDFLARE, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CLOUDFLARE, INC., et al., | Date:        March 12, 2018 |
| Defendants. | Time:        8:30 A.M. |
| | Courtroom:   9D |
| | Judge:       Hon. George H. Wu |
| | Trial Date:  April 24, 2018 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

I.   ALS IGNORES THE REQUIREMENT TO PROVE A
     CONTRIBUTION TO *DIRECT OR PRIMARY* INFRINGERS,
     NOT SECONDARY INFRINGERS. ................................................ 3

II.  ALS PROVIDES NO EVIDENCE OF CLOUDFLARE'S
     SUBSTANTIAL ASSISTANCE TO INFRINGEMENT .................... 5

     A.   There Is No Evidence That Cloudflare Makes Any
          Difference to Infringements ............................................... 5

     B.   ALS Abandoned Its Argument That Cloudflare's Speed
          Makes a Difference to Infringements. ................................ 7

     C.   Undisputed Evidence Shows That Cloudflare Provides
          Host Information to Complainants, Negating ALS's
          Argument That Cloudflare Blocks the Information. ............ 8

III. ALS FAILS TO MEET THE CONTRIBUTORY
     INFRINGEMENT STANDARD FOR CLAIMS AGAINST
     COMPUTER SYSTEM OPERATORS UNDER
     *AMAZON.COM.* ............................................................................ 10

     A.   ALS Concedes That Cloudflare Has No Actual
          Knowledge of Specific Infringing Material. ..................... 14

     B.   ALS Cannot Show Evidence That Cloudflare Failed to
          Take Simple Measures to Prevent Further Damage to
          ALS's Works. .................................................................... 14

CONCLUSION ....................................................................................... 19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Records, Inc., v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................................................*passim*

*Arista Records, LLC v. Tkach*,
122 F. Supp. 3d 32 (S.D.N.Y. 2015) ................................................................. 13

*Avagyan v. Holder*,
646 F.3d 672 (9th Cir. 2011) ............................................................................ 11

*Benjamin v. B & H Educ., Inc.*,
No. 13-cv-04993, 2015 WL 6164891 (N.D. Cal. Oct. 16, 2015),
*aff'd*, 877 F.3d 1139 (9th Cir. 2017) ................................................................. 9

*BMG Rights Management (US) LLC v. Cox Communications, Inc.*,
No. 16-1972 (4th Cir. Feb. 1, 2018) ................................................................. 13

*David v. CBS Interactive, Inc.*,
No. CV 11-9437 DSF (JCx)
2012 WL 12884914 (C.D. Cal. July 13 2012) .................................................. 4

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......................................................................... 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .............................................................................. 12

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971) ........................................................................... 12

*In re Napster Copyright Litig.*,
No. C-00-4725 MHP, 2001 WL 36593841 (N.D. Cal. July 9, 2001) .............. 1, 4

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 936 (9th Cir. 2011) ...........................................................2, 11, 12, 19

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ............................................................................ 2

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................*passim*

*Nelson v. Pima Comty. College*,
    83 F.3d 1075 (9th Cir. 1996) ................................................ 17

*Perfect 10, Inc., v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ...........................................*passim*

*Perfect 10, Inc., v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) ............................... 13

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 504 (2017) .............*passim*

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. 11-cv-07098-AB, 2014 WL 8628031
    (C.D. Cal. Nov. 14, 2014) ..................................................... 15

*Perfect 10, Inc. v. Visa International Service Association*,
    494 F.3d 788 (9th Cir. 2007) ..............................................*passim*

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................. 6, 12

*Screen Gems-Columbia Music, Inc., v. Mark-Fi Records, Inc.*,
    256 F. Supp. 399 (S.D.N.Y. 1966) ....................................... 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................. 14

*Sutrisno v. WebMD Practice Services, Inc.*,
    No. 04-cv-4516 MMM, 2005 WL 8154571
    (C.D. Cal. June 30, 2005) ..................................................... 18

*VHT, Inc. v. Zillow Grp., Inc.*,
    No. C15-1096 JLR, 2017 WL 2654583
    (W.D. Wash. June 20, 2017) ................................................ 12

**RULES**

Fed. R. Civ. P. 26 ................................................................................ 9

Fed. R. Civ. P. 37 ................................................................................ 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fed. R. Civ. P. 65 ..................................................................................... 13

**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Jury Instructions, comment to § 17.21 .................. 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

To prevail on its claim for contributory infringement, ALS must establish that Cloudflare substantially assists direct infringements, has actual knowledge of specific infringing material on its system, and fails to take simple measures to prevent further harm to ALS's copyrights. *Perfect 10, Inc., v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). Cloudflare's opening brief explained the Ninth Circuit's "material contribution" standard and showed how the evidence establishes without dispute that it is entitled to summary judgment on ALS's claim. ALS's opposition now confirms that there are no genuine disputes of material fact on ALS's "material contribution" theory and that Cloudflare is entitled to summary judgment as a matter of law.[1]

A finding in Cloudflare's favor on any one of the four points below compels summary judgment for Cloudflare. ALS fails to show a genuine issue of fact on any of them:

*First*, ALS provides no evidence that Cloudflare's customers are *direct* infringers, whose volition caused the infringements. *Cf. A&M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666-69 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 504 (2017). Contributory infringement occurs when someone engages in culpable conduct that encourages or assists direct infringers, and copyright law does not recognize "tertiary" liability. *Napster*, 239 F.3d at 1013 n.2; *see also In re Napster Copyright Litig.*, No. C-00-4725 MHP, 2001 WL 36593841 at *2 (N.D. Cal. July 9, 2001) (no

---

[1] ALS concedes (Opp. at 18 n.10 and at 24) that it does not pursue an "inducement" theory. Under *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, 545 U.S. 913 (2005), that should end the case. As Cloudflare said in its opening brief, *Grokster* furnishes the sole standard for contributory infringement. Because the Ninth Circuit still recognizes a "material contribution" theory and ALS rests its entire case on it, Cloudflare addresses only that theory in this reply without waiving its *Grokster* argument.

Fenwick & West LLP
Attorneys at Law
San Francisco

"tertiary" liability in copyright law). Without proof that Cloudflare's customers are direct infringers, ALS cannot establish contributory infringement by Cloudflare.

*Second*, ALS provides no evidence that Cloudflare's services are essential to infringements of ALS's works, *cf. Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011), or that they substantially magnify otherwise immaterial infringements. *Cf. Amazon.com*, 508 F.3d at 1172. ALS's brief does not contest Cloudflare's arguments that it is not a website host and that terminating its service will not remove the content from the Internet. ALS can point to no evidence showing any material effect of speed or performance on infringements. ALS's argument collapses to the sole allegation that Cloudflare "blocks" information about IP addresses of its customers. Even if that were sufficient to establish substantial assistance, the argument cannot overcome undisputed facts that Cloudflare's automated web form process provides identity and contact information about the hosts of its customers' websites. Indeed, ALS's own agent Mr. Easton testified that, when a matter was "serious enough to where I had to find out the host," he would use Cloudflare's web form to receive the host information. Declaration of Andrew P. Bridges in Support of Cloudflare, Inc.'s Motion for Summary Judgment (Dkt. 354) ("Bridges Decl.") ¶ 6p, Ex. 7 at 124:4-125:20.

*Third*, ALS provides no evidence that Cloudflare has actual knowledge of specific infringing ALS material on its system. *Cf. Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013); *Amazon.com,* 508 F.3d at 1172. ALS concedes that much, making no effort either to rebut Cloudflare's arguments (Opening Br. at 20-22) or to counteract its own experts' admissions that ALS's emails do not convey actual knowledge of infringements (Bridges Decl. ¶¶ 9g-9h, 9l, Ex. 13 at 57:18-59:10, 59:19-60:12, 63:9-21; ¶ 10i, Ex. 17 at 110:3-15).

*Fourth*, ALS provides no admissible evidence that Cloudflare fails to take any simple measures available to it to avoid further harm to ALS's copyrights. *Cf. Giganews, Inc.*, 847 F.3d at 671-72. The evidence is undisputed that Cloudflare

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cannot remove websites or images from the Internet. Thus, terminating Cloudflare services, or applying complex new filtering technology as ALS's expert belatedly suggests, would do nothing to prevent infringement. Bridges Decl. ¶¶ 9vv-9zz, Ex. 13 at 116:24-118:8, 118:21-25, 119:9-121:5, 125:2-126:18, 126:19-127:10, 127:11-18, 128:4-130:2, 132:20-133:11. ALS also rehashes its flawed arguments about the safe harbor, irrelevant here as a matter of law, which were primarily criticisms of Cloudflare's abuse complaint process. ALS also avoids the point that, under *Giganews*, flawed notifications and a refusal to work with a service provider's automated system were additional reasons that a service provider lacks simple measures to prevent further damage. 847 F.3d at 671-72.

Largely ignoring these critical points and identifying no competent evidence to rebut them, ALS's opposition parades a lengthy set of irrelevant facts and arguments under the wrong legal standards. Because those points fail to create a genuine issue of material fact, Cloudflare is entitled to summary judgment.

## ARGUMENT

To prevail on its contributory infringement claim, ALS must prove *all* of the following: (1) that Cloudflare contributed to specific acts of *direct infringement* of ALS's works, (2) that Cloudflare provided *substantial assistance* to the infringements of ALS's works, (3) that Cloudflare had *actual knowledge* of *specific infringements* of ALS's works, and (4) that Cloudflare failed to take *simple measures* to prevent further damage to ALS's copyrighted works. The undisputed facts establish that ALS's claim fails on each element.

## I.   ALS IGNORES THE REQUIREMENT TO PROVE A CONTRIBUTION TO *DIRECT OR PRIMARY* INFRINGERS, NOT SECONDARY INFRINGERS.

In its opening brief (at 11), Cloudflare explained that proof of contributory infringement requires proof of an underlying direct or primary infringement for which the contributory infringer is liable. ALS's opposition fails to grasp that point,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

making an irrelevant argument about circumstantial evidence. But the question is not whether evidence is direct or circumstantial; the question is about *who* the direct infringers are and whether the defendant's acts contributed to the acts of direct infringers, not secondary infringers.

ALS argues that Cloudflare assisted its customers, but ALS fails to show that those customers *directly* infringed ALS's works. Direct infringement requires volition and causation of the infringement, and evidence of images on customer websites does not mean that the website *owners* are the direct infringers if they do not actively put the images there. In *Giganews*, for example, the service provider did not engage in direct infringement by hosting materials on its servers that others uploaded. *See Giganews*, 847 F.3d at 666-69.[2]

Here, ALS provides no evidence of volition by Cloudflare's customers that caused infringements on the websites. At most, ALS suggests a form of "tertiary" liability based on apparent (but unproven) *secondary* liability of Cloudflare's customers. But no court has adopted a theory of tertiary liability. *David v. CBS Interactive, Inc.*, No. CV 11-9437 DSF (JCx), 2012 WL 12884914, at *6 (C.D. Cal. July 13 2012). The district court overseeing the litigation against Napster explicitly rejected the theory, finding "no support" for a proposition of tertiary liability and stating that "courts have consistently held that liability for contributory infringement requires substantial participation in a specific act of direct infringement." *In re Napster Copyright Lit'n*, 2001 WL 36593841 at *2.

The Ninth Circuit stated in *Amazon.com* that "evidence that Google's actions led to . . . *direct infringement*" would be necessary to prevail on the merits of a contributory liability claim. 508 F.3d at 1173 n.13 (emphasis added). Similarly, the

---

[2] ALS falsely argues (at 23) that "[t]he [*Giganews*] case doesn't say that Giganews's own users were uploading the infringing content . . . ." To the contrary, the Ninth Circuit referred explicitly to evidence that "users uploaded infringing content onto Giganews servers," *Giganews*, 847 F.3d at 669, and there are numerous other references to uploads by users. *Id.* at 663-64, 668-69, 674.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ninth Circuit in *Napster* noted: "Napster does not facilitate infringement of the copyright laws in the absence of *direct infringement by its users*." *Napster*, 239 F.3d at 1013 n.2 (emphasis added). Because there is no competent evidence of Cloudflare's substantial participation in specific acts of *direct* infringement, ALS's claims fail from the start.

## II. ALS PROVIDES NO EVIDENCE OF CLOUDFLARE'S SUBSTANTIAL ASSISTANCE TO INFRINGEMENT.

### A. There Is No Evidence That Cloudflare Makes Any Difference to Infringements.

As Cloudflare pointed out in its opening brief, the Ninth Circuit has made clear that merely making infringement more profitable, and thereby increasing infringements, is not substantial assistance to infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007). Much more is necessary. The Ninth Circuit distinguished the payment processors in *Visa* from the search engines in *Amazon.com*, which enabled persons to *locate* infringing materials in any remote corner of the Web that would otherwise be difficult (if not impossible) to find. *Visa*, 494 F.3d at 797 n.8. In analyzing how Google substantially assisted infringements, the Ninth Circuit in *Visa* singled search engines out as most important. *Visa*, 494 F.3d at 799.[3] In *Amazon.com*, the Ninth Circuit had explained the standard by citing instances where a service "can significantly magnify the effects of otherwise

---

[3] The Ninth Circuit referred also to "the website format, software allowing for the easy alteration of images, [and] high-speed connections allowing for the rapid transfer of high-resolution image files" as other assisting technologies, *see id.*, but elsewhere it dismissed the suggestion that substantial assistance would extend to "a number of peripherally-involved third parties, such as computer display companies, storage device companies, and software companies that make the software necessary to alter and view the pictures and even utility companies that provide electricity to the Internet." *Id.* at 800. But Cloudflare's services are even more peripheral; electricity provided by a utility company is essential to infringement, whereas Cloudflare's service is not.

immaterial infringing activities." 508 F.3d at 1172. In that case Google's search engine, which enabled users to find the proverbial needle in the haystack, met the standard. *Id.* So had the defendants in *Napster*, *Netcom*, and *Grokster*, all of which, similarly, made *locating* infringing material extraordinarily fast and easy. Napster and the defendants in *Grokster* provided technologies that indexed available infringing material, a Google equivalent for peer-to-peer networks; Netcom provided a Usenet service, hosting an extensive selection of messages organized into topical groups functioning as a directory (the group at issue in that case being alt.religion.scientology). *See Napster*, 239 F.3d at 1012; *Grokster*, 545 U.S. at 921-22; *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1365 and n.4 (N.D. Cal. 1995). Thus, in all of those cases, providing the public the ability to locate infringing material enabled infringements that, as a practical matter, simply would not occur otherwise. That is not true of Cloudflare. Persons accessing Cloudflare's customers' websites are specifically seeking the websites, which they have located or identified by other tools; Cloudflare does not help those persons choose what websites to go to, what materials to obtain, or where to find the materials.

Moreover, ALS's infringement problem began long before Cloudflare came into existence. As the Third Amended Complaint ("TAC") states, "Beginning around 2000, and continuing to the present, ALS images have been displayed on growing numbers of illicit websites." TAC ¶ 20. ALS's Mr. Penn estimated that "upwards of 10,000 websites" have infringed upon ALS's images, photo sets, or videos. Declaration of Andrew P. Bridges in Support of Cloudflare, Inc.'s Reply in Support of Motion for Summary Judgment ("Bridges Reply Decl.") ¶ 7a, Ex. 7 at 162:24-163:12. Infringements that grew over 15+ years to reside on over 10,000 websites were not "otherwise immaterial," and there is no evidence that Cloudflare's service to 17 websites significantly magnified infringements of ALS's works.

Moreover, even focusing on just Cloudflare's customers' websites,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

undisputed evidence shows that Cloudflare's services make no substantial difference to infringements. The testimony of ALS's own witnesses, Mr. Penn and Dr. Ghandeharizadeh, confirms that, with or without Cloudflare, the allegedly infringing material would be available on the accused websites. This establishes beyond dispute that Cloudflare does not substantially assist infringements of ALS's works.

### B. ALS Abandoned Its Argument That Cloudflare's Speed Makes a Difference to Infringements.

Earlier in the case ALS cited Cloudflare's advertisements to argue that its speed improvements constituted substantial assistance to infringements. ALS does not respond to Cloudflare's arguments disproving that point in its opposition brief, and ALS thus waived that argument. This is hardly surprising in light of its own expert's concession that the actual time difference was in milliseconds. ALS's opposition brief contains some apparently vestigial and vague references (at 3, 22) to Cloudflare's fast and reliable service, without showing any evidence to show how Cloudflare's speed *makes an actual difference to infringements*.[4] The payment processors in *Visa* no doubt facilitated the speed of infringing activity by enabling

---

[4] Dr. Ghandeharizadeh's Opposition Declaration attempts to deflect his concession about an immaterial speed difference in two ways, by introducing new opinions that ALS failed to disclose in its original and rebuttal expert disclosures. Even assuming his new opinions are admissible (Cloudflare is lodging objections separately), they make no difference. First, Dr. Ghandeharizadeh hypothesizes that an Internet user might wish to download *100 images* and load the images one at a time; even in that scenario he calculates a time differential of 6 seconds *in total*. Ghandeharizadeh Opp. Decl. ¶¶ 5-7. Apart from the fact that he constructed a hypothetical situation without any actual testing or relevant real-world observation, he cannot show that a 6 second difference for a download of 100 images is material to any infringements. Second, his reference to Cloudflare's worldwide network of data centers as avoiding traffic congestion or queueing delays at the origin server artfully creates a vague impression, but lacks any actual data to illuminate the actual time lag in milliseconds. Instead of using real statistics, he resorted to a meaningless and wholly irrelevant Starbucks analogy. His speculation is not competent evidence of anything.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

instant online transactions instead of forcing the websites to collect payments by check or money order. The Ninth Circuit recognized that payment services caused an increase in infringements, yet the increase they facilitated did not rise to the level of "substantial assistance." *Visa*, 494 F.3d at 797. Here, in comparison to payment services, Cloudflare's services make *less* of a difference to alleged infringements: there is *no* evidence that Cloudflare's services lead to *any* increase in infringement, and therefore they cannot be a "substantial assistance" to any infringement.

**C.    Undisputed Evidence Shows That Cloudflare Provides Host Information to Complainants, Negating ALS's Argument That Cloudflare Blocks the Information.**

Cloudflare's opening brief showed that its DNS service does nothing to conceal information about website owners, contrary to ALS's earlier arguments. A DNS service merely translates familiar domain name addresses to numerical IP addresses that machines and networks use to direct traffic on the Internet. Declaration of Albert Lee Guinn III in Support of Cloudflare, Inc.'s Motion for Summary Judgment (Dkt. 351) ("Guinn Decl.") ¶¶ 9-11.

ALS appears to have abandoned its argument about the DNS service, but it now complains that copyright owners can get IP addresses of hosts only through a "multi-step run around." Undisputed evidence defeats that argument as well.

The evidence shows that Cloudflare's abuse complaint process focuses on getting accurate information to both hosting providers of its customers and to complainants. That requires an automated process for which web form submissions are essential. Whenever a complainant submits a copyright abuse complaint on Cloudflare's web form, Cloudflare responds by identifying the relevant hosting provider and providing its contact information to the complainant. ALS's agent Mr. Easton admitted that, because Cloudflare provides host identities and contact information in response to web form complaints, he would use Cloudflare's web form whenever a case was "serious enough to where I had to find out the host.

I don't use it if I don't have to find out who the host is . . . . " Bridges Decl. ¶ 6p, Ex. 7 at 124:4-125:20. That admission defeats ALS's argument that Cloudflare blocked information for enforcement.

Moreover, when someone submits a copyright abuse complaint to Cloudflare using its web form, Cloudflare will also forward the details of the complaint to the customer's hosting provider and provide the hosting provider the source website's IP address so that the host can identify the resource at issue on its system. Declaration of Justin Paine in Support of Cloudflare, Inc.'s Motion for Summary Judgment (Dkt. 353) ("Paine Decl.") ¶ 8; Bridges Decl. ¶ 14c, Ex. 22 (Response to Admission Request 13).[5]

ALS appears to complain that Cloudflare does not allow the *public* to see the source IP address of a customer's website, but that rule has a valid security reason: to deter malicious attacks using that IP address. (There is a careful exception to the rule: Cloudflare furnishes source website IP addresses to participants in Cloudflare's Trusted Reporters Program, which includes vetted organizations and law enforcement agencies.) The point of Cloudflare's service is to route data through its own IP addresses and system to look for telltale signs of malicious traffic and to intercept attacks. Guinn Decl. ¶ 3; Paine Decl. ¶ 8; Declaration of Nick Sullivan in Support of Cloudflare, Inc.'s Motion for Summary Judgment (Dkt. 352) ("Sullivan Decl.") ¶ 3.

---

[5] ALS criticizes Cloudflare's web form system as offering "sham" responses, based solely on the testimony of Mr. Spillane, who claims to have experimented with the system. But unsurprisingly, ALS did not identify its trial counsel, Mr. Spillane, as a fact or expert witness in any of its Rule 26 disclosures, and his testimony cannot create a genuine issue of fact. Fed. R. Civ. P. 26, 37; *see Benjamin v. B & H Educ., Inc.*, No. 13-cv-04993, 2015 WL 6164891, at *2 (N.D. Cal. Oct. 16, 2015) (striking declarations on summary judgment because plaintiffs had not disclosed the witnesses pursuant to Rule 26), *aff'd*, 877 F.3d 1139 (9th Cir. 2017). Bridges Reply Decl. ¶ 3, Exs. 1-2. Cloudflare is lodging objections separately.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Making the IP address available to anyone who makes a complaint would undermine the very security service that Cloudflare provides. Moreover, the value of an IP address to a copyright complainant is for use in conjunction with other tools to obtain information about the owner of the IP address, which is typically the hosting provider. But Cloudflare already provides the identity and contact information of hosting providers in response to complaints, so Cloudflare's response actually *saves* the complainant further steps. *See* Paine Decl. ¶ 8.

For these reasons, undisputed evidence shows that Cloudflare's system actively provides information for enforcement rather than blocking it. The system depends on complainants using the system in good faith. ALS instead used emails— which generally took its agent longer to prepare than web form submissions, *see* Bridges Decl. ¶ 6l, Ex. 7 at 105:1-9—to frustrate the system Cloudflare had set up to assist complainants. ALS's arguments, which rest on its own failure to use Cloudflare's system, are just a bad-faith pretext to seek windfall statutory damages.

The undisputed evidence shows that Cloudflare provides no substantial assistance to infringers on any ground that ALS has suggested. On that basis alone the Court should grant summary judgment to Cloudflare, and it does not need to reach the next step in the analysis.

## III.   ALS FAILS TO MEET THE CONTRIBUTORY INFRINGEMENT STANDARD FOR CLAIMS AGAINST COMPUTER SYSTEM OPERATORS UNDER *AMAZON.COM.*

In its opening brief, Cloudflare showed how "substantial assistance" is only a threshold question on a contributory infringement claim. If a plaintiff can show "substantial assistance," as Perfect 10 did with Google, the plaintiff must still meet the further standard of showing (1) a defendant's "*actual* knowledge that *specific* infringing material is available using its system" and (2) a failure to "take simple measures to prevent further damage." *Amazon.com*, 508 F.3d. at 1172; *Giganews*, 847 F.3d at 671. Unable to meet this standard, ALS sidesteps it.

*Amazon.com* is the leading precedent and *Giganews* is the most recent decision of the Ninth Circuit that reaffirms this standard for computer system operators. But ALS skirts those decisions, burying *Amazon.com* in a discussion of numerous other cases and falsely describing *Giganews*. ALS argues that the Ninth Circuit's standards are variable, stating that the Ninth Circuit model jury instructions omit the "simple measures" standard.

But ALS is wrong: the Ninth Circuit model jury instructions *do* incorporate the standard. While the basic instruction is generic, the accompanying comment explains that the "simple measures" standard applies *specifically in the online context*, just as *Amazon.com* had designed it:

> In the online context, a computer system operator may be liable under a material contribution theory if the operator has actual knowledge of specific infringement, can take simple measures to prevent further infringement, and yet fails to do so. *See Giganews*, 847 F.3d at 671.

Ninth Circuit Manual of Model Jury Instructions, comment to § 17.21.

As for *Akanoc*, Cloudflare is entitled to summary judgment under it because Cloudflare does not provide an "essential step" to infringement, which was the key to the liability of the hosting provider in that case. *See* 658 F.3d at 944. Unlike the web server host in *Akanoc*, Cloudflare has no "master switch" that can turn off a website or remove an image. *See id.* at 943.

But in all events, any new standard in *Akanoc* that purports to change the standard under *Amazon.com* and *Visa* is not good law. The majority in *Visa*, criticizing Judge Kozinski's dissenting "essential step" proposal, pointed out the conflict between his proposal and *Amazon.com. See Visa*, 494 F.3d at 797. Accordingly, the *Akanoc* panel had no authority to establish an alternative standard to *Amazon.com* that *Visa* had rejected; only an *en banc* ruling can change the law of an earlier panel decision. *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Recently, the district court in *VHT, Inc. v. Zillow Grp., Inc.*, No. C15-1096 JLR, 2017 WL 2654583 at *16 (W.D. Wash. June 20, 2017), rejected an "alternative" *Akanoc* standard as contrary to *Amazon.com* and *Giganews*. This Court should do the same, even though, as we discuss above, *Akanoc* would not require a different result because Cloudflare provides no "essential step" to infringement.

The other cases on which ALS relies likewise fail to change the clear standard under *Amazon.com* and *Giganews*. Without acknowledging the governing Ninth Circuit standard, ALS gleans stray scraps of language from various cases with no respect for their reasoning, holdings, or the vast factual differences between those cases and this one. Most of these cases are old, predating *Amazon.com*'s creation of a specific standard for computer system operators. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), and *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971), (regarding operation of a flea market and concert promotions) did not concern online services and also involved events that the defendants themselves organized and promoted. Similarly, *Screen Gems-Columbia Music, Inc., v. Mark-Fi Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966), predated the Internet and involved shipment of infringing phonorecords. All of those cases are irrelevant in light of the Ninth Circuit's creation of a special framework for contributory infringement claims against computer system operators in *Amazon.com*.[6]

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), and *Netcom* involved Usenet providers, like the defendants in *Giganews*; the providers maintained

---

[6] The Ninth Circuit in *Visa* flatly rejected the contention ALS makes here that "[t]he online world is no different." Opp. at 19. Rejecting the dissent's "resurrection of the 'dance-hall-owner/absentee-landlord' cases, the *Visa* court noted: "[t]hose tests were developed for a brick-and-mortar world, and, as the *Napster* and *Grokster* courts implicitly recognized by paying little attention to them, they do not lend themselves well to application in an electronic commerce context." *Visa*, 494 F.3d at 798, n.9.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

newsgroups that functioned like directories making it easier for users to locate material. Like Napster and the defendants in *Grokster*, the service providers made infringements significantly easier to find (and even then the Ninth Circuit found no material contribution in *Giganews*). *See Napster*, 239 F.3d at 1022 (noting that without Napster, "users could not find and download the music they want with the ease of which defendant boasts"). And in *Perfect 10, Inc., v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1170 (C.D. Cal. 2002), the defendant provided technical and content advice to sites, reviewed them, and controlled their quality by bundling them to consumers as a unified brand, which the district court considered "crucial." None of these cases supports ALS's claim here.

ALS also invokes *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, No. 16-1972 (4th Cir. Feb. 1, 2018), for a jury verdict that the Fourth Circuit vacated with little insight on the question of "material contribution"; it merely referred to the "substantial assistance" element of *Amazon.com* without addressing the further "simple measures" standard. The Ninth Circuit itself is a better authority in this Circuit.

Finally, ALS imports *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015) out of left field: that was a trademark, not copyright, case concerning infringing domain names in Cloudflare's DNS service. Cloudflare was not a defendant, and there was no question of contributory infringement. Instead, the decision concerned the scope of Fed. R. Civ. P. 65.

In sum, none of the cases ALS cites alters the governing Ninth Circuit standards, and none of the decisions calls for a different outcome on the facts of this case. Because ALS cannot show Cloudflare's actual knowledge of specific infringements, or the failure to take simple measures to prevent further damage to ALS's works, ALS's contributory infringement claim fails.

### A. ALS Concedes That Cloudflare Has No Actual Knowledge of Specific Infringing Material.

ALS's opposition brief never argues that Cloudflare has actual knowledge of specific infringements. ALS could not have made the argument with a straight face anyway: both of its experts conceded, on reviewing ALS's copyright abuse complaints, that the complaints provided no actual knowledge of infringements. Bridges Decl. ¶¶ 9k-9l, Ex. 13 at 63:1-7, 63:9-21; *id.* ¶ 10i, Ex. 17 at 110:3-15. Nor did ALS identify any actual knowledge of specific infringements as a factual basis for its claim in its contention interrogatory responses. Bridges Reply Decl. ¶¶ 10-11, Exs. 10-11. On this basis alone, ALS cannot establish contributory infringement by Cloudflare, and Cloudflare is entitled to summary judgment.[7]

### B. ALS Cannot Show Evidence That Cloudflare Failed to Take Simple Measures to Prevent Further Damage to ALS's Works.

The undisputed evidence shows that, for two different reasons, Cloudflare did not fail to take simple measures to prevent further damage to ALS's works.

*First*, as in *Giganews*, there were no simple measures available to Cloudflare in the face of the gibberish complaints that ALS sent. *Had ALS used Cloudflare's web form*, Cloudflare would have applied its automated process to forward complaints to its customers and the customers' hosting providers (unless a complainant wanted one of them not to receive its complaint); Cloudflare would have provided the identity and contact information of the hosting providers to ALS;

---

[7] The fact that the "material contribution" standard of contributory infringement requires *actual* knowledge of *specific* infringements is clear from the fact that the Ninth Circuit repeatedly emphasized those words with italics in its seminal cases. *See Napster*, 239 F.3d at 1022; *Amazon.com*, 508 F.3d at 1172, 1176; *Giganews*, 847 F.3d at 671. Moreover, ALS concedes (Opp. at 24) that Cloudflare's systems have substantial non-infringing uses. That forecloses liability based on constructive knowledge by Cloudflare of infringements over its system or any imputed intent to foster infringement. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 440-42 (1984); *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and Cloudflare would have given to the hosts the source IP addresses of the customers' websites if the hosts needed them to identify the resources at issue. Paine Decl. ¶¶ 5-8. ALS's Easton knew he could obtain the host provider information from Cloudflare if he wanted it. But he chose not to do so most of the time, unless the host information was particularly important. Bridges Decl. ¶ 6p, Ex. 7 at 124:4-125:20.

Nearly the same fact pattern existed in *Giganews*, where Perfect 10 refused to provide Giganews complaints in a form that allowed Giganews to apply its automated processes to remove infringing Usenet messages from its servers. The district court analyzed the notice issue as precluding actual knowledge of specific infringements without reaching the material contribution issue. *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098-AB (SHx), 2014 WL 8628031, at *8–11 (C.D. Cal. Nov. 14, 2014). The Ninth Circuit swapped the grounds of decision, treating it as a material contribution issue without reaching the question of actual knowledge of specific infringements. *Giganews*, 847 F.3d at 671. On this basis alone, Cloudflare is entitled to summary judgment.[8]

*Second*, even if Cloudflare receives perfect complaints through its system, it can do no more than it already does: it notifies customers and their hosts and passes

---

[8] ALS's statement that Mr. Easton's emails contained "machine readable" URLs, while echoing the discussion in *Giganews* about machine-readable Usenet Message-IDs, does nothing to contradict Cloudflare's evidence that the email submissions were unworkable. Apart from the other reasons, ALS's insistence that a single URL would identify both the infringed work and the infringing work, because ALS claimed they were one and the same, shows that the emails were fundamentally flawed. Moreover, none of the emails from ALS could trigger any action within Cloudflare's control: they could not affect Cloudflare's transmission function at all, and without information showing that the relevant material had disappeared from the source website (which all emails lacked), it would not make a difference to clear a cache when any new cache would contain the same material. Cloudflare needed information from complainants through its web form to facilitate the transmission of the information to the hosting providers and to generate a meaningful response to the complainants with the host information. Paine Decl. ¶¶ 5-6.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

contact information for the hosts back to complainants. Cloudflare cannot alter customers' websites; it cannot shut the websites down; it cannot selectively remove infringements from its caches; and if it clears its caches of entire web pages, the system may automatically refresh the caches if the conditions for doing so exist (a rapid succession of requests for the same material). Paine Decl. ¶ 3; Sullivan Decl. ¶¶ 4-5; Guinn Decl. ¶¶ 7, 15. And even if Cloudflare completely halts services to the websites, the images on the websites will remain available directly from the website host. Dr. Ghandeharizadeh conceded as "factually correct" the statement that Cloudflare is not a hosting company and has no way to remove content from a website or pull a site entirely offline. Bridges Decl. ¶ 9i, Ex. 13 at 60:13-61:12. He also admitted that Cloudflare cannot control the content of its customers' websites. *Id.* ¶ 9j, Ex. 13 at 61:17-62:25. Again, Cloudflare has no "master switch" to remove an image or turn off a website.

ALS and its experts propose hypothetical stratagems that are not simple. ALS starts by confusing measures for *processing or investigating complaints* with measures for *preventing future damage*. ALS's expert Dr. Luna believes that, with an army of 28 expert copyright lawyers on staff, Cloudflare might be able to determine whether complaints identify actual infringements. Bridges Decl. ¶ 10b, Ex. 17 at 33:5-37:23. Dr. Luna also believes that Cloudflare could adopt a content moderation program for $64 million, but that would serve little purpose because it would not change what is on Cloudflare's customers' sites. *Id.* ¶ 10c, Ex. 17 at 40:21-41:7, 42:15-43:18; *id.* ¶ 10h, Ex. 17 at 58:1-10; *id.* ¶ 16, Ex. 24. Similarly, Dr. Ghandeharizadeh speculated that Cloudflare could develop a filtering system with technology to recognize images or search for URLs or metadata to address what is within Cloudflare's cache, but it would also be a largely pointless effort: such filtering would not only be complex, challenging, and likely expensive, but it would also ultimately be useless, as it would not affect what is on Cloudflare customers' websites or remove any of their materials from the Internet. Bridges

Fenwick & West LLP
Attorneys at Law
San Francisco

Decl. ¶¶ 9vv-9aaa, Ex. 13 at 116:24-118:8, 118:21-25, 119:9-121:5, 125:2-126:18, 126:19-127-10, 127:11-18, 128:4-130:2, 132:20-133:11, 178:11-19.

In his opposition declaration, Dr. Ghandeharizadeh expands on his speculations without any facts or figures to illuminate them. He alludes to "software techniques to detect . . . images with a high accuracy to either remove them from its caches, prevent them from being cached, or both." Ghandeharizadeh Opp. Decl. ¶ 16. He describes a "simplest form" of technique involving the use of an image URL to author a filter, *id.* at ¶ 17, but he fails to map that task either to ALS's 500,000 images, *see* Bridges Reply Decl. ¶ 12, Ex. 12, or to the hundreds of billions of images on the Internet. He then describes a "more complex approach," drawing an analogy to Facebook's system for identifying *persons* based on images, which is a very different process from identifying *images*.[9] Dr. Ghandeharizadeh fails to explain how Facebook's process would qualify as a "simple measure" to prevent further damage to ALS's works, again where Cloudflare would be unable to affect what is on its 17 customers' websites and in an environment where over 10,000 other websites are also infringing ALS's works. This is particularly true given that, unlike Facebook, Cloudflare has no ability to review or scan the content of its customers' image files or other data. Sullivan Decl. ¶ 8; Guinn Decl. ¶ 11.

To Dr. Ghandeharizadeh's credit, he was forthright about his ultimate views and qualifications:

> During my deposition I was asked whether the filtering and image recognition technologies [I had discussed] were "simple" and I said

---

[9] As Cloudflare stated earlier, it is lodging objections to Dr. Ghandeharizadeh's Opposition Declaration. The Court should exclude this testimony because (a) it contains new opinions that ALS never disclosed in its expert reports and (b) it consists of mere conjecture unsupported by any scientific methodology or personal testing or observation. Apart from the fact that the declaration is inadmissible, his mere speculation cannot defeat summary judgment. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   no, not from a technical standpoint. While relevant software

2   components exist, these must be integrated into Cloudflare's software

3   infrastructure. *Whether writing and employing the software techniques*

4   *discussed in this declaration would be "simple" from the standpoint*

5   *of Cloudflare's financial and staffing resources and the relative*

6   *importance to Cloudflare of employing such technology in its*

7   *operations is beyond my knowledge and area of expertise.*

8   Ghandeharizadeh Opp. Decl. ¶ 19.

9       Thus, ALS has zero evidence of any simple measures available to Cloudflare

10   to prevent further damage to ALS's works.[10]

11       Termination of Cloudflare's service would not be an *effective* measure, even

12   if a "simple measure" required throwing a baby out with the bathwater, because it

13   would not affect the prevalence of infringements. By contrast, termination could

14   subject its customers' websites to attacks that could further harm ALS. Without

15   protection, Cloudflare's customers might suffer "scraping" of their website contents

16   for further dissemination across the Internet. They could also suffer cyberattacks

17   that could, in turn, weaponize their sites to attack others including ALS (which

18   previously suffered a denial of service attack, *see* Bridges Reply Decl. ¶ 8a, Ex. 8 at

19   98:24-100:11) and to disrupt large portions of the Internet.

20       In sum, there is no evidence that Cloudflare had actual knowledge of specific

21   infringements of ALS's works, or that Cloudflare failed to take simple measures to

22

23   _____

24   [10] Nor did ALS's responses to contention interrogatories identify any simple

25   measures that Cloudflare failed to take. Bridges Reply Decl. ¶¶ 10-11, Exs. 10-11.
    As a consequence, even if ALS were to have competent evidence on that point, its

26   failure to disclose the facts in response to the interrogatories precludes its reference

27   to them in opposing Cloudflare's summary judgment motion. *Sutrisno v. WebMD Practice Services, Inc.*, No. 04-cv-4516 MMM, 2005 WL 8154571, at *9-10 (C.D.

28   Cal. June 30, 2005).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   prevent further damage. For this additional reason, Cloudflare is entitled to

2   summary judgment.

3                                    **CONCLUSION**

4          For each of four independent reasons, Cloudflare is entitled to summary

5   judgment. (1) There is no competent evidence of *direct* infringement *by Cloudflare*

6   *customers*. (2) There is no evidence that Cloudflare "substantially assists"

7   infringements under the threshold standard of *Amazon.com* (or that it provides an

8   "essential step" to infringement even under *Akanoc*). (3) ALS does not argue that

9   Cloudflare has *actual* knowledge of *specific* infringing material on its system in

10  light of its own experts' admissions that ALS's complaints did not convey actual

11  knowledge. And (4) ALS and its experts cannot show that Cloudflare failed to take

12  any simple measures to prevent further damage to ALS's works under *Giganews*

13  and *Amazon.com*. Taking all evidence into account, the record is clear that there is

14  no dispute as to any material fact of contributory copyright infringement, and

15  Cloudflare is entitled to judgment as a matter of law. Cloudflare therefore

16  respectfully asks the Court to grant its motion and to enter judgment for Cloudflare.

17

18                              Respectfully submitted,

19  Dated:  February 26, 2018              FENWICK & WEST LLP

20

21                                  By:    */s/  Andrew P. Bridges*

22                                         Andrew P. Bridges

23                                         Attorneys for Defendant
                                           CLOUDFLARE, INC.

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO