JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT COURT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br>**DEFENDANT STEADFAST NETWORKS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA**<br><br>Filed Concurrently: Response to Statement of Genuine Disputes; Request for Evidentiary Ruling; Response to Request for Evidentiary Ruling.<br>**Hearing Date: March 12, 2018**<br>**Hearing Time: 8:30am**<br>**Place:   Courtroom 9D, 9th Fl.**<br>**           350 West 1st Street**<br>**           Los Angeles, CA, 90012**<br>**Judge:   Hon. George H. Wu** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

SUMMARY JUDGMENT STANDARD..........................................................1

FACTS .................................................................................................................2

ARGUMENT ......................................................................................................4

I.   STEADFAST IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
THAT ALS'S NOTICES ARE INEFFECTIVE UNDER § 512(C)(3)....................4

   A.   ALS notices were not sent to the designated agent, as a matter of law. ......4

   B.   Alternatively, ALS notices were not substantially compliant with 512(c)..5

II.   STEADFAST IS ENTITLED TO THE SAFE HARBOR DEFENSE .............6

   A.   ALS fails to create a genuine dispute of material fact regarding Steadfast's
compliance with § 512(c)(2)......................................................................7

   B.   ALS fails to create a genuine dispute of material fact regarding Steadfast's
compliance with § 512(i)(1)(A)..................................................................7

     1.   Steadfast adopted and informed its users of its policy.............................8

     2.   Steadfast implemented its policy. ...........................................................10

     3.   Steadfast implemented its policy reasonably. ........................................12

      i.   If this Court rules that ALS's notices are ineffective................................12

      ii.    In the alternative: ALS creates noise that is not based in law. ...............12

   C.   ALS fails to create a genuine dispute of material fact regarding Steadfast's
compliance with § 512(c)(1)(A) and (C).........................................................14

CONCLUSION .................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **CASES**

4 *ALS Scan, Inc. v. Remarq Communities*, 239 F.3d 619 (4th Cir. 2001) .....................6

5 *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) ..........2

6
7 *BMG Rights Mgmt. LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634 (E.D. Va.,
   Dec. 1, 2015) ...................................................................................................14

8
9 *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................2

10 *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004)........10

11 *Disney Enters. v. Hotfile Corp.*, 2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28,
12    2013)...............................................................................................................14

13 *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)..................................... 8, 10, 11

14 *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009).........................................................6

15 *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931 (7th Cir. 2011) .........................17

16
17 *Hempton v. Pond5, Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830
   (W.D. Wash. Oct. 25, 2016).............................................................................9

18
19 *Hendrickson v. Ebay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001)..........................8

20 *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017).........7

21 *Perfect 10, Inc. v. CCBill*, 488 F.3d 1102 (9th Cir. 2007)................................ passim

22 *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002)14

23 *Rosen v. eBay, Inc.*, No. CV 13-6801 MWF (Ex), 2015 U.S. Dist. LEXIS 49999
24    (C.D. Cal. Jan. 16, 2015)................................................................................11

25 *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004).............15

26 *Scott v. Harris*, 550 U.S. 372 (2007) .........................................................................2

27 *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir.
28    2013)..........................................................................................................3, 13

**STATUTES**

17 U.S.C. § 512(c) ............................................................................ passim

17 U.S.C. § 512(i) ...............................................................................6, 12

17 U.S.C. § 512(k) ..................................................................................6

**OTHER AUTHORITIES**

Nimmer on Copyright § 12B.04 (2017)......................................................5

**RULES**

Fed. R. Civ. P. 56 ...................................................................................1

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

## PRELIMINARY STATEMENT

Defendant Steadfast Networks, LLC ("Steadfast") submits this reply in support of its motion for partial summary judgment against Plaintiff ALS Scan, Inc. ("ALS") on its Digital Millennium Copyright Act ("DMCA") affirmative defense and on ALS's ineffective notices. The undisputed material facts, many of which are simply ALS's admissions, render a trial a waste of judicial resources. ALS raises trivial disputes that have already been decided by precedent. For a multitude of reasons, all based in law, Steadfast should not be in this litigation.

For example, the key precedent here is *Perfect 10, Inc. v. CCBill*, 488 F.3d 1102, 1111 (9th Cir. 2007). The almost eleven-year-old Ninth Circuit decision has withstood the test of time. The lessons are clear: "To identify and terminate repeat infringers, a service provider need not affirmatively police its users for evidence of repeat infringement. … Were [courts] to require service providers to terminate users under circumstances other than those specified in § 512(c), § 512(c)'s grant of immunity would be meaningless." *Id.* Additionally, the *CCBill* Court determined that ineffective notices are excluded not only for assessing a service provider's knowledge, but also for assessing a service provider's repeat infringer policy. *Id.* at 1113.

Throughout its opposition, ALS makes a lot of noise about what Steadfast should have done; ALS's normative claims about what Steadfast should have done are outside the scope of § 512(c). The Ninth Circuit is clear: "[Courts] impose no such investigative duties on service providers." *Id.* at 1111. ALS knows this. As the following demonstrates, Steadfast is entitled to partial summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, Steadfast moves on its affirmative DMCA defenses and part of that defense. *See id.* Of course, as the moving party, Steadfast carries the initial

burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Without question, Steadfast has satisfied this initial burden of production. Indeed, ALS does not argue otherwise, nor would such argument have any merit.

Accordingly, ALS must "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[C]onclusory or speculative testimony is insufficient to raise a genuine issue of fact." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995).

## **FACTS**

Steadfast is a data-center service provider, offering cloud-based storage solutions. Response to Statement of Genuine Disputes ("RSGD") ¶ 1. Steadfast has established terms and conditions for use of its services, which all of its clients are required to accept. *Id.* ¶¶ 3-4. Its terms and conditions are posted on its website. *Id.* ¶ 5. Steadfast "reserve[s] the right to terminate service to any client for any reason not prohibited by law," including copyright and trademark infringement. *Id.* ¶ 7. Steadfast, however, has never terminated a client for repeat copyright infringement because it has never had a client who repeatedly infringed copyrights. *Id.* ¶¶ 9-10.

Steadfast has a working notification system to process DMCA notifications. *Id.* ¶ 11. At all relevant times, Steadfast had (and has) a designated agent to receive notices of claimed copyright infringement registered with the Copyright Office and the necessary information posted on its website. *Id.* ¶¶ 12-13. Steadfast employs procedures for processing notifications that comply with the DMCA and those that are non-compliant with the DMCA. *Id.* ¶¶ 15-16. Steadfast does not prevent or interfere with copyright owners from collecting information needed to issue notifications. *Id.* ¶¶ 17-18.

Steadfast and former client Flixya Entertainment, LLC have always been separate, different, and unaffiliated legal corporate entities. *Id.* ¶ 21. Steadfast provided server rental services to Flixya. *Id.* ¶ 22. The Flixya-leased servers were

"dedicated servers," meaning that the Flixya-leased servers were entirely operated, managed, and controlled by Flixya. *Id.* ¶¶ 26-27. The Flixya-leased servers were initially "set up so that Flixya could access them" remotely. Dkt. 345, KZ Dep. 31:10-11. Flixya paid a monthly flat fee for basic management of the dedicated servers; Basic Management is just a way of saying that Steadfast will not "do anything with the system" of the dedicated servers, such that "there's no proactive nature or activity" with the dedicated servers. Dkt. 301-3, KZ Dep. 18:12-15. Basic Management is basic at its core; turn on the server and make sure it works. *Id.*

Flixya owned, hosted, managed, operated, and created <imagebam.com>, operating all of the website's functions. RSGD ¶ 31. Flixya's <imagebam.com> is a host for user-uploaded content; only users of Flixya's <imagebam.com> upload images to the website. *Id.* ¶¶ 34-35.

It is without question that Flixya participated in the DMCA procedures enacted by Congress. RSGD ¶¶ 21, 35, 41-43, 48, 68-69. Flixya also "cooperat[ed]" with others "in dealing with infringement on the Internet"–just as Congress intended. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013); *see* RSGD ¶¶ 21, 35, 41-43, 48, 68-69. Based on Flixya's <imagebam.com>'s terms of service, <imagebam.com>'s users were required to agree to <imagebam.com>'s terms of service. RSGD ¶ 40. Those terms provided that, "[u]nder the DMCA, a claim must be sent to the service providers Designated Agent." *Id.* ¶ 40 (quoting Penn. Decl. Ex. 20, Dkt. 300-20). On the home page of <imagebam.com>, Flixya placed a "Report Abuse" link. *Id.* ¶ 41.

The "Report Abuse" link resolves to a page that discusses providing notice of infringement to dmca@imagebam.com. *Id.* ¶ 42. Flixya's <imagebam.com> designated an agent, whose information was available on its website and registered with the Copyright Office. *Id.* ¶ 43. On both the website and Copyright Office registration form, Flixya did not mention Steadfast. *Id.* ¶ 45 (citing Dkt. 319, ¶ 97).

In the emails Easton sent to Steadfast, Easton included <imagebam.com>

hyperlinks that allegedly resolved to ALS images. *Id.* ¶ 51. "Steadfast did not have awareness of any alleged specific infringement prior to the DMCA notification." Dkt. 319, ¶ 73; RSGD ¶ 62 (same). When, and after, ALS improperly sent notifications to Steadfast, Steadfast immediately forwarded the notices to Flixya's designated agent for <imagebam.com>. RSGD ¶ 65. ALS <u>confirmed that all the images addressed in the notices were expeditiously removed</u>. *Id.* ¶¶ 67-69. ALS admits this: "And as far as you understand or are aware, all of these images have been removed? A. Yes." *Id.* ¶ 68. Steadfast is not aware of any instances that Easton sent a follow up email indicating that the content had not been removed. *Id.* ¶ 69. Here, Steadfast did more than what is required under the DMCA by responding to Easton and forwarding his faulty notices to Flixya. Steadfast should not be in this case.

## <u>ARGUMENT</u>

## I.   STEADFAST IS ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT ALS'S NOTICES ARE INEFFECTIVE UNDER § 512(C)(3).

To be effective, a copyright holder's "notification of claimed infringement must [1] be a written communication [2] provided to the designated agent of a service provider that [3] includes substantially the [elements listed in § 512(c)(3)(A)(i)-(vi)]." 17 U.S.C. § 512(c)(3)(A). Here, ALS's notices are not effective under § 512(c)(3) on two independent grounds: first, ALS's notices to Steadfast were not "provided to the designated agent of [<imagebam.com>,]" *see* Dkt. 339, p. 8-10; and, second, ALS's notices failed to substantially comply with all of the elements listed in § 512(c)(3)(A)(i)-(vi). Because ALS fails to create a genuine dispute as to any material fact, Steadfast is entitled to partial judgment that ALS's notices are not effective under § 512(c)(3), as a matter of law.

### A.   ALS notices were not sent to the designated agent, as a matter of law.

Easton used Flixya's <imagebam.com> services when he allegedly viewed infringements, *id.* ¶ 51, that were uploaded by <imagebam.com> users, *id.* ¶ 35.

Because Easton used <imagebam.com> services, *id*. ¶ 51, he thus agreed to send notices of claimed copyright infringement on <imagebam.com> to the *designated agent* of Flixya's <imagebam.com>, *id*. ¶¶ 40-43. On both Flixya's <imagebam.com> website and Copyright Office registration form, *id*. ¶ 43, Flixya did not mention Steadfast, *id*. ¶ 45 (quoting Dkt. 319, ¶ 97). *See id*. ¶ 21. Easton, however, sent notices of claimed infringement on Flixya's <imagebam.com> to Steadfast, which is an unrelated company. *Id*. ¶¶ 21, 50-51. Because Flixya never designated Steadfast to be the agent to receive notices of claimed infringement on <imagebam.com>, *id*. ¶ 43, Easton failed to provide notice "to the designated agent of a service provider[,]" pursuant to § 512(c)(3)(A). *See* Nimmer on Copyright § 12B.04 (2017) (notice "which is not served on the service provider's designated agent" is a "nullity.").

Here, ALS does not contend Steadfast failed to meet its initial burden of production; ALS does not respond to this argument in its Opposition; ALS does not provide any evidence disputing any of these material facts. *See id*. ¶¶ 21, 35, 40-43, 45, 50-51. Accordingly, summary judgment is warranted in favor of Steadfast.

### B.    Alternatively, ALS notices were not substantially compliant with 512(c).

"[S]ubstantial compliance means substantial compliance with *all* of § 512(c)(3)'s clauses, not just some of them." *Perfect 10, Inc. v. CCBill*, 488 F.3d 1102, 1112 (9th Cir. 2007). ALS's notices did not substantially comply with "all of § 512(c)(3)'s clauses" because the notices completely failed to comply with § 512(c)(3)(A)(ii) and § 512(c)(3)(A)(iii). *See* Dkt. 339, p. 10-12. Steadfast met its initial burden of production; ALS does not contend otherwise.

ALS counters, citing to *ALS Scan, Inc. v. Remarq Communities*, 239 F.3d 619, 624 (4th Cir. 2001), but that case does not stand for what ALS says it does. Regardless, as ALS should know, *CCBill* controls the inquiry as cited above. ALS states the following:

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA

Easton provided a hyperlink for each and every work infringed, which simultaneously [*sic*] identified the work infringed as well as the location of the infringing work on imagebam.com. … Easton's notification also provide the other elements (contact information, affirmation that the sender was authorized, etc.).

Dkt. 365, p. 15:20-24. These statements, however, are conclusory and are mere denials of Steadfast's argument and supporting evidence. *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."); *compare* Dkt. 365, p. 15:20-24 *with* RSGD ¶¶ 56, 58-61.

Accordingly, ALS's bald assertions cannot defeat Steadfast's motion. On either theory, Steadfast has shown that its entitled to partial summary judgment that ALS's notices were ineffective as a matter of law.

## II.   STEADFAST IS ENTITLED TO THE SAFE HARBOR DEFENSE

Steadfast moves for partial summary judgment on the § 512(c) safe harbor. Section 512(c) protects eligible service providers from all monetary relief "for infringement of copyright by reason of the storage [of material] at the direction of a user." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017) (quoting 17 U.S.C. § 512(c)(1)). To qualify for the § 512(c) protection, a service provider must satisfy a list of elements.

Before turning attention to the elements that ALS raises quibbles over, Steadfast will review the elements to which ALS has conceded or admitted. First, Steadfast qualifies as a service provider under § 512(k)(1)(B). *See* RSGD ¶ 1. Second, Steadfast satisfies §§ 512(i)(1)(B), (i)(2), because it accommodates and does not interfere with standard technical measures. *See id.* ¶ 18. Third, the parties agree that, assuming ALS's images were, in fact, stored on the Flixya-leased servers, the ALS images were not stored at the direction of Steadfast, *see id.* ¶¶ 35, 37; thus, Steadfast satisfies that specific element in § 512(c)(1). Fourth, Steadfast

satisfies the vicarious infringement-like requirement in § 512(c)(1)(C). *See id.* ¶¶ 70, 72; Dkt. 365, p. 1 (conceding vicarious infringement). With the dust settled, Steadfast will review the elements that are technically "challenged" no matter how frivolous:

**A.    ALS fails to create a genuine dispute of material fact regarding Steadfast's compliance with § 512(c)(2).**

Section 512(c)(2) requires a service provider to "designate an agent to receive notifications of claimed infringement" by posting "substantially the following information" on its website: "the name, address, phone number, and electronic mail address of the agent." 17 U.S.C. §§ 512(c)(2), (c)(2)(A).[1] Here, on its website's contact page, Steadfast provides its name address, phone number, and email address. *See* RSGD ¶ 13; *see* Dkt. 342-3; Dkt. 342, ¶¶ 18, 19. The name of a specialized department (here, "Abuse Department") is also sufficient. *Hendrickson v. Ebay, Inc.*, 165 F. Supp. 2d 1082, 1092 n.13 (C.D. Cal. 2001). Thus, Steadfast satisfies this requirement.

Raised only in its Statement of Genuine Disputes, ALS's "evidence" to the contrary is unavailing. ALS provides the Court with the incorrect page of Steadfast's website. *See* RSGD ¶ 13. It also provides inadmissible evidence of subsequent remedial measures. *See id.* ALS provides no material evidence; thus, no reasonable jury could find that Steadfast failed to satisfy § 512(c)(2).

**B.    ALS fails to create a genuine dispute of material fact regarding Steadfast's compliance with § 512(i)(1)(A).**

Section § 512(i)(1)(A) requires service providers to: "(1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implement that policy in a reasonable manner; and

---

[1] This section also requires a service provider to provide information to the Copyright Office, but ALS admits Steadfast satisfies this part of the requirement. *See* RSGD ¶ 12.

(3) inform its subscribers of the policy." *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) ("*Ellison* factors"). In *CCBill*, the Ninth Circuit split the second *Ellison* factor into two elements: "implementation" and "reasonableness." *CCBill*, 488 F.3d at 1109-1115. As the following shows, ALS fails to raise a genuine dispute of material fact that Steadfast: (1) adopted and informed its users of its policy; (2) implemented that policy; and, (3) implemented the policy reasonably.

      1.    <u>Steadfast adopted and informed its users of its policy.</u>

      To be eligible for the DMCA safe harbor, a service must adopt and inform users of a policy that satisfies § 512(i)(1)(A). The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058; *Ellison*, 357 F.3d at 1080 (assessing procedures "at the time the alleged infringing activities were taking place"); *Arista Records LLC v. Myxer Inc.*, 2011 U.S. Dist. LEXIS 109668, at *65 (C.D. Cal. Apr. 1, 2011) (same). Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

      Here, Steadfast has adopted and informed its users of its policy. *See* RSGD ¶¶ 3-7, 12-13, 17. ALS admitted to the following: (1) "Steadfast requires its clients to accept [its] terms and conditions[;]" (2) "Steadfast's terms and conditions agreement is posted on its website[;] and, (3) "Steadfast reserves the right to terminate any client for any violation not prohibit[ed] by law, including copyright and trademark infringement." Dkt. 319, ¶¶ 107-109; *see also* Dkt. 340-8 (incorporating Spillane Decl. Ex. 5, Dkt. 301-5 ("Also, [Steadfast] reserve[s] the right to terminate service to any client for any reason not prohibited by law.")). Indeed, Steadfast's policy "goes beyond the threshold requirement of [the] DMCA by communicating a policy to its users that allows for termination for any infringement." *Hempton v. Pond5,*

1   *Inc.*, No. 3:15-cv-05696-BJR, 2016 U.S. Dist. LEXIS 147830, at *19 (W.D. Wash.

2   Oct. 25, 2016).

3       In its Statement of Genuine Disputes, ALS pretends that these admissions

4   never happened. *See* RSGD ¶¶ 3-5. Despite the previous admissions, ALS

5   complains again that Steadfast's Terms: (1) "said nothing" about how or what

6   Steadfast would do in response to a notice of copyright infringement; (2) "on [*sic*]

7   reference to 'repeat infringers'"; (3) called only "for 'suspension' of accounts"; (4)

8   the "the criterion by which Steadfast would determine an account holder to be a

9   repeat infringer or terminate services." Dkt. 365, p. 17:15-27.

10      ALS's arguments are unavailing. The plain language of § 512(i)(1) belies all

11  of ALS's complaints. And ALS's unfounded claim that the policy called for only

12  "suspension" of accounts is disingenuous. *See* RSGD ¶ 7 (citing Dkt. 319, ¶ 109).

13      The most instructive case is *Corbis Corp. v. Amazon.com, Inc.*, which has

14  been consistently applied since 2004 when analyzing § 512(i)(1)(A) for this

15  purpose. *See* 351 F. Supp. 2d 1090, 1100-01 (W.D. Wash. 2004). There, the plaintiff

16  argued that the plaintiff didn't satisfy § 512(i)(1)(A), complaining that the

17  agreement and polices were too vague on copyright infringement, that the user

18  policies did not include the term "repeat infringer," and that it did not describe "the

19  methodology employed in determining which users will be terminated for repeated

20  copyright violations." *Id.* at 1100. The *Corbis* court rejected these arguments,

21  finding that "Congress chose not to adopt such specific provisions when defining a

22  user policy indicates its intent to leave the policy requirements, and the subsequent

23  obligations of the service providers, loosely defined." *Id.* at 1101.

24      Here, ALS raises the identical arguments that were rejected in *Corbis*. Since

25  2004, however, "[c]ourts in the Ninth Circuit have rejected arguments similar to

26  th[ose] raised by [ALS]." *Hempton*, 2016 U.S. Dist. LEXIS 147830, at *19; *see id.*

27  (following *Corbis* and rejecting similar arguments); *see also Rosen v. eBay, Inc.*,

28  No. CV 13-6801 MWF (Ex), 2015 U.S. Dist. LEXIS 49999, at *20 (C.D. Cal. Jan.

9

16, 2015) (same). Just as in *Hempton*, *Rosen*, and *Corbis*, this Court should conclude that ALS's meritless contentions do not raise a genuine dispute of material fact. Accordingly, Steadfast shows that it sufficiently adopted and informed users of its policy, pursuant to § 512(i)(1)(A).

      2.   <u>Steadfast implemented its policy.</u>

In *CCBill*, the Ninth Circuit held that a "service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications." 488 F.3d at 1109. Perfection is not required. *Id*. at 1110.

Here, Steadfast met its initial burden of production; ALS does not contend otherwise. ALS admits that Steadfast does not prevent copyright owners from collecting relevant information. RSGD ¶ 17. Steadfast also had (and has) a working notification system and a procedure for dealing with DMCA-compliant notifications. *Id.* ¶¶ 11, 15-16. As the following shows, ALS raises trivialities.

First, buried in its Statement of Genuine Disputes, ALS attempts to set up the illusion of an *Ellison*-like situation. *See id.* ¶ 11.[2] In *Ellison*, the Ninth Circuit reversed the district court's grant of summary judgment on the defendant's safe harbor defense, concluding that a genuine dispute remained as to whether the defendant satisfied § 512(i)(1)(A). *See* 357 F.3d at 1080. There, the evidence in the record showed that the defendant changed its designated agent's email address, but waited several months before registering the change with the Copyright Office. *Id.* at 1077. Thus, the court found that "evidence in the record … suggest[ed] that [the defendant] did not have an effective notification procedure in place at the time the alleged infringing activities were taking place." *Id.* at 1080. The court found that

---

[2] ALS also fixates on the post-lawsuit updated Terms; but this is just another red herring. Such evidence is immaterial, irrelevant, and inadmissible. *See id.* ¶ 11.

the "[defendant] allowed notices of potential copyright infringement to fall into a vacuum and go unheeded; that fact [was] sufficient for a reasonable jury to conclude that [the defendant] had not reasonably implemented its policy against repeat infringers." *Id.* Unlike the delay in Copyright Office registration in *Ellison*, here it is undisputed that Steadfast had (and has) a designated agent registered with the Copyright Office. *See* RSGD ¶ 12.

Instead, ALS's point is that it believes the Steadfast's website "did not state any email address that copyright owners could use to submit notice of infringement." *Id.* ¶ 11; *see also id.* ¶ 13. ALS also complains that it does have key words, such as "Abuse." *Id.* ¶ 11. Thus, ALS implies that, because the one referenced page of Steadfast's website does not explicitly state, hypothetically, "copyright owners send notice of infringement to 'X' email address," notices would fall into the abyss like those in *Ellison.*

ALS provides this Court with a red herring. ALS ignores Steadfast's "Contact" page that provides not only an online form for "[a]buse complaints" and for any other reason, but also the Abuse Department's email address for a copyright owner to email an "abuse complaint." *Id.* ¶¶ 11, 13 (citing Dkt. 342-3). Moreover, the Steadfast website page that ALS references, provides, "If you have any complaints …, please email" the same email address as listed on the "Contact" page. *Id.* (citing Dkt. 301-5). Contrary to ALS's unfounded implication, no notices are falling into the abyss. ALS's attempted dispute is neither genuine, nor material.

Second, ALS's disingenuously attempts to create an issue about Steadfast's procedures by overemphasizing the "Groupfivephotosports situation." *See id.* ¶¶ 15-16. But the "Groupfivephotosports situation" has nothing to do with whether Steadfast employs, or employed, a procedure for handling DMCA-compliant notifications. *See id.* ALS just makes a big deal out of nothing. Moreover, the "Groupfivephotosports situation" happened *years* before the relevant time period. Thus, it has no bearing on the present situation. Accordingly, ALS fails to create a

11

genuine dispute of material fact concerning whether Steadfast employed a procedure for handling DMCA-compliant notifications.

> 3.    Steadfast implemented its policy reasonably.

The DMCA "permits service providers to implement a variety of procedures, but an implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright." *CCBill*, 488 F.3d at 1109. In other words, a "service provider reasonably implements its repeat infringer policy if it terminates users when 'appropriate.'" *Id.* at 1111. "Section 512(i) itself does not clarify when it is 'appropriate' for service providers to act. It **only requires** that a service provider terminate users who are 'repeat infringers.'" *Id.* (emphasis added). Here, Steadfast met its initial burden of production; ALS does not assert otherwise.

> i.    *If this Court rules that ALS's notices are ineffective.*

As a preliminary matter, all of ALS's arguments presume this Court will not rule that ALS's notices are ineffective. Regardless of how the Court rules on the efficacy of the notices, Steadfast's position is that the undisputed facts show that it implemented its repeat infringer policy reasonably under § 512(i)(1)(A). Assuming the Court rules that ALS's notices are ineffective, the law is clear: Ineffective DMCA notices "do[] not raise a genuine issue of material fact that [a service provider] failed to reasonably implement a repeat infringer policy within the meaning of § 512(i)(1)(A)." *Id.* at 1113. Steadfast has had no situations involving repeat infringers. RSGD ¶¶ 9-10. ALS has no evidence. *See id.* The remaining attempted disputes to § 512(c)(1)(A) and § 512(c)(1)(C) are precluded. **Case closed.**

> ii.    *In the alternative: ALS creates noise that is not based in law.*

None of ALS's arguments have any merit. First, ALS has provided the Court no evidence of any repeat infringers; ALS admits that Flixya is not a direct infringer. RSGD ¶ 35. Second, "appropriate" cannot mean terminating clients who

comply with the law. Indeed, "[t]he service provider need not act or address difficult infringement issues." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1176 (C.D. Cal. 2002). The DMCA was enacted to encourage innovation; it was not enacted to be a sword to stifle those who engage in protected activity. Accordingly, the undisputed facts show that Steadfast reasonably implemented its repeat infringer policy, pursuant to § 512(i)(1)(A). As the following shows, ALS's arguments have no merit.

First, ALS cites to *BMG Rights Mgmt. LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634 (E.D. Va., Dec. 1, 2015) (defendant ignoring millions of notices sent in regards to an extreme number of users), and *Disney Enters. v. Hotfile Corp.*, 2013 U.S. Dist. LEXIS 172339, *33 (S.D. Fla. Aug. 28, 2013) ("61 [users] had more than 300 notices"). Clearly, these cases are drastically different. Unlike the defendants' users who infringed copyright multiple times in those cases, Flixya was not a direct infringer. RSGD ¶ 35. ALS has also not shown that Flixya did not comply with the DMCA; any claim otherwise is mere speculation.

Second, ALS faults Steadfast for assuming that Flixya was complying with the DMCA after Flixya gave it proof that it was complying. The Ninth Circuit, however, has heard Congress loud and clear: The DMCA does not require Steadfast to seek out repeat infringers with hopes that such evidence will one day help it establish the safe harbor defense. *See Shelter Capital Partners LLC*, 718 F.3d at 1029 ("§ 512(m) provides that § 512(c)'s safe harbor protection may not be conditioned on 'a service provider monitoring its service or affirmatively seeking facts indicating infringing activity.'").

Third, ALS's statutory interpretation is erroneous; "infringers" in § 512(i)(1)(A) does not encompass *contributory* infringers. If Congress wanted to include repeat contributory infringers it would have done so. "It is also a fundamental canon [of statutory construction] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004). ALS's position makes § 512(h) (Subpoena to identify infringer) and § 512(g) (counter notification procedures) unworkable. Congress intended that these procedures would facilitate the expeditious removal of infringements. Does ALS sending a notice to Steadfast, who sends one to Flixya who sends one to an <imagebam.com> user sound *expedient*? Would the <imagebam.com> user send the counter notification to Flixya? Steadfast? ALS? ALS makes arguments without reading the statute. Adopting ALS's position would turn the process behind the DMCA on its head.

Lastly, ALS ends its argument saying that Steadfast has profited from pirates. This is slanderous. ALS admits that Steadfast does not profit. RSGD ¶ 70. ALS has no evidence of any "pirates." ALS's lawsuit is misdirected and essentially a farce.

## C.   ALS fails to create a genuine dispute of material fact regarding Steadfast's compliance with § 512(c)(1)(A) and (C).

"A service provider is also not liable under § 512(c) if it acts 'expeditiously to remove, or disable access to, the material' when it (1) has actual knowledge, (2) is aware of facts or circumstances from which infringing activity is apparent, or (3) has received notification of claimed infringement meeting the requirements of § 512(c)(3)." *CCBill*, 488 F.3d at 1111. Here, Steadfast met its initial burden of production; ALS does not contend otherwise. Moreover, if this Court rules in favor on the efficacy of the notices, this inquiry becomes unnecessary because no duty to act was triggered and ALS admitted Steadfast has no other independent source of knowledge. *See* RSGD ¶ 62.

Even if the Court holds that ALS's notices are effective as a matter of law, the undisputed facts show that Steadfast satisfies these remaining requirements. First, ALS admits that "Steadfast did not have awareness of any alleged specific infringement prior to the DMCA notification." RSGD ¶ 62; Dkt. 319, ¶ 73. As a

result, it is undisputed that Steadfast satisfies §§ 512(c)(1)(A)(i) and (ii). The remaining elements are § 512(c)(1)(A)(iii) and § 512(c)(1)(C).

These two elements collapse into one simple inquiry: Upon notice from Easton, did Steadfast "act[] expeditiously to remove, or disable access to, the material[?]" *CCBill*, 488 F.3d at 1111. The following will bring it back to the basics. Starting off, ALS admits that Easton sent notices to Steadfast via email, which included <imagebam.com> hyperlinks that allegedly resolved to ALS's images. RSGD ¶¶ 50-51. ALS admits that none of the hyperlinks in a notice of infringement from ALS which contained the allegedly copyrighted images are still active. RSGD ¶ 68. All of the images were removed. *Id.* Easton has a practice of sending follow up emails within days if images are not taken down, and ALS admits that Easton did not send a follow up email to Steadfast indicating that content was not removed. RSGD ¶ 69.

ALS, however, raises a frivolous dispute to the following fact: "When, and after, ALS improperly sent notifications to Steadfast, Steadfast immediately forwarded the notices to Flixya's designated agent for <imagebam.com>." RSGD ¶ 65. What is ALS complaint with this fact? ALS grievance complains that "Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications; and, "Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications." *Id.*[3]

This non-responsive, frivolous dispute is immaterial to whether Steadfast "immediately forwarded" the notices to Flixya. *See id.* The words of § 512(c) are neither vague nor ambiguous; indeed, Congress "infused" § 512(c) with "specific detail." *Corbis Corp.*, 351 F. Supp. 2d at 1101. If service providers were required to do more than "those [requirements] specified in § 512(c), § 512(c)'s grant of immunity would be meaningless." *CCBill*, 488 F.3d 1102, 1111. As required under

---

[3] *See also* ALS's responses to RSGD ¶¶ 63-64, 67.

§ 512(c), upon notice, Steadfast need only act expeditiously in a way that removes the complained of material. ALS's complaints are outside the scope of § 512(c); the Ninth Circuit is clear: "[Courts] impose no such investigative duties on service providers." *Id.* ALS should know this, and it has no excuse for its "ostrich-like tactic[s]." *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, this Court should grant Steadfast's motion for partial summary judgment on its affirmative defense and the legal insufficiency of ALS's notices. Because the § 512(c) safe harbor precludes liability, ALS's contributory copyright infringement claim (Count II) is moot. Steadfast respectfully requests this Court to grant partial summary judgment on any of the specific DMCA requirements of the § 512(c) safe harbor, in order to narrow the issues for trial.

JOHN L. AMBROGI
COLIN T.J. O'BRIEN
PARTRIDGE PARTNERS, P.C.

PAUL D. SUPNIK

Dated: February 26, 2018       By: s/John L. Ambrogi
John L. Ambrogi
Attorneys for Steadfast Networks, LLC

16

## **PROOF OF SERVICE**

I, Colin T.J. O'Brien, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **DEFENDANT STEADFAST NETWORKS, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DMCA** was served via electronic filing to the following parties in this action via their counsel:

      ALS Scan, Inc.
      Cloudflare, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: February 26, 2018         <u>s/ Colin T.J. O'Brien</u>
                         Attorney for Defendant
                         Steadfast Networks LLC