1
2
3
4
5
6

JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

7
8
9
10
11

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

12
13
14

Attorneys for Defendant
STEADFAST NETWORKS, LLC

15
16
17
18
19
20
21
22
23
24
25
26
27
28

ALS SCAN, INC., a Maryland corporation,

        Plaintiff,

    vs.

CLOUDFLARE, INC., a Delaware corporation, et al.,

        Defendants.

Case No.: 2:16-cv-05051-GW-AFM

**DEFENDANT STEADFAST NETWORKS, LLC'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)**

**Hearing Date: March 12, 2018**
**Hearing Time: 8:30am**
**Place:**   **Courtroom 9D, 9th Fl.**
       **350 West 1st Street**
       **Los Angeles, CA, 90012**
**Judge:**   **Hon. George H. Wu**

1    Pursuant to Local Rule 56-1 and this Court's Standing Order, Defendant

2    Steadfast Networks, LLC ("Steadfast") submits the following Response to

3    Plaintiff's ALS Scan, Inc.'s Statement of Genuine Disputes.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 1. Steadfast is a data-center service provider, offering cloud-based storage solutions.<br><br>Karl Zimmerman Declaration ("KZ Decl.") ¶ 4.<br><br>John Ambrogi Declaration ("JLA Decl.") Ex. A, Karl Zimmerman Deposition ("KZ Dep.") 15:6-8.<br><br>JLA Decl., Ex. B, Plaintiff's Response to Statement of Genuine Disputes Re Motion For Partial Summary Judgment Against Defendant Steadfast Networks, LLC, ("Dkt. 319"), ¶ 44. | Admitted. |
| 2. Steadfast is a Delaware limited liability corporation with offices located at 800 S. Wells St., Suite 190, Chicago, IL 60607.<br><br>KZ Decl. ¶ 3. | Admitted. |
| 3. Steadfast has established terms and conditions for use of its services.<br><br>KZ Decl. ¶ 8.<br><br>KZ Decl. Ex. A (Steadfast's website terms and conditions).<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 45.<br><br>JLA Decl. Ex. H (Steadfast's website terms and conditions). | Disputed.  Mr. Zimmerman, as Steadfast's corporate witness, was not able to recall what policy Steadfast maintained for termination for repeat infringement; he relied on website Terms produced in the case.  *Id.* pp. 10-11, Ex. 1, pp. 88-89.  However, Steadfast's website says little to nothing on this subject.  Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement." Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked |

3

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service." (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.)  That page, https://www.steadfast.net/legal-information,says it was "last updated January 30, 2017."  That was shortly after Steadfast first appeared in this case.  (12/8/16 Stipulation to Vacate Default, Doc. 75.)  The current page says "Steadfast responds to notices of alleged copyright infringement and terminates accounts of repeat infringers according to the process set out in the U.S. Digital Millennium Copyright Act." (*Id.*)  In discovery Steadfast said "Steadfast has not defined the term 'repeat infringer' as even the DMCA is silent as to any definition." (Zimmerman Depo. pp. 121-24, Ex. 10, p. 3 ¶ 5.1.)  Steadfast's Terms as of September 27, 2016, before Steadfast appeared in this case, which were last updated August 6, 2015, said only "[a]ny illegal activity may result in your site being suspended immediately, without notification. . . . Steadfast will be the sole arbiter as to what constitutes a violation of this provision." (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) |

**REPLY:** ALS has previously admitted this fact. *See* Dkt. 319, ¶ 45. Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent.

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a

4

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.<br><br>ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).<br><br>ALS cherry picks the language from the policy. The Terms is located at Dkt. 342-1, KZ Decl. Ex. A, which provides: "[W]e reserve the right to terminate service to any client for any reason not prohibited by law." | |
| 4.  Steadfast requires its clients to accept these terms and conditions.<br><br>KZ Decl. ¶ 8.<br><br>KZ Decl. Ex. A.<br><br>JLA Decl., Ex. B, Dkt. 319, ¶ 107.<br><br>JLA Decl. Ex. H. | Objection, lacks foundation. |
| **REPLY:** ALS fails to state whether it "Disputes" this fact and therefore it should be deemed admitted. ALS has previously admitted this fact.  See Dkt. 319, ¶ 107. Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent.<br><br>Steadfast requires its clients to accept these terms and conditions. *See* Dkt. 342-1, KZ Decl. Ex. A, which provides: "In the absence of any other Agreement, you will have accepted this Policy and these Terms and be bound by them if you use any of the services offered by Steadfast ("Services") or otherwise indicate your affirmative acceptance of such Services." | |

5

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 5.  Steadfast's terms and conditions are posted on its website.<br><br>KZ Decl. ¶ 9.<br><br>KZ Decl. Ex. A.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 46.<br><br>JLA Decl. Ex. H. | Disputed.  Mr. Zimmerman, as Steadfast's corporate witness, was not able to recall what policy Steadfast maintained for termination for repeat infringement; he relied on website Terms produced in the case.  *Id.* pp. 10-11, Ex. 1, pp. 88-89.  However, Steadfast's website says little to nothing on this subject.  Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement." Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service." (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.)  That page, https://www.steadfast.net/legal-information,says it was "last updated January 30, 2017."  That was shortly after Steadfast first appeared in this case.  (12/8/16 Stipulation to Vacate Default, Doc. 75.)  The current page says "Steadfast responds to notices of alleged copyright infringement and terminates accounts of repeat infringers according to the process set out in the U.S. Digital Millennium Copyright Act."  (*Id.*)  In discovery Steadfast said "Steadfast has not defined the term 'repeat infringer' as even the DMCA is silent as to any definition." (Zimmerman Depo. pp. 121-24, Ex. 10, p. 3 ¶ 5.1.)  Steadfast's Terms as of September 27, 2016, before Steadfast appeared in this case, which were last |

6

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | updated August 6, 2015, said only "[a]ny illegal activity may result in your site being suspended immediately, without notification. . . . Steadfast will be the sole arbiter as to what constitutes a violation of this provision."  (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) |

**REPLY:** ALS has previously admitted this fact. *See* Dkt. 319, ¶ 46.  Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent.

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

ALS cherry picks the language from the policy. The Terms is located at Dkt. 342-1, KZ Decl. Ex. A, which provides: "[W]e reserve the right to terminate service to any client for any reason not prohibited by law."

| 6.  Steadfast does not "tolerate any unlawful activity" on its servers, including violating copyright and trademark laws.<br><br>KZ Decl. ¶ 10.<br><br>KZ Decl. Ex. A. | Disputed.  Steadfast tolerated repeat infringement on imagebam.com and continued to provide storage services despite over 1500 notices of infringement on that site.  A cursory inspection of the site would have revealed numerous indications it was engaged in rampant infringement of |

7

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. H. | adult content.  (12/1/17 Walsh Decl. Doc. 302 ¶¶ 2, 3; Third Amended Complaint ["TAC"] Ex. 1.); (12/1/17 Walsh Decl. Doc. 302 ¶ 4; TAC Ex. 2.); (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.); (12/1/17 Spillane Decl. Doc. 301 ¶ 2, Ex. 1, Response to Interrogatory 13.); (12/1/17 Penn Decl. Doc. 300 ¶¶ 8-32, Exs. 20-22.); (*Id.* 123:22-124:6; Spillane Declaration ¶ 7, Ex. 6, Response to Interrogatory No. 6.) |

**REPLY:** ALS objection is without merit.  ALS's rationale that by sending DMCA notices alone proves said website is a pirate site has no basis in fact or law. Imagebam is an image hosting site for users to store images and does not display <u>any</u> images on its website that are accessible by the public.  Screenshots of the Imagebam.com website evidence this fact:



| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

In order to use the services provided by Imagebam on its website, <u>individual users</u> must register and create an account with Imagebam



Steadfast was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶73).

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (KZ Decl. ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 7. Steadfast "reserve[s] the right to terminate service to any client for any reason not prohibited by law," including copyright and trademark infringement.<br><br>KZ Decl. ¶ 11.<br><br>KZ Decl. Ex. A.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 109.<br><br>JLA Decl. Ex. H. | Disputed.  Mr. Zimmerman, as Steadfast's corporate witness, was not able to recall what policy Steadfast maintained for termination for repeat infringement; he relied on website Terms produced in the case.  *Id.* pp. 10-11, Ex. 1, pp. 88-89.  However, Steadfast's website says little to nothing on this subject.  Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement." Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service." (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.)  That page, https://www.steadfast.net/legal-information,says it was "last updated January 30, 2017."  That was shortly after Steadfast first appeared in this case.  (12/8/16 Stipulation to Vacate Default, Doc. 75.)  The current page says "Steadfast responds to notices of alleged copyright infringement and terminates accounts of repeat infringers according to the process set out in the U.S. Digital Millennium Copyright Act."  (*Id*.)  In discovery Steadfast said "Steadfast has not defined the term 'repeat infringer' as even the DMCA is silent as to any definition." (Zimmerman Depo. pp. 121-24, Ex. 10, p. 3 ¶ 5.1.)  Steadfast's Terms as of September 27, 2016, before Steadfast appeared in this case, which were last |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
|  | updated August 6, 2015, said only "[a]ny illegal activity may result in your site being suspended immediately, without notification. . . . Steadfast will be the sole arbiter as to what constitutes a violation of this provision."  (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) |

**REPLY:** ALS has previously admitted this fact. *See* Dkt. 319, ¶ 109. Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent.

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

ALS cherry picks the language from the policy. The Terms is located at Dkt. 342-1, KZ Decl. Ex. A, which provides: "[W]e reserve the right to terminate service to any client for any reason not prohibited by law."

| 8.  Steadfast has terminated clients for violating its terms and conditions.<br><br>KZ Decl. ¶ 12. | Objection, lacks foundation, based upon hearsay. |
|---|---|

**REPLY:**  Steadfast stands by its factual assertion as stated in the Zimmerman Declaration. ALS does not dispute this. Therefore, this should be deemed an admission.

11

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 9.   Steadfast has never had the occasion to terminate a client for repeated copyright infringement.<br><br>KZ Decl. ¶ 13.<br><br>JLA Decl. Ex. A, KZ Dep. 124:3-6 ("Q. So nobody's been terminated as a repeat infringer? A. Because I'm never aware of a repeat infringer existing, so no.")<br><br>JLA Decl. Ex. A, KZ Dep. 115:1-2 ("We're not aware of any repeat infringers.")<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 47. | Disputed.  Steadfast tolerated repeat infringement on imagebam.com and continued to provide storage services despite over 1500 notices of infringement on that site.  A cursory inspection of the site would have revealed numerous indications it was engaged in rampant infringement of adult content.  (12/1/17 Walsh Decl. Doc. 302 ¶¶ 2, 3; Third Amended Complaint ["TAC"] Ex. 1.); (12/1/17 Walsh Decl. Doc. 302 ¶ 4; TAC Ex. 2.); (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.); (12/1/17 Spillane Decl. Doc. 301 ¶ 2, Ex. 1, Response to Interrogatory 13.); (12/1/17 Penn Decl. Doc. 300 ¶¶ 8-32, Exs. 20-22.); (*Id.* 123:22-124:6; Spillane Declaration ¶ 7, Ex. 6, Response to Interrogatory No. 6.) |

**REPLY:** ALS previously admitted this fact by failing to respond. *See* JLA Decl. Ex. B, Dkt. 319, ¶ 47.

ALS objection is without merit.  ALS's rationale that by sending notices of a website alone proves said website is a "pirate site" has no basis in fact or law. Further, ALS has admitted that infringers were the users of Imagebam.com, not Imagebam.com itself:

 Q So in your view, who controls the
 14 infringing conduct in an instance where you sent a DMCA
 15 notice? And then I'll clarify that. Like, who's the
 16 ultimate infringer? Is it the user? Is it the person
 17 who downloads the images and then uploads them onto the
 18 website, is he the infringer?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

19 MR. FLYNN: Objection. Calls for a legal
20 conclusion.
21 THE WITNESS: That, yes, would be the
22 direct infringer.
23 BY MR. O'BRIEN:
24 Q All right. And he -- that -- well, we're
25 saying, he, but it could be a she, so he or she uploads
Page 64
1 that and that person does the infringement?
2 MR. FLYNN: Objection. Calls for a legal
3 conclusion. Asked and answered.
4 THE WITNESS: The person uploading the
5 image is the direct infringer.
6 BY MR. O'BRIEN:
7 Q Is ImageBam a direct infringer?
8 MR. FLYNN: Same objection. Go ahead.
9 THE WITNESS: My understanding is that
10 they're contributing to the infringement in not
11 terminating repeat infringers. (JLA Decl. Ex. B, Penn Dep. 64:13-65:11) And
Q So going back to ImageBam, does it provide
11 user-generated content?
12 MR. FLYNN: Asked and answered.
13 THE WITNESS: Users can upload images to
14 ImageBam's website.
15 BY MR. O'BRIEN:
16 Q And ImageBam doesn't upload the images,
17 the user uploads the images, to the best of your
18 knowledge?
19 MR. FLYNN: Objection. Calls for
20 speculation.
21 THE WITNESS: Yeah, I don't know what
22 ImageBam's practices are, what their employees are
23 tasked with, but any person on the internet could
24 potentially be a user of ImageBam.com.
JLA Decl. Ex. B, Penn Dep. 64:13-65:11.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 10. Steadfast has never had a client who repeatedly infringed copyrights.<br><br>KZ Decl. ¶ 14.<br><br>JLA Decl. Ex. A, KZ Dep. 115:1-2 ("We're not aware of any repeat infringers.")<br><br>JLA Decl. Ex. A, KZ Dep. 124:3-6 ("Q. So nobody's been terminated as a repeat infringer? A. Because I'm never aware of a repeat infringer existing, so no.") | Disputed.  Steadfast tolerated repeat infringement on imagebam.com and continued to provide storage services despite over 1500 notices of infringement on that site.  A cursory inspection of the site would have revealed numerous indications it was engaged in rampant infringement of adult content.  (12/1/17 Walsh Decl. Doc. 302 ¶¶ 2, 3; Third Amended Complaint ["TAC"] Ex. 1.); (12/1/17 Walsh Decl. Doc. 302 ¶ 4; TAC Ex. 2.); (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.); (12/1/17 Spillane Decl. Doc. 301 ¶ 2, Ex. 1, Response to Interrogatory 13.); (12/1/17 Penn Decl. Doc. 300 ¶¶ 8-32, Exs. 20-22.); (*Id.* 123:22-124:6; Spillane Declaration ¶ 7, Ex. 6, Response to Interrogatory No. 6.) |

**REPLY:** ALS previously admitted this fact by failing to respond. *See* JLA Decl. Ex. B, Dkt. 319, ¶ 47.

ALS objection is without merit.  ALS's rationale that by sending notices of a website alone proves said website is a pirate site has no basis in fact or law.  Further, ALS has admitted that infringers were the users of Imagebam.com not Imagebam.com itself:

> Q So in your view, who controls the
> 14 infringing conduct in an instance where you sent a DMCA
> 15 notice? And then I'll clarify that. Like, who's the
> 16 ultimate infringer? Is it the user? Is it the person
> 17 who downloads the images and then uploads them onto the
> 18 website, is he the infringer?
> 19 MR. FLYNN: Objection. Calls for a legal
> 20 conclusion.

14

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

21 THE WITNESS: That, yes, would be the
22 direct infringer.
23 BY MR. O'BRIEN:
24 Q All right. And he -- that -- well, we're
25 saying, he, but it could be a she, so he or she uploads
Page 64
1 that and that person does the infringement?
2 MR. FLYNN: Objection. Calls for a legal
3 conclusion. Asked and answered.
4 THE WITNESS: The person uploading the
5 image is the direct infringer.
6 BY MR. O'BRIEN:
7 Q Is ImageBam a direct infringer?
8 MR. FLYNN: Same objection. Go ahead.
9 THE WITNESS: My understanding is that
10 they're contributing to the infringement in not
11 terminating repeat infringers.
JLA Decl. Ex. B, Penn Dep. 64:13-65:11.

Also,
   Q So going back to ImageBam, does it provide
   11 user-generated content?
   12 MR. FLYNN: Asked and answered.
   13 THE WITNESS: Users can upload images to
   14 ImageBam's website.
   15 BY MR. O'BRIEN:
   16 Q And ImageBam doesn't upload the images,
   17 the user uploads the images, to the best of your
   18 knowledge?
   19 MR. FLYNN: Objection. Calls for
   20 speculation.
   21 THE WITNESS: Yeah, I don't know what
   22 ImageBam's practices are, what their employees are
   23 tasked with, but any person on the internet could
   24 potentially be a user of ImageBam.com.
JLA Decl. Ex. B, Penn Dep. 64:13-65:11.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 11. Steadfast has, and had, a working notification system.<br><br>KZ Decl. ¶ 16.<br><br>JLA Decl. Ex. A, KZ Dep. 68:15-16; 108:20-110:7.<br><br>Kevin Stange Declaration ("Stange Decl.") ¶¶ 3-4, 6-10. | Disputed, depending upon what is meant by a "working notification system." Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement." Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service." (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.) That page, https://www.steadfast.net/legal-information, says it was "last updated January 30, 2017." The page does have an email address to which complaints may be addressed, but no other "notification system." The prior page did not state any email address that copyright owners could use to submit notice of infringement. (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) |

**REPLY:**

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

Steadfast stands by its factual assertion as supported by its submissions.  Karl Zimmerman in his 30b(6) Deposition [JLA Decl. Ex. A] explained the system:

20· · · · Q.· · Okay.· And what did you do in
21· ·response to learning that information?
22· · · · A.· · I reviewed how our team was handling
23· ·the responses and how that process was going and
24· ·how it was being handled.
·1· · · · Q.· · And what did you learn?
·2· · · · A.· · That all the automated processes in
·3· ·place were working, seemed to be working, had no
·4· ·indication that anything wasn't working, and
·5· ·that all of the content seemed to be being
·6· ·removed promptly and that there was no
·7· ·indication that, you know, the DMCA was not
·8· ·being followed.
**·9· · · · Q.· · Whose automated processes did you**
**10· ·just refer to?**
**11· · · · A.· · It was -- I guess primarily our**
**12· ·internal automated processes.**
**13· · · · Q.· · Is it the ticketing system you**
**14· ·referred to?**
**15· · · · A.· · Well, it was the ticketing system and**
**16· ·the general scripting and software around the**
**17· ·DMCA-handling process.**
**18· · · · Q.· · What scripting and software are you**
**19· ·talking about?**
**20· · · · A.· · When a ticket comes in into the**
**21· ·system, we automatically determine who -- you**
**22· ·know, if we can, determine what customer it is**
**23· ·for and automatically forward the response or**
**24· ·the request.**
**·1· · · · Q.· · So when an Easton e-mail comes in,**
**·2· ·Steadfast assigns it a ticket number?**
**·3· · · · A.· · Yes.**
**·4· · · · Q.· · And then if it pertains to**

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·5· ·Imagebam.com, you'd forward it to them?<br>·6· · · · A.· · Yes, it would be automatically<br>·7· forwarded to them.<br><br>Further this system worked because <u>all</u> of the complained of images were taken down as acknowledged by ALS's agent Steve Easton: Steve Easton Deposition ("Easton Dep.") 37:3-4 ("Q. Okay. Have all of these images been removed? A. I believe so, yes."). | |
| 12. At all relevant times, Steadfast had (and has) a designated agent to receive notices of claimed copyright infringement registered with the Copyright Office.<br><br>KZ Decl. ¶ 17.<br><br>KZ Decl. Ex. B (Copyright Office record of Steadfast Networks LLC's "Interim Designation of Agent to Receive Notification of Claimed Infringement").<br><br>JLA Decl. Ex. A, KZ Dep. 66:7-11; 68:19-69:4.<br><br>Stange Decl. ¶ 3. | Admitted. |
| 13. At all relevant times, Steadfast had (and has) made available, on its website, the contact information of its agent to receive abuse of the terms-of-service complaints, which includes infringement of others' copyrights and trademarks.<br><br>KZ Decl. ¶ 18. | Disputed.  Steadfast has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement."  Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service."  (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.)  That page, <u>https://www.steadfast.net/legal-</u> |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| KZ Decl. Ex. C (Steadfast's website's contact page).<br><br>Stange Decl. ¶ 3.<br><br>JLA Decl. Ex. H. | information, says it was "last updated January 30, 2017."  The page does have an email address to which complaints may be addressed, but no other "notification system."  The prior page did not state any email address that copyright owners could use to submit notice of infringement. (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) |

**REPLY:**

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

| 14. Steadfast maintained, and maintains, records of all the DMCA notifications it receives.<br><br>KZ Decl. ¶ 20.<br><br>JLA Decl. Ex. A, KZ Dep. 68:15-16; 108:20-110:7.<br><br>Stange Decl. ¶ 4. | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | to do so. *Id.* pp. 105-06. Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3. Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22. Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence. Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104.

Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112. Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS's response is nonsensical in that it has nothing to do with the stated fact and thus should be viewed as an admission on the part of ALS.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |

Steadfast stands by its factual assertion as supported by its submissions.  Karl Zimmerman in his 30b(6) Deposition explained the system:

20· · · · Q.· · Okay.· And what did you do in
21· ·response to learning that information?
22· · · · A.· · I reviewed how our team was handling
23· ·the responses and how that process was going and
24· ·how it was being handled.
·1· · · · Q.· · And what did you learn?
·2· · · · A.· · That all the automated processes in
·3· ·place were working, seemed to be working, had no
·4· ·indication that anything wasn't working, and
·5· ·that all of the content seemed to be being
·6· ·removed promptly and that there was no
·7· ·indication that, you know, the DMCA was not
·8· ·being followed.
·9· · · · Q.· · Whose automated processes did you
10· ·just refer to?
11· · · · A.· · It was -- I guess primarily our
12· ·internal automated processes.
**13· · · · Q.· · Is it the ticketing system you**
**14· ·referred to?**
**15· · · · A.· · Well, it was the ticketing system and**
**16· ·the general scripting and software around the**
**17· ·DMCA-handling process.**
**18· · · · Q.· · What scripting and software are you**
**19· ·talking about?**
**20· · · · A.· · When a ticket comes in into the**
**21· ·system, we automatically determine who -- you**
**22· ·know, if we can, determine what customer it is**
**23· ·for and automatically forward the response or**
**24· ·the request.**
**·1· · · · Q.· · So when an Easton e-mail comes in,**
**·2· ·Steadfast assigns it a ticket number?**
**·3· · · · A.· · Yes.**
**·4· · · · Q.· · And then if it pertains to**
**·5· ·Imagebam.com, you'd forward it to them?**
**·6· · · · A.· · Yes, it would be automatically**
**·7· ·forwarded to them.**

21

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| Further this system worked because **<u>all of the complained of images were taken down</u>** as acknowledged by ALS's agent Steve Easton: Steve Easton Deposition ("Easton Dep.") 37:3-4 ("Q. Okay. Have all of these images been removed? A. I believe so, yes."). | |
| 15. Steadfast employs a procedure for dealing with DMCA-compliant notifications.<br><br>KZ Decl. ¶ 21.<br><br>JLA Decl. Ex. A, KZ Dep. 108:20-110:7.<br><br>Stange Decl. ¶ 4. | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly."  *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  *Id.* pp. 98-104. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem.  *Id.* p. 112.  Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS's response is nonsensical in that it has nothing to do with the stated fact and thus should be viewed as an admission on the part of ALS. Steadfast stands by its factual assertion as supported by its submissions.  Karl Zimmerman in his 30b(6) Deposition explained the system:

20· · · · Q.· · Okay.· And what did you do in
21· ·response to learning that information?
22· · · · A.· · I reviewed how our team was handling
23· ·the responses and how that process was going and
24· ·how it was being handled.
·1· · · · Q.· · And what did you learn?
·2· · · · A.· · That all the automated processes in
·3· ·place were working, seemed to be working, had no
·4· ·indication that anything wasn't working, and
·5· ·that all of the content seemed to be being
·6· ·removed promptly and that there was no
·7· ·indication that, you know, the DMCA was not
·8· ·being followed.
·9· · · · Q.· · Whose automated processes did you
10· ·just refer to?
11· · · · A.· · It was -- I guess primarily our
12· ·internal automated processes.
13· · · · Q.· · Is it the ticketing system you
14· ·referred to?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

15· · · · A.· · Well, it was the ticketing system and
16· ·the general scripting and software around the
17· ·DMCA-handling process.
18· · · · Q.· · What scripting and software are you
19· ·talking about?
20· · · · A.· · When a ticket comes in into the
21· ·system, we automatically determine who -- you
22· ·know, if we can, determine what customer it is
23· ·for and automatically forward the response or
24· ·the request.
·1· · · · Q.· · So when an Easton e-mail comes in,
·2· ·Steadfast assigns it a ticket number?
·3· · · · A.· · Yes.
·4· · · · Q.· · And then if it pertains to
·5· ·Imagebam.com, you'd forward it to them?
·6· · · · A.· · Yes, it would be automatically
·7· ·forwarded to them.

Further this system worked because <u>all</u> of the complained of images were taken down as acknowledged by ALS's agent Steve Easton: Steve Easton Deposition ("Easton Dep.") 37:3-4 ("Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| 16. Steadfast employs a procedure for dealing with non-DMCA compliant notifications.<br><br>KZ Decl. ¶ 22.<br><br>JLA Decl. Ex. A, KZ Dep. 108:20-110:7.<br><br>Stange Decl. ¶¶ 4, 6. | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo. pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | "family friendly." *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  *Id.* pp. 98-104. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem.  *Id.* p. 112.  Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS's response is nonsensical in that it has nothing to do with the stated fact and thus should be viewed as an admission on the part of ALS. Steadfast stands by its factual assertion as supported by its submissions.  Karl Zimmerman in his 30b(6) Deposition explained the system:

20· · · · Q.· · Okay.· And what did you do in
21· ·response to learning that information?
22· · · · A.· · I reviewed how our team was handling

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |

23· ·the responses and how that process was going and
24· ·how it was being handled.
·1· · · · Q.· · And what did you learn?
·2· · · · A.· · That all the automated processes in
·3· ·place were working, seemed to be working, had no
·4· ·indication that anything wasn't working, and
·5· ·that all of the content seemed to be being
·6· ·removed promptly and that there was no
·7· ·indication that, you know, the DMCA was not
·8· ·being followed.
·9· · · · Q.· · Whose automated processes did you
10· ·just refer to?
11· · · · A.· · It was -- I guess primarily our
12· ·internal automated processes.
13· · · · Q.· · Is it the ticketing system you
14· ·referred to?
15· · · · A.· · Well, it was the ticketing system and
16· ·the general scripting and software around the
17· ·DMCA-handling process.
18· · · · Q.· · What scripting and software are you
19· ·talking about?
20· · · · A.· · When a ticket comes in into the
21· ·system, we automatically determine who -- you
22· ·know, if we can, determine what customer it is
23· ·for and automatically forward the response or
24· ·the request.
·1· · · · Q.· · So when an Easton e-mail comes in,
·2· ·Steadfast assigns it a ticket number?
·3· · · · A.· · Yes.
·4· · · · Q.· · And then if it pertains to
·5· ·Imagebam.com, you'd forward it to them?
·6· · · · A.· · Yes, it would be automatically
·7· ·forwarded to them.

Further this system worked because **all of the complained of images were taken down,** despite the improper notifications, as acknowledged by ALS's agent Steve Easton: Steve Easton Deposition ("Easton Dep.") 37:3-4 ("Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 17. Steadfast does not prevent copyright owners from collecting information needed to issue notifications.<br><br>KZ Decl. ¶ 23.<br><br>Stange Decl. ¶¶ 4, 6, 9.<br><br>JLA Decl. Ex. A, KZ Dep. 108:20-110:7.<br><br>JLA Decl. Ex. H. | Admitted. |
| 18. Steadfast does not interfere with standard technical measures that it is aware of that may be used by copyright holders to identify or protect copyright works.<br><br>KZ Decl. ¶ 24.<br><br>Stange Decl. ¶¶ 4, 6, 9. | Admitted. |
| 19. From 2007 to June 21, 2017, one of Steadfast's clients was Flixya.<br><br>KZ Decl. ¶ 25.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 48. | Admitted. |
| 20. Flixya was a limited liability corporation with offices at 471 Nelo St Suite G, Santa Clara, CA 95054.<br><br>KZ Decl. ¶ 26.<br><br>JLA Decl. Ex. C (Copyright Office record of Flixya Entertainment LLC's | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| "Amended Interim Designation of Agent to Receive Notification of Claimed Infringement"). | |
| 21. Steadfast and Flixya have always been separate, different, and unaffiliated legal corporate entities.<br><br>KZ Decl. ¶ 27. | Admitted. |
| 22. Throughout this time period, Steadfast provided server rental services to Flixya.<br><br>KZ Decl. ¶ 28.<br><br>JLA Decl. Ex. A, KZ Dep. 15:8 ("Provided server rental services [to Flixya]").<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 86. | Disputed.  Flixya leased three dedicated servers from Steadfast.  Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center. *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

24· · · · Q.· · Flixya hosted ImageBam?
·1· · · · A.· · Yes.
·2· · · · Q.· · Or are you saying Flixya hosted
·3· ·ImageBam, or are you saying -- saying Steadfast
·4· ·hosted ImageBam?
·5· · · · A.· · Flixya hosted ImageBam.
·6· · · · Q.· · All right.· And what services did
·7· ·Steadfast provide for ImageBam?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·8· · · · A.· · Provided server rental services.

·9· · · · Q.· · Can you be more specific?

10· · · · A.· · Not really.· I mean, they had a

11· ·server available to them.

12· · · · Q.· · Who owned the server?

13· · · · A.· · We owned the server.

**14· · · · Q.· · And Flixya leased use of the server?**

**15· · · · A.· · Yes.**

**16· · · · Q.· · Was it a dedicated or co-located**

**17· ·server?**

**18· · · · A.· · It was dedicated.**

**19· · · · Q.· · To your knowledge, was Imagebam.com**

**20· ·the only website on that server?**

**21· · · · A.· · I don't know.**

**22· · · · Q.· · That's because they managed what**

**23· ·content they put on it?**

**24· · · · A.· · Correct.**

**·1· · · · Q.· · And Steadfast was responsible for**

**·2· ·maintaining and supporting the server?**

**·3· · · · A.· · The physical hardware of the system,**

**·4· ·yes.**

Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference

·5· ·to, Managed services, basic management?

·6· · · · A.· · Yes.

·7· · · · Q.· · What does that mean?

·8· · · · A.· · We basically had two forms of

·9· ·management, basic management and full

10· ·management.

11· · · · · · · Basic management is where essentially

12· ·we don't do anything with the system.· There's

13· ·no proactive nature or activity on the system

14· ·unless it is specifically requested by the

15· ·customer.

16· · · · Q.· · What did you call the higher level of

17· ·management?

18· · · · A.· · Full management.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
**·7· · · · A.· · So the basic management and the**
**·8· ·silver management were the same.·** That was just
·9· ·a naming change.· And then the gold management
10· ·and the full management were the same.· Again,
11· ·that's just a naming change.
12· · · · · · · With the basic and silver management
13· ·is where we would essentially -- we would only
14· ·support the base hardware of the system to
15· ·assure that the hardware is -- yeah, at the
16· ·request of the customer.

**17· · · · · · · We would not be doing anything**
**18· ·proactive.· We would not monitor the system, we**
**19· ·would not be logging into the system, we would**
**20· ·have no operation or control of the system**
**21· ·really in any way, and would be entirely reliant**
**22· ·on the customer telling us that there is an**
**23· ·issue with the hardware or the performance of**
**24· ·that system.**
·1· · · · · · · Whereas, the full management and the

30

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·2· ·gold management is where we are much more ·3· ·proactive and active in monitoring the system, ·4· ·logging into the system, working with the ·5· ·customer on specific software issues, software ·6· ·complaints and would generally then have more ·7· ·access to the system in the case of full ·8· ·management or the gold management. ·9· · · · Q.· · And as far as you can remember, 10· ·Flixya or ImageBam was what kind of client; was 11· ·it a full, or was it a basic? 12· · · · A.· · They had always had the silver 13· ·management and then the basic management. Zimmerman Dep. pp. 136:23 to 138:13. | |
| 23. Steadfast leased servers to Flixya for a flat fee. KZ Decl. ¶ 29. JLA Decl. Ex. B, Dkt. 319, ¶ 86. | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.  ALS does not cite any evidence that the servers were not leased for a flat fee.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

24· · · · Q.· · Flixya hosted ImageBam?
·1· · · · A.· · Yes.
·2· · · · Q.· · Or are you saying Flixya hosted
·3· ·ImageBam, or are you saying -- saying Steadfast
·4· ·hosted ImageBam?

31

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·5· · · · A.· · Flixya hosted ImageBam.
·6· · · · Q.· · All right.· And what services did
·7· ·Steadfast provide for ImageBam?
·8· · · · A.· · Provided server rental services.
·9· · · · Q.· · Can you be more specific?
10· · · · A.· · Not really.· I mean, they had a
11· ·server available to them.
12· · · · Q.· · Who owned the server?
13· · · · A.· · We owned the server.
14· · · · Q.· · And Flixya leased use of the server?
15· · · · A.· · Yes.
16· · · · Q.· · Was it a dedicated or co-located
17· ·server?
18· · · · A.· · It was dedicated.
19· · · · Q.· · To your knowledge, was Imagebam.com
20· ·the only website on that server?
21· · · · A.· · I don't know.
22· · · · Q.· · That's because they managed what
23· ·content they put on it?
24· · · · A.· · Correct.
·1· · · · Q.· · And Steadfast was responsible for
·2· ·maintaining and supporting the server?
·3· · · · A.· · The physical hardware of the system,
·4· ·yes.
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · · A.· · Yes.
·7· · · · Q.· · What does that mean?
·8· · · · A.· · We basically had two forms of
·9· ·management, basic management and full
10· ·management.
11· · · · · · · Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system
14· ·unless it is specifically requested by the
15· ·customer.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.


23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
·7· · · · A.· · So the basic management and the
·8· ·silver management were the same.· That was just
·9· ·a naming change.· And then the gold management
10· ·and the full management were the same.· Again,
11· ·that's just a naming change.
12· · · · · · · With the basic and silver management
13· ·is where we would essentially -- we would only
14· ·support the base hardware of the system to
15· ·assure that the hardware is -- yeah, at the
16· ·request of the customer.

**17· · · · · · · We would not be doing anything**
**18· ·proactive.· We would not monitor the system, we**
**19· ·would not be logging into the system, we would**
**20· ·have no operation or control of the system**
**21· ·really in any way, and would be entirely reliant**
**22· ·on the customer telling us that there is an**

33

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 23· ·issue with the hardware or the performance of<br>24· ·that system.<br>·1· · · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system,<br>·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>·9· · · · Q.· · And as far as you can remember,<br>10· ·Flixya or ImageBam was what kind of client; was<br>11· ·it a full, or was it a basic?<br>12· · · · A.· · They had always had the silver<br>13· ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 24. Steadfast did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee.<br><br>KZ Decl. ¶ 30.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 62. | Disputed.  Flixya leased three dedicated servers from Steadfast.  Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

24· · · · Q.· · Flixya hosted ImageBam?
·1· · · · A.· · Yes.
·2· · · · Q.· · Or are you saying Flixya hosted

34

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |

·3· ·ImageBam, or are you saying -- saying Steadfast
·4· ·hosted ImageBam?
·5· · · ·A.· ·Flixya hosted ImageBam.
·6· · · ·Q.· ·All right.· And what services did
·7· ·Steadfast provide for ImageBam?
·8· · · ·A.· ·Provided server rental services.
·9· · · ·Q.· ·Can you be more specific?
10· · · ·A.· ·Not really.· I mean, they had a
11· ·server available to them.
12· · · ·Q.· ·Who owned the server?
13· · · ·A.· ·We owned the server.
14· · · ·Q.· ·And Flixya leased use of the server?
15· · · ·A.· ·Yes.
16· · · ·Q.· ·Was it a dedicated or co-located
17· ·server?
18· · · ·A.· ·It was dedicated.
19· · · ·Q.· ·To your knowledge, was Imagebam.com
20· ·the only website on that server?
21· · · ·A.· ·I don't know.
22· · · ·Q.· ·That's because they managed what
23· ·content they put on it?
24· · · ·A.· ·Correct.
·1· · · ·Q.· ·And Steadfast was responsible for
·2· ·maintaining and supporting the server?
·3· · · ·A.· ·The physical hardware of the system,
·4· ·yes.
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · ·Q.· ·What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · ·A.· ·Yes.
·7· · · ·Q.· ·What does that mean?
·8· · · ·A.· ·We basically had two forms of
·9· ·management, basic management and full
10· ·management.
11· · · · · · ·Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

14· ·unless it is specifically requested by the
15· ·customer.
16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
**·7· · · · A.· · So the basic management and the**
**·8· ·silver management were the same.· That was just**
**·9· ·a naming change.· And then the gold management**
**10· ·and the full management were the same.· Again,**
**11· ·that's just a naming change.**
**12· · · · · · · With the basic and silver management**
**13· ·is where we would essentially -- we would only**
**14· ·support the base hardware of the system to**
**15· ·assure that the hardware is -- yeah, at the**
**16· ·request of the customer.**

**17· · · · · · · We would not be doing anything**
**18· ·proactive.· We would not monitor the system, we**
**19· ·would not be logging into the system, we would**
**20· ·have no operation or control of the system**

36

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| **21·  ·really in any way, and would be entirely reliant**<br>**22·  ·on the customer telling us that there is an**<br>**23·  ·issue with the hardware or the performance of**<br>**24·  ·that system.**<br>·1· · · · · · ·  Whereas, the full management and the<br>·2·  ·gold management is where we are much more<br>·3·  ·proactive and active in monitoring the system,<br>·4·  ·logging into the system, working with the<br>·5·  ·customer on specific software issues, software<br>·6·  ·complaints and would generally then have more<br>·7·  ·access to the system in the case of full<br>·8·  ·management or the gold management.<br>**·9·  · · · Q.·  · And as far as you can remember,**<br>**10·  ·Flixya or ImageBam was what kind of client; was**<br>**11·  ·it a full, or was it a basic?**<br>**12·  · · · A.·  · They had always had the silver**<br>**13·  ·management and then the basic management.**<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 25. Steadfast did not manufacture the servers that were leased to Flixya. The Flixya-leased server was an Intel Core2Duo E8400, which was manufactured by Supermicro.<br><br>KZ Decl. ¶ 31. | Admitted. |
| 26. The Flixya-leased servers were "dedicated servers," meaning that the Flixya-leased servers were entirely operated, managed, and controlled by Flixya.<br><br>KZ Decl. ¶ 32.<br><br>JLA Decl. Ex. A, KZ Dep. 15:16-18 (Q. "Was [the server] a dedicated or co-located server? A. It was dedicated.") | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. B, Dkt. 319, ¶¶ 86, 88. | |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

    24· · · · Q.· · Flixya hosted ImageBam?
    ·1· · · · A.· · Yes.
    ·2· · · · Q.· · Or are you saying Flixya hosted
    ·3· ·ImageBam, or are you saying -- saying Steadfast
    ·4· ·hosted ImageBam?
    ·5· · · · A.· · Flixya hosted ImageBam.
    ·6· · · · Q.· · All right.· And what services did
    ·7· ·Steadfast provide for ImageBam?
    ·8· · · · A.· · Provided server rental services.
    ·9· · · · Q.· · Can you be more specific?
    10· · · · A.· · Not really.· I mean, they had a
    11· ·server available to them.
    12· · · · Q.· · Who owned the server?
    13· · · · A.· · We owned the server.
    14· · · · Q.· · And Flixya leased use of the server?
    15· · · · A.· · Yes.
    16· · · · Q.· · Was it a dedicated or co-located
    17· ·server?
    18· · · · A.· · It was dedicated.
    19· · · · Q.· · To your knowledge, was Imagebam.com
    20· ·the only website on that server?
    21· · · · A.· · I don't know.
    22· · · · Q.· · That's because they managed what
    23· ·content they put on it?
    24· · · · A.· · Correct.
    ·1· · · · Q.· · And Steadfast was responsible for

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·2· ·maintaining and supporting the server?
·3· · · · A.· · The physical hardware of the system,
·4· ·yes.
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · · A.· · Yes.
·7· · · · Q.· · What does that mean?
·8· · · · A.· · We basically had two forms of
·9· ·management, basic management and full
10· ·management.
11· · · · · · · Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system
14· ·unless it is specifically requested by the
15· ·customer.
16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·7· · · · A.· · So the basic management and the<br>·8· ·silver management were the same.· That was just<br>·9· ·a naming change.· And then the gold management<br>10· ·and the full management were the same.· Again,<br>11· ·that's just a naming change.<br>12· · · · · · · With the basic and silver management<br>13· ·is where we would essentially -- we would only<br>14· ·support the base system hardware of the system to<br>15· ·assure that the hardware is -- yeah, at the<br>16· ·request of the customer.<br><br>**17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system**<br>**21· ·really in any way, and would be entirely reliant**<br>**22· ·on the customer telling us that there is an**<br>**23· ·issue with the hardware or the performance of**<br>**24· ·that system.**<br>·1· · · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system,<br>·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>·9· · · · Q.· · And as far as you can remember,<br>10· ·Flixya or ImageBam was what kind of client; was<br>11· ·it a full, or was it a basic?<br>12· · · · A.· · They had always had the silver<br>13· ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 27. The servers leased by Flixya were completely dedicated to Flixya's operations, including its operation of hosting Imagebam.com. | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| KZ Decl. ¶ 33.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 88. | |
| 28. Steadfast only maintained the physical hardware of the Flixya-leased servers.<br><br>KZ Decl. ¶ 34.<br><br>JLA Decl. Ex. A, KZ Dep. 16:3-4, 30:22-31:1. | Disputed.  Flixya leased three dedicated servers from Steadfast.  Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

    24· · · · Q.· · Flixya hosted ImageBam?
    ·1· · · · A.· · Yes.
    ·2· · · · Q.· · Or are you saying Flixya hosted
    ·3· ·ImageBam, or are you saying -- saying Steadfast
    ·4· ·hosted ImageBam?
    ·5· · · · A.· · Flixya hosted ImageBam.
    ·6· · · · Q.· · All right.· And what services did
    ·7· ·Steadfast provide for ImageBam?
    ·8· · · · A.· · Provided server rental services.
    ·9· · · · Q.· · Can you be more specific?
    10· · · · A.· · Not really.· I mean, they had a
    11· ·server available to them.
    12· · · · Q.· · Who owned the server?
    13· · · · A.· · We owned the server.
    14· · · · Q.· · And Flixya leased use of the server?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

15· · · · A.· · Yes.
16· · · · Q.· · Was it a dedicated or co-located
17· ·server?
18· · · · A.· · It was dedicated.
19· · · · Q.· · To your knowledge, was Imagebam.com
20· ·the only website on that server?
21· · · · A.· · I don't know.
22· · · · Q.· · That's because they managed what
23· ·content they put on it?
24· · · · A.· · Correct.
**·1· · · · Q.· · And Steadfast was responsible for**
**·2· ·maintaining and supporting the server?**
**·3· · · · A.· · The physical hardware of the system,**
**·4· ·yes.**
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · · A.· · Yes.
·7· · · · Q.· · What does that mean?
·8· · · · A.· · We basically had two forms of
·9· ·management, basic management and full
10· ·management.
11· · · · · · · Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system
14· ·unless it is specifically requested by the
15· ·customer.
16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on

42

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
·7· · · · A.· · So the basic management and the
·8· ·silver management were the same.· That was just
·9· ·a naming change.· And then the gold management
10· ·and the full management were the same.· Again,
11· ·that's just a naming change.
12· · · · · · · With the basic and silver management
13· ·is where we would essentially -- we would only
14· ·support the base hardware of the system to
15· ·assure that the hardware is -- yeah, at the
16· ·request of the customer.

**17· · · · · · · We would not be doing anything**
**18· ·proactive.· We would not monitor the system, we**
**19· ·would not be logging into the system, we would**
**20· ·have no operation or control of the system**
**21· ·really in any way, and would be entirely reliant**
**22· ·on the customer telling us that there is an**
**23· ·issue with the hardware or the performance of**
**24· ·that system.**
·1· · · · · · · Whereas, the full management and the
·2· ·gold management is where we are much more
·3· ·proactive and active in monitoring the system,
·4· ·logging into the system, working with the
·5· ·customer on specific software issues, software
·6· ·complaints and would generally then have more
·7· ·access to the system in the case of full
·8· ·management or the gold management.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·9· · · · Q.· · And as far as you can remember,<br>10· ·Flixya or ImageBam was what kind of client; was<br>11· ·it a full, or was it a basic?<br>12· · · · A.· · They had always had the silver<br>13· ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 29. Steadfast did not operate, manage, or control the Flixya-leased servers.<br><br>KZ Decl. ¶ 35.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 88. | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center. *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

    24· · · · Q.· · Flixya hosted ImageBam?
    ·1· · · · A.· · Yes.
    ·2· · · · Q.· · Or are you saying Flixya hosted
    ·3· ·ImageBam, or are you saying -- saying Steadfast
    ·4· ·hosted ImageBam?
    ·5· · · · A.· · Flixya hosted ImageBam.
    ·6· · · · Q.· · All right.· And what services did
    ·7· ·Steadfast provide for ImageBam?
    ·8· · · · A.· · Provided server rental services.
    ·9· · · · Q.· · Can you be more specific?
    10· · · · A.· · Not really.· I mean, they had a
    11· ·server available to them.
    12· · · · Q.· · Who owned the server?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

13· · · · A.· · We owned the server.

14· · · · Q.· · And Flixya leased use of the server?

15· · · · A.· · Yes.

16· · · · Q.· · Was it a dedicated or co-located

17· ·server?

18· · · · A.· · It was dedicated.

19· · · · Q.· · To your knowledge, was Imagebam.com

20· ·the only website on that server?

21· · · · A.· · I don't know.

22· · · · Q.· · That's because they managed what

23· ·content they put on it?

24· · · · A.· · Correct.

·1· · · · Q.· · And Steadfast was responsible for

·2· ·maintaining and supporting the server?

·3· · · · A.· · The physical hardware of the system,

·4· ·yes.

Zimmerman Dep. pp. 15:1 to 16:4.


·4· · · · Q.· · What is -- do you see the reference

·5· ·to, Managed services, basic management?

·6· · · · A.· · Yes.

·7· · · · Q.· · What does that mean?

·8· · · · A.· · We basically had two forms of

·9· ·management, basic management and full

10· ·management.

11· · · · · · · Basic management is where essentially

12· ·we don't do anything with the system.· There's

13· ·no proactive nature or activity on the system

14· ·unless it is specifically requested by the

15· ·customer.

16· · · · Q.· · What did you call the higher level of

17· ·management?

18· · · · A.· · Full management.

19· · · · Q.· · What's entailed in full management?

20· · · · A.· · There we will monitor the activity of

21· ·the system with a remote monitoring system and

22· ·then proactively respond to any of those alerts

23· ·and actions.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
·7· · · · A.· · So the basic management and the
·8· ·silver management were the same.· That was just
·9· ·a naming change.· And then the gold management
10· ·and the full management were the same.· Again,
11· ·that's just a naming change.
12· · · · · · · With the basic and silver management
13· ·is where we would essentially -- we would only
14· ·support the base hardware of the system to
15· ·assure that the hardware is -- yeah, at the
16· ·request of the customer.

**17· · · · · · · We would not be doing anything**
**18· ·proactive.· We would not monitor the system, we**
**19· ·would not be logging into the system, we would**
**20· ·have no operation or control of the system**
**21· ·really in any way, and would be entirely reliant**
**22· ·on the customer telling us that there is an**
**23· ·issue with the hardware or the performance of**
**24· ·that system.**
·1· · · · · · · Whereas, the full management and the
·2· ·gold management is where we are much more
·3· ·proactive and active in monitoring the system,
·4· ·logging into the system, working with the
·5· ·customer on specific software issues, software
·6· ·complaints and would generally then have more

46

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>·9· · · · Q.· · And as far as you can remember,<br>10· ·Flixya or ImageBam was what kind of client; was<br>11· ·it a full, or was it a basic?<br>12· · · · A.· · They had always had the silver<br>13· ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 30. By around February 2007, Steadfast became aware of Flixya's ownership of <imagebam.com>.<br><br>KZ Decl. ¶ 36.<br><br>JLA Decl. Ex. A, KZ Dep. 120:9-23. | Admitted. |
| 31. Flixya owned, hosted, managed, operated, and created <imagebam.com>, operating all of the website's functions.<br><br>KZ Decl. ¶ 37.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶¶ 52-56, 86, 88.<br><br>JLA Decl. Ex. C. | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 48.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

**24· · · · Q.· · Flixya hosted ImageBam?**

47

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·1· · · · A.· · Yes.

·2· · · · Q.· · Or are you saying Flixya hosted

·3· ·ImageBam, or are you saying -- saying Steadfast

·4· ·hosted ImageBam?

·5· · · · A.· · Flixya hosted ImageBam.

·6· · · · Q.· · All right.· And what services did

·7· ·Steadfast provide for ImageBam?

·8· · · · A.· · Provided server rental services.

·9· · · · Q.· · Can you be more specific?

10· · · · A.· · Not really.· I mean, they had a

11· ·server available to them.

12· · · · Q.· · Who owned the server?

13· · · · A.· · We owned the server.

14· · · · Q.· · And Flixya leased use of the server?

15· · · · A.· · Yes.

16· · · · Q.· · Was it a dedicated or co-located

17· ·server?

18· · · · A.· · It was dedicated.

19· · · · Q.· · To your knowledge, was Imagebam.com

20· ·the only website on that server?

21· · · · A.· · I don't know.

22· · · · Q.· · That's because they managed what

23· ·content they put on it?

24· · · · A.· · Correct.

·1· · · · Q.· · And Steadfast was responsible for

·2· ·maintaining and supporting the server?

·3· · · · A.· · The physical hardware of the system,

·4· ·yes.

Zimmerman Dep. pp. 15:1 to 16:4.

23· · · · Q.· · There's also some testimony with

24· ·regards to different levels of services.· There

·1· ·was at one point silver and one point gold.

·2· · · · · · · And I wanted you to clarify a little

·3· ·bit about the transition to -- from silver to

·4· ·basic and from gold to, I think you testified

·5· ·that's the -- what was the gold service

·6· ·platform?

48

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·7· · · · A.· · So the basic management and the<br>·8· ·silver management were the same.· That was just<br>·9· ·a naming change.· And then the gold management<br>10· ·and the full management were the same.· Again,<br>11· ·that's just a naming change.<br>12· · · · · · · With the basic and silver management<br>13· ·is where we would essentially -- we would only<br>14· ·support the base hardware of the system to<br>15· ·assure that the hardware is -- yeah, at the<br>16· ·request of the customer.<br><br>**17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system**<br>**21· ·really in any way, and would be entirely reliant**<br>**22· ·on the customer telling us that there is an**<br>**23· ·issue with the hardware or the performance of**<br>**24· ·that system.**<br>·1· · · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system,<br>·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>·9· · · · Q.· · And as far as you can remember,<br>10· ·Flixya or ImageBam was what kind of client; was<br>11· ·it a full, or was it a basic?<br>12· · · · A.· · They had always had the silver<br>13· ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 32. Flixya hosted <imagebam.com>.<br><br>KZ Decl. ¶ 38. | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. A, KZ Dep. 15:5.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶¶ 52, 88. | Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** Steadfast stands by its factual assertion as supported by its submissions.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya either through mendacity or stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30b (6) deposition clearly described the relationship between Steadfast and Flixya:

```
24· · · · Q.· · Flixya hosted ImageBam?
·1· · · · A.· · Yes.
·2· · · · Q.· · Or are you saying Flixya hosted
·3· ·ImageBam, or are you saying -- saying Steadfast
·4· ·hosted ImageBam?
·5· · · · A.· · Flixya hosted ImageBam.
·6· · · · Q.· · All right.· And what services did
·7· ·Steadfast provide for ImageBam?
·8· · · · A.· · Provided server rental services.
·9· · · · Q.· · Can you be more specific?
10· · · · A.· · Not really.· I mean, they had a
11· ·server available to them.
12· · · · Q.· · Who owned the server?
13· · · · A.· · We owned the server.
14· · · · Q.· · And Flixya leased use of the server?
15· · · · A.· · Yes.
16· · · · Q.· · Was it a dedicated or co-located
17· ·server?
18· · · · A.· · It was dedicated.
19· · · · Q.· · To your knowledge, was Imagebam.com
20· ·the only website on that server?
21· · · · A.· · I don't know.
22· · · · Q.· · That's because they managed what
23· ·content they put on it?
24· · · · A.· · Correct.
```

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·1· · · · Q.· · And Steadfast was responsible for
·2· ·maintaining and supporting the server?
·3· · · · A.· · The physical hardware of the system,
·4· ·yes.
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · · A.· · Yes.
·7· · · · Q.· · What does that mean?
·8· · · · A.· · We basically had two forms of
·9· ·management, basic management and full
10· ·management.
11· · · · · · · Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system
14· ·unless it is specifically requested by the
15· ·customer.
16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.
Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·6·  ·platform?<br>·7· · · ·  A.·  · So the basic management and the<br>·8·  ·silver management were the same.·  That was just<br>·9·  ·a naming change.·  And then the gold management<br>10·  ·and the full management were the same.·  Again,<br>11·  ·that's just a naming change.<br>12·  · · · · · ·  With the basic and silver management<br>13·  ·is where we would essentially -- we would only<br>14·  ·support the base hardware of the system to<br>15·  ·assure that the hardware is -- yeah, at the<br>16·  ·request of the customer.<br>17·  · · · · · ·  We would not be doing anything<br>18·  ·proactive.·  We would not monitor the system, we<br>19·  ·would not be logging into the system, we would<br>20·  ·have no operation or control of the system<br>21·  ·really in any way, and would be entirely reliant<br>22·  ·on the customer telling us that there is an<br>23·  ·issue with the hardware or the performance of<br>24·  ·that system.<br>·1·  · · · · · ·  Whereas, the full management and the<br>·2·  ·gold management is where we are much more<br>·3·  ·proactive and active in monitoring the system,<br>·4·  ·logging into the system, working with the<br>·5·  ·customer on specific software issues, software<br>·6·  ·complaints and would generally then have more<br>·7·  ·access to the system in the case of full<br>·8·  ·management or the gold management.<br>·9· · · ·  Q.·  · And as far as you can remember,<br>10·  ·Flixya or ImageBam was what kind of client; was<br>11·  ·it a full, or was it a basic?<br>12· · · ·  A.·  · They had always had the silver<br>13·  ·management and then the basic management.<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 33. Steadfast did not host &lt;imagebam.com&gt;.<br><br>KZ Decl. ¶ 39. | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. A, KZ Dep. 15:5.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶¶ 52, 88. | Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS has previously admitted that Steadfast did not operate, control, or manage any functions of the <imagebam.com> website.  See Dkt 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC ¶ 52. Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

    24· · · · Q.· · Flixya hosted ImageBam?
    ·1· · · · A.· · Yes.
    ·2· · · · Q.· · Or are you saying Flixya hosted
    ·3· ·ImageBam, or are you saying -- saying Steadfast
    ·4· ·hosted ImageBam?
    ·5· · · · A.· · Flixya hosted ImageBam.
    ·6· · · · Q.· · All right.· And what services did
    ·7· ·Steadfast provide for ImageBam?
    ·8· · · · A.· · Provided server rental services.
    ·9· · · · Q.· · Can you be more specific?
    10· · · · A.· · Not really.· I mean, they had a
    11· ·server available to them.
    12· · · · Q.· · Who owned the server?
    13· · · · A.· · We owned the server.
    14· · · · Q.· · And Flixya leased use of the server?
    15· · · · A.· · Yes.
    16· · · · Q.· · Was it a dedicated or co-located
    17· ·server?
    18· · · · A.· · It was dedicated.
    19· · · · Q.· · To your knowledge, was Imagebam.com
    20· ·the only website on that server?
    21· · · · A.· · I don't know.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 22· · · · Q.· · That's because they managed what 23· ·content they put on it? 24· · · · A.· · Correct. Zimmerman Dep. pp. 15:1 to 15:24 | |
| 34. Flixya's <imagebam.com> is a host for user-uploaded content.<br><br>KZ Decl. ¶ 40.<br><br>JLA Decl. Ex. A, KZ Dep. 25:18-24.<br><br>JLA Decl. Ex. A, KZ Dep. 25:22-24 ("Q. I mean, essentially it serves as a -- as a host for user-uploaded content, right? A. Correct").<br><br>JLA Decl. Ex. B, Dkt. 319, ¶¶ 52, 88.<br><br>JLA Decl. Ex. D (Imagebam website pages), Ex. 20 to Penn Declaration (Dkt. 300-20). | Disputed.  Flixya leased three dedicated servers from Steadfast. Flixya also purchased basic management services.  Zimmerman Depo. pp. 16-21, Exs. 1, 2.  Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31. |

**REPLY:** ALS's response is nonsensical in that it has nothing to do with the stated fact and thus must be viewed as an admission on the part of ALS. Steadfast stands by the evidence submitted. Answering further, Imagebam is an image hosting site for users to store images and does not display <u>any</u> images on its website that are accessible by the public.  Screenshots of the Imagebam.com website evidence this fact:

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|



In order to use the services provided by Imagebam on its website, <u>individual users</u> must register and create an account with Imagebam



ALS's employee, Eric Penn stated: ("Q. Do you know what ImageBam.com is? A. I believe so. Q. What is ImageBam.com? A. A image sharing site where users can upload images and then share the links to those images.")

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 35. Only users of Flixya's <imagebam.com> upload images to <imagebam.com>.<br><br>JLA Decl. Ex. B, KZ Dep. 25:22-24 ("Q. I mean, essentially it serves as a - - as a host for user-uploaded content, right? A. Correct").<br><br>KZ Decl. ¶ 40.<br><br>JLA Decl. Ex. D. | Admitted. |
| 36. Steadfast has never uploaded ALS content, such as images or videos, on <imagebam.com>.<br><br>KZ Decl. ¶ 41. | Admitted. |
| 37. Assuming that ALS's images were, in fact, stored on the Flixya-leased servers, the ALS images were not stored at the direction of Steadfast.<br><br>KZ Decl. ¶ 42.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 59.<br><br>JLA Decl. Ex. D. | Admitted. |
| 38. Steadfast did not select any of the content Flixya's Imagebam.com users posted.<br><br>KZ Decl. ¶ 43.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 59. | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 39. Flixya's imagebam.com informed users of its terms of service on its website.<br><br>JLA Decl. Ex. D. | Objections, lacks foundation, based on hearsay. |

**REPLY:** ALS fails to state whether it "Disputes" this fact and therefore it should be taken as admitted.  Steadfast stands by its factual assertion as supported by its submission and ALS does not dispute it.  This fact is introduced for the effect on the listener or reader, who is Steadfast. *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). The underlying evidence shows that, after Steadfast's investigation into Flixya's procedures, Steadfast believed that Flixya was in compliance with the law. Thus, this is not hearsay.

Answering further, it is clear that Imagebam.com has terms of service including directions on how to contact it regarding copyright matters relating to its members:

"It is our policy to respond to notices of alleged infringement that comply with the Digital Millennium Copyright Act. If you are the owner of the copyright or intellectual property that violates copyright infringement. Under the DMCA, a claim must be sent to the service providers Designated Agent.

Copyright and Intellectual Property Statement

Notifying ImageBam of Violations:

If you believe that copyright infringement or intellectual property rights have been violated, please provide ImageBam with the following information:

an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;

a description of the copyrighted work or other intellectual property that you claim has been infringed;

a description or url on ImageBam where the material that you claim is infringing is located on the ImageBam site;

your current contact information, including telephone number, and/or email address;

Your statement and good faith belief that the disputed use is not authorized by the copyright or intellectual property owner, its agent, or the law;

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| Your statement made under penalty of perjury, that the above information in your Notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf.<br><br>Notice of claims of copyright or intellectual property infringement can be directed to Imagebam.com's Designated Agent via dmca@imagebam.com Please do not send any other notices or communications to the Designated Agent, who is appointed solely for the purposes of receiving notices of copyright claims under the DMCA. | |
| 40. Based on Flixya's imagebam.com's terms of service, imagebam.com's users were required to agree to imagebam.com's terms of service.<br><br>JLA Decl. Ex. D. | Objections, lacks foundation, based on hearsay. |

**REPLY:** ALS fails to state whether it "Disputes" this fact and therefore it should be taken as admitted.  Steadfast stands by its factual assertion as supported by its submissions and ALS does not dispute it.  This fact is introduced for the effect on the listener or reader, who is Steadfast. *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). The underlying evidence shows that, after Steadfast's investigation into Flixya's procedures, Steadfast believed that Flixya was in compliance with the law. Thus, this is not hearsay.

      Answering further, Imagebam.com terms of service state: "Member assumes all knowledge of applicable law and is responsible for compliance with any such laws. Member may not use the Service in any way that violates applicable state, federal, or international laws, regulations or other government requirements. Member further agrees not to transmit any illegal material that encourages conduct that could constitute a criminal offense, give rise to civil liability or otherwise violate any applicable local, state, national, or international law or regulation.

"ImageBam" has a zero-tolerance policy regarding spam, child pornography, child modeling, copyright infringement and abuse."

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 41. On the home page of <imagebam.com>, Flixya placed a "Report Abuse" link.<br><br>JLA Decl. Ex. E, Resp. No. 2 (Plaintiff's Responses to First Set of Requests For Admissions From Defendant Steadfast Networks LLC). | Admitted. |
| 42. The "Report Abuse" "link resolves to a page that discusses providing notice of infringement to dmca@imagebam.com."<br><br>JLA Decl. Ex. D.<br><br>JLA Decl. Ex. E, Resp. No. 2. | Admitted. |
| 43. Flixya's <imagebam.com> has a designated agent, whose information was made available on its website and was provided to the Copyright Office, as early as May 20, 2014.<br><br>JLA Decl. Ex. C.<br><br>JLA Decl. Ex. D.<br><br>JLA Decl. Ex. E, Resp. No. 2. | Admitted. |
| 44. Dmca@imagebam.com is the correct email address to send DMCA notifications for claimed infringements on Imagebam.com.<br><br>KZ Decl. ¶¶ 44-45. | Disputed.  This is the correct address to send notice to Flixya.  The address supplied to send notice to Steadfast in the terms updated January 2017 was abuse@steadfast.com.  (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.) |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex B., Dkt. 319, ¶ 97 (ALS admitting that "Neither the Imagebam.com website or the Copyright Office mentions Steadfast as the DMCA agent for Imagebam.com.")<br><br>JLA Decl. Exs. C, D, E (Resp. No. 2).<br><br>JLA Decl. Ex. F, Eric Penn Deposition ("Penn Dep.") 53:13-16. | |

**REPLY:** ALS's response is nonsensical in that it admits this fact and then includes another unrelated factual assertion therefore it should be deemed admitted.

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

Answering further the Imagebam.com website clearly sets out the requirements for contacting the website regarding any alleged copyright infringement by its members:
"It is our policy to respond to notices of alleged infringement that comply with the Digital Millennium Copyright Act. If you are the owner of the copyright or intellectual property that violates copyright infringement. Under the DMCA, a claim must be sent to the service providers Designated Agent.
Copyright and Intellectual Property Statement
Notifying ImageBam of Violations:

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| If you believe that copyright infringement or intellectual property rights have been violated, please provide ImageBam with the following information: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest; a description of the copyrighted work or other intellectual property that you claim has been infringed; a description or url on ImageBam where the material that you claim is infringing is located on the ImageBam site; your current contact information, including telephone number, and/or email address; Your statement and good faith belief that the disputed use is not authorized by the copyright or intellectual property owner, its agent, or the law; Your statement made under penalty of perjury, that the above information in your Notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf. **Notice of claims of copyright or intellectual property infringement can be directed to Imagebam.com's Designated Agent via dmca@imagebam.com Please do not send any other notices or communications to the Designated Agent, who is appointed solely for the purposes of receiving notices of copyright claims under the DMCA.**" | |
| 45. Flixya has never designated Steadfast to be <imagebam.com>'s designated agent to receive notices of claimed copyright infringement.<br><br>KZ Decl. ¶ 44.<br><br>Stange Decl. ¶¶ 3-5.<br><br>JLA Decl. Ex B., Dkt. 319, ¶ 97.<br><br>JLA Decl. Exs. C, D, E (Resp. No. 2).<br><br>JLA Decl. Ex. F, Penn Dep. 53:13-16. | Objection, vague and ambiguous, irrelevant.  Disputed.  Notice to Flixya should be sent to Flixya; notice to Steadfast should be sent to Steadfast. |
| **REPLY:** There is nothing vague, ambiguous or irrelevant about this fact. Steadfast is not Flixya's designated DMCA agent.  In the prior paragraph ALS | |

61

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| admits the correct address to send notice regarding Flixya is Dmca@imagebam.com. Responding further, the official filing with the United States Copyright Office lists dmca@imagebam.com as the contact email address for the Imagebam DMCA agent. | |
| 46. Steadfast is not, and has never been, the designated agent to receive notices of claimed copyright infringement for <imagebam.com>.<br><br>KZ Decl. ¶ 45.<br><br>Stange Decl. ¶¶ 3-5, 8, 11.<br><br>JLA Decl. Ex B., Dkt. 319, ¶ 97.<br><br>JLA Decl. Exs. C, D, E (Resp. No. 2), F, H. | Objection, vague and ambiguous, irrelevant.  Disputed.  Notice to Flixya should be sent to Flixya; notice to Steadfast should be sent to Steadfast. |

**REPLY:** There is nothing vague, ambiguous or irrelevant about this fact. Steadfast is not Flixya's designated DMCA agent.  In the prior paragraph ALS admits the correct address to send notice regarding Flixya is Dmca@imagebam.com.

Responding further, ALS implies that the Copyright Office records are vague and ambiguous. But ALS admits that "[n]either the Imagebam.com website or the Copyright Office mentions Steadfast as the DMCA agent for Imagebam.com." *See* Dkt. 319, ¶ 97. Indeed, it is neither vague nor ambiguous; these objections are disingenuous.

Zimmerman, the CEO and Founder of Steadfast, has personal knowledge about whether or not Flixya has designated Steadfast as its agent to receive claimed notices of infringement and has testified under oath that Steadfast is not the DMCA agent for Flixya and the official filing with the United States Copyright Office lists dmca@imagebam.com as the contact email address for the Imagebam DMCA agent.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| To be effective, a claimed notice of infringement must be sent to the website's designated agent. As shown by the supporting evidence, Steadfast was not and has never been the designated agent for Flixya's <imagebam.com>. | |
| 47. Based on Steadfast's interactions with Flixya, Steadfast was of the opinion that Flixya's <imagebam.com> complied with the law.<br><br>KZ Decl. ¶¶ 67-74.<br><br>JLA Decl. Ex. A, KZ Dep. 25:1-12. | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
|  | complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112.  Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** Steadfast stands by its factual assertion as supported by its submissions.  The underlying evidence for this *fact* is Dkt. 344-1, ¶ 50 (citing KZ Decl. ¶¶ 15-16, 41-48) which is also introduced for the effect on the listener or reader, who is Steadfast. *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). The underlying evidence shows that, after Steadfast's investigation into Flixya's procedures, Steadfast believed that Flixya was in compliance with the law. Thus, this is not hearsay.

This is a fact. Steadfast believed something, and the substance of Steadfast's belief is not a legal conclusion.

Steadfast's belief was entirely reasonable as it was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement."  (Zimmerman Decl.  ¶73).

Further, Mr. Zimmerman testified under oath that he investigated Imagebam.com:

·2· · · · Q.· · And what did you look at to satisfy
·3· ·your curiosity on that point?

64

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| ·4· · · · A.· · We had looked at their site with<br>·5· ·their own DMCA policy and had talked to --<br>·6· ·talked to people at the company directly as far<br>·7· ·as what their policies were.<br>·8· · · · Q.· · Was this in response to getting<br>·9· ·various e-mails from Steve Easton or in a<br>10· ·response to a complaint from some other<br>11· ·copyright owner?<br>12· · · · A.· · That was from a different complaint<br><br>In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72).<br><br>ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes."). | |
| 48. Flixya has an automated system for removing unauthorized content, responded to DMCA notifications, removed content, and terminated repeat infringers.<br><br>KZ Decl. ¶¶ 70, 71, 74.<br><br>JLA Decl. Ex. A, KZ Dep. 25:1-12.<br><br>JLA Decl. Exs. C, D, E (*see* Resp. No. 3). | Objection, lack foundation, based upon hearsay. |
| **REPLY:** ALS fails to state whether it "Disputes" this fact and therefore it should be taken as admitted.  Steadfast stands by its factual assertion as supported by its submissions and ALS does not dispute this fact.  This fact is introduced for the effect on the listener or reader, who is Steadfast. *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). The underlying evidence shows that, after Steadfast's investigation into Flixya's | |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| procedures, Steadfast believed that Flixya was in compliance with the law. Thus, this is not hearsay.<br><br>Answering further Karl Zimmerman testified that he had verified Flixya's system:<br><br>·2· · · · Q.· · And what did you look at to satisfy<br>·3· ·your curiosity on that point?<br>·4· · · · A.· · We had looked at their site with<br>·5· ·their own DMCA policy and had talked to --<br>·6· ·talked to people at the company directly as far<br>·7· ·as what their policies were.<br>·8· · · · Q.· · Was this in response to getting<br>·9· ·various e-mails from Steve Easton or in a<br>10· ·response to a complaint from some other<br>11· ·copyright owner?<br>12· A.· · That was from a different complaint<br><br>KZ Dep. 25:1-12. | |
| 49. ALS engages in the business of "adult" entertainment, creating and marketing erotic content.<br><br>JLA Decl. Ex. B, ¶ 1a. | Admitted. |
| 50. ALS's agent, Steve Easton, has sent notices on behalf of ALS to Steadfast.<br><br>KZ Decl. ¶ 46.<br><br>Stange Decl. ¶ 3. | Admitted. |
| 51. In the emails Easton sent to Steadfast, Easton included <imagebam.com> Uniform Resource Locator ("URL") hyperlinks that allegedly resolved to ALS images.<br><br>KZ Decl. ¶¶ 46, 48. | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 52. Easton never sent a notice to Steadfast, in which Easton claimed that a <steadfast.net> hyperlink resolved to an ALS image.<br><br>KZ Decl. ¶ 48.<br><br>Stange Decl. ¶ 11. | Admitted. |
| 53. Based on Steadfast's reading of the DMCA, Steadfast believed that Easton never sent Steadfast a notice that complied with the DMCA.<br><br>KZ Decl. ¶ 47.<br><br>Stange Decl. ¶¶ 3-5. | Objection, calls for a legal conclusion. Disputed.  (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.)  The notices contained hyperlinks for each and every work infringed, which disclosed both the work infringed and the location of the work on the infringing site.  Easton's emails contain each of the other statements required by 17 U.S.C. § 512(c)(3), such as a statement of good faith belief that the uses are not authorized and authority to provide notice for the copyright owner. |

**REPLY:** Steadfast stands by its factual assertion as supported by its submissions.  The underlying evidence for this *fact* is Dkt. 344-1, ¶ 50 (citing KZ Decl. ¶¶ 15-16, 41-48) which  is also introduced for the effect on the listener or reader, who is Steadfast. *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935-36 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). The underlying evidence shows that, after Steadfast's investigation into Flixya's procedures, Steadfast believed that Flixya was in compliance with the law. Thus, this is not hearsay.

This is a fact. Steadfast believed something, and the substance of Steadfast's belief is not a legal conclusion.

Steadfast's belief was entirely reasonable as it was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement."  (Zimmerman Decl. ¶73).

Further, Mr. Zimmerman testified under oath that he investigated Imagebam.com:
·2· · · · Q.· · And what did you look at to satisfy
·3· ·your curiosity on that point?
·4· · · · A.· · We had looked at their site with
·5· ·their own DMCA policy and had talked to --
·6· ·talked to people at the company directly as far
·7· ·as what their policies were.
·8· · · · Q.· · Was this in response to getting
·9· ·various e-mails from Steve Easton or in a
10· ·response to a complaint from some other
11· ·copyright owner?
12· · · · A.· · That was from a different complaint

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl.  ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| 54. Easton never emailed Steadfast a claimed notice of infringement for which Steadfast was the responsible designated agent.<br><br>KZ Decl. ¶ 49. | Objection, vague and ambiguous, argumentative.  ALS provided notice to Steadfast's designated agent of infringement on a site stored on Steadfast's server. (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. |

68

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |
| Stange Decl. ¶¶ 5, 8, 11. JLA Decl. Exs. C, D, E (see Resp. Nos. 6, 7), F. | 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.) Flixya opened an account with Steadfast in July 2006. Flixya leased dedicated servers owned by Steadfast, on which was stored imagebam.com. Steadfast maintained the physical server. Zimmerman Depo. pp. 14-16. Flixya leased three dedicated servers from Steadfast with 3 Terabyte upload capacities. Flixya also purchased basic management services. *Id.* pp. 16-21, Exs. 1, 2. Steadfast is not aware of any sites Flixya placed on the servers leased from Steadfast other than imagebam.com. *Id.* 22:6-9. Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center. *Id.* pp. 30-31. |

**REPLY:** ALS has never complained about an image being hosted on steadfast.net. All of its complaints were directed to imagebam.com. The evidence shows that Imagebam.com has terms of service including directions on how to contact it regarding any alleged copyright infringement by its individual members:

"It is our policy to respond to notices of alleged infringement that comply with the Digital Millennium Copyright Act. If you are the owner of the copyright or intellectual property that violates copyright infringement. Under the DMCA, a claim must be sent to the service providers Designated Agent.
Copyright and Intellectual Property Statement
Notifying ImageBam of Violations:
If you believe that copyright infringement or intellectual property rights have been violated, please provide ImageBam with the following information:
an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| a description of the copyrighted work or other intellectual property that you claim has been infringed;<br>a description or url on ImageBam where the material that you claim is infringing is located on the ImageBam site;<br>your current contact information, including telephone number, and/or email address;<br>Your statement and good faith belief that the disputed use is not authorized by the copyright or intellectual property owner, its agent, or the law;<br>Your statement made under penalty of perjury, that the above information in your Notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf.<br>Notice of claims of copyright or intellectual property infringement can be directed to Imagebam.com's Designated Agent via dmca@imagebam.com<br>Please do not send any other notices or communications to the Designated Agent, who is appointed solely for the purposes of receiving notices of copyright claims under the DMCA. | |
| 55. ALS's notices to Steadfast did not identify copyright works made accessible through Steadfast's website, Steadfast.net.<br><br>KZ Decl. ¶ 50.<br><br>Stange Decl. ¶ 11. | Admitted. |
| 56. Even assuming that ALS's images were, in fact, on the Flixya-leased server, Easton's notices of claimed infringement did not contain information reasonably sufficient to permit Steadfast to locate the specific infringing material on the Flixya-leased server.<br><br>KZ Decl. ¶ 51.<br><br>JLA Decl. Ex A., KZ Dep. 45:6-24. | Objection, calls for a legal conclusion. Disputed.  (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.)  The notices contained hyperlinks for each and every work infringed, which disclosed both the work infringed and the location of the work on the infringing site.  Easton's emails contain each of the other statements required by 17 |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex B., Dkt. 319, ¶¶ 52-54. | U.S.C. § 512(c)(3), such as a statement of good faith belief that the uses are not authorized and authority to provide notice for the copyright owner. |

**REPLY:** Steadfast stands by its factual assertion as supported by its submissions.  ALS has admitted that: "In the emails Easton sent to Steadfast, Easton included <imagebam.com> Uniform Resource Locator ("URL") hyperlinks that allegedly resolved to ALS images." Dkt. 368, ¶ 55. ALS also admitted that: (1) "Steadfast did not have access to individual user's content or accounts of Flixya's Imagebam.com website."; (2) "Steadfast was never given permission by Flixya to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users.;" and, (3) "Steadfast was never given permission by Flixya to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users." Dkt. 368, ¶¶ 33-35.

Zimmerman, the CEO and founder of Steadfast, has personal knowledge about his business. He knows that a URL will not inform him where on a Flixya-leased server the alleged image is located. Nor would it inform him which of the three Flixya-leased servers the image was located.

The agent for ALS, Steve Easton, has admitted through testimony that he never bothered to include images in his notices:
13 Q. Okay. So to answer the question, in this
14 case, for instance, there are no images per se, just
15 the URLs?
16 A. Well, you have got to -- I did not attach the
17 images, no.
18 Q. Thank you. And as far as you understand or
19 are aware, all of these images have been removed?
20 A. Yes.
21 Q. Did you include with this notice any of the
22 copyright information itself, whether the registration
23 or the copyrighted work?
24 A. I did not.
(Easton Deposition pp 44:13-24)

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 57. Steadfast did not operate, control, or manage any functions of Flixya's Imagebam.com website.<br><br>KZ Decl. ¶ 52.<br><br>JLA Decl. Ex B., Dkt. 319, ¶ 52. | Disputed.  Flixya opened an account with Steadfast in July 2006.  Flixya leased dedicated servers owned by Steadfast, on which was stored imagebam.com.  Steadfast maintained the physical server.  *Id.* pp. 14-16.<br><br>Flixya leased three dedicated servers from Steadfast with 3 Terabyte upload capacities.  Flixya also purchased basic management services. *Id.* pp. 16-21, Exs. 1, 2.  Steadfast is not aware of any sites Flixya placed on the servers leased from Steadfast other than imagebam.com.  *Id.* 22:6-9.<br><br>Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in Steadfast's data center.  *Id.* pp. 30-31.<br><br>In March 2007 Flixya raised a technical quarrel about the system performance they were obtaining from the servers provided and configured by Steadfast.  Id. pp. 33-36, Ex. 4.<br><br>If Steadfast had powered down the servers leased by imagebam.com, the front page of the site would have been inaccessible until Flixya could perform operations to direct users to the page on some other company's server.  *Id.* pp. 46-48. |

**REPLY:** ALS has previously admitted that Steadfast leased servers to Flixya. See Dkt. 319 Plaintiff's Response to Statement of Genuine Disputes re: Motion for Partial Summary Judgment Against Defendant Steadfast Networks, LLC Paragraph 52.

Answering further, ALS repeatedly attempts to conflate the relationship between Steadfast and Flixya through stubborn wishfulness but its attempt to do so should

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

be rejected.  Karl Zimmerman in his 30(b)(6) deposition clearly described the relationship between Steadfast and Flixya:

**24· · · · Q.· · Flixya hosted ImageBam?**
**·1· · · · A.· · Yes.**
**·2· · · · Q.· · Or are you saying Flixya hosted**
**·3· ·ImageBam, or are you saying -- saying Steadfast**
**·4· ·hosted ImageBam?**
**·5· · · · A.· · Flixya hosted ImageBam.**
**·6· · · · Q.· · All right.· And what services did**
**·7· ·Steadfast provide for ImageBam?**
**·8· · · · A.· · Provided server rental services.**
**·9· · · · Q.· · Can you be more specific?**
**10· · · · A.· · Not really.· I mean, they had a**
**11· ·server available to them.**
**12· · · · Q.· · Who owned the server?**
**13· · · · A.· · We owned the server.**
**14· · · · Q.· · And Flixya leased use of the server?**
**15· · · · A.· · Yes.**
**16· · · · Q.· · Was it a dedicated or co-located**
**17· ·server?**
**18· · · · A.· · It was dedicated.**
**19· · · · Q.· · To your knowledge, was Imagebam.com**
**20· ·the only website on that server?**
**21· · · · A.· · I don't know.**
**22· · · · Q.· · That's because they managed what**
**23· ·content they put on it?**
**24· · · · A.· · Correct.**
·1· · · · Q.· · And Steadfast was responsible for
·2· ·maintaining and supporting the server?
·3· · · · A.· · The physical hardware of the system,
·4· ·yes.
Zimmerman Dep. pp. 15:1 to 16:4.

·4· · · · Q.· · What is -- do you see the reference
·5· ·to, Managed services, basic management?
·6· · · · A.· · Yes.
·7· · · · Q.· · What does that mean?
**·8· · · · A.· · We basically had two forms of**

73

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

·9· ·management, basic management and full
10· ·management.
11· · · · · · · Basic management is where essentially
12· ·we don't do anything with the system.· There's
13· ·no proactive nature or activity on the system
14· ·unless it is specifically requested by the
15· ·customer.
16· · · · Q.· · What did you call the higher level of
17· ·management?
18· · · · A.· · Full management.
19· · · · Q.· · What's entailed in full management?
20· · · · A.· · There we will monitor the activity of
21· ·the system with a remote monitoring system and
22· ·then proactively respond to any of those alerts
23· ·and actions.
24· · · · · · · And then we'll also provide a higher
·1· ·level of support and services for software on
·2· ·the systems and things along those lines.

Zimmerman Dep. pp. 18:4 to 19:2.

23· · · · Q.· · There's also some testimony with
24· ·regards to different levels of services.· There
·1· ·was at one point silver and one point gold.
·2· · · · · · · And I wanted you to clarify a little
·3· ·bit about the transition to -- from silver to
·4· ·basic and from gold to, I think you testified
·5· ·that's the -- what was the gold service
·6· ·platform?
·7· · · · A.· · So the basic management and the
·8· ·silver management were the same.· That was just
·9· ·a naming change.· And then the gold management
10· ·and the full management were the same.· Again,
11· ·that's just a naming change.
12· · · · · · · With the basic and silver management
13· ·is where we would essentially -- we would only
14· ·support the base hardware of the system to
15· ·assure that the hardware is -- yeah, at the
16· ·request of the customer.

74

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| **17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system**<br>**21· ·really in any way, and would be entirely reliant**<br>**22· ·on the customer telling us that there is an**<br>**23· ·issue with the hardware or the performance of**<br>**24· ·that system.**<br>·1· · · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system,<br>·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>**·9· · · · Q.· · And as far as you can remember,**<br>**10· ·Flixya or ImageBam was what kind of client; was**<br>**11· ·it a full, or was it a basic?**<br>**12· · · · A.· · They had always had the silver**<br>**13· ·management and then the basic management.**<br>Zimmerman Dep. pp. 136:23 to 138:13. | |
| 58. Steadfast did not have access to individual user's content or accounts of Flixya's Imagebam.com website.<br><br>KZ Decl. ¶ 53.<br><br>JLA Decl. Ex B., Dkt. 319, ¶ 53. | Admitted. |
| 59. Assuming that the complained of ALS images were stored on a Flixya-leased server, an imagebam.com URL does nothing to inform Steadfast where, on the Flixya-leased server, the | Disputed.  The emails contained hyperlinks disclosing the exact page on imagebam.com that the images appeared. (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. |

75

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| complained of ALS material is located.<br><br>KZ Decl. ¶ 54.<br><br>JLA Decl. Ex B., Dkt. 319, ¶¶ 52-53, 61, 88. | 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.) |

**REPLY:** Steadfast stands by its factual assertion as supported by its submissions. ALS has provided no evidence that the images were in fact stored on the Steadfast server nor does it explain how a hyperlink for a website Steadfast does not control proves the location of an image.

ALS admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

Answering further, Karl Zimmerman explained: ALS's notices to Steadfast did not identify copyright works made accessible through Steadfast's website, Steadfast.net; even assuming that ALS's images were, in fact, on the Flixya leased server, Easton's notices of claimed infringement did not contain information reasonably sufficient to permit Steadfast to locate the specific infringing material on the Flixya-leased server; Steadfast did not operate, control, or manage any functions of Flixya's Imagebam.com website; Steadfast did not have access to individual user's content or accounts of Flixya's Imagebam.com website; an imagebam.com URL does nothing to inform Steadfast where, on the Flixya-leased server, the complained of ALS material is located; Steadfast was never given permission by Flixya to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users; Steadfast was never authorized to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users and Steadfast does not access leased servers without or in excess of a client's authorization.

| 60. Steadfast was never given permission by Flixya to access Flixya's system or database for the purpose of removing, locating, or | Admitted. |
|---|---|

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| disabling access to alleged infringing content or its users.<br><br>KZ Decl. ¶ 55.<br><br>JLA Decl. Ex A., KZ Dep. 45:6-24.<br><br>JLA Decl. Ex B., Dkt. 319, ¶¶ 52-53, 61, 88. | |
| 61. Steadfast was never authorized to access Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content or its users.<br><br>KZ Decl. ¶ 56.<br><br>JLA Decl. Ex A., KZ Dep. 45:6-24.<br><br>JLA Decl. Ex B., Dkt. 319, ¶¶ 52-53, 61, 88. | Admitted. |
| 62. Steadfast did not have awareness of any alleged specific infringement prior to the DMCA notification.<br><br>KZ Decl. ¶ 57.<br><br>JLA Decl. Ex B., Dkt. 319, ¶ 73. | Objection, vague and ambiguous, lacks foundation. Imagebam.com has been one of the worst sites in terms of regularly displaying entire galleries of infringing ALS works. While imagebam.com apparently claims to be a content neutral share site for third-party uploaded content, thus claiming the privileges of the DMCA, even a short time looking at imagebam.com reveals key attributes of "pirate" sites, ones primarily dedicated to storing galleries of infringing adult content – "red flags" of infringement. In short, these sites |

77

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | are tooled to maximize upload of high volumes of alluring content while minimizing consequences to users uploading content without authority. More specifically, imagebam.com, like other pirate sites: 1) offers alternative high volume upload capacities not typically offered on "mainstream" content-share sites; 2) fails to offer limitations such that only friends or invitees may view content, but rather uploads all content to unsecure publicly viewable pages; 3) monetizes uploaded content through advertisements over, under and proximate to uploaded content, ads that do not direct traffic to the copyright owner; 4) provides code or hyperlinks that can be quickly used to publish the location of the imagebam.com page on adult "fan" forums, sites offering links to free stolen adult content galleries; 5) requires no verifiable personal information to upload content and has weak ability to track and terminate users; and 6) fail to display information indicating compliance with 18 USC § 2257, requiring record keeping of the age of models appearing in adult content.  (12/1/17 Penn Decl. Doc. 300 ¶¶ 8-32, Exs. 20-22.) |
| **REPLY:** ALS has previously admitted this fact. *See* Dkt 319, ¶ 73. *See also* Dkt. 319, ¶ 93 (ALS arguing that "Steadfast would not necessarily have specific knowledge of infringing ALS content prior to receipt of a notice from Easton"). Under Fed. R. Evid. 801(d)(2), this is admissible as an admission by a party-opponent. | |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |

Answering further, Eric Penn of ALS testified under oath that Steadfast did not have awareness of any alleged specific infringement prior to the notifications from ALS:

16 Q So ALS Scan sent these notices to ImageBam
17 and then they cc'd Steadfast with the hope that the
18 images were taken down; is that correct?
19 A Correct.
20 Q How is it possible that Steadfast would
21 know the specific images complained of in these
22 notifications that were hosted by ImageBam?
23 A I'm sorry, can you repeat the question?
24 Q So number -- your first one you have it's
25 ALS Scan model Electra and there's 20 links. How is it
1 possible for Steadfast to know that these 20 links were
2 hosted on the ImageBam website?
3 A The notice would have included the URLs of
4 the infringing images and they all would have been on
5 ImageBam.com.
6 Q How would Steadfast know that these images
7 were hosted on the ImageBam.com website before the
8 notice was sent?
9 MR. FLYNN: Can you read that back,
10 please?
11 (The record was read.)
12 MR. FLYNN: Objection. Calls for
13 speculation. Answer if you know.
14 THE WITNESS: I don't expect Steadfast to
15 monitor and police every bit of data going across their
16 network. So prior to receiving the notice specifying
17 the images that were being infringed, they could only
18 look at the history of that website and I think deduce
19 based on the number of notices they received in
20 general, that that's the kind of content the website
21 hosts.
And
9 Q Prior to sending this notice, would
10 Steadfast have had specific knowledge about these
11 images?

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
| --- | --- |

12 MR. FLYNN: Objection. Form and
13 foundation. Calls for speculation.
14 THE WITNESS: No. Or I don't know.
15 BY MR. O'BRIEN:
16 Q No or you don't know?
17 A I guess I don't know. Yeah, I don't know.
18 I don't expect Steadfast would have known about the
19 images before they were reported.
And
9 Q Okay. So -- okay. Now, the hard thing is
10 so there's seven URLs, seven links, right? Would
11 Steadfast have known about these specific images before
12 you sent this notice?
13 MR. FLYNN: Objection. Form, foundation,
14 speculation, asked and answered. Go ahead.
15 THE WITNESS: I don't expect Steadfast
16 would have been aware of these infringements before
17 receiving the notice.
And
1 Q So the URLs in this email are for these
2 images?
3 A The URLs in the email are a little
4 indecipherable, but I think so, yes.
5 Q And would Steadfast have known about these
6 specific images prior to receiving the DMCA notice?
7 MR. FLYNN: Objection. Form and
8 foundation. Calls for speculation. Answer if you
9 know.
10 THE WITNESS: I don't expect Steadfast
11 would have been aware of these images prior to
12 receiving notices.
And
15 Q Set. Okay. And would Steadfast have
16 known about these specific images prior to receiving
17 this notice?
18 MR. FLYNN: Objection. Form and
19 foundation. Calls for speculation.
20 THE WITNESS: I don't expect Steadfast

80

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

21 would have been aware of these infringements until they
22 got the notice.
And
18 Q Okay. Would Steadfast have known about
19 these specific images prior to receiving the notice
20 from ALS Scan?
21 MR. FLYNN: Objection. Foundation. Form.
22 Calls for speculation.
23 THE WITNESS: I don't expect Steadfast
24 would have been aware of these specific images before
25 receiving a notice.
And
6 Q And would Steadfast have had specific
7 knowledge about these images prior to receiving the
8 notice from ALS Scan?
9 MR. FLYNN: Objection. Calls for
10 speculation.
11 THE WITNESS: I don't expect Steadfast
12 would have been aware of these images prior to
13 receiving their notice -- the notice.
And
23 Q Would Steadfast have known about these
24 specific images prior to you -- prior to it receiving
25 the notice from ALS Scan? 1 MR. FLYNN: Same objection.
2 THE WITNESS: I don't expect Steadfast to
3 have been aware of the images before getting notice.

| | |
|---|---|
| 63. Steadfast took direct and immediate actions which resulted in the complete removal of the allegedly infringing ALS images on Flixya's imagebam.com website.<br><br>KZ Decl. ¶ 58.<br><br>Stange Decl. ¶ 8. | Disputed. After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo. pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks. Mr. Zimmerman never clicked on any of |

81

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. G., Steve Easton Deposition ("Easton Dep.") 37:3-4 ("Q. Okay. Have all of these images been removed? A. I believe so, yes.") | those hyperlinks or asked anyone else to do so. *Id.* pp. 105-06. Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3. Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22. Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence. Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112. Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |
| **REPLY:** ALS refuses to address the fact asserted by Steadfast that it took action which ultimately resulted in Flixya taking down the complained of links. | |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

Steadfast was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶73).

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

Lastly, ALS has admitted that the infringers were individual users of the Imagebam.com website not Imagebam.com itself.  Mr. Penn has testified that:
    Q So in your view, who controls the
    14 infringing conduct in an instance where you sent a DMCA
    15 notice? And then I'll clarify that. Like, who's the
    16 ultimate infringer? Is it the user? Is it the person
    17 who downloads the images and then uploads them onto the
    18 website, is he the infringer?
    19 MR. FLYNN: Objection. Calls for a legal
    20 conclusion.
    21 THE WITNESS: That, yes, would be the
    22 direct infringer.
    23 BY MR. O'BRIEN:
    24 Q All right. And he -- that -- well, we're
    25 saying, he, but it could be a she, so he or she uploads
    Page 64
    1 that and that person does the infringement?
    2 MR. FLYNN: Objection. Calls for a legal
    3 conclusion. Asked and answered.

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 4 THE WITNESS: The person uploading the<br>5 image is the direct infringer.<br>6 BY MR. O'BRIEN:<br>7 Q Is ImageBam a direct infringer?<br>8 MR. FLYNN: Same objection. Go ahead.<br>9 THE WITNESS: My understanding is that<br>10 they're contributing to the infringement in not<br>11 terminating repeat infringers.<br>JLA Decl. Ex. B, Penn Dep. 64:13-65:11.<br><br>Also,<br>    Q So going back to ImageBam, does it provide<br>    11 user-generated content?<br>    12 MR. FLYNN: Asked and answered.<br>    13 THE WITNESS: Users can upload images to<br>    14 ImageBam's website.<br>    15 BY MR. O'BRIEN:<br>    16 Q And ImageBam doesn't upload the images,<br>    17 the user uploads the images, to the best of your<br>    18 knowledge?<br>    19 MR. FLYNN: Objection. Calls for<br>    20 speculation.<br>    21 THE WITNESS: Yeah, I don't know what<br>    22 ImageBam's practices are, what their employees are<br>    23 tasked with, but any person on the internet could<br>    24 potentially be a user of ImageBam.com.<br>JLA Decl. Ex. B, Penn Dep. 64:13-65:11.<br><br>ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1). | |
| 64. When Steadfast received an email from Easton, Steadfast's notification system assigned the email a ticket number. | Disputed. After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| KZ Decl. ¶ 59.<br><br>JLA Decl. Ex A., KZ Dep. 110:1-3.<br><br>Stange Decl. ¶ 4. | imagebam.com from Steve Easton. Zimmerman Depo. pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly."  *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  *Id.* pp. 98-104. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem.  *Id.* p. 112.  Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what |

85

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
|  | Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS refuses to address the fact asserted by Steadfast that it took action which ultimately resulted in Flixya taking down the complained of links. Steadfast was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶73).

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| 65. When, and after, ALS improperly sent notifications to Steadfast, Steadfast immediately forwarded the notices to Flixya's designated agent for <imagebam.com>.<br><br>KZ Decl. ¶ 60.<br><br>JLA Decl. Ex A., KZ Dep. 108:20-110:7.<br><br>JLA Decl. Ex A., KZ Dep. 110:4-7 ("Q. And then if it pertains to Imagebam.com, you'd forward it to | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| them? A. Yes, it would be automatically forwarded to them.")<br><br>Stange Decl. ¶¶ 3-8. | designate content as either "adult" or "family friendly." *Id.* 41:19-42:3. Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22. Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence. Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112. Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS refuses to address the fact asserted by Steadfast that it took action which ultimately resulted in Flixya taking down the complained of links. Steadfast was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not

87

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶73).

Further, Mr. Zimmerman testified under oath that he investigated Imagebam.com:

·2· · · · Q.· · And what did you look at to satisfy
·3· ·your curiosity on that point?
·4· · · · A.· · We had looked at their site with
·5· ·their own DMCA policy and had talked to --
·6· ·talked to people at the company directly as far
·7· ·as what their policies were.
·8· · · · Q.· · Was this in response to getting
·9· ·various e-mails from Steve Easton or in a
10· ·response to a complaint from some other
11· ·copyright owner?
12· · · · A.· · That was from a different complaint

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

ALS has not offered any evidence that complained of links are still accessible.

| 66. Steadfast's procedure ensured that any notifications regarding <imagebam.com> were processed by Flixya's designated agent for <imagebam.com>.<br><br>KZ Decl. ¶ 61. | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| Stange Decl. ¶¶ 3-8. | notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly."  *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications.  The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence.  Since <u>Easton</u> did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  *Id.* pp. 98-104.  Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem.  *Id.* p. 112.  Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| **REPLY:** ALS admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").<br><br>ALS has not offered any evidence that complained of links are still accessible. Therefore, Steadfast's procedures ensured the desired result. | |
| 67. Steadfast responded to all the Easton notices that Easton sent on behalf of ALS to Steadfast.<br><br>KZ Decl. ¶¶ 58-61.<br><br>JLA Decl. Ex A., KZ Dep. 110:4-7.<br><br>JLA Decl. Ex. G, Easton Dep. 28:25-29:3 ("Q. As far as the DMCA notices that you sent to Steadfast on behalf of ALS Scan, were those notices always responded to? A. Yes."). | Disputed.  After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. Zimmerman Depo.  pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks.  Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so.  *Id.* pp. 105-06.  Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3.  Mr. Zimmerman did not speak to Mr. Easton.  *Id.* 96:19-22.  Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the copyright owner asked for that evidence.  Since Easton did not ask for the same evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications.  *Id.* pp. 98-104. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| | Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112. Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. |

**REPLY:** ALS in the prior paragraphs has admitted that all images at issues in this lawsuit have been removed from Imagebam.com, and none of the hyperlinks in Easton's notices which contained the allegedly copyrighted images are still active. ALS refuses to address the fact asserted by Steadfast that it took action which ultimately resulted in Flixya taking down the complained of links. Steadfast was privy to a letter written in April of 2011 by James S. Grady, counsel to Flixya, which stated: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶73).

In the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72).

ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of all of the images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes.").

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|

Lastly, ALS has admitted that the infringers were individual users of the Imagebam.com website not Imagebam.com itself.  Mr. Penn has testified that:

> Q So in your view, who controls the
> 14 infringing conduct in an instance where you sent a DMCA
> 15 notice? And then I'll clarify that. Like, who's the
> 16 ultimate infringer? Is it the user? Is it the person
> 17 who downloads the images and then uploads them onto the
> 18 website, is he the infringer?
> 19 MR. FLYNN: Objection. Calls for a legal
> 20 conclusion.
> 21 THE WITNESS: That, yes, would be the
> 22 direct infringer.
> 23 BY MR. O'BRIEN:
> 24 Q All right. And he -- that -- well, we're
> 25 saying, he, but it could be a she, so he or she uploads
> Page 64
> 1 that and that person does the infringement?
> 2 MR. FLYNN: Objection. Calls for a legal
> 3 conclusion. Asked and answered.
> 4 THE WITNESS: The person uploading the
> 5 image is the direct infringer.
> 6 BY MR. O'BRIEN:
> 7 Q Is ImageBam a direct infringer?
> 8 MR. FLYNN: Same objection. Go ahead.
> 9 THE WITNESS: My understanding is that
> 10 they're contributing to the infringement in not
> 11 terminating repeat infringers.

JLA Decl. Ex. B, Penn Dep. 64:13-65:11.

Also,

> Q So going back to ImageBam, does it provide
> 11 user-generated content?
> 12 MR. FLYNN: Asked and answered.
> 13 THE WITNESS: Users can upload images to
> 14 ImageBam's website.
> 15 BY MR. O'BRIEN:
> 16 Q And ImageBam doesn't upload the images,

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| 17 the user uploads the images, to the best of your 18 knowledge? 19 MR. FLYNN: Objection. Calls for 20 speculation. 21 THE WITNESS: Yeah, I don't know what 22 ImageBam's practices are, what their employees are 23 tasked with, but any person on the internet could 24 potentially be a user of ImageBam.com. JLA Decl. Ex. B, Penn Dep. 64:13-65:11. <br><br> ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1). | |
| 68. None of the hyperlinks in a notice of infringement from ALS which contained the allegedly copyrighted images are still active. <br><br> KZ Decl. ¶ 62. <br><br> JLA Decl. Ex E, Resp. No. 3. <br><br> JLA Decl. Ex. G, Easton Dep. 28:25-29:8. <br><br> JLA Decl. Ex. G, Easton Dep. 44:18-20 ("Q. Thank you. And as far as you understand or are aware, all of these images have been removed? A. Yes."). | Admitted. |
| 69. Steadfast is not aware of any instances that Easton sent a follow up email indicating that the content has not been removed. <br><br> KZ Decl. ¶ 62. | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| JLA Decl. Ex. G, Easton Dep. 44:18-20 ("Q. Thank you. And as far as you understand or are aware, all of these images have been removed? A. Yes."). | |
| 70. Steadfast did not gain a direct financial interest from the individual user's conduct.<br><br>KZ Decl. ¶ 63.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 62. | Admitted. |
| 71. On information and belief, Steadfast has never gained a client because said client allegedly observed ALS's content on imagebam.com.<br><br>KZ Decl. ¶ 64. | Objection, lacks foundation, based upon hearsay. |
| **REPLY:** Steadfast stands by its factual assertion as supported by its submissions.  This statement of fact is not hearsay, Zimmerman, the CEO and founder of Steadfast, has personal knowledge about his business. The statement relates to his understanding of his clients. Zimmerman's declarations and deposition testimony have laid more than enough foundation.  Steadfast never gained a client because someone observed ALS content that had a URL with imagebam.com in its address. | |
| 72. Steadfast did not have the right or ability to supervise Flixya's Imagebam.com users' conduct.<br><br>KZ Decl. ¶ 65.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 61. | Admitted. |
| 73. Steadfast did not provide the software that ran the Flixya's | Admitted. |

| STEADFAST'S FACTS AND SUPPORTING EVIDENCE | ALS SCAN'S RESPONSE |
|---|---|
| Imagebam.com website or provide services for users to upload content.<br><br>KZ Decl. ¶ 66.<br><br>JLA Decl. Ex. B, Dkt. 319, ¶ 54. | |

1

2

3 **STEADFAST'S RESPONSE TO ALS'S ADDITIONAL FACTS**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| 74. ALS produces high quality proprietary adult content. ALS's content is available on secure web pages, access to which is exclusive to paying members of ALS's websites, alsangels.com and alsscan.com. ALS has registered its works with the Copyright Office. (12/1/17 Walsh Decl. Doc. 302 ¶¶ 2, 3; Third Amended Complaint ["TAC"] Ex. 1.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model. As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.<br><br>Disputed that ALS produces high quality adult content as the term "high quality" is just opinion. ALS produces niche porn that focuses on exclusively small breasted, skinny models with toy insertions (Dkt. 303-5 12/15/17 John L. Ambrogi ("JLA") Declaration Doc. 303-5 Ex. A, Walsh Deposition pp 18 lines 12 -24). This niche focus on young models has been described by ALS Scan as schoolgirls porn (Dkt. 303-8 12/15/17 JLA Declaration Ex. D Penn 09/07/17 Deposition pps 170 lines 6-24). ALS Scan's agent Steve Easton does not view ALS's work as high quality as its sole purpose is to sell sex (Dkt. 303-9 12/15/17 JLA Declaration Ex. E |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | Easton 07/28/17 Deposition pp 202 lines1 - 21). |
| | Admitted that ALS Scan has, in some instances, registered some of its works with the Copyright Office. Disputed that it has registered all of its work with the Copyright Office. ALS has admitted that it ceased applying for copyright registration for the period 2004 to 2015 (Dkt. 303-5 12/15/17 JLA Declaration Ex. A Walsh Deposition pp 42:19 to 43:9). It is unclear whether all the images at issue here have been registered. |
| 75. ALS is also owner of the registered mark "ALS Scan" in connection with web sites and multimedia materials featuring adult entertainment. ALS content always displays ALS's registered "ALS Scan" trademark. Thus, unlawful display of an infringing ALS image infringes both ALS's copyrights and trademark rights. (12/1/17 Walsh Decl. Doc. 302 ¶ 4; TAC Ex. 2.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model. As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.<br><br>ALS provides no evidence of trademark "use." *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment.<br><br>Admitted that ALS is an owner of a registered mark "ALS SCAN." Disputed to the extent that it inaccurately describes the actual services that ALS offers.<br><br>ALS content does not always display the ALS Scan trademark (Dkt. 303-4 12/15/17 JLA Declaration ¶¶7-9 Dkt. 303-10,11 Exhibits F and G).<br><br>Disputed, to the extent that this statement is meant to apply to this specific case, but admitted to the extent it is a general conclusion of law. Disputing further, ALS allows numerous individuals and companies to display and download its content (Dkt. 303-6 12/15/17 JLA Declaration Exhibit B Penn 09/13/17 Deposition pp 61-62). Moreover, since not all ALS images use ALS's trademark, this statement is false |
| 76. ALS's largest business problem is the ubiquitous availability of infringing ALS content on Internet | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| sites with no apparent function other than to provide storage on servers to entire galleries of stolen adult content – "pirate" sites.  (12/1/17 Walsh Decl. Doc. 302 ¶¶ 5-7.) | dispute of this assertion does not create an issue of material fact.<br><br>For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.<br><br>ALS provides no evidence of trademark "use." *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment.<br><br>Disputed as to what ALS's largest business problem is.  ALS is a niche website that focuses on schoolgirl porn with an emphasis on insertions Despite its niche content ALS has many competitors including Nubiles.net; club17.com; ftvgirls.com in the same niche; Further ALS's business model namely a pay site |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | model was created before the proliferation of free sites with access pornographic advertising such as pornhub.com, tube8.com, xhamster.com and redtube.com have become the most popular way to images. (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 18:12 – 20:5; Dkt. 303-8 12/15/17 JLA Exhibit D Penn 09/07/17 Deposition pps 170 lines 6-24, 171:2 – 175:6). |

ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).

ALS is aware that some of its paid subscribers are meting out its copyrighted images but it has never bothered to determine which members were responsible for these activities (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 23:18 to 25:11).  Further, despite knowing that its paid subscribers were violating its terms and conditions ALS never terminated any memberships (Dkt.

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | 303-8 12/15/17 JLA Declaration Exhibit D Penn 09/13/17 Deposition pps. 98:10 to 100:8).<br><br>ALS was aware that individuals (the "moles"), more than likely ALS paid subscribers, were uploading the ALS content to the fan forums but ALS never tried to stop them. (Dkt. 303-8 12/15/17 JLA Declaration Exhibit D (Penn 09/13/17 Deposition pps. 94:8 to 97:2). |
| 77. ALS has observed an endless loop of systematic infringement: 1) within hours after ALS posts a new content gallery on its secure webpages a stolen copy of the entire gallery is displayed for free on a pirate site; 2) adult "fan" forums (e.g. vipergirls.to) provide surfers with links to the free stolen ALS galleries; 3) infringing content on the pirate sites is juxtaposed with advertisements placed by ad brokers who pay for clicks or joins; 4) ALS sends notice(s) of infringing content on the pirate site and, sometimes, the infringing content is taken down; but 5) that gallery or another stolen ALS gallery appears on another page of the same pirate site shortly thereafter; and 6) the cycle continues endlessly.  (12/1/17 Walsh Decl. Doc. 302 ¶ 8.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.<br><br>ALS provides no evidence of trademark "use." *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
| --- | --- |
| | connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment. |
| | Disputed.  While ALS claims to see systematic infringement for years it took only the bare minimum of effort to police its content.  ALS never used digital rights protection mechanisms known as DRM; software.  ALS never prevented its members from downloading all of its content; never attempted to determine which of its members were posting its content on the adult fan forums.  In fact, ALS admits its "practice was never to use any sort of technology or tracking to see an image come off of our server and then follow it as that user took it and you know, tried to disseminate it elsewhere." |
| | The only thing that ALS did was to hire Steve Easton for a small flat fee to send DMCA notices.  Mr. Easton did not have any quota of notices to send nor did ALS hire anybody else to assist with the takedown of images (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 9 lines 3-8 18; pp 34-35 lines 12-22; Exhibit D Penn 09/13/17 Deposition pps 96 lines 18-22, 100 lines 3-7; ). |

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| 78. Providing notice of infringement to, and seeking to hold parties responsible for, infringing activity is a time consuming, expensive and fraught endeavor. ALS pays an agent, Steve Easton, to observe and send notices of infringement on ALS's behalf. However, even where a pirate site complies with a takedown notice, other infringing ALS content appears on the same site. ALS gives notice where it can to companies providing services to the pirate sites, such as storage of the pirate sites on servers, but too often the service providers decline to terminate services. Thus, ALS is forced to play an endless game of "whack-a-mole" with no abatement in infringement of its content. (12/1/17 Walsh Decl. Doc. 302 ¶ 9.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.

For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model. As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.

ALS provides no evidence of trademark "use." *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment.

Disputed, ALS has only paid Steve Easton a small flat fee each year for the past 15 years (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 34-35 lines 12-22). |

104

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
| --- | --- |
| | ALS has admitted that its number of paid subscribers is low. (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 23 lines 2-3). ALS is aware that some of its paid subscribers are meting out its copyrighted images but it has never bothered to determine which members were responsible for these activities (Dkt. 303-5 12/15/17 JLA Declaration Exhibit A Walsh Deposition pp 23:18 to 25:11).  Further, despite knowing that its paid subscribers were violating its terms and conditions ALS never terminated any memberships (Dkt. 303-8 12/15/17 JLA Declaration Exhibit D Penn 09/13/17 Deposition pps. 98:10 to 100:8).

ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).

Lastly ALS was aware that individuals (the "moles"), more than likely ALS paid subscribers, were uploading the ALS content to the fan forums but ALS never tried to stop them. (Dkt. |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | 303-8 12/15/17 JLA Declaration Exhibit D (Penn 09/13/17 Deposition pps. 94:8 to 97:2). |
| 79. Imagebam.com has frequently stored and displayed infringing galleries of ALS content. From December 26, 2013 through June 22, 2017 Steve Easton sent 853 notices of infringement to imagebam.com and Steadfast of infringing content belonging to ALS or other of Steve Easton's adult clients that was reproduced, displayed and distributed without authority on imagebam.com. (12/1/17 Easton Decl. Doc. 299; 12/1/17 Notice of Manual Filing Doc. 299-1; 12/1/17 Penn Decl. Doc. 300 ¶¶ 2-4, Ex. 1; 12/1/17 Walsh Decl. Doc. 302¶¶ 10, 11.) Of those notices from Easton, 185 gave notice of copyright and trademark infringement pertaining to ALS's content. (*Id.*) A single email often gave notice of infringement of dozens, if not two hundred or more, copyrighted works. (*Id.*) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>ALS's first sentence is utterly wrong. Imagebam.com users, likely ALS's own members, have used the website to store images. ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).<br><br>ALS was aware that individuals (the "moles"), more than likely ALS paid subscribers, were uploading the ALS content to the fan forums but ALS never tried to stop them. (Dkt. 303-8 12/15/17 JLA Declaration Exhibit D (Penn 09/13/17 Deposition pps. 94:8 to 97:2).<br><br>ALS provides no evidence of trademark "use." *See Bosley Medical* |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | *Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment. |
| | Disputed, Easton sent 853 Notices to Imagebam and cc'd Steadfast.  All the notices were handled directly by Imagebam.  ALS has admitted that Imagebam had a method that allowed copyright owners to provide notice of infringement (Dkt. 303-14 12/15/17 JLA Declaration Exhibit J). |
| | ALS also admits that all notices it sent regarding Imagebam.com resulted in the take down of images (JLA Decl. Ex. C Easton Dep. 37:3-4 "Q. Okay. Have all of these images been removed? A. I believe so, yes."). |
| | Steadfast further disputes the remainder of this paragraph as there is no evidence in the record regarding the content of Mr. Easton's other clients; nor is there evidence showing which content belonging to ALS was infringed.  (Dkt. 303-7 12/15/17 JLA Declaration Exhibit C Easton 09/06/17 Deposition pp 36:3 to 38:4; Dkt. 303-6 12/15/17 JLA Declaration Exhibit B |

107

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
|  | Penn 09/13/17 Deposition 56:6 to 57:24). |
|  | Disputed as to the validity of these notices. Steadfast is not Imagebam.com's designated agent, thus all notices sent to Steadfast in regards to imagebam.com were ineffective under the DMCA. |
|  | For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement. |
| 80. Steadfast admitted to receiving a total of 1,517 notifications of infringement on imagebam.com since 2013.  (12/1/17 Spillane Decl. Doc. 301 ¶ 2, Ex. 1, Response to Interrogatory 13.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact. |
|  | For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | of law Steadfast is not liable for contributory copyright or trademark infringement.<br><br>ALS provides no evidence of trademark "use." *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). ALS's bald assertion is insufficient to withstand summary judgment.<br><br>Disputed, Steadfast received 1517 notices regarding Imagebam. However, the mere receipt of a DMCA notice does not constitute proof of infringement. See, 17 U.S.C. § 512(c)(3), such notices are not the <u>sine qua non</u> of copyright liability. See *Ellison*, 357 F.3d at 1077 (claims for on-line copyright infringement are evaluated just as they would be in the non-online world)." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1105 (W.D. Wash. 2004).<br><br>ALS has not provided any evidence of <u>direct copyright infringement</u> in this lawsuit nor has it ever brought suit against any party for direct infringement.  Yet it sees fit to drag |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | Steadfast into this lawsuit when it is three times removed from the actual alleged infringer.

Disputed, Steadfast disputes the validity of such notices. The notices failed to comply with the DMCA. Steadfast was not Imagebam.com's designated agent, and thus these notices are ineffective under the DMCA. |
| 81. Imagebam.com has been one of the worst sites in terms of regularly displaying entire galleries of infringing ALS works.  While imagebam.com apparently claims to be a content neutral share site for third-party uploaded content, thus claiming the privileges of the DMCA, even a short time looking at imagebam.com reveals key attributes of "pirate" sites, ones primarily dedicated to storing galleries of infringing adult content – "red flags" of infringement.  In short, these sites are tooled to maximize upload of high volumes of alluring content while minimizing consequences to users uploading content without authority.  More specifically, imagebam.com, like other pirate sites: 1) offers alternative high volume upload capacities not typically offered on "mainstream" content-share sites; 2) fails to offer limitations such that | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.

For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace. ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.

Disputed, Eric Penn has no special qualifications which allows him to define what a pirate site is as he has not been qualified as an expert. Penn's statements are merely self-serving opinions  presented to further ALS's shakedown attempts. |

110

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| only friends or invitees may view content, but rather uploads all content to unsecure publicly viewable pages; 3) monetizes uploaded content through advertisements over, under and proximate to uploaded content, ads that do not direct traffic to the copyright owner; 4) provides code or hyperlinks that can be quickly used to publish the location of the imagebam.com page on adult "fan" forums, sites offering links to free stolen adult content galleries; 5) requires no verifiable personal information to upload content and has weak ability to track and terminate users; and 6) fail to display information indicating compliance with 18 USC § 2257, requiring record keeping of the age of models appearing in adult content.  (12/1/17 Penn Decl. Doc. 300 ¶¶ 8-32, Exs. 20-22.) | Further disputed, ALS did not provide any examples of entire galleries of ALS works downloaded on Imagbam.<br><br>ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).<br><br>ALS was aware that individuals (the "moles"), more than likely ALS paid subscribers, were uploading the ALS content to the fan forums but ALS never tried to stop them. (Dkt. 303-8 12/15/17 JLA Declaration Exhibit D (Penn 09/13/17 Deposition pps. 94:8 to 97:2).<br><br>Steadfast has not offered any services to Imagebam since June 2017.  The exhibits submitted by Eric Penn are not relevant to the claims against Steadfast because the exhibits were created 5 months after Steadfast ceased offering services. Imagebam.com is no longer owned by Flixya. |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | ALS, through Eric Penn, admits Imagebam.com allows users to post images onto Twitter and forums and blogs and eBay and Craigslist and Facebook all of which are legitimate uses (Dkt. 303-6 12/15/17 JLA Declaration Exhibit B Penn 09/13/17 Deposition 66:22 to 67:5).

Lastly numerous third parties have acknowledged that Imagebam.com offers legitimate services (Dkt, 303-15-18 12/15/17 JLA Declaration Exhibits K to N). |
| 82. Steadfast is a company providing Cloud Services, Dedicated Servers, Data Center Colocation, Disaster Recovery & Business Continuity, Managed Security and IT Consulting.  www.steadfast.net; 12/1/17 Spillane Decl. Doc. 301 ¶ 3, Ex. 2.  In the words of Karl Zimmerman, Managing Member of Steadfast, Steadfast provides "IT Infrastructure Services." Zimmerman Depo. pp. 12-13. | Admitted as to what services Steadfast generally provides.  In this case Steadfast leased Flixya dedicated servers (Zimmerman Declaration ¶30)

In fact, Steadfast only provided basic management services.  Essential, plug in the computer and make sure it was working.
This fact was explained by Karl Zimmerman in his 30b(6) testimony [JLA Decl. Ex. A] Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:
 17· · · · · · **We would not be doing anything**
 18· ·**proactive.· We would not monitor the system, we**
 19· ·**would not be logging into the system, we would** |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | **20· ·have no operation or control of the system** |
| | **21· ·really in any way, and would be entirely reliant** |
| | **22· ·on the customer telling us that there is an** |
| | **23· ·issue with the hardware or the performance of** |
| | **24· ·that system.** |
| | ·1· · · · · · Whereas, the full management and the |
| | ·2· ·gold management is where we are much more |
| | ·3· ·proactive and active in monitoring the system, |
| | ·4· ·logging into the system, working with the |
| | ·5· ·customer on specific software issues, software |
| | ·6· ·complaints and would generally then have more |
| | ·7· ·access to the system in the case of full |
| | ·8· ·management or the gold management. |
| | **·9· · · · Q.· · And as far as you can remember,** |
| | **10· ·Flixya or ImageBam was what kind of client; was** |
| | **11· ·it a full, or was it a basic?** |
| | **12· · · · A.· · They had always had the silver** |
| | **13· ·management and then the basic management.** |
| | Zimmerman Dep. pp. 137:17  to 138:13. |

113

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| 83. One of Steadfast's clients was Flixya Entertainment, which operated imagebam.com. Flixya opened an account with Steadfast in July 2006. Flixya leased dedicated servers owned by Steadfast, on which was stored imagebam.com. Steadfast maintained the physical server. *Id.* pp. 14-16. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Disputed that Flixya *only* operated imagebam.com. Flixya leased, controlled, and operated the server, on which it operated, managed, and owned imagebam.com and the contents of the server, and possibly other websites (Zimmerman Declaration ¶¶ 30-36)<br>Admitted to the extent that 1) Flixya Entertainment was one of Steadfast's clients; 2) Flixya operated imagebam.com; and 3) Flixya opened an account with Steadfast in July 2006. As mentioned previously, that account closed on June 21, 2017 (Zimmerman Declaration ¶¶ 23-38).<br><br>As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:<br>**17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system** |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
| --- | --- |
| | **21· ·really in any way, and would be entirely reliant** |
| | **22· ·on the customer telling us that there is an** |
| | **23· ·issue with the hardware or the performance of** |
| | **24· ·that system.** |
| | ·1· · · · · · · Whereas, the full management and the |
| | ·2· ·gold management is where we are much more |
| | ·3· ·proactive and active in monitoring the system, |
| | ·4· ·logging into the system, working with the |
| | ·5· ·customer on specific software issues, software |
| | ·6· ·complaints and would generally then have more |
| | ·7· ·access to the system in the case of full |
| | ·8· ·management or the gold management. |
| | **·9· · · · Q.· · And as far as you can remember,** |
| | **10· ·Flixya or ImageBam was what kind of client; was** |
| | **11· ·it a full, or was it a basic?** |
| | **12· · · · A.· · They had always had the silver** |
| | **13· ·management and then the basic management.** |
| | Zimmerman Dep. pp. 137:17  to 138:13. |
| 84.Flixya leased three dedicated servers from Steadfast with 3 Terabyte | ALS's assertion is not material to the resolution of the pending summary |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| upload capacities.  Flixya also purchased basic management services.  *Id.* pp. 16-21, Exs. 1, 2. Steadfast is not aware of any sites Flixya placed on the servers leased from Steadfast other than imagebam.com.  *Id.* 22:6-9. | judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Admitted that Flixya leased services. Answering further Steadfast leased servers to Flixya for a flat fee. it did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 23-38).<br>As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:<br>    **17· · · · · · We would not be doing anything**<br>    **18· ·proactive.· We would not monitor the system, we**<br>    **19· ·would not be logging into the system, we would**<br>    **20· ·have no operation or control of the system**<br>    **21· ·really in any way, and would be entirely reliant** |

116

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | **22· ·on the customer telling us that there is an** **23· ·issue with the hardware or the performance of** **24· ·that system.** ·1· · · · · · · Whereas, the full management and the ·2· ·gold management is where we are much more ·3· ·proactive and active in monitoring the system, ·4· ·logging into the system, working with the ·5· ·customer on specific software issues, software ·6· ·complaints and would generally then have more ·7· ·access to the system in the case of full ·8· ·management or the gold management. **·9· · · · Q.· · And as far as you can remember,** **10· ·Flixya or ImageBam was what kind of client; was** **11· ·it a full, or was it a basic?** **12· · · · A.· · They had always had the silver** **13· ·management and then the basic management.** Zimmerman Dep. pp. 137:17  to 138:13. |
| 85. Steadfast provided and configured the servers leased by Flixya and placed the servers on racks in | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's |

117

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| Steadfast's data center.  *Id.* pp. 30-31. | dispute of this assertion does not create an issue of material fact. |
| | Admitted that Flixya leased services. Answering further Steadfast leased servers to Flixya for a flat fee. it did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 23-38). |
| 86. In March 2007 Flixya raised a technical quarrel about the system performance they were obtaining from the servers provided and configured by Steadast.  Id. pp. 33-36, Ex. 4.  In the discussion Flixya said "Last night in just under ten hours 33,000 videos were uploaded without a single crash." *Id.* 39:14-18, Ex. 4 STF 37844.  Mr. Zimmerman did not wonder why imagebam.com was uploading 33,000 videos.  *Id.* 39:19-21. Steadfast did not ask what kind of videos were being uploaded.  *Id.* 40:1-3.  Flixya said that the | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.

Disputed as to describing business communications as a quarrel. Further answering the Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya (Zimmerman Declaration ¶¶30,31). Disputed as to the assumption that such statement should cause Mr. Zimmerman to wonder. |

118

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| technical issues had resulted in "decreased ad revenues." *Id.* 40:8-18. | As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:<br><br>**17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system**<br>**21· ·really in any way, and would be entirely reliant**<br>**22· ·on the customer telling us that there is an**<br>**23· ·issue with the hardware or the performance of**<br>**24· ·that system.**<br>·1· · · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system,<br>·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management. |

119

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
|  | ·9· · · · Q.· · **And as far as you can remember,** <br>10· ·**Flixya or ImageBam was what kind of client; was** <br>11· ·**it a full, or was it a basic?** <br>12· · · · A.· · **They had always had the silver** <br>13· ·**management and then the basic management.** <br>Zimmerman Dep. pp. 137:17  to 138:13. <br><br>Further, ALS's statement is irrelevant and hearsay. None of these statements go to any element of a claim or defense and do not create an issue of fact suitable for trial  As a matter of law Steadfast should not be in this case. |
| 87. Steadfast looked at imagebam.com and saw that advertisements were placed at the top of pages.  *Id.* 40:19-41:1. Steadfast did not see the drop box indicating a choice to upload "adult" or "family friendly" content.  Steadfast did not ask whether imagebam.com was receiving primarily adult content. *Id.* 41:19-42:3. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact. <br><br>Disputed, there are no advertisements when going to Imagebam.com's homepage (Dkt. 303-21 12/15/17 JLA Decl. Ex. Q, Penn 09/13/17 Depo. Ex. 6).  Answering further Steadfast leased servers to Flixya for a flat fee. it did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶ 23-38).<br><br>As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:<br>**17· · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would**<br>**20· ·have no operation or control of the system**<br>**21· ·really in any way, and would be entirely reliant**<br>**22· ·on the customer telling us that there is an**<br>**23· ·issue with the hardware or the performance of**<br>**24· ·that system.**<br>·1· · · · · · Whereas, the full management and the<br>·2· ·gold management is where we are much more<br>·3· ·proactive and active in monitoring the system, |

121

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | ·4· ·logging into the system, working with the<br>·5· ·customer on specific software issues, software<br>·6· ·complaints and would generally then have more<br>·7· ·access to the system in the case of full<br>·8· ·management or the gold management.<br>**·9· · · · Q.· · And as far as you can remember,**<br>**10· ·Flixya or ImageBam was what kind of client; was**<br>**11· ·it a full, or was it a basic?**<br>**12· · · · A.· · They had always had the silver**<br>**13· ·management and then the basic management.**<br>Zimmerman Dep. pp. 137:17  to 138:13.<br><br>Further answering Steadfast was forwarded a letter from counsel for Flixya that stated in part: "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 73) (Dkt. 303-24 12/15/17 JLA Decl. Ex. T April 6, 2011 from the Law Office of Hung Chang to James Grady) |
| 88. The Steadfast servers leased by Flixya also stored imagebam.com's MySQL database, "a standard open-sourced database platform." *Id.* pp. 44, 62-63. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Admitted, further stating, MySQL is a standard open-source database platform that Flixya itself controlled. Additionally, Steadfast did not maintain or service the MySQL database and could not accesse it without breaking the law (Zimmerman Decl. ¶¶30-41, 52-54).<br><br>As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website:<br>**17· · · · · · · We would not be doing anything**<br>**18· ·proactive.· We would not monitor the system, we**<br>**19· ·would not be logging into the system, we would** |

123

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | **20· ·have no operation or control of the system** |
| | **21· ·really in any way, and would be entirely reliant** |
| | **22· ·on the customer telling us that there is an** |
| | **23· ·issue with the hardware or the performance of** |
| | **24· ·that system.** |
| | ·1· · · · · · · Whereas, the full management and the |
| | ·2· ·gold management is where we are much more |
| | ·3· ·proactive and active in monitoring the system, |
| | ·4· ·logging into the system, working with the |
| | ·5· ·customer on specific software issues, software |
| | ·6· ·complaints and would generally then have more |
| | ·7· ·access to the system in the case of full |
| | ·8· ·management or the gold management. |
| | **·9· · · · Q.· · And as far as you can remember,** |
| | **10· ·Flixya or ImageBam was what kind of client; was** |
| | **11· ·it a full, or was it a basic?** |
| | **12· · · · A.· · They had always had the silver** |
| | **13· ·management and then the basic management.** |
| | Zimmerman Dep. pp. 137:17  to 138:13. |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| 89. If Steadfast had powered down the servers leased by imagebam.com, the front page of the site would have been inaccessible until Flixya could perform operations to direct users to the page on some other company's server. *Id.* pp. 46-48. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Admitted. Answering further, any interruption would have been trivial because the front page was also on another server not operated by Steadfast. (Dkt. 303-19 12/15/17 JLA Decl. Ex. O, Zimmerman Dep. at pp. 47).  Further, in the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72) and as such there was no reason for Steadfast to power down the server leased by Flixya.<br><br>For ALS to presume it has the power to end business relations between companies that are abiding by the relevant statues and their stated policies is an exercise of unmitigated gall that has no basis in law. |
| 90. Steadfast stored on its servers, at a minimum, the front page of imagebam.com, which supported the entire upload capacity, and the MySQL database. *Id.* pp. 33-48; 12/1/17 Penn Decl. Doc. 300 ¶¶ 8-20, Exs. 20-22. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Disputed.  At the maximum Steadfast only leased server space to Steadfast which controlled the MySQL |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | database.  Answering further Steadfast leased servers to Flixya for a flat fee. it did not receive compensation from Flixya for any other reason besides leasing the servers for a flat fee; it did not operate, manage, or control the Flixya-leased servers. The Flixya-leased servers were "dedicated servers," meaning that the entire server was operated, managed, and controlled by Flixya. Steadfast was not authorized to hack Flixya's system or database for the purpose of removing, locating, or disabling access to alleged infringing content (Zimmerman Declaration ¶¶23-36, 52-54). <br><br> As explained by Karl Zimmerman Steadfast had nothing to do with the management, configuration or maintenance of the Imagebam.com website: <br> 17· · · · · · · **We would not be doing anything** <br> 18· ·**proactive.· We would not monitor the system, we** <br> 19· ·**would not be logging into the system, we would** <br> 20· ·**have no operation or control of the system** <br> 21· ·**really in any way, and would be entirely reliant** <br> 22· ·**on the customer telling us that there is an** <br> 23· ·**issue with the hardware or the performance of** <br> 24· ·**that system.** |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | ·1· · · · · · · Whereas, the full management and the ·2· ·gold management is where we are much more ·3· ·proactive and active in monitoring the system, ·4· ·logging into the system, working with the ·5· ·customer on specific software issues, software ·6· ·complaints and would generally then have more ·7· ·access to the system in the case of full ·8· ·management or the gold management. **·9· · · · Q.· · And as far as you can remember,** **10· ·Flixya or ImageBam was what kind of client; was** **11· ·it a full, or was it a basic?** **12· · · · A.· · They had always had the silver** **13· ·management and then the basic management.** Zimmerman Dep. pp. 137:17  to 138:13. |
| 91. Mr. Zimmerman, as Steadfast's corporate witness, was not able to recall what policy Steadfast maintained for termination for repeat infringement; he relied on website Terms produced in the case.  *Id.* pp. 10-11, Ex. 1, pp. 88-89.  However, Steadfast's website says little to nothing on this subject.  Steadfast | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.  Admitted that Mr. Zimmerman could not recall the exact terms of the Steadfast policy at his deposition. |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| has no links on its homepage or anywhere else on its site using the terms "DMCA," "Abuse" or "Infringement."  Steadfast's home page has a small link at the bottom titled "Legal Info and Privacy Policy," which when clicked resolves to Steadfast's "Acceptable Use Policy (AUP)/Terms of Service."  (12/1/17 Spillane Decl. Doc. 301 ¶ 5, Ex. 4.)  That page, https://www.steadfast.net/legal-information,says it was "last updated January 30, 2017."  That was shortly after Steadfast first appeared in this case.  (12/8/16 Stipulation to Vacate Default, Doc. 75.)  The current page says "Steadfast responds to notices of alleged copyright infringement and terminates accounts of repeat infringers according to the process set out in the U.S. Digital Millennium Copyright Act."  (*Id.*)  In discovery Steadfast said "Steadfast has not defined the term 'repeat infringer' as even the DMCA is silent as to any definition." (Zimmerman Depo. pp. 121-24, Ex. 10, p. 3 ¶ 5.1.)  Steadfast's Terms as of September 27, 2016, before Steadfast appeared in this case, which were last updated August 6, 2015, said only "[a]ny illegal activity may result in your site being suspended immediately, without notification. . . . Steadfast will be the sole arbiter as to what constitutes a | it is correct that Mr. Zimmerman could not recall the exact terms of the Steadfast policy at this deposition, but not having a photographic memory does not mean the written terms and conditions do not exist.

Here, ALS overly fixates on the post-lawsuit updated Terms; but such evidence is immaterial, irrelevant, and inadmissible. *See* Request for Evidentiary Ruling. The assessment of whether a service provider adopted and informed users of a policy is confined to the service provider's policies and procedures "that existed at the time of the [alleged] infringements …." *Mavrix Photographs, LLC*, 873 F.3d at 1058. Accordingly, Steadfast has utilized only the Terms from the relevant time period throughout the entirety of the summary judgment proceedings. *See, e.g.*, Dkt. 346-3; Dkt. 346-1; Dkt. 345-8; Dkt. 342-3; Dkt. 342-1; Dkt. 340-8; Dkt. 339, p. 13; Dkt. 315, p. 19-20; Dkt. 301-5.

ALS improperly focuses on the incorrect page of Steadfast's website. Steadfast includes information about the Abuse Department on its Contact page. Dkt. 342-3, KZ Decl. Ex. C (Steadfast's website's contact page).

ALS cherry picks the language from the policy. The Terms is located at |

Case 2:16-cv-05051-GW-AFM   Document 392   Filed 02/26/18   Page 129 of 142   Page ID #:11781

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| violation of this provision." (12/1/17 Spillane Decl. Doc. 301 ¶ 6, Ex. 5.) | Dkt. 342-1, KZ Decl. Ex. A, which provides: "[W]e reserve the right to terminate service to any client for any reason not prohibited by law." |
| 92. The first complaint of infringement on imagebam.com came not long after Flixya opened an account with imagebam.com. As the site "grew in size and popularity," the number of infringement complaints grew. Zimmerman Depo. pp.55-56. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.

Disputed. Steadfast received a decreasing number of DMCA notices directed to Imagebam after 2014 (Dkt. 303-20 12/15/17 JLA Decl. Ex. P Response to Interrogatory No. 13).

Disputed that Flixya opened an account with imagebam.com. Flixya, owned, operated and managed the Imagebam.com website and was its DMCA agent (Zimmerman Decl. ¶¶35,41,42, 49, 58-60, 65-75) (Dkt. 303-22 12/15/17JLA Decl. Ex. R. Penn 09/13/17 Depo. Ex. 10). Thus, all DMCA Notices should have been directed to that agent. Answering further, Steadfast is not Flixya's designated agent (Dkt. 303-22 12/15/17 JLA Decl. Ex. R. Penn 09/13/17 Depo. Ex. 10). |
| 93. In March 2011 Steadfast received "hundreds of DMCA complaints from Groupfivephotosports.com" about imagebam.com. *Id.* pp. 64-65, | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's |

129

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| Ex. 7.  The notifications "escalated" to Karl Zimmerman, who inquired of Flixya.  "They provided the IPs of the users and had indicated that those users had been terminated." *Id.* pp. 69-70.  Flixya's primary method for tracking uploaders was IP ("Internet protocol").  However, the same person could log onto imagebam.com from different IPs by logging in from different locations. *Id.* pp. 29-30. | dispute of this assertion does not create an issue of material fact.

The issue with FiveSports is immaterial to the case before this Court. *Giganews*, 847 F.3d at 674 (noting there must be a "causal connection between the injury and the conduct complained of").  FiveSports and Steadfast had an issue 8 years ago which was concluded to everyone's satisfaction.  Since 2011 there has never been an issue with Imagebam.com until ALS brought this lawsuit against Steadfast.

For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace.  ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement.

Admitted, but answering further, Flixya's attorney sent to Groupfive's attorney a letter dated April 6, 2011, in which he stated "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs.  ImageBam is designed, and functions as, an image hosting service provider. |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 73) (Dkt. 303 JLA Decl. Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady).<br><br>There is no evidence that the relevant imagebam.com users in this case engaged in such activity. This is entirely speculative as it pertains to the alleged infringing acts of Imagebam.com's users not in this case.<br><br>ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | Declaration of Andrew Bridges Exhibit 1). |
| | Further, the persons uploading the content could actually be ALS Scan members (Dkt. 303-6 12/15/17 JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. 94:8-97:2; Ex. E Easton 07/28/17 Dep. 36:22-37:4). |
| | ALS has not provided any evidence of <u>direct copyright infringement</u> in this lawsuit nor has it ever brought suit against any party for direct infringement.  Yet it sees fit to drag Steadfast into this lawsuit when it is three times removed from the actual alleged infringer. |
| 94. In response to the Groupfive contentions Steadfast wanted proof that Flixya was blocking the IPs from which the infringing uploads had occurred for Steadfast's protection.  "We needed to assure that they were taken care of and dealing with repeat infringers."  Id. 85:16-86:7. Steadfast did not believe, however, that Steadfast has to terminate repeat infringers in order to maintain legal protections. Id. 86:19-22.  Steadfast wanted proof that <u>Flixya</u> was implementing <u>Flixya's</u> repeat infringer policy, but | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact. The issue with FiveSports is immaterial to the case before this Court. *Giganews*, 847 F.3d at 674 (noting there must be a "causal connection between the injury and the conduct complained of").  FiveSports and Steadfast had an issue 8 years ago which was concluded to everyone's satisfaction.  Since 2011 there has |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| Steadfast did not need the information for compliance with <u>its own</u> repeat infringer policy. *Id.* p. 87. | never been an issue with Imagebam.com until ALS brought this lawsuit against Steadfast.<br><br>Admitted. Answering further, in other words, under the Steadfast's Terms, its clients must comply with copyright laws, and  as such Steadfast wanted to make sure that Flixya was complying with the DMCA, and not in violation (Zimmerman Decl. ¶65-68).<br><br>Flixya's attorney sent to Groupfive's attorney a letter dated April 6, 2011, in which he stated "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 73) (Dkt. 303 JLA Decl. Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady). |

133

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | There is no evidence that the imagebam.com users in this case engaged in such activity. This is entirely speculative as it pertains to the alleged infringing acts of Imagebam.com's users not in this case.<br><br>ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).<br><br>Further, the persons uploading the content could actually be ALS Scan members (Dkt. 303-6 12/15/17 JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. 94:8-97:2; Ex. E Easton 07/28/17 Dep. 36:22-37:4).<br><br>ALS has not provided any evidence of direct copyright infringement in this lawsuit nor has it ever brought suit against any party for direct infringement. Yet it sees fit to drag Steadfast into this lawsuit when it is |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | three times removed from the actual alleged infringer. |
| 95. Steadfast does not believe that its own repeat infringer policy would "apply" whenever Steadfast's client was an Internet service provider and supplied evidence that <u>they</u> complied with the DMCA.  Id. 91:6-17. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.

Disputed, mischaracterizes the testimony.  Steadfast wanted to ensure that Flixya had a repeat infringer policy (Dkt. 303-19 12/15/17 JLA Declaration Exhibit O Zimmerman Depo pp. 86:23 to 87:9).  Answering further, in other words, under the Steadfast's Terms, its clients must comply with copyright laws, and such Steadfast wanted to make sure that Flixya was complying with the DMCA, and not in violation (Zimmerman Decl. ¶¶65-69). Flixya's attorney sent to Groupfive's attorney a letter dated April 6, 2011, in which he stated "ImageBam is not a pornography site, nor is it advertised using user-uploaded photographs. ImageBam is designed, and functions as, an image hosting service provider. The user of the website, not ImageBam or its ISP, posts, copies and distributes images on the site. ImageBam does not upload its own images, nor does it use the images uploaded by others for its own use, advertising or otherwise," and "ImageBam takes the claims of |

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | intellectual property infringement very seriously, which is why we comply with the DMCA and provide a means by which intellectual property owners can report infringement." (Zimmerman Decl. ¶ 73) (Dkt. 303 JLA Decl. Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady).

There is no evidence that the imagebam.com users in this case engaged in such activity. This is entirely speculative as it pertains to the alleged infringing acts of Imagebam.com's users not in this case.

ALS's owner Sarah Walsh admitted that ALS always let its members download images from its website, ALS does not track or limit the number of images a member of its website can download from its website, ALS allows its members to download entire libraries of images and keep them forever even if the membership expires (Dkt. 349-3 Declaration of Andrew Bridges Exhibit 1).

Further, the persons uploading the content could actually be ALS Scan members (Dkt. 303-6 12/15/17 JLA Decl. Ex. B Penn 09/13/17 Dep. 56:6-57:24; Ex. C Easton 09/06/17 Dep. 36:3-38:4; Ex. B Penn 09/13/17 Dep. |

136

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | 94:8-97:2; Ex. E Easton 07/28/17 Dep. 36:22-37:4).<br><br>ALS has not provided any evidence of <u>direct copyright infringement</u> in this lawsuit nor has it ever brought suit against any party for direct infringement. |
| 96. After the Groupfivephotosports situation, Steadfast received hundreds of notification of infringement on imagebam.com from Steve Easton. *Id.* pp. 95-96. Steadfast knew that Mr. Easton's email notifications infringement of ALS's works contained hyperlinks. Mr. Zimmerman never clicked on any of those hyperlinks or asked anyone else to do so. *Id.* pp. 105-06. Steadfast never looked at the drop box on imagebam.com asking the user to designate content as either "adult" or "family friendly." *Id.* 41:19-42:3. Mr. Zimmerman did not speak to Mr. Easton. *Id.* 96:19-22. Worse, Steadfast did not ask Flixya to supply evidence of what they were doing in response to the Easton notifications. The only reason Steadfast asked for evidence from Flixya concerning their response to the Groupfivephotosports notifications was because the <u>copyright owner</u> asked for that evidence. Since <u>Easton</u> did not ask for the same | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>The issue with FiveSports is immaterial to the case before this Court. *Giganews*, 847 F.3d at 674 (noting there must be a "causal connection between the injury and the conduct complained of"). FiveSports and Steadfast had an issue 8 years ago which was concluded to everyone's satisfaction. Since 2011 there has never been an issue with Imagebam.com until ALS brought this lawsuit against Steadfast.<br><br>Admitted. Answering further Flixya had working DMCA procedures and Flixya was the DMCA agent for Imagebam.com. (Zimmerman Decl. ¶¶66-73) (Dkt. 303-22 12/15/17 JLA Decl. Ex. R, Penn 09/13/17 Depo Ex. 10; Dkt. 303-23 Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady). |

137

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| evidence, Steadfast did not bother to contact Flixya to find out what they were doing in response to the Easton notifications. *Id.* pp. 98-104. | |
| 97. Steadfast never bothered to find out what Flixya was doing to terminate users that were eliciting Mr. Easton's complaint because Steadfast put the burden on Mr. Easton to claim there was a repeat infringement problem. *Id.* p. 112. Since Flixya had demonstrated that they enforced a repeat infringer policy in response to the Groupfivephotosports situation, Steadfast did nothing to find out what Flixya did to terminate repeat infringers in responses to the Easton notifications. *Id.* 116-118. | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>The issue with FiveSports is immaterial to the case before this Court. *Giganews*, 847 F.3d at 674 (noting there must be a "causal connection between the injury and the conduct complained of").  FiveSports and Steadfast had an issue 8 years ago which was concluded to everyone's satisfaction.  Since 2011 there has never been an issue with Imagebam.com until ALS brought this lawsuit against Steadfast.<br><br>For years and years ALS has been badly managed, has refused to take basic protections for its works; and has refused to adapt to the marketplace.  ALS is using the lawsuit as a shakedown racket to unfairly extort companies that had nothing to do with its failed business model.  As a matter of law Steadfast is not liable for contributory copyright or trademark infringement. |

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
| | Disputed, mischaracterizes the testimony of Karl Zimmerman. Steadfast investigated Imagebam and concluded it had followed everything required of it under the DMCA, that Steve Easton never stated Imagebam was not complying with the takedown notices; and that Steadfast was not presented with evidence that Imagebam was not complying with its DMCA polices (Dkt. 303-19 12/15/17 JLA Decl. Ex. O Zimmerman Depo pp. 103:7 to 104:8; Dkt. 303-24 Ex. T April 6, 2011 letter from the Law Office of Hung Chang to James Grady) (Zimmerman Decl. ¶ 73). Further, in the nine years Flixya was a customer of Steadfast there was never a court order against Flixya nor was there any lawsuits filed against Flixya (Zimmerman Decl. ¶72). |
| 98.Steadfast has never terminated a customer for repeat infringement. Id. 123:22-124:6. (*Id.* 123:22-124:6; Spillane Declaration ¶ 7, Ex. 6, Response to Interrogatory No. 6.) | ALS's assertion is not material to the resolution of the pending summary judgment motion, and Steadfast's dispute of this assertion does not create an issue of material fact.<br><br>Admitted, answering further Steadfast has terminated customers for violating its terms and conditions. Unlike ALS Scan which has never terminated any of its users for disseminating its content for free (Dkt. 303-5 12/15/17 JLA Declaration Ex. A Walsh Deposition pp 9 lines 3-8 18; pp 34-35 lines 12-22; Dkt. 303-8 Ex. D Penn |

139

| ALS SCAN'S FACTS AND SUPPORTING EVIDENCE | STEADFAST'S RESPONSE |
|---|---|
|  | 09/13/17 Depo. pps 96 lines 18-22, 100 lines 3-7) (Zimmerman Decl. ¶12). |

1

2

3

4    Respectfully submitted,

5

6                                           PARTRIDGE PARTNERS PC

7

8    Dated: February 26, 2018              By: /s/John L. Ambrogi_____
                                           John L. Ambrogi
9                                          Attorneys for Steadfast Networks, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STEADFAST'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT (DMCA)

## PROOF OF SERVICE

I, Colin T.J. O'Brien, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **DEFENDANT STEADFAST NETWORKS, LLC'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT** was served via electronic filing to the following parties in this action via their counsel:

> ALS Scan, Inc.
> Cloudflare, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  February 26, 2018                    s/ Colin O'Brien _____
                                             Attorney for Defendant
                                             Steadfast Networks LLC