Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE LAW GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Kevin D. Neal (Az. Bar No. 011640)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000
(602) 530-8500 (fax)
john.flynn@gknet.com
kevin.neal@gknet.com

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation, | Case No.: 2:16-cv-05051-GW-AFM |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT CLOUDFLARE, INC.** |
| vs. | |
| CLOUDFLARE, INC., a Delaware corporation, et al., | Date: March 12, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 9D |
| Defendants. | 350 W. 1st Street<br>Los Angeles, CA |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 1.  ALS owns the copyright to a library of adult content. ALS's content is displayed on two websites, alsscan.com and alsangels.com. Other than limited "teaser" selections of ALS works on public tour pages for these sites, or made available to advertisers for the purpose of directing Internet traffic to ALS's sites, ALS's content is lawfully available only to paying members of ALS's sites. ALS does not sell or license its copyrighted content.<br><br>Walsh Decl. ¶¶ 2-4; Complaint Ex. 1. | Undisputed. |
| 2.  ALS has been faced with the repeated availability of infringing ALS content on Internet sites. ALS observed and provided notice to Cloudflare of direct infringement of ALS works on the following sites, all Cloudflare customers: artofx.org, bestofsexpics.com, cumonmy.com, fboom.me, greenpiccs.com, imagetwist.com, imgchili.net, imgflash.net, imgsen.se, imgspice.com, imgspot.org, imgtrex.com, img.yt, namethatpornstar.com, slimpics.com, stooorage.com and vipergirls.to (collectively the "Cloudflare Customer Sites").<br>Walsh Decl. ¶¶ 5-12; Penn Decl. | The first sentence is undisputed.<br><br>The remainder of this material is disputed, misleading, and unsupported.<br><br>The evidence cited does not support conclusions that the sites engaged in direct infringements, and it does not show who (if anyone) engaged in direct infringements.<br><br>ALS's alleged "notice[s] … of direct infringement" did not convey actual notice of infringement but merely made generalized accusations.  The communications did not meet the requirements of the Digital Millennium Copyright Act ("DMCA"), specifically sections 512(c)(3), 512(b)(2)(E)(i) and 512(b)(2)(E)(ii). |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| *passim*; Easton Decl. *passim*; Notice of Manual Filing; Cloudflare Response to Interrogatory No. 20, Spillane Decl. ¶ 2, Ex. A. | Declaration of Justin Paine in Support of Cloudflare, Inc.'s Opposition to ALS Scan, Inc.'s Motion for Partial Summary Judgment ("Paine Opp. Decl.") ¶¶ 14-19, Exs. 16-24. |
| 2. Moving Party's Response: This is argument without factual controversy.  ALS has submitted undisputed evidence that its agent, Steve Easton, witnessed infringement of ALS's works on Cloudflare client sites and documented those infringements in emails sent to and received by Cloudflare.  The assertion that the email notices fail to comply with Section 512(c) is facially wrong and legally irrelevant.  See Reply Memo.  The email notices were sufficient to provide Cloudflare with actual notice of infringement. ||
| 3. None of the Cloudflare Customer Sites have submitted a form designating a DMCA agent with the Copyright Office.<br><br>Spillane Decl. ¶ 14. | Immaterial and irrelevant. |
| 4. "Cloudflare provides internet services to optimize and protect websites, including by increasing the speed at which website content is delivered to end users, making such delivery considerably more bandwidth efficient, and by adding security services to prevent malicious attacks." Says Cloudflare: "Cloudflare's global Anycast network of 119 data centers across 58 countries reduces latency and time to first byte by delivering content closer to visitors. | Undisputed. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| Cloudflare's size and distribution of internet connects gives customers fast, [sic] reliable delivery throughout the world." <br><br> 3/2/17 Guinn Decl., Doc. 124-2 ¶ 3; Spillane Decl. ¶ 3, Ex. B; https://www.cloudflare.com/performance/. | |
| 5. To become a Cloudflare client, Cloudflare requires the client to name two Cloudflare nameservers as the authoritative nameservers for their website domain. "Nameservers convert the text-based Uniform Resource Locator ('URL') of a website into a computer-readable address to point users and internet browsers in the direction of content stored elsewhere. Stated another way, nameservers give directions by telling a user's personal computer where to look to find the website the user is searching for." "This service is why an IP address WHOIS lookup regarding a website operated by a Cloudflare customer traces to Cloudflare – because the customer has designated Cloudflare as its domain nameserver." "Cloudflare has customers designate two Cloudflare nameservers in order to route Internet requests to Cloudflare so that [its] service can . . . direct website visitors to Cloudflare servers." | Undisputed. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 3/2/17 Guinn Decl. ¶ 6-7, Doc. 124-2; 4/5/17 Guinn Depo. 13:14-14:22, Ex. 1, 14:23-15:5. | |
| 6. Says Cloudflare: "Cloud Flare will mask your IP." When copyright owners look for information about Cloudflare customers on standard whois lookup services, no information is available regarding the company storing the site on its server (the "host") or the site owner. No information is available concerning the IP address for the site in question. The only available information regarding nameservers and IP is for Cloudflare. Spillane Decl. ¶ 7, Ex. F, Cloudflare 142; Penn Decl. ¶¶ 25-30, Exs. 18-23; Easton Decl. ¶¶ 15-16; Penn Decl. ¶¶ 29, 30, Exs. 20-23. | Disputed, misleading, and immaterial. When a customer begins using Cloudflare's service, the transmissions will be routed through Cloudflare's service, and Cloudflare's IP address is visible to users.  Cloudflare's security service thus prevents cyberattacks directly on a customer. Paine Opp. Decl. ¶ 2; Declaration of Albert Lee Guinn III in Support of Cloudflare, Inc.'s Opposition to ALS Scan, Inc.'s Motion for Partial Summary Judgment ("Guinn Opp. Decl.") ¶ 11. When a person submits a copyright abuse complaint to Cloudflare through the abuse web form, Cloudflare immediately responds to the complainant by identifying the hosting service and providing contact information for the hosting service. Paine Opp. Decl. ¶¶ 5-7. Contact information for owners of domains, who often operate websites at those domains, is available on public WHOIS databases. Customers may independently obtain privacy services from domain registrars to mask their contact information in a WHOIS directory entry. Cloudflare does not provide those services. Without those services, the WHOIS directory entry |

4

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
|  | lists will show contact information of the domain registrant, while also showing accurately that Cloudflare provides the nameservers.  Cloudflare does not alter any WHOIS information regarding the domain registration owner.

Guinn Opp. Decl. ¶ 8; Paine Opp. Decl.¶ 2. |
| 6.  Moving Party's Response: The additional facts do not controvert the proffered facts.  Cloudflare is correctly quoted.  Cloudflare does not dispute that when a website operator designates Cloudflare nameservers for its site, this removes the identity of the website host and IP for the site from whois lookups.  The fact that use of Cloudflare's abuse page sometimes, but not always, results in a response with the name of the host and an email contact, but still not the IP, does not controvert this fact. ||
| 7.  While Cloudflare will in some cases respond to an infringement notice with the name of, and an email contact for, the site host, it does not disclose the IP address for the infringing website, which web hosts want in order to locate the site, nor does Cloudflare disclose any information concerning the site owner or operator.

Easton Decl. ¶¶ 15-16; Spillane Decl. ¶¶ 8-9, Ex. G.] | Disputed and misleading.

Upon receipt of a web form complaint of infringement, Cloudflare promptly forwards that complaint to both its customer and its customer's hosting provider (one or both, at the option of the complainant).  Cloudflare also responds to the complainant by providing information about the identity and contact information of the hosting provider to the complainant.

Paine Opp. Decl. ¶¶ 5-7.

If necessary, Cloudflare also provides to the hosting provider the IP address of the accused website to help the hosting provider identify the site that is subject to the complaint. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| | Paine Opp. Decl. ¶¶ 9, 18.

Cloudflare does not provide customer origin IP addresses to complainants as malicious actors may seek origin IP addresses to circumvent Cloudflare's protections to launch cyberattacks.

Paine Opp. Decl. ¶¶ 9, 18. |

7. **Moving Party's Response:** The additional facts do not controvert the proffered facts.  Sometimes Cloudflare responds to infringement notices submitted through its abuse form with bogus claims of inadequacy.  Sometimes the response is exactly as set forth in Fact 7.  Cloudflare's additional facts show how Cloudflare has failed to adopt and reasonably implement a repeat infringer policy.  Cloudflare makes copyright owners run a gauntlet with no impact on infringement.  Copyright owners must break a notice to Cloudflare of infringement of 200 works into twenty separate submissions through Cloudflare's abuse form, suffer through bogus responses that the notice was insufficient and, in cases where the submission results in the email of the host, follow up with the host and hope that the host asks Cloudflare for the IP.  Copyright owners should not have to work this hard to get Cloudflare to work with its customers to take down infringements and ultimately terminate customers who are the subject of repeat infringement notices.

| | |
|---|---|
| 8. Cloudflare's CDN, its "Global Anycast Network," as of March 2017 comprised 102 data centers throughout the world. "The Cloudflare . . . Global Anycast network contains caching servers as well as nameservers."

3/9/17 Spillane Decl., ¶ 7, Ex. E, Cloudflare 133, Doc. 133; 4/5/17 | Undisputed. For clarification, "Anycast" is not proprietary to Cloudflare.  It is a protocol in wide use by Internet companies.

Guinn Opp. Decl. ¶ 12; Deposition Transcript of Shahram Ghandeharizadeh ("Ghandeharizadeh Depo. Tr.") at 92:4-23.[1] *See also* https://en.wikipedia.org/wiki/Anycast. |

---

[1]  Declaration of Andrew P. Bridges in Support of Cloudflare, Inc.'s Opposition to ALS Scan, Inc.'s Motion for Partial Summary Judgment ("Bridges Opp. Decl.")  ¶ 10gg.

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| Guinn Depo. 16:2-5, 19:12-21:9, Ex. 4; | |
| 9. "Caching servers are servers that temporarily cache content, typically for a few hours before being cleared (also known as 'evicted') in order to improve the time it takes for website content from the host server to reach the end users in a particular geographic area. The more geographically distant an end user is from a server, the longer it takes for content from that server to reach that end user. A caching server that is located nearer to the end user than the host server shortens the physical distance that the host's content must travel, and therefore also shortens the time it takes for the content to load in an end user's browser."<br><br>3/2/17 Guinn Decl. ¶ 6, Doc. 124-2; see also 4/5/17 Guinn Depo. 90:25-91:11. | Undisputed. |
| 10. "A content delivery network (CDN) takes your static content and stores a copy closer to your visitors." "When an end user chooses to visit a Cloudflare customer's website, the user is routed through the Cloudflare caching server closest to that end user's computer. See Ex. B (Cloudflare Support > Getting | Undisputed. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| Started > Cloudflare 101 > Step 1)."<br><br>3/9/17 Spillane Decl. ¶ 8, Ex. F, Doc. 133;<br>3/2/17 Guinn Decl. ¶ 8, Ex. B, Doc 124-2; Penn Decl. ¶ 24, 4/20/17 Penn Decl. Doc. 170; 4/20/17 Spillane Decl. Doc 171. | |
| 11. The ALS images in question in this suit are .jpg static files. "Cloudflare's CDN caches [.jpg files] for all account types by default."<br><br>3/9/17 Penn Decl. ¶ 4, Doc. 134; 4/5/17 Guinn Depo. 21:23-24:9 Ex. 5. | Undisputed. |
| 12. "[W]hen a visitor visits a website, they first do a DNS lookup. It's similar to looking up someone's phone number in the phone book. . . . The DNS server responds with an IP address of the web server, and in that instance, the second request which is similar to making the phone call after doing a lookup in the phone book is the request to a Cloudflare caching server." By this process, the DNS server will direct the user to the nearest Cloudflare caching server.<br><br>4/5/17 Guinn Depo. 17:1-18:1; see also 4/5/17 Guinn Depo. 28:9-13. | Undisputed, except for the final sentence, which is disputed. The DNS server will provide information to others, who then use that information to route their traffic. An ISP will route traffic to suit its own purposes. Sometimes it will choose the shortest path; on other occasions it will choose more circuitous paths, for example if doing so reduces its transmission costs.<br><br>Guinn Opp. Decl. ¶ 12. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| | |
| 13. If the requested image is in Cloudflare's cache, Cloudflare will deliver the copy of that image to the requesting user from cache. [sic] If not, Cloudflare will proxy a copy of the requested image from the origin server, through the Cloudflare data center to the requesting user.<br><br>4/5/17 Guinn Depo. 25:10-26:2; 4/5/17 Guinn Depo. 29:9-24 | Disputed and misleading, also involving an ambiguous term with different natural-language and legal meanings.<br><br>ALS draws a legal conclusion by referring to a temporary file as 'a copy.' The meaning of the term "copy" in that claimed fact does not correspond to the meaning of the word "copy" in section 101 of the Copyright Act, which means "a material object." |

13.  Moving Party's Response: The proffered facts are not disputed and the legal argument is bogus.  Cloudflare says on the one hand that ALS won't evolve to submission of infringement notice through modern means or rely on modern authority, yet Cloudflare wants the Court to believe that a digitized file can't be a copyrighted work within the meaning of the Copyright Act?  Our still images, films and music are almost always now manifested through electrons and displayed by machines.  In *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) the court held that a temporary copy of a computer program, copied from a permanent storage device into a computer's random active memory ("RAM"), constitutes "copying" under the Copyright Act.  In *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001), delivery of digital works through the Napster system contributed to direct infringement of the record companies' reproduction and distribution rights.

| | |
|---|---|
| 14. When a consumer requests an image on a Cloudflare client site, whether the image is in cache or is proxied from the origin server, Cloudflare distributes a copy of the requested content to the consumer's computer, where it would reside in the consumer's hard drive or RAM. | Disputed and misleading, also involving an ambiguous terms with different natural-language and legal meanings.<br><br>ALS draws a legal conclusion by stating that Cloudflare 'distributes a copy' of the temporary file. The |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| The data on the consumer's computer would then result in a display of the request [sic] image on the consumer's browser. "[W]e want to deliver essentially what the website publisher has published. We want to deliver that so it shows up the same way to the website visitor. We just want to optimize the delivery."<br><br>01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22, 205:3-11. | meanings of the terms "copy" and "published" in that claimed fact do not correspond to the meanings of the words "copy" in section 101 of the Copyright Act, which means "a material object," and the word "publication" in section 101.  Nor does the meaning of the term "distribute" correspond to the use of the term in the context of section 106(3) of the Copyright Act. |

| 14.  Moving Party's Response: The proffered facts are not disputed.  Mr. Guinn has been quoted with 100% accuracy.  Cloudflare's quibbles over legal terms don't give rise to a triable dispute of material fact. ||

| 15.If the origin server storing a Cloudflare client site went down, say from a malicious attack, for a time consumers could still request and retrieve images from that site stored in Cloudflare's cache.<br><br>01/22/18 Guinn Depo. 70:12-71:3; ("for a short period of time, if a website was unavailable, we could potentially deliver the assets from cache") | Disputed and misleading.<br><br>Cloudflare's cache automatically clears data when new requests for the same data do not soon arrive.<br><br>Guinn Opp. Decl. ¶¶ 5-6, 13; Declaration of Nick Sullivan in Support of Cloudflare, Inc.'s Opposition to ALS Scan, Inc.'s Motion for Partial Summary Judgment ("Sullivan Opp. Decl.") ¶ 4. |

| 15.  Moving Party's Response: the quotation from the Guinn Deposition is 100% accurate.  Cloudflare cannot create triable issues of material fact by contradicting ||

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| itself. | |
| 16. Cloudflare's customers are businesses that operate web properties. Cloudflare does not provide Internet or cable access to consumers. Any connections Cloudflare offers to transit information would be limited to connections between Cloudflare data centers and also between Cloudflare and some customer data centers. If a consumer makes a request for an image on a Cloudflare customer site, the image would exit Cloudflare's system and transit through another service provider's conduit, for example Time Warner Cable. 09/15/17 Guinn Depo. 123:20-125:6, 129:23-133:24; 01/22/18 Guinn Depo. 57:12-20. | Undisputed. |
| 17. Cloudflare does not create or publish a browser for consumers. Cloudflare does not interact with consumers. Said Matthew Prince, Cloudflare's CEO: "If you haven't heard of us, I'm not surprised. We're part of the internet's infrastructure, one of the groups operating behind the scenes to bring you everything you enjoy online." 01/22/18 Guinn Depo. 60:13-23; Spillane Decl. ¶ 17, Ex. N. | The first and third sentences are undisputed. The second sentence is disputed, and the citations do not support the statement. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| | |
| 17.  Moving Party's Response: the facts are not in dispute.  Cloudflare disputes that sentence that it does not interact with consumers, but it offers no evidence to show how it does. ||
| 18. Cloudflare modifies content that it delivers to consumers. "There are many ways in which [Cloudflare] may modify content of a site."<br><br>09/15/17 Guinn Depo. 148:16-150:20. | Disputed, misleading (turning on ambiguity of the word "content"), and immaterial.<br><br>For optimization and protection purposes, Cloudflare may compress data, insert metadata, and obfuscate email addresses so that bots cannot see them. But Cloudflare does not alter the substantive content of websites, and these processes do not change the website itself or its content. Websites appear the same to users with or without Cloudflare's services.<br><br>Guinn Opp. Decl. ¶ 15. |
| 18.  Moving Party's Response: The citation to Mr. Guinn's deposition testimony is 100% accurate.  Cloudflare may modify content for certain reasons and not others, but that doesn't controvert the testimony that Cloudflare modifies content. ||
| 19. ALS has engaged Steve Easton to observe infringement of ALS works on the Internet and send notice of infringement to responsible parties. Mr. Easton also represents other adult copyright owners and has the same level of knowledge regarding their content.<br><br>Walsh Decl. ¶¶ 9-12; Easton Decl. *passim*; Easton Decl. ¶ 4. | Undisputed except that the notices are complaints and accusations which do not provide actual notice of infringements, which involves a legal conclusion. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 20. Mr. Easton personally observed infringing copies of his clients' works, including ALS, on the Cloudflare Client Sites. Mr. Easton prepared a notice of infringement via email. He addressed the email to the site operator and service providers if he knew the email addresses of these parties. The email contained, in the body, hyperlinks to each and every web page on which the infringing content appeared. His intent in providing hyperlinks for each infringing work was to simultaneously disclose the work in question and also the location of the infringing copy on the Internet. Mr. Easton is familiar with, and provided the other information required by, 17 U.S.C. § 512(c). Easton Decl. ¶¶ 4-6. | Disputed, misleading, and immaterial. ALS's alleged notices were complaints and accusations and did not provide actual notice of infringements, which involves a legal conclusion; the communications were insufficient and did not meet the requirements of the DMCA. Paine Opp. Decl. ¶ 19. Moreover, Mr. Easton's communications themselves revealed that he was unfamiliar with the requirements of 17 U.S.C. § 512(c) and misunderstood the qualifications and conditions for safe harbor under the DMCA. *See*, *e.g.*, Paine Opp. Decl. Ex. 16 (Easton e-mail to Cloudflare stating "YOU CLAIM YOU AREN'T THE HOST[.] YOU ARE NOT ENTITLED TO DMCA EXEMPTION" in response to automated message that web form entry did not address information specified under section 512(c)); Paine Opp. Decl. Ex. 17 (Easton e-mail claiming "if you are not the host, 512 is not applicable to you."). Immaterial because Cloudflare is not a provider of storage services at the direction of a user within the scope of section 512(c) of the Copyright Act. The fact that Plaintiff and Mr. Easton refer to that section, without referring to Section 512(b) and in particular the |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| | requirements of 17 U.S.C. § 512(b)(2)(E)(i) and (ii), demonstrate lack of familiarity with the relevant provisions of the law for system caching providers such as Cloudflare. The fact that Plaintiff and Mr. Easton believe that section 512(c) has any application to providers of transitory digital communication network services such as Cloudflare bespeaks ignorance of section 512(a), which applies to that category of service provider. |
| 20.  Moving Party's Response: this is legal argument without factual dispute. Cloudflare does not dispute that Mr. Easton observed infringement of ALS works and embodied his observations into email notices that were sent and received by Cloudflare.  Cloudflare's argument about the impact of those notices is facially wrong and legally irrelevant.  See Reply Memo. | |
| 21. Mr. Easton observed infringing content belonging to ALS and his other clients on the Cloudflare Client Sites. Between January 26, 2014 to June 23, 2017, Mr. Easton sent email infringement notifications to Cloudflare, on behalf of ALS and others, pertaining to the following sites in the following numbers: a) artofx: 24 total, 14 ALS; b) bestofsexpics: 21 total, 14 ALS; c) cumonmy: 17 total, 17 ALS; d) fboom: 29 total, 29 ALS; e) greenpiccs: 29 total, 25 ALS; f) imagetwist: 82 total, 25 ALS; g) imgchili: 1175 total, 361 | Disputed and misleading. ALS's alleged notices were complaints and accusations and did not provide actual notice of infringements, which involves a legal conclusion; the communications were insufficient and did not meet the requirements of the DMCA. Paine Opp. Decl. ¶ 19. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| ALS; h) imgflash: 8 total, 8 ALS; i) imgsen.se: 20 total, 12 ALS; j) imgspice: 149 total, 15 ALS; k) imgspot: 11 total, 6 ALS; l) imgtrex: 30 total, 27 ALS; m) img.yt: 147 total,; 42 ALS; n) namethatpornstar: 4 total, 4 ALS; o) slimpics: 25 total, 25 ALS; p) stooorage: 11 total, 11 ALS; and q) vipergirls: 21 total, 10 ALS. The grand total: 1,803 total, 645 ALS.<br><br>Easton Decl. ¶¶ 4-10; Penn Decl. ¶¶ 5-23, Exs. 1-17; Notice of Manual Filing. | |
| 21.  Moving Party's Response: this is legal argument without factual dispute. Cloudflare does not dispute that Mr. Easton observed infringement of ALS works and embodied his observations into email notices that were sent and received by Cloudflare.  Cloudflare's argument about the impact of those notices is facially wrong and legally irrelevant.  See Reply Memo. | |
| 22. Cloudflare has received additional infringement notifications from other copyright owners about the sites at issue.<br><br>Cloudflare Response to Interrogatory No. 22; Spillane Decl. ¶ 2, Ex. A. | Irrelevant and immaterial. That Cloudflare received notifications of *claimed* infringement did not provide actual notice of infringements, which involves a legal conclusion. |
| 22.  Moving Party's Response: this fact comes directly from Cloudflare's interrogatory response.  The number of notices received about the subject sites from other copyright owners is relevant to adoption and implementation of a repeat infringer policy.  Cloudflare's argument that every notice of infringement is a mere allegation shows how Cloudflare logs infringement notices on the | |

15

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|

cheap while dismissing all of them as unproven contentions, runs copyright owners through a gauntlet of requirements and excuses for inaction and refuses to terminate accounts except where copyright owners undertake the difficulty and expense of suing direct infringers and obtaining a court judgment.

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 23. While some of the content went down in response to these notices, in some cases, despite notice to Cloudflare, the infringing ALS content remains live on the Cloudflare customer site, months after Mr. Easton's notices.<br><br>Penn Decl. ¶¶ 7, 35, 37-42, Exs. 1-3, 5, 7, 14, 26-31. | Disputed, misleading, and immaterial.<br><br>Cloudflare does not have the ability to remove content or shutdown websites. Terminating Cloudflare's service to a website will not take down a website or remove content.  Moreover, the "notices" at issue were complaints and accusations and did not provide actual notice of infringements, which involves a legal conclusion; the communications did not meet the requirements of the DMCA.<br><br>Paine Opp. Decl. ¶¶ 6-8, 14-19, Exs. 16-24; Sullivan Opp. Decl. ¶¶ 4-5. |

23.   Moving Party's Response: the proffered fact is not disputed.  Cloudflare does have the ability to follow up to see whether an infringement notice resulted in removal of the infringing material, pressure website operators to remove content if they don't comply, remove infringing content from its own cache and ultimately terminate services to website operators who don't remove infringing content.  Cloudflare's argument that every notice of infringement is a mere allegation shows how Cloudflare logs infringement notices on the cheap while dismissing all of them as unproven contentions, runs copyright owners through a gauntlet of requirements and excuses for inaction and refuses to terminate accounts except where copyright owners undertake the difficulty and expense of suing direct infringers and obtaining a court judgment.

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 24. At no time in response to these notices did Mr. Easton receive a "bounce" notice indicating that Cloudflare did not receive the emails, nor did Mr. Easton receive | Disputed and misleading.<br><br>Upon receipt of an email complaint, Cloudflare promptly responds by directing the complainant to the |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| any counter-notifications, in other words, a reply from the site operator that the content in a notice was authorized.<br><br>Easton Decl. ¶¶ 11-12. | company's web form.<br><br>Paine Opp. Decl. ¶¶ 6-7, 19.<br><br>Also immaterial—except to expose Mr. Easton's ignorance of the relevant law—because the "counter-notification" process applies to services providing storage of material at the direction of a user, eligible for the safe harbor under Section 512(c), or to services providing information location tools, eligible for the safe harbor under Section 512(d), and not to transitory digital communication network providers (Section 512(a)) and system caching providers (Section 512(b)).  The reason for the difference is that those last two types of providers are unable to take specific materials down from their services, and are also unable to restore specific materials to their services.<br><br>Paine Opp. Decl. ¶ 4; Guinn Opp. Decl. ¶¶ 7, 16. |

24.  Moving Party's Response: the proffered facts are not disputed.  Cloudflare in fact received Mr. Easton's emails, and at no time did a website operator send information that the works identified in an Easton email were in fact authorized.  Whether information of authorized use would technically be a "counter-notification" under the DMCA is not the point.  If a website operator sent information that the content complained of was in fact authorized, Cloudflare would be in receipt of conflicting information about infringement and might then reasonably refrain from terminating services.  The fact that Cloudflare never received a single claim that the works of which Easton complained were in fact authorized underscores how Cloudflare unfairly dismisses all infringement notifications as mere allegations on which it need not act, even though Cloudflare received no information tending to show that the infringement notices

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| were wrong. | |
| 25. Of the emails from Cloudflare to Easton, only one said that Cloudflare would not process infringement notices submitted via email. Many said that to "expedite" his complaints would he "please" submit through the web form. Others said generally that Cloudflare could not respond to each notice but would take "enforcement action." Still others responded to his email notices with information about the host and an email contact, yet declining to provide an IP address for the subject site to the copyright owner. None of these communications said that Mr. Easton's emails were not "valid" or would not be considered or acted upon.<br><br>Easton Decl. ¶ 13; Spillane Decl. ¶¶ 8-9, Ex. G. | Disputed and misleading.<br><br>Upon receipt of an email complaint, Cloudflare promptly responds by directing the complainant to the company's web form.<br><br>Paine Opp. Decl. ¶¶ 6-7, 19.<br><br>Upon receipt of a web form complaint of infringement, Cloudflare promptly forwards that complaint to both its customer and its customer's hosting provider (one or both, at the option of the complainant). Cloudflare also responds to the complainant by providing information about the identity and contact information of the hosting provider to the complainant.<br><br>Cloudflare does not provide customer origin IP addresses to complainants as malicious actors may seek origin IP addresses to circumvent Cloudflare's protections to launch cyberattacks.<br><br>Paine Opp. Decl. ¶¶ 6-7, 9, 11. |
| 25. Moving Party's Response: the proffered facts are not disputed. The responding emails from Cloudflare varied in content. Cloudflare's statement about how its system is intended to operate does not controvert the content of the email responses to Easton, copies of which were submitted and which are accurately characterized. | |
| 26. Cloudflare sent some emails telling Mr. Easton that his notices lacked one or more elements required by the DMCA. However, only three | Disputed, misleading, and immaterial.<br><br>ALS's alleged notices were insufficient and did not meet the requirements of |

18

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| pertained to the sites at issue, and only one pertained to any of the 1,803 email infringement notices submitted with this motion. Even this one notice from Cloudflare was incorrect.<br><br>Easton Decl. ¶ 13; Spillane Decl. ¶ 10, Ex. H; cf. Spillane Decl. ¶ 10, Ex. H p.3; Spillane Decl. ¶ 11, Ex. I. | the DMCA.<br><br>Paine Opp. Decl. ¶ 19.<br><br>Upon receipt of an email complaint, Cloudflare promptly responds by directing the complainant to the company's web form.<br><br>Paine Opp. Decl. ¶ 11.<br><br>None of ALS's communications satisfied the requirements for notifications of claimed infringement under Sections 512(c), 512(b)(2)(E)(i), and 512(b)(2)(E)(ii).<br><br>Paine Opp. Decl. ¶ 19. |

26.  Moving Party's Response: the proffered facts are not disputed.  ALS has accurately catalogued the responses to Easton and identified the few responses that challenged the sufficiency of Easton's notice regarding the sites at issue. Cloudflare failed to dispute this with evidence that Easton in fact received other emails about the sites in question asserting that his notices were supposedly non-compliant.  Additionally, ALS has adduced evidence in its opposition to Cloudflare's motion that Cloudflare sends bogus emails claiming failure to comply with notice requirements even when submitted through Cloudflare's web abuse form.

| | |
|---|---|
| 27. Cloudflare's policy regarding infringement complaints and termination of repeat infringers is stated at https://www.cloudflare.com/terms/.<br><br>Spillane Decl. ¶ 13, Ex. K. | Undisputed, but the cited exhibit to the Spillane declaration is incomplete and is not an accurate reproduction of the web page in the citation. |
| 28. In fact Cloudflare has only terminated its customers for repeat | Undisputed. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| copyright infringement upon receipt of a court order finding that customer liable for infringement.<br><br>Cloudflare Response to Interrogatory No. 10, Spillane Decl. ¶ 12, Ex. J. | |
| 29. Cloudflare can and has terminated a customer without a court order. Cloudflare terminated services to the Daily Stormer because it was a neo-Nazi site. Matthew Prince made that decision because he woke up "in a bad mood," decided "the people behind the Daily Stormer are assholes" "and decided to kick them off the Internet."<br><br>Spillane Decl. ¶ 17, Ex. N; ¶ 18, EX. O; 9/15/17 Guinn Depo. 182:15-24. | The first sentence is undisputed.  The second sentence and third sentences are disputed, and the evidence reflects that Cloudflare terminated service after Daily Stormer falsely claimed support by Cloudflare: "the Daily Stormer began claiming that we secretly supported their ideology, creating a major distraction for our team." (See Spillane Decl. Ex. N.)  "The Daily Stormer site was bragging on their bulletin boards about how Cloudflare was one of them and that is the opposite of everything we believe. That was the tipping point for me." (See Spillane Decl. Ex. O)  The evidence does not support the statement that Cloudflare actually kicked Daily Stormer off the Internet. Also immaterial. |
| 29.  Moving Party's Response: the proffered facts are not disputed.  Mr. Prince was accurately quoted.  Cloudflare is simply providing additional details and color concerning why Matthew Prince woke up in a bad mood and decided to terminate Daily Stormer.  Whether or not Cloudflare's termination of the Daily Stormer actually kicked that site off the Internet, he is accurately quoted that this was the result. | |
| 30. Cloudflare could also terminate | Disputed and misleading, and the cited |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| services to copyright infringers, as determined by its abuse policies and by "leadership," including Matthew Prince. Cloudflare could stop or limit alleged copyright infringement by terminating services to Cloudflare customers who are infringers.<br><br>9/15/17 Guinn Depo. 196:21-198:12, 202:4-9; 1/22/18 Guinn Depo. 67:5-11. | evidence does not support the statements.<br><br>Cloudflare does not have the ability to remove content or shutdown websites. Terminating Cloudflare's service to a website will not takedown a website or remove content.<br><br>Paine Opp. Decl. ¶¶ 4; Sullivan Opp. Decl. ¶¶ 4-5; Guinn Opp. Decl. ¶ 18. |
| 30.  Moving Party's Response: Cloudflare has not disputed the proffered evidence.  Mr. Guinn is quoted with 100% accuracy.  His statements are true whether or not Cloudflare's termination of services to a website causes that website to disappear from the Internet. | |
| 31. However, despite receipt of over 1800 notices of infringement from Mr. Easton concerning the at-issue sites, and more from other copyright owners, Cloudflare has not terminated a single such site for repeat infringement.<br><br>Cloudflare Response to Interrogatory No. 7, Spillane Decl. ¶ 12, Ex. J, ("Cloudflare has not terminated any of the accounts associated with those WEBSITES"). | Disputed and misleading.<br><br>None of ALS's communications, which were mere complaints and did not provide actual notice of infringements, satisfied the requirements for notifications of claimed infringement under Sections 512(c), 512(b)(2)(E)(i), and 512(b)(2)(E)(ii).<br><br>Paine Opp. Decl. ¶ 14-19, Exs. 16-24.<br><br>Furthermore, Cloudflare does not have the ability to remove content or shutdown websites.  Terminating Cloudflare's service to a website will not take down a website or remove content.<br><br>Paine Opp. Decl. ¶ 4; Sullivan Opp. Decl. ¶¶ 4-5. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 31. Moving Party's Response: the proffered facts were not disputed by Cloudflare.  ALS has accurately cited the number of notices sent by Easton and Cloudflare said in its interrogatory answers that it has not terminated any of the customers operating the sites at issue in this case.  Whether termination of services by Cloudflare causes a website to disappear is not relevant. | |
| 32. In some cases ALS sent notification to Cloudflare of infringing ALS content on Cloudflare Client Sites and the infringing content remains live.<br><br>Penn Decl. ¶¶ 7, 35, 37-42, Exs. 1-3, 5, 7, 14, 26-31. | Disputed, misleading, and immaterial.<br><br>None of ALS's communications, which were mere complaints and did not provide actual notice of infringements, satisfied the requirements for notifications of claimed infringement under Sections 512(c), 512(b)(2)(E)(i), and 512(b)(2)(E)(ii).<br><br>Paine Opp. Decl. ¶ 14-19, Exs. 16-24.<br><br>Cloudflare does not have the ability to remove content or shutdown websites.  Terminating Cloudflare's service to a website will not takedown a website or remove content.<br><br>Paine Opp. Decl. ¶ 4; Sullivan Opp. Decl. ¶¶ 4-5. |
| 32. Moving Party's Response: the proffered facts were not disputed.  ALS showed that this was the case, and Cloudflare has no evidence tending to show ALS was wrong.  Whether Cloudflare has the ability to remove content from its customer's sites or remove the site from the Internet is beside the point. | |
| 33. ALS tried submitting an infringement complaint through Cloudflare's web form and asked that the complaint be forwarded to the site owner and host, but even | Misleading and immaterial.<br><br>Cloudflare does not have the ability to remove content or shutdown websites.  Terminating Cloudflare's service to a website will not takedown a website or |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| doing that did not result in removal of the infringing content.<br><br>Penn Decl. ¶¶ 43-44, Ex. 32. | remove content.<br><br>Paine Opp. Decl. ¶ 4; Sullivan Opp. Decl. ¶¶ 4-5. |
| 33.  Moving Party's Response: the proffered facts were not disputed.  Whether Cloudflare has the ability to remove content from websites or remove a website from the Internet, in this instance submission of a complaint in the fashion in which Cloudflare assists did not result in removal of the infringing content. | |
| 34. Cloudflare says some of the at-issue websites are user-upload sites, potentially entitled to protections under the DMCA. However, none have submitted the required information to the Copyright Office to maintain any safe harbors.<br><br>Spillane Decl. ¶ 14. | Undisputed that some of the at-issue websites are user-upload sites.<br><br>Website information submitted to the Copyright office is immaterial, and irrelevant. |
| 35. Cloudflare complains that it cannot ascertain whether an image is infringing, and that determination of doctrines such as fair use are best left to "courts, or at best, lawyers highly experienced in copyright law." However, Cloudflare does not employee [sic] any attorneys in its Trust & Safety department, which is responsible for infringement complaints.<br><br>Cloudflare Expert Disclosures, Spillane Dec. ¶ 15, Ex. L; 01/22/18 Justin Paine Depo. 26:23-28:3, 39:2- | Misleading and immaterial. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 18. | |
| 36. While Cloudflare has disclosed a contact email address for infringement complaints in the form submitted to the Copyright Office, Cloudflare has not published an email address on its website which copyright owners can use to submit infringement notifications via email.<br><br>Easton Decl. ¶ 14 Ex. A; Penn. Decl. ¶¶ 31-32, Exs. 24, 25. | Disputed and misleading.  Cloudflare provides a web form on its website for the submission of copyright abuse complaints without a user having to take a separate step to send an email; and the web form feeds straight into Cloudflare's process for handling complaints.  Someone sending an email to Cloudflare at the address shown by the Copyright Office will be directed to the form, and the person will not need to be informed of the email address further.  Someone searching Cloudflare for abuse reporting information will be directed to the abuse web form, with no further need for an email.<br><br>Paine Opp. Decl. ¶ 11. |
| 36.  Moving Party's Response: the proffered facts were not disputed.  Cloudflare has offered its rationale for why it has not published an email address for infringement complaints on its website, but did not provide evidence that the email address was in fact published on Cloudflare's website. | |
| 37. Cloudflare has taken the position with respect to Mr. Easton's emails that none were "valid" and thus required no response.<br><br>Cloudflare Response to Interrogatory Nos. 7 & 8 (no valid notices received regarding the at-issue websites), No. 15 (Easton notices not "valid" because he did not submit through the web page and failed to provide information | Undisputed.<br><br>None of ALS's communications, which were mere complaints and did not provide actual notice of infringements, satisfied the requirements for notifications of claimed infringement under Sections 512(c), 512(b)(2)(E)(i), and 512(b)(2)(E)(ii).<br><br>Paine Opp. Decl. ¶ 14-19, Exs. 16-24. |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| required by DMCA), Spillane Decl. ¶ 12, Ex. J. | |
| 38. Cloudflare does not forward email infringement notices from copyright owners to its customers, but rather responds to the sender redirecting his attention to the abuse form. Submissions via Cloudflare's web form populate automatically into a database.  However, Cloudflare would have to hire additional staff to read and process email submissions.<br><br>Penn Decl. ¶¶ 7, 35, 37-42, Exs. 1-3, 5, 7, 14, 26-31.]; 01/22/18 Paine Depo. 13:7-14:3, 22:18-23:5, 23:6-24:5. | Disputed and misleading.<br><br>Upon receipt of an email complaint, Cloudflare promptly responds by directing the complainant to the company's web form.<br><br>Upon receipt of a web form complaint of infringement, Cloudflare promptly forwards that complaint to both its customer and its customer's hosting provider (one or both, at the option of the complainant).  Cloudflare also responds to the complainant by providing information about the identity and contact information of the hosting provider to the complainant.<br><br>While it is true that, to read and process email submissions, Cloudflare would have to hire additional staff, that would introduce the potential for substantial error and delay into the system.  That is why Cloudflare optimized the complaint process for complainants.<br><br>Paine Opp. Decl. ¶¶ 6-7, 11.<br><br>Cloudflare's web form process also takes less time for a complainant to use than e-mail communications would take.<br><br>Deposition Transcript of Jay Steve Easton ("Easton Depo. Tr.") at 105:1- |

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| | 9.[2] |

38.  Moving Party's Response: the proffered facts were not disputed.  Cloudflare is simply repeating its rationale for attempting to steer copyright owners to its web abuse form.  **[Easton testimony.]**

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| 39. Cloudflare's web abuse form has qualities that limit the ability of copyright owners to provide notice of infringement. First, it says that only ten infringement complaints may be submitted through the form at one time. ALS's DMCA agent, Steve Easton, frequently sends notification of infringement of hundreds of ALS works, which would require splitting up the notice to Cloudflare into multiple submissions through the online form. Second, Cloudflare's abuse pages say Cloudflare will act only if the submission is "legitimate" or "valid," terms nowhere defined on Cloudflare's website. Third, the online form seeks to intimidate copyright owners through a statement that "you understand, under 17 U.S.C. § 512(f), you may be liable for any damages, including costs and attorneys' fees, if you knowingly materially misrepresent reported material," even though no such acknowledgement is a required element of a DMCA notification | Disputed, misleading, and immaterial; argument and speculation, not facts. ALS's agent sent numerous, unmanageable email notifications to Cloudflare in an attempt to "drive [Cloudflare] crazy." Easton Depo. Tr. at 87:12-92:9.[3] ALS's copyright enforcement agent took anywhere from thirty minutes to two hours to draft email notifications but acknowledged that using Cloudflare's web form took no more than 10-15 minutes. Easton Depo. Tr. at 105:1-9.[4] ALS pays Mr. Easton $450 per quarter—minimum wage for 62 hours per quarter, or an average of 57 minutes per work day—for all of its anti-infringement efforts. Dkt. 329 [Easton Decl. in Support of ALS Scan's Motion for Partial Summary Judgment] at ¶ 17. Nothing about references to penalties for willful material misstatements limits the ability of genuine copyright |

---

[2] Bridges Opp. Decl. ¶ 7l, Ex. 7.
[3] Bridges Opp. Decl. ¶ 7k, Exs. 7-8.
[4] Bridges Opp. Decl. ¶ 7l, Ex. 7.

| PLAINTIFF'S ASSERTED FACTS | DEFENDANT'S RESPONSE |
|---|---|
| under 17 U.S.C. § 512(c)(3)(A). Id. Fourth, ALS can afford to pay Mr. Easton relatively little to send DMCA notifications on its behalf. Sending notification by email is a far more time and cost efficient method compared to having to submit notices to each provider through web forms. If Mr. Easton were required to submit notification only through web forms, ALS's infringement notification procedures would become unaffordable and break down.<br><br>Easton Decl. ¶ 18 Ex. B; Easton Decl. ¶¶ 17-18; Penn Decl. ¶¶ 31, 32, Exs. 24, 25;<br>Easton Decl. ¶¶ 17-18; Walsh Decl. ¶ 10. | owners to provide notifications of claimed infringement.<br><br>Statements that Cloudflare will act on only valid and legitimate notifications of claimed infringement do not require Cloudflare also to give legal advice about notifications.<br><br>The reference to Section 512(c)(3) is immaterial without reference also to Section 512(b)(2)(E)(i) and (ii). |

39.  Moving Party's Response: the proffered facts were not disputed.  Cloudflare does not dispute that its web page has the listed qualities.  Cloudflare is simply trashing Mr. Easton and ALS.  **[Easton testimony.]**

## ALS's RESPONSE TO CLOUDFLARE'S ADDITIONAL FACTS

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
| --- | --- |
| 1. Cloudflare's services do not change the information regarding the identity or contact information of the domain registrant on the WHOIS directory.<br><br>Guinn Opp. Decl. ¶¶ 7-10; Paine Opp. Decl. ¶ 2. | Admitted. |
| 2. Cloudflare customers who use privacy services, which substitute the service's name for the customer's name in the WHOIS domain ownership directory, do so independently of Cloudflare's services.<br><br>Guinn Opp. Decl. ¶¶ 7-10; Paine Opp. Decl. ¶ 2. | Admitted. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 3. Cloudflare does not give customer origin IP addresses to complainants for security purposes, as otherwise malicious persons may use Cloudflare's complaint process to obtain information to launch cyberattacks.<br><br>Paine Opp. Decl. ¶¶ 9, 18. | Admitted that this is Cloudflare's stated reason for concealing, and not disclosing, the IP for the customer website. Cloudflare's other reason is to help website operators conceal the identity of the host for the site and the IP address of the site. After Cloudflare's servers are designated as authoritative nameservers for a site, contact information for hosts and site owners is unavailable on standard whois lookup services.  .  Says Cloudflare: "Cloud Flare will mask your IP."  (1/30/18 Spillane Decl. Doc. 327 ¶ 7, Ex. F, Cloudflare 142.); [1/30/18 Penn Decl. Doc. 328 ¶¶ 25-30, Exs. 18-23; 1/30/18 Easton Decl. Doc. 328 ¶¶ 15-16.] |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 4. There is no evidence that Cloudflare's services provide any meaningful speed difference of transmission of images or websites to individuals browsing a website using Cloudflare's service.<br><br>Ghandeharizadeh Depo. Tr. at 72:24-73:9, 73:17-74:13, 74:14-75:14, 75:25-76:21, 76:24-77:13, 78:14-22, 78:23-80:21, 81:4-82:1, 82:2-9, 82:14-85:20.[5]<br><br>Guinn Opp. Decl. ¶¶ 19-21. | Disputed. "Cloudflare provides internet services to optimize and protect websites, including by increasing the speed at which website content is delivered to end users, making such delivery considerably more bandwidth efficient, and by adding security services to prevent malicious attacks." (3/2/17 Guinn Decl., Doc. 124-2 ¶ 3.) Says Cloudflare: "Cloudflare's global Anycast network of 119 data centers across 58 countries reduces latency and time to first byte by delivering content closer to visitors.  Cloudflare's size and distribution of internet connects gives customers fast, reliable delivery throughout the world." [1/30/18 Spillane Decl. Doc. 327 ¶ 3, Ex. B; https://www.cloudflare.com/performance/.] See also 2/16/18 Ghandeharizadeh Decl. ¶¶ 2-13. |

---

[5]  Bridges Opp. Decl. ¶¶ 10t-bb, Ex. 13.

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 5. Other non-Cloudflare technologies may have a larger effect on how fast materials may be transmitted to an individual accessing a website, including ISP speed, network traffic, router demands, and proximity to a Wi-Fi router.<br><br>Ghandeharizadeh Depo. Tr. at 72:24-73:9, 73:17-74:13, 74:14-75:14, 75:25-76:21, 76:24-77:13, 78:14-22, 78:23-80:21, 81:4-82:1, 82:2-9, 82:14-85:20.[6]<br><br>Guinn Opp. Decl. ¶¶ 19-21. | Disputed. "Cloudflare provides internet services to optimize and protect websites, including by increasing the speed at which website content is delivered to end users, making such delivery considerably more bandwidth efficient, and by adding security services to prevent malicious attacks." (3/2/17 Guinn Decl., Doc. 124-2 ¶ 3.) Says Cloudflare: "Cloudflare's global Anycast network of 119 data centers across 58 countries reduces latency and time to first byte by delivering content closer to visitors. Cloudflare's size and distribution of internet connects gives customers fast, reliable delivery throughout the world." [1/30/18 Spillane Decl. Doc. 327 ¶ 3, Ex. B; https://www.cloudflare.com/performance/.] See also 2/16/18 Ghandeharizadeh Decl. ¶¶ 2-13. |

---

[6] Bridges Opp. Decl. ¶¶ 10t-bb, Ex. 13.

31

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 6.  Cloudflare does not alter the substantive content of the websites. For optimization and protection purposes, Cloudflare may compress data, insert metadata, and "obfuscate" email addresses so that humans but not bots can see them. A website appears the same to a user with or without Cloudflare's services.<br><br>Guinn Opp. Decl. ¶ 15. | Disputed.  Cloudflare modifies content that it delivers to consumers.  [09/15/17 Guinn Depo. 148:16-150:20.] "There are many ways in which [Cloudflare] may modify content of a site."  [09/15/17 Guinn Depo. 150:11-12.] |
| 7.  At least 11 of the 17 accused websites are user-generated content sites. The sites publish terms of service for users with guidelines to copyright owners for notifications of claimed copyright infringement.<br><br>Deposition Transcript of Sarah Walsh ("Walsh Depo. Tr.") at 406:17-421:6.[7]<br><br>Deposition Transcript of Eric Penn ("Penn Depo. Tr.") at 204:10-207:12, 207:18-210:3.[8]<br><br>Bridges Opp. Decl.¶ 18-22, Exs. 25-29. | ? |

---

[7]  Bridges Opp. Decl. ¶ 3l, Exs. 1, 3.
[8]  Bridges Opp. Decl. ¶¶ 5h, 5i, Ex. 5.

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 8.  Cloudflare provides a complainant with the identity and contact information of the hosting provider.<br><br>Paine Opp. Decl. ¶ 7. | Disputed.  After Cloudflare's servers are designated as authoritative nameservers for a site, contact information for hosts and site owners is unavailable on standard whois lookup services.  .  Says Cloudflare: "Cloud Flare will mask your IP."  (1/30/18 Spillane Decl. Doc. 327 ¶ 7, Ex. F, Cloudflare 142.); [1/30/18 Penn Decl. Doc. 328 ¶¶ 25-30, Exs. 18-23; 1/30/18 Easton Decl. Doc. 328 ¶¶ 15-16.]  Cloudflare never provides this information in response to email notice of infringement.  [Cite.]  Submission of complaints through Cloudflare's abuse form sometimes results in delivery of this information and sometimes results in bogus responses that the notice was defective.  Throughout this case Cloudflare has complained that ALS doesn't submit its infringement complaints through its web abuse page, www.cloudflare.com/abuse/form.  However, use of this page elicits inconsistent responses.  Even when filled out completely and in a consistent manner, and even when one checks the boxes that opt to forward complaints the site host and operator, sometimes Cloudflare emails a response confirming the URL submitted and sometimes Cloudflare send a sham response claiming that the notice lacked multiple categories of information required by 17 U.S.C. § 512(c).  Cloudflare's abuse template is obviously set up to satisfy all elements of Section 512(c) when fully filled out.  Further, even submission of infringing content through Cloudflare's abuse page does not result in removal of infringing material.  2/16/18 Spillane Decl. ¶¶ 15-27, Exs. 12-19. |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 9. By using this contact information, ALS's copyright enforcement agent was able to submit complaints to the accused sites, which led to removal of images.<br><br>Bridges Opp. Decl. ¶ 7b-7h, Ex. 7. | Disputed.  Use of this page elicits inconsistent responses.  Even when filled out completely and in a consistent manner, and even when one checks the boxes that opt to forward complaints the site host and operator, sometimes Cloudflare emails a response confirming the URL submitted and sometimes Cloudflare send a sham response claiming that the notice lacked multiple categories of information required by 17 U.S.C. § 512(c).  Cloudflare's abuse template is obviously set up to satisfy all elements of Section 512(c) when fully filled out.  Further, even submission of infringing content through Cloudflare's abuse page does not result in removal of infringing material.  2/16/18 Spillane Decl. ¶¶ 15-27, Exs. 12-19; 1/30/18 Penn Decl. Doc. 328 ¶¶ 43-44, Ex. 32. |
| 10. Cloudflare does not have the ability to remove content or shut down websites.<br><br>Paine Opp. Decl. ¶ 4; Sullivan Opp. Decl. ¶¶ 4-5. | Disputed.  Cloudflare has the ability to remove content from its caching servers. Ghandeharizadeh Decl. ¶¶ 15-18 |
| 11. Terminating Cloudflare's service to a website will not takedown a website or remove content.<br><br>Paine Opp. Decl. ¶ 4; Sullivan Opp. Decl. ¶¶ 4-5. | Disputed.  Cloudflare has the ability to remove content from its caching servers. Ghandeharizadeh Decl. ¶¶ 15-18 |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 12. Terminating Cloudflare's service to a website will remove the threat-detection function the Cloudflare performs and reduce the security of the website.<br><br>Paine Opp. Decl. ¶ 9; Sullivan Opp. Decl. ¶¶ 4-5. | Admitted. |
| 13. Terminating Cloudflare's service to a website will leave that website vulnerable to a cyberattack. Attacks on a website could infect the website, causing it to become part of malicious networks (botnets) under control of malicious actor, using all the resources of the network to mount coordinated further attacks on other networks or further resources on them. For this reason, the more websites that have protections against cyberattacks, the safer the entire Internet is.<br><br>Sullivan Opp. Decl. ¶ 6; Guinn Opp. Decl. ¶ 18. | Admitted. |
| 14. Termination of Cloudflare's services for a particular website has no effect on the website's availability or the appearance of the website.<br><br>Sullivan Opp. Decl. ¶ 5. | Admitted. |

35

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 15. The infringements ALS alleges here would occur with or without Cloudflare.<br><br>Sullivan Opp. Decl. ¶ 5. | Disputed.  Cloudflare materially contributes to reproduction, distribution and display of infringing works.  3/2/17 Guinn Decl., Doc. 124-2 ¶ 3; 1/30/18 Spillane Decl. Doc. 327 ¶ 3, Ex. B; https://www.cloudflare.com/performance/; 2/16/18 Ghandeharizadeh Decl. ¶¶ 2-13; 3/9/17 Spillane Decl. Doc. 327, ¶ 7, Ex. E, Cloudflare 133, Doc. 133; 4/5/17 Guinn Depo. 19:12-21:9, Ex. 4; 3/2/17 Guinn Decl. ¶ 6, Doc. 124-2; 4/5/17 Guinn Depo. 90:25-91:11; 3/9/17 Spillane Decl. Doc. 327 ¶ 8, Ex. F, Doc. 133; 3/2/17 Guinn Decl. ¶ 8, Ex. B, Doc 124-2; 1/30/18 Penn Decl. Doc. 328 ¶ 24, 4/20/17 Penn Decl. Doc. 328 Doc. 170; 4/20/17 Spillane Decl. Doc. 327 Doc 171; 01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22; 09/15/17 Guinn Depo. 205:3-11; 1/30/18 Easton Decl. Doc. 329 ¶¶ 4-10; 1/30/18 Penn Decl. Doc. 328 ¶¶ 5-23, Exs. 1-17; Notice of Manual Filing Doc. 330 |
| 16. ALS's emails did not provide actionable information because they could not work in Cloudflare's automated system that depends upon web form submissions for accuracy and their contents did not comply with the conditions of the DMCA.<br><br>Paine Opp. Decl. ¶¶ 18-19, Exs. 19-23. | Disputed.  Easton's emails on behalf of ALS were all human or machine readable and contained hyperlinks disclosing the work infringed as well as the location of the infringing work on the Cloudflare client site.  The Easton notifications provide Cloudflare with actual notice of infringement.  1/30/18 Walsh Decl. Doc. 326 ¶¶ 5-12; 1/30/18 Penn Decl. Doc. 328 *passim*; 1/30/18 Easton Decl. Doc. 329 *passim*; Notice of Manual Filing Doc. 330; Cloudflare Response to Interrogatory No. 20, 1/30/18 Spillane Decl. Doc. 327 ¶ 2, Ex. A |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 17. ALS's messages blended references to copyright and/or trademark infringement, listed unidentified strings of HTML code, did not state images on accused websites were identical to ALS images, and did not describe the copyright material ALS claims to have owned.<br><br>Paine Opp. Decl. ¶¶ 18-19, Exs. 19-23. | Admitted that Easton's notices asserted infringement of both copyright and trademark because ALS's copyrighted images also bore the ALS mark.  Disputed as to the rest.  Easton's emails identify ALS as the copyright owner, provide its address, say "Infringing URLs" and then provided live hyperlinks which, when clicked, resolved to an image of the ALS work infringed and also disclosed the location of the infringing work on the Cloudflare client site.  1/30/18 Walsh Decl. Doc. 326 ¶¶ 5-12; 1/30/18 Penn Decl. Doc. 328 *passim*; 1/30/18 Easton Decl. Doc. 329 *passim*; Notice of Manual Filing Doc. 330; Cloudflare Response to Interrogatory No. 20, 1/30/18 Spillane Decl. Doc. 327 ¶ 2, Ex. A |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 18. None of ALS's communications to Cloudflare contained information that section 512(b)(2)(E) requires for a system caching provider.<br><br>Paine Opp. Decl. ¶ 14-19, Exs. 16-24. | Admitted that the notices did not contain the verbiage described in Section 512(b)(2)(E).  Denied that the information was required or that Cloudflare engaged in system caching as set forth in Section 512(b).  Cloudflare's customers are businesses that operate web properties.  Cloudflare does not provide Internet or cable access to consumers.  01/22/18 Guinn Depo. 57:12-20; Cloudflare does not create or publish a browser for consumers.  [01/22/18 Guinn Depo. 60:13-23.]  Cloudflare does not interact with consumers.  Said Matthew Prince, Cloudflare's CEO: "If you haven't heard of us, I'm not surprised.  We're part of the internet's infrastructure, one of the groups operating behind the scenes to bring you everything you enjoy online."  [Spillane Decl. ¶ 17, Ex. N.] |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 19. Cloudflare's use of an automated web form is consistent with industry practice.<br><br>Paine Opp. Decl. ¶ 11. | Disputed.  Some service providers offer a web abuse form, but only Cloudflare to ALS's knowledge considers all submissions via email categorically "invalid."  Cloudflare simply ignored Mr. Easton's emails, having taken the litigation position that none were "valid." [Cloudfare Response to Interrogatory Nos. 7 & 8 (no valid notices received regarding the at-issue websites), No. 15 (Easton notices not "valid" because he did not submit through the web page and failed to provide information required by DMCA), [1/30/18 Spillane Decl. Doc. 327 ¶ 12, Ex. J.] |

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 20. Cloudflare has taken active steps to discourage copyright infringement on its services through its terms of service, its provision of easy to use web forms and prompt processing of compliant notices, and its communications to hosts and complainants.<br><br>Paine Opp. Decl. ¶¶ 5-8, 11, Exs. 2-12. | Disputed.  The abuse form works poorly. The responses from Cloudflare are erratic, sometimes resulting in sham responses claiming that the notice was deficient. Notice to Cloudflare through the abuse page does not result in removal of infringing content from the origin server or Cloudflare's cache.  [1/30/18 Penn Decl. Doc. 328 ¶¶ 43-44, Ex. 32.]; 2/16/18 Spillane Decl. ¶¶ 15-27, Exs. 12-19; Cloudflare simply ignored Mr. Easton's emails, having taken the litigation position that none were "valid."  [Cloudfare Response to Interrogatory Nos. 7 & 8 (no valid notices received regarding the at-issue websites), No. 15 (Easton notices not "valid" because he did not submit through the web page and failed to provide information required by DMCA), 1/30/18 Spillane Decl. Doc. 327 ¶ 12, Ex. J; even submission of infringing content through Cloudflare's abuse page does not result in removal of infringing material.  2/16/18 Spillane Decl. ¶¶ 15-27, Exs. 12-19; 1/30/18 Penn Decl. Doc. 328 ¶¶ 43-44, Ex. 32. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 21. When ALS used Cloudflare's web form, Cloudflare immediately forwarded the complaint to the customer's hosting service and also provided identity and contact information about the host to ALS.<br><br>Easton Depo. Tr. at 81:13-25, 105:1-9.[9]<br><br>Paine Opp. Decl. ¶ 15. | The responses from Cloudflare are erratic, sometimes resulting in sham responses claiming that the notice was deficient. Notice to Cloudflare through the abuse page does not result in removal of infringing content from the origin server or Cloudflare's cache.  [1/30/18 Penn Decl. Doc. 328 ¶¶ 43-44, Ex. 32.]; 2/16/18 Spillane Decl. ¶¶ 15-27, Exs. 12-19 |
| 22. Websites that use Cloudflare services must already have an existing website with Internet hosting and transmission facilities that are independent of Cloudflare.<br><br>Guinn Opp. Decl. ¶¶ 5, 7.<br><br>Sullivan Opp. Decl. ¶ 7.<br><br>*See* Penn Depo. Tr. at 79:6-80:1.[10] | Admitted. |

---

[9]  Bridges Opp. Decl. ¶¶ 7i, 7l, Ex. 7.
[10]  Bridges Opp. Decl. ¶ 5b. Ex. 5.

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 23. Cloudflare does not initiate the transmission of materials using Cloudflare's systems and services.<br><br>Guinn Opp. Decl. ¶ 11.<br><br>Sullivan Opp. Decl. ¶ 4.<br><br>Plaintiff's Responses to First Set of Requests for Admission from Defendant Cloudflare, Inc., Response to Request for Admission Nos. 32-34.[11]<br><br>Ghandeharizadeh Depo. Tr. at 72:9-12.[12]<br><br>Penn Depo. Tr. at 181:12-186:4.[13] | Disputed.  When Cloudflare receives a query for a file, Cloudflare's systems search for a copy of the requested file in the nearest caching server in Cloudflare's data center and then distributes a copy of that file to the requesting consumer. 4/5/17 Guinn Depo. 17:1-18:1; 4/5/17 Guinn Depo. 28:9-13; 4/5/17 Guinn Depo. 25:10-26:2; 4/5/17 Guinn Depo. 29:9-24; 01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22; 09/15/17 Guinn Depo. 205:3-11 |
| 24. Cloudflare does not select recipients of materials except as an automatic response to the request of another person.<br><br>Guinn Opp. Decl. ¶ 11.<br><br>Sullivan Opp. Decl. ¶¶ 4-9.<br><br>Penn Depo. Tr. at 181:12-186:4.[14] | Admitted. |

---

[11] Bridges Opp. Decl. ¶¶ 15d, 15e, Ex. 22.
[12] Bridges Opp. Decl. ¶ 10s, Ex. 13.
[13] Bridges Opp. Decl. ¶ 5e, Ex. 5.
[14] Bridges Opp. Decl. ¶ 5e, Ex. 5.

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 25. Cloudflare carries out the transmission, routing, provision of connections, and any transient storage that occurs on its systems through automated technical processes without selecting any materials.<br><br>Guinn Opp. Decl. ¶¶ 11, 15.<br><br>Paine Opp. Decl. ¶ 2<br><br>Sullivan Opp. Decl. ¶¶ 4-9.<br><br>*See* Penn Depo. Tr. 181:12-186:4.[15]<br><br>Ghandeharizadeh Depo. Tr. at 96:21-<br>    97:8.[16] | Disputed.  When Cloudflare receives a query for a file, Cloudflare's systems search for a copy of the requested file in the nearest caching server in Cloudflare's data center and then distributes a copy of that file to the requesting consumer. 4/5/17 Guinn Depo. 17:1-18:1; 4/5/17 Guinn Depo. 28:9-13; 4/5/17 Guinn Depo. 25:10-26:2; 4/5/17 Guinn Depo. 29:9-24; 01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22; 09/15/17 Guinn Depo. 205:3-11.  Plus, Cloudflare does not provide transmission services. Cloudflare does not provide Internet or cable access to consumers.  Any connections Cloudflare offers to transit information would be limited to connections between Cloudflare data centers and also between Cloudflare and some customer data centers.  [09/15/17 Guinn Depo. 123:20-125:6.]  If a consumer makes a request for an image on a Cloudflare customer site, the image would exit Cloudflare's system and transit through another service provider's conduit, for example Time Warner Cable. [09/15/17 Guinn Depo. 129:23-133:24.] "Depending on where the visitor is coming from on the internet, which is a very large and diverse network . . . the request could traverse many networks." *Id.* 133:21-24. |

[15]  Bridges Opp. Decl. ¶ 5e, Ex. 5.
[16]  Bridges Opp. Decl. ¶ 10jj, Ex. 13.

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 26. Cloudflare is a pass-through network which, at most, caches certain elements of pre-existing web pages for a limited period in order to improve network performance.<br><br>Guinn Opp. Decl. ¶¶ 5-7, 9, Ex. E.<br><br>Paine Opp. Decl. ¶ 2, 4.<br><br>Sullivan Opp. Decl. ¶ 3.<br><br>Walsh Depo. Tr. at 354:4-354:8, 357:7-17, 358:14-21, 358:23-359:3.[17] | Disputed.  It is not clear what a "pass-through network" means in this context.  Cloudflare does much more than simply allow content to "pass through" its network.  Cloudflare stores reproductions of content on caching servers throughout its network.  The images reside on caching servers for two hour "time to live" intervals, which interval can be repeated through successive requests.  (3/9/17 Spillane Decl. ¶ 8, Ex. F, Doc. 133); (3/9/17 Penn Decl. ¶ 4, Doc. 134); (4/5/17 Guinn Depo. 21:23-24:9 Ex. 5); [01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22]; [09/15/17 Guinn Depo. 205:3-11]; (Guinn Depo. 30:4-15; 4/20/17 Spillane Decl. ¶ 6 Ex. 11); (Guinn Depo. 30:16-31:18; 4/20/17 Spillane Decl. ¶ 6 Ex. 11). Even if an origin server goes down, the content will remain for a time in Cloudflare's cache.  [01/22/18 Guinn Depo. 70:12-71:3]  In response to a query, Cloudflare searches for a copy in the nearest cache, then distributes a copy from cache or the origin server to the consumer's browser.  (3/2/17 Guinn Decl. ¶ 8, Ex. B, Doc 124-2; 1/30/18 Penn Decl. Doc. 328 ¶ 24, 4/20/17 Penn Decl. Doc. 170; 4/20/17 Spillane Decl. Doc 171.); (4/5/17 Guinn Depo. 17:1-18:1; see also 4/5/17 Guinn Depo. 28:9-13.); (4/5/17 Guinn Depo. 25:10-26:2.); (4/5/17 Guinn Depo. 29:9-24.); [01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22.]; [09/15/17 Guinn Depo. 205:3-11.]; Ghandeharizeh Decl. ¶ 14. |

ALS MSJ – Cloudflare – Response to Genuine Disputes

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 27. To provide its services, Cloudflare uses caching servers; a caching server does not itself host any materials for websites but temporarily stores, using an automated process, certain elements of websites that are hosted elsewhere.<br><br>Guinn Opp. Decl. ¶¶ 5-6, 13, Ex. H.<br><br>Paine Opp. Decl. ¶ 4.<br><br>Sullivan Opp. Decl. ¶¶ 3, 7-8.<br><br>Plaintiff's Responses to First Set of Requests for Admission from Defendant Cloudflare, Inc., Response<br><br>to Request for Admission Nos. 39.[18] | Disputed.  This depends on the definition of "hosting."  Cloudflare stores reproductions of content on caching servers throughout its network.  The images reside on caching servers for two hour "time to live" intervals, which interval can be repeated through successive requests.  (3/9/17 Spillane Decl. ¶ 8, Ex. F, Doc. 133); (3/9/17 Penn Decl. ¶ 4, Doc. 134); (4/5/17 Guinn Depo. 21:23-24:9 Ex. 5); [01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22]; [09/15/17 Guinn Depo. 205:3-11]; (Guinn Depo. 30:4-15; 4/20/17 Spillane Decl. ¶ 6 Ex. 11); (Guinn Depo. 30:16-31:18; 4/20/17 Spillane Decl. ¶ 6 Ex. 11). Even if an origin server goes down, the content will remain for a time in Cloudflare's cache.  [01/22/18 Guinn Depo. 70:12-71:3] |

---

[17]  Bridges Opp. Decl. ¶ 3h. Ex. 1.
[18]  Bridges Opp. Decl. ¶ 15f, Ex. 22.

| UNCONTROVERTED FACTS AND EVIDENCE | ALS'S RESPONSE |
|---|---|
| 28. Cloudflare does not maintain cached versions of materials on its system or network in a manner ordinarily accessible to anyone other than the website's anticipated recipients, nor does Cloudflare keep a cached version on the system or network for any longer than is reasonably necessary for the transmission routing, or provision of connections.<br><br>Guinn Opp. Decl. ¶ 13, Ex. H.<br><br>Paine Opp. Decl. ¶ 8.<br><br>Sullivan Opp. Decl. ¶ 4.<br><br>*See* Walsh Depo. Tr. at 349:2-352:22.[19] | Disputed.  Cloudflare stores reproductions of content on caching servers throughout its network.  The images reside on caching servers for two hour "time to live" intervals, which interval can be repeated through successive requests.  (3/9/17 Spillane Decl. ¶ 8, Ex. F, Doc. 133); (3/9/17 Penn Decl. ¶ 4, Doc. 134); (4/5/17 Guinn Depo. 21:23-24:9 Ex. 5); [01/22/18 Guinn Depo. 36:21-40:23; 09/15/17 Guinn Depo. 129:8-22]; [09/15/17 Guinn Depo. 205:3-11]; (Guinn Depo. 30:4-15; 4/20/17 Spillane Decl. ¶ 6 Ex. 11); (Guinn Depo. 30:16-31:18; 4/20/17 Spillane Decl. ¶ 6 Ex. 11).  Even if an origin server goes down, the content will remain for a time in Cloudflare's cache.  [01/22/18 Guinn Depo. 70:12-71:3] |

DATED:  February 26, 2018

SPILLANE LAW GROUP PLC
GHALLAGHER & KENNEDY P.A.

By: _____
        Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

---

[19]  Bridges Opp. Decl. ¶ 3g, Ex. 1.

ALS MSJ – Cloudflare – Response to Genuine Disputes

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this action.  My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.  A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT STEADFAST NETWORKS, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 26, 2018, I checked the CM/ECF docket for this action and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Gary L. Bostwick– gbostwick@B1Law.com
Kevin S. Toll – kevin@silversteinlegal.com
Lawrence G. Walters – larry@firstamendment.com
Corey D. Silverstein – corey@silversteinlegal.com
Rachel Kassabian – rachelkassabian@quinnemanuel.com
Carolyn M. Homer – carolynhomer@quinnemanuel.com
Mark Thomas Gray    markgray@quinnemanuel.com
Armen Nercessian    anercessian@fenwick.com
Jedediah Wakefield    jwakefield@fenwick.com
Sapna S Mehta    smehta@fenwick.com

Colin TJ O'Brien – tm@partridgepartnerspc.com
John L. Ambrogi – jla@partridgepartnerspc.com
Daniel L Rogna    daniel@partridgepartnerspc.com
Paul Supnick – paul@supnick.com
Raymond Katrinak – pkatrinak@kernanlaw.net
Ryan Carreon – rcarreon@kernanlaw.net
Stephen M Kernan – kernanlaw@gmail.com
John P Flynn    john.flynn@gknet.com
Kevin D Neal    kevin.neal@gknet.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 26, 2018, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling Local Rule, on (*date*) February 26, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail or Attorney Service***
Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/26/2018 | Jessie Gietl | *Jessie Gietl* |
|---|---|---|
| Date | Printed Name | Signature |