ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC., et al.,<br><br>        Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**DEFENDANT CLOUDFLARE, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY OF BARBARA LUNA PURSUANT TO FEDERAL RULE OF EVIDENCE 702 AND FEDERAL RULE OF CIVIL PROCEDURE 37**<br><br>Date:        April 12, 2018<br>Time:       8:30 A.M.<br>Courtroom:  9D<br>Judge:      Hon. George H. Wu<br><br>Trial Date:  April 24, 2018 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

FACTUAL BACKGROUND ..................................................................................... 3

    I.    DR. LUNA'S OPINIONS ON SAVED EXPENSES AND EARNED PROFITS FROM INFRINGEMENT. ....................... 3

    II.    DR. LUNA'S LATE SUPPLEMENTAL REPORT. ............................ 5

LEGAL STANDARD ................................................................................................ 6

    I.    FEDERAL RULE OF EVIDENCE 702 ................................................ 6

    II.    FEDERAL RULE OF CIVIL PROCEDURE 37 ................................. 7

ARGUMENT .............................................................................................................. 8

    I.    DR. LUNA'S OPINION ON CLOUDFLARE'S "SAVED EXPENSES" IS INADMISSIBLE UNDER RULE 702. ....................................................................................... 8

    II.    DR. LUNA'S OPINION ON "PROFITS REAPED" BY CLOUDFLARE ALSO FAILS TO SATISFY RULE 702. ..................................................................................... 11

    III.    DR. LUNA'S UNTIMELY SUPPLEMENTAL REPORT IS INADMISSIBLE UNDER RULE 37. ............................................. 12

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Agrusa,*
  No. 2:15-cv-07270, 2016 WL 7665767 (C.D. Cal. July 20, 2016) ...................... 8

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993) ................................................................................ 1, 2, 6, 7

*Estate of Barabin v. AstenJohnson, Inc.,*
  740 F.3d 457 (9th Cir. 2014) ............................................................................ 6, 10

*Jinro Am. Inc. v. Secure Investments, Inc.,*
  266 F.3d 993 (9th Cir. 2001) ............................................................................ 6, 7

*Luke v. Family Care and Urgent Medical Clinics,*
  323 F. App'x 496 (9th Cir. 2009) .................................................................... 13

*Man Mach. Interface Techs., LLC v. Vizio, Inc.,*
  No. 10-cv-0634, 2012 WL 13014967 (C.D. Cal. Feb. 27, 2012) ...................... 10

*Ohio Six Ltd. v. Motel 6 Operating L.P.,*
  No. 11-cv-08102, 2013 WL 12125747 (C.D. Cal. Aug. 7, 2013) ................ 13, 14

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) .......................................................................... 9

*Plumley v. Mockett,*
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) .......................................................... 7, 14

*Waymo LLC v. Uber Techs., Inc.,*
  No. 17-cv-00939, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ................. 10, 11

*Wolf v. Hewlett Packard Co.,*
  No. 15-cv-01221, 2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) ........................ 11

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.,*
  No. 07-cv-8298, 2010 WL 11505684 (C.D. Cal. Jan. 25, 2010),
  *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013) .................................................. 11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
  259 F.3d 1101 (9th Cir. 2001) .......................................................................... 7

**STATUTES AND RULES**

Fed. R. Civ. P. 26 .................................................................................................. 7, 12, 13
Fed. R. Civ. P. 37 ........................................................................................................ *passim*
Fed. R. Evid. 701 .................................................................................................................. 6
Fed. R. Evid. 702 ........................................................................................................ *passim*
Fed. R. Evid. 403 ............................................................................................................ 7, 9

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT Defendant Cloudflare, Inc. ("Cloudflare") will and hereby does move the Court to exclude expert testimony of Dr. Barbara C. Luna pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 37. Dr. Luna offers opinions that fail to meet the foundational requirements of admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). She also offers untimely opinions inadmissible under Rule 37's self-executing sanction for late-disclosed expert testimony. Cloudflare thus seeks an order from the Court excluding these inadmissible opinions.

Cloudflare's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Andrew Bridges in support of Defendant's motions *in limine* and motions to exclude ("Bridges Decl."), the pleadings and other papers on file with the Court in this matter, and such further argument and evidence which may be presented at or before the pretrial conference.

## MEMORANDUM OF POINTS AND AUTHORITIES

Cloudflare brings this motion to exclude certain opinions and testimony of Plaintiff ALS Scan's damages expert, Dr. Barbara Luna, under both (1) the Court's gatekeeping role under *Daubert*, and (2) Rule 37's self-executing sanction for late-disclosed expert testimony.

ALS has no damages expert for its case in chief. Instead, it identified Dr. Luna solely in rebuttal to Cloudflare's damage expert, Jeffrey Kinrich. Mr. Kinrich offered opinions addressing certain factors that a jury may consider in assessing statutory damages in copyright cases, including expenses saved and profits earned from the alleged infringement. In rebuttal, Dr. Luna offers opinions that far exceed the scope of her expertise, rely on obviously flawed factual assumptions, and introduce personal opinions that contradict governing legal standards. Moreover, on the day of her deposition, well after the deadline to disclose rebuttal testimony, she provided a supplemental report with new opinions that are equally flawed, and also inexcusably and prejudicially late.

*First*, Dr. Luna's testimony regarding "expenses saved" and "profits earned" by Cloudflare from its alleged contributory copyright infringement is neither relevant nor reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). She bases her "expenses saved" conclusion not on any financial information connected to the alleged infringement in this case, but on her personal belief that Cloudflare should have spent *tens of millions of dollars* to moderate content on *over seven million websites*—something that no copyright case or the DMCA would ever require. She admits that she lacks any specialized knowledge or expertise to opine on these subjects. Worse, she bases that opinion on a factually baseless comparison to per-person costs that *Facebook* spends to moderate its users' content on its website—a point of comparison having nothing to do with copyright claims or the facts of this case.

Likewise, for profits earned, Dr. Luna simply parrots generalized benefits that Cloudflare may receive from providing services for free, with no analysis or evidentiary foundation for what benefits, if any, Cloudflare received *from the websites at issue here*. Dr. Luna's opinions are not based on sufficient facts or reliable methodology, and her testimony thus fails to meet even the thresholding showing of admissibility under Federal Rule of Evidence 702.

*Second*, the Court should exclude the new opinions and materials that Dr. Luna disclosed in her untimely Supplemental Expert Report because they are inadmissible under the self-executing sanctions of Federal Rule of Civil Procedure 37(c). With no justification, ALS served Dr. Luna's "supplemental" report one month after the deadline, and on the same day as Dr. Luna's deposition. In her supplemental report, she also attaches letters from industry groups. This late disclosure prejudices Cloudflare, which could not review and respond to the new materials and opinions within the Court's schedule.

Accordingly, the Court should exclude Dr. Luna's opinions (1) on "expenses saved" by Cloudflare, (2) on "profits earned" by Cloudflare, and (3) disclosed in her untimely supplemental report.

**FACTUAL BACKGROUND**

**I.  DR. LUNA'S OPINIONS ON SAVED EXPENSES AND EARNED PROFITS FROM INFRINGEMENT.**

The Court ordered the parties to serve expert disclosures and opening reports by November 15, 2017, to serve rebuttal expert disclosures and reports by December 15, 2017, and to complete all expert discovery by January 18, 2018. (Dkt. 256.)

On the December 15, 2017 deadline for rebuttal expert disclosures, ALS served Dr. Luna's Expert Report. In it, she responds to three of the four factors that Cloudflare's damages expert analyzed in discussing statutory damages. (Bridges

Decl. ¶ 5, Ex. 3 ¶¶ 17-18.) She considers "(a) expenses saved by the defendant, (b) profits reaped by the defendant, and (d) the value of the copyright." (*Id.* ¶ 18.)

For "expenses saved" by Cloudflare from the alleged contributory infringement of ALS Scan's works, Dr. Luna opines that "Cloudflare has saved approximately $37 million in expenses over the past 4.5 years" by not hiring a department of 28 content moderators specialized in copyright law to monitor content on the millions of third-party websites that use Cloudflare's services. (*Id.* ¶¶ 19a, 23-29.)

How does she arrive at this astounding number? First, she bases her conclusion on a determination that "large internet companies do perform content moderation." (*Id.* ¶ 23.) She does not define or explain what constitutes a "large internet" company, but she points to only one: Facebook. She then calculates the number of moderators that Facebook employs per Facebook *user*. (*Id.* ¶ 24.) Next, she applies that ratio to the number of *websites* that Cloudflare supports (seven million). (*Id.* ¶ 25.) Thus, if Facebook needs 1 moderator for every 258,667 individual *people* who use Facebook, Dr. Luna reasons that Cloudflare should have hired 1 moderator for every 258,667 *websites*. (*Id.* ¶¶ 24-25.) But instead of looking at how much Facebook spends per moderator, she applies an estimated annual cost of hiring an in-house attorney specialized in copyright law. (*Id.* ¶¶ 26-27.) From this, she arrives at $37 million in supposed savings to Cloudflare from the infringement on 17 websites in this case. (*Id.* ¶ 29.). She offers no apportionment of that sum to the particular websites involved in this case.

Next, for the "profits reaped" by Cloudflare, Dr. Luna speculates that Cloudflare receives some value from providing free services to websites. (*Id.* ¶¶ 31-32, 40b.) Dr. Luna challenges Cloudflare's damages expert's testimony that Cloudflare collected revenue only from five of the allegedly infringing websites, noting that the "notion that Cloudflare received no value, even from the 'free' sites is incorrect." (*Id.* ¶¶ 30-31.) But she does not measure that purported

value, or cite to any facts about actual profits earned from providing free services to specific websites that ALS accuses of infringement.

Dr. Luna qualifies her opinions by explaining that she did not review all the data that counsel for ALS provided to her because ALS provided it to her with "two weeks to do [her] report, so [she] was scrambling to get it done." (*Id.* ¶ 15; Bridges Decl. ¶ 9, Ex. 5 at 29:5-19.)

## II.   DR. LUNA'S LATE SUPPLEMENTAL REPORT.

At ALS's counsel's request, the parties scheduled Dr. Luna's deposition for January 19, 2018, the day after the close of expert discovery. On January 18, ALS served a partial Supplemental Expert Report of Dr. Luna in which she offered new opinions. (Bridges Decl. ¶ 6.) The next day, the morning of Dr. Luna's deposition, ALS served Dr. Luna's completed Supplemental Expert Report, along with six new exhibits. (*Id*.)

In her supplemental report, Dr. Luna offers several new opinions. First, she nearly doubles her wild number regarding Cloudflare's allegedly avoided expenses, now opining that Cloudflare saved "37 million *to $61 million* in expenses" by not employing a team of copyright experts to monitor content on millions of websites. (Bridges Decl. ¶ 7, Ex. 4 ¶ 21a (emphasis added).) Apparently not satisfied with Facebook, she "calculates" a new amount by pointing to YouTube's content moderators, who allegedly review videos that its users upload to YouTube's platform, and applying that ratio of moderators to individual YouTube users to the number of websites that use Cloudflare. (*Id.* ¶¶ 32-37.) She opines that Cloudflare "avoid[s] the expense of human content moderation" by directing complainants to use of an automated abuse web form. (*Id.* ¶¶ 38-42.) Dr. Luna again does not explain the assumption underlying her opinion—namely, why YouTube is a comparable model.

Second, in her late report, Dr. Luna relies on letters from third-party trade organizations that purport to describe Cloudflare's services, claiming that

Cloudflare provides reverse proxy functionality, "hiding IP addresses of hosts." (*Id.* ¶¶ 10b, 16, 21e.)[1] Dr. Luna does not disclose any independent assessment of this point related to damages or how it rebuts Mr. Kinrich. Nor does she claim that experts in her field rely on similar materials. Instead, her supplemental report is an eleventh hour attempt to deliver unreliable hearsay statements with the imprimatur of expert testimony.[2]

## LEGAL STANDARD

### I. FEDERAL RULE OF EVIDENCE 702

Expert opinion evidence must "not only [be] relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). Federal Rule of Evidence 702 requires that expert's testimony be (1) "scientific, technical, or other specialized knowledge" that "will help the trier of fact," (2) "based on sufficient facts or data," (3) "the product of reliable principles and methods," and (4) a product of reliable application of those "principles and methods to the facts of the case." The Federal Rules of Evidence assign district courts a "gatekeeper" duty to evaluate and exclude expert testimony that does satisfy these requirements. *See Daubert*, 509 U.S. at 596-97; *Estate of Barabin*, 740 F.3d at 463. The party seeking admission of expert testimony bears the burden of establishing its admissibility. *See Estate of Barabin*, 740 F.3d at 466.

---

[1] Cloudflare also moves to exclude the opinions of these third-party organizations pursuant to Fed. R. Civ. P. 37 and Fed. R. Evid. 701 and 702 because ALS did not disclose these organizations as expert witnesses who may opine on topics that require specialized expertise. *See* Cloudflare's Motion *in Limine* No. 1.

[2] That a witness comes "before the jury cloaked with the mantle of an expert" is significant because the expert's statements are likely "to carry special weight with the jury." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (finding testimony unreliable where the expert "provided no empirical evidence or studies" to support his generalizations and only cited articles and anecdotes that were hearsay).

In addition, the Supreme Court has stated that a trial judge must be particularly concerned about Rule 403 with regard to expert testimony because of the difficulty in evaluating expert evidence. *Daubert*, 509 U.S. at 595. Expert testimony has potential to mislead the jury, since the jury may attach more significance to the testimony than is reasonably warranted. *Jinro*, 266 F.3d at 1005.

## II. FEDERAL RULE OF CIVIL PROCEDURE 37

The Federal Rules of Civil Procedure require that each testifying expert provide a written report setting forth "a complete statement of all opinions" of the expert and "the facts or data considered by the witness in forming" the opinions. Fed. R. Civ. P. 26(a)(2)(B). A party must disclose such reports as the court orders or, absent a court order, in accordance with Rule 26, which requires a party to serve rebuttal expert testimony "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D).

If it fails to provide this information as required by Rule 26(a), Rule 37 imposes a "self-executing sanction" that prohibits the party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *id.*, advisory committee's notes. Rule 37 is designed to "give[] teeth" to the expert witness disclosure requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Courts thus exclude late expert opinions under Rule 37 unless the party offering that evidence meets its burden of showing that its failure was substantially justified or harmless. *Id.* at 1105-07; *see also Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1064 (C.D. Cal. 2010).

# ARGUMENT

## I. DR. LUNA'S OPINION ON CLOUDFLARE'S "SAVED EXPENSES" IS INADMISSIBLE UNDER RULE 702.

ALS has elected statutory damages. In a statutory damages case, the fact finder may consider the expenses saved and the profits reaped by the defendant from its allegedly infringing activity, among other factors, in determining the amount of statutory damages to award. *See, e.g.*, *Adams v. Agrusa*, No. 2:15-cv-07270, 2016 WL 7665767, at *3 (C.D. Cal. July 20, 2016). Thus, for example, where a defendant profited from the sale of infringing materials, or avoided the expense of developing the materials, those earnings and savings may be considered in assessing statutory damages. *See id.* Against this backdrop, Dr. Luna's personal view that Cloudflare should have spent up to $61 million to avoid its alleged contribution to copyright infringement across all of its customers' websites is neither relevant to an award of statutory damages nor reliable under Rule 702.

Dr. Luna conceded at her deposition that she is not an expert in Internet technology, website content moderation, or in notice and takedown practices for claimed copyright infringement. (Bridges Decl. ¶ 9, Ex. 5 at 21:12-25, 23:9-12.) Instead, Dr. Luna bases her opinion on her own personal belief that Cloudflare is morally obligated to screen content on its users' websites. More specifically, she opines that Cloudflare has a "social responsibility" to "the public and to companies whose sites got infringed" to implement content moderation. (*Id.* at 36:14-37:2, 44:19-25.) And she reiterates that while Cloudflare is not the host of the content at issue and cannot remove it from any websites, it has "a responsibility to the public" to monitor the content anyway. (*Id.* at 39:1-12.)

Dr. Luna's personal beliefs regarding Cloudflare's societal obligations are not relevant to determining statutory damages. Indeed, far from offering specialized knowledge to assist the fact finder in determining statutory damages, her testimony will simply confuse the fact finder as to the correct *legal* standard for

infringement. *See* Fed. R. Evid. 702(a); *see also* Fed. R. Evid. 403. The Ninth Circuit imposes liability on service providers who, with *actual* knowledge of specific infringing material available using their systems, fail to take simple measures to prevent further damage to the copyrighted works. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). But Dr. Luna suggests that to avoid infringement, Cloudflare was required to hire a team of copyright experts *to obtain knowledge* as to whether infringement was occurring in the first place, and to implement a costly and highly complex content moderation process. This is anything but a "simple measure," and it would turn the requirement of "*actual* knowledge" on its head.

Moreover, Dr. Luna fails to ground her testimony in "facts or data" and does not apply "reliable principles and methods." *See* Fed. R. Evid. 702(b)-(d). Instead, she assumes facts about other "large Internet companies" and then applies an apples-to-oranges comparison between Cloudflare and those markedly different companies. For example, Dr. Luna assumes that Cloudflare does not monitor content in a manner "similar to other similar companies that I'll say support other websites." (Bridges Decl. ¶ 9, Ex. 5 at 35:4-6.) When asked to explain her determination that Facebook and YouTube are "similar" to Cloudflare, however, she was incoherent. Lacking an even basic knowledge of the websites' operations, she testified that she chose them because "YouTube gets websites from all over the place, and Facebook also gets, again, websites from all over the place. So they're, I guess, better known, let's put it that way." (*Id.* at 35:21-24.) Dr. Luna believes Facebook and YouTube "have a lot of websites going through [them]" like a "[p]ass-through type of network." (*Id.* at 39:18-23.)

Of course, neither Facebook nor YouTube have websites "going through" them. And neither of them retain copyright experts to "moderate" content for alleged infringement. Rather, Facebook and YouTube employ DMCA notice and

takedown processes under 17 U.S.C. § 512(c), using an automated web form. (Bridges Decl. ¶ 11, Ex. 7.)

Dr. Luna acknowledged that Facebook and YouTube—unlike Cloudflare—can moderate content that their users post to their respective platforms for violations of their internal rules, and can take down the offending content because they host it. (Bridges Decl. ¶ 9, Ex. 5 at 37:24-38:22.) She also acknowledged that Facebook and YouTube do not moderate content on third-party websites, which she suggests Cloudflare should do here. (*Id.* at 48:16-21.)

She acknowledges that, in contrast to Facebook and YouTube, Cloudflare does not host the content at issue. (*Id.* at 39:1-5.) She does not know whether the content is still available on a host website if Cloudflare stops service to that website (*Id.* at 41:3-7, 42:15-43:15), but *critically*, she opines that if it is still available—as is the case—it would not make sense for Cloudflare to spend tens of millions to hire expert content moderators. (*Id.* at 41:8-15; Bridges Decl. ¶ 10, Ex. 6 at 100:7-11 ("So if there were unauthorized copies of ALS Scan images on a website, and Cloudflare stopped providing any services, users could still go to that website and see those images? A: That's true, yes.").)

Ultimately, Dr. Luna premises her entire opinion regarding saved expenses on baseless assumptions and faulty comparisons. *See Estate of Barabin*, 740 F.3d at 461, 464 (finding the district court abused its discretion by allowing the jury to evaluate expert's testimony after it had noted "marked differences between the conditions of [the expert's] tests and the actual conditions" at issue); *Man Mach. Interface Techs., LLC v. Vizio, Inc.*, No. 10-cv-0634, 2012 WL 13014967, at *8 (C.D. Cal. Feb. 27, 2012) (excluding Dr. Luna's opinions where she relied on comparables that were "fundamentally different" from the matter at hand). Accordingly, the Court should thus not admit it. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939, 2017 WL 5148390, at *2, *5 (N.D. Cal. Nov. 6, 2017) (excluding damages expert's testimony where he "did not apply any coherent

principle, methodology, theory, or technique, much less one possessing any discernible indicia of reliability" but instead simply made arguments that the lawyers could have made).

## II. DR. LUNA'S OPINION ON "PROFITS REAPED" BY CLOUDFLARE ALSO FAILS TO SATISFY RULE 702.

Dr. Luna's testimony regarding "profits reaped" by Cloudflare is similarly irrelevant and unreliable. Dr. Luna broadly opines that Cloudflare receives some value from providing free services to websites *in general*, untethered to its provision of services to websites at issue here or money it received from them. (Bridges Decl. ¶ 5, Ex. 3 ¶¶ 31-32, 40b.) She describes, for example, that Cloudflare may obtain data on attacks, receive customer referrals, recruit potential employees, use volunteer testers, and achieves scale by servicing its free customers. (*Id.* ¶ 31.) But she fails to address what benefits, if any, Cloudflare received *from the allegedly infringing websites*. Her testimony regarding benefits that Cloudflare may hypothetically receive from other websites is not relevant.

Nor does Dr. Luna apply any facts or methodologies to assess the value received by Cloudflare from the websites in question. She simply speculates that Cloudflare could monetize its services to the free accounts among them. (*Id.* ¶ 32.) Indeed, despite the data available to her, she does not discuss what value Cloudflare did or could have earned from the websites at issue. *Cf. Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. 07-cv-8298, 2010 WL 11505684, at *4 (C.D. Cal. Jan. 25, 2010) (damages expert's opinions were "flawed and inadmissible" because "they were not limited to [the] alleged wrongdoing"), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013). Her testimony does not survive the foundational requirements of Rule 702. *See Waymo LLC*, 2017 WL 5148390, at *6 (excluding damages expert's analysis because it was simply "uncritical acceptance of other evidence," but his testimony could muddy the evidence "with his façade of expertise"); *Wolf v. Hewlett Packard Co.,* No. 15-cv-01221, 2016 WL 7743692, at *7 n.3 (C.D. Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Sept. 1, 2016) (excluding testimony because the expert's "assurance[s]" that he could model damages, instead of describing his actual methodology, was inadmissibly incomplete).

### III. DR. LUNA'S UNTIMELY SUPPLEMENTAL REPORT IS INADMISSIBLE UNDER RULE 37.

ALS may not offer the opinions Dr. Luna disclosed in her Supplemental Report because it failed to disclose them in accordance with the Court's Schedule and its failure was not "substantially justified" or "harmless." *See* Fed. R. Civ. P. 26(a)(B), 37(c).

As described above, Dr. Luna offers several new opinions in her untimely Supplemental Expert Report, including that Cloudflare saved up to $61 million in expenses by not moderating content on its customers' websites for copyright infringement, and that—according to third-party organizations—Cloudflare does not properly police content on its customers' websites.

Dr. Luna did not disclose these opinions in her rebuttal expert report, which the Court ordered ALS to serve one month after Cloudflare's opening expert report. Nor did ALS seek leave of the Court for an extension of that deadline. Instead, ALS waited to disclose Dr. Luna's opinions until one month after its deadline and after the close of expert discovery. And it served the report on the same day as Dr. Luna's deposition, blocking Cloudflare's ability to investigate and question her about the bases for her testimony and her newly cited exhibits.

ALS provides no justification, let alone a substantial justification, for its delayed disclosure. Dr. Luna could have reviewed the information she used to prepare her new opinions before the December 15, 2017 deadline. For example, she appends six new exhibits to her amended report: a December 4, 2017 blog post; letters dated October 7 and 21, 2016 October 5, 2015; an August 2016 report that Cloudflare's damages expert discussed in his opening report; deposition testimony from September 15, 2017; discovery responses served on September 14, 2017; and

a print-out from Cloudflare's website. (Bridges Decl. ¶ 7, Ex. 4 ¶ 10.) Dr. Luna does not dispute that this information was available to her earlier. Instead, ALS's sole justification for the late disclosure is that Dr. Luna was busy. (Bridges Decl. ¶ 9, Ex. 5 at 27:9-13.) That is insufficient. *Cf. Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. 11-cv-08102, 2013 WL 12125747, at *15 n.96 (C.D. Cal. Aug. 7, 2013) (finding justification for disclosing report three days before the expert's deposition inadequate where the proponent simply argued that "it was not possible for them to disclose his report at an earlier time").

Nor can ALS show that its untimely disclosure was harmless. It prevented Cloudflare from consulting with its experts, or investigating Dr. Luna's new opinions before her deposition. It also prevented Cloudflare from retaining and preparing a rebuttal report within the Court's schedule. *See Ohio Six Ltd.*, 2013 WL 12125747 at *16 (excluding late testimony and observing that the delay "impeded" other party's opportunity to have its expert review and advise on report). Thus, Cloudflare was prejudiced by Plaintiff's late disclosure of new materials and expert opinions after the close of discovery and on the eve of trial.

That ALS tries to label the report as "supplemental" is unavailing. A party may "supplement or correct" a disclosure that is "incomplete or incorrect." Fed. R. Civ. P. 26(e). This does not extend to *new* opinions, and courts do not allow parties to evade the Rule 26's disclosure requirements by simply couching untimely disclosed expert opinions as "supplemental." *See Luke v. Family Care and Urgent Medical Clinics*, 323 F. App'x 496 (9th Cir. 2009) (finding that the district court did not abuse its discretion in excluding expert declarations on a new theory that plaintiffs disclosed more than two months after the deadline for rebuttal disclosures, four days before the close of discovery and ten weeks before trial). Otherwise, Rule 26 would "give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report" and the parties could continue to exchange supplemental reports with "no finality to expert reports."

*Plumley*, 836 F. Supp. 2d at 1062 (finding supplemental expert report served after the court's deadlines for expert disclosures and close of discovery untimely).

"Federal courts apply [Rule 37] strictly and *require* exclusion of undisclosed evidence absent harmless error or substantial justification." *Ohio Six Ltd.*, 2013 WL 12125747, at *14 (citation omitted, emphasis in original). Because ALS cannot meet its burden of overcoming Rule 37's sanction, the Court should exclude Dr. Luna's Supplemental Report.

## CONCLUSION

At a minimum, expert testimony must be based on "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). It must also be rooted in facts and based on reliable methodology. Fed. R. Evid. 702(b)-(d). Dr. Luna's testimony regarding "expenses saved" and "profits earned" satisfies none of these threshold requirements. And her "supplemental" report is inadmissible because the late disclosure of her new opinions is unjustified and prejudicial. Cloudflare thus respectfully requests that the Court exclude those portions of Dr. Luna's testimony.

Respectfully submitted,

Dated: March 22, 2018          FENWICK & WEST LLP

By:   */s/ Andrew P. Bridges*
      Andrew P. Bridges
      Attorneys for Defendant
      CLOUDFLARE, INC.