ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
CLOUDFLARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLOUDFLARE, INC., et al., <br><br> Defendants. | Case No.: 2:16-cv-05051-GW-AFM <br><br> **DECLARATION OF ANDREW P. BRIDGES IN SUPPORT OF CLOUDFLARE, INC.'S MOTIONS *IN LIMINE* AND MOTIONS TO EXCLUDE EXPERT TESTIMONY** <br><br> Date: April 12, 2018 <br> Time: 8:30 A.M. <br> Courtroom: 9D <br> Judge: Hon. George H. Wu <br> Trial Date: April 24, 2018 |

1  I, Andrew P. Bridges, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

2  1. I am a member of the bars of the States of California and Georgia. I am a partner in the law firm of Fenwick & West LLP, counsel of record for Defendant Cloudflare, Inc. ("Cloudflare"). I submit this declaration in support of Cloudflare's motions *in limine* and motions to exclude expert testimony in order to identify and authenticate exhibits with brief descriptions of the exhibits, including excerpts of deposition transcripts, as a reference to guide the reader to relevant exhibits or excerpts in light of their volume. I have personal knowledge of the matters in this declaration.

### Excerpts of Expert Reports Served by ALS

1. ALS disclosed one expert, Dr. Shahram Ghandeharizadeh, for its case in chief. It disclosed one expert, Dr. Barbara Luna, in rebuttal to Cloudflare's damages expert. It did not disclose rebuttal expert testimony for the other expert testimony disclosed by Cloudflare.

*Shahram Ghandeharizadeh*

2. **Exhibit 1** is the expert report of Dr. Shahram Ghandeharizadeh, ALS's purported technical expert, served on November 15, 2017. Dr. Ghandeharizadeh purports to consider whether Cloudflare provided "significant technical contributions to infringement." To reach his conclusions, he "assume[s] the truth of the factual averments in ALS's Third Amended Complaint." Dr. Ghandeharizadeh also notes that he "was asked to and did review letters from copyright owners to the United States Copyright Office and to the United States Trade Representative to gain background understanding of the concerns and issues of copyright owners with respect to pirate web sites." In the list of documents and information he relied on, Dr. Ghandeharizadeh lists "STM letter March 31, 2016 to United States Copyright Office," "MPAA letter October 7, 2016 to Office of the US Trade Representative," and "RIAA letter October 5, 2015 to Office of the US Trade Representative."

3. The parties scheduled Dr. Ghandeharizadeh's deposition for January 18, 2018. On January 17, ALS served an additional report of Dr. Ghandeharizadeh in which he added a new opinion.

4. **Exhibit 2** is the supplemental expert report of Dr. Shahram Ghandeharizadeh served on January 17, 2018. Dr. Ghandeharizadeh opines that "Cloudflare may employ software techniques" to detect works that ALS claims are infringing, but he does not explain how Cloudflare would technically or practically implement these techniques.

*Barbara Luna*

5. **Exhibit 3** consists of excerpts from the expert report of Dr. Barbara C. Luna, damages expert for ALS, served on December 15, 2017.

    a. **¶ 15:** Dr. Luna did not review all the data provided to her by ALS.

    b. **¶¶ 17-18:** Dr. Luna responds to three of four factors analyzed by Cloudflare's damages expert in discussing statutory damages. She considers "(a) expenses saved by the defendant, (b) profits reaped by the defendant, and (d) the value of the copyright."

    c. **¶¶ 19(a), 23-29:** Dr. Luna opines that Cloudflare saved $37 million in expenses over the past 4.5 years by not hiring 28 copyright law specialists to monitor content on the 7 million websites that use Cloudflare's services.

    d. **¶¶ 31-32, 40(b):** Dr. Luna describes benefits that Cloudflare may receive from certain websites that use its free services.

6. At ALS's counsel's request, the parties scheduled Dr. Luna's deposition for January 19, 2018. On January 18, ALS served a partial Supplemental Expert Report of Dr. Luna in which she offered new opinions. On January 19, ALS served Dr. Luna's completed Supplemental Expert Report and six new exhibits.

7. **Exhibit 4** consists of excerpts from the Supplemental Expert Report of Dr. Barbara C. Luna, damages expert for ALS, served on January 19, 2018.

    a. **¶ 10:** Dr. Luna describes some of the additions to her report and notes six new exhibits that she considered. The six new exhibits are "YouTube Content Moderators research" (a blog post dated December 4, 2017), "Various letters from the Motion Picture Association of America, RIAA, and Cloudflare" (dated October 7 and 21, 2016 and October 5, 2015), "an IBISWorld report on Adult & Pornographic Websites" (dated August 2016), "Deposition of Justin Paine" (taken on September 15, 2017), "Cloudflare's Supplemental Responses to Interrogatories" (served September 14, 2017), and "Cloudflare Abuse Policy from website."

    b. **¶ 21(a):** Dr. Luna opines that Cloudflare saved up to $61 million in expenses over the past 4.5 years.

    c. **¶ 32-37:** Dr. Luna describes YouTube's content moderation and purports to apply the same ratio of moderators YouTube employers per individual YouTube users to the number of websites that use Cloudflare's services.

    d. **¶ 38-42:** Dr. Luna claims that Cloudflare avoids the expense of content moderation by humans.

## Expert Witnesses for Cloudflare

8. Cloudflare served expert witness disclosures on November 15, 2017 identifying the expert witnesses it may use at trial and disclosing the topics on which its expert witnesses may testify. It served rebuttal expert witness disclosures on December 15, 2017 in response to the opening report of Dr. Shahram Ghandeharizadeh.

**Excerpts of Depositions of Expert Witnesses for ALS**

*Barbara Luna*

9. **Exhibit 5** consists of excerpts from the transcript of the deposition of Dr. Barbara C. Luna, damages expert for ALS, on January 19, 2018.

   a. **21:12-25, 23:9-12:** Dr. Luna is not an expert in Internet technology, notice and take down practices related to copyright issues, or content moderation of websites or online services.

   b. **27:9-13:** Dr. Luna explains that she was busy between December 15, 2017 and her deposition, and that her schedule prevented her from timely providing her new opinions.

   c. **29:5-19:** Dr. Luna put "limiting conditions" in her report because she had two weeks to complete the report and was "scrambling to get it done."

   d. **35:4-6:** Dr. Luna claims that Cloudflare saved expenses by not having similar monitoring services to Facebook and YouTube who she believes "support other websites."

   e. **35:21-24:** Dr. Luna believes YouTube and Facebook get "websites from all over the place" and she chose them as examples because they are "better known."

   f. **36:14-37:2:** Dr. Luna believes Cloudflare should implement a content moderation program because it has "a responsibility to the public and companies whose content is infringed."

   g. **37:24-38:22:** Dr. Luna acknowledges that Facebook and YouTube moderate content that their users post to their platforms for violations of their rules and can take down offending content because they host it.

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | h. | **39:1-12:** Dr. Luna acknowledges that Cloudflare does not host content, but still believes it is "doing the posting" and has "a responsibility to the public." |
| | i. | **39:18-23:** Dr. Luna believes Facebook and YouTube "have a lot of websites going through [them]" and characterizes them as "pass-through type of" networks. |
| | j. | **41:3-7, 42:15-43:15:** Dr. Luna does not know whether an image is still on a website if Cloudflare stops providing service to the website. She does not know whether Cloudflare has the ability to take down an image from a website and does not know whether a website will still be available if Cloudflare terminates service to it. |
| | k. | **41:8-15:** Dr. Luna acknowledges that it would not make sense for Cloudflare to spend millions of dollars to hire experts to moderate content if that content would still be available on the website regardless of whether Cloudflare provided services to the website or not. |
| | l. | **44:14-25:** Dr. Luna acknowledges that, without retaining a team of experts who understand copyright law and can analyze the issues, Cloudflare would not know whether a claim of infringement is accurate. Dr. Luna still believes that Cloudflare has a "social responsibility to the public." |
| | m. | **48:16-21:** To Dr. Luna's knowledge, Facebook and YouTube do not moderate content on other websites. |

*Shahram Ghandeharizadeh*

10. **Exhibit 6** consists of excerpts from the transcript of the deposition of Dr. Shahram Ghandeharizadeh, ALS's purported technical expert, on January 18, 2018.

    a.    **17-23-18:22:** Dr. Ghandeharizadeh knew about image recognition technology, and "knew it very well," before the deadline for expert disclosures.

    b.    **21:14-23:** Dr. Ghandeharizadeh spent approximately ten hours on his supplemental report and could have prepared it before the Court's deadline for expert disclosures.

    c.    **100:7-11:** Dr. Ghandeharizadeh acknowledges that, if there were unauthorized ALS works on a website, and Cloudflare stopped providing any services for the website, users could still go to that website and see those works.

### Other Exhibits

11. **Exhibit 7** consists of screenshots of Facebook and Google's respective online gateways to their web forms for submitting notifications of claimed copyright infringement, available at https://www.facebook.com/help/contact/634636770043106 and https://support.google.com/youtube/answer/2807622?hl=en.

12. **Exhibit 8** is an excerpt of Cloudflare, Inc.'s Second Set of Interrogatories to ALS. For the purpose of its interrogatories, Cloudflare defined "Copyrighted Work" as "any or all of YOUR allegedly copyright-protected photographic images, image sets, videos, websites, or other items YOU contend were DIRECTLY INFRINGED, as set forth in the COMPLAINT." Cloudflare's Interrogatory No. 9 asked ALS to "For each COPYRIGHTED WORK in this case, please IDENTIFY: (a) the name or other unique identifier of the work; (b) the registration number of every copyright registration pertaining to the work; (c) each page of the documents you have produced that constitute or contain the work; (d) the full Uniform Resource Locators of all materials or activities allegedly infringing the work for which you claim CLOUDFLARE bears liability; and (e) the notices of

alleged copyright infringement (identified by date) that you claim to have sent to CLOUDFLARE pertaining to alleged infringements of that work."

13. **Exhibit 9** is an excerpt of Plaintiff's Supplemental Responses to Second Set of Interrogatories From Defendant Cloudflare, Inc. ALS indicates, in its signed supplemental response, that it "attaches hereto and incorporates herein spreadsheets summarizing the information already produced to Cloudflare . . . ."

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 22nd day of March, 2018.

By:    */s/ Andrew P. Bridges*
        Andrew P. Bridges