# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 16-5051-GW (AFMx) | Date | March 30, 2018 |
|---|---|---|---|
| Title | *ALS Scan, Inc. v. Cloudflare, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**  **IN CHAMBERS - RULING ON DEFENDANT STEADFAST NETWORKS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF ALS SCAN, INC. RE: DMCA [338]; and DEFENDANT STEADFAST NETWORKS, LLC'S MOTION FOR SUMMARY JUDGMENT (COUNTS II, III, & VI) [343]**

Attached hereto is the Court's Ruling on Defendant Steadfast, Inc.'s Motion for Partial Summary Judgment Regarding Liability and the Safe Harbor Affirmative Defense. The Court would GRANT Defendant's MSJ I. The Court would dismiss all claims against Steadfast with prejudice. The Court would DENY the MSJ II as moot.

:

Initials of Preparer    JG

***ALS Scan, Inc. v. Cloudflare, Inc., et al.***, Case No. CV-16-5051-GW-(AFMx)
Ruling on Defendant Steadfast, Inc.'s Motion for Partial Summary Judgment Regarding Liability
and the Safe Harbor Affirmative Defense

## I. __Background__

ALS Scan, Inc. ("Plaintiff") sues Cloudflare, Inc. ("Cloudflare"); Dolphin Media Ltd. ("Dolphin"); Hivelocity Ventures Corporation ("Hivelocity"); and Steadfast Networks, LLC ("Steadfast") (collectively, "Defendants")[1] for various claims related to Defendants' alleged infringement of Plaintiff's copyrighted and trademarked works.  *See generally* Third Am. Compl. ("TAC"), Docket No. 148.  The TAC asserts six causes of action: (1) direct copyright infringement, against Dolphin; (2) contributory copyright infringement, against all Defendants; (3) vicarious copyright infringement, against Dolphin, Hivelocity, and Steadfast; (4) direct trademark infringement, against Dolphin; (5) direct trademark counterfeiting, against Dolphin; and (6) contributory trademark infringement, against Dolphin, Hivelocity, and Steadfast.  *Id.*

Plaintiff owns a library of copyrighted and trademarked works of adult entertainment.  *Id.* ¶ 3.  Plaintiff alleges that its works are repeatedly infringed by pirate Internet sites, which display Plaintiff's works without its permission.  *Id.* ¶ 4.  These sites are allegedly supported by third-party service providers that continue doing business with the sites even after receiving actual notices of infringement from Plaintiff.  *Id.* ¶ 6.

Plaintiff alleges that Steadfast operates servers on which pirate sites reside and provides domain name system ("DNS") service to pirate sites, including imagebam.com.  *Id.* ¶¶ 13, 25. 46.  Plaintiff alleges that Steadfast physically hosts these pirate sites on its servers, routes internet traffic to those sites, and is in control of a master switch that keeps those sites (including imagebam.com) online and available.  *Id.* ¶ 50.  Plaintiff has allegedly sent numerous notifications to Steadfast alerting it to infringing content on imagebam.com, but Steadfast has failed to implement or enforce a repeat infringer policy by removing imagebam.com from its servers.  *Id.* ¶ 47.  Plaintiff sues Steadfast for contributory copyright infringement (Claim II),

---

[1] The Court previously granted Defendant Tiger Media, Inc.'s ("Tiger") motion to dismiss the First Amended Complaint as to Tiger.  *See* Docket No. 53.  Plaintiff did not seek to file an amended complaint against Tiger.  In addition, on February 23, 2017, Plaintiff dismissed Defendants Hebergement OVH Inc. and OVH SAS from this action.  *See* Docket No. 113.

Vicarious Copyright Infringement (Claim III), and Contributory Copyright Infringement (Claim VI).[2]  Plaintiff seeks actual damages, statutory damages, disgorgement of profits, attorney's fees and costs, injunctive relief and such other relief as the Court deems appropriate.  *See* TAC at 19:18-20:4.

Now pending before the Court are two fully briefed summary judgment motions, both filed by Defendant Steadfast.  The first addresses the substantive elements of Plaintiff's Second, Third, and Sixth Causes of Action.  *See* Defendant Steadfast's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("MSJ I"), Docket No. 344.  The second addresses the Safe Harbor Provisions of the DMCA.  *See* Defendant Steadfast's Memorandum of Points & Authorities in Support of Motion for Partial Summary Judgment Re: DMCA ("MSJ II"), Docket No. 339.  Plaintiff has opposed both motions in a single omnibus document.  *See* Plaintiff's Omnibus Memorandum of Points and Authorities in Opposition to Motions for Summary Judgment ("Opp'n"), Docket No. 365.  Defendant Steadfast has filed separate reply briefs.  *See* Defendant Steadfast's Reply Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Reply I"), Docket No. 395; Defendant Steadfast's Reply Memorandum of Points and Authorities in Support of Motion for Summary Judgment Re: DMCA ("Reply II"), Docket No. 339.

## II.  <u>Legal Standard</u>

Summary judgment is proper when the pleadings, the discovery and disclosed materials on file, including any affidavits/declarations, show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3]  Fed. R. Civ. P. 56;

---

[2] Plaintiff made similar though less detailed allegations against Steadfast in its Second Amended Complaint ("SAC").  *See* Docket No. 64 at ¶¶ 15, 49.  Steadfast successfully moved to dismiss the SAC, but the Court granted leave to amend.  *See generally* Minute Order Granting Steadfast Networks LLC's Motion to Dismiss ("MTD Ruling"), Docket No. 111.  The Court dismissed Plaintiff's claims against Steadfast because Plaintiff only alleged Steadfast "hosted" pirate sites, but did not provide any additional allegations as to Steadfast's control over those sites.  *See* MTD Ruling at 7-10.  With respect to contributory copyright Infringement (Count II), the Court found that Plaintiff failed to sufficiently allege material contribution and/or inducement.  *See id.* at 7.  With respect to vicarious infringement, the Court found that Plaintiff failed to allege "that Steadfast has a direct financial interest in the infringing activity or has the right and ability to stop the infringing conduct."  *Id.* at 9.  Finally, with respect to contributory trademark infringement, the Court found that Plaintiff failed to allege that Steadfast induced infringement by the third party pirate sites and failed to allege that Steadfast controls or monitors any instrumentality used by imagebam.com to engage in trademark infringement.  *Id.*  After Plaintiff amended, Steadfast answered the TAC on April 10, 2017.  *See* Docket No. 163.

[3] Under Federal Rule of Civil Procedure 56, the same legal standard applies to motions for partial summary judgment and ordinary motions for summary judgment.  *See* Fed. R. Civ. P. 56(a): *see also California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998); *Barnes v. Cnty. of Placer*, 654 F.Supp.2d 1066, 1070 (E.D. Cal. 2009), *aff'd*, 386

*see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).   To satisfy its burden at summary judgment, a moving party *with* the burden of persuasion must establish "beyond controversy every essential element of its [claim or defense]."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); O'Connell & Stevenson, Rutter Group Prac. Guide, Fed. Civ. Proc. Before Trial (2017) § 14:126 at 14-46.   By contrast, a moving party *without* the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted, emphasis in original) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).   "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."  *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).   In addition, the evidence presented by the parties must be admissible.  *See* Fed. R. Civ. P. 56(e); *see also Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992) (to survive summary judgment, the non-movant party "ordinarily must furnish affidavits containing admissible evidence tending to show the existence of a genuine dispute of material fact").   Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).   With that said, courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party.  *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *see also Motley v. Parks*, 432 F.3d 1072, 1075,

---

F.App'x 633 (9th Cir. 2010) ("A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment.").

n.1 (9th Cir. 2005) (en banc).

### III.  <u>Analysis</u>

####   *A.  Undisputed Facts*[4]

Plaintiff produces proprietary adult content.   *See* Defendant Steadfast's Response to Plaintiff's Statement of Genuine Disputes Re Motion For Partial Summary Judgment ("DSGD")[5], Docket No. 396 at ¶ 65.  Plaintiff's content is available on secure webpages, access to which Plaintiff limits to its paying members.  *Id.*  Plaintiff registers its works with the Copyright Office.  *Id.*  Plaintiff also owns a registered trademark "ALS Scan" that appears on its websites and on all of its proprietary content.  *Id.* ¶ 66.

For several years, Plaintiff's proprietary content has appeared on a variety of "pirate" sites without authorization.  *See id.* ¶¶ 67-68.  Plaintiff pays an agent, Steve Easton ("Easton"), to observe instances of suspected infringement on these pirate sites and to send notices to the site operators.  *Id.* ¶ 69.  Imagebam.com is one such site, and Plaintiff, through Easton, sent 853 notices of infringement to imagebam.com between December 26, 2013 and June 22, 2017, 185 of these notices related to Plaintiff's images.  *Id.* ¶¶ 55, 70.

Easton sent notices via emails, each of which contained hyperlinks to multiple, offending images.  *Id.* ¶¶ 55, 70.  Each email generally included hyperlinks to several images.  *Id.*  These notices were also sent to Steadfast because it physically maintained and owned the servers where imagebam.com resided.  *Id.* ¶¶ 55, 70-71.  Imagebam.com is operated on Steadfast's servers by non-party Flixya.  *Id.* ¶ 73.

Steadfast is a company that provides Cloud Services, Dedicated Servers, Data Center Colocation, Disaster & Business Continuity, Managed Security and IT Consulting.  *Id.* ¶¶ 1, 73.  Steadfast also provides what it calls "IT Infrastructure services."  *Id.*  Beginning sometime in

---

[4] Some of the underlying "undisputed" facts cited herein have been disputed by Plaintiff or Defendant Steadfast. The Court has reviewed such disputes and has included in this summary only facts that are supported by the cited evidence, altering the proffered facts if necessary to accurately reflect the uncontroverted evidence.  To the extent that the cited underlying "undisputed" facts have been disputed, the Court finds that the stated disputes: (1) fail to controvert the proffered "undisputed" facts, (2) dispute the facts on grounds not germane to the below statements, and/or (3) fail to cite evidence in support of the disputing party's position.  As such, the Court treats such facts as undisputed.  Any proffered facts not included in this Tentative Ruling were found to be: (1) improper opinions or conclusions rather than facts, (2) were unsupported by admissible evidence, (3) were deemed irrelevant to the Court's present analysis, or (4) some combination thereof.

[5] The parties also submitted the requisite "Separate Statements" in connection with Steadfast's MSJ II.  *See* Defendant Steadfast's Response to Statement of Genuine Disputes Re: Motion for Partial Summary Judgment Re: DMCA ("DSGD II"), Docket No. 392.  There is substantial overlap in the two motions.  The Court only cites to the DSGD II when necessary.

2007, Steadfast had Flixya[6] as a client and leased three servers to Flixya. *Id.* ¶¶ 16, 18, 75. Steadfast provided, configured, and housed the servers on racks in Steadfast's data center. *Id.* ¶¶ 19, 21-23, 76. Flixya also purchased "basic management services" from Steadfast.[7] *Id* ¶ 75. Steadfast charged Flixya a flat fee and the servers were "dedicated," meaning that Flixya controlled the entire server.[8] *Id.* ¶¶ 11, 19, 21, 22, 75-76. Steadfast "maintained" the physical servers.[9] *Id.* ¶ 23.

Flixya used the servers to house, and manage imagebam.com, using its own software and web management services. *See id.* ¶¶ 11, 15, 17, 49, 75, 77, 79. Flixya had its own user policies and user agreement that prohibited uploading infringing content. *Id.* ¶¶ 41-43, 68-69. Flixya also had its own DMCA agent, its own procedures for removing infringing content that appeared on imagebam.com, and had the power to remove users who posted infringing content. *Id.* ¶¶ 41-46. Imagebam is a host for user uploaded content. *Id.* ¶ 27. Only imagebam.com users may upload images to the site, which are then stored. *Id.* ¶ 28. Imagebam is not site designed for display of images, but rather acts as an image hosting service, where users can store images and locate images that they can then download. *See id.* ¶ 7.

Steadfast did not "operate, control, or manage" imagebam.com.[10] *Id.* ¶¶ 26, 52. Steadfast did not have access to imagebam.com's individual user accounts, or the site's content. *See id.* ¶¶ 32-36. Steadfast did not directly profit in any way from the content that imagebam.com users posted, nor did it select or control that content or otherwise interact with imagebam.com users. *See id.* ¶¶ 36-40. Steadfast also could not terminate individual imagebam.com user accounts. *Id.* ¶¶ 33-34. However, Steadfast *could* shut down the servers, which would effectively render imagebam.com inoperative and block access to its content. *Id.*

---

[6] Steadfast and Flixya have always been different and unaffiliated corporate entities. *Id.* ¶ 17.

[7] Neither party explains what these "basic management services" entailed.

[8] Neither party provides a complete explanation of the term "dedicated." As the Court understands it, the key aspect of a "dedicated" server for the purposes of the present case is that Flixya leased the *entire* server and was free to manage its content. The Court assumes, but could be wrong, that Steadfast may lease server space to several clients on the same physical server, in which case it would exercise considerably more control.

[9] The parties dispute the nature of Steadfast's "control" over the servers it rented to Flixya. *See id.* ¶ 24.

[10] Both parties use the terms such as "control," "maintain," and "operate" without defining or differentiating between these terms. Therefore, it is unclear who "maintained" the servers, as opposed to "controlled" or "managed" the servers. Likewise, it is unclear if "managing" web content housed on a server is different than managing the server. It does appear relatively clear that Steadfast had no role in maintaining, controlling, or managing imagebam.com. However, it is unclear if the same can be said for the servers.

¶¶ 80, 81.  Steadfast also had the ability to cancel Flixya's account which would presumably entail taking control of the servers and require a shutdown of imagebam.com.  *Id.* ¶ 106.

Steadfast has its own user policy that prohibits unlawful activity and acts of infringement by its customers.  *Id.* ¶ 7.  Steadfast has a designated agent to receive notices of copyright infringement, maintains a notification system, and displays its agent's email address on its webpage.  *Id.* ¶¶ 8, 10, 11, 12.  Steadfast also has procedures for dealing with what it considers "DMCA compliant" notifications, as well as procedures to deal with what it considers "non-DMCA compliant" notifications.  *Id.* ¶¶ 10-11.  Steadfast does not prevent copyright owners from collecting information to issue notifications, nor does it "interfere with standard technical measures" used by copyright holders to identify and protect their works.  *Id.* ¶¶ 14-15.

Upon receiving notice from Easton that Plaintiff's content appeared on imagebam.com, Steadfast forwarded Easton's notices to Flixya.  *Id.* ¶¶ 52, 75.  Steadfast considered these notifications to be non-DMCA compliant and be misdirected to it, as opposed to Flixya.  *Id.* ¶¶ 50-52.  Nevertheless, in addition to forwarding the information on to Flixya, Steadfast "tracked" each notification received from Easton through a "ticketing system."  *Id.* ¶¶ 9, 51-52, 71.  Steadfast took these actions as part of its procedures for dealing with what it considers non-DMCA compliant notifications.  *See id.* ¶¶ 51-52.  Steadfast did not click on any of the hyperlinks in Easton's emails or take any action apart from "ticketing" the information and passing it along to Flixya.  *Id.* ¶¶ 23-24, 87.  For example, Steadfast did not follow up directly with Flixya to assure that each image identified in the notices was removed.  *See id.* ¶¶ 23-24.  Steadfast also did not power down Flixya's servers, or cancel Flixya's account.  *Id.* ¶ 25.  Steadfast has never cancelled a client account based on repeated acts of infringement.  *Id.* ¶ 89.  All of the ALS images at issue in this lawsuit that appeared on imagebam.com were removed by Flixya.  *Id.* ¶¶ 53, 56.  On June 21, 2017, the server rental services between Steadfast and Flixya ended.  *Id.* at ¶ 16.

Steadfast moves for summary judgment on Counts II (Contributory Copyright Infringement), III (Vicarious Copyright Infringement), and VI (Contributory Trademark Infringement).  *See generally* MSJ I.  Steadfast also moves for partial summary judgment on whether it is entitled to a Safe Harbor Defense under 17 U.S.C. § 512(c).  *See generally* MSJ II.  Plaintiff opposes both motions.  *See generally* Opp'n.  Plaintiff concedes its vicarious infringement claim.  *See* Opp'n at 1:19.  As a result, the Court would grant Steadfast's motion

with respect to Count III.

### B. Contributory Copyright Infringement

Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) ("*Amazon.com*") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("*Grokster*")).   Thus, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("*Visa*") (explaining that contributory infringement can be established through either material contribution or inducement).

A third party can only be liable for materially contributing to infringement where its participation in the infringing conduct of the primary infringer is "substantial." *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp. 1361, 1375 (9th Cir. 1995) ("*Netcom*") (citing *Gershwin Publ'g*, 443 F.3d at 1162; *Apple Computer, Inc. v. Microsoft Corp.*, 821 F.Supp. 616, 625 (N.D. Cal. 1993); *Demetriades v. Kaufmann*, 690 F.Supp. 289, 294 (S.D.N.Y. 1988)).

In *Amazon.com*, the Ninth Circuit analyzed the material contribution prong in the context of an Internet search engine operator (*i.e.* Google) and held that:

> a computer system operator can be held contributorily liable if it "has *actual* knowledge that *specific* infringing material is available using its system," and can "take simple measures to prevent further damage" to copyrighted works, yet continues to provide access to infringing works.

508 F.3d at 1172 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001); *Netcom*, 907 F.Supp. at 1375 (emphasis in original); *see also, Perfect 10, Inc., Giganews, Inc.*, 847 F.3d   Although an "actor's contribution to infringement must be material to warrant the imposition of contributory liability," the Ninth Circuit emphasized that "services or products that facilitate access to [infringing] websites throughout the world can significantly magnify the effects of otherwise immaterial infringing activities."   *Id.* (internal quotations and citations omitted).

In *Amazon.com*, the district court had dismissed a contributory copyright infringement

claim against Google, holding that even assuming Google had knowledge that links to websites displaying infringing material were made available using its search engine, because Google did not undertake promotional or advertising efforts to encourage visits to the infringing websites, it could not be liable for contributory infringement. *Id.* The Ninth Circuit reversed, reasoning that:

> [t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, Google could be held contributorily liable if it had knowledge that infringing [copies of plaintiff's] images were available using its search engine, could take simple measures to prevent further damage to [plaintiff's] copyrighted works, and failed to take such steps.

*Id.* The Ninth Circuit thereafter remanded the case to the district court to resolve factual disputes over the adequacy of the plaintiff's notices to Google of the infringement and Google's responses to the notices, as well as factual disputes over whether there was a reasonable and feasible means for Google to refrain from providing access to the infringing websites. *Id.* at 1172-73.

Shortly after *Amazon.com*, the Ninth Circuit issued its decision in *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n* ("*Visa*"), 494 F.3d 788 (9th Cir. 2007). In that case, the plaintiff sued various credit card companies for contributory copyright infringement, alleging that the credit card companies had contracted with issuing banks to issue branded credit cards to consumers, and the issuing banks then contracted with merchant banks to settle transactions using those cards, including transactions for payments to Internet websites that infringed the plaintiff's copyrights. *See Visa*, 494 F.3d at 792. The plaintiff claimed that the credit card companies had materially contributed to the websites' infringement because they were aware of the infringement, yet continued to process credit card payments for the infringing websites. *Id.* at 795.

The Ninth Circuit held that the plaintiff had failed to allege facts sufficient to establish material contribution, because the credit card companies:

> cannot be said to materially contribute to the infringement because they have no direct connection to that infringement. Here, the infringement rests on the reproduction, alteration, display and distribution of [plaintiff's] images over the Internet. [Plaintiff] has not alleged that any infringing material passes over [d]efendants'

> payment networks or through their payment processing systems, or that [d]efendants' systems are used to alter or display the infringing images . . . . Here, [] the services provided by the credit card companies do not help locate and are not used to distribute the infringing images.  While [plaintiff] has alleged that [d]efendants make it easier for websites to profit from this infringing activity, the issue here is reproduction, alteration, display and distribution, which can occur without payment.  Even if infringing images were not paid for, there would still be infringement.

*Id.* at 796.  The Circuit further distinguished *Amazon.com*, emphasizing that "Google may materially contribute to infringement by making it fast and easy for third parties to locate and distribute infringing material, whereas [d]efendants make it easier for infringement to be *profitable*," which the Circuit emphasized could not be the basis of contributory copyright liability.  *Id.* at 797 (emphasis in original).

The Ninth Circuit has also recognized that a third party may materially contribute to infringement, at least in part, by providing physical space to known infringers, or, in the online context, by providing server space to known infringers.  *See Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("*Fonovisa*") ("[W]e agree with the Third Circuit's analysis . . . that providing the site and facilities for known infringing activity is sufficient to establish contributory liability."); *see also*, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("*Louis Vuitton*") ("Material contribution turns on whether the activity in question 'substantially assists' direct infringement . . . . There is no question that providing direct infringers with server space satisfies that standard.").

For example, in *Fonovisa*, the Ninth Circuit held that a swap meet operator could be liable for contributory infringement because the operator provided infringers with "space, utilities, parking, advertising, plumbing, and customers," and, most importantly, the provision of the "site and facility for known infringing activity."  76 F.3d at 264.  The Ninth Circuit emphasized that the swap meet operator "actively strives to provide the environment and the market for counterfeit recording sales to thrive.  Its participation in the [infringing] sales cannot be termed 'passive.'"  *Id.*

*Louis Vuitton* examined an analogous setting in the online world.  In *Louis Vuitton*, the plaintiff sued three different defendants − MSG, Akanoc, and Chen − for contributory copyright and trademark infringement for their role in hosting websites that directly infringed on Louis

Vuitton's trademarks and copyrights.  658 F.3d at 939-40.  MSG and Akanoc were in the "web hosting business" and were both owned by Chen.  *Id.*  MSG leased servers, bandwidth, and IP addresses to Akanoc.  *Id.*  Akanoc operated the servers and leased packages of server space, bandwidth, and IP addresses to customers, who, in turn, directly infringed on Louis Vuitton's copyrights and trademarks.  *Id.*  The case went to trial and the jury returned a verdict for plaintiff against all three defendants for contributory infringement.  *Id.* at 941.  The defendants filed a motion for judgment as a matter of law seeking to overturn the verdict.  *Id.*  The district court denied the JMOL as to both Akanoc and Chen, but granted it as to MSG.  *Id.*

The Ninth Circuit affirmed both rulings.  With respect to MSG, the Ninth Circuit agreed with the district court that "no evidence presented at trial showed that MSG operated the servers that hosted the direct infringers' websites."  *Id.* at 942.  The panel reasoned that "even assuming that the direct infringers could be construed as MSG's customers, [plaintiff] presented no evidence that MSG had reasonable means to withdraw services to the direct infringers."  *Id.*  Alternatively, the Ninth Circuit found that Akanoc and Chen were contributory liable because they "physically [hosted] websites on their servers and [routed] internet traffic to and from those [infringing] websites."  *Id.* at 942.

Neither *Fonovosia* or *Louis Vuitton* hold that merely providing space to known infringers, be it physical or online, constitutes material contribution as a matter of law.  Rather, in both cases, the third party provided space, additional services, and had a reasonable means to withdraw services.  *See, e.g.*, *Fonovisa*, 76 F.3d at 264; *Louis Vuitton*, 658 F.3d at 942.  *Louis Vuitton* illustrates this distinction: MSG was not liable because it merely leased servers to Akanoc but *Akanoc was liable* because it physically hosted the websites, routed internet traffic to and from the sites, and "had direct control over the 'master switch' that kept the websites online and available."  *Id.* at 943.

To summarize: "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."  *VHT, Inc., v. Zillow Group Inc.*, C15-1096JLR, 2017 WL 2654583, *14 (W.D. Wash. June 20, 2017) (quoting *Perfect 10*, 484 F.3d at 795).  Under a material contribution theory, in the internet context, a plaintiff can establish liability if it shows "that a computer system operator . . . 'has actual knowledge that specific infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide

10

access to infringing works." *Amazon.com, Inc.*, 508 F.3d at 1172 (quoting *Napster*, 239 F.3d at 1022; *Netcom*, 907 F. Supp. at 1375); *see also Perfect 10, Inc. v. Giganews, Inc. ("Giganews")*, 847 F.3d 657, 671 (9th Cir. 2017).

However, it is unclear that these three requirements − (1) actual knowledge, (2) availability of "simple steps" to prevent further damage, and (3) continued access − are *required* to finding contributory infringement on a material contribution theory in the internet age. *See Louis Vuitton,* 658 F.3d at 943 ("("Material contribution turns on whether the activity in question 'substantially assists' direct infringement . . . . There is no question that providing direct infringers with server space satisfies that standard."); *but see*, *VHT, Inc.*, 2017 WL 2654583 at *16. (rejecting plaintiff's theory that it could establish material contribution without proving the availability of "simple measures" as "contrary to *Amazon, Inc.* and *Giganews*"). The approach most consistent with that of the Ninth Circuit is to compare each individual case to the Ninth Circuit's test-defining cases and proceed by analogy. *See Visa*, 494 F.3d at 795 ("Viewed in isolation, the language of the tests described is quite broad, but when one reviews the details of the actual 'cases and controversies' before the relevant court in each of the test-defining cases and the actual holdings in those cases, it is clear that the factual circumstances in this case are not analogous."). That being said, the presence of all three elements − (1) actual knowledge, (2) the ability but failure to take simple steps to stop infringement, and (3) continued access − is sufficient, even if not necessary, to establish liability. *See Amazon.com, Inc.*, 508 F.3d at 1172. For that reason, they represent a useful starting point, and, in the present case are sufficient to resolve the pending motions.

Here, Plaintiff contends that Steadfast is liable for contributory copyright infringement under a material contribution theory because it: (1) rented servers to Flixya, (2) infringing material repeatedly appeared on those servers via imagebam.com, (3) Steadfast knew about the infringements, and (4) Steadfast could have, but did not "power down" the servers. *See* Opp'n at 13:1-13. According to Plaintiff, Steadfast is just like Akanoc in *Louis Vuitton* because Steadfast continued to allow imagebam.com to be stored on its servers after learning that thousands of infringing images appeared on that site. *Id.*

Steadfast counters that Plaintiff's material contribution theory fails as a matter of law for three reasons: (1) Steadfast cannot be held liable for contributing to Flixya's infringement because Flixya is at most a *contributory*, as opposed to a *direct* infringer; (2) Plaintiff fails to

11

provide evidence that Steadfast intended to assist in infringement; and (3) Plaintiff fails to establish the elements required by Ninth Circuit law for a contributory infringement claim based on a material contribution theory.[11]   The Court will first address whether Plaintiff's evidence establishes the substantive elements required for contributory infringement on a material contribution theory.

    *1. Whether Plaintiff's Evidence Would Allow A Reasonable Jury to Hold Steadfast Liable for Contributory Liability Based on a Material Contribution Theory.*

    As indicated above, an internet service provider may be contributory liability if it: (1) has actual knowledge of specific infringing activity, (2) is able, but fails to take simple measures to stop that infringement, and (3) continues to provide services to known infringers.  *See Amazon*, 508 F.3d at 1172.  It is also clear that, as a threshold matter, the assistance provided must be substantial.  Furthermore, inherent in the "actual knowledge requirement" is that there be an underling act of primary infringement.  *Id.*

    a.  <u>Whether Steadfast Had Actual Knowledge of Specific Acts of Infringement</u>

    "[C]ontributory infringement requires 'actual knowledge of specific acts of infringement' or '[w]illful blindness of specific facts.'"  *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, No. 16-1972, 2018 U.S. App. LEXIS 2487, *35, 881 F.3d 293 (4th Cir. Feb. 1, 2018) (quoting *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013)).

    Here, Plaintiff contends that Steadfast is contributory liable for infringement of its copy and display rights on imagebam.com, a site that is hosted by Steadfast's client Flixya, on three servers Steadfast rented to Flixya.  *See* Opp'n at 10:24-11:2.  Plaintiff argues that Steadfast was aware that this infringement was taking place through Easton's emails.  *See id.* at 13:1-13. Plaintiff supports both contentions with evidence, including Easton's testimony and emails to Steadfast containing hyperlinks to hundreds of ALS images appearing on imagebam.com.  *See id*. ¶¶ 55, 70-71.  The Court would find that Easton's testimony and emails raise a triable issue of fact as to Steadfast's knowledge that the offending images *at issue in this case* were stored on

---

[11] Plaintiff appears to concede that Steadfast is not liable under an inducement theory of secondary liability.  *See* Opp'n at 10:20-13:26 (arguing material contribution theory).

Steadfast's servers.[12]  *See Ellison*, 357 F.3d at 1077 (finding that a reasonable trier of fact could find that AOL has reason to know that infringing copies of plaintiff's work were stored on servers based on evidence of a phone call and evidence that AOL changed its email address to avoid email complaints sent by plaintiff's attorney); *see also, e.g.*, *Miller v. Facebook, Inc.*, No. C 10-00264, 2010 U.S. Dist. LEXIS 61711, *21-22 (N.D. Cal. May 28, 2010) (finding that plaintiff's single letter to Facebook demanding that it remove infringing image clearly established actual knowledge).

However, the Court's conclusion above only relates to the images contained in Easton's emails and at issue in this lawsuit.  In other words, Easton's emails do not necessarily provide knowledge that any additional, specific images were likely to appear on imagebam.com.  The consequences of this distinction will be addressed in more detail below following the Court's analysis of the material contribution elements.  *See infra* at 18 (addressing legal significance of the removal of all ALS images at issue in this case).

Defendant contends that Easton's emails are insufficient to establish actual knowledge because the hyperlinks did not necessarily allow Steadfast to confirm that "specific infringing material was . . . available on the Flixya-leased server."  MSJ I at 13:11-25.  According to Steadfast, a hyperlink to an image stored on imagebam.com "does nothing to inform Steadfast where the complained of ALS material is located, or if it was even actually on a Flixya-leased server."  *See id.* at 13:25-14:2.

This argument is not persuasive.  First of all, there is no evidence in the record that Flixya hosted imagebam.com anywhere other than the three servers it leased from Steadfast.  On the other hand, it is undisputed that Steadfast leased three servers to Flixya and that Flixya used those servers to host imagebam.com.  Steadfast's contention that Flixya could have *also* stored parts of imagebam.com on non-Steadfast servers at best creates a triable issue of fact as to knowledge.  Therefore, Steadfast is not entitled to summary judgment on that basis.

Defendant also argues that Easton's notices were not DMCA compliant and thus "should not and cannot count as actual knowledge."  *Id.* at 14:11-14.  This argument is also unpersuasive.

---

[12] Even a cursory review of the pages that Easton's emails hyperlink to reveal that images bearing the ALS markings appear on sites that are not ALS.  *See* Declaration of Jay Spillane Exs. 2-11, Docket No. 373.  A jury could reasonably conclude that a company that receives an email with a hyperlink to such an image has actual or constructive knowledge that copyrights are being infringed on its customers' sites.

For one, the Court would not find that Easton's emails were non-compliant as a matter of law.[13] Furthermore, even if they were not DMCA compliant, the Easton's emails are still evidence of actual knowledge of specific acts of infringement, and, as such, create a triable issue of fact as to knowledge.  Indeed, Steadfast cites no authority for the proposition that a non-compliant DMCA notification is inadmissible on the issue of knowledge for the purposes of material contribution.  While lack of compliance may render notice insufficient for the purposes of the Safe Harbor under Section 512(c), it does so only for those purposes.  *See* Nimmer on Copyright §12B.04 at n.505 ("The effect of [17 U.S.C. § 512(c)(3)(B)(i)] is limited to 'under paragraph (1)(A)'. . . . It does not exert any impact under other portions of the Copyright Act.") (quoting Section 512(c)).  Additionally, as in *Ellison*, a jury could determine that Easton's emails and the fact that Steadfast refused to view the hyperlinks included therein, establishes constructive, if not actual knowledge.  *See Ellison*, 357 F.3d at 1077.

For these reasons, the Court would find that Plaintiff's evidence raises a triable issue of fact as to whether Steadfast had actual or constructive knowledge that acts of infringement were occurring on its servers.  As such, it would not grant summary judgment in Steadfast's favor on this ground.

### b. Simple Measures Requirement

To prevail on its contributory copyright infringement claim, Plaintiff must also demonstrate that Steadfast "'[could] take simple measures to prevent further damage to copyrighted works, yet continued to provide access to infringing works.'"  *Giganews*, 847 F.3d at 671 (quoting *Amazon*, 508 F.3d at 1172.)  In other words, Plaintiff must show that Steadfast could have, and failed to take simple measures to block access to the infringing images on imagebam.com.

In *Giganews*, the Ninth Circuit affirmed summary judgement in the defendant's favor

---

[13] Steadfast's other motion for summary judgment argues that Easton's notices are non-compliant for two reasons: (1) they were addressed to Steadfast's DMCA agent and not Flixya's and (2) they did not sufficiently identify the infringing materials.  *See* MSJ II at 8:9-17.  Steadfast's first argument is illogical.  Essentially, Steadfast argues that Easton's emails did not put it on notice because Easton should have provided notice to Flixya and not Steadfast.  If the Court were to accept Steadfast's logic, Plaintiff would have had no way of putting Steadfast on notice for infringement that occurred on its servers.

Steadfast's second argument is also unavailing.  Easton provided the URLs to all of the infringing images, links that dissolved to the images as they appeared on imagebam.com.  *See* 4 Nimmer on Copyright § 12B.04 (describing the URL as a "prime example" of how a copyright owner can identify the material that is claimed to be infringing); *see also id.* ("The goal [of providing sufficient information] should be to adequately apprise the service provider so that it can "find and examine the allegedly infringing material expeditiously.").

after finding that plaintiff failed to demonstrate that defendant could take simple measures to remove infringing material from its servers. *Id.* at 671-672. In that case, plaintiff had sent take down notices to Giganews that included suggested search terms. *Id.* The plaintiff claimed that Giganews could utilize those search terms to extract machine-readable Message-IDs for each infringing image. *Id.* The Ninth Circuit concluded that the process that plaintiff proposed was onerous and unreliably complicated because it would take thousands of hours of manual work. *Id.* Based on that finding, it affirmed summary judgment. *Id.*

Here, Plaintiff proposes a single "simple measure" to prevent further damage to its intellectual property rights: Steadfast could have shut down the servers upon which Flixya hosts imagebam.com and canceled Flixya's account. *See* Opp'n at 13:1-6. Steadfast does not dispute that it could have powered down the servers and stopped doing business with Flixya. As such, there was at least one simple measure Steadfast failed to take. However, as discussed in more detail *supra*, Steadfast did forward the notices to Flixya, an action that resulted in the removal of every one of the at-issue images. Therefore, while Steadfast did not shut down the site, it did take a "simple measure" that disabled access to the images.

Steadfast argues that it could not have taken "simple measures" to stop the infringement because it could not access imagebam.com and remove individual images and/or users. *See* MSJ I at 14:15-15:6. However, Plaintiff is not required to show that Steadfast could remove individual images, as opposed to block access to the entire site. Moreover, unlike the defendant in *Giganews*, Steadfast presents no evidence that shutting down the Flixya-leased servers and cancelling Flixya's account would be onerous and unreasonably complicated. In fact, Steadfast claims that it has terms and conditions of use that would allow it to do so.

In sum, the Court would find that Plaintiff demonstrates that Steadfast could have shut down Flixya's servers once it received notice that infringing images were being stored thereon. However, the Court is uncertain that this would establish liability under a material contribution theory given that Steadfast's preferred "simple measure" (*i.e.* to forward the notices to Flixya) led to the removal of every ALS image at issue in this case.[14] *See supra* at 19-21.

---

[14] While Plaintiff asserted that imagebam.com's website "engaged in rampant infringement of adult content (*see* DSGD, Docket No. 396 at ¶ 7), there is no evidence as to the percentage of the content on the site that was, in fact, violative of any person's copyrights. Hence, the measure of powering down Flixya's servers would have the effect of removing both infringing and non-infringing matter. It is unclear, however, whether the cessation of servers' operations (which would be a simple but drastic measure) would be appropriate without some determination as to

c. <u>Conclusion</u>

In sum, the Court would find that Plaintiff's evidence establishes that Steadfast had: (1) knowledge of specific acts of infringement and (2) could have, but failed to shutdown imagebam.com, and, in so failing, at least temporarily (3) continued to provide storage space to known infringers on imagebam.com. *But see supra* at 19-21.

### 2. Steadfast's "No Tertiary Liability" Argument Fails

Steadfast also argues that Plaintiff's theory of contributory liability is "made up" because it is based on the flawed legal premise that "one infringes contributorily by . . . encouraging *contributory* infringement." *See* MSJ I at 7:25-10:18.  In other words, Steadfast contends that it cannot be held contributory liable based on Flixya's conduct because Flixya is itself only a contributory infringer. *Id.* at 8:8-9:14.  According to Steadfast, the only direct infringers here are imagebam.com's users who upload infringing content to the site*. Id.*  Steadfast contends that holding it liable for contributing to contributory infringement is not cognizable under copyright law, and runs afoul of Article III standing requirements. *See id.* 9:24-10:11.

However, Steadfast fails to provide legal authority for the proposition that pinning the direct infringement on Flixya's customers, as opposed to Flixya, shields Steadfast from secondary liability.  The Ninth Circuit has observed only that *an* act of direct infringement is required.  *See Napster*, 239 F.3d at 1013 n.2.  The rule Steadfast proposes − that contributory infringement cannot be based on materially assisting a material contributor − appears to be at odds with previous case law, where system providers were held liable for infringing information posted on their site or server, by an individual upstream user, through an intermediary service. *See, e.g.*, *Netcomm*, 907 F.Supp. at 1375; *see also*, 3 <u>Nimmer on Copyright</u> § 12.04[A][2][a] at 12–73 ("in order to be deemed a contributory infringer, the . . . assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer").

Further, Steadfast *assists* the direct infringers by providing server space on which infringing images may be stored and uploaded.  The fact that Steadfast provides that assistance through leasing servers to Flixya, does not mean its assistance is not material.

Steadfast relies heavily on *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012)

---

the percentage or ratio of the material on the site which would be infringing of persons' copyrights versus non-infringing content.

for its position, but that case involved a social bookmarking website that allowed users to post links to infringing images uploaded elsewhere, as opposed to actual copies of the images. Furthermore, *Flava Works* did not find in favor of the defendant because of the identity of the direct infringers, but rather the Seventh Circuit held that the plaintiff failed to establish that linking users to images found on other sites actually contributed to infringement.  Moreover, in so holding, the Seventh Circuit *rejected* the defendant's attempt to characterize plaintiff's claim as an improper "tertiary liability" theory:

> Google and Facebook in a joint amicus curiae brief friendly to myVidster manage to muddy the waters by analyzing remoteness of injury from an alleged infringement not as a matter of general tort principles but as a species of layer cake.  There are the "direct" infringers, who upload copyrighted videos to the Internet without authorization.   There are myVidster members who bookmark videos illegally uploaded by the "direct" infringers − the brief describes the bookmarking visitors as "secondary" infringers.  And finally there is myVidster, which connects visitors to its website to the servers that host the infringing videos.   The brief describes myVidster as being at worst a "tertiary" infringer, beyond the reach of copyright law because the law doesn't recognize tertiary copyright infringement.  But the law doesn't recognize "secondary infringement" either.  *The only distinctions relevant to this case are between direct infringement (which really ought just to be called infringement − the law doesn't speak of "direct negligence" versus "contributory negligence" or "direct murder" versus "aiding and abetting murder") and contributory infringement, and between contributory infringement and noninfringement.*  The direct infringers in this case are the uploaders; myVidster is neither a direct nor a contributory infringer − at least of Flava's exclusive right to copy and distribute copies of its copyrighted videos.

689 F.3d at 760 (emphasis added).  It is also worth noting that the Seventh Circuit was reviewing a preliminary injunction sought by plaintiffs, and therefore, was not obligated to construe evidence in the plaintiff's favor.  *See id.* at 762.  Indeed, it did not preclude a claim against the defendant as a matter of law, finding that plaintiff would be entitled to injunctive relief if it could show "that [the defendant's] service really does contribute significantly to infringement of [plaintiff's] copyrights."  *Id.* at 763.

   The same is true here: Plaintiff can prevail on its contributory infringement claim against Steadfast if it proves that Steadfast's services, *i.e.*, its servers, contribute significantly to infringement of Plaintiff's copyrights.  According to *Louis Vuitton*, providing server space to

17

known infringers may be such a contribution.  *See* 658 F.3d at 943.  As such, the fact that imagebam.com's users commit the first act of direct infringement does not shield Steadfast from liability.

### 3.  *Steadfast's Intent Argument*

Steadfast also argues that it is entitled to summary judgment because Plaintiff presents no evidence that Steadfast intended to contribute to infringement.  *See* MSJ I at 10:20-12:10. Steadfast concedes that intent may be imputed as a result of a service provider's knowing failure to prevent infringing actions.  *See id.* (quoting *Louis Vuitton*, 658 F.3d at 843).  As indicated above, Plaintiff has established that Steadfast continued to lease servers to Flixya after learning that thousands of infringing images appeared on imagebam.com over a three year span. Furthermore, Steadfast admits it could shut down Flixya's servers and that its terms of service gave it the right to do so.  Steadfast nonetheless argues that Plaintiff cannot establish intent because Steadfast also forwarded Plaintiff's notices to Flixya, who, in turn removed all of the offending images.  *See* MSJ I at 10:19-12:10.

The fact that Flixya did remove each offending image at issue in this case would seem to expose flaws in Plaintiff's case.  *See supra* at 19.  However, "lack of intent" is not one of those flaws.  At best, Steadfast's willingness to forward notices that it had reason to believe would result in the removal of the offending images *tends to prove* a lack of intent.  However, at the same time, Steadfast's willingness to continue to do business with Flixya after receiving myriad notices of infringement demonstrates just the opposite.  The same is true of Steadfast's failure to follow up with Flixya.  As such, at least as far as intent is concerned, Plaintiff raises a triable issue of fact.

### 4.  *Whether Removal of Plaintiff's At-Issue Images Entitles Steadfast to Summary Judgment*

Steadfast also argues that Plaintiff's material contribution theory fails because all of the at-issue images were removed by Flixya after Steadfast forwarded Easton's notices to Flixya. *See* MSJ I at 12:24-13:8.   Steadfast's briefing does not explain how this fact, which is undisputed, would necessarily defeat a material contribution claim under the Ninth Circuit's test. Steadfast simply contends that "because access to the ALS material was disabled, ALS cannot succeed on a material contribution theory."  *Id.* at 13.   That being said, the Court has a hard time understanding how it could find Steadfast contributorily liable given its response to the known

infringement resulted in the removal of all of the infringing images.  *See Giganews*, 847 F.3d at 671.

Plaintiff's briefing does not directly respond to Defendant's argument.  However, Plaintiff does not dispute that every offending image at issue in this case was removed from Flixya's servers.  Plaintiff also does not dispute that Steadfast forwarded Easton's notices along to Flixya.  The parties also agree that Easton never followed up with Steadfast as to specific images, and that Steadfast never followed up with Flixya to ensure the at-issue ALS images were removed.

Given these undisputed facts, the Court would find that Steadfast did not "[fail] to take simple measures" to prevent the specific acts of infringement of which it was aware.  Steadfast *took* simple steps that resulted in all of the at-issue images being removed.  That being said, the Ninth Circuit test does not require Plaintiff to show that Steadfast took no action, just that simple measures that could stop infringement were available, and Steadfast failed to take those measures.  *See Giganews*, 847 F.3d at 671 (quoting *Amazon*, 508 F.3d at 1172.)

Here, that presumably means Plaintiff must demonstrate that the act of "shutting down" Flixya's servers would prevent further harm to Plaintiff's intellectual property in a way that forwarding Easton's notices to Flixya did not.  The Court is unsure how Plaintiff can make this showing, *at least with respect to the images at issue in this litigation*.

Plaintiff's theory appears to be that shutting down the servers would have blocked access to both the at-issue images as well as other ALS images that were all but certain to appear on imagebam.com in the future.  This theory is how Plaintiff seeks to end the "whack-a-mole" problem it faces.  Plaintiff appears to propose the following legal theory: contributory liability attaches where a defendant continues to lease server space to a site that it knows is "in the business" of hosting infringing copies of a plaintiff's work along with other materials that do not infringe *that plaintiff's* works.

The problem with Plaintiff's theory is that a service provider is only required to take "simple measures" when it has actual or constructive knowledge of specific acts of infringement, as opposed to a general awareness that infringement is occurring on its system.  *See Luvdarts,* 710 F.3d at 1072-73 ("To establish liability, the first prong requires more than a generalized knowledge by the defendant of the possibility of infringement."); *see also Napster*, 239 F.3d at 1021 ("[I]f a computer system operator learns of specific infringing material available on his

19

system and fails to purge such material from the system, the operator knows of and contributes to direct infringement.") (citing *Netcom*, 907 F.Supp. at 1374)).   It is clear that Steadfast had knowledge of specific acts of infringement, to which it responded by forwarding notices to its customer.  It is also undisputed that these simple measures resulted in the removal of the specific images of which it had knowledge.

On the other hand, it is far less clear that Steadfast had actual or constructive knowledge that imagebam.com users would commit *new* acts of infringement on its servers at any particular point.   Moreover, Steadfast would need more than a general awareness that new acts of infringement were forthcoming before it would be required to take disabling measures.  *See Luvdarts*, 710 F.3d at 1072-73.   As such, the Court is not convinced that Steadfast had any reason, legal or practical, to terminate Flixya's account and power down its servers.

At oral argument, Plaintiff essentially conceded that Steadfast never had actual knowledge of when (or if) future, specific acts of infringement would occur on imagebam.com, after each offending image was removed.   Nevertheless, a jury could certainly conclude that Steadfast was generally aware that infringement would likely continue to occur on imagebam.com given the past history of the website, at least until the rental agreement between Steadfast and Flixya ended in June of 2017.   In other words, a jury could conclude that Steadfast was aware of the whack-a-mole problem that Plaintiff faced.   However, it remains undisputed that, once those infringing acts actually occurred, *i.e.*, the mole emerged, Steadfast took simple measures to cause the images to be removed, *i.e.* to successfully whack the mole.

As indicated *supra*, Plaintiff asks the Court to recognize a novel form of material contribution liability for internet service providers that refuse to cancel services to a customer, upon receiving generalized knowledge that future acts of infringement are almost certain to occur on that customer's platform.   Plaintiff would have the Court attach liability under such circumstances, even if, once the "future" infringement is actualized, the service provider takes simple measures to remove the offending images.

As indicated at oral argument, Plaintiff's theory has no basis in the case law.  Plaintiff's response at oral argument, as through much of its briefing, was to rely on the *Fonovisa* and *Louis Vuitton* cases.  *Fonovisa* is helpful to Plaintiff only in the limited sense that it stands for the proposition that, under certain circumstances, wholly withdrawing services from a known infringer is required to avoid secondary liability.  *See* 76 F.3d at 264.  For example, if in the

20

present case, Steadfast had done nothing to cause the removal of Plaintiff's images from its servers and the images remained there, liability would attach under *Fonovisa*.  However, unlike here, the property owner in *Fonovisa* did not take steps to remove the copyrighted goods each time the seller showed up, or for that matter, kick the seller out each and every time he showed up to hawk copyrighted goods.  *Id.*  Moreover, as the Ninth Circuit noted in *Visa*, the relevance of brick and mortar cases like *Fonovisa* only go so far in the internet context.  See *Visa*, 494 F.3d at 798 n.9.

*Louis Vuitton* is also unavailing and the reason is simple: Akanoc therein (the party Plaintiff repeatedly analogizes Steadfast to) took no action in response to notices of infringement ("NOI") sent by plaintiff copyright/trademark holder.  *See* 658 F.3d at 941 ("Although Defendants asserted that they took regular steps to curb any infringement by websites using their servers, Defendants were not able to identify any action taken in response to the notices sent by Louis Vuitton, and the websites continued to operate using servers and IP addresses owned by Defendants.").[15]  Under Plaintiff's theory, Akanoc would have been liable even if, upon receiving notice of a link to infringing items, it had reached out to its customers to ensure that infringing content was removed from their servers and the infringing material was, in fact, removed.

In sum, the Court would GRANT Steadfast's motion for summary judgment and dismiss Plaintiff's contributory copyright infringement claim with prejudice.

### C. Contributory Trademark Infringement

"To be liable for contributory trademark infringement, a defendant must have: (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied."  *See Visa*, 494 F.3d at 807 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).  "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement."  *Id.* (citing *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 439 n.19 (1984)).  "For liability to attach, there must be 'direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'"  *Id.* (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980,

---

[15] In *Louis Vuitton*, the NOI's "demanded that Defendants either remove the infringing content from their servers or require their customers to do so."  658 F.3d at 940.

21

984 (9th Cir. 1999)).

As detailed above, Plaintiff fails to establish that Steadfast materially assisted in the infringement of its copyrights.  For the same reason, Plaintiff's trademark based claims fail as well.  *See Visa*, 494 F.3d at 807.  As such, the Court would also grant the motion with respect to Plaintiff's trademark infringement claim, if it grants the motion in regards to contributory copyright infringement.

### D.  *Steadfast's MSJ Re DMCA Safe Harbor Affirmative Defense*

Steadfast seeks summary judgment in its favor on the basis that it is entitled to the safe harbor of the DMCA.  *See generally* MSJ II.  Steadfast first argues that Easton's emails were insufficient, as a matter of law, to afford notice for the purposes of the safe harbor because: (1) they were sent to Steadfast as opposed to imagebam.com and (2) they did not substantially comply with the DMCA's notice requirements listed in 17 U.S.C. § 512(c)(3)(A)(i-iv).  *See* MSJ II at 8:7-12:8.  Steadfast also argues that it satisfies 512(i)'s eligibility requirements as a matter of law, and meets the remaining eligibility requirements for § 512(c).  *See id.* at 12:9-24:23.  Steadfast's motion relies heavily on its contention that Easton's emails must be completely ignored in considering its DMCA defense.

As indicated above, the Court would grant Steadfast's motion for summary judgment on liability grounds.  *See supra* at 20-21.  For that reason, the Court does not need to decide the DMCA issue at all.  However, the Court will address the DMCA issue on a limited basis as the matter has been fully briefed.

To qualify for protection under any safe harbor of the DMCA, a defendant must establish certain threshold requirements, including that the defendant is a "service provider" as defined by the DMCA; the defendant adopted and reasonably implemented a "repeat infringer" policy that "provides for the termination in appropriate circumstances of subscribers and account holders of the service providers' system or network;" and the defendant accommodates "standard technical measures" that identify or protect copyrighted works.  *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27-28 (2d Cir. 2012).  To qualify for the safe harbor "[a] service provider must delete or disable access to known or apparent infringing material, as well as material for which he receives a statutorily compliant takedown notice.  He must also terminate repeat infringers when appropriate."  *Ventura Content, Ltd. v. Motherless, Inc.*, Nos. 13-56332, 13-56970, 2018 U.S. App. LEXIS 6307, *14 (9th Cir. Mar. 14, 2018)  In addition, under Section 512(c), a

defendant must establish:

> (A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

*See* 17 U.S.C. § 512(c)(1)(A)-(C).

Most courts have refused to determine whether a party is entitled to protection under the DMCA on a motion to dismiss and/or a motion for summary judgment, noting that "it is difficult to conclude as a matter of law [that a defendant] ha[s] 'reasonably implemented' a policy against repeat infringers."  *See Ellison*, 357 F.3d at 1080; *see also BWP Media USA*, 69 F.Supp.3d at 358-59 ("At the complaint stage, there are insufficient facts to demonstrate that the Defendants named in this action satisfy even the threshold requirements [of the DMCA].  Defendants bring no credible argument that the complaint, and attachments themselves, establish, for instance, that they have 'reasonably implemented' a repeat infringer policy."); *Viacom Int'l*, 676 F.3d at 41 (vacating district court's grant of summary judgment on DMCA defense, explaining that "further fact-finding is required to determine whether [defendant] is ultimately entitled to safe harbor protection in this case"); *but see Ventura Content*, 2018 U.S. App. LEXIS 6307 at *50 (granting summary judgment in defendant's favor on safe harbor defense where "the evidence in the record allows for only one conclusion: that [defendant] succeeded in reasonably implementing its policy of terminating repeated infringers").

In denying the Plaintiff's motion for summary judgment on the DMCA, the Court found that triable issues of fact remained as to Steadfast's compliance with § 512(i)'s requirement that Steadfast maintain and reasonably implemented a repeat infringer policy.  *See* Ruling on Plaintiff's MSJ as to Steadfast ("Ruling"), Docket No. 360 at 13.  These same issues of fact remain, and make summary judgment improper.

Further, a reasonable jury could conclude, based on certain undisputed facts, that Steadfast did not reasonably implement its repeat offender policy.  First, Steadfast admits that it never terminated a customer's account for repeat infringement.  Steadfast also admits it received over 800 emails from Easton about allegedly infringing material on imagebam.com.  Steadfast also admits that it did not click on any of the links in Easton's emails or otherwise seek to independently investigate the veracity of the allegations therein.  Additionally, Steadfast never terminated Flixya's account, or ever considered doing so.  Based on these facts, a reasonable trier of fact could conclude that Steadfast failed to reasonably implement its repeat offender policy. As such, Defendant is not entitled to summary judgment on the safe harbor.

### E.  Conclusion

The Court would GRANT Defendant's MSJ I.

## IV.  Evidentiary Rulings

### A.   Steadfast's Request for Evidentiary Rulings on Specified Objections − Docket No. 394[16]

1. The following objections are Sustained in Part, Overruled in part: 25, 26, 28, 29, 30

2. The following Objections are Overruled: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 27, 31,

3. The following Objections are Sustained: 20, 24.

### B.  Plaintiff's Request for Evidentiary Rulings – Docket Nos. 367, 369.

Plaintiff's objections fail to properly identify the specific testimony being objected to, and instead simply object to the "facts" themselves.  For that reason, Plaintiff's objections are not evidentiary in nature and fail.  The Court pointed out this shortcoming in Plaintiff's objections filed in connection with its own motion for summary judgments.

## V.  Conclusion

The Court would GRANT Defendant's MSJ I.  The Court would dismiss all claims against Steadfast with prejudice.  The Court would DENY the MSJ II as moot.

---

[16] Steadfast filed identical objections in connection with its two MSJs.  *See* Docket No. 397.