Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE LAW GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Kevin D. Neal (Az. Bar No. 011640)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000
(602) 530-8500 (fax)
kevin.neal@gknet.com

Attorneys for Plaintiff ALS Scan, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation,<br><br>               Plaintiff,<br><br>    vs.<br><br>CLOUDFLARE, INC., a Delaware corporation, et al.,<br><br>               Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**JOINT JURY INSTRUCTIONS**<br><br>Date: April 12, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br>          350 W. 1st Street<br>          Los Angeles, CA |

# **Table of Contents**

I.    PRELIMINARY INSTRUCTIONS ..................................................................1

1.    DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT THE BEGINNING OF TRIAL).......................................1

2.    DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)...2

3.    DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE ....................................................2

4.    CLAIMS AND DEFENSES ........................................................3

5.    BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ........5

6.    WHAT IS EVIDENCE ................................................................5

7.    WHAT IS NOT EVIDENCE ......................................................6

8.    EVIDENCE FOR LIMITED PURPOSE ....................................7

9.    DIRECT AND CIRCUMSTANTIAL EVIDENCE ....................7

10.   RULING ON OBJECTIONS ......................................................8

11.   CREDIBILITY OF WITNESSES ..............................................8

12.   CONDUCT OF THE JURY (BEFORE EVIDENCE) ................9

13.   NO TRANSCRIPT AVAILABLE TO JURY ............................11

14.   TAKING NOTES ....................................................................11

15.   QUESTIONS TO WITNESSES BY JURORS..........................11

16.   BENCH CONFERENCES AND RECESSES............................12

17.   OUTLINE OF TRIAL .............................................................13

18.   STIPULATIONS OF FACT .....................................................13

19.   DEPOSITION TESTIMONY ...................................................13

20. USE OF INTERROGATORIES ............................................................... 14

21. USE OF REQUESTS FOR ADMISSION ................................................. 14

22. EXPERT OPINION ............................................................................... 14

23. CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE .......... 15

24. CHARTS AND SUMMARIES RECEIVED INTO EVIDENCE ............. 15

25. EVIDENCE IN ELECTRONIC FORMAT ............................................ 15

26. DUTY TO DELIBERATE ...................................................................... 16

27. CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY
(AFTER EVIDENCE) ................................................................................. 17

28. COMMUNICATION WITH COURT .................................................... 18

29. RETURN OF VERDICT ...................................................................... 19

II.   CLAIMS AND DEFENSES ..................................................................... 19

30. PRELIMINARY INSTRUCTION - COPYRIGHT ............................... 19

31. COPYRIGHT - DEFINED .................................................................... 26

32. "COPY"—DEFINED ............................................................................ 28

33. COPYRIGHT – SUBJECT MATTER – GENERALLY ......................... 29

34. COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND
COPYING ................................................................................................... 29

35. COPRIGHT INFRINGEMENT – COPYRIGHT REGISTRATION
CERTIFICATE (17 U.S.C. § 410(c)) ......................................................... 30

36. COMPILATION AND COLLECTIVE WORKS (17 U.S.C. § 101) ......... 30

37. COPYRIGHT—FAIR USE (17 U.S.C. § 107) ..................................... 33

38. COPYRIGHT—IMPLIED LICENSE .................................................... 34

39. COPYRIGHT—FIRST SALE (17 U.S.C. § 109(a)) ............................. 35

40.   COPYRIGHT—FIRST SALE (17 U.S.C. § 109(c)) ................................... 36

41.   DEFENSE — ACQUIESCENCE ..................................................................... 37

42.   SECONDARY LIABILITY – CONTRIBUTORY INFRINGEMENT –
ELEMENTS AND BURDEN OF PROOF ........................................................ 38

43.   ALTERNATIVE SECONDARY LIABILITY — CONTRIBUTORY
INFRINGEMENT — COMPUTER SYSTEM OPERATOR — ELEMENTS
AND BURDEN OF PROOF ............................................................................. 40

44.   ALTERNATIVE SECONDARY LIABILITY—CONTRIBUTORY
INFRINGEMENT — MATERIAL CONTRIBUTION ..................................... 41

45.   SECONDARY LIABILITY — CONTRIBUTORY INFRINGEMENT —
PRODUCT OR SERVICE CAPABLE OF SUBSTANTIAL
NON-INFRINGING USE .................................................................................. 42

46.   COPYRIGHT—AFFIRMATIVE DEFENSE—COPYRIGHT MISUSE .. 42

47.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON
LIABILITY FOR TRANSITORY DIGITAL NETWORK
COMMUNICATIONS (17 U.S.C. § 512(a)) ....................................................... 44

48.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON
LIABILITY FOR SYSTEM CACHING (17 U.S.C. § 512(b)) ......................... 46

49.   DMCA Defenses – Conditions to Eligibility (17 U.S.C. § 512(i)) ............. 49

50.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION OF
LIABILITY—NO REQUIREMENT OF MONITORING OR
INVESTIGATION ........................................................................................... 50

51.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION OF
LIABILITY—NO EFFECT UPON DEFENSE OF NONINFRINGEMENT OF
FAILURE TO ESTABLISH AFFIRMATIVE DEFENSE ................................ 50

52.   COPYRIGHT – DAMAGES – STATUTORY DAMAGES ..................... 51

53.   COPYRIGHT DAMAGES — STATUTORY DAMAGES — REGISTRATION BEFORE FIRST INFRINGEMENT ..................................... 52

54.   DAMAGES — STATUTORY DAMAGES — SERIES OF ONGOING SEPARATE INFRINGEMENTS .......................................................... 54

55.   COPYRIGHT — DAMAGES — STATUTORY DAMAGES — FACTORS ............................................................................................... 55

56.   COPYRIGHT—DAMAGES—INNOCENT INFRINGEMENT  (17 U.S.C. § 504(c)(2)) .......................................................................................... 55

57.   COPYRIGHT – DAMAGES – WILLFUL INFRINGEMENT ................ 56

58.   DAMAGES—MITIGATION ....................................................... 57

59.   DIRECT V. CIRCUMSTANTIAL EVIDENCE – *INFRINGEMENT OF COPYRIGHT* ................................................................................... 58

60.   KNOWLEDGE OF INFRINGEMENT ........................................ 58

61.   INFRINGEMENT NOTICES VIA EMAIL ................................. 59

62.   MATERIAL CONTRIBUTION BY INTERNET SERVICE PROVIDERS 60

63.   TERMINATION OF SERVICE ................................................... 61

64.   CLOUDFLARE'S CDN NETWORK AND CACHING .......................... 62

65.   CONTRIBUTORY LIABILITY – DNS SERVICE................................... 63

66.   UPLOADING OR DOWNLOADING ELECTRONIC WORKS............. 64

The parties hereby submit their proposed jury instructions.  Where disagreement exists, ALS's proposal is presented in **blue bold** and Cloudflare's proposal is printed in ***red bold italics***.  The footnotes also reflect the contributions of the parties in similar fashion.

# I.   PRELIMINARY INSTRUCTIONS

### 1.   DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT THE BEGINNING OF TRIAL)

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set of instructions to refer to throughout the trial.  These instructions are not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Model Jury Instruction (NCMJI) 1.2

## 2.    DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

Source: NCMJI 1.3

## 3.    DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it

to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Source:   NCMJI 1.4 [adapted to Judge Wu's practices]


## 4.   CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, ALS Scan, asserts claims against the defendant, Cloudflare Inc., for contributory copyright infringement.

ALS Scan is a company that owns the copyright to a library of adult photographs.  ALS Scan operates two websites, alsscan.com and alsangels.com, which customers can access for a monthly subscription fee.

Defendant Cloudflare is a company that provides services that improve website safety and performance.  Cloudflare's services include Internet security services, content delivery network services, and domain name system services. Cloudflare does not provide Internet access, search, or website hosting services.

**ALS Scan, asserts that Cloudflare is contributorily liable for copyright infringement on the following sites, all of which ALS Scan contends were were customers of Cloudflare at certain points in time: artofx.org, bestofsexpics.com, cumonmy.com, fboom.me, greenpiccs.com, imagetwist.com, imgchili.net, imgflash.net, imgsen.se, imgspice.com, imgspot.org, imgtrex.com, img.yt, namethatpornstar.com, slimpics.com, stooorage.com and vipergirls.to.  ALS Scan has the burden of proving these claims.**

***There is no claim in this case that Cloudflare itself directly infringed ALS copyrights.  Instead, ALS Scan asserts that other people have directly***

*infringed its copyrights by uploading ALS Scan photographs to certain websites that allow others to view and download photographs.  ALS Scan asserts that seventeen such websites used Cloudflare's services.  ALS Scan alleges that Cloudflare's services substantially assisted infringement by people using these websites, that Cloudflare had actual knowledge of specific infringement of ALS Scan copyrights, and that Cloudflare failed to take simple measures to prevent further harm to ALS Scan copyrights.  ALS Scan has the burden of proving these claims.*[1]

Cloudflare denies ALS Scan's claims **and also contends that it has certain affirmative defenses.  Cloudflare has the burden of proof on its affirmative defenses.**  *Cloudflare denies that ALS Scan can prove the elements of direct infringements for which Cloudflare can be liable; Cloudflare also denies that ALS Scan can show that Cloudflare bears legal liability for the websites.  Cloudflare also alleges that it is entitled to certain "safe harbor" defenses that the copyright law provides to online service providers, which would prevent monetary recovery even if there were copyright infringement.* [2]

---

[1] **ALS: As discussed below in several places and in ALS's opposition to Cloudflare's motion to certify for appeal, the Ninth Circuit has not eliminated constructive knowledge from the standards for contributory liability, which remains in the pattern instruction, nor has the pattern instruction included the "simple measures" language urged by Cloudflare.**

*Cloudflare:  ALS ignores the fact that the official Comment to the model instruction for contributory infringement specifies a different formulation, not the default formulation, for claims against computer system operators as in this case.  See Comment to NCMJI 17.21.  If by this point ALS indicates that it is waiving an argument under the Amazon.com-Grokster standard for contributory infringement, it would be productive for the Court to clarify that point.*

[2] **ALS: This language deviates substantially from the pattern instruction and is not appropriate.  The reference to ALS being unable to provide that "it bears legal liability for the websites" is confusing and doesn't track the language of the pattern instruction for contributory infringement.  As discussed below, ALS does not believe, as a matter of law, that Cloudflare qualifies for any safe harbor defenses.**

ALS Scan denies Cloudflare's affirmative defenses.

Source:   NCMJI 1.5 (revised)

### 5.    BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source: NCMJI 1.6 [revised]

### 6.    WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

Source: NCMJI 1.9

_____

*Cloudflare:  ALS has no right to censor Cloudflare's statement of its own defenses, which accords with unanimous Ninth Circuit law.  In response to ALS's comment, Cloudflare replaced "it" with "Cloudflare" to ensure that the meaning is clear.*

### 7.    WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

 1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: NCMJI 1.10 [revised]

## 8.    EVIDENCE FOR LIMITED PURPOSE

*Some evidence may be admitted only for a limited purpose.*

*When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.* [3]

Source:   NCMJI 1.11

## 9.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Source: NMCJI 1.12

---

[3] **ALS is not aware of any evidence in this case that would be offered for a limited purpose, nor has Cloudflare suggested what that evidence would be.**

*Cloudflare: This instruction is necessary because, for example, the Court might admit Mr. Easton's numerous emails for the purpose of showing the fact of his communications without admitting them for the many incompetent and hearsay assertions in them. Cloudflare explained the numerous defects in Mr. Easton's communications in its motions in limine nos. 1, 5, 7, and 8.*

## 10.   RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source: NMCJI 1.13

## 11.   CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source:   NCMJI 1.14

## 12.    CONDUCT OF THE JURY (BEFORE EVIDENCE)

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your fellow

jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial

process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

Source:   NCMJI 1.15


## 13.    NO TRANSCRIPT AVAILABLE TO JURY

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

Source:   NCMJI 1.17

## 14.    TAKING NOTES

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

Source:   NCMJI 1.18

## 15.    QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

Source: NCMJI 1.19

## 16.    BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source:   NCMJI 1.20

## 17.    OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Source:   NCMJI 1.21

## 18.    STIPULATIONS OF FACT

The parties have agreed to certain facts to be placed in evidence as Exhibit __. You must therefore treat these facts as having been proved.

Source: NCMJI 2.2

## 19.    DEPOSITION TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of Alex Kirn, Amnon Lisbona and Matthew Prince were taken prior to trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person
reading the questions or answers.

Source: NCMJI 2.4 [revised]

## 20.    USE OF INTERROGATORIES

Evidence may be presented to you in the form of answers of one of the parties
to written interrogatories submitted by the other side. These answers were given
in writing and under oath before the trial in response to questions that were
submitted under established court procedures. You should consider the answers,
insofar as possible, in the same way as if they were made from the witness
stand.

Source: NCMJI 2.11 [revised]

## 21.    USE OF REQUESTS FOR ADMISSION

Evidence may be presented to you in the form of admissions to the truth of
certain facts.  These admissions were given in writing before the trial, in
response to requests that were submitted under established court procedures.
You must treat these facts as having been proved.

Source:   NCMJI 2.12

## 22.    EXPERT OPINION

You may hear testimony from Shahram Ghandeharizadeh, Barbara Luna, Jeff
Kinrich, Trey Guinn, Justin Paine, and Nick Sullivan, who may testify to
opinions and the reasons for his or her opinions. This opinion testimony is
allowed, because of the education or experience of the witnesses.

Such opinion testimony should be judged like any other testimony. You may
accept it or reject it, and give it as much weight as you think it deserves,

considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source: NCMJI 2.13 [revised]

## 23.    CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source:   NCMJI 2.14

## 24.    CHARTS AND SUMMARIES RECEIVED INTO EVIDENCE

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: NCMJI 2.15 [revised]

## 25.    EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

 A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits

received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

 If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

 The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

Source: NCMJI 2.16 [revised]


## 26.    DUTY TO DELIBERATE


Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:   NCMJI 3.1

## 27.   CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY (AFTER EVIDENCE)

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it [, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or

17

Joint Jury Instructions

view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

Source:   NCMJI 3.2

## 28.    COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone— including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Source:   NCMJI 3.3

**29.   RETURN OF VERDICT**

A verdict form has been prepared for you.   [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

Source:   NCMJI 3.5

## II.   CLAIMS AND DEFENSES

**30.   PRELIMINARY INSTRUCTION - COPYRIGHT**

The plaintiff, ALS Scan, claims ownership of copyrights and seeks damages against the defendant, Cloudflare, for contributory copyright infringement. Cloudflare denies these allegations and has asserted certain affirmative defenses. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from [**reproducing, distributing, performing, displaying, or preparing derivative works from the work**[4]] [*exercising certain rights*] covered by copyright for a specific period of time.

---

[4] *Cloudflare objects to the oversimplification of the rights in this formulation.  The jury should receive instruction that specifically tracks the rights in section 106, which appear below.*

**ALS: ALS's proposed wording tracks 17.1 exactly.  ALS does not believe that the actual words of the pattern instruction should be swapped for a vague reference to "exercising certain rights," even though, as Cloudflare points out, copyright is again defined in 17.2.**

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

 "[C]opyright law does not distinguish between pornographic and non-pornographic works, so the nature of the sexual material that [ALS] creates . . . is irrelevant."

## HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. **A copyright registration form is prima facie, or "initial," evidence of ownership of the copyright.[5]**

## PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, ALS Scan, contends that the defendant, Cloudflare, is liable for having contributed to infringements of plaintiff's copyrights by other persons.  The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyrights, that others engaged in direct infringements of those works, and that defendant *induced, caused, or* materially contributed[6] to the infringement of others with knowledge of the

---

[5] *Cloudflare: this is not in the model instruction. Since the parties have omitted references to assignments of copyright and there is no apparent dispute regarding ownership of copyright, this is superfluous and may be misleading.*

[6] *Cloudflare asserts that the instruction should be limited to inducing infringement by clear expression or other affirmative steps to foster infringement under Grokster, 545 U.S. at 936-37.  Given the Court's earlier rulings, however, Cloudflare submits this instruction covering a material*

1  infringements.[7]  Preponderance of the evidence means that you must be
2  persuaded by the evidence that an element of proof is more probably true than
   not true.

3

4

5

6

7

8

9  _____

10

11  *contribution standard.  It uses the "induced, caused, or materially*
12  *contributed" language because that exactly reflects the "material*
    *contribution" formulation exactly as the Ninth Circuit used it in Fonovisa,*
13  *drawing from the Second Circuit's phrasing in Gershwin.  "The classic*
14  *statement of the doctrine is in Gershwin, 443 F.2d 1159, 1162: '[O]ne who,*
    *with knowledge of the infringing activity, induces, causes or materially*
15  *contributes to the infringing conduct of another, may be held liable as a*
16  *"contributory" infringer.'   See also Universal City Studios v. Sony Corp. of*
    *America, 659 F.2d 963, 975 (9th Cir.1981), rev'd on other grounds, 464 U.S.*
17  *417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (adopting Gershwin in this*
18  *circuit)."  Fonovisa v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir.*
    *1996)(quotations and citations in original).  See also Amazon.com, 508 F.3d*
19  *at 1171 (same language "induces, causes, or materially contributes").  In this*
20  *context, it appears that all three verbs together suggested the standard for*
    *"material contribution" and should be considered together as a single*
21  *formulation. This is especially important because the words "material*
22  *contribution" are not familiar to ordinary persons serving as jurors but gain*
    *significance in the context of this formulation.*
23

24  **ALS: the Court has already rejected Cloudflare's errant theory that**
25  **inducement is a necessary element of a contributory copyright case, and**
26  **that inducement and material contribution are alternatives.  Interjecting**
    **the terms "induced" and "caused" will confuse the issues.  Doc. 405.**
27

28  [7] *Cloudflare suggests this change to provide the full context of the "material*
    *contribution" theory.*

LIABILITY FOR INFRINGEMENT[8]

One who reproduces, publicly distributes *copies to the public by sale or other transfer of ownership, or by rental, lease, or lending*[9], or publicly displays copies of a copyrighted work without authority from the copyright owner directly infringes the copyright *unless the actions constitute fair use or a redistribution of copies from lawful owners, or unless the plaintiff licensed the acts it alleges to be direct infringement*.[10]

_____

[8] *Cloudflare believes that the separate instruction below, "COPYRIGHT-DEFINED" belongs here in place of this section. If this formulation is used, the instruction should acknowledge the limitations on the rights of a copyright owner.*

[9] **ALS: This addition is not in the pattern instruction.**

*Cloudflare: to the extent this instruction refers to "distribution," it must incorporate the specific language from the "distribution right" definition in section 106(3), 17 U.S.C. § 106(3). "Distribution" itself is a broad term. The distribution right applies only to certain objects, namely "copies" (which section 101 of the Copyright Act defines as "material objects"), and only to certain types of transactions (namely sales, ownership transfers, rentals, leases, or lendings). There is no evidence of any distribution of material objects, or of any relevant transactions, in this case.*

**ALS: a) there isn't anything a pattern instruction "must" include at Cloudflare's insistence; b) "Uploading or downloading works protected by copyright without the authority of the copyright owner is an infringement of the copyright owner's exclusive rights of reproduction and/or distribution." https://www.copyright.gov/help/faq/faq-digital.html (emphasis added)**

[10] **ALS: This language is not in the pattern instruction. Plus, there is no fair argument from the evidence that the presence of galleries of ALS photos on sites with no license or authority from ALS constitutes a "fair use," a "redistribution of copies from lawful owners" or were uses licensed by ALS. Cloudflare's fair use argument has already been rejected. Doc. 188 pp. 19-25. This is inserted to confuse the issues and the jury.**

# CONTRIBUTORY INFRINGEMENT[11]

---

*Cloudflare:  The pattern instruction misleadingly suggests that infringement can occur without a jury's consideration of that certain conduct is not infringement.  The Copyright Act states explicitly that the rights of a copyright holder are subject to numerous other provisions.  See 17 U.S.C. § 106 ("Subject to sections 107 through 122, the owner of copyright … has the exclusive rights…).  Section 107 makes clear that fair use activities and distributions of lawful copies are not infringements.  See 17 U.S.C. § 107 ("Notwithstanding the provision[] of section 106 … fair use…is not an infringement of copyright); Lenz v. Universal Music Corp., 815 F.3d 1145, 1151-53 (9th Cir. 2015)(fair use is a use authorized by the law and not an excuse). See also 17 U.S.C. § 109(a) ("Notwithstanding the provisions of section 106(3), the owner of a particular copy … lawfully made … is entitled, without the authority of the copyright owner, to sell or otherwise dispose of possession of that copy…."; id. § 109(c) ("Notwithstanding the provisions of section 106(5), the owner of a particular copy lawfully made…, or any person authorized by such owner, is entitled to, without authority of the copyright owner, to display… [stating certain conditions]").  In this case there is ample evidence for the jury to determine that, if any distributions of "copies" or public displays of "copies" are at issue, those distributions and public displays that emanated from ALS's own customers, who lawfully obtained their "copies" from ALS through the download facilities that ALS offered and advertised to its customers. Moreover, there is ample evidence for the jury to determine that ALS granted an implicit license to its customers to make reproductions of its works in copies, which would make those customers lawful owners of the "copies."*

[11] *Cloudflare believes that a standalone instruction on contributory infringement is appropriate (see below). It also believes that this statement misstates the law regarding clams against computer system operators after Amazon.com and Giganews. Instead, an instruction drawn from the official Comment on NCMJI 17.21, specific to claims against computer system operators, is appropriate.*

**A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and materially contributes to the activity. [12]**

NCMJI 17.1 [revised]; *Ventura Content v. Motherless, Inc.*, No. 13-56332 (9th Cir. 3/14/18).

*A computer system operator is liable for copyright infringement by another if the operator has actual knowledge of specific infringements and fails to take available simple measures to prevent further harm to the copyrighted works.*

Comment to NCMJI 17.21 regarding specific application of this standard to computer system operators under *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007), and *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017).

---

**ALS: this is the language from the pattern instruction.  Yes, the introductory instruction and later instructions repeat themselves somewhat, but what's the problem with that?**

[12] *Cloudflare objects to ALS's formulation because it disregards the requirement of actual knowledge of specific infringing activity. It supplies language from the official Comment to NCMJI 17.21, regarding contributory infringement, that specifically applies to claims against computer system operators.*

**ALS: this reflects Cloudflare's errant theories that the courts have created new standards of contributory liability for "computer system operators." Contrary to Cloudflare's assertions, the courts have not eradicated liability for computer operators based upon constructive knowledge.  See ALS Opp. to Cert. Motion, Doc. 452 and Doc. 405.  While some courts talk about "simple measures" and some don't, the wording variations are all different ways of saying that, with knowledge of infringement, service providers should cease aiding the infringement, either by terminating service or taking available action.  Id.  The better course is to stick with the pattern instruction.**

1

2

### *DEFENSES TO INFRINGEMENT*[13]

3

*There is no copyright infringement when a person makes uses a work with authorization, makes fair use of the copyrighted work, when the plaintiff misuses the copyright by abusing the copyright power to control matters outside its statutory rights, when the plaintiff has granted a person an implied license to use the plaintiff's copyrighted work, or when a person who is an owner of lawful copies of the plaintiff's copyrighted works engaged in a distribution of those copies or certain public displays of those copies.*

4

5

6

7

8

9

*For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial. A use is considered de minimis if it is so meager and fragmentary that the average audience would not recognize the appropriation.*

10

11

12

13

14

*Copying might also be considered de minimis when the use of the work is so fleeting or trivial that it is a trifle with which the law should not be concerned. Sometimes even copying the entire work or much of the work can be de minimis under this definition.*[14]

15

16

17

---

18

19

[13] *Cloudflare: ALS omitted from the instruction the section of the model that concerned "defenses to infringement."  Cloudflare adds it here and has tailored it to the contours of this case.  Cloudflare also includes the additional provisions for substantial or de minimis infringement from the official Comment to the section in the instruction.*

20

21

22

23

[14]  **ALS: Cloudflare made no effort to use the language pertaining to defenses in 17.1; this instruction is a wholesale rewrite of the pattern instruction.  Plus, there isn't a single "defense" referenced herein that has any fair grounding in the issues or evidence.  There is no evidence that any third party who uploaded copies of ALS's works onto pirate sites did so with "authorization."  The Court has already rejected fair use.  There is no evidence supporting a defense of "copyright misuse."  ALS has not granted any third party an implied license to upload copies of ALS works to pirate sites, nor does ALS offer copies of its works for purchase and sale, such**

24

25

26

27

28

NCMJI 17.1 (adapted to the facts of this case) and comment regarding "Defenses to Infringement," omitting quotation marks, citations, and parentheticals.

### 31.    COPYRIGHT - DEFINED

Copyright is the exclusive right to:

1. reproduce the copyrighted work in copies;

2. distribute copies of the copyrighted work to the public by sale or other transfer of ownership or by rental or lease or lending; and

3.  display publicly a copyrighted pictorial work.

*The rights of a copyright owner are subject to certain limitations.  They include the fair use and first sale limitations, which I will describe to you later.*[15]

---

that the "first sale" doctrine applies.  This case involves reproductions of entire copies of ALS works.  References to "substantial" or "de minimis" copying have nothing to do with the facts of the case and are inserted to confuse the issues and the jury.  ALS has more detailed responses to these defenses as they are individually presented below.

[15] **ALS: The Court has already ruled that Cloudflare's potential liability for contributory infringement is not subject to a fair use defense, and there is no prima facie argument that the efforts of direct infringers to place infringing copies of ALS works on unlicensed sites constitutes a fair use. Doc. 188 pp. 19-25.  ALS does not offer copies of its works for purchase and sale, and so none of ALS's subscribers would be authorized to subsequently dispose of their copy without ALS's permission under the "first sale" doctrine.  17 U.S.C. § 109(a).  These are simply efforts by Cloudflare to confuse the issues.**

It is the owner of a copyright who may exercise these exclusive rights.  In general, copyright law protects against *[the exercise of one of those rights with respect to]*[16] **[reproduction, public distribution and public display of]**[17]

---

*Cloudflare: There is abundant evidence that ALS advertised, facilitated, and authorized its customers' ability to make downloads of its works (which, in copyright terms, are "reproductions" in "copies" of the works).  What those customers did afterwards may have constituted fair use to the extent they exercised the rights that section 109 grants to owners of lawfully-made copies. Moreover, the jury will have ample evidence that any reproductions in cache that Cloudflare's customers made could be fair use, even as Google's uses of images in its cache for the purpose of creating its index and operation its search engine were fair use.  See Amazon.com, 508 F.3d at 1163-68 (cached thumbnails were fair use, even where they were of infringing images); id. at 1169-70 (reproductions in caches of users' browsers were fair use; automatic copying had no more than a minimal effect on the plaintiff's rights).In the order that ALS cites, the Court denied Cloudflare's motion for summary judgment and did not grant partial summary judgment against Cloudflare on the question of fair use. It remains for the jury to consider the fair use question as inherent in the question of underlying direct infringements that <u>ALS must prove</u>.  In the landmark contributory infringement case involving third-party fair use, the Supreme Court held that the <u>plaintiffs had not carried their burden on the question of fair use</u>. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 434, 451 (1984). All of these matters are for the jury to consider, and Cloudflare's language for this instruction is appropriate.*

[16] *Cloudflare believes that, whenever copyright rights are discussed, the precise language of section 106 (which appears above) should be used rather than an oversimplification.  This is especially important in this case because ALS casually throws around the word "distribution" without reference to "copies" within the statutory definition of section 101 and without identifying any "sale or other transfer of ownership, or []rental, lease, lending" that would be necessary to fall within the scope of section 106(3), 17 U.S.C. § 106(3).*

**ALS: "Uploading or downloading works protected by copyright without the authority of the copyright owner is an infringement of the copyright**

27

identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

NCMJI 17.2 [revised]

### 32.   "COPY"—DEFINED

*A "copy" within the meaning of copyright law means "material object in which a work is fixed and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."[18]*

---

owner's exclusive rights of reproduction and/or distribution." https://www.copyright.gov/help/faq/faq-digital.html (emphasis added)

[17] **ALS: These words come from the pattern instructions and state the three alleged violations of ALS's exclusive rights under 17 U.S.C. § 106 that are involved in this case.**

*Cloudflare:  see Cloudflare's comment in previous footnote.*

[18] **ALS: This has nothing to do with Instruction 17.2 or the case.  There isn't a dispute that the case involved copies of ALS's photographs.  So what's the point of defining a "copy" except to confuse the issues before the jury?**

*Cloudflare:  The Copyright Act has a very specific definition of "copies" in section 101, which are relevant to a copyright owner's rights under section 106(1) to reproduce a work in copies, under section 106(3) to distribute copies of a copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; under section 106(5) to display copies of a work. See 17 U.S.C. § § 106(1), 106(3), 106(5).  The meaning of "copies" is critical to a correct application of the law with respect to those rights, especially in the context of the section 106(3) and 106(5) rights and the section 109(a) and section 109(c) limitations.*

Source: 17 U.S.C. § 101 (definition of "copies," adapted); final comment of NCMJI 17.2 (referring to definitions of terms)

## 33.   COPYRIGHT – SUBJECT MATTER – GENERALLY

The works involved in this trial are known as pictorial works.

You are instructed that a copyright may be obtained in photography.

These works can be protected by copyright law.  Only these parts of the works consisting of original works of authorship fixed in any tangible form of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, are protected by the Copyright Act.

Source:   NCMJI 17.3 (adapted)

## 34.   COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING

Anyone who violates one of the copyright owner's exclusive rights during the term of the copyright without authorization by the law or the owner infringes the copyright.

To establish direct infringement of a plaintiff's copyright, the plaintiff has the burden of proving by a preponderance of the evidence that:

1.      the plaintiff is the owner of a valid copyright; and

2.      The direct infringer violated one of the plaintiff's exclusive rights.

If you find that the plaintiff has proved both of these elements ***with respect to a particular work,*** the plaintiff has established a direct infringement of that work. If, on the other hand, the plaintiff failed to prove either ***or both*** of those elements ***for a particular work***, then the plaintiff has not established a direct

infringement *of that work, and you should render a verdict for the defendant with respect to that work*.[19]

Source: NCMJI 17.5 (adapted)


### 35. COPRIGHT INFRINGEMENT – COPYRIGHT REGISTRATION CERTIFICATE (17 U.S.C. § 410(c))

A copyright owner may obtain a certificate of registration from the Copyright Office.

The evidence in this case includes as Exhibits ___, certificates of copyright registration from the Copyright Office.  You are instructed that the certificates are sufficient to establish that there is a valid copyright in the works that the certificates identify.

Source:   NCMJI 17.7 (adapted)


### 36. COMPILATION AND COLLECTIVE WORKS (17 U.S.C. § 101)

*An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting*

---

19 **ALS:  The additional language is not in the pattern instruction.  The reference to a verdict for the defendant unfairly suggests that the jury is going to run through a picture by picture verdict as to whether direct and contributory infringement was proven.  ALS contends that some100,000 of its works were infringed.  ALS submits that a picture by picture analysis is meant to confuse and unduly prolong the issues.**

*Cloudflare: ALS has the burden of proving every infringement for which it seeks damages. It is free to seek to prove infringements by circumstantial evidence if it chooses, but it bears the burden of proof on each infringement, and the evidence shows widely varying circumstances of many of the alleged direct infringements.  The jury instruction has been adapted appropriately to a multiple-works claim.*

*materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.*

*A collective work is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.*

*The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.*[20]

---

20  **ALS: ALS's works are neither "compilations" nor "collective" works. These instructions don't fit the facts of the case and are intended to confuse.**

**A compilation is an assembly of <u>individually unprotectible</u> elements which are selected, coordinated or arranged in such a way that the resulting work as a whole constitutes a single work of authorship.  The classic case is *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) concerning a phone book.  Individual names and phone numbers are facts not protectable under copyright, but an arrangement of names and numbers in a phone book might be protected as a single "compilation" depending upon the creativity involved in the arrangement.  "[T]he principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection."  Id. at 358.**

**Here, there is no dispute that ALS's photos are individually protected by copyright.  The jury is so instructed by Instr. 17.3.  "When a photographer has fixed in image in a tangible medium of expression, he owns the copyright."  *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014).   Though ALS could have identified its photographs as elements of a compilation in Field 6 of its Form VA registrations, it did not.**

**A "collective" work is a collection of <u>pre-existing</u> copyrighted works into a new whole.  For example, in *Alaska Stock, LLC , supra,* individual images of various copyright owners were assembled into a new collection.**

**The facts of this case do not fit Cloudflare's "compilation" or "collective" work" theories.  Here, the fact that ALS's hired photographers shot numerous individual photos of a model does not render all photos of that**

1

2

3   model a "compilation" or "collective work" as those terms are defined

4   under the copyright law.

5   *Cloudflare: this case emphatically concerns compilations and collective*

6   *works. ALS has consistently referred to its "library," its "photosets," its*

7   *"galleries" and its "websites." Each of those is a compilation. Moreover, the*

8   *evidence shows that ALS regularly added "updates" consisting of new*

9   *galleries to its website. Those updates consisted of groups of individual*

10  *photographs. ALS selected, combined, and assembled those photographs to*

11  *form compilations, which it adorned with "cover pages" just like issues of a*

12  *periodical. Moreover, by selecting, assembling, and combining numerous*
    *updates with preexisting versions of the ALS websites, ALS caused each of*
    *those websites to be a series of updated compilations (each of which was a*
    *derivative work of its predecessors within the meaning of 17 U.S.C. § 101*
    *(definition of "derivative work")).*

13

14  *The statement by ALS that a compilation consists of individually*

15  *unprotectable elements is both wrong and profoundly ignorant. While a*

16  *compilation may consist of a creative selection and arrangement of*

17  *unprotectable elements, there is no requirement that it do so. The statutory*

18  *damages provision of the Copyright Act expressly recognizes that*

19  *compilations may include numerous copyrighted works when it provides that*
    *"[f]or the purposes of this subsection [allowing statutory damages calculated*

20  *on a "per work" basis], all the parts of a compilation constitute one work."*

21  *17 U.S.C. § 504(c). That would be nonsensical if all parts of a compilation*

22  *must be uncopyrightable. The Second Circuit recognized that albums of*
    *musical recordings constituted compilations of the underlying sound*

23  *recordings, and it affirmed a statutory damages award that treated them all as*

24  *one work. See Bryant v. Media Right Prod'ns, Inc., 603 F.3d 135, 140-143*
    *(2d Cir. 2010); see also Capitol Records, Inc., v. MP3TUNES, LLC, 28*

25  *F.Supp.3d 190, 191-92 (S.D.N.Y. 2014). The fact that ALS may not have*
    *registered its works as compilations makes no difference. See Bryant Media,*

26  *603 F.3d at 140 and n.4 (individual songs separately copyrighted, yet only one*
    *award per album). "Although parts of a compilation or derivative work may*

27  *be 'regarded as independent works for other purposes[,]' for purposes of*
    *statutory damages, they constitute one work. H.R.Rep. No. 94-1476, at 162*

28  *(1976)." Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 285 (4th Cir. 2003).*

32

Source:   NCMJI 17.16, amplified with the complete definition of "compilation" and with the definition of "collective work" from 17 U.S.C. § 101.

## 37.    COPYRIGHT—FAIR USE (17 U.S.C. § 107)

*One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.*

*Defendant contends that any caching or transmission of the copyrighted work in the course of general-purpose Internet services, including protections of websites against cyberattacks and optimizing Internet transmissions and traffic was fair use.*

*In determining whether the use made of the work was fair, you should consider the following factors:*

*(1)    the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;*

*(2)    the nature of the copyrighted work;*

*(3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and*

*(4)    the effect of the use upon the potential market for or value of the copyrighted work.*

*The facts are not exclusive, and other considerations may make a use of a "fair use."*

*If you find that the uses of the plaintiff's works were fair uses, your verdict should be for the defendant.*[21]

Source:   NCMJI 17.22 (adapted; reference to "affirmative defense" deleted for secondary liability context)

## 38.   COPYRIGHT—IMPLIED LICENSE

*Defendant Cloudflare contends that it is not liable for copyright infringement because the plaintiff granted plaintiff's customers an implied license in the plaintiff's copyrighted work.  The plaintiff cannot claim copyright infringement against a person who copies, distributes, or uses the plaintiff's copyrighted work if the plaintiff granted the defendant an implied license to do so.*

*An implied license to plaintiff's customers may be found if the plaintiff intended that its customers copy, distribute, or use the plaintiff's work.*

*An implied license may be implied by conduct.*

*If you find by a preponderance of the evidence that the plaintiff granted its customers an implied license to copy, distribute, or use the copyrighted works, your verdict should be for the defendant.*[22]

---

[21] **ALS:  This instruction has no potential application to the facts of the case, has already been rejected and is intended to confuse the jury.  Fair use is a potential defense to direct infringement.  As the Court has already ruled, there is no potential theory under which placing copies of infringing ALS works on the subject pirate sites, and causing copies of such works to be placed on Cloudflare's caching servers by engaging Cloudflare, has any kind of public interest which would render those uses fair uses.  Doc. 188 pp.19-25.**

*Cloudflare: Cloudflare explained the relevance of fair use above in connection with the section "COPYRIGHT-DEFINED."*

[22] **ALS:  This instruction has no fair basis in the evidence.  ALS granted its subscribers a limited license to download one or more images strictly for purposes of personal viewing convenience.  ALS did nothing to "imply" that its users had authority to create copies of its works and place those**

Source:   NCMJI 17.25, adapted to secondary liability context.

### 39.    COPYRIGHT—FIRST SALE (17 U.S.C. § 109(a))

*Defendant Cloudflare contends that it is not liable for copyright infringement by contributing to infringements by distribution of copies of the plaintiff's copyrighted works because the plaintiff sold or otherwise transferred ownership of the copies to persons who then caused the distribution of those copies.  The plaintiff may not claim copyright infringement by persons who participated in distributions of lawful copies by their owners.*

*If you find that the defendant was distributing copies of the plaintiff's copyrighted works and that the plaintiff sold or otherwise transferred ownership of those copies to persons who distributed them, your verdict should be for the defendant on plaintiff's copyright infringement claim. Source:  NCMJI 17.26 (adapted to secondary liability context)[23]*

---

copies on sites that distributed and displayed such infringing works for free.

*Cloudflare: Ample evidence shows that ALS advertised, facilitated, and expressly allowed its users to download its images. Evidence also shows that ALS knowingly tolerated the appearance of its images, which likely came from its customers, on other sites.  ALS's argument here is simply argument, and the jury must have the opportunity to consider the fact and scope of implied licenses from ALS,*

[23] **ALS:  This instruction has no fair basis in the evidence.  ALS granted its subscribers a limited license to download one or more images strictly for purposes of personal viewing convenience.  There is no evidence that ALS sells its right, title and interest in copies of its works to subscribers.  *17 U.S.C. § 109(a).*  Plus, the "first sale" doctrine under Section 109(a) only enables the owner of a purchased copy to resell that copy without violating the copyright owner's distribution rights under 17 U.S.C. § 106(3).  *17 U.S.C. § 109(a).*  A "first sale" right to an ALS photograph would therefore not allow the buyer to make copies of that copy and upload the copy onto a pirate site for public display.  Additionally, Cloudflare has not shown that**

### 40.   COPYRIGHT—FIRST SALE (17 U.S.C. § 109(c))

*Defendant Cloudflare contends that it is not liable for copyright infringement for participating in any public display of copies of the plaintiff's copyrighted works because the plaintiff sold or otherwise transferred ownership of the copies to persons who then caused the public displays of the copies to persons who viewed them at the places where the copies were located.  The plaintiff may not claim copyright infringement by persons who participated in such public displays of lawful copies by their owners.*

*If you find that Cloudflare participated in the public display of lawful copies of the plaintiff's copyrighted works to persons who viewed them at the places where the copies were located, and that the plaintiff sold or otherwise transferred ownership of those copies to persons who caused their public display, your verdict should be for the defendant on plaintiff's copyright infringement claim for violation of its public display rights.*[24]

---

the first sale doctrine is a defense to contributory infringement.  Finally, Cloudlfare has significantly re-written the pattern instruction.

*Cloudflare:  ALS badly understands the provisions of section 109.  They do not turn upon a typical purchase or sale; they turn upon ownership of lawfully made copies.  See 17 U.S.C. §§  109(a), 109(c). When a person has obtained a copy lawfully from a copyright holder, that authorizes the person to exercise the rights under section 109.  See UMG Recordings, v. Augusto, 628 F.3d 1175 (9th Cir. 2011) (delivery of promotional copy of CD with reservations of rights and legend "promotional use only – not for sale" triggered section 109 rights of free redistribution). ALS bears the burden of proving underlying direct infringements for which it wants to hold Cloudflare responsible; ALS must therefore address this issue; and the jury should be able to consider it with an appropriate instruction.  Cloudflare has adapted the instruction to reflect the secondary nature of the claims against Cloudflare.  Immunized distributions and displays need only emanate from an owner of lawful copies, because their immune status affects the entire chain of downsteam distributions or displays.*

[24] **ALS:  This instruction has no fair basis in the evidence.  ALS granted its subscribers a limited license to download one or more images strictly for**

Source:   NCMJI 17.26 (adapted to exhaustion of the public display right under
          section 109(c) and to secondary liability context)

## 41.   DEFENSE — ACQUIESCENCE

*On who acquiesces with knowledge of infringement over a longer
period of time is "estopped," or barred, from claiming infringement.
The elements of estoppel are:*

1. *The plaintiff had knowledge of infringements for which it seeks
   to hold a defendant responsible;*
2. *The plaintiff acted in a manner that the direct infringers could
   reasonably rely;*
3. *The direct infringers did not know that the plaintiff objected to
   their conduct; and*
4. *The direct infringers relied on the plaintiff's conduct.* [25]

---

purposes of personal viewing convenience.  There is no evidence that ALS
sells its right, title and interest in copies of its works to subscribers.  Plus,
even if ALS had sold copies of its works to subscribers, the § 109(c) first
sale right would only permit the owner of that copy to display the copy "no
more than one image at a time, to viewers present at the place where the
copy is located."  17 U.S.C. § 109(c).  In other words, an ALS subscriber
could show guests of a purchased ALS photo at a party at his home.  Even
if this first sale doctrine were available, this would not permit the owner of
the copy to upload that copy to a site with no license or authority from
ALS, where the copy could be seen by anyone in the world with an Internet
connection.

*Cloudflare: See previous footnote, which responds to virtually the same
objection by ALS.*

[25] **ALS: This instruction has no fair basis in the evidence.  ALS granted its
subscribers a limited license to download one or more images strictly for
purposes of personal viewing convenience.  There is no evidence that ALS
"acquiesced" in users uploading infringing copies of ALS works to pirate
sites with no right or authority from ALS.  There is no evidence that ALS
knew who the direct infringers were or that ALS did anything to lead the**

37

Source:   *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 979 (9th Cir. 1987), adapted to secondary liability context and to explain the obscure terms "estopped" and "estoppel"

## 42.   SECONDARY LIABILITY – CONTRIBUTORY INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF

A defendant may be liable for copyright infringement engaged in by another if it knew or had reason to know of the infringing activity and materially contributed to that infringing activity.

If you find that infringements of ALS Scan's works occurred on the web sites in question, you must determine whether Cloudflare contributorily infringed those copyrights.

ALS Scan has the burden of proving both of the following elements by a preponderance of the evidence:

1. Cloudflare knew or had reason to know of the infringing activity of the sites of which ALS Scan complains; and

2. Cloudflare materially contributed to those sites' infringing activities.

If you find that the sites of which ALS Scan complains infringed ALS Scan's copyrights and you also find that ALS Scan has proved both of these elements, your verdict should be for ALS Scan. If, on the other hand,

---

direct infringers to believe that ALS was okay with uploading ALS content to sites where it could be viewed by the world for free.

*Cloudflare: There is ample evidence that ALS advertised, facilitated, and acquiesced in its customers' downloads of all of its images; and evidence showed that ALS personnel, including its CEO Sarah Walsh, expressly accepted and tolerated the presence of images on unauthorized websites as a consequence.  ALS's argument here is simply an argument that it is free to make to the jury, but the jury may fairly consider this defense.*

**ALS Scan has failed to prove either or both of these elements as to either Cloudflare or Steadfast, your verdict should be for those companies.** [26]

*If ALS Scan has proved underlying direct infringements, you may consider whether Cloudflare is responsible for those infringements.  If ALS Scan has not proved underlying infringements, you must return a verdict for Cloudflare. A defendant may be liable for copyright infringement engaged in by another if the defendant intentionally induced that infringing activity.*

*ALS Scan has the burden of proving by a preponderance of the evidence that:*

   *1.  a person directly infringed that ALS's copyright and*

   *2.  Cloudflare intentionally induced the direct infringer's infringement.*

*Cloudflare's intent to induce the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by Cloudflare to foster the infringement.*

*If you find that a direct infringer infringed ALS Scan's copyright and you also find that ALS Scan has proved intentional inducement as shown by clear expression or other affirmative steps by the defendant to foster infringement, your verdict should be for ALS Scan.  If, on the other hand, ALS Scan has failed to prove either or both of these elements, your verdict should be for Cloudflare.*

NCMJI 17.21 [revised]

_____

[26] *Defendant Cloudflare believes that the general instruction for contributory infringement is not appropriate for computer system operators, and it recommends the specific adaptation for this context that the Comment identifies.  See the next instruction.*

**ALS: Cloudflare's version departs widely from the pattern instruction and reflects Cloudflare's rejected theory that ALS must prove inducement in order to prove contributory copyright infringement.**

**43.    ALTERNATIVE SECONDARY LIABILITY —
CONTRIBUTORY INFRINGEMENT — COMPUTER
SYSTEM OPERATOR — ELEMENTS AND BURDEN OF
PROOF[27]**

*If the plaintiff has proved underlying direct infringements, you may consider whether the defendant is responsible for those infringements.  If the plaintiff has not proved underlying infringements, you must return a verdict for the defendant.*

*A defendant that is a computer system operator may be liable for copyright infringements of another if the defendant:*

*(1)    substantially assists the infringements,*

*(2)    has actual knowledge of the specific infringements and*

*(3)    fails to take available simple measures to prevent further damage to the copyrighted works.*

*If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for defendant.* [28]

---

[27] *Defendant Cloudflare believes that this is not correct under Grokster, but it submits this on the assumption that the Court will wish to instruct the jury on a "material contribution" theory.*

[28] **ALS:  Neither Congress nor the courts have created separate standards for contributory liability by a computer operator using the words employed by Cloudflare in this wholesale revision of the pattern instruction.  See Docs. 405, 452.  The precise wording of the standards for contributory liability vary to some degree among the many Ninth Circuit cases.  What Cloudflare is doing is making every slight wording variation into a separate instruction, thus confusing the issues.  This is why the Ninth Circuit harmonized the variations in wording into an approved pattern instruction.**

*Cloudflare: This instruction comes from Amazon.com, which Grokster further ratified.  It is current law in the Ninth Circuit.  If ALS wishes to waive any claim under this standard, it would be beneficial for the Court to confirm that fact.*

Source:    Adapted from NCMJI 17.21, and comment, with specific application to computer system operators under *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007), and *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 67 (9th Cir. 2017)

## 44.    ALTERNATIVE SECONDARY LIABILITY— CONTRIBUTORY INFRINGEMENT — MATERIAL CONTRIBUTION[29]

*If the plaintiff has proved underlying direct infringements, you may consider whether the defendant is responsible for those infringements.  If the plaintiff has not proved underlying infringements, you must return a verdict for the defendant.*

*A defendant is liable for contributory infringement only by inducing, causing, or materially contributing to another's direct infringement with knowledge of the direct infringement.  The plaintiff must prove the underlying direct infringement.*

Source:    *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

---

[29] *Defendant Cloudflare believes that this is not correct under Grokster and that it is not sufficiently detailed to follow Amazon.com, but it submits this on the assumption that the Court will wish to instruct the jury on a "material contribution" theory without following Amazon.com.*

ALS: there is no need to rewrite the pattern instruction, 17.21. Cloudflare's spins on the law of contribution as applied to Internet service providers have been rejected.  See Docs. 405, 452.

**45.    SECONDARY LIABILITY — CONTRIBUTORY INFRINGEMENT — PRODUCT OR SERVICE CAPABLE OF SUBSTANTIAL NON-INFRINGING USE**

*The sale of a product or service that has the potential to infringe does not constitute contributory infringement if the product or service is capable of a substantial non-infringing use, unless the defendant intentionally induces infringement as shown by clear expression or other affirmative steps to foster infringement.* [30]

Source:    Comment to NCMJI 17.21 adapted; *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934-35 (2005); *id.* At 942 (Ginsburg, J., concurring); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1031-33 (9th Cir. 2013) (applying rules to services).

**46.    COPYRIGHT—AFFIRMATIVE DEFENSE—COPYRIGHT MISUSE**

*Copyright misuse is an equitable defense to copyright infringement. Copyright misuse precludes enforcement of a copyright during the period of*

---

[30] **ALS:  These cases involve the "staple article of commerce" doctrine, whereby a plaintiff seeks to impute knowledge of infringement to the defendant because of the capability of an article placed into the stream of commerce to be put to infringing uses.  *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (whether VCR maker had knolwedge of infringement due to capabilities of machine to assist infringement).  This has nothing to do with the facts of the case.  Here, Steve Easton provided actual notice to Cloudflare of the nature and location of every infringing work at issue.  The Court has already agreed with ALS that the staple article of commerce doctrine does not apply here.  See Doc. 405.  *BMG Rights Management (US) LLC v. Cox Communications*, No. 16-1972 (4th Cir. 2/1/18) (rejecting this instruction).**

*Cloudflare:  Cloudflare preserves its objection. This accurately states the standard for contributory infringement after Grokster, as Justice Ginsburg summarized the law in her concurrence.*

*misuse, but it does not invalidate the copyright.  Copyright misuse "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Act."  The purpose of the defense is to prevent copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly.* **31**

---

31 **ALS:  This instruction has no fair basis in the evidence.  ALS has the right to require users to view its copyrighted works by paying for access to secure pages on ALS sites, and is using this right to seek to stop others from displaying those works on websites where the materials are available for free.  What does this have to do with "use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright [Act]?"** *Practice Management Information Corp. v. American Medical Association*, **121 F.3d 516, 520 (9th Cir. 1997).**

*Cloudflare: The Supreme Court in Sony opined that the possession of a copyright statutory monopoly does not give someone a right to control another's technology, in that case to ban distribution of video tape recorders. See Sony, 464 U.S. at 440-42 and nn. 20-21. Here, where there is no claim that Cloudflare has affirmatively acted in any way to infringe or promote the infringement of ALS's rights, ALS's claim seeks, in effect, to exert patent-like control over Cloudflare's technology.  But ALS has no legitimate right to control Cloudflare's technology.  As the Ninth Circuit observed in Practice Management, which ALS cited, the "defense of copyright misuse 'forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office.'" 121 F.3d at 520 (quoting Lasercomb America, Inc., v. Reynolds, 911 F.2d 970, 976 (4th Cir. 1990), in turn quoting Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492 (1942)). That is exactly what ALS is trying to do here.*

**ALS: baloney.  ALS isn't trying to control Cloudflare's technology.  ALS wants Cloudflare to stop assisting its customers in reproducing, distributing and displaying infringing copies of ALS works after ALS provides Cloudflare with notice of the works infringed and their location on Cloudflare's customer sites.  Under Cloudflare's theory, every effort to require an Internet service provider to stop contributing to infringement would constitute copyright misuse.**

Source:   Comment to NCMJI 17.24

**47.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR TRANSITORY DIGITAL NETWORK COMMUNICATIONS (17 U.S.C. § 512(a))**

*Cloudflare contends that it is not liable for copyright infringement by reason of its transmitting, routing, or providing connections for material through a system or network controlled or operated by or for it, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections.  The defendant has the burden of proving the following elements of this defense by a preponderance of the evidence:*

1.   *the defendant is a service provider offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received;*

2.   *the transmission of the material was initiated by or at the direction of a person other than the defendant;*

3.   *the transmission, routing, provision of connections, or storage of the copyrighted material was carried out through an automatic technical process without selection of the material by the defendant;*

4.   *the defendant did not select the recipients of the material except as an automatic response to a request;*

5.   *no copy of the material made by the defendant in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections;*

6.   *the material is transmitted through the system or network without modification of its content;*

7.   *the defendant adopted, reasonably implemented, and informs subscribers and account holders of a policy that provides for the termination in appropriate circumstances of subscribers and*

*account holders of its system or network who are repeat copyright infringers; and*

8.    *the defendant accommodates and does not interfere with standard technical measures that are used by copyright holders to identify or protect copyrighted works.*

*A period of fourteen days of temporary storage can qualify as storage for no longer than reasonably necessary for transmission.*

*A reasonable policy for the termination of users who are repeat infringers requires the defendant to have a "working notification system, a procedure for dealing with DMCA-compliant notifications, and . . . [to] not actively prevent copyright owners from collecting information needed to issue such notifications.  However, the notification system does not have to be perfect.  To decide whether a policy was reasonably implemented, the jury may consider the defendant's response to valid notifications of claimed infringement from the plaintiff and nonparty copyright holders; it may not consider invalid notifications of claimed infringement or the defendant's responses to invalid notifications.*

*To qualify as "standard technical measures," the measures:*

*(a)    must have been developed pursuant to a consensus of copyright owners and service providers;*

*(b)    must be available to any person on reasonable and nondiscriminatory terms; and*

*(c)    must not impose substantial costs on service providers or substantial burdens on their systems or networks.*

*If you find that a defendant has proved all of these elements, your verdict should be for that defendant.  If, on the other hand, you find that a defendant has failed to prove any of these elements, that defendant is not entitled to prevail on this affirmative defense.*[32]

---

[32] **ALS:  This instruction, and defense, has no application to the case. Cloudflare doesn't provide Internet connections to consumers.  ALS is not suing Cloudflare for contributory infringement because Cloudflare provided the conduits through which infringing copies of ALS works were transmitted.  Rather, ALS is suing Cloudflare because its system creates numerous copies of works on its caching servers, the distributes infringing copies of ALS works to consumers, on whose computers the works were displayed.   Also, Cloudflare selects the point from which the infringing copies are submitted, and thus cannot be a 512(a) service provider.  See ALS MSJ Memo. Doc. 325 pp. 18-19.  ALS continues to believe that this is**

**Source:** NCMJI 17.27-28, adapted to harmonize overlapping instructions, to adapt to multiple defendants, to conform to statutory language, and to clarify the instruction with the full definition of "standard technical measures"; Comment on NCMJI 17.28 (reasonable policy, modified to conform to statutory language).

## 48.   COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR SYSTEM CACHING (17 U.S.C. § 512(b))

*Defendant Cloudflare contends that it is not liable for copyright infringement by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for it.  This is called "system caching."  Cloudflare has the burden of proving by a preponderance of the evidence that the defendant is eligible to use this defense and that the defense applies.*

*The defendant is eligible to use the defense of system caching if the defendant:*

*1.   is a provider of network communication services, online services, or network access, or is an operator of facilities for such services or access;*

*2.   adopted, reasonably implemented, and informs subscribers and account holders of its system or network of a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat copyright infringers; and*

---

**a matter of law to be decided by the Court, not a matter of factual dispute for the jury to resolve.**

**In any event, the proposed instruction is a wholesale rewrite of Instruction 17.28.**

*Cloudflare:  See the note on the source citation below.  ALS may preserve its objection, but this instruction is essential for the jury to address Cloudflare's safe harbor defenses.*

3. *accommodates and does not interfere with standard technical measures that are used by copyright holders to identify or protect copyrighted works.*

*The defense of system caching applies if:*

1. *the material was made available online by a person other than the defendant;*

2. *the material is transmitted from that other person through the system or network at that other person's direction to someone else;*

3. *the storage is carried out through an automatic technical process for the purpose of making the material available to users who request access the material from that other person after the material has been transmitted from that other person;*

4. *the system caching did not modify the content of the material;*

5. *the defendant complied with the generally accepted rules concerning refreshing, reloading, or other updating of the material if specified by the person making material available online, unless the rules were meant to prevent or unreasonably impair system caching;*

6. *the defendant did not interfere with the ability of technology associated with the material to return to the person providing the material to the defendant information that would have been available to the material's provider if later requesters of the material from the defendant had obtained the material directly from the person providing the material to the defendant;*

7. *if the person providing the material to the defendant limited access to the material by imposing a condition, the defendant did not allow access to the material unless the requester satisfied that condition; and*

8. *the defendant expeditiously removed or disabled access to the infringing material or activity upon receipt of a valid notification of claimed infringement.*

*A valid notification of claimed infringement must include:*

1. *a physical or electronic signature of a person authorized to act on behalf of the copyright owner;*

2. *identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;*

---

47

3.    *identification of the material that is claimed to be infringing or to be the subject of infringing activity, and that is to be removed or access to which is to be disabled, and reasonably sufficient information to permit the defendant to locate the material;*

4.    *information reasonably sufficient to permit the defendant to contact the complaining party;*

5.    *a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;*

6.    *a statement that the information in the notification is accurate and, under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of a copyright that is allegedly infringed; and*

7.    *a statement in the notification confirming that the material has previously been removed from the originating site, or access to it has been disabled, or a court has ordered removal or disabling of access on the originating site.*

*A copyright holder must meet these formal notification requirements for the notice of infringement to constitute evidence of either subjective or objective knowledge.  A copyright holder must consider the existence of fair use before sending a takedown notification. The burden of identifying and documenting infringing material rests with the copyright holder, not the defendant.*

*If the notification does not meet all the above requirements, then it is invalid and shall not be considered as evidence of the defendant's knowledge of specific infringing activity.  The defendant does not have a duty expeditiously to remove or disable access to infringing material or activity if the notice of claimed infringement is invalid.*

*If you find that the defendant has proved each of these elements, your verdict should be for the defendant.  If, on the other hand, you find that the defendant has failed to prove any of these elements, the defendant is not entitled to prevail on this affirmative defense.*[33]

---

[33] **ALS:  This instruction, and defense, has no application to the case. Cloudflare is not eligible for this safe harbor because its systems create cached copies of works, not for delivery to <u>Cloudflare's</u> users, but for delivery to the user of <u>other Internet service providers</u>.  See ALS MSJ Memo. Doc. 325 pp. 19-20.  ALS continues to believe that this is a matter of**

Source:    NCMJI 17.29 and comment, adapted in several respects to conform to
             the statutory language. This simplifies and omits several exceptions,
             which may need to be included if there is a genuine issue regarding
             them.

### 49.    DMCA Defenses – Conditions to Eligibility (17 U.S.C. § 512(i))

**A service provider is entitled to defenses under the DMCA for transitory digital network communications or "system caching" only if the service provider has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and accommodates and does not interfere with standard technical measures.**

**As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and**

**  A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;**

**   (B) are available to any person on reasonable and nondiscriminatory terms; and**

**   (C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.**

Source: 17 U.S.C. § 512(i)

---

**law to be decided by the Court, not a matter of factual dispute for the jury to resolve.**

**In any event, this is a wholesale rewrite of Instruction 17.29.**

*Cloudflare:  See previous footnote.*

**50.    COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION OF LIABILITY—NO REQUIREMENT OF MONITORING OR INVESTIGATION**

*The limitation of liability available to Cloudflare as an online service provider does not depend upon Cloudflare's monitoring its service or affirmatively seeking facts indicating infringing activity, except to the extent consistent with a standard technical measure as I just defined it for you.*[34]

Source:  17 U.S.C. § 512(m).

**51.    COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION OF LIABILITY—NO EFFECT UPON DEFENSE OF NONINFRINGEMENT OF FAILURE TO ESTABLISH AFFIRMATIVE DEFENSE**

*If Cloudflare fails to qualify for the limitation of liability available to online service providers, that shall not bear adversely upon your*

---

[34] **ALS:  The fact that something is in a statute doesn't mean it is appropriate as a jury instruction.  ALS isn't trying a case based upon duty to police or search for infringements, and so this instruction doesn't fit the case.  It is also hard to understand why this instruction is acceptable to Cloudflare yet Cloudflare objects to ALS's proposed special instruction that ALS is not arguing a duty to police.**

*Cloudflare:  Evidence shows that numerous communications from ALS demanded that Cloudflare run searches to identify accused works.  ALS has also repeatedly argued that Cloudflare had a duty to follow up with its customers after relaying complaints to them from copyright holders.  This instruction is appropriate in the face of the evidence and ALS's arguments.*

*consideration of Cloudflare's defense that its conduct is not infringing.*[35]

Source:  17 U.S.C. § 512(*l*).

## 52.   COPYRIGHT – DAMAGES – STATUTORY DAMAGES

If you find for ALS Scan on its contributory copyright infringement claim, you must determine ALS Scan's damages. ALS Scan seeks a statutory damage award, established by Congress for each work infringed.  Its purpose is not only to compensate the plaintiff for its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

*However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed.*

_____

[35]  **ALS:  This alters the language of Section 512(l) and is confusing.  § 512(l) refers to limitations "under this section," in other words the safe harbors under §§ 512(a)-(d).  Cloudflare's language doesn't specify which "limitation of liability" is being referenced.  Cloudflare's reference to contesting liability as a "defense" is confusing.  The point of § 512(l) is that loss of safe harbors under § 512(i) doesn't itself prove liability, but this is not what the proposed instruction says.  In any event, the wording of § 512(l) is obtuse and not well designed for a jury instruction.**

*Cloudflare:  This accurately and simply presents the substance of section 512(l), specifically to make it intelligible as a jury instruction.  This is important, because section 512(l) directly addresses what a jury should consider. Cloudflare expressly tied the matter to the limitation of liability for service providers, which should be clear in context after instructions regarding limitations of liability for service providers.  Rewording has sought to avoid the implication that Cloudflare has failed to qualify for the limitation of liability ("[t]he failure of a service provider's conduct to qualify….").*

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed. [36]

*Instructions __ and __, which I will give you soon, will tell you what constitutes innocent infringement and what constitutes willful infringement.*

*If statutory damages are assessed against defendant, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work.*

*For purposes of calculating statutory damages, all the parts of a compilation or derivative work constitute one work.*

NCMJI 17.35 [revised]; *NCMJI 17.35 and comment, augmented by 17 U.S.C. § 504(c)(1) regarding parts of a compilation or derivative work.*

## 53.    COPYRIGHT DAMAGES — STATUTORY DAMAGES — REGISTRATION BEFORE FIRST INFRINGEMENT

*Statutory damages for infringement of a work are available only if the plaintiff registered the copyright in that work before any infringement began.*

---

[36] **ALS: A jury is permitted to award statutory damages against a contributory infringer based upon a finding of willfulness. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011). This being the case, it may be that the jury should  hear instructions on both innocent and willful infringement, but Cloudflare's formulation, in which the jury is instructed on innocent but not willful infringement, is clearly wrong.**

*Cloudflare:  see the comment below with Cloudflare's objections to a "willfulness" instruction in the absence of inducement on a contributory infringement claim, where there would appear to be no difference between the standards of "ordinary" contributory infringement and "willful" contributory infringement."*

*In a case of contributory infringement, the first infringement for this purpose may be an infringement to which whom the defendant the contributed, even if the contribution occurred later.*

*The first of a series of infringements establishes the relevant date for the beginning of infringement for purposes of assessing the availability of statutory damages.  The plaintiff has the burden of establishing the date of the registration and the date of the first infringement.*[37]

---

[37] **ALS:  This language has nothing to do with 17.35.  Nor does this instruction have any fair relation to the facts of the case.  ALS is seeking statutory damages only for infringements occurring after the date of registration for the infringed works.  The notion of a "series of infringements" doesn't apply here.  The case doesn't involve episodic shows or an eight week theatrical run of a movie.  If ALS photos appears on a pirate site one day that's one aggregation of infringements, then if a different group of photos shows up another day that's a separate infringement. This is asserted simply to confuse the issues in the case.**

*Cloudflare: ALS badly misunderstands the law of statutory damages.  It says: "ALS is seeking statutory damages only for infringements occurring after the date of registration for the infringed works."  But that is not the test: if any accused infringements began before the registrations, then they do not support statutory damages even if they continued after the registrations.  As the Ninth Circuit official Comment states:  "Statutory damages are precluded when the copyright holder does not register the copyright before commencement of the infringement."  "Commencement" is the key here. Moreover, the cases Cloudflare cited make clear that later participation— even by a new party—in a series of infringements by other persons that began earlier does not affect the fact that the infringements commenced earlier for these purposes.*

*Notably ALS failed to address the citations that Cloudflare provided for this instruction, which ties directly to the calculation of statutory damages. Evidence will show that ALS registered many of its copyrights very recently, yet it claims only statutory damages.  As a consequence, any infringements that began before its registrations cannot support statutory damages.  As plaintiff, ALS has the burden of proof that it is entitled to damages, and*

Source:    Comment on NCMJI 17.35; 17 U.S.C. § 412; *Likerish, Inc. v. Alpha Media Grp.*, 2014 WL 12589641 at *6 (C.D. Cal. Jan. 2, 2014); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Dir. 2008)

### 54.  DAMAGES — STATUTORY DAMAGES — SERIES OF ONGOING SEPARATE INFRINGEMENTS

*For purposes of applying statutory damages and determining whether registrations occurred before infringements began, you should treat a series of ongoing separate infringements as hearing began when the first infringement occurred.* [38]

Source:    Comment on NCMJI 17.35; 17 U.S.C. § 412; *Likerish, Inc. v. Alpha Media Grp.*, 2014 WL 12589641 at *6 (C.D. Cal. Jan. 2, 2014); *Derek Andrew, Inc. v. Poof Apparel Cormary*528 F.3d 696, 701 (9th Cir. 2008); *Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506 F.3d 315, 331 (4th Cir. 2007); *Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F.

---

*therefore it must prove both the dates of its registrations and the dates when the accused infringements began.  Testimony by ALS personnel suggest that infringements of each update began on the day each update appeared on the ALS site, yet it rarely if ever registered its photographs before the infringements began.*

[38]  **This language has nothing to do with 17.35.  Nor does this instruction have any fair relation to the facts of the case.  ALS is seeking statutory damages only for infringements occurring after the date of registration for the infringed works.  The notion of a "series of infringements" doesn't apply here.  The case doesn't involve episodic shows or an eight week theatrical run of a movie.  If ALS photos appears on a pirate site one day that's one aggregation of infringements, then if a different group of photos shows up another day that's a separate infringement. This is asserted simply to confuse the issues in the case.**

*Cloudflare:  See Cloudflare's comment in the previous footnote. Once again, ALS does not address the authorities that Cloudflare cited.*

Supp. 1378, 1393-95 (C.D. Cal. 1993); *Livingston v. Art.com, Inc.*, No. 13-cv-03748-JSC, 2014 WL 3404722 at *3-6 (N.D., Cal. July 11, 2014).

### 55.   COPYRIGHT — DAMAGES — STATUTORY DAMAGES — FACTORS

*In assessing statutory damages, you have wide discretion and may consider expenses saved and profits reaped by the infringer, revenues lost by the plaintiff as a result of the defendant's infringements; the defendant's state of mind (willful, knowing, or merely innocent), the value of the copyright, and the deterrent effect on the defendant and others.*[39]

Source:  *Adams v. Agrusa*, 2016 WL 7665767 at *3 (C.D. Cal. July 20, 2016)

### 56.   COPYRIGHT—DAMAGES—INNOCENT INFRINGEMENT (17 U.S.C. § 504(c)(2))

*An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence:*

    *1.    the defendant was not aware that its acts constituted infringement of the copyright; and*

    *2.    the defendant had no reason to believe that its acts constituted an infringement of the copyright.*[40]

---

[39] **ALS: The "discretion" enjoyed by the jury, and the factors they may consider, are set forth in the pattern instruction.  As demonstrated in ALS's Motion in Limine No. 1, these factors are not appropriate for the jury to consider.  *New Form, Inc. v. Tekila Films, Inc.*, 08-56001 (9th Cir. 2009); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).**

*Cloudflare: ALS has preserved its objection.  The instruction is appropriate.*

[40] **ALS:  A jury is permitted to award statutory damages against a contributory infringer based upon a finding of willfulness.  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011).**

Source:        NCMJI 17.36

### 57.    COPYRIGHT – DAMAGES – WILLFUL INFRINGEMENT

**An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:**

**1. the defendant engaged in acts that infringed the copyright; and**

**2. the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights. [41]**

Source: NCMJI 17.37

---

**This being the case, it may be that the jury should  hear instructions on both innocent and willful infringement, but Cloudflare's formulation, in which the jury is instructed on innocent but not willful infringement, is clearly wrong.**

*Cloudflare: The parties appear to agree that an innocent infringement instruction is appropriate.  See the next footnote for why an instruction for willful infringement is different.*

[41] *Cloudflare recognizes that this is a model Ninth Circuit instruction, but it nevertheless objects to this as appropriate only to claims of willful direct infringement.  To the extent that the <u>basic</u> contributory infringement standard requires knowledge or willful blindness, <u>willful</u> contributory infringement to justify the higher range of statutory damages cannot have the same standard.  For this reason, no instruction on willfulness is appropriate unless a plaintiff alleges intentional inducement to meet the <u>Grokster</u> standard, and the plaintiff has disavowed such a claim here.*

**ALS Scan: A jury is permitted to award statutory damages against a contributory infringer based upon a finding of willfulness.  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011). This being the case, it may be that the jury should  hear instructions on both innocent and willful infringement, but Cloudflare's formulation, in which the jury is instructed on innocent but not willful infringement, is clearly wrong.**

### 58.   DAMAGES—MITIGATION

*The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.*

*The defendant has the burden of proving by a preponderance of the evidence:*

*1.   that the plaintiff failed to use reasonable efforts to mitigate damages; and*

*2.   the amount by which damages would have been mitigated.*[42]

Source:      NCMJI 5.3

---

[42]  ALS is aware of no authority that general notions of "mitigation of damages" apply to copyright cases.  The pattern instruction on statutory damages already tells the jury what factors they are to consider in awarding damages.  In discovery, the defense conducted lines of questioning suggesting that if ALS had employed unspecified "digital rights management" technology it might have discovered which of its own users, if any, were the one uploading copies of ALS works onto pirate sites without authority.  ALS said it wasn't aware of any technology that would work in the suggested fashion, but what's the point?  If infringing copies of ALS works appear on pirate sites and if Cloudflare contributed, ALS is entitled to statutory damages, period.  Cloudflare has cited no authority that if the jury finds for ALS on contribution, the jury can vary from what if would otherwise award as statutory damages based upon "mitigation."

*Cloudflare:  ALS earlier revealed ignorance of copyright cases in its motion in limine no. 15, and again Cloudflare points to courts' recognition of mitigation of damages as a defense in copyright cases in BMG, 149 F.Supp. 3d at 677 (which ALS frequently cites), and Oracle Am., Inc., v. Terix Computer Co., Inc., No. 5:13-CV-03385-PSG, 2015 WL 1886968 at *6 (N.D. Cal. Apr. 24, 2015).*

## 59.   DIRECT V. CIRCUMSTANTIAL EVIDENCE –
## *INFRINGEMENT OF COPYRIGHT*[43]

**ALS Scan may, but is not required to, provide direct evidence of infringement of its copyright.  It may employ circumstantial evidence to attempt to prove infringement of its copyrights.**

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (noting copying may be shown through circumstantial evidence and often is); *Columbia Pictures Indus. v. Gary Fung*, 710 F.3d 1020 (9th Cir. 2013) (same); *see also Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) ("[D]irect proof of actual dissemination is not required by the Copyright Act. Plaintiffs are free to employ circumstantial evidence to attempt to prove [a violation]."); *see also BMG Rights Mgmt. (US) LLC v. Cox Communs.*, 149 F.Supp.3d 634, 663 (E.D. Va. 2015).

*The parties may employ circumstantial evidence to attempt to prove any fact relevant to the claims or defenses in the action*

## 60.   KNOWLEDGE OF INFRINGEMENT

**You are not being asked to determine whether Cloudflare had a duty to "police" their customers' sites for copyright infringement.  Rather, ALS contends that its agent, Steve Easton, provided actual notice of infringement to Cloudflare, such that with such notices, and other facts and circumstances, Cloudflare knew or had reason to know of copyright infringement on their customers' sites.**[44]

---

[43] *Cloudflare believes that the general instruction on direct and circumstantial evidence suffices and that a case-specific instruction is unnecessary.  ALS's instruction is inappropriately one-sided and singles out only one issue of direct infringement without addressing other issues that may relate to defenses to direct infringement, defenses to contributory infringement, and damage calculations.*

[44] *Cloudflare objects to this instruction because it fails to incorporate the explicit statutory provision that an online service provider has no duty to monitor its services or affirmatively seek facts suggesting infringement.  See*

NCMJI 17.21 [revised]; *BMG Rights Mgmt. (US) LLC v. Cox Communs.*, 149 F.Supp.3d 634 (E.D. Va. 2015), aff'd in part No. 16-1972 (4th Cir. 2/1/18); *Louis Vuitton Malletier, S.A. v. Akonic Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011)

## 61.   INFRINGEMENT NOTICES VIA EMAIL

**Copyright owners are authorized to submit notices of infringement via email.  They may, but are not required to, submit notice of infringement through other means, for example web abuse forms.[45]**

*17 U.S.C. § 512(m). It also fails to respect the statutory provision that defective notifications of claimed infringement shall not be considered in determining whether a service provider has actual knowledge of infringements. See 17 U.S.C. § 512(c)(3)(B). Taken as a whole, the "instruction" does not instruct the jury on any point of law; it improperly clothes ALS's arguments as a pronouncement by the Court.*

[45] *Cloudflare objects to this instruction an inaccurate and misleading statement of the law.  The court in Ellison determined that AOL did not have a working notification system.  See Perfect 10, Inc. v. CCBill, LLC, 488 F.3d 1102 at 1109 (9th Cir. 2007)(describing Ellison); Ventura Content, Ltd, v. Motherless, Inc, No. 13-56332, slip op. at 42 (9th Cir. March 14, 2018)(citing CCBill).  The facts of this case are very different; they are much closer to the facts of Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 670-71 9th Cir. 2017). ALS's email communications were not invalid as notifications because they were by email; they were invalid because they did not meet all the requirements of 17 U.S.C. §  512(b)(2)(E), which both incorporates the requirements of 17 U.S.C. § 512(c)(3)(A) and adds an additional requirement for system caching providers in 17 U.S.C. § 512(b)(2)(E)(ii).  Had ALS used Cloudflare's web form process properly, ALS would at least have fulfilled the requirements of section 512(c)(3) and would have enabled Cloudflare to pass that information to its customers who would need that information.*

**ALS: Cloudflare seeks to confuse the jury into believing that ALS's email notices of infringement were "invalid" because ALS did not follow Cloudflare's desire that copyright owners submit complaints through Cloudflare's cramped web abuse form.  An instruction on this subject is**

59

17 U.S.C. § 512(c)(2); 37 CFR § 201.38(b)(4); *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) (finding the jury could have concluded AOL did not qualify for safe harbors because it changed its email for infringement complaints, failed to notify the Copyright Office, and failed to implement a system to forward emails sent to the old address).

## 62.   MATERIAL CONTRIBUTION BY INTERNET SERVICE PROVIDERS

An Internet service provider may materially contribute to infringement by, after knowing or having reason to know of infringing activity on its customer's website, continuing to provide services to that website, including:

- Storage and distribution services;
- Helping consumers access infringing content;
- Aiding in distribution of infringing material; or
- Easing access to infringing material.[46]

_____

important to avoid jury confusion over whether copyright owners may submit notice of infringement via email.

[46] *Cloudflare objects to ALS's instruction as conflating vastly different circumstances.  It fails to respect the specific articulation of "substantial assistance" from Amazon.com, namely that a service can "significantly magnify the effects of otherwise immaterial infringements." Amazon.com, 508 F.3d at 1172 (citing Napster, 239 F.3d at 1022). Nor does ALS invoke the "essential step" test that the Ninth Circuit adopted in Louis Vuitton from Judge Kozinski's dissent in Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 812 (9th Cir. 2007). See Louis Vuitton, 658 F.3d at 944 (quoting Visa, 494 F.3d at 812 (Kozinski, J., dissenting)). While Cloudflare does not believe that Louis Vuitton is good law, as it has previously explained, it provides that element here in case the Court applies a standard from that case.*

*Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004); *Louis Vuitton Malletier, S.A. v. Akonic Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011); *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *A&M Records, Inc. v. Napster*, 114 F.Supp.2d 896, 920 (N.D. Cal. 2000); *BMG Rights Mgmt. (US) LLC v. Cox Communs.*, 149 F.Supp.3d 634 (E.D. Va. 2015), aff'd in part No. 16-1972 (4th Cir. 2/1/18).

***To materially contribute to infringement, an online service provider must significantly magnify the effects of otherwise immaterial infringements and provide an essential step in the process of infringement.***[47]

*Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)

**63.    TERMINATION OF SERVICE**

**It is not sufficient to avoid contributory liability by terminating services to a customer only upon receipt of a court order finding infringement. Rather, an Internet service provider should terminate services to a**

---

[47] **ALS:  This is another effort by Cloudflare to rewrite the standards for contributory liability as set forth in the pattern instruction.  What Cloudflare is doing is sifting through every Ninth Circuit decision on contributory copyright infringement, seizing on every variation in wording and then teasing each variant out into a separate instruction.  Is "significantly magnify" different from "material contribution."  What is an "immaterial" infringement?  How is an infringing copy of an ALS image on a pirate site "immaterial?"  Incidentally, ALS cannot find the terms in this instruction anywhere in the *Louis Vuitton* decision.  This variant in wording is apparently limited to the *Amazon.com* decision.**

customer after it knows or should have known of infringing activity on its customer's site.[48]

*BMG Rights Mgmt. (US) LLC v. Cox Communs.*, 149 F.Supp.3d 634, 654, 661 (E.D. Va. 2015), aff'd in part No. 16-1972 (4th Cir. 2/1/18); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 940-42, 944 (9th Cir. 2011); Doc. 405 p.18 ("The simple answer as to whether Cloudflare could have done something simple to stop the infringement is 'yes': Cloudflare can, but does not, end its business relationship with websites that it knows (or arguably knows) are serial infringers").

## 64.   CLOUDFLARE'S CDN NETWORK AND CACHING

Cloudflare's CDN Network, to the extent it can be shown to have caused cache copies of infringing images to be created, stored, and served to end users, materially contributed to acts of infringement.[49]

---

[48] *Cloudflare objects to this instruction entirely as (1) unsupported by Ninth Circuit law; (2) relevant only to the BMG court's consideration of the safe harbor, not to the contributory infringement standard; (3) contrary to the provisions of the section 512(b) safe harbor for system caching providers, which require notifications of claimed infringement to include a provision that either sources of the cache materials have removed the accused material or that a court has ordered their removal, see 17 U.S.C. § 512(b)(2)(E)(ii); and (4) inapplicable in a context where the plaintiff has failed to deliver any valid notifications of claimed infringement under section 512(b)(2)(E). Invalid notifications have no bearing upon an evaluation of a service provider's reasonable implementation of a repeat infringer termination policy. See CCBill, 488 F.3d at 1113.*

*Cloudflare's proposed replacement borrows both from Amazon.com and Louis Vuitton.*

[49] *Cloudflare objects to this instruction as misquoting the Court's order. The order did not use the phrase "materially contributed." Instead, it used the phrase "materially assists in acts of infringement." See Dkt. 405 at 21. Cloudflare believes the Court intended that phrase to have the same meaning as "substantial assistance" in Amazon.com, which falls short of the conclusion of "material contribution." See Amazon.com, 508 F.3d at 1172*

Order on ALS MSJ v. Cloudflare, Doc. 405.

## 65.    CONTRIBUTORY LIABILITY – DNS SERVICE

**An Internet service provider can materially contribute to copyright infringement by making it harder to locate, if not entirely concealing, information copyright owners need to enforce their rights and by erecting barriers to copyright owners' ability to economically send notice of infringement.[50]**

*See Perfect 10, Inc v. Amazon.com, Inc*, 508 F.3d 1146, 1172 (9th Cir. 2007) ('copyright holders cannot protect their rights in a meaningful way unless they can hold providers of [internet] services or products accountable'); *MGM v. Grokster*, 545 U.S. 913, 929-30 (2005) ("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers.").  Doc. 60 p. 8.

---

*(substantial assistance a threshold consideration, followed by actual knowledge of specific infringements and a failure to take simple measures to prevent further damage to copyrighted works in order to reach a conclusion of "material contribution").  Cloudflare preserves its objection to any formulation of contributory infringement that departs from Grokster and any formulation of material contribution that departs from Amazon.com.*

**ALS: Cloudflare's pattern is to urge every conceivable variation in wording so that the jury is abjectly confused concerning the standard ALS must prove.  The one question the jury must answer is whether, with knowledge of infringement, Cloudflare materially contributed to that infringement.  Instr. 17.21**

[50] *Cloudflare objects to this instruction as unsupported by any authority, particularly by the general statements of the cases that ALS cites here.  This is one-sided legal argument that would be improper to cloak with the authority of the Court.*

## 66.   UPLOADING OR DOWNLOADING ELECTRONIC WORKS

**Uploading or downloading works protected by copyright without the authority of the copyright owner is an infringement of the copyright owner's exclusive rights of reproduction and/or distribution.[51]**

**Source: Copyright Office FAQ, https://www.copyright.gov/help/faq/faq-digital.html**

DATED:  April 9, 2018

SPILLANE LAW GROUP PLC
GALLAGHER & KENNEDY, P.A.

By: _____
Jay M. Spillane
Attorneys for Plaintiff ALS Scan, Inc.

---

[51] *Cloudflare objects to this instruction as misleading, out of context, and unnecessary in light of other, earlier instructions that accurately state the rights of a copyright holder.  The quotation from the Copyright Office's website "FAQ" pertains to peer-to-peer file sharing, which is not at issue here, and it also is an oversimplification of the law (presumably to deter persons from file sharing). The Ninth Circuit made clear in Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2015), for example, that an upload to YouTube without authority of the copyright holder was not an infringement. Moreover, the Supreme Court held that recording a full motion picture from television broadcast (the equivalent of a download) for purposes of unauthorized time-shifting was fair use and therefore not an infringement in Sony, saying "[e]ven unauthorized uses of a copyrighted work are not necessarily infringing" and ruling that the plaintiffs had failed to meet their burden on fair use.  Sony, 464 U.S. at 447, 455-56.  It would also be improper to finish the jury instructions by focusing on this point outside the normal flow of the instructions.*

DATED:  April 9, 2018                    FENWICK & WEST LLP


                                         By:  __/s/ Andrew P. Bridges_____
                                                      Andrew P. Bridges
                                         Attorneys for Defendant Cloudflare, Inc.

Joint Jury Instructions

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this action.  My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.  A true and correct copy of the foregoing document entitled (*specify*):
**JOINT JURY INSTRUCTIONS**  will be served or was served **(a)** on the judge in chambers in the form and manner required by Local Rules and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 9, 2018, I checked the CM/ECF docket for this action and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Gary L. Bostwick– gbostwick@B1Law.com
Kevin S. Toll – kevin@silversteinlegal.com
Lawrence G. Walters – larry@firstamendment.com
Corey D. Silverstein – corey@silversteinlegal.com
Rachel Kassabian – rachelkassabian@quinnemanuel.com
Carolyn M. Homer – carolynhomer@quinnemanuel.com
Mark Thomas Gray     markgray@quinnemanuel.com
Armen Nercessian     anercessian@fenwick.com
Jedediah Wakefield     jwakefield@fenwick.com
Sapna S Mehta     smehta@fenwick.com

Colin TJ O'Brien – tm@partridgepartnerspc.com
John L. Ambrogi – jla@partridgepartnerspc.com
Daniel L Rogna     daniel@partridgepartnerspc.com
Paul Supnick – paul@supnick.com
Raymond Katrinak – pkatrinak@kernanlaw.net
Ryan Carreon – rcarreon@kernanlaw.net
Stephen M Kernan – kernanlaw@gmail.com
John P Flynn     john.flynn@gknet.com
Kevin D Neal     kevin.neal@gknet.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) April 9, 2018, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling Local Rule, on (*date*) April 9, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail or Attorney Service***
Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/9/2018 | Jessie Gietl | *Jessie Gietl* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |