JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT COURT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>**Hearing Date: June 18, 2018**<br>**Hearing Time: 8:30 a.m.**<br>**Place:  Courtroom 9D, 9th Fl.**<br>**         350 West 1st Street**<br>**         Los Angeles, CA, 90012**<br>**Judge:  Hon. George H. Wu** |

1
2

# **TABLE OF CONTENTS**

3   INTRODUCTION..................................................................................1

4   FACTUAL BACKGROUND ................................................................2

5   ARGUMENT .......................................................................................5

6   I.  STEADFAST SHOULD BE AWARDED ATTORNEYS' FEES UNDER THE
7       COPYRIGHT ACT ..........................................................................5

8       A. Steadfast Prevailed Completely on the Merits. ...............................6

9       B. Steadfast's Defense Furthers the Purposes of the Copyright Act. ...................7

10      C. ALS Advanced Unreasonably Frivolous Theories of Contributory and
11         Vicarious Copyright Infringement.......................................7

12         1.  ALS's Contributory Copyright Infringement Claim was wholly without
13            merit. ................................................................8

14         2.  ALS's Vicarious Infringement Claim Was Similarly Without Merit............9

15      D. ALS Filed Suit with an Improper Motive.......................................10

16      E. Objective Unreasonableness ...............................................11

17      F. Considerations of Compensation and Deterrence Favor an Award ...............12

18   II.  STEADFAST SHOULD BE AWARDED ATTORNEYS' FEES UNDER THE
19       LANHAM ACT ....................................................................14

20   III. THE REQUESTED FEES WERE NECESSARY AND REASONABLE .......15

21      A. Steadfast's Attorneys' Rates Are Reasonable ...............................15

22      B. The Hours that Steadfast's Attorneys Billed Are Reasonable .......................17

23   IV.     THE COURT SHOULD ALSO AWARD STEADFAST'S FAIR
24          ESTIMATE OF FUTURE FEES ...........................................17

25   V.  THE COURT SHOULD AWARD REASONABLE EXPENSES..................18

26   VI.     Conclusion........................................................................19

19
20
21
22
23
24
25
26
27
28

1
2

# **TABLE OF AUTHORITIES**

3

## **CASES**

4  *A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)...................................10

5
6  *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS 118346 (N.D. Cal. Aug. 21, 2012)..................................................................................................................7, 13

7
8  *DuckHole Inc. v. NBCUniversal Media LLC*, 2013 U.S. Dist. LEXIS 157304 (C.D. Cal. Oct. 25, 2013) ....................................................................................................6

9  *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)...................................................13

10
11  *Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996) ...................................................6

12  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577 (9th Cir. 2010) ..........................20

13  *Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................16

14
15  *Identity Arts v. Best Buy Enter.*, 2008 U.S. Dist. LEXIS 119865 (N.D. Cal. Mar. 24, 2008).......................................................................................................................20

16  *In re Aspartame Antitrust Litigation*, 817 F. Supp.2d 608 (E.D. PA. 2011)..............20

17  *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038 (9th Cir. 2014) ........................7

18
19  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993)....................................16

20  *Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir. 2003)...........................................8

21
22  *Maloney v. T3Media, Inc.*, 2015 U.S. Dist. LEXIS 86183 (C.D. Cal. May 27, 2015) ...........................................................................................................................17

23
24  *Masimo Corp. v. Tyco Health Care Group, L.P.*, 2007 U.S. Dist. LEXIS 101987 (C.D. Cal. Nov. 5, 2007) .....................................................................................18

25  *Moore v. James Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) ...............................17

26  *Napster. See A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .............9

27
28  *Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015)................................................................................................... passim

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017)................. 6, 7, 9, 19

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010).....................17

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677 (9th Cir. 2012)...........15

*SOFA Entertainment, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273 (9th Cir. 2013)...12

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869 (9th Cir. 2005)
    ...................................................................................................................................20

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .17

*Van Skike v. Dir., OWCP*, 557 F.3d 1041 (9th Cir. 2009).........................................16

**STATUTES**

17 U.S.C. § 505 ...................................................................................................5, 18

**RULES**

Fed. R. Civ. P. 54 ...........................................................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant Steadfast Networks, LLC ("Steadfast") submits this memorandum in support of its motion for attorneys' fees and expenses. For the reasons that follow, this Court should award Steadfast attorneys' fees in the amount of $578,878 and non-taxable costs in the amount of $35,208.74, pursuant to § 505 of the Copyright Act, § 1117 of the Lanham Act, and Federal Rule of Civil Procedure 54(d).[1] Steadfast also seeks a fair estimate of future fees in the amount of $19,611.

The record fully supports the award of attorneys' fees and "full costs" sought by Steadfast, the "prevailing party" who obtained a final judgment on the merits. In short, this litigation was completely unnecessary. Indeed, ALS Scan, Inc.'s ("ALS") case against Steadfast had inherent factual and legal deficiencies from the start, making the result obvious. For example, ALS filed suit against Steadfast despite *knowing* that each time it provided Steadfast (or Flixya Entertainment, LLC ("Flixya")) with a DMCA notice, the alleged infringements were taken down–just as Congress intended. This Court also recognized that ALS's "theory has no basis in the case law." Dkt. 443, p. 20. Nonetheless, ALS sought business-crushing statutory damages, in an amount that could have potentially reached $366,150,000. *See* John L. Ambrogi Declaration ("JLA Decl.") ¶ 5.

Further, the fees and costs that Steadfast requests compensation for were necessary and reasonable. Steadfast's victory arrived late in the proceedings, ending only a short time before the trial date. Steadfast incurred fees and costs in defending against ALS's meritless case for over a year, which included responding to discovery, addressing discovery issues, taking four depositions, opposing ALS's motion for summary judgment, moving for summary judgment, and preparing for trial.

---

[1] On May 11, 2018, Steadfast submitted a Form CV-59 Application. Dkt. 528.

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

In sum, Steadfast's reasonable fees and costs should be awarded not only to deter ALS and others from advancing meritless claims, but also to encourage defendants to defend themselves from meritless claims, especially claims that seek to improperly expand the scope of secondary liability.

### FACTUAL BACKGROUND

ALS is an adult entertainment producer and a serial litigant. A simple search in a legal database shows that ALS is not a stranger to the courts. ALS dragged a number of unrelated companies in this lawsuit, bringing dubious copyright and trademark infringement claims from the beginning. *See* Dkt. 443, p. 1 & n. 1 (reviewing the parties that were involved in this lawsuit). On November, 11, 2016, ALS filed its second amended complaint, alleging three claims against Steadfast: contributory copyright infringement; vicarious copyright infringement; and contributory trademark infringement. Dkt. 64.

***Motion to Dismiss.*** Steadfast moved to dismiss based on a failure to state a claim, Dkt. 90, which the Court granted on February 16, 2017, Dkt. 111. Regarding the contributory copyright infringement claim, this Court noted ALS only alleged that "Steadfast 'hosts' pirate sites, including Imagebam, and that Plaintiff has sent numerous notifications to Steadfast of infringing content on Imagebam, but Steadfast has failed to implement or enforce a repeat infringer policy by removing Imagebam from its servers." Dkt. 111, p. 6. This Court also found that ALS's complaint had *no allegations* that supported a vicarious infringement claim. *Id.*, p. 9. As for the contributory trademark infringement claim, this Court, agreeing with Steadfast, found that ALS "fail[ed] to allege any facts" that would support the claim, or "even any facts establishing what the purported trademark entailed." *Id.*

***Third Amended Complaint.*** On March 30, 2017, ALS filed the third amended complaint, maintaining the same three claims against Steadfast and adding only sparse allegations. *Compare* Dkt. 148 *with* Dkt. 64; *see also* Dkt. 443,

p. 2 n.2. In the complaint, **ALS sought relief which included actual damages in a sum no less than $10,000,000.** Dkt. 148 at 19:20-21. (ALS, however, later elected to seek statutory damages, but not until August 11, 2017. Dkt. 229.)

      ***Discovery and ADR.*** On May 22, 2017, less than two months after filing the third amended complaint, ALS provided its responses to the first set of requests for admissions. *See* JLA Decl. ¶ 5; *id.* Ex. A. ALS responded that none of the hyperlinks contained in its notice of alleged infringements were still active. *See* JLA Decl. Ex. A, at 1:17-2:10. A month later, the parties requested alternative dispute resolution, Dkt. 204, which this Court ordered the next day, Dkt. 206.

      Five days after that, ALS started the ADR process out by threatening business-crushing statutory damages. *See* JLA Decl. Ex. B, at 4:10-26 (ALS Responses to Second Set of Interrogatories From Steadfast). ALS informed Steadfast that it intended to hold Steadfast liable for the "infringement of 2441 ALS works on imagebam.com."[2] *Id.* at 4:14-15. At minimum, ALS claimed that "the award would be $1,830,750," if the jury concluded that Steadfast was liable. *Id.* at 4:17. Moreover, ALS claimed it would argue that the alleged infringement was willful, **which would potentially amount to a total of $366,150,000**. *See id.* at 4:14-21. Moreover, ALS sought an additional amount up to $2,000,000 for its contributory trademark infringement claim. *See id.* at 4:22-26. Accordingly, the stakes were enormous in this litigation.

      On August 1, 2017, this Court referred the matter for settlement proceedings. Dkt. 228. On August 21, 2017, there was a settlement conference, which was not successful. Dkt. 244. Namely, the judge felt that the parties were too far apart to proceed to meaningful negotiations.

      ***ALS's Motion for Partial Summary Judgment.*** On December 1, 2017, ALS

---

[2] Steadfast disputes, and does not concede, that there were 2,441 individual works as defined by the Copyright Act. Steadfast is noting the amount for illustrative purposes only and not conceding the legal validity of ALS's assertions.

filed its motion for partial summary judgment, arguing that Steadfast was contributorily liable for copyright and trademark infringement and that Steadfast failed to meet certain conditions of the DMCA safe harbor. Dkt. 296; *see also* Dkt. 297. Despite previously acknowledging that all the images were removed, ALS told the Court that nothing was done in response to ALS's notices of alleged infringement. Dkt. 297, p. 15. ALS also concocted arguments by cherry-picking soundbites from two cases that, if read in context, provided zero support for ALS's case. (This will be expanded upon in the Argument section). Steadfast had to respond to this factually baseless and legally deficient motion. *See* Dkt. 315-2. The Court denied ALS's motion in its entirety. Dkt. 360.

*Vicarious Copyright Infringement Claim.* Besides making an appearance in the motion to dismiss proceedings and third amended complaint, ALS's vicarious copyright infringement claim lurked in the shadows. *See* Dkt. 111, p. 8. On December 28, 2017, counsel for Steadfast sent its prefiling conference letter regarding plans for summary judgment. *See* JLA Decl. ¶ 6. Specifically, Steadfast provided its position on ALS's claim of vicarious copyright infringement, explaining how the claim failed as a matter of law. *Id.* At the teleconference, ALS's counsel recognized the merit in Steadfast's position, giving off the impression that it might be dropped. *Id.* Steadfast sent two follow-up emails; Steadfast, however, received no response until weeks later on the day Steadfast filed its motions for summary judgment. *Id.* To rid itself of this meritless nuisance that lurked in the background, Steadfast had to brief and move for summary judgment on this claim. *Id.*; *see also* Dkt. 344, p. 15-20.

*Steadfast's Motions For Summary Judgment.* As made abundantly clear in its prior briefing, ALS conflated the law regarding the DMCA's safe harbor conditions with the law pertaining to its secondary liability claims, and vice versa. In recognition of this, Steadfast filed and briefed two motions for summary judgment. In opposing the motion as it pertained to the contributory copyright and

trademark infringement claims, ALS copied and pasted its unsuccessful motion for partial summary judgment. *Compare* Dkt. 297, p. 11-14, 24-25, *with* Dkt. 365, p. 10-13, 24-25.

The Court granted Steadfast's motion for summary judgment on the merits, dismissing all of ALS's claims with prejudice. Dkt. 443. As for ALS's contributory copyright and trademark infringement claims, this Court concluded that ALS's "theory has no basis in the case law." Dkt. 443, p. 20. As this Court recognized, ALS theory is one that, if accepted, would hold liable service providers "that refuse to cancel services to a customer, upon receiving generalized knowledge that future acts of infringement are almost certain to occur on that customer's platform." *Id.* ALS conceded its vicarious copyright infringement claim, and thus the Court also dismissed this claim with prejudice. *See id.*, p. 6-7.

## ARGUMENT

Steadfast prevailed on the merits against ALS's contributory copyright infringement, vicarious copyright infringement, and contributory trademark infringement claims. During the 18 months' worth of litigation, Steadfast did what was necessary to defend itself against ALS's frivolous claims. For reasons that follow, this Court should award fees and expenses for all of ALS's claims under the applicable standards.

## I. STEADFAST SHOULD BE AWARDED ATTORNEYS' FEES UNDER THE COPYRIGHT ACT

Under the Copyright Act, the court "may allow the recovery of full costs by or against any party," including "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "The Supreme Court [has] identified the following non-exclusive list of factors to guide the award or denial of attorney's fees: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Perfect 10, Inc. v.*

*Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017) (citation omitted). The Ninth Circuit has "added as additional considerations: the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Id.* (citation omitted). "These factors 'may be considered but are not exclusive and need not all be met.'" *Id.*

The Ninth Circuit recognizes the important role of copyright-action defendants:

> [b]ecause copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them …. Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Id.* (citation omitted).

### A.  Steadfast Prevailed Completely on the Merits.

The degree of success weighs heavily in Steadfast's favor. "This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." *DuckHole Inc. v. NBCUniversal Media LLC*, 2013 U.S. Dist. LEXIS 157304, at *4 (C.D. Cal. Oct. 25, 2013); *see Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559-60 (9th Cir. 1996) (noting the significance of a defendant prevailing on the merits in a copyright action). "A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014).

Here, Steadfast completely defeated all of ALS's secondary copyright infringement claims, on the merits. After successfully moving to dismiss the second

amended complaint, Dkt. 111, and opposing ALS's motion for partial summary judgment, Dkt. 360, Steadfast's motion for summary judgment put these claims to rest, Dkt. 443. *See* Dkt. 443, p. 6-7, 21 (granting Steadfast's motion for summary judgment as to ALS's vicarious and contributory copyright infringement claims).

Accordingly, the degree of success factor weighs heavily in Steadfast's favor, and thus supports an award of attorneys' fees.

## B.   Steadfast's Defense Furthers the Purposes of the Copyright Act.

Steadfast's defense of ALS's claims was the type that "furthers the purposes of the Copyright Act …." *Inhale*, 755 F.3d at 1043, and one that like-defendants should be encouraged to litigate, *see Giganews*, 847 F.3d at 675. Indeed, Steadfast's successful "defense furthers the Act's underlying goal by protecting purported copyright holders from suits that are not tethered by sound facts or authorities." *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS 118346, at *5 (N.D. Cal. Aug. 21, 2012). Steadfast's defense of ALS's claims also further defined the contours of secondary liability, and thus furthered the purposes of the Copyright Act.

In contrast, ALS put forth a theory that, if accepted, would have radically expanded the scope of secondary liability. *See* Dkt. 443, p. 20. ALS's theory would have hindered the purposes of not only the Copyright Act, but also the DMCA. ALS's theory, if accepted, would have stifled innovation and destroyed companies like Dropbox, Amazon, Facebook, and Twitter. In short, ALS's claims were an attack on the Internet as we know it. Accordingly, this factor–furthering the purpose of the Copyright Act–weighs heavily in favor of awarding attorneys' fees.

## C.   ALS Advanced Unreasonably Frivolous Theories of Contributory and Vicarious Copyright Infringement.

The frivolousness of ALS's suit weighs in favor of awarding attorney's fees. "A case may be deemed frivolous only when the 'result is obvious or the … arguments of error are wholly without merit.'" *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (citation omitted); *see also Perfect 10, Inc. v.*

7

*Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063, at *20 (C.D. Cal. Mar. 24, 2015) (noting that a frivolous claim "is one that, in either the factual or legal assertions …, involv[es] 'fantastic or delusional scenarios'") (citations omitted). The lawsuit "is less likely to be considered frivolous when there is 'very little case law directly apposite.'" *Karam*, 352 F.3d at 1195-96 (citation omitted). For the following reasons, both of ALS's secondary copyright infringement claims were frivolous.

> 1.  ALS's Contributory Copyright Infringement Claim was wholly without merit.

First, and foremost, this Court already found that ALS's "theory has no basis in the case law." Dkt. 443, p. 20. As this Court noted, ALS theory is one that, if accepted, would hold liable service providers "that refuse to cancel services to a customer, upon receiving generalized knowledge that future acts of infringement are almost certain to occur on that customer's platform." *Id.* Indeed, under ALS's rejected theory, any business that provided support services to Facebook, Twitter, and Dropbox would be liable because there is generalized knowledge that future acts of infringement are almost certain to occur on those websites. In sum, the Internet as we know it would cease to exist. Accordingly, this shows that ALS's contributory copyright infringement claim is frivolous.

Second, ALS pursued this lawsuit notwithstanding the fact that well-established, binding precedent made the result a foregone conclusion. The Ninth Circuit's material-contribution test presumes that the defendant has "continue[d] to provide access" to the plaintiff's "specific infringing material." *See, e.g.*, *Giganews*, 847 F.3d at 664, 671 (noting that "Perfect 10 repeatedly declined to [provide machine-readable Message-IDs]," and holding that, "absent machine-readable Message-IDs, there were no simple measures available to remove infringing material"). Indeed, if access to a plaintiff's specific infringing material has been disabled, then it necessarily follows that *there must have been some measure* in place to "prevent[] further damage" to specific infringing material.

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Importantly, on May 22, 2017, ALS submitted its responses to the first set of requests for admissions in which it admitted: that all of the hyperlinks in the notices Easton sent to Steadfast were inactive; and, that it could not provide a list of any active links containing the allegedly copyright images. JLA Decl. Ex. A, at 1:17-2:10. What's more, ALS made these admissions less than two months after it filed the third amended complaint. *See* Dkt. 148 (TAC filed on March 20, 2017).

The significance of these facts is that ALS pursued this litigation despite knowing that its purported images were taken down each time it provided either Steadfast (or Flixya) with notice. No case law provides for liability under these circumstances, and this has been established at least since *Napster*. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (requiring "actual knowledge that specific infringing material is available using its system, that it could block access to the system by suppliers of the infringing material, and that it failed to remove the material"). The alleged, at-issue images here were removed before ALS filed suit, and thus Steadfast obviously had a simple measure to have the alleged at-issue material removed.

Moreover, the present case is not a situation in which there is little case law directly apposite. *Napster* was decided in 2001, and *Amazon.com* was decided in 2007, which relied on well-established legal principles. Accordingly, ALS pursued this lawsuit despite knowing facts that precluded any success under binding precedent. There was no case law supporting ALS's position, but a wealth of precedent since *Napster* supporting Steadfast. To impose liability under such circumstances would lead to the Internet's extinction.

For all the reasons above, the Court should find that ALS's lawsuit is frivolous, and thus the factor weighs in favor of an award to Steadfast.

2. <u>ALS's Vicarious Infringement Claim Was Similarly Without Merit</u>

ALS's vicarious infringement claim went beyond the boundaries of frivolousness. In order to establish a vicarious infringement claim, a plaintiff must

prove that the defendant received a direct financial benefit. "Financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (citation omitted). This simple rule presented an obvious roadblock. To have any success, ALS would have needed evidence of the following: After viewing a still-unidentified adult fan forum website that made available imagebam.com hyperlinks to the alleged specific infringements in this case, clients were drawn to Steadfast's IT infrastructure services. ALS would have had to argue this fantastic and delusional scenario to have any success on its vicarious-infringement claim.

In its Statement of Uncontroverted Facts, Steadfast asserted the following: "On information and belief, Steadfast has never gained a client because said client allegedly observed ALS's content on <imagebam.com>." Dkt. 392, ¶ 63. In response, ALS simply raised an evidentiary objection. *Id.* Clearly, from the beginning of the lawsuit, ALS had neither evidence nor a legal basis to claim that Steadfast had a direct financial benefit from any of the alleged underlying infringement. Despite knowing the frivolousness of the claim, JLA Decl. ¶ 7, ALS made Steadfast expend the time and resources necessary to eliminate the frivolous claim in its motion for summary judgment.

Accordingly, the frivolousness factor weighs heavily in favor of granting Steadfast an award of attorneys' fees.

**D.    ALS Filed Suit with an Improper Motive.**

ALS's motivation in bringing this lawsuit is inconsistent with the Copyright Act. First, ALS puts it best: "Steadfast did not in any way promote or take any affirmative steps to encourage any infringing activity." Dkt. 396, ¶ 6. As discussed above, ALS pursued this lawsuit notwithstanding the fact that binding precedent made the result of its material-contribution claim a foregone conclusion. Steadfast (and Flixya) had procedures in place that protected third party's intellectual property rights, resulting here in the complete removal of the alleged specific

infringements of ALS's images. It is unclear how one can possibly have a proper motive when pursuing a meritless claim against a party that does not promote or take any affirmative steps to encourage any infringing activity.

Second, if not a large settlement, ALS wanted to test an outlandish theory that, if accepted, would allow ALS to bully any company that hosted third-party content or provided services to such a company's website. On one hand, ALS may call it protecting its copyrighted works; others, however, may characterize these tactics as tortious interference. If ALS's goal was to protect its rights, it would have actually sued the obvious party, Flixya, who was the primary focus of this lawsuit. (Moreover, at the time ALS filed the lawsuit, Flixya was located in Santa Clara, California, a fact easily discoverable online, *see* Dkt. 340-3.)

Third, ALS's improper motive was also made clear by its lack of interest in doing anything to reasonably protect its copyrighted works. ALS failed (and fails) to employ any measures to reasonably protect its copyrights, such as Digital Rights Management (DRM). ALS allows its subscribers to download the entire library of images and upload the images around the Internet without consequence. Instead of employing any DRM or any other automated technology, ALS pays Steve Easton to send out takedown notices to remote parties. If ALS sincerely cared about its copyright works, it would have taken reasonable measures to protect its works. Instead, ALS has an incentive to make infringement easy for its subscribers, allowing them to file lawsuits without ever whacking the real mole. Accordingly, this shows that ALS's motivation is improper.

For all the foregoing reasons, this Court should find that the improper-motivation factor weighs heavily in Steadfast's favor.

### E.   Objective Unreasonableness

ALS's claim is objectively unreasonable because ALS "should have known from the outset that its chances of success in this case were slim to none." *SOFA Entertainment, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

For the same reasons showing frivolousness, ALS's claims were objectively unreasonable. Indeed, this Court has already found that ALS's "theory has no basis in the case law." Dkt. 443, p. 20.

As explained above, from the beginning of this lawsuit, it was clear that a material contribution claim could not succeed. ALS pursued this litigation, despite knowing that its images were taken down each time it provided Steadfast (and Flixya) with notice of the alleged infringements. Accordingly, it logically follows that Steadfast had a simple measure in place for dealing with alleged infringements. ALS's lawsuit is nonsensical.

Moreover, ALS's vicarious infringement claim had absolutely no basis and was precluded by *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004). As explained before, ALS would have had to come up with a fantastical theory for this claim to succeed. For these reasons, ALS's claims are objectively unreasonable. The Court should find that this factor heavily weighs in favor of an award.

**F.    Considerations of Compensation and Deterrence Favor an Award**

An award of attorneys' fees is warranted because it will "discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement." *Giganews*, 2015 U.S. Dist. LEXIS 54063, at *36-37. "While one of the goals of the Copyright Act is to discourage infringement, it is not the only goal." *Actuate Corp.*, 2012 U.S. Dist. LEXIS 118346, at *5. Here, it is clear that, even solely on the factors already discussed above, the purposes of the Copyright Act would be served by compensating Steadfast and deterring ALS. There are several additional considerations that show this factor weighs heavily in Steadfast's favor.

First, Steadfast's should be compensated for its successful defense, which furthered the purposes of the Copyright Act. Steadfast's defense more fully defined the contours of secondary liability. Such defense warrants compensation because it will further protect "purported copyright holders from suits that are not tethered by

1  sound facts or authorities." *Actuate Corp.*, 2012 U.S. Dist. LEXIS 118346, at *5.
2  Accordingly, Steadfast should be compensated for its meritorious defense.

3        Second, ALS (and others like ALS) should be deterred from filing suits with
4  "theor[ies] ha[ving] no basis in the case law." Dkt. 443, p. 20. ALS unnecessarily
5  dragged Steadfast into this lawsuit; the law and facts were clear even before ALS
6  filed suit. A fee here will further deter ALS and others from filing suits based on
7  meritless theories.

8        Third, ALS unnecessarily filed suit against a number of parties, seeking to
9  recover an enormous amount of statutory damages if it prevailed at trial. Indeed,
10  ALS sought business-crushing statutory damages, potentially–according to ALS's
11  position–an amount up to $366,150,000. ALS wanted to force settlements, as it has
12  accomplished at least twice already in this lawsuit. Such conduct does not promote
13  but only hinders the purposes of the Copyright Act, and thus it should be deterred.

14        Fourth, ALS's misuse of copyright law as a means to shut down legally
15  operated businesses must be deterred. Although one purpose of copyright law is to
16  discourage infringement, it is not, however, a means to shut down businesses who
17  follow the law. ALS's suit has never been about its copyrights; indeed, Steadfast
18  clearly acted to prevent damage to the alleged infringements, which was known by
19  ALS prior to it even filing suit. *See* JLA Decl. Ex. A, at 1:17-2:10. Meaning,
20  ALS's goal was to use copyright law to interfere with legitimate businesses, a goal
21  contrary to the Copyright Act. As this Court recognized, Steadfast had no practical
22  or legal reason to terminate Flixya's account. *See* Dkt. 443 ("[T]he Court is not
23  convinced that Steadfast had any reason, legal or practical, to terminate Flixya's
24  account and power down its servers."). Simply, ALS's lawsuit was an attack on the
25  Internet and a shake-down attempt against Steadfast, and such future attacks and
26  abuse of copyright law must be deterred. Indeed, ALS shows no signs of stopping,
27  as it has already filed a notice of appeal despite the Court saying its theory has no
28  basis in the law. *See* Dkt. 527.

1        For all these reasons, Steadfast should be awarded attorneys' fees to

2   compensate for its losses and to also deter ALS (and others) from bringing future

3   frivolous lawsuits. Accordingly, this factor heavily weighs in favor of an award.

4        As shown here, all the factors weigh in Steadfast's favor. In sum, this Court

5   should grant Steadfast's motion for an award of fees under the Copyright Act.

6   **II.   STEADFAST SHOULD BE AWARDED ATTORNEYS' FEES UNDER**

7         **THE LANHAM ACT**

8        "Section 35(a) of the Lanham Act provides that '[t]he court in exceptional

9   cases may award reasonable attorney fees to the prevailing party.' … An action

10  may be considered exceptional '[w]hen a plaintiff's case is groundless,

11  unreasonable, vexatious, or pursued in bad faith.'" *Secalt S.A. v. Wuxi Shenxi*

12  *Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012) (citations omitted).

13       Here, this case is exceptional for several reasons. First, this case was

14  exceptional because it did not involve ALS's trademark. *See* Dkt. 344, p. 21-22.

15  ALS failed to show any "use" of its mark in "commerce" as required under the

16  Lanham Act. Indeed, ALS's third amended complaint has no allegation pertaining

17  to ALS's mark being used in commerce. It is clear that a copyright notice does not

18  constitute use of a trademark. In short, this case only concerned ALS's copyrights.

19       Second, ALS ignored controlling law, relying unreasonably on a case

20  concerning a jury instruction, *i.e.*, *Louis Vuitton*. (*Louis Vuitton* concerned goods

21  bearing its mark that were sold online, *i.e.*, commerce, without permission.)

22  Moreover, in responding to Steadfast's motion for summary judgment, ALS

23  intentionally ignored Steadfast's arguments. Instead of furthering the litigation,

24  ALS copied and pasted its failed motion for summary judgment. *Compare* Dkt.

25  297, p. 11-14, 24-25, *with* Dkt. 365, p. 10-13, 24-25. This was unacceptable, done

26  in bad faith, and, most importantly, "exceptional." For reasons described

27  throughout, it is clear that this lawsuit was filed in bad faith. Accordingly,

28  attorneys' fees are warranted under the Lanham Act.

## III.   THE REQUESTED FEES WERE NECESSARY AND REASONABLE

In determining an award, a district court uses the lodestar method. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). "[T]he district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the district court may adjust the "'presumptively reasonable' lodestar figure based upon the" *Kerr* factors. *Id.*; *see also Hensley*, 461 U.S. at 433 ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."). The *Kerr* factors include the following: (i) "time and labor required;" (ii) "novelty and difficulty of the questions;" (iii) "skill requisite to perform the legal services properly;" (iv) "preclusion of other employment due to acceptance of the case;" (v) "customary fee;" (vi) "contingent or fixed nature of the fee; (vii) "limitations imposed by the client or the case;" (viii) "amount involved and the results obtained;" (ix) "experience, reputation, and ability of the attorneys;" (x) "undesirability of the case;" (xi) "nature of the professional relationship with the client;" and, (xi) "[a]wards in similar cases." *Id.* (citation omitted).

### A.   Steadfast's Attorneys' Rates Are Reasonable

"An attorney's rate is 'reasonable' for the purpose of a fee award if it comports with 'prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.'" *Giganews*, 2015 U.S. Dist. LEXIS 54063, at *45 (citation omitted). "The relevant community is generally defined as 'the forum in which the district court sits.'" *Van Skike v. Dir., OWCP*, 557 F.3d 1041, 1046 (9th Cir. 2009) (citation omitted). "[T]he proper scope of comparison … extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotes omitted). "[E]vidence that a billing rate was the usual rate the attorney charges for

his or her services is evidence that the rate is comparable to the market rate." *Giganews*, 2015 U.S. Dist. LEXIS 54063, at *14-15. "Billing rates usually reflect, in at least a general way, counsel's reputation and status (*i.e.*, as partner, associate, or law clerk)." *Moore v. James Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982). Attorney affidavits "regarding prevailing fees in the community, and rate determinations in other cases … are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For the following reasons, the evidence highlights the reasonableness of Steadfast's rates.

First, the fact that Steadfast "paid the rates for which they now seek reimbursement is evidence the rates are reasonable …." *Maloney v. T3Media, Inc.*, 2015 U.S. Dist. LEXIS 86183, at *14 (C.D. Cal. May 27, 2015). Indeed, the rate that an attorney "can command is itself highlight relevant proof …." *Id.* (citation omitted). Here, Partridge Partners charged Steadfast the standard rates for this case. JLA Decl. ¶ 10. These rates are comparable to, if not significantly lower than, the "prevailing market rates" in the Central District of California. *See id.* ¶ 19. Several courts in this district have approved of similar rates, if not much higher rates in similar cases. *See id.*

Second, the attorneys' standard rates are reasonable in light of the fact that the rates are much lower than average for the nature of this case and other attorneys' rates in comparable cases. In 2007, almost a decade before the present case was filed, a court in this district held that "attorney rates ranging from $390 per hour to $1,002.96 per hour were reasonable for the Los Angeles area …." *Giganews*, 2015 U.S. Dist. LEXIS 54063, at *59 (citing *Masimo Corp. v. Tyco Health Care Group, L.P.*, 2007 U.S. Dist. LEXIS 101987 (C.D. Cal. Nov. 5, 2007)). In that same case, which was decided in 2015, the Court found rates ranging from $705-930 for partners, as well as $660-690 for associates, reasonable in a similar case. Accordingly, this Court should find that Steadfast's attorneys' rates are reasonable.

**B.      The Hours that Steadfast's Attorneys Billed Are Reasonable**

The attorneys for Steadfast billed a reasonable number of hours. In determining the number of hours for which compensation is sought, Steadfast took a very conservative approach. First, the time ticket diaries were reviewed before the bill was initially sent to the client, and that time was often either reduced or completely stricken as a matter of counsel's billing discretion. JLA Decl. ¶¶ 10, 24. (describing how duplicative and seemingly unnecessary entries were reduced or eliminated). Second, the time entries were reviewed again in preparation of this motion, resulting in more time that was reduced or stricken. *See id.* ¶ 21(indicating reductions totaling $11,425.50). Accordingly, after two rounds of reductions, the hours that Steadfast seeks compensation for is only a portion of the hours worked on this case. *See id.*

The resulting number of hours that Steadfast requests compensation for is reasonable, especially given this case's importance, stakes, complexity, and duration. From vacated default (Dkt. 76) to the entry of judgment (Dkt. 520), Steadfast has been in this litigation for almost a year and a half. In that time, Steadfast has prevailed on a motion to dismiss, defeated ALS's motion for partial summary judgment, and moved successfully on its motion for summary judgment. Lastly, Steadfast had to prepare for, what was predicted to be, a 10-day trial.

## IV.    THE COURT SHOULD ALSO AWARD STEADFAST'S FAIR ESTIMATE OF FUTURE FEES

Motions for attorneys' fees "need not 'be supported at the time of filing with the evidentiary material bearing on the fees.'" *Giganews*, 847 F.3d at 676 (citing Fed. R. Civ. P. 54). Instead, Rule 54(d)(2)(B)(iii) only requires "a party to 'provide a fair estimate' of the amount of fees sought." *Id.*

Here, Steadfast requests compensation for the fees incurred but not yet billed, as well as a fair estimate of futures fees through June 18, 2018. *See* JLA Decl. ¶¶ 32-34; *see id.* Exs E and F. Exhibit E is a chart of the work performed, time, and

fees accumulated for this case from May 1, 2018, through May 14, 2018. *Id.* ¶ 33. The fees and time, however, have not yet been formally processed through Partridge's billing system. *Id.* The hours and fees amount to $11,263.50. *Id.* Similarly, Exhibit F is a chart that fairly estimates future work and fees for this case, through June 18, 2018. *Id.* ¶ 34. The estimate is based on the expected reply briefing on the motion for attorneys' fees, and the time necessary for preparing for and arguing this motion. *Id*. The hours and fees amount to $8,347.50. *Id.*

Accordingly, Steadfast respectfully requests the Court to award additional fees in the amount of $19,611.

## V.   THE COURT SHOULD AWARD REASONABLE EXPENSES

The Copyright Act permits courts to award a prevailing party "recovery of full costs." 17 U.S.C. § 505. In the Ninth Circuit, "full costs" under § 505 include non-taxable costs, which are in addition to but outside of the 28 U.S.C. § 1920's scope. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Courts have found recoverable a variety of non-taxable costs, such as data hosting, printing, e-discovery, copying, travel, and hotels. *See Giganews*, 2015 U.S. Dist. LEXIS 54063, at *89; *In re Aspartame Antitrust Litigation*, 817 F. Supp.2d 608, 614-15 (E.D. PA. 2011); *Identity Arts v. Best Buy Enter.*, 2008 U.S. Dist. LEXIS 119865, at *29 (N.D. Cal. Mar. 24, 2008). The same is true under the Lanham Act. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) ("[W]e repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties.").

Here, Steadfast has incurred a total of $35,208.74 in expenses and costs that were necessary to its defense. JLA Decl. ¶¶ 35-37; *see also id*. Exs. I-L. Most of the incurred costs were from necessary litigation support services provided by a vendor, D4, LLC. JLA Decl. ¶ 35. D4's services included data hosting, e-discovery, and other litigation support services, *see id.* (citing Exhibit I detailing $18,396.11 in costs), as well as printing and copying costs, *see id.* (citing Exhibit J amounting to

$3,734.98 in costs). The remaining necessary costs consist of in-house copies, travel, hotel, and miscellany. *See id.* ¶ 35 (citing Exhibit K at $1,544.70, and Exhibit L at $11,532.95). These costs were necessary to Steadfast's successful defense. *Id.* ¶ 35. As cited above, courts routinely find these costs necessary to litigation and find these costs recoverable.

Steadfast also notes that the non-taxable costs and expenses here were not included in its Application to the Clerk to Tax Costs. *See* Dkt. 528; Dkt. 528-1. In its Application, Steadfast requests a total of $14,484.68 for its taxable costs. *See id.* In the event that the Clerk does compensate it for the full amount of taxable costs, Steadfast requests that the Court compensate it for the difference. Steadfast will supplement the record if necessary.

Accordingly, this Court should award Steadfast the full costs and expenses incurred in its defense against ALS's meritless claims. In the event that the Clerk does not compensate Steadfast for the requested amount of taxable costs, Steadfast also asks the Court to award Steadfast the difference.

## VI. Conclusion

For the foregoing reasons, Steadfast respectfully asks this Court to grant its motion, awarding it $578,878 in fees and $35,208.74 in non-taxable costs and expenses. Pursuant to Steadfast's fair estimate of future fees, Steadfast also requests an award of $19,611.

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Respectfully submitted,

JOHN L. AMBROGI
COLIN T.J. O'BRIEN
PARTRIDGE PARTNERS, P.C.

PAUL D. SUPNIK

Dated: May 14, 2018          By: /s/John L. Ambrogi
                             John L. Ambrogi
                             Attorneys for Steadfast Networks, LLC

DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

1

## **PROOF OF SERVICE**

I, Colin T.J. O'Brien, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **DEFENDANT STEADFAST NETWORKS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** was served via electronic filing to the following parties in this action via their counsel:

ALS Scan, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: May 14, 2018              /s/ Colin T.J. O'Brien
                                 Attorney for Defendant
                                 Steadfast Networks LLC