JOHN L. AMBROGI
jla@partridgepartnerspc.com
COLIN T.J. O'BRIEN
colin@partridgepartnerspc.com
PARTRIDGE PARTNERS, P.C.
321 North Clark, Suite 720
Chicago, Illinois 60654
Telephone: (312) 634-9500

PAUL D. SUPNIK [SBN 52842]
paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorneys for Defendant
STEADFAST NETWORKS, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT COURT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALS SCAN, INC.,<br>a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC.<br>a Delaware corporation,<br>et al.<br><br>Defendants. | Case No.: 2:16-cv-05051-GW-AFM<br><br>**DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>**Hearing Date: July 30, 2018**<br>**Hearing Time: 8:30 a.m.**<br>**Place:  Courtroom 9D, 9th Fl.**<br>**        350 West 1st Street**<br>**        Los Angeles, CA, 90012**<br>**Judge:  Hon. George H. Wu** |

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

I.   ALL FACTORS WEIGH IN STEADFAST'S FAVOR FOR AN AWARD OF ATTORNEYS' FEES UNDER THE COPYRIGHT ACT ...................................2

A. ALS's Position Was Objectively Unreasonable.........................................2

1. ALS Misinterprets *Kirtsaeng*'s Significance....................................2

2. ALS Provides This Court with A Legally Flawed Framework. ....................4

3. ALS's Sole Reliance on *Fonovisa* and *Louis Vuitton* Was Objectively Unreasonable.....................................................................5

    i.    Reliance on Fonovisa was Objective Unreasonable ...............................6

    ii.   Reliance on Louis Vuitton was Objective Unreasonable ........................7

    iii.  ALS's Other Case law is Misplaced. ...................................8

B. Improper Motive .........................................................................8

C. Steadfast Should Be Compensated; ALS and Similar Parties Should Be Deterred. .............................................................10

D. ALS Pretends the Vicarious Infringement Claim Does Not Count. ..............12

E. Weighing the Factors...................................................................12

II.  STEADFAST IS ENTITLED TO FEES UNDER THE LANHAM ACT.........13

III. THE REQUESTED FEES WERE NECESSARY AND REASONABLE.........15

A. Steadfast's Attorneys' Rates Are Unchallenged. ...........................16

B. ALS's Challenge to The Amount of Total Requested Hours Is Superficial, Lacking Evidence to Support its Beliefs. ......................................16

C. ALS's Challenge to Steadfast's Apportionment is Without Merit. ..............18

IV.      Conclusion...............................................................................19

# **TABLE OF AUTHORITIES**

**CASES**

*Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) ...................13

*Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259 (9th Cir. 1996).........................6

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ...............................19

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ........................ passim

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 658 F.3d 936 (9th Cir. 2011) .....7

*Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007)........................5

*Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24, 2015)................................................................................... 13, 16, 17

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)............. 4, 5, 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)..... 5, 6, 10, 18

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677 (9th Cir. 2012)...........13

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013)........................................8

*Shame on You Prods. v. Banks*, 2018 U.S. App. LEXIS 16764 (9th Cir. June 21, 2018)....................................................................................................1, 3

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016)....................................8

*Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018)............................................3

**INTRODUCTION**

Defendant Steadfast Networks, LLC ("Steadfast") submits this reply in support of its motion for attorneys' fees and expenses. In opposing the motion, ALS simply ignored critical facts and arguments, focusing instead upon a rehash of its old unsuccessful arguments and legally unsupported premises.

First, as a whole, ALS mistakenly puts all of its eggs in an objective-reasonableness basket, relying on the Supreme Court's decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). As explained further below, "*Kirtsaeng* did not effect a significant change in the law …." *Shame on You Prods. v. Banks*, 2018 U.S. App. LEXIS 16764, at *6 (9th Cir. June 21, 2018). Moreover, ALS has still failed to show the objective reasonableness of its copyright claims. Assuming that both of ALS's copyright claims had objective reasonableness, and thus giving this factor substantial weight, <u>the totality of the circumstances of all factors considered still weighs in favor of awarding Steadfast attorneys' fees</u>.

Second, underlying ALS's opposition is a legally and logically unsupported premise, which goes as follows: Because the Court neither accepted nor agreed with *all* of Steadfast's arguments, the Court's doing so made ALS's position more objectively reasonable. This is flawed. Instead, ALS's factual and legal positions are the only focus of the objective-reasonableness inquiry. ALS then continues this same mistakenly premised argument throughout its opposition.

Third, while ALS doesn't dispute the reasonableness of the attorneys' rates, ALS makes baseless claims opposing the number of total hours and how those hours were apportioned. Here, ALS ignores Steadfast's supporting evidence and instead defers to its own beliefs. For example, ALS mistakenly relies on how "seriously" ALS itself took certain claims as a barometer of how Steadfast must have spent its time. ALS's beliefs are not indicative of Steadfast's fees other than to support the fact that Steadfast was forced to defend itself against baseless claims for over a year.

# I.   ALL FACTORS WEIGH IN STEADFAST'S FAVOR FOR AN AWARD OF ATTORNEYS' FEES UNDER THE COPYRIGHT ACT

All the *Fogerty* factors weigh in Steadfast's favor, and thus the Court should award attorneys' fees under the Copyright Act. Right from the start, Steadfast begins with two factors that weigh heavily in its favor: degree of success, Dkt. 531, p. 6-7, and furthering the purposes of the Copyright Act, *id.*, p. 7. These two factors are not only uncontested by ALS, but the two, on their own merit alone, could provide justification for an award of attorneys' fees. As for the latter factor, Steadfast argued that ALS put forth a theory that, if accepted, would have **radically** expanded the scope of secondary liability. Dkt. 531, p. 7. ALS does not contest this.

As demonstrated below, ALS fails to put forth any legitimate argument to the contrary. When reviewing ALS's opposition as a whole, the purpose of the first 17.5 of 21 pages are all geared only towards making a *Kirtsaeng*, objective-reasonableness argument. Indeed, ALS's opposition reads as if it were a motion for reconsideration. As for the other *Fogerty* factors, ALS's remaining arguments are underserving of this Court's attention. This tactic as well as  others  advanced by ALS to obfuscate the analysis are misguided.

## A.   ALS's Position Was Objectively Unreasonable.[1]

As an initial matter, ALS's opposition in regards to the objective reasonableness contains two preliminary misdirections. First, ALS prefaces its argument, inaccurately portraying the significance of *Kirtsaeng*. Second, ALS provides legally irrelevant and erroneous deflection in support of its position. Next, when viewed in the correct framework, ALS's position is void of objective reasonableness.

### 1.   ALS Misinterprets *Kirtsaeng*'s Significance.

---

[1] ALS lumped frivolousness and objective reasonableness together. For these same reasons, and because frivolousness is a lesser standard, Steadfast shows that the frivolousness factor weighs in its favor.

Here, ALS cites to *Kirtsaeng* as if that case had a decisive impact on the way district courts in the Ninth Circuit assess motions for attorneys' fees. Dkt. 542, p. 1:5-13; *id.*, p. 14:7-12. In *Kirtsaeng*, the Supreme Court revisited *Fogerty*, providing "some additional guidance respecting the application of §505." *Kirtsaeng*, 136 S. Ct. at 1985. There, the Supreme Court prefaced its analysis stating what no one disputed: § 505 "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case." *Id.* And it re-emphasized the principle from *Fogerty* that: "[A] district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Id.* (citation omitted).

Turning to the issue in the case, the Supreme Court criticized Second Circuit precedent, recognizing that Circuit's "language at times suggest[ed] that a finding of reasonableness raise[d] a presumption against granting fees, … and that [went] too far in cabining how a district court must structure its analysis and what it may conclude from its review of relevant factors." *Id.* at 1989. The Supreme Court found this problematic because district courts within that Circuit turned "'substantial' into more nearly 'dispositive' weight." *Id.* As a result, the Supreme Court clarified that "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one." *Id.* at 1988.

Recently, the Ninth Circuit rejected a plaintiff's argument that the court "improperly failed" to cite or "take into account" *Kirtsaeng*. *Shame on You Prods. v. Banks*, 2018 U.S. App. LEXIS 16764, at *6 (9th Cir. June 21, 2018). The Ninth Circuit emphasized that "*Kirtsaeng* did not effect a significant change in the law" and that it has "upheld pre-*Kirtsaeng* decisions on the basis that *Kirtsaeng* did not require a different result." *Id.* at *7 (referencing *Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018)). "Under *Kirtsaeng*, a district court must give 'substantial weight' to the reasonableness of [losing party's] litigating position, but it also takes into account the other factors identified in our case law." *Id.* at *10 (citation

omitted).[2] In sum, contrary to how ALS would have this Court read *Kirtsaeng*, that case only clarified that "substantial weight" does not mean "dispositive" weight.

2.      ALS Provides This Court with A Legally Flawed Framework.

Underlying ALS's objective reasonableness argument is a legally and logically unsupported premise, which goes as follows: Because the Court neither accepted nor agreed with ***all*** of Steadfast's arguments, the Court's doing so made ALS's position more objectively reasonable. This is flawed in logic and in fact. Actually, "[n]o matter which side wins a case, the court must assess whether the ***other side's position*** was (un)reasonable." *Kirtsaeng*, 136 S. Ct. at 1988 (emphasis added); *see also id.* at 1987 (noting a "district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim …."). Put another way, in assessing whether the losing party's position was objectively reasonable, the focus of the inquiry is just that: the losing party's position, *see id.*, consisting of both the factual and legal "components of the case," *Giganews*, 847 F.3d at 675.

Here, in support of its objective-reasonableness argument, ALS provides a distraction by focusing mainly on Steadfast, as well as other matters that have no bearing on whether ALS's position was objectively reasonable. *See* Dkt. 542, p. 15:1-19, 17:14-18:17. For example, ALS provides, "The Court agreed…The Court rejected Steadfast's argument … The Court rejected Steadfast's argument … The Court agreed … The Court rejected Steadfast's theory …." *Id.*, p. 15:1-9; *see also id.*, p. 17:14 ("Steadfast cited no case that was on all fours."). This style of attack

---

[2] Objective reasonableness of a losing party's position may vary; in other words, some losing party's positions may be less objectively reasonable than others, and thus a district court only gives "substantial weight" to the degree of objective reasonableness. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017) (noting that "the 'objective unreasonableness' factor weighed *slightly* in Appellees' favor" (emphasis added)).

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

has nothing to do with whether ALS's position was objectively reasonable. Further, ALS's "sound-bite" approach of evaluating the Court's decision is also impermissibly subjective. Even ALS's discussion of *Fonovisa* and *Louis Vuitton* are so infused with finger-pointing that those discussions miss the point of the objective reasonableness inquiry. *See id.*, p. 16:3-17:13.

        3.    <u>ALS's Sole Reliance on *Fonovisa* and *Louis Vuitton* Was Objectively Unreasonable.</u>

Now, with the framework clarified, the issue is whether both the factual and legal components of ALS's positions were objectively reasonable. *See Giganews*, 847 F.3d at 675; *Kirtsaeng*, 136 S. Ct. at 1988.[3] Working within this correct framework, ALS makes only one relevant argument: whether or not it was objectively reasonable to rely on either *Fonovisa* or *Louis Vuitton*, given the known facts when the third amended complaint was filed. *See* Dkt. 542, p. 15:20-22. The short answer: No matter how many times ALS cites these two cases, the conclusion is the same every time.

To be objective, these two cases must be put in context. In 2007, the Ninth Circuit slightly tweaked the Circuit law to align with *Grokster*. Accordingly, ALS was required to establish that Steadfast's "activities me[t] the definition of contributory liability … enunciated in *Grokster*[,]" meaning that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement …." *Perfect 10, Inc. v. Amazon.com*, Inc., 508 F.3d 1146, 1170 (9th Cir. 2007) (citation omitted). Soon after, *Visa* was decided. There, the Ninth Circuit disagreed with the dissenter's application of outdated cases, such as *Fonovisa*, to Internet-related issues. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 798 n.9 (9th Cir. 2007) ("Those tests were developed for a brick-and-mortar world, and, as the

---

[3] For purposes here, Steadfast only addresses ALS's contributory infringement claim. Section I.D, *infra*, provides a general discussion responding to ALS's treatment of the vicarious infringement claim in its opposition.

Napster and Grokster courts implicitly recognized by paying little attention to them"). The Ninth Circuit made it clear that it would not find liability for activities that would "require a radical and inappropriate expansion of existing principles of secondary liability and [that] would violate the public policy of the United States." *Id.* at 795. Indeed, "[a]ny conception of 'site and facilities' that encompasses Defendants would also include a number of peripherally-involved third parties, such as computer display companies, storage device companies, and software companies that make the software necessary to alter and view the pictures and even utility companies that provide electricity to the Internet." *Id.* at 800.

With the legal context set, the Court also considers the objective reasonableness given the facts. First, ALS filed suit knowing that, every time it sent Steadfast a non-compliant DMCA notice, the at-issue images were promptly removed. Second, ALS knew that Steadfast was a separate entity than Flixya. Third, ALS knew that only Imagebam.com users, not Flixya, uploaded images.

<blockquote>i.   *Reliance on Fonovisa was Objective Unreasonable*</blockquote>

Turning to *Fonovisa*, it is clear that ALS's reliance on it was objectively unreasonable. The Ninth Circuit in *Visa* already made clear that the case had a limited applicability in the online world. In *Fonovisa*, the swap meet operators defied the officer's order to remove counterfeits and refused, after having agreed, to give the officer vendor information. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996).[4] Unlike the defendant's blatant disregard to work with others to remove infringements, Steadfast joined ALS in its effort to remove the at-issue images. This was known before the suit was filed. Dkt. 531, p. 3; *see also* Dkt.

---

[4] It is worth noting that the *Fonovisa* concerned the reversal of a motion to dismiss. As such a case, its value must be read in the context that the Court is making all reasonable inferences in the plaintiff's favor. And the case does not establish liability. These point too should have been recognized by ALS, making ALS's position even more objectively unreasonable.

96, p. 6 (misstating law, arguing that "merely continuing to forward infringement notices is not enough"). In sum, ALS not only knew of the Ninth Circuit's disapproval of *Fonovisa*, but also knew that the at-issue images were removed each time it sent a non-compliant notice to Steadfast. Accordingly, ALS's reliance on *Fonovisa* was objectively unreasonable, both legally and factually.

   ii.  *Reliance on Louis Vuitton was Objective Unreasonable*

  Next, ALS's continued and tiresome reliance on *Louis Vuitton* was objectively unreasonable. In *Louis Vuitton*, the plaintiff sent the defendants 18 notices of infringement, and the defendants failed "to identify any action taken in response to the notices sent." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 936 (9th Cir. 2011). Unlike the liable defendant in *Louis Vuitton*, Steadfast took action that resulted in the complete removal of the alleged at-issue infringements. This was known before the suit was filed. Dkt. 531, p. 3; *see also* Dkt. 96, p. 6 (misstating law, arguing that "merely continuing to forward infringement notices is not enough").

  Additionally, the websites at issue in *Louis Vuitton* were the direct infringers; here, Steadfast's former client's client(s) were the alleged infringers, *i.e.*, the users of a legitimate website. It is objectively unreasonable to think that Steadfast had permission to hack into another company's server and withdraw services from that company's client, who is an unidentified individual. This is bordering on the absurd. Accordingly, ALS's reliance on *Louis Vuitton*–no matter how much it willed the case to apply here–was objectively unreasonable.

  Moreover, ALS should have read *Louis Vuitton* thinking that, if the case went to trial, could it "present[] … evidence that [Steadfast] had reasonable means to withdraw services to" Imagebam.com users? *Louis Vuitton*, 658 F.3d at 942. Here, ALS already admitted that Steadfast was not able to do so. *See* Dkt. 395, p. 10. Obviously, Steadfast was not directly providing services to the Imagebam.com users. *See id.*; *see also Louis Vuitton*, 658 F.3d at 942. ALS's suit is nonsensical.

From the beginning, ALS should have known that *Louis Vuitton* could not support its case no matter how times ALS cited to it.

### iii.   *ALS's Other Case law is Misplaced.*

ALS cites to *VMG Salsoul*. That case stands for the proposition that "[i]t plainly is reasonable to bring a claim founded on the **only circuit-court precedent** to have considered the legal issue, whether or not our circuit ultimately agrees with that precedent." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (emphasis added). On top of relying on an only "circuit-court precedent," the plaintiff's claim relied "on disputed facts sufficient to reach a jury …." *Id.*

Here, ALS did not test the "**only circuit-court precedent** to have considered [a] legal issue …." *VMG Salsoul*, 824 F.3d at 887 (emphasis added). Rather, ALS ignored the Supreme Court, *i.e., Grokster*, and vast in-circuit controlling authorities, namely *Napster*, *Amazon.com*, *Visa*, and *Giganews*. Moreover, the facts that were known when filing the complaint prevented ALS from reaching a jury. ALS's stubborn reliance on *Louis Vuitton* and *Fonovisa* was objectively unreasonable.

ALS also cites to *Green Day*. That case stands for the proposition that "the mere fact that [the plaintiff] lost cannot establish his objective unreasonability." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013). Also, in light of a four-factor fair use test, the Ninth Circuit concluded that there was no reason to believe the plaintiff should have known its case was a failure from the outset, where the defendant's transformation was nonobvious and slight. *Id.*

Here, unlike the juggling of a four-factor test in assessing fair use, ALS's claims each involved several essential elements. When filing the lawsuit, ALS knew that the at-issues images were removed, meaning Steadfast must have had a simple measure. Because ALS filed a lawsuit knowing that it could not prove an essential element, ALS's position was objectively unreasonable.

### B.   Improper Motive

ALS's improper motive is another factor that weighs heavily in Steadfast's

favor. ALS ignored many of Steadfast's arguments on this point, too.

As developed in the initial memorandum, ALS's improper motive is apparent by its failure to take any measures besides paying Steve Easton to protect its works. Automated technology is available, and ALS does not argue otherwise. Accordingly, ALS's failure to take common measures to protect its works shows improper motive.

ALS also claims that "copyright owners are not proceeding with suspect motivations if they chose not to pursue claims against impecunious direct infringers and seek satisfaction against U.S. companies that aggregate services to sites that chronically infringe." Dkt. 542, p. 18.[5] The deflection here only serves to highlight ALS's improper motive. First, the only website ALS has mentioned is imagebam.com, which was then operated and owned by California-based Flixya. Second, as it has been already established, Flixya's imagebam.com cannot "chronically infringe." *See* Dkt. 396, ¶¶ 28, 54 (admitting only unidentified users upload images to Imagebam.com). Meaning, a suit against Flixya would be for secondary liability. Instead of filing a secondary liability claim against Flixya, ALS chose to sue Steadfast for leasing servers to a client that does not engage in direct infringement and otherwise operated a law-abiding website.

In sum, ALS sued Steadfast for the actions of its former client's client(s). Fundamentally, contributory liability is premised on "fault-based liability derived from the common law." Dkt. 344, p. 8 (quoting *Amazon.com*). Here, Steadfast did the most it could do to assist ALS–and successfully, too–in making right the alleged wrongs committed by unidentified Imagebam.com users. *See* Dkt. 344, p. 7-12.

---

[5] ALS's statement would be equally applicable had it chose to sue the electricity company. Based on ALS's position, ALS would have been justified in suing the electricity company here because the electricity company provided an indirect service that would have allowed it to "pull the plug" just as easily.

Again, ALS puts it best, admitting that "Steadfast did not in any way promote or take any affirmative steps to encourage any infringing activity." Dkt. 396, ¶ 6. To sue someone under the circumstances of this case, such as Steadfast but not Flixya, does not follow common sense. *See* Dkt. 344, p. 7-12. Instead, it shows that ALS must have had an improper motive. Accordingly, this factor weighs heavily in Steadfast's favor.

**C.      Steadfast Should Be Compensated; ALS and Similar Parties Should Be Deterred.**

Steadfast has shown that an award of attorneys' fees is warranted in light of considerations of compensation and deterrence. *See* Dkt. 531, p. 12-14. In opposition, ALS's responses (or lack thereof) are unavailing.

ALS ignores Steadfast's claim that it should be compensated for its successful defense. ALS ignores Steadfast's claim that ALS and others should be deterred from filing suits with theories that have no basis in the case law. ALS ignores Steadfast's claim that this was an attack on the Internet. These three points alone show that this factor weighs heavily in Steadfast's favor.

Steadfast argued that ALS misused copyright law to further its effort to shut down legally operated businesses. In response, ALS provides a conclusory statement in response, calling this "pure hyperbole." Dkt. 542, p. 19:13-14. But ALS's response is astounding, given that its battle cry throughout this entire litigation has been "pull the plug." Dkt. 96, p. 8; Dkt. 297, p. 20 ("pull[] the plug"); Dkt. 365, p. 15 ("pull[] the plug"); *see also* Dkt. 365, p. 21 (claiming Steadfast "should have terminate[d] [Flixya's] account"). Due to the actions of unidentified individuals, ALS wanted Steadfast to render as nonfunctional a third-party, law-abiding business; in other words, shutting it down. ALS has exhibited the same conduct that caused the Ninth Circuit to concern itself with Perfect 10's tactics.[6]

---

[6] *See Visa*, 494 F.3d at 798 n.9 ("Meanwhile, what would stop a competitor of a web-site from sending bogus notices to a credit card company claiming

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

This attempt to stretch the law to unreachable heights should be deterred.

As a general response, ALS asserts that coming out "empty handed" after incurring time and expense is deterrence enough. Such a view of this case, however, is too narrow. ALS has forced at least two settlements; ALS has had no success on the merits. ALS and similar plaintiffs should be discouraged from trying to gamble; meaning, filing lawsuits against a number of unrelated parties in attempts to force settlements because it is cheaper to settle. Such conduct should be deterred, especially where, as here, the party's claim has no basis in the case law.

ALS then attempts to deflect to matters outside of the scope of this case. It mentions the challenges faced due to "online pirates" that are "often foreign and impecunious parties …." Dkt. 542, p. 19:17-18. But the focus of ALS's case against Steadfast concerned Flixya, a business that was located in California and that complied with the law. *See* Dkt. 340-3; Dkt. 443, p. 20 (concluding that there was "no reason, legal or practical, to terminate Flixya's account"). ALS's deflection raises irrelevant matters that should be disregarded. If anything, ALS's deflection here shows that, instead of suing bad "online pirates," ALS sued allies who joined ALS's effort in removing alleged *specific infringements* of ALS's images from the Internet. Contrary to ALS's claim, awarding attorneys' fees to Steadfast would not intimidate copyright owners. Instead, it would send a message that would only reinforce the obvious: You should not use judicial resources to sue your allies in the fight against copyright infringement, especially when your position has no basis in the case law.

As shown here, ALS's arguments concerning considerations of compensation and deterrence are unfounded. Accordingly, this factor weighs heavily in favor of awarding attorneys' fees to Steadfast.

---

infringement by its competitor in the hope of putting a competitor out of business, or, at least, requiring it to spend a great deal of money to clear its name?").

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

### D.     ALS Pretends the Vicarious Infringement Claim Does Not Count.

ALS's opposition is undeveloped when it comes to the vicarious infringement claim. ALS only mentions the vicarious infringement claim once: "ALS elected during the summary judgment phase not to urge a theory of vicarious liability. Thus, the Court made no findings on that theory. Doc. 443 p.12 n.11."[7] Dkt. 542, p. 18:1-3; *but compare id. with* Dkt. 443, p. 5 (citing RSGD ¶¶ 26, 32-40, 52).

The underlying presumption here is that a district court cannot determine the frivolousness or objective reasonableness unless the court makes express findings. This is wrong. The Act grants district courts "wide latitude," giving them the discretion to "assess whether the other side's position was (un)reasonable." *Kirtsaeng*, 136 S. Ct. at 1985, 1988. This includes both the factual and legal components of ALS's positions. *See Giganews*, 847 F.3d at 675. ALS's single mention of its vicarious infringement was a strategic mistake.

Here, all of the factors identified weigh heavily in Steadfast's favor when it comes to the vicarious infringement claim; ALS has not argued otherwise. Overall, an award of all requested fees regarding the vicarious infringement is warranted.

### E.     Weighing the Factors.

In assessing the totality of the circumstances, Steadfast should be awarded attorneys' fees. All the factors weigh in Steadfast's favor. In the unlikely event that ALS's position is seen as objectively reasonable, that factor is only deserving of substantial weight to the extent that it's reasonable. The other factors, two of which are uncontested (degree of success and furthering the purposes of the Copyright Act), show that an award of attorneys' fees is warranted. As for the vicarious infringement claim, all the factors weigh in Steadfast's favor. For all the reasons

---

[7] ALS mistakenly cites to where the Court notes that ALS "appears to concede that Steadfast is not liable under an inducement theory of secondary liability." Here, too, ALS made Steadfast defend itself and then brief an inducement argument not only in its summary judgment motion, but also in the opposition to the motion to dismiss.

DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

described above, the Court should grant Steadfast's motion for attorneys' fees pursuant to the Copyright Act.

## II.   STEADFAST IS ENTITLED TO FEES UNDER THE LANHAM ACT.

Steadfast, the prevailing party, is entitled to fees under the Lanham Act, because it has shown that this case is "exceptional." For several reasons, ALS's opposition only further highlights that its suit was "groundless, unreasonable … [and] pursued in bad faith." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012). As an initial matter, Steadfast notes that, like the Copyright portion, ALS again deflects the focus from itself and evades Steadfast's arguments, focusing on inconsequential matters. *See* Dkt. 542, p. 20:8-11.

First, in its opposition, ALS belittles Steadfast's argument that ALS "supposedly 'ignored controlling law," noting "Steadfast had no authorities that dictated the outcome in this case …." *Id.*, p. 20:12-14. This cannot be further from the truth. "According to the Ninth Circuit, 'trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.'" Dkt. 344, p. 21 (quoting *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)); *see also id.*, p. 21-22 (developing the argument); *see* Dkt. 395, p. 11-12 (repeating argument); *see* Dkt. 531, p. 14 (same); *see* Dkt. 90, p. 19.

From the beginning, Steadfast alerted ALS that it did not provide "any facts establishing what the purported trademark infringement by the Imagebam users entailed." Dkt. 90, p. 19. Significantly, the Court noted the same. Dkt. 111, p. 9. At this point, ALS should have realized that the claim was meritless. Despite having no legal basis, however, ALS continued a groundless and unreasonable assertion that an "unlawful display of an infringing ALS image infringes both ALS's copyrights and trademark rights." Dkt. 148, p. 4; *cf. Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063, at *42 (C.D. Cal. Mar. 24, 2015) (concluding that, after court found Lanham Act claims unavailing, Perfect 10 acted reasonably

when it *declined* to pursue them further).[8]

Here, ALS has now three times skirted Steadfast's argument–based on controlling law–that there was no underlying direct trademark infringement. Among other things, ALS never showed "use" in "commerce" under the Lanham Act.[9] ALS's reliance on *Louis Vuitton* only confirms the groundless and unreasonableness of ALS's suit. *See* Dkt. 96, p. 9 (ALS noting "the defendants hosted websites that **sold goods** infringing Louis Vuitton's copyright and trademarks" (emphasis added)). In short, ALS's claim was groundless and unreasonable, and its relentless pursuit shows bad faith; there was no basis to believe in success on the merits from the beginning. Attorneys' fees are warranted on this point alone.

ALS, however, next claims that "the undisputed facts were that the *infringed* ALS works were not only copyrighted but bore ALS's registered mark." Dkt. 542, p. 20 (emphasis added). This phrasing is terribly misleading. ALS's statement reads as if the Court concluded that the undisputed facts showed underlying direct infringement of ALS's trademark as a matter of law. Contrary to what ALS wants one to believe, the Court did not reach the issue of whether there was direct trademark infringement as a matter of law. Instead, in a summary judgment lens, the Court simply found that ALS owns a trademark and that ALS's mark appears on its website and with its content. Dkt. 443, p. 4; *but see* Dkt. 395, p. 12 n. 4.

ALS also misleadingly provides, "As the court noted, the infringing images bore 'the ALS markings.'" Dkt. 542, p. 20 (quoting Dkt. 443, p. 13 n. 13). But the Court's reference to "the ALS markings" was in the context of "knowledge that

---

[8] This strategy, which is often taken by plaintiffs, is to throw in the kitchen sink. If one goes this route, as ALS has here, then they should suffer the consequences.
[9] And Steadfast has not even touched on the fact ALS has admitted facts that preclude any chance of establishing direct control or direct monitor Flixya's Imagebam.com. *See* Dkt. 395, p. 13-14; *see also* Dkt. 319, ¶¶ 52-54.

copyrights are being infringed on its customers' sites." Dkt. 443, p. 13 n. 13. Markings, such as copyright notices, are not trademarks. *See* Dkt. 395, p. 12 n. 4. In the passage that ALS's cites, the Court did not conclude that ALS's trademark was infringed.

In sum, ALS's case was unreasonable, groundless, and pursued in bad faith because there was no underlying trademark infringement. Additionally, ALS's bad faith is highlighted by its refusal to accurately cite the record and law, and respond to most if not all of Steadfast's arguments. *See* Dkt. 542, p. 20:12-18.

Because this is an "exceptional case," the Court should award fees to Steadfast under the Lanham Act.

## III.   THE REQUESTED FEES WERE NECESSARY AND REASONABLE

In Sections III, IV, and V of its initial memorandum, Steadfast argued that its requested fees were necessary and reasonable, that it provided a fair estimate of future fees, and that the Court should reward reasonable expenses, including any costs that are not taxed by the Clerk. *See* Dkt. 531, p. 15-19. ALS does not challenge, and thereby concedes several points: first, Steadfast's attorneys' rates were reasonable; second, that the Steadfast provided a fair estimate of informal hours and future fees that the Court should award; third, that the Court should award Steadfast's costs and expenses, and that those costs were necessary and reasonable; fourth, that Steadfast should be compensated for any of the requested amount of non-taxable costs that the Clerk does not award.[10] *See id.*

Because ALS's opposition is perfunctory, there are only a few points to highlight on this issue. First, it is worth emphasizing that ALS does not challenge the reasonableness of Steadfast's attorneys' rates. Second, ALS challenge to the

---

[10] The Clerk did not award $2,695.37 of the requested non-taxable costs. *Compare* Dkt. 539 *with* Dkt. 528, 528-1, 2, & 3. As reflected in the conclusion here, and requested previously, Steadfast requests that the difference be added to the total costs and expenses here. *See* Dkt. 531, p. 18-19.

amount of total requested hours is superficial, lacking evidence to support its beliefs. Third, ALS's challenge to Steadfast's apportionment is without merit.

### A.    Steadfast's Attorneys' Rates Are Unchallenged.

In the initial memorandum, Steadfast set forth that its attorneys' rates were reasonable. Dkt. 531, p. 15-16. Meaning, the attorneys' rates "comport[ed] with prevailing market rates in the relevant community …." *Id.* at 15 (citation omitted). In part, the evidence showed that Steadfast's attorneys' rates were ***significantly lower*** than the "prevailing market rates" in the Central District of California. *See id.* at 15-16. Here, ALS doesn't contest this. Of course, ALS avoids this discussion at all cost; had Steadfast's attorneys' rates here been anything close to the "prevailing market rates" in the Central District of California, Steadfast would be seeking an amount that multiplies the current requested amount. Put in this context, it shows just how unwarranted ALS's challenge is to the total requested amount.

### B.    ALS's Challenge to The Amount of Total Requested Hours Is Superficial, Lacking Evidence to Support its Beliefs.

ALS instead complains about Steadfast's total requested hours. It does not, however, do so explicitly. If one asserts that $500,000 is excessive but does not challenge the attorneys' rates, then what the complaint boils down to is the *amount* of hours billed.

In making this challenge, ALS provides two beliefs. First, ALS attempts to downplay these proceedings, providing its belief that this case "was relatively straightforward." Dkt. 542, p. 20-21. ALS's belief is not evidence, and this characterization is hollow and lacks substance. *See Giganews*, 2015 U.S. Dist. LEXIS 54063, at *58 (C.D. Cal. Mar. 24, 2015) (rejecting unsupported **expert opinion** that the case was "a straightforward copyright case"). Indeed, ALS's mere six sentences does not accurately depict approximately a year and half's worth of proceedings. *See* Dkt. 542, p. 20:21-26; *compare id. with* Dkts. 1-543, *and* JLA Decl. ¶¶ 10, 22-34, Exs. C-G). Moreover, ALS cannot use its own counsel as an

expert witness at this juncture. *See Giganews*, 2015 U.S. Dist. LEXIS 54063, at *58 (noting Perfect 10 used an expert witness to opine on issues regarding attorneys' fees). Accordingly, ALS's belief should be ignored.

Second, ALS provided its belief that the "fees were multiplied" because a Steadfast attorney attended Cloudflare's depositions of Sarah Walsh, Eric Penn and Steven Easton. Dkt. 542, p. 21:1-3; Dkt. 542-1, Spillane Decl. ¶ 3. This belief is problematic for several reasons. It is neither evidence, nor admissible. Nor does ALS explain how or why the attendance was unnecessary, especially when these individuals were ALS's key witnesses.

The real question is, however, can the attendance of three depositions really "multipl[y]" the fees as much as ALS claims? Unsurprisingly, ALS also fails to support its "belief" with concrete dollar and hour amounts.[11] ALS's belief is merely a distraction, not evidence. Like the first, this belief should be ignored, too.

As a result, ALS has provided no competent evidence or argument to controvert the fact that the total hours billed by Steadfast were reasonable. Here, Steadfast's supporting evidence, including the time entries and the court record's 543 docket entries, show that these proceedings were extensive, time consuming, and complex. *See* JLA Decl. ¶¶ 10, 22-34, Exs. C-G; Dkts. 1-543. Because the amount of total hours billed was reasonable, this Court should award attorneys' fees in the total requested amount.

---

[11] Despite that ALS's complaint is completely unfounded on its face, Steadfast will nonetheless set the record straight. ALS's belief is mistaken and overstated. *See* Dkt. 542-1, ¶ 3. Colin O'Brien attended Cloudflare's deposition of Eric Penn, Ex. C, p. 57 & 58, and John L. Ambrogi attended Cloudflare's deposition of Steve Easton, Ex. C, p. 47. Steadfast was not billed for travel time to these depositions. At most, attendance at the Cloudflare depositions amounted to less than $6,500. *See* JLA Decl. Ex. C, p. 47, 57-58. Steadfast's attorneys gained valuable and necessary insight by attending.

### C.     ALS's Challenge to Steadfast's Apportionment is Without Merit.

ALS complains about the way Steadfast apportioned its fees. ALS first asserts that Steadfast "allocate[d] too much of its time to the copyright claim[s] over the trademark claim." Dkt. 542 at 21:6-7. In support, ALS's counsel, under oath, claims he has *personal knowledge* that Steadfast's estimation is errant and that he has *personal knowledge* of Steadfast's motivations. Dkt. 542-1, ¶ 4. ALS's counsel knows neither.

ALS counsel's errant speculation actually provides support for Steadfast's estimated apportionment. ALS is correct that the "bar to an award of fee is higher" for Lanham Act cases. Dkt. 542-1, ¶ 4. But it is well known that: "The tests for secondary trademark infringement are even more difficult to satisfy than those required to find secondary copyright infringement." Dkt. 90, p. 19 (quoting *Visa*, 494 F.3d at 806). It was also clear that there was no underlying trademark infringement. *See id.* For the reasons above, *supra* Section I, it was clear ALS's copyright claims were frivolous. Taking these factors into consideration, it shows that it was reasonable to avoid *wasting* time on the contributory trademark infringement claim. *See, e.g.*, Dkt. 315-2, p. 13 (opposing ALS's motion for summary judgment with a paragraph about trademarks).

Second, ALS also claims that it "pursued both claims with equal vigor." Dkt. 542, p. 21:7. In the Spillane Decl., he provides that "[ALS] always took the trademark claims seriously." Dkt. 542-1, ¶ 4. But this is meaningless. It is not a barometer as to how Steadfast allocated its time.

Lastly, ALS suggests that the Court should reduce the overall amount of fees because the Court would have let the DMCA defense go to the jury, had the Court ruled on the DMCA defense. This suggestion is baseless. Steadfast is not less deserving of total fees and costs under the Copyright Act because the Court agreed with only *some* of Steadfast's copyright-based defense arguments. The Court should decline to follow ALS's suggestion. Instead, the Court should use its

discretion to provide more than the total requested fees by imposing an upward multiplier under *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

## IV.   Conclusion

For the foregoing reasons, Steadfast respectfully asks this Court to grant its motion, awarding it $598,489 in total fees and $37,904.11 in total non-taxable costs and expenses. Steadfast also request that this Court grant any other relief it deems fair and just.


Respectfully submitted,

JOHN L. AMBROGI
COLIN T.J. O'BRIEN
PARTRIDGE PARTNERS, P.C.

PAUL D. SUPNIK

Dated: July 16, 2018              By: /s/John L. Ambrogi
                                  John L. Ambrogi
                                  Attorney for Steadfast Networks, LLC

# **PROOF OF SERVICE**

I, John L. Ambrogi, certify that I am an attorney at law, licensed to practice in the State of Illinois and I am admitted to appear before the United States District Court for the Central District of California, and a true copy of the foregoing document **DEFENDANT STEADFAST NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** was served via electronic filing to the following parties in this action via their counsel:

      ALS Scan, Inc.

A true copy of the foregoing document was hand delivered to:

Hon. George H. Wu
U.S. District Court
350 W. 1st Street
Courtroom 9D
Los Angeles, CA 90012

Via attorney service

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 16, 2018          /s/ John L. Ambrogi
                                Attorney for Defendant
                                Steadfast Networks, LLC